# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**DOUGLAS HANDSHOE**                                                        **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO. 1:15cv382-HSO-JCG**

**VAUGHN PERRET, CHARLES
LEARY & DANIEL ABEL, D/B/A
TROUT POINT LODGE LTD OF
NOVA SCOTIA & IN THEIR
INDIVIDUAL CAPACITIES,
PROGRESS MEDIA GROUP
LIMITED, MARILYN SMULDERS,
TORSTAR CORPORATION,
NATIONAL GEOGRAPHIC
SOCIETY INC., XYZ FOUNDATION
& JOHN DOES 1-50**                                                    **DEFENDANTS**

## MEMORANDUM OF LAW IN SUPPORT OF
## NATIONAL GEOGRAPHIC SOCIETY'S MOTION TO DISMISS

Jonathan P. Dyal (MS Bar No. 99146)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Phone: (228) 864-9900
Facsimile: (228) 864-8221
jdyal@balch.com

Lisa R. Bonanno (admitted *pro hac vice*)
Ellen S. Kennedy (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-6591
Facsimile: (202) 637-5910
lisa.bonanno@hoganlovells.com
ellen.kennedy@hoganlovells.com

DATED: January 5, 2016

*Attorneys for Defendant National Geographic Society*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

STANDARD OF REVIEW ......................................................................................4

ARGUMENT ............................................................................................................5

I.      PLAINTIFF LACKS STANDING TO BRING THIS ACTION AGAINST NGS.............5

II.     THE AMENDED COMPLAINT OTHERWISE FAILS TO STATE A VIABLE CAUSE OF ACTION AGAINST NGS...................................................................7

     A.     Count 5 Fails To Adequately Plead *Three* of the Required Elements Of a Section 512(f) Claim. ..........................................................................8

          1.     The Amended Complaint Expressly Acknowledges that Plaintiff is not the "Alleged Infringer." ......................................................9

          2.     The January 2013 Takedown Notice Contradicts and Overrides Plaintiff's Conclusory Allegation that NGS Made a "Knowing[ ] . . . Misrepresenta[tion]" of Copyright Infringement................................10

          3.     The Amended Complaint is Devoid of Allegations to Support Damages, a Required Element of a Section 512(f) Claim. .....................11

     B.     Count 9 Fails As a Matter of Law Because it is Preempted and Fails to State a Claim. .....................................................................................11

          1.     Plaintiff's Conspiracy Claim is Preempted by the Federal Copyright Act.................................................................................11

          2.     The Amended Complaint Does Not Adequately Allege the Existence of An Agreement Between NGS and the Other Defendants. ...............................................................................14

     C.     Count 10 Fails Because There is No Actual Case or Controversy Sufficient to Support Plaintiff's Request for Declaratory Relief.........................14

CONCLUSION.......................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

Amaretto Ranch Breedables v. Ozimals, Inc.,
 No. C 10-05696 CRB, 2011 WL 2690437 (N.D. Cal. July 8, 2011)......................................13

Amaretto Ranch Breedables v. Ozimals, Inc.,
 907 F. Supp. 2d 1080 (N.D. Cal. 2012) ...................................................................... 15-16

Ashcroft v. Iqbal,
 556 U.S. 662 (2009)....................................................................................................4, 10

Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.,
 No. 1:08CV1394 LG-JMR, 2009 WL 2872307 (S.D. Miss. Aug. 10, 2009)..........................4

Bass v. Hirschbach Motor Lines, Inc.,
 No. 3:14CV360TSL-JCG, 2014 WL 5107594 (S.D. Miss. Oct. 10, 2014).............................4

Bell Atl. Corp. v. Twombly,
 550 U.S. 544 (2007).........................................................................................................4

Bradley v. Kelley Bros. Contractors, Inc. ,
 117 So. 3d 331 (Miss. Ct. App. 2013) ....................................................................14

Comer v. Murphy Oil USA, Inc.,
 839 F. Supp. 2d 849 (S.D. Miss. 2012), aff'd, 718 F.3d 460 (5th Cir. 2013) .........................5

Cook v. Wallot,
 172 So. 3d 788 (Miss. Ct. App. 2013) ....................................................................14

Daboub v. Gibbons,
 42 F.3d 285 (5th Cir. 1995) ...............................................................................12

Dutch Jackson IATG, LLC v. The Basketball Mktg. Co.,
 846 F. Supp. 2d 1044 (E.D. Mo. 2012).....................................................................13

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
 896 F.2d 1542 (9th Cir. 1989) ..............................................................................15

Handshoe v. Abel & Yount,
 No. 1:14-CV-159-KS-MTP, 2015 WL 9094344 (S.D. Miss. Dec. 16, 2015) ........................11

Hastey v. Bush,
 100 F. App'x 319 (5th Cir. 2004) ..........................................................................5

ii

## TABLE OF AUTHORITIES - Continued

Page(s)

CASES (con't):

Hodges v. Delta Airlines, Inc.,
   44 F.3d 334 (5th Cir. 1995) ................................................................12

In re K. M. A., Inc.,
   652 F.2d 398 (5th Cir. 1981) ...............................................................7

Lenz v. Universal Music Corp.,
   No. 07-03783 JF, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008) .........................................13, 16

Lenz v. Universal Music Corp.,
   No. C 07-3783 JF, 2010 WL 702466 (N.D. Cal. Feb. 25, 2010)...............................................9

Magluta v. Samples,
   256 F.3d 1282 (11th Cir. 2001) ............................................................7

MedImmune, Inc. v. Genentech, Inc.,
   549 U.S. 118 (2007)..................................................................15

Norris v. Krystaltech Intern, Inc.,
   133 F. Supp. 2d 465 (S.D. Miss. 2000).....................................................14

Pub. Serv. Comm'n v. Wycoff Co.,
   344 U.S. 237 (1952)..................................................................15

Sahlein v. Red Oak Capital, Inc.,
   No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477 (N.D. Miss. July 3, 2014) ................... 7-8

Sharp v. Atwood Mobile Products, Inc.,
   No. 2:12-CV-82-KS-MTP, 2012 WL 3024726 (S.D. Miss. July 24, 2012)............................2

Simmons v. Peavy-Welsh Lumber Co.,
   113 F.2d 812 (5th Cir. 1940) ...............................................................6

St. Paul Fire & Marine Ins. Co. v. Labuzan,
   579 F.3d 533 (5th Cir. 2009) ...............................................................5

State of Tex. v .West Publ'g Co.,
   882 F.2d 171 (5th Cir. 1989) ...............................................................16

Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.,
   305 F.3ed 1293 (11th Cir. 2002) ....................................................... 7-8

Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.,
   778 F.3d 502 (5th Cir. 2015) ...............................................................5

\\DC - 068738/000074 - 7297612 v10

## TABLE OF AUTHORITIES - Continued

Page(s)

CASES (con't):

Sybersound Records, Inc. v. UAV Corp.,
    517 F.3d 1137 (9th Cir. 2008) ........................................................................12

Tuteur v. Crosley-Corcoran,
    961 F. Supp. 2d 333 (D. Mass. 2013) .........................................................8, 10

United States *ex rel* Riley v. St. Luke's Episcopal Hosp.,
    355 F.3d 370 (5th Cir. 2004) .......................................................................6, 10

United States v. Johnson,
    632 F.3d 912 (5th Cir. 2011) ..............................................................................5

Val-Com Acquisitions Trust v. Bank of Am.,
    436 F. App'x 302 (5th Cir. 2011) ................................................................ 14-15

Ward v. Life Inv'rs Ins. Co. of Am.,
    383 F. Supp. 2d 882 (S.D. Miss. 2005)............................................................14

Williams v. Ciba Vision Corp.,
    100 F. Supp. 3d 585 (S.D. Miss. 2015).............................................................2

Witty v. Delta Air Lines, Inc.,
    366 F.3d 380 (5th Cir. 2004) ............................................................................12

Xerox Corp. v. Genmoora Corp.,
    888 F.2d 345 (5th Cir. 1989) ..............................................................................5

STATUTES, CODES & RULES:

Digital Millennium Copyright Act of 1998 ("DMCA),
    codified as amended at 17 U.S.C § 512 .................................................... *passim*

The Copyright Act of 1976, codified as amended at 17 U.S.C. § 512(f) ............................ *passim*

17 U.S.C. § 301(a) ...............................................................................................12

17 U.S.C. § 512(c) ............................................................................................3, 8

Fed. R. Civ. P. 8 ..............................................................................................7, 14

Fed. R. Civ. P. 12(b)(1)................................................................................1, 5, 16

Fed. R. Civ. P. 12(b)(6)................................................................................ *passim*

iv

**TABLE OF AUTHORITIES - Continued**

**Page(s)**

**OTHER AUTHORITIES:**

1 M. Nimmer, Copyright §1.01 [B][3][a] at 1-77.........................................................................12

Defendant National Geographic Society ("NGS"), by and through undersigned counsel, submits this Memorandum of Law in Support of its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

This lawsuit is the latest chapter in a long-running feud between Plaintiff and certain of NGS's co-defendants that has been going on for at least five years and has spawned at least seven lawsuits in two separate countries.[1]  Now, Plaintiff seeks to drag NGS—which was not a party to any of these previous actions—into his legal quagmire.  The sole ground for including NGS as a defendant in this latest complaint: a notice that NGS sent to the internet service provider hosting the website of non-party Slabbed New Media, LLC ("Slabbed") on January 7, 2013—almost three years ago—demanding that a photograph clearly displaying NGS's copyright be removed from Slabbed's website.

Based on this slender reed, Plaintiff seeks to manufacture causes of action against NGS for supposed copyright misrepresentation and, even more incredibly, for civil conspiracy.  He also asks this Court to take the entirely unnecessary step of resolving the question of whether Slabbed's use of NGS's copyrighted image on its website qualified as "fair use."  The threadbare allegations in the Amended Complaint, however, contradict, rather than support, these claims.

The Amended Complaint is first subject to dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because, by Plaintiff's own admission, he does not have standing to bring a claim against NGS, having suffered no injury or been personally accused of violating any copyright.  It

---

[1]    According to the Amended Complaint, the saga began with a lawsuit filed in Nova Scotia in April 2010, then was followed by a defamation suit filed in Nova Scotia in 2011, a lawsuit in this District in 2012, another defamation lawsuit filed in Canada in December 2012, yet another defamation lawsuit filed in the Eastern District of Louisiana in January 2013 and allegedly re-filed in Louisiana state court in May 2013, and a February 2013 civil suit filed in Nova Scotia.

is also subject to dismissal under Fed. R. Civ. P. 12(b)(6) as a shotgun pleading that fails to give fair notice to NGS as to what allegations are being made against it individually.  Finally, the handful of specific allegations regarding NGS that can be gleaned from the Amended Complaint are patently insufficient to support Plaintiff's claims for numerous reasons, including the following:

- The Amended Complaint fails to adequately plead at least three essential elements of a claim under 17 U.S.C. § 512(f), requiring the dismissal of Count 5;

- Plaintiff's attempted civil conspiracy claim under Count 9 fails both because such a claim is preempted by the Federal Copyright Act, and because the Amended Complaint does not plausibly allege the fundamental requirement of an agreement between NGS and its alleged co-conspirators; and

- There is no actual case or controversy to support Plaintiff's request for a declaratory judgment and, consequently, this Court lacks subject matter jurisdiction over Count 10.

Because the Amended Complaint is deficient as a matter of law in both its form and content, NGS's Motion to Dismiss should be granted.

## FACTUAL BACKGROUND[2]

Plaintiff is the owner of Slabbed, a company that publishes a supposedly "journalistic" website.  Am. Compl. ¶¶ 2, 13, 31.  The Amended Complaint claims that Defendants Vaughn Perret, Charles Leary, and Daniel Abel, doing business as Trout Point Lodge, a management company, instigated "a campaign of libel terrorism and related Canadian smear campaigns" in an effort to silence Slabbed's reporting on the "conviction and incarceration of former Jefferson

---

[2]    The Complaint's purportedly factual allegations are taken as true solely for purposes of this motion, but conclusory allegations against NGS or "Defendants" generally—of which there are many— are not taken as true, or addressed herein, because they cannot be considered on a motion to dismiss.  See, e.g., Williams v. Ciba Vision Corp., 100 F. Supp. 3d 585, 590 (S.D. Miss. 2015); Sharp v. Atwood Mobile Prods., Inc., No. 2:12-CV-82-KS-MTP, 2012 WL 3024726, at *1 (S.D. Miss. July 24, 2012) ("[T]he Court will not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'") (citation omitted).

\\DC - 068738/000074 - 7297612 v10

Parish President Aaron Broussard." Id. ¶ 1. Specifically, Slabbed reported, among other things, that Broussard was part of a limited liability corporation that owned a lodge in Nova Scotia, Canada managed by Trout Point Lodge. Id. ¶¶ 1, 17–20. According to Slabbed's reporting, through Trout Point Lodge, Defendants Perrett, Leary, and Abel participated in an alleged bribery scheme involving Broussard. Id. Plaintiff alleges that, beginning in 2010, these Defendants filed multiple defamation suits in an effort to "suppress journalism in the public interest" regarding their involvement in this purported bribery scheme. Id. ¶¶ 1, 26.

The Amended Complaint is devoid of factual allegations indicating that NGS had a role in any of these events. NGS is not implicated in Slabbed's reporting of the alleged bribery scheme, it is not alleged to be connected to Broussard, and it was not a party to any of the prior "suppressive" lawsuits. The first—and only—alleged involvement of NGS in this saga occurred on January 7, 2013, when NGS issued a so-called "takedown notice" to Slabbed's web hosting service – a notice whereby a copyright owner requests that its copyrighted material be removed from a website – under Section 512(c) of the Digital Millennium Copyright Act of 1998 ("DMCA"), codified as amended at 17 U.S.C. § 512.

As set forth in NGS's January 7, 2013 correspondence (the "January 2013 Takedown Notice") to DreamHost, the hosting service for Slabbed's website,[3] the image at issue was an "original National Geographic copyrighted work, which is a photo of Charles Leary of Trout Point Lodge" and formerly located on www.flickr.com. Am. Compl ¶ 56; Exhibit A.[4] On

---

[3]    This Exhibit can be found attached to the original Complaint in this matter as Exhibit 2 [D.E. 1]. Rather than re-attaching the exhibits to the Amended Complaint, Plaintiff simply incorporated them by reference. See Am. Compl. ¶ 61.

[4]    The Amended Complaint includes an internet link to the photograph, which, as of the submission of this Motion, continues to clearly and unequivocally display NGS's copyright directly below the photograph. See Am. Compl. ¶ 56 n.8 (citing to http://slabbed.org/2011/09/13/hey-everyone-make-certain-to-check-out-charles-learys-picture-on-flickr/). A copy of this webpage is attached for the Court's convenience as Exhibit ("Ex.") A hereto.

January 8, 2013, Plaintiff, on behalf of Slabbed and not "in his individual capacity," submitted a counter-notice.  Am. Compl. ¶ 58.  As conceded in the Amended Complaint, NGS elected not to incur the costs associated with filing an injunction and, consequently, the image was restored to Slabbed's website.  Id.  NGS is not identified as having any other involvement in the chain of events that preceded the filing of the Amended Complaint.[5]

### STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  To satisfy this standard, a complaint must include more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."  Id.; see also Bass v. Hirschbach Motor Lines, Inc., No. 3:14CV360TSL-JCG, 2014 WL 5107594, at *2 (S.D. Miss. Oct. 10, 2014) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation and internal quotation marks omitted).  Rather, the court must examine only the well-pleaded factual allegations, if any, and then determine whether they plausibly give rise to liability.  Bailey Lumber & Supply Co. v. Georgia-Pacific Corp., No. 1:08CV1394 LG-JMR, 2009 WL 2872307, at *2 (S.D. Miss. Aug. 10, 2009).  A complaint does not suffice where it is solely premised on "'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

---

[5]     Although Plaintiff generally accuses NGS of taking part in an "ongoing campaign of libel terrorism," and submitting "multiple DMCA takedown notices . . . in 2011," the Amended Complaint is devoid of any specific factual allegations supporting these conclusory assertions, nor does it explain how they pertain to any of the Counts directed at NGS.  See, e.g., Am. Compl. ¶¶ 50, 58 & n.9.  The Amended Complaint is littered with allegations regarding "Defendants" generally.  However, as explained below, these allegations are not well-pled with respect to NGS.

4

**ARGUMENT**

**I.    PLAINTIFF LACKS STANDING TO BRING THIS ACTION AGAINST NGS.**

Article III of the Constitution mandates that any party asserting a claim must have standing in order for a court to have jurisdiction over his grievance. Standing "is a jurisdictional question which must be resolved as a preliminary matter . . . by motion under F. R. C. P. 12(b)(1) or on the court's own motion." Xerox Corp. v. Genmoora Corp., 888 F.2d 345, 350 (5th Cir. 1989).

To satisfy the Constitutional standing requirement, a plaintiff must adequately allege "an 'injury in fact' that is concrete and particularized and actual or imminent" and "fairly traceable" to the actions of the defendant. Hastey v. Bush, 100 F. App'x 319, 319 (5th Cir. 2004); St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 539 (5th Cir. 2009); see also Comer v. Murphy Oil USA, Inc., 839 F. Supp. 2d 849, 858 (S.D. Miss. 2012) (plaintiff must have "suffered an injury in fact" which is "concrete and particularized . . . and actual and imminent" and "a causal connection must exist between the injury complained of and the defendant's conduct"), aff'd 718 F.3d 460 (5th Cir. 2013). In addition, "[p]rudential" standing requirements, which exist "as an integral part of judicial self-government," mandate, among other things, that a plaintiff may only assert "his or her own legal rights and interests rather than the legal rights and interests of third parties." Labuzan, 579 F.3d at 539 (citation and internal quotation marks omitted).

Consequently, to establish standing to bring the claims he has asserted against NGS, Plaintiff would need to plausibly allege both (1) a concrete injury in fact that is fairly traceable to the actions of the defendant and (2) that he is asserting his own legal rights and interests, not the legal rights or interests of third parties. See, e.g., United States v. Johnson, 632 F.3d 912, 919 (5th Cir. 2011); Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc., 778 F.3d 502, 504 (5th Cir. 2015). Plaintiff has not alleged – and is foreclosed as a matter of law from alleging – that he

5

meets either requirement, for his own allegations conclusively demonstrate that (1) he has not suffered an injury that is fairly traceable to any act of NGS, and (2) he is impermissibly seeking to prosecute claims that – if they were viable at all – belong to Slabbed.

Because NGS was admittedly not a party to any of the prior litigation, the sole act alleged to have been undertaken by NGS is the purportedly incorrect January 2013 Takedown Notice. But the Amended Complaint admits that the January 2013 Takedown Notice on which Plaintiff premises his claims did not concern any action of Plaintiff in his "personal capacity" but, rather, purportedly "misrepresent[ed] that the *Slabbed New Media, LLC* posting" infringed on certain copyrights.  Id. ¶¶ 125–127 (emphasis added).   The Amended Complaint also specifically alleges, in no uncertain terms, that "Plaintiff Handshoe had no connection to the postings in his personal capacity."  Id. ¶ 126.  That the January 2013 Takedown Notice concerned a posting on Slabbed's website is confirmed by the Notice itself, which makes no reference whatsoever to Plaintiff.  Compl. Ex. 2 at pages 15–17 [D.E. 1].

Plaintiff cannot manufacture standing by purporting to bring this action "in his individual capacity and as publisher of Slabbed New Media, LLC."  Am. Compl. at 1.   This conclusory allegation is directly contradicted by the allegations in the Amended Complaint noted above that deny any personal involvement of Plaintiff in these events.   It is well settled that where a complaint's allegations are contradicted by facts pled in the complaint or its exhibits, the court is under no obligation to accept the contradicted allegations as true.  See, e.g., United States *ex rel* Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 377 (5th Cir. 2004); Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940).  Nor can Plaintiff bring a claim on behalf of Slabbed, because it is a company with a separate and distinct legal interest from Plaintiff, and

6

"as a fictional legal person can only be represented by licensed counsel."  In re K. M. A., Inc., 652 F.2d 398, 399 (5th Cir. 1981).

Because Plaintiff has not suffered any injury himself and is impermissibly seeking to prosecute claims belonging to a third party, his claims must be dismissed with prejudice for lack of standing.

## II.    THE AMENDED COMPLAINT OTHERWISE FAILS TO STATE A VIABLE CAUSE OF ACTION AGAINST NGS.

Even if Plaintiff had standing, his Amended Complaint would nonetheless be subject to dismissal.  As an initial matter, it is a "shotgun pleading" that violates Fed. R. Civ. P. 8 because it utterly fails "to provide fair notice of the nature of Plaintiff['s] claims" against NGS.  See Sahlein v. Red Oak Capital, Inc., No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014).  In particular, Plaintiff's "fail[ure] to distinguish between the actions of named defendants," opting almost exclusively to make broad allegations against the "Defendants" generally, rather than distinguishing between the actions of the eight separate Defendants, deprives NGS of fair notice of the claims against it.[6]  Id. at *3 (citing Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001)).  The Amended Complaint further deprives NGS of fair notice by incorporating the allegations of all "preceding paragraphs of th[e] Complaint," into each of the Amended Complaint's eleven Counts, thereby creating a "'situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'"  Sahlein, 3014 WL 3046477, at *3 (quoting Strategic Income Fund, LLC v. Spear,

---

[6]    By way of example, Count 1 of the Amended Complaint purports to bring a claim under 17 U.S.C. § 512 against "Defendants" based on takedown notice "they" purportedly sent on December 13, 2012, but elsewhere the Amended Complaint alleges that this notice was only sent by "defendant Leary in coordination with Perret and Abel."  Am. Comp. ¶ 42.  The same is true for the remaining Counts asserting claims under 17 U.S.C. § 512 (with the exception of Count 5 as discussed below).  Similarly, Count 11 seeks a declaration regarding whether "the underlying Canadian defamation action and its multiple resulting judgments are repugnant to the constitution of the United States of America," but NGS is not alleged to have been—and was not—a party to any of those lawsuits or judgments.

Leeds & Kellog Corp., 305 F.3d 1293, 1295 (11th Cir. 2002)); Am. Compl. ¶¶ 95, 102, 109, 117, 124, 131, 139, 147, 155, 162 & 167.  The inclusion of "'irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired'" makes this Amended Complaint "subject to dismissal under Rule 12(b)(6)."  Sahlein, 2014 WL 3046477, at *3–4 (citation omitted).

Setting these shotgun allegations aside, there are only three Counts of the Amended Complaint that could even arguably be interpreted as having been pled against NGS—Counts 5, 9, and 10.  These Counts also suffer from multiple fatal flaws that require their dismissal as a matter of law.

### A.    Count 5 Fails To Adequately Plead *Three* of the Required Elements Of a Section 512(f) Claim.

Section 512 of the DMCA expressly limits the liability of an internet service provider for copyright infringement by its subscribers.  In enacting Section 512, "Congress intended to craft a mechanism that would 'balance the need for rapid response to potential infringement'" with the alleged infringers' "'legitimate interests in not having material removed without recourse.'"  Tuteur v. Crosley-Corcoran, 961 F. Supp. 2d 333, 340-41 (D. Mass. 2013).  Section 512's remedies were enacted as an "antidote" for potential abuse of the expedited takedown procedures set forth in Section 512(c) by providing a limited cause of action against those who materially misrepresent that material is infringing.  Id.; 17 U.S.C. § 512(f).

Section 512(f) provides in relevant part as follows:

> **Misrepresentations. --** Any person who knowingly *materially misrepresents* under this section **--** (1) that material or activity is infringing, . . . shall be liable for any *damages*, including costs and attorneys' fees, incurred by the *alleged infringer* . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . .

(emphasis added).  Consequently, to state a claim under Section 512(f), a plaintiff must plausibly allege facts that, if taken as true, would establish, at a minimum, three elements: (1) that the plaintiff is an "alleged infringer" (2) who was the subject of a notice that "knowingly materially misrepresent[ed]" his or her allegedly infringing activity, and (3) who suffered damages as a consequence.  The Amended Complaint fails in all three aspects

        1.    <u>The Amended Complaint Expressly Acknowledges that Plaintiff is not the "Alleged Infringer."</u>

"[A] Section 512(f) cause of action accrues to three types of plaintiffs: 'the alleged infringer,' 'any copyright owner or copyright owner's authorized licensee,' or 'a service provider.' " <u>Lenz v. Universal Music Corp.</u>, No. C 07-3783 JF, 2010 WL 702466, at *9 (N.D. Cal. Feb. 25, 2010) [hereinafter "<u>Lenz II</u>"].  That Plaintiff does not qualify as any of the three is demonstrated by the allegations set forth in Count 5 and throughout the Amended Complaint. Rather, as Plaintiff expressly alleges, "[t]he Takedown Notice of January 7, 2013 represented that *the Slabbed New Media, LLC posts* infringed [certain] copyrights," and "Plaintiff Handshoe had no connection to the postings in his personal capacity."  Am. Compl. ¶¶ 125-126 (emphasis added).  This is confirmed by the January 2013 Takedown Notice, which identifies the "location of the unauthorized material" that is the subject of the Notice as a page on "slabbed.org" and does not mention Plaintiff at all.  Compl. Ex. 2 at pages 15–17 [D.E. 1].

Because Plaintiff's own allegations confirm that he is not an "alleged infringer" that was the subject of the January 2013 Takedown Notice, his Section 512(f) claim should be dismissed with prejudice.

\\DC - 068738/000074 - 7297612 v10

2.      The January 2013 Takedown Notice Contradicts and Overrides Plaintiff's Conclusory Allegation that NGS Made a "Knowing[ ] . . . Misrepresenta[tion]" of Copyright Infringement.

The most fundamental element of any Section 512(f) claim is that a takedown notice include a "knowing[ ] material[ ] misrepresent[ation] . . . that material or activity is infringing." 17 U.S.C. § 512(f); see also, e.g., Tuteur, 961 F. Supp. 2d at 342 (liability under Section 512(f) can only be imposed upon "demonstration of some actual knowledge of misrepresentation on the part of the copyright owner") (internal quotation marks omitted).  Here, the purported basis for Count 5 is the January 2013 Takedown Notice that allegedly "knowingly materially misrepresent[ed] that the Slabbed New Media, LLC posting infringed on . . . Ashoka Foundation Copyrights."  Am. Compl. ¶¶ 125–129.  The January 2013 Takedown Notice, however, contradicts this allegation of a misrepresentation.  It says nothing about the Ashoka Foundation, much less states that the image at issue infringed on an Ashoka copyright.  Compl. Ex. 2 at pages 15–17 [D.E. 1].  Rather, the January 2013 Takedown Notice states that image at issue is a "National Geographic copyrighted work"—an undeniably accurate statement, given that the photo clearly displays the NGS copyright, even to this day.  Id.; see also Ex. A.

Where, as here, a plaintiff's "formulaic recitation[s] of the elements of [the] cause of action" are contradicted by the very document on which the cause of action is premised, those facts must be disregarded.  Ashcroft, 556 U.S. at 678; see, e.g., Riley, 355 F.3d at 377.  Because the Amended Complaint is devoid of any other well-pleaded fact that, if taken as true, would support the inference of a knowingly material misrepresentation of copyright infringement by NGS, Count 5 fails as a matter of law and should be dismissed.

10

3.  The Amended Complaint is Devoid of Allegations to Support Damages, a Required Element of a Section 512(f) Claim.

Plaintiff includes no specific allegations regarding the damages he allegedly sustained as a result of the January 2013 Takedown Notice.  This is a fatal flaw in his Section 512(f) claim, because damages are an essential element of such a cause of action.  See, e.g., 17 U.S.C. § 512(f); Handshoe v. Abel & Yount, No. 1:14-CV-159-KS-MTP, 2015 WL 9094344, at *3 (S.D. Miss. Dec. 16, 2015) (refusing to grant default judgment because, among other reasons, plaintiff's Section 512(f) claim did "not adequately allege the amount of damages"). Plaintiff's threadbare recitation of that necessary element of the claim stating that "New Dream Network's decision to require Plaintiff disable access to the Slabbed New Media, LLC posts . . . caus[ed] Plaintiff to incur damages," see Am. Compl. ¶ 130, is manifestly insufficient to support his claim against NGS.   See Handshoe, 2015 WL 9094344, at *3 (refusing to issue default judgment and entering order for *sua sponte* dismissal in the absence of amendment of another Section 512(f) claim brought by plaintiff because he did not "adequately allege the amount of damages he ha[d] suffered as a direct result of his web host relying on any misrepresentation by [defendants].").  Because Plaintiff has failed to include any specific allegations regarding the damages he purportedly suffered as a result of the January 2013 Takedown Notice, Count 5 should be dismissed.

**B.  Count 9 Fails As a Matter of Law Because it is Preempted and Fails to State a Claim.**

1.  Plaintiff's Conspiracy Claim is Preempted by the Federal Copyright Act.

The stated premise for Count 9 of the Amended Complaint is the Defendants' purported entry into "a civil conspiracy to deprive Plaintiff of his valuable First Amendment rights via submission of multiple misrepresented Takedown Notices pursuant to 17 U.S.C. § 512(f)."  Am. Compl. ¶ 156.  Thus, through his conspiracy claim, Plaintiff seeks to hold NGS responsible not

11

only for the January 2013 Takedown Notice, but also for purportedly improper takedown notices that it did not issue and with which it was not involved.  This relief is directly at odds with the limited, extra-judicial remedies set out in Section 512, which created "a special provision of the Copyright Act . . . that . . .  constitutes the sole remedy for a customer who objects to its contents and their effects."  1 M. Nimmer, Copyright § 1.01[B][3][a] at 1–77.  In particular, permitting Plaintiff's conspiracy claim to go forward would contradict Section 512(f), which expressly limits a claim for misrepresentation to the person or entity that made the purported misrepresentation.  See 17 U.S.C. § 512(f).

Unsurprisingly, this type of end run around federal copyright law is not permitted.  "The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title.'" Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(a)); see also Witty v. Delta Air Lines, Inc., 366 F.3d 380, 384 (5th Cir. 2004) ("Under the implied preemption doctrines of field preemption . . . a state claim is preempted where 'Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme . . . .'") (quoting Hodges v. Delta Airlines, Inc., 44 F.3d 334, 335 n.1 (5th Cir. 1995)).  Thus, state law claims are preempted by the Copyright Act where the claim falls within the subject matter of copyright and protects a right that is equivalent to any of the exclusive rights or interests protected under the Copyright Act.  See, e.g., Daboub v. Gibbons, 42 F.3d 285, 288-89 (5th Cir. 1995).

That is plainly the case here.  The conspiracy Count that Plaintiff seeks to prosecute is expressly premised on alleged Section 512(f) violations and purports to protect a right – the right

to be free from improper takedown notices – that is equivalent to the exclusive rights and interests Congress so carefully balanced in enacting the DCMA.  Outside of the DCMA context, "the majority of courts that have considered this issue have held that civil conspiracy claims are preempted under the Copyright Act, except where the claim involves a conspiracy to commit an underlying tort or wrong other than copyright infringement . . . ."  Dutch Jackson IATG, LLC v. The Basketball Mktg. Co., 846 F. Supp. 2d 1044, 1051 (E.D. Mo. 2012)) (citation and internal quotation marks omitted).  As to the DMCA, other courts to have considered preemption with respect to Section 512(f) have concluded that state law claims based on purported illegal takedown notices are preempted.  For example, in Amaretto Ranch Breedables, LLC v. Ozimals, Inc., the Northern District of California considered the question of whether a cause of action for tortious interference with business relations and other state law claims premised on allegedly improper DCMA Takedown Notifications were preempted by the Copyright Act.  No. C 10-05696 CRB, 2011 WL 2690437, at *3 (N.D. Cal. July 8, 2011).  The court held that they were, joining other courts in concluding "that (1) a DMCA Takedown Notification is a creature of a federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification."  Id.; see also, e.g., Lenz v. Universal Music Corp., No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) [hereinafter "Lenz I"].

Because "DMCA Takedown Notifications are a creature of federal law, and there is a specific federal remedy for their misuse," see Amaretto Ranch Breedables, 2011 WL 2690437, at *3, any state law claims premised on such notices – such as Plaintiff's conspiracy claim – are plainly preempted.   Count 9 should be dismissed with prejudice.

\\DC - 068738/000074 - 7297612 v10

2.      The Amended Complaint Does Not Adequately Allege the Existence of
An Agreement Between NGS and the Other Defendants.

Count 9 is also deficient for a second reason: it fails to allege the essential element of an

agreement.   To state a claim for civil conspiracy in Mississippi, a plaintiff must plead (1) an

agreement between two or more persons, (2) for an unlawful purpose, (3) an overt act in

furtherance of the conspiracy, and (4) resulting damages to the plaintiff.  Bradley v. Kelley Bros.

Contractors, Inc., 117 So. 3d 331, 339 (Miss. Ct. App. 2013).   To satisfy the requirement of

pleading an agreement, a complaint cannot rely on conclusory allegations; rather, it must include

"pointed and specific factual allegations" identifying how, when, and why the parties entered

into the purported agreement to commit an unlawful act.  See, e.g., Ward v. Life Inv'rs Ins. Co.

of Am., 383 F. Supp. 2d 882, 890 (S.D. Miss. 2005).

Here, the only allegation in the Amended Complaint that even attempts to satisfy this

required element is Paragraph 156, which states that Defendants "between themselves entered

into a civil conspiracy."  Am. Compl. ¶ 156.  This type of naked legal conclusion is plainly

insufficient and, moreover, does not even mention an alleged agreement.  Consequently, Count 9

should be dismissed for failure to state a claim.   See, e.g., Norris v. Krystaltech Int'l, Inc., 133 F.

Supp. 2d 465, 469 (S.D. Miss. 2000) ("'[A] general allegation of conspiracy without a statement

of facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient

to state a cause of action'") (quoting Fed. R. Civ. P. 8)); Cook v. Wallot, 172 So. 3d 788, 801

(Miss. Ct. App. 2013) (upholding dismissal of an allegation of civil conspiracy because "the

complaint alleged no factual basis for any agreement whatsoever").

**C.      Count 10 Fails Because There is No Actual Case or Controversy Sufficient to
Support Plaintiff's Request for Declaratory Relief.**

"A federal declaratory judgment action requires an actual case or controversy, not a mere

hypothetical issue."  Val-Com Acquisitions Trust v. Bank of Am., 436 F. App'x 302, 303 (5th

Cir. 2011) (citing Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 242 (1952)).  In order to establish the required case or controversy, a plaintiff must be able to plausibly plead, at a minimum, that he has "a real and reasonable apprehension that he will be subject to liability" if a declaration is not issued.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555–56 (9th Cir. 1989) (internal quotation marks omitted).

Plaintiff cannot satisfy this requirement here, as he has not alleged, and cannot allege, any facts demonstrating a plausible reason why he would have a "reasonable apprehension" that he might be subject to liability from NGS.  To the contrary, as discussed above, Plaintiff disclaims any "connection to the postings in his personal capacity," and the January 2013 Takedown Notice at issue concerns an image on Slabbed's website, not a personal website of Plaintiff.  See, e.g., Am. Compl. ¶ 126.  If he had no personal connection to the posting that was the premise for the January 2013 Takedown Notice, Plaintiff cannot plausibly contend that he has a "reasonable apprehension" of being subjected to liability for that posting.  The Amended Complaint does not contain even conclusory allegations—much less plausible facts—from which it could be reasonably inferred that NGS has ever threatened Plaintiff with individual liability, or may do so in the future.

Even if the January 2013 Takedown Notice had been directed to Plaintiff individually, Count 10 would be properly dismissed.  The text of the Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007) (citations omitted).  Where, as here, the only facts supporting the request for declaratory relief are that the copyright holder filed a takedown notice, but then took no further action (for more than three years), "[t]he  possibility [the plaintiff] will face any liability on  the .

15

. . copyright is too speculative to warrant the requested declaration." Amaretto Ranch Breedables v. Ozimals, Inc., 907 F. Supp. 2d 1080, 1085 (N.D. Cal. 2012); see also, e.g., State of Tex. v. W. Publ'g Co., 882 F.2d 171, 177 (5th Cir. 1989) ("A defendant's simple assertion that they hold a copyright in certain material generally does not amount to a threat of litigation."); Lenz I, 2008 WL 962102 at *5 (finding case or controversy requirement not met when defendant sent takedown notice to YouTube, plaintiff sent counter-notice, defendant did not file an infringement action, and YouTube restored plaintiff's video to its site). Plaintiff's request for a declaratory judgment regarding NGS's copyright should be dismissed.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Amended Complaint should be dismissed against Defendant NGS under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

DATED: January 5, 2016

/s/ *Jonathan P. Dyal*
Jonathan P. Dyal (MS Bar No. 99146)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Phone: (228) 864-9900
Facsimile: (228) 864-8221
jdyal@balch.com

Lisa R. Bonanno (admitted *pro hac vice*)
Ellen S. Kennedy (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-6591
Facsimile: (202) 637-5910
lisa.bonanno@hoganlovells.com
ellen.kennedy@hoganlovells.com

*Attorneys for Defendant National Geographic Society*

16

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned counsel, do hereby certify that I have this day electronically filed the

foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to

all counsel of record who have registered with the ECF system.

This the 5th day of January, 2016.

/s/ *Jonathan P. Dyal*

17