**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DOUGLAS HANDSHOE**                                                           **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 1:15cv382-HSO-JCG**

**VAUGHN PERRET, et al.,**                                                     **DEFENDANTS**


**MEMORANDUM OF LAW IN SUPPORT OF**
**NATIONAL GEOGRAPHIC SOCIETY'S MOTION TO DISMISS**

Jonathan P. Dyal (MS Bar No. 99146)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Phone: (228) 864-9900
Facsimile: (228) 864-8221
jdyal@balch.com

Lisa R. Bonanno (admitted *pro hac vice*)
Ellen S. Kennedy (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-6591
Facsimile: (202) 637-5910
lisa.bonanno@hoganlovells.com
ellen.kennedy@hoganlovells.com

*Attorneys for Defendant National Geographic Society*

DATED:  June 30, 2016

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND .............................................................................................3

STANDARD OF REVIEW ................................................................................................5

ARGUMENT .....................................................................................................................5

I.        PLAINTIFF LACKS STANDING TO BRING THIS ACTION AGAINST NGS.............5

II.      THE SECOND AMENDED COMPLAINT OTHERWISE FAILS TO STATE A
VIABLE CAUSE OF ACTION AGAINST NGS. ...........................................................8

         A.     Count 5 Fails To Adequately Plead *Three* of the Required Elements Of a
                Section 512(f) Claim. ..........................................................................................9

                1.     The Second Amended Complaint Concedes that Plaintiff is not the
                        "Alleged Infringer." ..................................................................................10

                2.     The January 2013 Takedown Notice Contradicts and Overrides
                        Plaintiff's Conclusory Allegation that NGS Made a "Knowing[ ]
                        . . . Misrepresenta[tion]" of Copyright Infringement..............................11

                3.     The Second Amended Complaint is Devoid of Allegations to
                        Support Damages, a Required Element of a Section 512(f) Claim. ..........12

         B.     Counts 10 and 11 Fail As a Matter of Law On Two Independent Grounds:
                Preemption and Failure to State a Claim. ..........................................................13

                  1.     Plaintiff's Purported Claims for Fraud and Conspiracy are
                        Preempted by the Federal Copyright Act....................................................13

                  2.     Plaintiff's Fraud Allegations are Manifestly Deficient............................15

                  3.     Count 11 is Deficient Because the Second Amended Complaint
                        Does Not Adequately Allege the Existence of An Agreement
                        Between NGS and the Other Defendants.....................................................17

          C.     Count 12 Fails Because There is No Actual Case or Controversy
                 Sufficient to Support Plaintiff's Request for Declaratory Relief..........................18

CONCLUSION.................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

Amaretto Ranch Breedables v. Ozimals, Inc.,
    2011 WL 2690437 (N.D. Cal. July 8, 2011) .................................................................13, 19

Amaretto Ranch Breedables v. Ozimals, Inc.,
    907 F. Supp. 2d 1080 (N.D. Cal. 2012) ....................................................................15

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ......................................................................................5, 11

Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.,
    2009 WL 2872307 (S.D. Miss. Aug. 10, 2009) ...........................................................5

Bass v. Hirschbach Motor Lines, Inc.,
    2014 WL 5107594 (S.D. Miss. Oct. 10, 2014) ............................................................5

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ............................................................................................5

Bradley v. Kelley Bros. Contractors, Inc. ,
    117 So. 3d 331 (Miss. Ct. App. 2013) ......................................................................17

Comer v. Murphy Oil USA, Inc.,
    839 F. Supp. 2d 849 (S.D. Miss. 2012), aff'd, 718 F.3d 460 (5th Cir. 2013) .........................6

Cook v. Wallot,
    172 So. 3d 788 (Miss. Ct. App. 2013) ......................................................................18

Daboub v. Gibbons,
    42 F.3d 285 (5th Cir. 1995) ..................................................................................14

Dutch Jackson IATG, LLC v. The Basketball Mktg. Co.,
    846 F. Supp. 2d 1044 (E.D. Mo. 2012) ....................................................................15

Hal Roach Studios, Inc. v. Richard Feiner & Co.,
    896 F.2d 1542 (9th Cir. 1990) ...............................................................................18

Handshoe v. Abel,
    2015 WL 9094344 (S.D. Miss. Dec. 16, 2015) ...........................................................12

Hastey v. Bush,
    100 F. App'x 319 (5th Cir. 2004) ...........................................................................6

# TABLE OF AUTHORITIES - Continued

**Page(s)**

CASES (con't):

Hodges v. Delta Airlines, Inc.,
    44 F.3d 334 (5th Cir. 1995) ................................................................14

In re K. M. A., Inc.,
    652 F.2d 398 (5th Cir. 1981) ...............................................................8

In re Miss. Medicaid Parm. Average Wholesale Price Litig,
    2015 WL 6533344 (Miss. Oct. 29, 2015) ...............................................15

Lenz v. Universal Music Corp.,
    2008 WL 962102 (N.D. Cal. Apr. 8, 2008) .....................................15, 19

Lenz v. Universal Music Corp.,
    2010 WL 702466 (N.D. Cal. Feb. 25, 2010) ...........................................10

Magluta v. Samples,
    256 F.3d 1282 (11th Cir. 2001) .............................................................8

MedImmune, Inc. v. Genentech, Inc.,
    549 U.S. 118 (2007)...........................................................................19

Norris v. Krystaltech Intern, Inc.,
    133 F. Supp. 2d 465 (S.D. Miss. 2000)...............................................18

Pub. Serv. Comm'n v. Wycoff Co.,
    344 U.S. 237 (1952)..........................................................................18

Sahlein v. Red Oak Capital, Inc.,
    2014 WL 3046477 (N.D. Miss. July 3, 2014) ....................................8, 9

Sharp v. Atwood Mobile Products, Inc.,
    2012 WL 3024726 (S.D. Miss. July 24, 2012) ......................................3

Simmons v. Peavy-Welsh Lumber Co.,
    113 F.2d 812 (5th Cir. 1940) ................................................................7

Spokeo, Inc. v. Robins,
    -- U.S. --, 136 S. Ct. 1540 (2016) .................................................5, 6, 12

St. Paul Fire & Marine Ins. Co. v. Labuzan,
    579 F.3d 533 (5th Cir. 2009) ................................................................6

## TABLE OF AUTHORITIES - Continued

**Page(s)**

CASES (con't):

State of Tex. v .West Publ'g Co.,
   882 F.2d 171 (5th Cir. 1989) ................................................................19

Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.,
   305 F.3d 1293 (11th Cir. 2002) ...............................................................9

Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.,
   778 F.3d 502 (5th Cir. 2015) ................................................................6

Sybersound Records, Inc. v. UAV Corp.,
   517 F.3d 1137 (9th Cir. 2008) ..............................................................14

Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP,
   542 F.3d 475 (5th  Cir. 2008) ...............................................................16

Turner v. State Farm Mut. Auto. Ins. Co.,
   2004 WL 5315004 (S.D. Miss. July 12, 2004) .......................................16

Tuteur v. Crosley-Corcoran,
   961 F. Supp. 2d 333 (D. Mass. 2013) ..............................................9, 11

United States ex rel Acad. Health Ctr., Inc. v. Hyperion Found., Inc.,
   2014 WL 3385189 (S.D. Miss. July 9, 2014) .........................................16

United States ex rel. Grubbs v. Kanneganit,
   565 F.3d 180 (5th Cir. 2009) ...............................................................16

United States ex rel Riley v. St. Luke's Episcopal Hosp.,
   355 F.3d 370 (5th Cir. 2004) ............................................................7, 12

United States v. Johnson,
   632 F.3d 912 (5th Cir. 2011) ................................................................6

Val-Com Acquisitions Trust v. Bank of Am.,
   436 F. App'x 302 (5th Cir. 2011) .........................................................18

Ward v. Life Inv'rs Ins. Co. of Am.,
   383 F. Supp. 2d 882 (S.D. Miss. 2005)...............................................17

Waters v. Allegue,
   980 So. 2d 314 (Miss. Ct. App. 2008) .................................................17

## TABLE OF AUTHORITIES - Continued

**Page(s)**

CASES (con't):

Williams v. Ciba Vision Corp.,
    100 F. Supp. 3d 585 (S.D. Miss. 2015).......................................................................3

Witty v. Delta Air Lines, Inc.,
    366 F.3d 380 (5th Cir. 2004) ...............................................................................14

Xerox Corp. v. Genmoora Corp.,
    888 F.2d 345 (5th Cir. 1989) ...............................................................................5

STATUTES, CODES & RULES:

Digital Millennium Copyright Act of 1998 ("DMCA),
    codified as amended at 17 U.S.C § 512 .......................................................... *passim*

The Copyright Act of 1976 ....................................................................................... *passim*

17 U.S.C. § 301(a) ...................................................................................................14

Fed. R. Civ. P. 8........................................................................................................8, 18

Fed. R. Civ. P. 9(b) ..............................................................................................2, 16, 17

Fed. R. Civ. P. 12(b)(1)..............................................................................................2, 5

Fed. R. Civ. P. 12(b)(6)........................................................................................ *passim*

OTHER AUTHORITIES:

1 M. Nimmer, Copyright §1.01 [B][3][a] ......................................................................13

Defendant National Geographic Society ("NGS"), by and through undersigned counsel, submits this Memorandum of Law in Support of its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).

## INTRODUCTION

This lawsuit is the latest chapter in an ongoing feud between Plaintiff and a certain number of NGS's co-defendants that has lasted over five years and spawned at least seven lawsuits in two separate countries.[1]  Now, Plaintiff seeks to drag NGS—which was not a party to any of the previous actions—into his legal quagmire.  The sole ground for including NGS as a defendant in this latest complaint: a notice that NGS sent to the internet service provider hosting the website of non-party Slabbed New Media, LLC ("Slabbed") on January 7, 2013—almost three years before Plaintiff commenced this proceeding—demanding that a photograph clearly displaying NGS's copyright be removed from Slabbed's website.

Based on this slender reed, Plaintiff seeks to manufacture causes of action against NGS for supposed copyright misrepresentation and, even more incredibly, for civil fraud and conspiracy.  He also asks this Court to take the entirely unnecessary step of resolving the question of whether Slabbed's use of NGS's copyrighted image on its website qualified as "fair use."  Plaintiff does all of this while apparently mistaking NGS's copyrighted image, which was subject to the takedown notice, with another image Plaintiff alleges is linked to the Ashoka Foundation, and to which NGS has no connection. The threadbare allegations in the Second

---

[1]     According to the Second Amended Complaint, the saga began with a lawsuit filed in Nova Scotia in April 2010, then was followed by a defamation suit filed in Nova Scotia in 2011, a lawsuit in this District in 2012, another defamation lawsuit filed in Canada in December 2012, yet another defamation lawsuit filed in the Eastern District of Louisiana in January 2013 and allegedly re-filed in Louisiana state court in May 2013, and a February 2013 civil suit filed in Nova Scotia.

Amended Complaint are confusing, contradictory, and undermine rather than support Plaintiff's claims.

The Second Amended Complaint is first subject to dismissal under Fed. R. Civ. P. 12(b)(1) because, by Plaintiff's own admission, he does not have standing to bring a claim against NGS, having suffered no injury or been personally accused of violating any copyright. It is also subject to dismissal under Fed. R. Civ. P. 12(b)(6) as a shotgun pleading that fails to give fair notice to NGS as to what allegations are being made against it individually. Finally, the handful of specific allegations regarding NGS that can be gleaned from the Second Amended Complaint are patently insufficient under Fed. R. Civ. P. 9(b) and 12(b)(6) to support Plaintiff's claims for numerous reasons, including the following:

- The Second Amended Complaint fails to adequately plead at least three essential elements of a claim under 17 U.S.C. § 512(f), requiring the dismissal of Count 5;

- Plaintiff's purported civil fraud claim under Count 10 and conspiracy claim under Count 11 are both preempted by the Federal Copyright Act, and to the extent that they are brought against NGS, also fail to adequately plead multiple elements of the relevant causes of actions; and

- There is no actual case or controversy to support Plaintiff's request for a declaratory judgment and, consequently, this Court lacks subject matter jurisdiction over Count 12.

Because the Second Amended Complaint is deficient as a matter of law in both its form and content, NGS's Motion to Dismiss should be granted. Given that Plaintiff has already attempted—and failed—three times to state a claim, such dismissal should be with prejudice.

## FACTUAL BACKGROUND[2]

Plaintiff is the owner of Slabbed, a company that publishes a self-described "journalistic" website.  Second Amended Complaint ("Am. Compl.") ¶¶ 2, 13, 31.  The Second Amended Complaint claims that Defendants Vaughn Perret, Charles Leary, and Daniel Abel, doing business as Trout Point Lodge Limited Nova Scotia, a management company, instigated "a campaign of libel terrorism and related Canadian smear campaigns" in an effort to silence Slabbed's reporting on the "conviction and incarceration of former Jefferson Parish President Aaron Broussard."  Id. ¶ 1.  Specifically, Slabbed reported, among other things, that Broussard was part of a limited liability corporation that owned a lodge in Nova Scotia, Canada managed by Trout Point Lodge.  Id. ¶¶ 1, 17–20.  According to Slabbed's reporting, through Trout Point Lodge, Defendants Perret, Leary, and Abel participated in an alleged bribery scheme involving Broussard.  Id.  Plaintiff alleges that, beginning in April 2010, these defendants filed multiple defamation suits in an effort to "suppress journalism in the public interest" regarding their involvement in this purported bribery scheme.  Id. ¶¶ 1, 26.

The Second Amended Complaint, like its predecessors, is devoid of factual allegations indicating that NGS had a role in any of these events.  Plaintiff does not allege that NGS was implicated in Slabbed's reporting of the alleged bribery scheme; NGS is not alleged to be connected to Broussard; and NGS was not a party to any of the prior "suppressive" lawsuits.  The first—and only—alleged involvement of NGS in this saga for which Plaintiff provides any factual support whatsoever occurred on January 7, 2013, when NGS issued a so-called

---

[2]    The Second Amended Complaint's purportedly factual allegations are taken as true solely for purposes of this motion, but conclusory allegations against NGS or "Defendants" generally—of which there are many—are not taken as true, or addressed herein, because they cannot be considered on a motion to dismiss.  See, e.g., Williams v. Ciba Vision Corp., 100 F. Supp. 3d 585, 590 (S.D. Miss. 2015); Sharp v. Atwood Mobile Prods., Inc., 2012 WL 3024726, at *1 (S.D. Miss. July 24, 2012) ("[T]he Court will not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'") (citation omitted).

"takedown notice" to Slabbed's web hosting service—notice whereby a copyright owner requests that its copyrighted material be removed from a website—under Section 512(c) of the Digital Millennium Copyright Act of 1998 ("DMCA"), codified as amended at 17 U.S.C. § 512. Id. ¶ 56.

As set forth in NGS's January 7, 2013 correspondence (the "January 2013 Takedown Notice") to DreamHost, the hosting service for Slabbed's website,[3] NGS stated that the image at issue was an "original National Geographic copyrighted work, which is a photo of Charles Leary of Trout Point Lodge" and formerly located on www.flickr.com.  Am. Compl ¶ 56; Exhibit A.[4] On January 8, 2013, Plaintiff, "as publisher of Slabbed" and admittedly not in his individual capacity, submitted a counter-notice.  Am. Compl. ¶ 58.  As conceded in the Second Amended Complaint, NGS elected not to incur the costs associated with filing an injunction and, consequently, the image was restored to Slabbed's website.  Id.  NGS is not identified as having any other involvement in the chain of events that preceded the filing of the Second Amended Complaint.[5]

---

[3]     This Exhibit can be found attached to the original Complaint in this matter as Exhibit 2 [D.E. 1]. Rather than re-attaching the exhibits to the Second Amended Complaint, Plaintiff simply incorporated them by reference.  See Am. Compl. ¶ 61.

[4]     The Second Amended Complaint includes an internet link to the photograph, which, as of the submission of this Motion, continues to clearly and unequivocally display NGS's copyright directly below the photograph.  See Am. Compl. ¶ 56 n.8 (citing to http://slabbed.org/2011/09/13/hey-everyone-make-certain-to-check-out-charles-learys-picture-on-flickr/).  A copy of this webpage is attached for the Court's convenience as Exhibit ("Ex. A") hereto.

[5]     Although Plaintiff includes a footnote with conclusory allegations against NGS that it took part in an "ongoing campaign of libel terrorism," and submitted "multiple DMCA takedown notices . . . in 2011," the Second Amended Complaint is devoid of any specific factual allegations supporting these bare assertions, nor does it explain how they pertain to any of the Counts directed at NGS.  See, e.g., Am. Compl. ¶¶ 50, 58 & n.9.  Although, the Second Amended Complaint is additionally littered with allegations regarding "Defendants" generally, as explained below, these allegations are not well-pled with respect to NGS.

4

**STANDARD OF REVIEW**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). To satisfy this standard, a complaint must include more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." Id.; see also Bass v. Hirschbach Motor Lines, Inc., 2014 WL 5107594, at *2 (S.D. Miss. Oct. 10, 2014) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation and internal quotation marks omitted). Rather, the court must examine only the well-pleaded factual allegations, if any, and then determine whether they plausibly give rise to liability. Bailey Lumber & Supply Co. v. Georgia-Pacific Corp., 2009 WL 2872307, at *2 (S.D. Miss. Aug. 10, 2009). A complaint does not suffice where it is solely premised on "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

**ARGUMENT**

**I.     PLAINTIFF LACKS STANDING TO BRING THIS ACTION AGAINST NGS.**

Article III of the Constitution mandates that any party asserting a claim must have standing in order for a court to have jurisdiction over his grievance. Standing "is a jurisdictional question which must be resolved as a preliminary matter . . . by motion under F. R. C. P. 12(b)(1) or on the court's own motion." Xerox Corp. v. Genmoora Corp., 888 F.2d 345, 350 (5th Cir. 1989).

As the Supreme Court reiterated earlier this year, to satisfy the Constitutional standing requirement, a plaintiff must adequately allege, among other things, "an injury in fact . . . that is fairly traceable to the challenged conduct of the defendant." Spokeo, Inc. v. Robins, -- U.S. ---,

136 S. Ct. 1540, 1547 (2016); see also, e.g., Hastey v. Bush, 100 F. App'x 319, 319 (5th Cir. 2004) (plaintiff must allege "an 'injury in fact' that is concrete and particularized and actual or imminent")(citation omitted); Comer v. Murphy Oil USA, Inc., 839 F. Supp. 2d 849, 858 (S.D. Miss. 2012) (plaintiff must have "suffered an injury in fact" which is "concrete and particularized . . . and actual and imminent" and "a causal connection must exist between the injury complained of and the defendant's conduct"), aff'd 718 F.3d 460 (5th Cir. 2013).  For an injury to be "particularized, it must affect the plaintiff in a personal and individual way," not an injury to another person or entity.  See Spokeo, 136 S. Ct. at 1548 (internal citation and quotation omitted).  Similarly, "[p]rudential" standing requirements, which exist "as an integral part of judicial self-government," mandate, among other things, that a plaintiff may only assert "his or her own legal rights and interests rather than the legal rights and interests of third parties."  St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 539 (5th Cir. 2009) (citations and internal quotation marks omitted).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  Spokeo, 136 S. Ct. at 1547.  Here, to satisfy this burden with respect to the claims he has asserted against NGS, Plaintiff "must 'clearly . . . allege facts demonstrating'" both (1) a particularized, *i.e.* personal, injury in fact that is fairly traceable to the actions of NGS, and (2) that he is asserting his own legal rights and interests, not the legal rights or interests of third parties.  See, e.g., id. at 1547-48 (internal citation omitted); United States v. Johnson, 632 F.3d 912, 919 (5th Cir. 2011); Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc., 778 F.3d 502, 504 (5th Cir. 2015).  Plaintiff has not established—and is foreclosed as a matter of law from establishing—that he satisfies either requirement, for his own allegations conclusively demonstrate that (1) he has not personally suffered a particularized injury that is fairly traceable

to any act of NGS, and (2) he is impermissibly seeking to prosecute claims that—if they were viable at all—would belong to Slabbed.

Because NGS was admittedly not a party to any of the prior litigation, the sole act alleged to have been undertaken by NGS is the issuance of the January 2013 Takedown Notice.  But the Second Amended Complaint states that the January 2013 Takedown Notice on which Plaintiff premises his claims did not concern any action of Plaintiff in his "personal capacity," or otherwise affect him personally.  Rather, NGS is alleged to have purportedly "misrepresent[ed] that the *Slabbed New Media, LLC* posting" infringed on certain copyrights.  Id. ¶¶ 137–40 (emphasis added).  The Second Amended Complaint also specifically alleges, in no uncertain terms, that "Plaintiff Handshoe had no connection to the postings in his individual capacity."  Id. ¶ 137.  That the January 2013 Takedown Notice concerned a posting on Slabbed's website is confirmed by the Notice itself, which makes no reference whatsoever to Plaintiff.  Compl. Ex. 2 at pages 15–17 [D.E. 1].

Plaintiff cannot manufacture standing by purporting to bring this action "in his individual capacity and as publisher of Slabbed New Media, LLC."  Am. Compl. at 1.  This conclusory allegation is directly contradicted by the allegations in the Second Amended Complaint noted above that deny any personal involvement of Plaintiff in these events.  It is well settled that where a complaint's allegations are contradicted by facts pled in the complaint or its exhibits, the court is under no obligation to accept the contradicted allegations as true.  See, e.g., United States *ex rel* Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 377 (5th Cir. 2004); Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940).  Nor can Plaintiff bring a claim on behalf of Slabbed, because it is a company with a separate and distinct legal interest from

7

Plaintiff, and "a fictional legal person can only be represented by licensed counsel." In re K. M. A., Inc., 652 F.2d 398, 399 (5th Cir. 1981).

Because Plaintiff has not suffered any personal injury and is impermissibly seeking to prosecute claims belonging to a third party, his claims must be dismissed for lack of standing.

## II.   THE SECOND AMENDED COMPLAINT OTHERWISE FAILS TO STATE A VIABLE CAUSE OF ACTION AGAINST NGS.

Even if Plaintiff had standing, his Second Amended Complaint would nonetheless be subject to dismissal. As an initial matter, it is a "shotgun pleading" that violates Fed. R. Civ. P. 8 because it fails "to provide fair notice of the nature of Plaintiff['s] claims" against NGS. See Sahlein v. Red Oak Capital, Inc., 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014) (citation omitted). In particular, Plaintiff's "fail[ure] to distinguish between the actions of named defendants," opting almost exclusively to make broad allegations against the "Defendants" generally, rather than distinguishing between the actions of the nine separate Defendants, deprives NGS of fair notice of the claims against it, especially where Plaintiff frequently confuses the photograph at issue in the January 2013 Takedown Notice with another photograph that "was ostensibly owned by the Ashoka Foundation of Virginia."[6] Id. at *3 (citing Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001)); Am. Comp. ¶ 56.[7] The Second Amended Complaint further deprives NGS of fair notice by incorporating the allegations of all "preceding

---

[6]    By way of example, Count 1 of the Second Amended Complaint purports to bring a claim under 17 U.S.C. § 512(f) against "Defendants" based on takedown notice "they" purportedly sent on December 13, 2012, but elsewhere, the Second Amended Complaint alleges that this notice was only sent by "defendant Leary in coordination with Perret and Abel." Am. Comp. ¶ 42. The same is true for the remaining Counts asserting claims under 17 U.S.C. § 512(f) (with the exception of Count 5 as discussed below). Similarly, Count 13 seeks a declaration regarding whether "the underlying Canadian defamation action and its multiple resulting judgments are repugnant to the constitution of the United States of America," but NGS is not alleged to have been—and was not—a party to any of those lawsuits or judgments.

[7]    Although Plaintiff's Second Amended Complaint is unclear, NGS knows of no link between the picture that was subject to the takedown notice and the Ashoka Foundation, nor does Plaintiff provide anything other than conclusory allegations of the same. Plaintiff may be referencing another photograph, which was subject to takedown notices from other Defendants, and the copyright for which is attached as Exhibit B.

paragraphs of th[e] Complaint," into each of the Second Amended Complaint's thirteen Counts, thereby creating a "'situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'" Sahlein, 2014 WL 3046477, at *3 (quoting Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp., 305 F.3d 1293, 1295 (11th Cir. 2002)); Am. Compl. ¶¶ 101, 110, 119, 127, 135, 143, 151, 159, 167, 175, 181, 188, 194.  The inclusion of "'irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired'" makes this Second Amended Complaint "subject to dismissal under Rule 12(b)(6)." Sahlein, 2014 WL 3046477, at *3–4 (citations and internal quotation marks omitted).

Setting these shotgun allegations aside, there are only four Counts of the Second Amended Complaint that could even arguably be interpreted as having been pled against NGS— Counts 5, 10, 11, and 12.  These Counts suffer from multiple fatal flaws that require their dismissal as a matter of law.

### A.  Count 5 Fails To Adequately Plead *Three* of the Required Elements Of a Section 512(f) Claim.

The DMCA expressly limits the liability of an internet service provider for copyright infringement by its subscribers.  17 U.S.C. § 512.  In enacting Section 512, "Congress intended to craft a mechanism that would 'balance the need for rapid response to potential infringement'" with the alleged infringers' "'legitimate interests in not having material removed without recourse.'" Tuteur v. Crosley-Corcoran, 961 F. Supp. 2d 333, 340-41 (D. Mass. 2013) (citation and internal quotation marks omitted).  Section 512's remedies were enacted as an "antidote" for potential abuse of the expedited takedown procedures set forth in Section 512(c) by providing a limited cause of action against those who materially misrepresent that material is infringing.  Id.; 17 U.S.C. § 512(f).

9

Section 512(f) provides in relevant part as follows:

> **Misrepresentations. --** Any person who knowingly *materially misrepresents* under this section **--** (1) that material or activity is infringing, . . . shall be liable for any *damages*, including costs and attorneys' fees, incurred by the *alleged infringer* . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . .

(Emphasis added).   Consequently, to state a claim under Section 512(f), a plaintiff must plausibly allege facts that, if taken as true, would establish, at a minimum, three elements: (1) that the plaintiff is an "alleged infringer" (2) who was the subject of a notice that "knowingly materially misrepresent[ed]" his or her allegedly infringing activity, and (3) who suffered damages as a consequence.  The Second Amended Complaint fails in all three respects.

> 1.   The Second Amended Complaint Concedes that Plaintiff is not the "Alleged Infringer."

"[A] Section 512(f) cause of action accrues to three types of plaintiffs: 'the alleged infringer,' 'any copyright owner or copyright owner's authorized licensee,' or 'a service provider.'"  Lenz v. Universal Music Corp., 2010 WL 702466, at *9 (N.D. Cal. Feb. 25, 2010) [hereinafter "Lenz II"] (citation omitted).  That Plaintiff does not qualify as any of the three is demonstrated by the allegations set forth in Count 5 and throughout the Second Amended Complaint.  Rather, as Plaintiff expressly alleges, "[t]he Takedown Notice of January 7, 2013 represented that *the Slabbed New Media, LLC posting* . . . infringed [certain] copyrights," and "Plaintiff Handshoe had no connection to those postings in his individual capacity."  Am. Compl. ¶¶ 136-37 (emphasis added).  This is confirmed by the January 2013 Takedown Notice, which identifies the "location of the unauthorized material" that is the subject of the Notice as a page on "slabbed.org" and does not reference Plaintiff.  Compl. Ex. 2 at pages 15–17 [D.E. 1].

Because Plaintiff's own allegations confirm that he is not an "alleged infringer" that was the subject of the January 2013 Takedown Notice, his Section 512(f) claim should be dismissed with prejudice.

    2. <u>The January 2013 Takedown Notice Contradicts and Overrides Plaintiff's Conclusory Allegation that NGS Made a "Knowing[ ] . . . Misrepresenta[tion]" of Copyright Infringement.</u>

The second element of any Section 512(f) claim is that a takedown notice include a "knowing[ ] material[ ] misrepresent[ation] . . . that material or activity is infringing."  17 U.S.C. § 512(f); <u>see also, e.g.</u>, <u>Tuteur</u>, 961 F. Supp. 2d at 342 (liability under Section 512(f) can only be imposed upon "demonstration of some actual knowledge of misrepresentation on the part of the copyright owner") (citation and internal quotation marks omitted).  Here, the purported basis for Count 5 is a supposed statement in the January 2013 Takedown Notice that "knowingly materially misrepresent[ed] that the Slabbed New Media, LLC posting infringed on National Geographic/Ashoka Foundation's Copyright."  Am. Compl. ¶ 140.  The January 2013 Takedown Notice, however, contradicts this allegation of a misrepresentation: It says nothing about the Ashoka Foundation, much less states that the image at issue infringed on an Ashoka copyright.[8] Compl. Ex. 2 at pages 15–17 [D.E. 1].  Rather, the January 2013 Takedown Notice states that the image at issue is a "National Geographic copyrighted work"—an undeniably accurate statement (given that the photo clearly displays the NGS copyright, even to this day) that Plaintiff does not challenge.  <u>Id.</u>; <u>see also</u> Ex. A.

Where, as here, a plaintiff's "formulaic recitation[s] of the elements of [the] cause of action" are contradicted by the very document on which the cause of action is premised, those facts must be disregarded.  <u>Iqbal</u>, 556 U.S. at 678 (citations and internal quotation marks

---

[8] The source of this confusion appears to be Plaintiff's mistaken assumption in the Second Amended Complaint regarding the photograph to which NGS's takedown notice applied.

omitted); <u>see, e.g.</u>, <u>Riley</u>, 355 F.3d at 377.  Because the Second Amended Complaint is devoid of any other well-pleaded fact that, if taken as true, would support the inference of a knowingly material misrepresentation of copyright infringement by NGS, Count 5 fails as a matter of law and should be dismissed.

3.   <u>The Second Amended Complaint is Devoid of Allegations to Support Damages, a Required Element of a Section 512(f) Claim.</u>

Plaintiff includes no specific allegations regarding the damages he allegedly sustained as a result of the January 2013 Takedown Notice.  This is a fatal flaw in his Section 512(f) claim, because damages are an essential element of such a cause of action.  <u>See, e.g.</u>, 17 U.S.C. § 512(f); <u>Handshoe v. Abel</u>, 2015 WL 9094344, at *3 (S.D. Miss. Dec. 16, 2015) (refusing to grant default judgment because, among other reasons, plaintiff's Section 512(f) claim did "not adequately allege the amount of damages").  Plaintiff's threadbare recitation of that necessary element of the claim stating that "New Dream Network's decision to require Plaintiff disable access to the Slabbed New Media, LLC posts . . . caus[ed] Plaintiff to incur damages . . . includ[ing] . . . financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech right," <u>see</u> Am. Compl. ¶ 142, is manifestly insufficient to support his claim against NGS.  <u>See</u> <u>Handshoe</u>, 2015 WL 9094344, at *3 (refusing to issue default judgment and entering order for *sua sponte* dismissal in the absence of amendment of another Section 512(f) claim brought by plaintiff because he did not "adequately allege the amount of damages he ha[d] suffered as a direct result of his web host relying on any misrepresentation by [defendants]").  Simply claiming to have incurred indeterminate "financial and personal expenses" to respond to the claim of infringement is clearly not enough, particularly given that, as noted above, the notice was directed to Slabbed, not Plaintiff, and Plaintiff responded in his capacity as publisher of Slabbed.  <u>Cf.</u> <u>Spokeo</u>, 136 S. Ct. at 1549

12

(noting that a plaintiff cannot sustain a claim simply by alleging "a bare procedural violation, divorced from any concrete harm").  Because Plaintiff has failed to include any specific allegations regarding the damages he purportedly suffered as a result of the January 2013 Takedown Notice, Count 5 should be dismissed.

**B.    Counts 10 and 11 Fail As a Matter of Law On Two Independent Grounds: Preemption and Failure to State a Claim.[9]**

1.    Plaintiff's Purported Claims for Fraud and Conspiracy are Preempted by the Federal Copyright Act.

The premise for both Count 10 (civil fraud) and Count 11 (civil conspiracy) is the same: the alleged improper takedown notices regarding photographs posted on the Slabbed website, including the January 2013 Takedown Notice.  See  Am. Compl. ¶ 176 (alleging "a scheme to defraud Plaintiff of his valuable first amendment rights via submission of materially misrepresented takedown notices . . . while actively planning to litigate the dispute in a foreign country"); id. ¶ 182 (alleging Defendants' purported entry into "a civil conspiracy to deprive Plaintiff of his valuable First Amendment rights via submission of multiple misrepresented Takedown Notices pursuant to 17 U.S.C. § 512(f)").  Thus, through his conspiracy and fraud claims, Plaintiff seeks to hold NGS responsible not only for the January 2013 Takedown Notice, but also for purportedly improper takedown notices that NGS did not issue and with which it was not involved.

This relief is directly at odds with the limited, extra-judicial remedies set out in Section 512, which created "a special provision of the Copyright Act . . . that . . .  constitutes the sole remedy for a customer who objects to its contents and their effects."  1 M. Nimmer, Copyright §

---

[9]    Given Plaintiff's concession that NGS has not participated in any litigation with Plaintiff, other than defending this suit, since the January 2013 Takedown Notice, Count 10 does not appear on its face to apply to NGS. Nevertheless, out of an abundance of caution, NGS assumes that Plaintiff intended NGS to be one of the unspecified "Defendants" referenced in Count 10 and, therefore, addresses it herein.

13

1.01[B][3][a] at 1–81.  In particular, permitting Plaintiff's fraud and conspiracy claims to go forward would contradict Section 512(f), which expressly limits a claim for misrepresentation to the person or entity that made the purported misrepresentation.  See 17 U.S.C. § 512(f).

This type of end run around federal copyright law is not permitted.  "The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title.'"  Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(a)); see also Witty v. Delta Air Lines, Inc., 366 F.3d 380, 384 (5th Cir. 2004) ("Under the implied preemption doctrines of field preemption . . ., a state claim is preempted where 'Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme' . . . .") (quoting Hodges v. Delta Airlines, Inc., 44 F.3d 334, 335 n.1 (5th Cir. 1995)).  Thus, state law claims are preempted by the Copyright Act where the claim falls within the subject matter of copyright and protects a right that is equivalent to any of the exclusive rights or interests protected under the Copyright Act.  See, e.g., Daboub v. Gibbons, 42 F.3d 285, 288-89 (5th Cir. 1995).

That is plainly the case here.  The conspiracy and fraud counts that Plaintiff seeks to prosecute are expressly premised on alleged Section 512(f) violations and purport to protect a right—the right to be free from improper takedown notices—that is equivalent to the exclusive rights and interests Congress so carefully balanced in enacting the DCMA.  Outside of the DCMA context, "the majority of courts that have considered this issue have held that civil conspiracy claims are preempted under the Copyright Act, except where the claim involves a conspiracy to commit an underlying tort or wrong other than copyright infringement . . . ."

14

Dutch Jackson IATG, LLC v. The Basketball Mktg. Co., 846 F. Supp. 2d 1044, 1051 (E.D. Mo. 2012)) (citations and internal quotation marks omitted).  As to the DMCA, other courts that have considered preemption with respect to Section 512(f) have concluded that state law claims based on purported illegal takedown notices are preempted.   For example, in Amaretto Ranch Breedables, LLC v. Ozimals, Inc., the Northern District of California considered the question of whether a cause of action for tortious interference with business relations and other state law claims premised on allegedly improper DCMA Takedown Notifications were preempted by the Copyright Act.  2011 WL 2690437, at *3 (N.D. Cal. July 8, 2011).  The court held that they were, joining other courts in concluding "that (1) a DMCA Takedown Notification is a creature of a federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification."  Id.; see also, e.g., Lenz v. Universal Music Corp., 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) [hereinafter "Lenz I"].

Because "DMCA Takedown Notifications are a creature of federal law, and there is a specific federal remedy for their misuse," see Amaretto Ranch Breedables, 2011 WL 2690437, at *5, any state law claims premised on such notices—such as Plaintiff's conspiracy and fraud claims—are plainly preempted.   Counts 10 and 11 should be dismissed with prejudice.

### 2.     Plaintiff's Fraud Allegations are Manifestly Deficient.

Count 10 fails for the independent reason that the Second Amended Complaint does not adequately plead all elements of a civil fraud claim.  Fraud in Mississippi has nine elements, all of which must be adequately pled: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury."  In re Miss. Medicaid Pharm. Average Wholesale Price Litig., 2015 WL

6533344, at *2 (Miss. Oct. 29, 2015) (citation and internal quotation marks omitted).  Moreover, to state a claim, a plaintiff must satisfy the heightened pleading standard for fraud claims under Fed. R. Civ. P. 9(b), which require, among other things, a statement "with particularity [of] the circumstances constituting fraud or mistake" and "what that person obtained thereby."  United States ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc., 2014 WL 3385189, at *22 (S.D. Miss. July 9, 2014) (citations and quotation marks omitted); United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009) (citation omitted).

The allegations in the Second Amended Complaint fall far short of these standards with respect to at least seven of the required nine elements.  As discussed above with respect to Count 5, to the extent that NGS made a representation by sending the January 2013 Takedown Notice to Slabbed's web host, the Notice does not contain the supposed "representation."  See supra § II.A.2.  Nor is there anything in the Second Amended Complaint to indicate that the representation actually in the Takedown Notice—that the photograph at issue is copyrighted by NGS—was false.  Id.  The only allegations touching on the fourth element (knowledge) are purely conclusory, see Am. Compl. ¶¶ 138-41, and allegations regarding NGS's supposed intent are entirely lacking.  See, e.g., Turner v. State Farm Mut. Auto. Ins. Co., 2004 WL 5315004, at *10 (S.D. Miss. July 12, 2004) (dismissing complaint where there was "no evidence that [defendant] made a false representation to [plaintiff] with knowledge of its falsity").  As to the sixth and seventh elements, even if Plaintiff could be considered a "hearer" of the Takedown Notice, his own allegations demonstrate that he was not "ignorant" of the supposed misrepresentation and did not "rely" on it.  To the contrary, in his capacity as publisher of Slabbed, he wrote a response disputing the Notice on Slabbed's behalf.  See Am. Compl. ¶ 58; see also, e.g., Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP, 542 F.3d 475, 483 (5th

Cir. 2008) ("Mississippi cases make clear that a party cannot reasonably rely on a misstatement when the error is obvious to the party or the party knows the truth of the matter."); Waters v. Allegue, 980 So. 2d 314, 318 (Miss. Ct. App. 2008) ("having learned that [defendant's] statement was false before the closing took place, it indicates that the [plaintiff] did not rely on the truth of this statement and did not have a right to rely on the truth of such statement"). Finally, as discussed above, Plaintiff has not alleged any "consequent and proximate injury" that he *personally* suffered as a consequence of the January 2013 Takedown Notice. See *supra* at § I.

Because Plaintiff has not adequately pled at least seven of the nine elements of civil fraud, Count 10 must be dismissed for failure to state a claim under Fed. R. Civ. P. 9(b) and 12(b)(6).

> 3.   Count 11 is Deficient Because the Second Amended Complaint Does Not Adequately Allege the Existence of An Agreement Between NGS and the Other Defendants.

Count 11 is likewise deficient for failure to state a claim.  To state a claim for civil conspiracy in Mississippi, a plaintiff must plead (1) an agreement between two or more persons, (2) for an unlawful purpose, (3) an overt act in furtherance of the conspiracy, and (4) resulting damages to the plaintiff.  Bradley v. Kelley Bros. Contractors, Inc., 117 So. 3d 331, 339 (Miss. Ct. App. 2013).  To satisfy the requirement of pleading an agreement, a complaint cannot rely on conclusory allegations; rather, it must include "pointed and specific factual allegations" identifying how, when, and why the parties entered into the purported agreement to commit an unlawful act.  See, e.g., Ward v. Life Inv'rs Ins. Co. of Am., 383 F. Supp. 2d 882, 890 (S.D. Miss. 2005).

Here, the only allegation in the Second Amended Complaint that even attempts to satisfy this required element is Paragraph 182, which states that Defendants "between themselves entered into a civil conspiracy."  Am. Compl. ¶ 182.  This type of naked legal conclusion is

plainly insufficient and, moreover, does not even mention an alleged agreement.  Consequently, Count 11 should be dismissed for failure to state a claim.  See, e.g., Norris v. Krystaltech Int'l, Inc., 133 F. Supp. 2d 465, 469 (S.D. Miss. 2000) ("'[A] general allegation of conspiracy without a statement of facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to state a cause of action.'") (quoting Fed. R. Civ. P. 8)); Cook v. Wallot, 172 So. 3d 788, 801 (Miss. Ct. App. 2013) (upholding dismissal of an allegation of civil conspiracy because "the complaint alleged no factual basis for any agreement whatsoever").

### C.  Count 12 Fails Because There is No Actual Case or Controversy Sufficient to Support Plaintiff's Request for Declaratory Relief.

"A federal declaratory judgment action requires an actual case or controversy, not a mere hypothetical issue."  Val-Com Acquisitions Trust v. Bank of Am., 436 F. App'x 302, 303 (5th Cir. 2011) (citing Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 242 (1952)).  In order to establish the required case or controversy, a plaintiff must be able to plausibly plead, at a minimum, that he has "a real and reasonable apprehension that he will be subject to liability" if a declaration is not issued.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555–56 (9th Cir. 1990) (internal quotation marks omitted).

Plaintiff cannot satisfy this requirement here, as he has not alleged, and cannot allege, any facts demonstrating a plausible reason why he would have a "reasonable apprehension" that he might be subject to liability from NGS.  To the contrary, as discussed above, Plaintiff disclaims any "connection to the postings in his personal capacity," and the January 2013 Takedown Notice at issue concerns an image on Slabbed's website, not a personal website of Plaintiff.  See, e.g., Am. Compl. ¶ 126.  If he had no personal connection to the posting that was the premise for the January 2013 Takedown Notice, Plaintiff cannot plausibly contend that he has a "reasonable apprehension" of being subjected to liability for that posting.  The Second

Amended Complaint does not contain even conclusory allegations—much less plausible facts—from which it could be reasonably inferred that NGS has ever threatened Plaintiff with individual liability, or may do so in the future.

Even if the January 2013 Takedown Notice had been directed to Plaintiff individually, Count 12 would be properly dismissed.  The text of the Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007) (citations omitted).  Where, as here, the only facts supporting the request for declaratory relief are that the copyright holder filed a takedown notice, but then took no further action (for more than three years), "[t]he  possibility [the plaintiff] will face any liability on the . . . copyright is too speculative to warrant the requested declaration."  Amaretto Ranch Breedables v. Ozimals, Inc., 907 F. Supp. 2d 1080, 1085 (N.D. Cal. 2012); see also, e.g., State of Tex. v. W. Publ'g Co., 882 F.2d 171, 176 (5th Cir. 1989) ("A defendant's simple assertion that they hold a copyright in certain material generally does not amount to a threat of litigation."); Lenz I, 2008 WL 962102 at *5 (finding case or controversy requirement not met when defendant sent takedown notice to YouTube, plaintiff sent counter-notice, defendant did not file an infringement action, and YouTube restored plaintiff's video to its site).  Plaintiff's request for a declaratory judgment regarding NGS's copyright should be dismissed.

**CONCLUSION**

For all the forgoing reasons, Plaintiff's Second Amended Complaint should be dismissed against Defendant NGS under Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).

Respectfully submitted,

DATED: June 30, 2016

*/s/ Jonathan P. Dyal*
Jonathan P. Dyal (MS Bar No. 99146)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Phone: (228) 864-9900
Facsimile: (228) 864-8221
jdyal@balch.com

Lisa R. Bonanno (admitted *pro hac vice*)
Ellen S. Kennedy (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Phone: (202) 637-6591
Facsimile: (202) 637-5910
lisa.bonanno@hoganlovells.com
ellen.kennedy@hoganlovells.com

*Attorneys for Defendant National Geographic Society*

20

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned counsel, do hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record who have registered with the ECF system.

This the 30th day of June, 2016.

                              /s/ Jonathan P. Dyal