# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
AUG 22 2016
BY_____
ARTHUR JOHNSTON           DEPUTY

|  |  |  |
|---|---|---|
| DOUGLAS HANDSHOE | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:15cv382-HSO-JCG |
| | ) | |
| VAUGHN PERRET, CHARLES LEARY & | ) | |
| DANIEL ABEL, D/B/A/ TROUT | ) | |
| POINT LODGE LTD OF NOVA SCOTIA | ) | |
| & IN THEIR INDIVIIDUAL CAPACITIES | ) | |
| PROGRESS MEDIA GROUP LIMITED, | ) | |
| MARILYN SMULDERS, TORSTAR | ) | |
| CORPORATION, NATIONAL | ) | |
| GEOGRAPHIC SOCIETY INC., & THE | ) | |
| ASHOKA FOUNDATION | ) | |
| | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO NATIONAL GEOGRAPHIC SOCIETY'S MOTION TO DISMISS

**COMES NOW INTO COURT,** Plaintiff Douglas Handshoe, in his individual capacity and as Publisher of Slabbed New Media, LLC and submits this Memorandum of Law in Opposition to Ashoka's Motion to Dismiss [ECF #55]. In support thereof he respectfully submits the following:

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff owns and publishes the nationally noted website located at the URI www.slabbed.org[1].  Plaintiff brings this action against Ashoka over their active participation in the attempted cover-up of multiple felonies involving Jefferson Parish President Aaron Broussard via attacks on journalism in the public interest about this very newsworthy political

---

[1] Plaintiff has previously listed a multiple instances where the reporting of Slabbed New Media LLC and its common law predecessor were included and authoritatively cited in main stream media outlets across this area including in a book written by Professor Jay Feinman of the School of Law at Rutgers University. He declines to quibble with the Defendants over the quality of the journalism on the Slabbed New Media website, which has resulted in multiple parties pleading to or being convicted of felonies through time.

corruption scandal, one which dominated the headlines in the greater New Orleans metropolitan area for almost three years.

Ashoka has caused Plaintiff to incur damages both in his capacity as publisher of Slabbed New Media, LLC and individually from the multiple, misrepresented takedown notices they have sent through time to Plaintiff's media company's various webhosts in support of the attempted cover up of Broussard's criminal activity in Canada. Most important however, these takedown notices submitted on National Geographic Society-Ashoka joint venture/common law partnership by the National Geographic Society and Ashoka are misrepresented because the responsible party wholly failed to consider whether the material that was posted to the slabbed.org website that was subjected to the numerous takedown notices constituted "Fair Use" before sending them to various of the Slabbed New Media webhosts through time.

The involvement of Ashoka began on September 7 and 8th, 2011 upon the receipt by the Ashoka Foundation of an email from Defendant Charles Leary. The text of the email reads:[2]

> I am one of the owners of Trout Point Lodge and a 2009 Geotourism Challenge finalist.
>
> Vaughn Perret and I were also delegates to the 2010 Geotourism Summit.
>
> At that Summit, employees of Ashoka took our photograph with our permission. It was assumed that this would be used to promote Changemakers and geotourism.
>
> This photo-located at http://www.changemakers.com/es/stories/trout-point-lodge-makingchange-happen-place-place-has now, however, been republished by someone who is stalking, harassing, threatening, and defaming us. **We have filed a civil law suit in Nova Scotia against the owner/publisher of the blog** slabbed.wordpress.com, who has now used this photograph to defame us not only in words, but now visually as well. The blog is also full of anti-gay hate speech.
>
> The urls of the publication with the photograph is:

---

[2] Please see accompanying affidavit, Exhibit 1, emails between Charles Leary of the Trout Point Criminal Enterprise and the Ashoka Foundation/National Geographic Society regarding the Takedown Notices.

http://slabbed.wordpress.com/2011/09/08/slabbed-solves-the-mystery-on-the-shores-of-the-tusket-river-in-nova-scotia-as-we-reveal-the-trout-point-connection-to-the-jefferson-parish-political-corruption-scandal/

(**Emphasis added**)

On Wednesday, September 28, 2011 Johnathan Ng of Ashoka authorized the first of what would become several takedown notices sent by National Geographic-Ashoka at the behest of the Trout Point Criminal Conspirators, literally targeted at publications that, unwittingly at the time, exposed the glaring inconsistencies between what the Trout Point Group had been claiming in Canada in their SLAPP suit against Louisiana Media Company and underlying public records in Louisiana and Canada. In the case of the post above which Charles Leary complained so bitterly to Ashoka and later to Canadian courts exposed the fact that River Bend lodge was owned personally by Aaron Broussard and was purchased from Broussard in his personal capacity by Defendants Leary and Perret while Leary and Perret had previously sworn in affidavits to the Louisiana Media suit in Canada that Nova Scotia Enterprises LLC of Louisiana owned (and had sold them) River Bend Lodge.[3]

The main consistency among the takedown notices sent by Ashoka is they involved publications to the Slabbed New Media website that were damning to Trout Point in further implicating them Broussard's criminal schemes. Most telling however is the email from Defendant Leary to Ng of Ashoka of September 23, 2011 previously exhibited at ECF #53-2, page 15:

Will Ashoka be submitting a DMCA notice to Automattic, Inc. regarding the use of its copyrighted photograph of Mr. Perret and I. (sic)

---

[3] This was a vital contextual fact as Leary and Perret were also contemporaneously claiming their damages from the New Orleans over the airwaves Louisiana Media broadcast stemmed from the interruption their lucrative business relationship with Nova Scotia Enterprises, which the US Attorney would later reveal in 2012 as a Broussard bribery scheme. Leary and Perret would later admit in another affidavit sworn in 2013 that Nova Scotia Enterprises never owned anything of value at Trout Point in Nova Scotia.

This is a simple procedure, and we find Automattic to be very responsive.

**Neither of us anticipated when we gave Changemakers permission to take our photograph that nit would be used to defame us.**

Finally Ashoka's assertion that they had no involvement sending the Takedown Notice of January 7, 2013 is belied by their own emails between and among the defendants previously exhibited at ECF#53-2 as well as Ashoka's joint press release with the National Geographic Society at ECF#53-5. In this instance the creative work at issue with the January 7, 2013 takedown notice was exhibited to FLICKR via FLICKR account styled "Geotoursim", named for the contest that was jointly sponsored by the Ashoka and National Geographic:

This photo belongs to

geotourism's photostream (121)



Today, Ashoka and National Geographic attempt to differentiate the various copyrights between themselves, making the various takedown notices sent by multiple parties (Leary and Perret, National Geographic and Ashoka) since September 2011 regarding the same content a glorified game of whack-a-mole concerning ownership of the photos that were used in a common law partnership-joint venture, which the joint press release between National Geographic and Ashoka clearly shows existed with regard to the Geotourism contest and the creative works used to promote it.

In fact, a review of the early correspondence between the Trout Point conspirators, the National Geographic Society and Ashoka indicates that subjects such as then alleged Canadian

4

defamation action was mentioned by the Defendants but the term "Fair Use" was not mentioned a single time in the entire email chain as it was not considered by either the Ashoka Foundation or the National Geographic Society prior to sending the first round of Takedown Notices. Plaintiff is referred to in his personal capacity and his capacity as publisher multiple times but the name of the legal owner of the website, Slabbed New Media, LLC do not appear once.

Plaintiff's response to these terribly misguided attacks on the First Amendment perpetrated by Ashoka via multiple misrepresented DMCA Takedown Notices and their subsequent incorporation into a Canadian defamation lawsuit that was the first to be meet the criteria "repugnant to the constitution" under the United States SPEECH Act can only be described as Christian like as he simply turned the other cheek.  However, the Trout Point Criminal Conspirators, enraged that their first Canadian defamation suit, nonsensically pleaded as it was, failed to gain comity due to the United States SPEECH Act decided to repeat the process a second time ultimately joining virtually all of Plaintiff's prior counsel in later lawsuits. When the National Geographic Society and Ashoka again participated with the Trout Point Criminal Conspirators in yet another series of Takedown Notices and subsequent defamation lawsuits emanating from Canada in January 2013, they now have the fight with the Instant Plaintiff that they so clearly wanted when they sent the first Takedown Notice in September 2011 at the behest of Charles Leary, a fight Ashoka will not so easily walk away from.[4]

As Plaintiff has shown, the January 7, 2013 Takedown Notices at issue in this instant litigation was sent simply because Ashoka was instructed to by a party that had no legal interest whatsoever in the creative work at the time the takedown notice was sent. That National

---

[4] Plaintiff vows to meet any additional takedown notices regarding the NGS-Ashoka Foundation photos with litigation as such is the only thing such that seems to gain the attention of the National Geographic Society and the Ashoka Foundation.

Geographic - Ashoka did as instructed by Trout Point without any further apparent investigation including the consideration of Fair Use[5] cannot be gainsaid.

## THE FAIR USE OF THE FLCIKR WEBPAGE SCREEN CAPTURE SUBJECT TO THE JANUARY 7, 2013 TAKEDOWN NOTICE

The creative work subject to the January 7, 2013 Takedown Notice was a screen capture of a webpage, a widely recognized Fair Use specifically allowed under the Copyright Act.[6] The Publications dealt with commentary and analysis on a matter of public interest in the exact nature of Aaron Broussard's ownership interest at the Trout Point development that was subjected to the first set of DMCA Takedown Notices sent by Ashoka and the National Geographic Society to Automattic, Inc., Slabbed's webhost in September 2011.  More important is that the actions of the Defendants themselves strongly imply they recognized the newsworthiness of these matters as Defendant Leary commented to a Canadian New Media website, the Shelburne County Today, about the Slabbed New Media publication of September 6, 2011 itself subject to a DMCA Takedown Notice, which revealed the Louisiana Federal Court suit Condalary v Campbell, 1995 WL 555581 (E.D.La.), which Leary and his "diseased goats" was deeply involved. Further in the context of the new Trout Point Lodge "privacy policy" which became the subject of the previously mentioned Trip Advisor warning and Slabbed New Media's reporting on same, Leary would source a story with the Halifax Chronicle Herald detailing it late in September, 2011.[7]

---

[5] See *Lenz v. Universal Music Corp.* 815 F.3d 1145 (9th Cir. 2016) which found, "To be clear, if a copyright holder ignores or neglects our unequivocal holding that it must consider fair use before sending a takedown notification, it is liable for damages under § 512(f).

[6] That assertion can be found in more law blogs online as well as journalistic legal Q&A websites such as the one maintained by the Electronic Frontier Foundation than can be listed, such analysis ultimately rooted in *Sony Computer Entertainment America v. Bleem*, LLC 214 F.3d 1022 (9th Cir. 2000)

[7] The Halifax Chronicle Herald story titled, *Vacationers at N.S. lodge must sign waivers*, was attached as Exhibit 3 to the affidavit at ECF#53- 4.

Applying the guidance in *Sony Computer Entertainment America v. Bleem*, LLC 214 F.3d 1022 (9th Cir. 2000), each factor in a fair use analysis overwhelmingly favors Plaintiff's use of the screen capture in question as it: 1. was used for an educational purpose in journalism in the public interest. 2. Consisted of a picture of a single contestant of many in the 2009 Geotourism Challenge, an event that was newsworthy in its own right as seen by the joint National Geographic-Ashoka Foundation press release on the event dated July 15, 2009.[8] 3. Was never offered for sale to the public. 4. Which was a component of a FLICKR page that was freely made available on the internet as a promotion for the 2009 contest and 4. Had no intrinsic market value at the time the screen capture of the webpage was posted to the Slabbed New Media website as the component photograph was never offered for sale to the public.

Finally as National Geographic's own emails on the subject illustrate, never once was fair use mentioned or given any consideration prior to sending the original set of takedown notices. Subsequent Takedown Notices would repeat the originals ending with the Takedown Notice sent on January 7, 2013 DMCA, which National Geographic by their own admission then refused to litigate.[9]

## LAW AND ARGUMENT

## STANDARDS FOR DISMISSAL

A claim must be dismissed, pursuant to Rule 12(b)(1), "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of*

---

[8] Attached to affidavit at ECF# 53-5.

[9] Ashoka's role playing Santa Claus to the Aaron Broussard criminal cover up would end shortly thereafter when they assigned their rights in these photos to Leary and Perret, who they knew full well would use to litigate this issue in another Canadian Defamation suit, a Country with no nexus with the underlying chain of events. These Ashoka/NGS photos were in fact included in the expanded damages proceedings of the first failed Canadian defamation suit which was denied comity by this Honorable Court. Leary and Perret had no ownership interest in the creative works at that point in time when they first asserted their claims of infringement.

*Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking to invoke the court's subject matter jurisdiction has the burden of establishing that such jurisdiction exists. *Hartford Ins. Group v. LouCon Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

Rule 12(b)(6) motions are disfavored in the law, and a court will rarely encounter circumstances that justify granting them. *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988). A court may dismiss a claim only when it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations found in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A motion to dismiss should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him or her to relief. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The claimant is not required to set out in detail the facts upon which the claim is based. Rather, the Rules require that the claim simply give the defendant "fair notice." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993). Further, a court may not look beyond the pleadings. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The court must accept as true the allegations in the complaint, and must view the allegations in the light most favorable to the plaintiff. Id. The allegations in the claim need only give the defendants fair notice of the nature of the claim and the grounds on which it rests. See *Mahone*, 836 F.2d at 926. The Rules also dictate that the pleadings be liberally construed "as to do substantial justice." Id.

## I. PLANITIFF HAS THE PROPER STANDING TO BRING THIS ACTION

Ashoka's argument that Plaintiff in his personal Capacity is not the "alleged infringer" is belied by its own emails as well as the statement made to this Court and others as to whom the Canadian lawsuits and Take Down notices were directed. While Plaintiff whole heartedly agrees

8

with National Geographic's assertion, adopted by Ashoka that, given the facts and circumstances there is no way under the law that Plaintiff in his personal capacity could have infringed on any Changemaker Geotourism's copyrights there is no doubt the Notices were directed at him in his personal capacity. The initial email from Charles Leary to the Ashoka contained in Exhibit 1 to the Affidavit in Support of this Motion dated September 8, 2011[10] makes this abundantly clear:

> This photo-located at http://www.changemakers.com/es/stories/trout-point-lodge-makingchange-happen-place-place-has now, however, been republished by someone who is stalking, harassing, threatening, and defaming us. **We have filed a civil law suit in Nova Scotia against the owner/publisher of the blog slabbed.wordpress.com**

The owner of the blog was clearly Slabbed New Media, LLC but the related civil suit was purposely filed only against Plaintiff in his personal capacity with the legal owner of the website completely disregarded. Slabbed New Media LLC, the legal owner of the website, was disclosed on the face of every web page associated with the website clearly listing itself as the legal owner of the interactive website via a copyright disclosure, which stated[11]:

> Slabbed supports the Creative Commons
>
> Slabbed by Slabbed New Media LLC is licensed under a Creative Commons Attribution-ShareAlike 3.0 United States License. Permissions beyond the scope of this license may be available at www.slabbed.org/contact.

The websites contact page clearly listed the legal owner of the website. Had Ashoka and National Geographic Society visited the website before sending the takedown notice of January 7, 2013, they would have discovered a contact page which said:

> Slabbed welcomes reader input.  If you have a question or comment contact Slabbed New Media via email.

---

[10] By that time Plaintiff's had filed and then amended its first Nova Scotia defemation lawsuit styled *Trout Point et al v. Doug K. Handshoe*, clearly aimed at Plaintiff in his personal capacity.

[11] Per web captures of the interactive website by Archive.org. Both the August 5, 2012 and the February 4, 2013 site captures contained the identical language as quoted.  Plaintiff avers this same language has been continuously displayed on the website since January, 2012.

DMCA Notices & other legal inquiries should be sent via email to Slabbed New Media LLC.

US Mail:
Slabbed New Media, LLC
Post Office Box 788
Wiggins, MS 39577-0788

Courier service:
Slabbed New Media LLC
110 Hall Street
Wiggins, MS 39577

Finally, while the documentary evidence associated with the first round of Takedown Notices clearly indicates that both Ashoka and National Geographic sent the Takedown Notices to the Slabbed.org webhosts simply because they were told to by Charles Leary, there is no evidence on the face of these takedown notices that they were ever directed to or at Slabbed New Media, LLC. However, their incorporation into civil suits in Nova Scotia directed at Plaintiff solely in his personal capacity, such fact disclosed to the National Geographic Society by the Trout Point Conspirators, conclusively suggests the alleged infringer within the meaning of Section 512(f) was Plaintiff as Publisher and in his personal capacity, which is yet another knowing misrepresentation contained in the Takedown Notices at issue.

Finally, both Charles Leary and Vaughn Perret made it abundantly clear their complete disregard of the legal owner of the website on May 27, 2016 when they wrote the following:[12]

> Slabbed New Media is a sham business, a blogging hobby for its sole proprietor, who seeks to illegitimately wrap himself in court protection and limit liability for his intentional injurious acts.

---

[12] In Re: Slabbed New Media, LLC, Case Number 15-50963-KMS, ECF#92, Page 9

It is well settled that under Section 230 of the Communications Decency Act at 47 U.S.C. § 230 that publishers of "Interactive Computer Services" can be held liable for Copyright Infringement by specifically exempting the Copyright Act from the scope of the law.[13]

Plaintiff points to the fact that the Ashoka-National Geographic Society's DMCA Takedown Notice sent by their agent Reagan Mathis on January 7, 2013 was not directed to any specific legal entity which is true of all of the DMCA Takedown Notices sent by the Defendants in this matter. However, Defendants own actions and correspondence clearly illustrate the alleged infringer within the meaning of Section 512(f) was Plaintiff as Publisher and in his personal capacity as Slabbed New Media, LLC was completely disregarded. Far from contradicting himself in his pleadings, Plaintiff is pointing out the myriad of misrepresentations contained in the various takedown notices sent by the Defendants through time and these Takedown Notices have clearly caused Plaintiff as Publisher and in his personal capacity damages.

In any event as Publisher, Plaintiff has absolute standing to sue on behalf of his acts as publisher and in this instance personally as the documentary evidence clearly indicates they takedown notices were directed at him exclusively in those capacities.

## ASHOKA'S CLAIM THAT COUNT FIVE DOES NOT ADEQUATELY PLEADS THE THREE REQUIRED ELEMENTS OF A SECTION 512(F) CLAIM IS WITHOUT SUPPORT

This amended complaint states specific causes of action against Ashoka and National Geographic Society and that fact is manifestly self-evident as the Defendant correctly self identifies the counts in the SECOND Amended Complaint which applies to them in their memorandum in support of their motion to dismiss despite their complaints about "shotgun allegations".

---

[13] 47 U.S.C. § 230(e)(2)

As previously discussed, Plaintiff in his Personal Capacity and As Publisher of Slabbed New Media website was the alleged infringer subject to the Takedown Notices. Further, while National Geographic now attempts to wordsmith the joint nature of their ownership of the photos at controversy with Ashoka the fact that Ashoka is not mentioned by National Geographicin the Takedown Notice of January 7, 2013 is a difference without a distinction. As NGS and the Ashoka's own Press release and emails conclusively show, both had an ownership interest in the Geotourism contest promotional photographs and both were involved in the submission of the takedown notices through time.

Finally Plaintiff has adequately pleaded his damages. "Section 512(f) provides for the recovery of "any damages, including costs and attorneys['] fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." 17 U.S.C. § 512(f)." Lenz v. Universal Music Corp. 815 F.3d 1145 (9th Cir. 2016) "We hold a plaintiff may seek recovery of nominal damages for an injury incurred as a result of a § 512(f) misrepresentation." Id.

In this instant matter, Ashoka contends Plaintiff must show "concrete harm" to adequately plead his damages. The Court in Lenz, judging the very amended complaint from which Plaintiff heavily borrowed salient verbiage to style his allegations found the concept of damages under Section 512(f) to be far more encompassing than National Geographic claim finding, "Section 512(k) provides a definition for "monetary relief" as "damages, costs, attorneys['] fees, and any other form of monetary payment." The term "monetary relief" appears in § 512(a), (b)(1), (c)(1), and (d), but is notably absent from § 512(f). As a result, the damages an alleged infringer may recover under § 512(f) from "any person" are broader than monetary relief. Id. "Because

Congress specified the recovery of "any damages," we reject Universal's contention that Congress did not indicate its intent to depart from the common law presumption that a misrepresentation plaintiff must have suffered a monetary loss." Lenz may seek recovery of nominal damages due to an unquantifiable harm suffered as a result of Universal's actions. The DMCA is akin to a statutorily created intentional tort whereby an individual may recover nominal damages for a "knowingly material misrepresentation under this section" Id

### CIVIL FRAUD AND CIVIL CONSPIRACY USING THE 512(f) MISREPRESENTATIONS

The Civil Fraud and Civil Conspiracy torts deal with the discreet acts using the Takedown Notices submitted under United States Law involving United States Copyrights for later use in Canadian civil litigation.  These are separate acts in addition to the 512(f) misrepresentations, rather than 512(f) Misrepresentations stated as Common Law Torts.  The rights at issue here is not the "right to be free of from improper takedown notices", rather it is the right to see the processes outlined under United States Copyright Law were followed, not mixed in matched in various international courts.  Worth noting is both Ashoka and National Geographic ultimately assigned their rights in the Photographs to the Trout Point criminal conspirators precisely so they could file suit in Canada as National Geographic, by their own admission, did not wish to litigate the matter on behalf of its joint venture with Ashoka in the United States.  Plaintiff agrees with National Geographic's strong implication that the Takedown Process is its own form of ex judicial dispute resolution and was not meant to be stuck on simply repeatedly sending Takedown Notices forcing the same content to be temporarily removed only to be restored because the party sending the notices declined to litigate in the United States Courts. In this action, not only did the defendants repeatedly engage the Takedown process without ever

13

litigating their underlying claims in the United States, they then forum shopped these notices in support of a Copyright lawsuit to another country.

It is important to note the fact that the Canadian Copyright Act has no provisions similar to the United States law which calls for the Takedown of material in order for an online service provider to gain immunity for hosting infringing content as such providers generally have immunity under Canadian Law for unknowingly hosting infringing materials.[14]

Finally National Geographic's-Ashoka's contention that Count 12 fails is belied by the false notion there is no actual case or controversy to support it. This action involves engaging United States Law sending multiple Takedown Notices repeatedly aimed at the same content and then forum shopping those Takedown Notices over the same content to Canada, a Country with no connection to the underlying controversy. In this case Plaintiff has already been subjected to liability stemming from Canadian judgments issued regarding United States Copyrights subjected to multiple Takedown Notices sent under U.S. Law. Further, "Continuous and pervasive acts resulting in reasonable fear is enough for injury in fact." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 184 - 185 (2000). This matter is ripe for declaratory judgment given the facts of the case. This is not a simple matter of a single Takedown Notice but rather a systematic pattern of abuse of the Takedown Provisions contained in Section 512 and later use of the misrepresented Takedown Notices in Canadian defamation litigation.

**CONCLUSION**

---

[14] Canadian Copyright Modernization Act, Sections 41.25 – 41.27

14

For all the foregoing reasons, the Amended Complaint should not be dismissed with respect

to Ashoka under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted this 22nd day of August, 2016,

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on August 22, 2016 the foregoing was sent for

electronically filing by me via the Clerk of the Court using the ECF system which sent

notification to all counsel of record upon filing by the Clerk.

Respectfully submitted this 22nd day of August, 2016,

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

16