IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS HANDSHOE                                                                           PLAINTIFF

VS.                                                              CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OFNOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, XYZ
FOUNDATION & JOHN DOES 1-50                                                     DEFENDANTS

**MEMORANDUM OF DEFENDANT TORSTAR CORPORATION IN SUPPORT OF ITS
MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY
JUDGMENT ON PLAINTIFF'S SECOND AMENDED COMPLAINT FOR
DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

Defendant Torstar Corporation ("Torstar") respectfully submits this Memorandum in Support of its Motion to Dismiss or, in the alternative, Motion for Summary Judgment on Plaintiff's Second Amended Complaint for Damages, Declaratory and Injunctive Relief ("SAC" or "Complaint").

Torstar seeks dismissal because the bewildering complexity of the SAC is matched only by its failure to state any sort of claim against Torstar. The gravamen of the SAC against Torstar concerns certain Digital Millennium Copyright Act takedown notices a Canadian citizen sent to Plaintiff Handshoe's website internet providers after Plaintiff posted a photograph alleged to infringe the citizen's copyright. Torstar did not issue the takedown notices, did not authorize the takedown notices, and had nothing to do with the takedown notices other than the fact that the image was linked to one of its news stories about certain Canadian court decisions.

The decision to join Torstar is frivolous, vexatious and nothing but an attempt to discourage it from reporting accurately about this dispute in the future. This Court should grant this motion and dismiss Torstar from this case with prejudice.

### I. BACKGROUND & STATEMENT OF FACTS

This lawsuit is the latest chapter in a long-running feud orchestrated by the Plaintiff, a Mississippi resident who owns Slabbed New Media, LLC, which publishes an online weblog at www.slabbed.org in Mississippi. *See* SAC, at ¶¶2, 31. His weblog is apparently serviced by an internet provider in California and/or Washington. His feud is with two men, Charles Leary and Vaughn Perret who allegedly own Trout Point Lodge Limited in Canada.

Torstar Corporation is a Canadian company; its subsidiary operates an online news site titled *The Toronto Star* in Canada. *Id.* at ¶9.

On August 7, 2012, the Supreme Court of Nova Scotia issued a decision regarding a default judgment for $427,000 entered against Plaintiff in favor of Co-defendants Charles Leary, Vaughn Perret, and Trout Point Lodge Limited in a suit for defamation, invasion of privacy, injurious falsehood, international interference with contractual relations, intentional interference with economic relations, intentional infliction of emotional and mental distress and assault attributed to Plaintiff's online weblog. *See* Exhibit 'A' to [13; 51] Torstar's Answer.

 The Supreme Court of Nova Scotia found that "Mr. Handshoe made extremely derogatory and homophobic comments of the most outrageous kind…." *Id.* at p. 17. Additionally, the Supreme Court of Nova Scotia found Plaintiff's comments to be "anti-gay," "homophobic" and "highly offensive." *Id.* at p. 21. The written opinion of the oral decision was issued on February 1, 2012. *Id.* at p. 1. The next day, Torstar's subsidiary *The Toronto Star*

published on its website an article about the Canadian Court's decision.  The article was entitled "N.S. Court Orders Mississippi Blogger to Pay Gay Couple $425,000."

The United States Court of Appeals for the Fifth Circuit ultimately held that the judgment against Plaintiff could not be collected in a United States District Court.  *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013).

That did not end the controversy between Plaintiff and some of the co-defendants he had attacked.  Rather, they sued Plaintiff a second time for statements he had made on his web blog.  On February 14, 2014, the Supreme Court of Nova Scotia found that Mr. Handshoe had continued to repeatedly publish defamatory words referring to the personal plaintiffs.  *See* Exhibit 'A' to [13; 51] Torstar's Answer, at p. 35.  The Supreme Court of Nova Scotia entered an additional judgment against Plaintiff for defamation and copyright infringement and noted "the actions and words of Mr. Handshoe…are clearly defamatory.  Furthermore they have no relationship to fact or truth." *Id.* at p. 36.

On February 24, 2014, *The Toronto Star* published on its website an article about the 2014 Canadian Court opinion. It was entitled "Nova Scotia Couple Wins Copyright Lawsuit against Homophobic U.S. Blogger."  *See* Exhibit 'B' to [13; 51] Torstar's Answer.

Plaintiff then filed a defamation lawsuit *pro se* in the Circuit Court of Hancock County, Mississippi against Torstar and one of its reporters on February 23, 2015.  Based on complete diversity of citizenship, Torstar removed the case to federal court and subsequently filed a Motion to Dismiss based on lack of personal jurisdiction as well as a lack of merit.  On December 4, 2015, this Court entered a Memorandum Opinion and Order along with a Final Judgment thereby dismissing without prejudice Plaintiff's lawsuit against Torstar, and its reporter, for lack of personal jurisdiction.  *See Handshoe v. Torstar Corp.*, No. 1:15CV113, 2015

U.S. Dist. LEXIS 163045, at *9-10 (S.D. Miss. Dec. 4, 2015).  Plaintiff did not appeal that dismissal.

Now, Plaintiff has filed another suit against Torstar—and several co-defendants—based on a series of Digital Millennium Copyright Act ("DMCA") takedown notices for alleged copyright infringements.

The DMCA, entitled the "Online Copyright Infringement Liability Limitation Act," permits service providers who maintain websites to avoid copyright infringement liability for storing users' content if, among other requirements, a service provider removes or disables the content after receiving notification from a copyright holder that the content is infringing.  *See* 17 U.S.C. §512(c).

Under the DMCA, a takedown notice must include the identity of the allegedly infringing material and a statement that the copyright holder believes in good faith that the infringing material is not authorized by the copyright owner, its agent or the law.  17 U.S.C. §512(c)(3)(A).

Upon receipt of a takedown notice, a service user – the party who posted the offending material -- can possibly restore the removed or disabled content by sending a counter-notification.  17 U.S.C. §512(g)(3)(C).

Should the counter-notification meet the requirements of the DMCA, the service provider web site must inform the copyright holder of the counter-notification and may restore the content within 10 to 14 business days unless the service provider receives notice that the copyright holder has filed a lawsuit. 17 U.S.C. §512(g)(2)(B)-(C).  An entity that abuses the DMCA may be subject to liability under Section 512(f) for knowingly misrepresenting that material is infringing.

4

Based on Plaintiff's SAC, there are two takedown notices at issue as to Torstar. Specifically, Plaintiff claims that Torstar coordinated with co-defendants in a "smear campaign against [him]" based on his California website provider's receipt of a December 31, 2012 DMCA takedown notice.  *See* SAC at ¶52.  Additionally, Plaintiff claims that his Washington website provider received a January 18, 2016 DMCA takedown notice that related to the subject of the December 31, 2012 DMCA takedown notice.  *See* SAC at ¶85.

The first takedown notice, dated December 31, 2012, was submitted by Charles Leary of Trout Point Lodge and states "There are 2 copyrighted works being infringed on slabbed.org hosted by DreamHost…".  *See* Exhibit 'A' to Motion to Dismiss.

The December 31, 2012 takedown notice describes the 2 images and states "the URL where the second copyrighted image appears is http://www.thestar.com/news/canada/article/1125508--mississippi-blogger-must-pay-a-gay-couple-425-000-in-damages-nova-scotia-court-orders."  *Id.*  The takedown notice states "We will pursue legal action against DreamHost under the Canada Copyright Act if these images—either hosted or embedded—are not removed from infringing publication."  *Id.*  The takedown notice provides Charles Leary's contact information and includes statements that he had a good faith belief that the images were not authorized by the copyright owners, their agents or the law, and he swore under penalty of perjury that the takedown notification was accurate and he was the copyright owner or authorized to act on behalf of the copyright owner.  *Id.*

In response to the December 31, 2012 takedown notice, Mr. Handshoe issued a counter-notification on January 2, 2013.  *See* Exhibit 'B' to Motion to Dismiss.  On January 3, 2013, DreamHost notified Charles Leary that the images would be restored online within 10-14

business days barring receipt of a lawsuit and an injunction. *Id.* Torstar does not know whether any suit was filed.

According to the SAC, the second takedown notice, dated January 18, 2016, was submitted by Charles Leary and Vaughn Perret. *See* SAC at ¶85. Aside from Plaintiff's allegations, Torstar has no information about the contents of this January 18, 2016 takedown notice because it did not authorize, send or receive the takedown notice. Further, Plaintiff failed to attach the January 18, 2016 takedown notice as an exhibit to the SAC. In any event, Plaintiff claims that the January 18, 2016 takedown notice "included as infringing an image 'inline linked' to the Copyrighted story belonging to Torstar which was previously subject to the DMCA takedown notice of December 31, 2012." *See* SAC at ¶85. Plaintiff claims, "upon knowledge and belief" that Charles Leary and Vaughn Perret sent the January 18, 2016 takedown notice "acting [sic] as agent of defendant Torstar, Inc." *See* SAC at ¶85.

In response to the January 18, 2016 takedown notice, Plaintiff claims that his service provider "acted expeditiously to require that [he] disable access to the material identified as infringing in the notice." *See* SAC at ¶86. On January 25, 2016, Mr. Handshoe issued a counter-notification in which he stated that he would "replace the blocked or removed material and cease disabling access to it in on February 9, 2016" barring receipt of a lawsuit. *See* Exhibit 'C' to Motion to Dismiss. Torstar is not aware of whether any suit was filed.

Torstar did not author the December 31, 2012 or January 18, 2016 takedown notice(s). It has no connection to Plaintiff's service providers. Torstar was not the recipient of any counter-notification. And, being a Canadian company, it is arguably not even subject to the Digital Millennium Copyright Act. Its only connection to this sequence of events was that the

photograph claimed to be protected by Canadian copyright was published at one point in *The Toronto Star* and is maintained, without controversy, on its website.

Based on the December 31, 2012 and January 18, 2016 takedown notices, Plaintiff attempts to assert two counts against Torstar for Misrepresentation under 17 U.S.C. §512(f). *See* SAC at ¶¶127-134 and ¶¶167-174. Plaintiff also arguably attempts to assert counts against Torstar for Civil Fraud, Civil Conspiracy and for a Declaratory Judgment. *See* SAC at ¶¶175-193.

## II. ARGUMENT

This is a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6). When reviewing a motion to dismiss, the court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Houston Police Dep't.*, 561 F. App'x 372, 374 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555 (2007)).

Alternatively, this is a motion for summary judgment under Fed. R. Civ. P. 56. Summary judgment is appropriate "in any case where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122-23 (5th Cir. 1988)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of

material fact." *Id.*  Once the moving party has carried its burden, the nonmovant must present more than a metaphysical doubt about the material facts.  *Id.* (original citations omitted).  "A claim that further discovery or a trial might reveal facts which the nonmovant is currently unaware of is insufficient to defeat the motion for summary judgment."  *Id.* (citing *Woods v. Federal Home Loan Bank Bd.*, 826 F.2d 1400, 1414-15 (5th Cir.1987)).

This Court should dismiss Plaintiff's claims against Torstar because the Complaint fails to state a claim against Torstar upon which relief can be granted or, alternatively, there is no genuine dispute as to any material fact and Torstar is entitled to judgment as a matter of law.

### A. Plaintiff lacks standing to bring this action against Torstar.

Article III of the Constitution mandates that any party asserting a claim must have standing for a court to have jurisdiction over his grievance.  Standing "is a jurisdictional question which must be resolved as a preliminary matter…by motion under F.R.C.P. 12(b)(1) or on the court's own motion."  *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). To satisfy the Constitutional standing requirement, a plaintiff must allege an injury in fact that is *fairly traceable to the defendant's conduct*.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (emphasis added).  *See also Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 857-58 (S.D. Miss. 2012) (plaintiff must have "suffered an injury in fact" which is "concrete and particularized" and "*a causal connection must exist between the injury complained of and the defendant's conduct*.") (emphasis added).  A plaintiff can only assert "his or her own legal rights and interests rather than the legal rights and interests of third parties."  *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (internal citations omitted).

Here, Plaintiff bears the burden of establishing 1) an injury in fact that is fairly traceable to the actions of Torstar and 2) that he is asserting his own legal rights and interests, not those of

a third party.  For similar reasons as stated in co-defendant National Geographic Society's Motion to Dismiss and Supporting Memorandum, Plaintiff lacks standing to bring this action against Torstar.  *See* NGS's Supporting Memorandum [48] at pp. 5-8.

First, Plaintiff has failed to show that he has sustained any injury that is traceable to Torstar's actions.  As further discussed below, Plaintiff cannot show *any* traceable conduct of Torstar to warrant its inclusion in this lawsuit at all.  Additionally, despite Plaintiff's allegation that he brought this action "in his individual capacity and as publisher of Slabbed New Media, LLC," (SAC at ¶1), he has failed to show that he is asserting his own legal rights.  Instead, he is impermissibly seeking to prosecute claims on behalf of Slabbed New Media, LLC.  Indeed, the SAC—on its face—establishes that the claims—if any—belong to Slabbed New Media, LLC and Plaintiff has no connection in his personal or individual capacity.  *See* SAC at ¶¶128-131 and ¶¶168-172.  Additionally, the takedown notices that Plaintiff arguably (and incorrectly) attributes to Torstar were issued regarding Slabbed New Media, LLC's postings.  *See* Exhibit 'A' to Motion to Dismiss[1]; *see also*, SAC at ¶¶128-131 and ¶¶168-172.  Plaintiff has admitted this fact. *See* [60] Plaintiff's Response to Ashoka's Motion to Dismiss, at 9-10.  Where a complaint's allegations are contradicted by the facts pled in the complaint or its exhibits, the court is under no obligation to accept the contradicted allegations as true.  *United States ex rel Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).  Here, Plaintiff cannot bring a claim on behalf of Slabbed New Media, LLC because it is a company with a separate and distinct legal interest and "a fictional legal person can only be represented by licensed counsel." *In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981).

---

[1] Plaintiff failed to attach the January 18, 2016 takedown notice as an exhibit to the SAC.

Because Plaintiff cannot show any injury that is traceable to Torstar's actions or that he is asserting his own legal rights and interests—not those of a third party, he lacks standing to bring this action against Torstar and his claims should be dismissed.

**B. Plaintiff's Complaint fails to state a claim against Torstar upon which relief can be granted.**

As an initial matter, for similar reasons as stated in co-defendant National Geographic Society's Motion to Dismiss and Supporting Memorandum, Plaintiff's SAC is a "shotgun pleading" that fails to provide fair notice of the nature of his claims against Torstar. *See* NGS's Supporting Memorandum [48] at pp. 8-9. Plaintiff's SAC is vague as to what—if any—activities of Torstar are at issue. Indeed, a review of the 55-page Complaint reveals very few references to Torstar. Arguably, Torstar's connection here stems from the fact that one of the images at issue as referenced in the December 31, 2012 takedown notice, as well as the January 18, 2016 takedown notice, initially appeared on *The Toronto Star*'s website associated with an article that Plaintiff obviously did not appreciate.

While it is unclear what specific activities of Torstar are at issue, it is crystal clear that Torstar did not send any takedown notices at issue in this suit. Plaintiff's SAC does not allege that Torstar sent any takedown notice. As to the December 31, 2012 takedown notice, Plaintiff alleges that:

> [O]n December 31, 2012, **defendants Leary, Perret and Abel, D.B.A. Trout Point Lodge Ltd of Nova Scotia, filed a DMCA takedown notice against the Slabbed New Media LLC website** which claimed ownership of a creative work that ostensibly belonged to Torstar Corporation, which first appeared on the Torstar website in a January 2012 story written by Torstar employee Richard Brennan that promoted Trout Point Lodge's campaign of liberal [sic] terrorism beginning with the first Canadian defamation judgment against instant Plaintiff that was subsequently denied comity by this Court.

SAC at ¶52 (emphasis added).

The December 31, 2012 takedown notice on its face is from Charles Leary of Trout Point Lodge, not Torstar.  *See* Exhibit 'A' to Motion to Dismiss.  Plaintiff does not allege that Torstar filed or sent the December 31, 2012 takedown notice directly.  Instead, Plaintiff alleges that Torstar somehow conspired or "closely coordinated this smear campaign" against him.

As to the January 18, 2016 takedown notice, Plaintiff failed to attach a copy of this takedown notice as an exhibit to any of his Complaints or amendments.  As such, Torstar has no information about the contents of the January 18, 2016 takedown notice.  Based on the allegations in the SAC, however, Plaintiff alleges that:

> **On January 18, 2016 defendants Charles Leary and Vaughn Perret submitted a complaint to Amazon Web Services (AWS), hosting provider of Slabbed New Media, LLC.  AWS construed this complaint as a DMCA Takedown notice….** Additionally Leary and Perret, upon knowledge and belief acting on as agent of defendant Torstar, Inc., included as infringing an image "inline linked" to the Copyrighted story belonging to Torstar which was previously subject to the DMCA takedown notice of December 31, 2012….

SAC at ¶85 (emphasis added).

Accepting the allegations of the SAC as true, co-defendants Charles Leary and Vaughn Perret sent the January 18, 2016 takedown notice, not Torstar.  Plaintiff alleges that co-defendants Leary and Perret were "acting [sic] as agent[s]" of Torstar; however, there are no facts to support that conclusory assertion.

The truth of the matter is Torstar did not send any takedown notice or conspire with any person or entity to send any takedown notice.  Nor has Torstar authorized any person or entity to send any takedown notice at issue on its behalf.  But for this litigation, Torstar would have no knowledge of either of the takedown notices at issue.  And, to this date, Torstar has no information about the contents of the January 18, 2016 takedown notice, as Plaintiff failed to attach it as an exhibit to the SAC.  Torstar Decl. at ¶¶6-7, Exhibit 'D' to Motion to Dismiss.

Plaintiff has failed to show that Torstar has any involvement with the takedown notices at issue here.  That failure necessitates the dismissal of Plaintiff's claims that appear to apply to Torstar: Counts 4 and 9 for Misrepresentation under 17 U.S.C. §512(f); Count 10 for Civil Fraud; Count 11 for Civil Conspiracy; and Count 12 for a Declaratory Judgment.

1. **Plaintiff's Complaint fails to state a claim against Torstar for Misrepresentation under 17 U.S.C. §512(f).**

Although Plaintiff attempts to assert claims for Misrepresentation under 17 U.S.C. §512(f) against Torstar related to the December 31, 2012 and January 18, 2016 takedown notices, those claims must fail.  17 U.S.C. §512(f), in part, provides:

> Any person who knowingly materially misrepresents under this section—(1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer … who is injured by such misrepresentation….

Courts have interpreted 17 U.S.C. §512(f) as "an **expressly limited cause of action** for improper infringement notifications, imposing liability **only if the copyright owner's notification** is a knowing misrepresentation.  A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.  **Rather, there must be a demonstration of some actual knowledge of misrepresentation on the party of the copyright owner**."  *Tuteur v. Crosley-Corcoran*, 961 F.Supp.2d 333, 342 (D. Mass. 2013) (original citations omitted) (emphasis added).

It follows, then, that 17 U.S.C. §512(f) requires proof that Torstar knowingly and materially misrepresented that Plaintiff was infringing.  Plaintiff's SAC falls far short in this regard as it alleges that Torstar either "materially misrepresent[ed]" or "should have known…".  SAC at ¶¶130-131 and ¶¶170-171.

Further, as discussed earlier, Torstar did not send the takedown notices at issue. Plaintiff alleges that the takedown notices were sent on Torstar's behalf or that Torstar "closely coordinated" a smear campaign against him; however, those allegations are entirely speculative and, without more, are insufficient. *See Powertrain Inc. v. Ma*, No. 1:11CV105, 2014 U.S. Dist. LEXIS 109731 at \*29 (N.D. Miss. Aug. 8, 2014) ("Speculation does not suffice to prevent a motion to dismiss.") Torstar did not send any takedown notice or conspire with any person or entity to send any takedown notice. Torstar did not authorize any person or entity to send any takedown notice at issue on its behalf. Torstar Decl. at ¶6, Exhibit 'D' to Motion to Dismiss. Accordingly, Plaintiff's Misrepresentation claims under 17 U.S.C. §512(f) must fail against Torstar.

### 2. Plaintiff's Complaint fails to state a claim against Torstar for Civil Fraud.

Plaintiff's Complaint fails to plead the requisite elements to state any claim for civil fraud against Torstar. To state a claim for civil fraud, Plaintiff must plead the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Gallegos v. Mid-S. Mortgage & Inv., Inc.*, 956 So. 2d 1055, 1059 (Miss. Ct. App. 2007). Additionally, Fed. R. Civ. P. 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud."

Plaintiff's SAC asserts the conclusory allegation that "The Defendants" participated "in a scheme to defraud [him] of his valuable first amendment rights via submission of materially misrepresented takedown notices while actively planning to litigate the dispute in a foreign county after … forcing the removal of constitutionally protected speech." SAC at ¶176.

13

Plaintiff further alleges that "Defendants subsequently sued Plaintiff in Canada [sic] using the misrepresented DMCA Takedown notices." Plaintiff's allegations are wholly devoid of any supporting facts as to Torstar, and such allegations should not be considered for this motion. *Smith v. Hancock Cnty.*, No. 1:14-CV-466, 2015 U.S. Dist. LEXIS 129286, at *2 (S.D. Miss. Sept. 25, 2015) ("the Court will not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions'").

First, as discussed earlier, Torstar did not send any takedown notice or authorize any person or entity to send any takedown notice at issue on its behalf. Torstar Decl. at ¶6, Exhibit 'D' to Motion to Dismiss. Plaintiff, therefore, cannot show that Torstar made *any* representation—let alone a false representation here. Plaintiff's allegation that Torstar has participated in any litigation in Canada against him is equally erroneous. Torstar has not sued Plaintiff in any court. Torstar Decl. at ¶8, Exhibit 'D' to Motion to Dismiss. Thus, Plaintiff's claim for fraud against Torstar must fail.

**3. Plaintiff's Complaint fails to state a claim against Torstar for Civil Conspiracy.**

Plaintiff's Complaint fails to plead the requisite elements to state any claim for civil conspiracy against Torstar. To state a claim for civil conspiracy, Plaintiff must plead the following elements: (1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result. *Holloway v. Lamar Cty*, No. 2:15CV86, 2015 U.S. Dist. LEXIS 168119 at *9 (S.D. Miss. Dec. 16, 2015).

Plaintiff's SAC again asserts only conclusory allegations that "The Defendants between themselves entered into a civil conspiracy to deprive Plaintiff of his valuable First Amendment rights via submission of multiple misrepresented Takedown Notices pursuant to 17 U.S.C.

§512(f)."  SAC at ¶182.  In a similar conclusory fashion, Plaintiff alleges in a footnote that "The Torstar/Trout Point Criminal Conspirator theory in sending the takedown notices are seemingly based on the misguided notion that only Leary and Perret were entitled to voice their opinions on their various and sundry defamation actions they had filed against instant Plaintiff in Canada."  SAC at fn 6.

These allegations are insufficient to state a claim for civil conspiracy.  *See Norris v. Krystaltech Int'l, Inc.*, 133 F.Supp.2d 465, 469 (S.D. Miss. 2000)("[A] general allegation of conspiracy without a statement of facts constituting that conspiracy is only an allegation of a legal conclusion and is insufficient to state a cause of action.")(original citations omitted).  Torstar has not conspired with any of the co-defendants or any other person or entity concerning the December 31, 2012 or January 18, 2016 takedown notices.  Torstar Decl. at ¶6, Exhibit 'D' to Motion to Dismiss.  As such, Plaintiff's claim for civil conspiracy against Torstar should be dismissed.

### 4. Plaintiff's Complaint fails to state a claim against Torstar for a Declaratory Judgment.

Plaintiff's claim against Torstar for a Declaratory Judgment should be dismissed.  "A federal declaratory judgment requires an actual case or controversy and not a mere hypothetical issue."  *Val-Com Acquisitions Trust v. Bank of Am.*, 436, F. App'x 302, 303 (5th Cir. 2011) (original citations omitted).  To establish an actual case or controversy, a plaintiff must plead "a real and reasonable apprehension that he will be subject to liability" if a declaration is not issued.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555-56 (9th Cir. 1989).  *See also*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (U.S. 2007)("Basically, the question in each case is whether the facts alleged, under all circumstances, show that there is a

substantial controversy, between parties having **adverse legal interests**, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.")(emphasis added).

Because Torstar did not send any takedown notice to Plaintiff or authorize any person or entity to do so on its behalf, there is no actual controversy between Plaintiff and Torstar for which declaratory relief is needed or can be granted. And, Torstar has not sued Plaintiff in any court. Torstar Decl. at ¶8, Exhibit 'D' to Motion to Dismiss.

In spite of Plaintiff's apparent fixation with litigation against Torstar, there are no adverse legal interests between him and Torstar. In fact, Torstar has no legal interest in this case whatsoever.

This is the second frivolous suit Plaintiff Handshoe has filed against Torstar. This Court should dismiss Plaintiff's claims against Torstar with prejudice, and stop this abuse of the judicial system.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint against Torstar should be dismissed with prejudice and the Court should grant such other relief as may be warranted.

Respectfully submitted, this 29th day of August, 2016.

                                                TORSTAR CORPORATION

                                                By: *s/Robert C. Galloway*
                                                ROBERT C. GALLOWAY, MB #4388
                                                LUTHER T. MUNFORD, MB #3653
                                                META C. DANZEY, MB #103251

                                                ITS ATTORNEYS

OF COUNSEL:

BUTLER SNOW LLP
1300 Twenty-Fifth Avenue, Suite 204 (39501)
Post Office Drawer 4248
Gulfport, Mississippi  39502
Telephone:  (228) 864-1170
Facsimile:  (228) 868-1531
E-mail: bob.galloway@butlersnow.com
E-mail: meta.danzey@butlersnow.com

BUTLER SNOW LLP
1020 Highland Colony Parkway, Ste. 1400
Ridgeland, Mississippi 39157
Telephone:  (601) 948-5711
Facsimile:   (601) 985-4500
E-mail: luther.munford@butlersnow.com

## **CERTIFICATE OF SERVICE**

I, Robert C. Galloway, one of the attorneys for Torstar Corporation, hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

So certified, this 29th day of August, 2016.

*s/Robert C. Galloway*
ROBERT C. GALLOWAY

32078771v1