IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DOUGLAS HANDSHOE**                                                                 **PLAINTIFF**

VS.                                              CIVIL ACTION NO. 1:15cv382HSO-JCG

**VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OFNOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, XYZ
FOUNDATION & JOHN DOES 1-50**                                   **DEFENDANTS**

---

**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE
MOTION OF VAUGHN PERRET AND CHARLES LEARY TO
DISMISS THE SECOND AMENDED COMPLAINT**

---

**What this case is about.** This case – this *particular* case among so many others arising from kindred if not universally common facts in each instance – has two points of beginning. The first is the misappropriation of copyrighted images and the subsequent efforts to prevent the continued misappropriation. The second – as best as can be told from the Plaintiff's pleadings – is a 2014 judgment of the Supreme Court of Nova Scotia with regard to that misappropriation, among other relief granted. The first is not actionable and the second is not properly before this Court, the question having been adjudicated by this Court in a prior action.[1] As that is the sum of all allegations in the Second Amended Complaint, it must be dismissed.

This case is about standing. At the pointed end, the Plaintiff quite obviously confuses the distinction between "sue" and "be sued," contending throughout the Second Amended Complaint

---

[1] *Perret, et al. v. Handshoe*, 1:16-cv-00007-LG-RHW.

that he has no individual liability for *anything* that he does in his mythical personage of New Slab Media publisher, yet he has individual standing to assert the rights of his incorporeal master, the limited liability company.²

This case is about this Court's jurisdiction.  The Plaintiff seeks a declaratory judgment that he can, in the future, appropriate copyrighted material for any purpose, that any use to which he puts it is "fair use," that he be granted immunity from personal liability for any future use, and that the Court prevent Perret and Leary from bringing an action against him for any of it.  The Plaintiff also seeks a declaration that neither a defamation judgment nor one for copyright infringement is enforceable, when the controversy is not properly in a forum over which this Court can assume jurisdiction.  He also seeks by declaratory judgment action to re-litigate enforcement of a <u>non-defamation</u> judgment that was filed in a Mississippi court, removed by him to this Court, and remanded back to state court.  The Court has no jurisdiction to do any of things for which Plaintiff seeks a declaration.

**What this case is not about.**  This case is not about "libel tourism" or a SLAPP suit. Perret and Leary did not seek some exotic foreign jurisdiction favorable to strategic lawsuits designed to harass critics and force detractors to defend baseless suits there.  As the Second Amended Complaint alleges, they reside in Nova Scotia; and it was in the jurisdiction where they live and earn a living that they sought redress.  They were sought out *there* by Handshoe; and it is they that have been harassed.  *See,* Exh. 4 to the original Complaint. [1-5].

This case is not about free speech.  Throughout his many filings in this action, the Plaintiff weaves a tale of intrigue, fancying himself the hero in all of it, in which he suffers long to uphold the

---

² Throughout his complaints and other filings with the Court, one of the Plaintiff's primary sophisms is the advancement of the notion that he can sow all manner of mischief from behind the impenetrable shield of limited liability while simultaneously championing in his own name those rights and privileges that are the sole province and property of a legally distinct, incorporeal entity.  By logic as much as by law, he has the entire concept ***exactly*** backward.

First Amendment against "third world"[3] evildoers.  But the action before this Court, as framed now by the Second Amended Complaint, is not about the First Amendment, even by virtue of its relationship to the SPEECH ACT.

The SPEECH ACT does not contemplate governmental actors silencing the citizenry.  The Act merely applies a two-pronged gate-keeping standard, one part of which turns on whether a foreign defamation judgment derives from a country that offers protections at least as great as the First Amendment.  The other, more ignoble but equally-applicable standard is based simply upon whether the adjudicated facts would support a defamation judgment in the domestic forum where the judgment is sought to be enrolled.

This case is not about the fair use doctrine.  Slabbed New Media is not a non-profit enterprise.  It purpose is not educational as that term is contemplated under copyright law.  The allegations of the Second Amended Complaint and the standard they purport to set make the foregoing self-evident.

**What this case is, and is not about.**  The declaratory relief counts are about Douglas Handshoe attempting to obtain from this Court the unfettered ability to misappropriate copyrighted material at some future points for any purposes, including harassment and abuse (as the requested relief, if granted, would allow), and to do so with absolute personal immunity.  It's about his attempt to circumvent this Court's order, in a separate action, that remanded to state court an action to enforce a non-defamation[4] judgment against him in his individual capacity.[5]  It is about Handshoe's attempt to advance in his own name claims belonging (if to anyone) to Slabbed New Media, LLC, a non-party.  What all of that is ultimately about is the misadventure toward a judicial merger of the

---

[3] It would seem that, in the mind of the Plaintiff at least, Canada is a third-world country. SAC, ¶ 184.
[4] The SPEECH ACT confines itself to foreign **defamation-based** judgments.  See 28 U.S.C. § 4102(a)(1) ("*a domestic court shall not recognize or enforce a foreign judgment **for defamation**….*")(emphasis added).
[5] *See*, *Perret, et al. v. Handshoe*, 1:16-cv-00007-LG-RHW, "Order Granting Plaintiffs' Motion to Remand," Document #8 in that cause.  The copyright-based judgment at issue there is the same copyright-based judgment here.

man and the company that would turn the plowshare of limited liability into a sword. And surely, it is not about to happen.

**Note Bene.** The Plaintiff would make much of the omission of reference to the January 2016 Takedown Notice in Perret and Leary's principle memorandum, but the omission was simply a harmless oversight. Arguments advanced with respect to claims against Perret and Leary in the Second Amended Complaint that are based on 17 U.S.C. § 512(f) are quite obviously indistinct and applicable to all the claims. Additionally, Perret and Leary herein re-adopt the arguments advanced by their co-defendants to full extent applicable to the claims against them.

*   *   *   *   *

**Standard of Review.** The standard applicable to motions under Rule 12(b)(6) is well known, and it is sufficient to say that the allegations of the well-pleaded complaint must be viewed in a light most favorable to the non-moving party. *See, e.g., Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir.2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir.1999))*. It is not well, though, for Mr. Handshoe to seek refuge in that standard. Though nearly lost amid the "bewildering complexity"[6] of allegations within the Plaintiff's Second Amended Complaint, it is both ironic and incredulous that Handshoe advises this Court in his response that "the claim [must] simply give the defendant 'fair notice,'" and that Handshoe "is not required to set out in detail the facts upon which the claim is based." *See,* Pl.'s Mem., p. 3. Perforce, the Second Amended Complaint should be dismissed as a flagrant violation of the requirements.

**Standing.** To confer jurisdiction in this Court for the alleged violations of 17 U.S.C. § 512(f), the Plaintiff must do more than make bare assertions of nebulous injury. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635, 84 USLW 42631547 (2016). The doctrine limits those

---

[6] Torstar's Memorandum, Number 65 at p. 1.

persons that may "maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* The "irreducible constitutional minimum" of standing consists of three elements a Plaintiff must allege: (1) injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likelihood that the alleged wrong will be redressed by a favorable decision. *Id.* Again, the motion now before the Court is constrained to the allegations of the Second Amended Complaint, and so, the Plaintiff must "clearly allege facts demonstrating each element." *Id.*, (citing, *Warth v. Seldin,* 422 U.S. 490, 518 (1975)).

The *Spokeo* court was concerned with a private right of action arising under a federal statute; not unlike the Plaintiff's claims arising under 17 U.S.C. § 512(f). 136 S.Ct. at 1544. Exploring further the "injury in fact" element of standing, the Court held that the Plaintiff was required, not only to allege the violation of a statutory right, but to allege "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*, at 1548 (citing, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

For an injury to be "particularized," it must affect the Plaintiff "in a personal and individual way." 136 S.Ct. at 1548. Each of the takedown notices at issue in this case were directed to companies providing internet services, not to the Plaintiff, but to Slabbed New Media, LLC, as the Second Amended Complaint ("SAC") makes clear. *See,* SAC, *esp.,* ¶¶ 42 – 86. Handshoe agrees: "Plaintiff in his personal capacity had no connection to the illustrative use of the photographs in question." SAC, ¶¶ 89, 90. "Plaintiff Handshoe had no connection to those postings in his personal capacity." SAC, ¶¶121, 129. Just the same way, Handshoe has no connection to the alleged violations of § 512(f) in his personal capacity, and no standing.[7]

---

[7] In further derogation of the notion of Plaintiff's individual standing, the Second Amended Complaint clearly alleges that every single one of the takedown notices were occasioned by the actions of Slabbed New Media, LLC. *See,* SAC, ¶¶ 113, 115, 122, 124, 130, 132, 138, 140, 146, 148, 154, 156, 162, 164, 170, and 172. In addition, the Plaintiff repeatedly affirms this misguided mantra throughout the whole of his memorandum in opposition to the instant motion.

The *standing* inquiry does not stop there. The *Spokeo* court (in reversing the Ninth Circuit Court of Appeals on this issue), made clear that, while "particularization" is required, it is not sufficient; a plaintiff must also clearly allege a "concrete" injury. 136 S.Ct. at 1548. To be concrete, the injury must be alleged to be real, not abstract. *Id.*, (citations omitted). In the context of a private right of action created by federal statute, it is not sufficient to meet the requirement of a *concrete* injury to simply allege the violation. *Id.*, at 1549. Instead, there must be a "deprivation of a procedural right" accompanied by "some concrete interest that is affected by the deprivation…." *Id.* (citations omitted).[8]

The "injuries" universally alleged in the Second Amended Complaint with respect to the takedown notices are limited to nebulous assertions with respect to "financial and personal expenses associated with responding to the [takedown notices]" and a deprivation of his right to free speech. SAC, ¶¶ 109, 118, 126, 134, 142, 150, 158, 166, 174, 180, and 186. Additionally, the Plaintiff claims, "harm to his investment in Slabbed New Media, LLC," in Counts VII, IX, and X. SAC, ¶¶ 158, 174, 180. Finally, at Count XI, the Plaintiff alleges loss of professional reputation. SAC, ¶ 186. Throughout the Second Amended Complaint, all the Plaintiff alleges is a collection of amorphous generalities with respect to damages. What the Plaintiff **does not do** is allege any CONCRETE damages of any kind.

The Second Amended Complaint evinces a universal failure to allege any particularized, concrete damages. The Plaintiff cannot bring a claim against Perret and Leary, as private citizens, for a deprivation to his rights under the First Amendment. The Plaintiff alleges nebulous damages for what must be assumed to be a diminution in the value of his membership interest in Slabbed New Media, but that claim would necessarily be derivative of some loss to the company and only the

---

[8] Again, that interest must be alleged to be "particularized" to the Plaintiff, which the Second Amended Complaint does not do.

company would have a right of action for such damages.  Finally, the Plaintiff alleges in conjunction with a claimed conspiracy[9] damage to his reputation.  Nothing in the Second Amended Complaint alleges any harm to Handshoe's reputation.  For all of the foregoing reasons, Handshoe lacks standing.

**Real Party in Interest/Right to Sue.**  In his memorandum opposing the motion now before the Court (as with the Second Amended Complaint), the Plaintiff disclaims all individual liability for his actions while allegedly acting for Slabbed New Media, LLC, suggesting thereby that (while he may nonetheless maintain claims rightly belonging to the company) he has no personal liability for copyright infringements published through the site owned by the company.  *See, e.g.,* SAC, ¶ 192 ("Plaintiff Handshoe is entitled to declaratory judgment that as a matter of law he has no liability in his personal capacity over content belonging to a third party in which he acts as agent pursuant to the Mississippi Limited Liability Act").  *See, also,* SAC, ¶¶ 89-90, 121, 129.

There is no question that, under Mississippi law, while a corporate agent may not generally be held personally liable *in contract* for the obligations of a disclosed principal, he nonetheless certainly remains liable for the torts and intentional wrongs he commits.  *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000)("*an agent for a disclosed principal can be held personally liable for his own tortious acts committed within the scope of his employment.*"  Citing, *Wheeler v. Frito–Lay, Inc.*, 743 F.Supp. 483, 487 (S.D.Miss.1990)).

Perhaps Handshoe says it best (however inadvertently) at Paragraph 89 of the Second Amended Complaint, "Plaintiff in his personal capacity had no connection to the illustrative use of the photographs in question. However publisher Handshoe and Slabbed New Media, LLC's use of the creative works . . . is permitted."  There is no "publisher" standing; that's a fantasy.  Therefore,

---

[9] Which count fails for the requisite specificity under F.R.C.P. 9(b).

the Court is faced with whether Douglas Handshoe, the individual, may assert claims belonging to Slabbed New Media, LLC. There is no serious question that he cannot.

**Declaratory Relief.** Beyond demanding that Defendants Perret and Leary be held liable to him personally for seeking to prevent the misappropriation of copyrighted images, even though he vehemently denies that he "individually" misappropriated the images, the Plaintiff goes on to ask this Court in the very plain terms of Count XII to grant him all **future, unlimited appropriations** of "the [copyrighted] images in question," (*Id.*, ¶ 191)(which inarguably do not belong to him); to **preordain that such future uses** (whatever they may be) will forever after constitute "fair use," (*Id.*); to hold him harmless from **any personal liability for any use of any content belonging to any other person** so long as he is acting as the agent of a Mississippi limited liability company, (*Id.*, ¶ 192); and to require that Perret, Leary, and their assigns be forever estopped from seeking redress against him, not only for any violation of any copyright, but for any cause of action of any kind arising anywhere in the world, lest they first come to South Mississippi and get this Court's permission to do so. (*Id.*, ¶ 193).

A California District Court, in considering a closely analogous case, first observed that a declaratory relief claim must allege facts sufficient to establish an actual controversy. *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265, 1269 (2007)(citing, *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980)). The disagreement "must not be nebulous or contingent." *Id.* It "must have taken on a fixed and final shape so that a court can see what legal issues it is deciding and what effects its decision will have on the adversaries." *Id.* (citations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance *of* a declaratory judgment. *Id.* (citing, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)).

In its demands, Count XII of the Second Amended Complaint invites the Court to step beyond its jurisdictional borders, beyond its constitutional purview, and to take up a station more akin to a fortune teller. As in the *Veoh* case, the Plaintiff here seeks a blanket advisory declaration that all potential future uses of the images that are inarguably copyrighted are permitted him. That court observed, "In this case, a declaratory relief action using Section 512 as a sword, rather than a shield, presents particular problems…Plaintiff's requested declaratory relief, given the vagaries of Plaintiff's Complaint, would seemingly insulate Plaintiff's business model against all infringement claims, from every copyright holder, for all time." *See, Veoh,* 522 F.Supp 2d at 1271. While the Plaintiff here is slightly less ambitious,[10] this Court should, as the Court there did, decline to exercise discretionary jurisdiction. *See, id.*

In his other claim for declaratory relief, Count XIII of the Second Amended Complaint (in title only alleged to arise under the SPEECH ACT, 28 U.S.C. § 4101, *et seq.*), the Plaintiff suggests that there is a "real and actual controversy" with respect to "the Canadian defamation action and its multiple resulting judgments," (SAC, ¶ 195). The plain wording of the claim, without more, demonstrates that it cannot succeed on any interpretation of the facts alleged, and must be dismissed. Beyond that, however, the vague and (at points) inconsistent allegations of the Second Amended Complaint make it prudent to distinguish the referenced action from an earlier action and judgment, inapposite to Plaintiff's attempts in this last count of the Second Amended Complaint to subtly conjoin them.

The Second Amended Complaint exhibits (by reference to both the Complaint [1], and the First Amended Complaint [9]) *Trout Point Lodge Ltd. v. Handshoe*, 2014 NSSC 62 (S.Ct. Nova Scotia, Docket No. 411345). *See*, [1-2], [1-3], [1-4], [1-5], [9-1], and [9-2]. But that is not a "defamation

---

[10] While the Plaintiff does not *today* seek insulation from "every" copyright holder, his vague allegations would, if successful, give him the arguable position that he should similarly be permitted like mischief with all copyrighted material as there would be no point of distinction discernible to the ordinary man.

judgment" per se, rather, it is two bifurcated judgments, only one of which sounds in defamation. *See, Perret, et al. v. Handshoe*, 1:16-cv-00007-LG-RHW, "Order Granting Plaintiff's Motion to Remand," at p. 7.[11] *See, also,* ¶¶ 74, and [9-1], [9-2].

But the Plaintiff goes on to imply a lack of distinction between the 2014 Canadian action and an earlier one, a *prior* Canadian defamation judgment that was sought to be enrolled in Mississippi without success.[12] *See, Trout Point Lodge, Limited v. Handshoe*, 729 F.3d 481 (5th Cir 2013).

It is plain from the Decision in the 2014 Canadian action (Exh. 3 [1-4] to the original complaint in this action), that it constitutes a new, distinct action from the 2012 Canadian action. *See, Id.,* at p. 4 of 19 (¶ 5 of the Decision)("*[t]his proceeding represents the second round of litigation between these parties. In the first proceeding (2012 NSSC 245) these applicants obtained default judgment against Mr. Handshoe in an action filed in 2011*").

At points in the Second Amended Complaint, the Plaintiff plainly acknowledges the distinction. SAC, ¶ 40 ("*during the pendency of their first action against Plaintiff in United States District Court seeking enforcement of their first Canadian defamation judgment, defendants Leary and Perret filed another defamation suit in Canada against plaintiff….*"). *See, also, Id.*, ¶¶ 52, 61, and 76. In Count XIII of the Second Amended Complaint, however, the Plaintiff seems to exceed his grasp of the distinction, alleging that the 2014 Canadian action is somehow inextricably linked to that of 2012, and that *both* resulting bifurcated judgments are thereby inherently flawed. *See,* SAC, ¶¶ 198-200. He misinterprets the law in three ways, all fatal to this final cause of action.

First, the foreign judgment resulting from the 2012 Canadian action was litigated to conclusion in another action in this Court[13] and affirmed on appeal to the 5th Circuit. This Court

---

[11] It is to be noted somewhat preemptively that the Court there did not take issue with the bifurcation of judgments based upon distinct underlying theories of recovery.
[12] (2012 NSSC 245)(S.Ct. Nova Scotia).
[13] *See*, 1:12-cv-00090-LG-JMR, *on appeal, Trout Point Lodge, Limited v. Handshoe*, 729 F.3d 481 (5th Cir 2013).

has no jurisdiction in the present action with respect to any claim based upon that subject matter, and so, it must be dismissed on that basis.

Next, the two bifurcated judgments in the 2014 Canadian action (exhibited to this action) must be further distinguished.  The first judgment [9-1], is facially, and with reference to the Decision [1-4], clearly grounded in copyright infringement.  As clearly, it is not subject to the SPEECH ACT.  28 U.S.C. § 4101, *et seq.*, *Trout Point Lodge, Limited v. Handshoe*, 729 F.3d 481, 487 (5th Cir 2013)("Trout Point I").  In any case, this Court could not exercise jurisdiction over the copyright infringement judgment in any case, given that the matter was previously before the Court in *Perret, et al. v. Handshoe*, 1:16-cv-00007-LG-RHW, and was remanded back to Hancock County, Mississippi Circuit Court.

That leaves the other half of the 2014 Canadian bifurcated judgment [9-2], which *is* a defamation-based judgment; but one that has never sought to be enrolled anywhere in the United States.  It is not possible, though, for this Court to grant declaratory relief with regard to that judgment in the circumstances.

The SPEECH ACT purports to provide an opportunity for declaratory judgment relief regarding foreign defamation judgments. 28 U.S.C. § 4104.  To prevail, however, a plaintiff bears the burden of "of establishing that the foreign judgment would not be enforceable under section 4102 (a), (b), or (c)."  *Id.*  The 5th Circuit's ruling in Trout Point I, however, demonstrates that declaratory judgment relief can never be granted *offensively*, that is, as a cause of action independent of an attempt by the judgment creditor to enroll the foreign judgment in a given jurisdiction.  That is because the second [independent] prong of the SPEECH ACT, based on § 4102(a)(1)(B), allows for enforcement of a judgment where "the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the [F]irst [A]mendment to the Constitution of the United States <u>and the constitution and law of the State in</u>

which the domestic court is located." Trout Point I, 729 F.3d at 488 (emphasis added).  *A fortiori*, in order for a court to know which forum's law to apply, the court would necessarily have to await an attempted enforcement in that forum.  Any anticipatory declaration would be meaningless and outside the jurisdiction of a court.  In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the High Court reiterated the nature of the case-or-controversy requirement for a declaratory judgment action: "[o]ur decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *Id.* at 127 (citations omitted).  Logically, then, under the express language of § 4102 and Trout Point I, in order for a declaratory judgment action to present a real case or controversy, and thus confer jurisdiction in this or any court, the foreign judgment must first seek its forum.

The *MedImmune* court further advises the instant motion:  "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' 28 U.S.C. § 2201(a) (emphasis added), not that it *must* do so. This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  549 U.S. at 136 (emphasis in the original).  May it please the Court, it is respectfully suggested that this case epitomizes those occasions upon which the Court should refrain from exercising discretionary jurisdiction.[14]

**Fair Use.**  The Plaintiff takes it as given that a complaining party must, in conjunction with a takedown notice, consider "fair use" but that is not the case.  In a case of first impression under 17

---

[14] In addition to considerations specific to this action, in making a declaration "touching the legal relations of parties having adverse legal interests," *MedImmune*, 549 U.S. at 136, this Court would necessarily have to venture into a new and relatively untested area of the law; and beyond that, perhaps anticipate potential changes in Mississippi defamation law for years to come, and their impact on the precedential value of Trout Point I.

U.S.C. § 512, the court in *Lenz v. Universal Music Corp.*, 801 F.3d 1126 (9th Cir. 2015), held that a component of the good faith certificate of a complaining party is the consideration of "fair use" under 17 U.S.C. § 107. *Id.,* at 1132. That single case stands in opposition to the heretofore limited province of "fair use" as an affirmative defense to a copyright violation claim. It has no precedential value and should not be extended beyond its traditional office (which is equal in its current form to the task of upholding § 512(f) in actions alleging a bad faith assertion of a takedown notice).

Beyond that and the arguments already advanced, the sum of which make the fair use doctrine unavailable to Plaintiff in the manner and at the point he attempts to employ it, it is well to be remembered that the application of the doctrine at this stage, would (as with all others) need to be "clearly established" by the allegations of the Second Amended Complaint. *Spokeo,* 136 S.Ct. at 1547. Stated another way, only the express allegations of the Second Amended Complaint can support a claim of fair use; and the Plaintiff has thus restricted his claims to those based upon an educational use. In view of the elements of fair use, Perret and Leary respectfully contend that the Plaintiff has not clearly established fair use when viewed against all of the factors, especially considering the purpose and character for which entire photographs have been misappropriated.

In view of the foregoing, Perret and Leary urge this Court to dismiss the Second Amended Complaint as to them. Inasmuch as the Plaintiff has been accorded more than ample opportunity to advance his claims, they respectfully request that such dismissal be with prejudice. In the event that the Court does not grant the primary requested relief, they ask that the Second Amended Complaint in its present form be stricken, and that Plaintiff be required to re-plead in compliance with the rules

Case 1:15-cv-00382-HSO-JCG   Document 80   Filed 11/01/16   Page 14 of 14

applicable to pleadings. In view of his opposition to this motion, he demonstrates his understanding of at least those minimal requirements.

    Respectfully submitted,

                                            */s/ Jason B. Purvis*
                                Jason P. Purvis (MS Bar No. 100873)
                                PURVIS & CO, PLLC
                                14110 Airport Rd, Suite A
                                Gulfport, MS 39503
                                Telephone: 228-206-7174
                                jpurvis@purviscolaw.com

                                *Attorneys for Vaughn Perret and Charles Leary*

## **CERTIFICATE OF SERVICE**

    I, Jason B. Purvis, an attorney for VAUGHN PERRET and CHARLES LEARY, hereby certify that, on this day, I electronically filed the foregoing pleading or other paper with the Clerk of the Court via the Mississippi Electronic Courts system which provides service on all counsel of record. Persons not participating in MEC have been served by other means as indicated below for each (if any):

        None

    So certified on this, this the 1st day of November, 2016.

                                            */s/Jason B. Purvis*