# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JAN 26 2017

ARTHUR JOHNSTON

BY_____DEPUTY

DOUGLAS HANDSHOE                      )
                                     )
                                     )
v.                                   )     CIVIL ACTION NO. 1:15cv382-HSO-JCG
                                     )
VAUGHN PERRET, CHARLES LEARY &       )
DANIEL ABEL, D/B/A/ TROUT            )
POINT LODGE LTD OF NOVA SCOTIA       )
& IN THEIR INDIVIIDUAL CAPACITIES    )     **COMPLAINT FOR VIOLATIONS**
PROGRESS MEDIA GROUP LIMITED of Nova )     **OF 17 U.S.C. § 512(F) AND FOR**
MARILYN SMULDERS & ASHOKA   Scotia   )     **DECLARATORY JUDGMENTS**
                                     )     **PURSUANT TO 28 U.S.C. §§ 2201**
                                     )     **& 4101 ET SEQ**
                                     )
                                     )

## THIRD AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

**COMES NOW INTO COURT**, Plaintiff Douglas Handshoe, in his individual capacity and as publisher of Slabbed New Media, LLC, who files this complaint against Defendants Vaughn Perret, Charles Leary, Daniel Abel D.B.A Trout Point Lodge Ltd of Nova Scotia and in their individual capacities, Progress Media Group Limited of Nova Scotia, and Marilyn Smulders for misrepresentations pursuant to 17 U.S.C. § 512(f). Plaintiff also requests Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 et seq. against Defendants Vaughn Perret, Charles Leary, Daniel Abel D.B.A Trout Point Lodge Ltd of Nova Scotia and in their individual capacities, Progress Media Group Limited of Nova Scotia, Marilyn Smulders, and Ashoka and Declaratory Judgment pursuant to 28 U.S.C. §§ 4101 et seq. against Defendants Vaughn Perret, Charles Leary, Daniel Abel D.B.A Trout Point Lodge Ltd of Nova Scotia and in their individual capacities. Plaintiff also seeks injunctive relief and states as follows:

1

## I. INTRODUCTION AND NATURE OF ACTION

1.  This is a case about the misuse of the United States copyright laws as one of many tactics in a campaign of libel terrorism and related Canadian smear campaigns directed towards Plaintiff and Plaintiff's lawyers in Mississippi and Louisiana from Canada, a country without the Free Speech and procedural due process protections contained in the United States Constitution, in an attempt to suppress truthful reporting on matters in the public court record involving a massive political corruption scandal, resulting criminal investigation, conviction and incarceration of former Jefferson Parish President Aaron Broussard.  In one of many such corrupt self-enrichment schemes perpetrated by Broussard, he used his Canadian property holdings managed by his unindicted criminal co-conspirators, Defendants Perret, Leary and Abel d/b/a Trout Point Lodge Limited of Nova Scotia, to perpetrate bribery and money laundering schemes involving politically connected individuals that did substantial business with the Parish of Jefferson, Louisiana.  These defendants solicited and subsequently were joined in their campaign of libel terrorism and misuse of the United States Copyright laws to suppress journalism in the public interest by Defendants Progress Media Group Limited of Nova Scotia, Marilyn Smulders and Ashoka. These Defendants all either made knowing material misrepresentations in numerous submissions of DMCA takedown notices claiming copyright infringement, wholly failed to discharge their affirmative duties under the United States Copyright Laws and in certain instances misused their copyright interests prior to and after submitting these takedown notices to certain of Plaintiff's company's webhosts.  These Defendants must be held responsible for the harm that their misrepresentations have caused to Plaintiff in his individual capacity and as publisher of Slabbed New Media, LLC in acts of retaliation against Plaintiff personally and as publisher of publications owned by Slabbed New Media.

2

LLC. Additionally, Plaintiff seeks Declaratory Judgement against Progress Media Group Limited of Nova Scotia, Marilyn Smulders and Ashoka under the Declaratory Judgment Act. Plaintiff also seeks declaratory judgment under the SPEECH Act of 2010 against Perret, Leary and Abel D/B/A Trout Point Lodge Limited and in their individual capacities and injunctive relief prohibiting them from submitting further DMCA takedown notices or filing further civil actions against Plaintiff or Plaintiff's Counsel without first obtaining the permission of this Honorable Court.

## II. PARTIES

2.  Plaintiff Douglas Handshoe both publishes his company's regionally noted website and resides within this judicial district. His principal office is located at 110 Hall Street, Wiggins, Mississippi 39577 and his mailing address is Post Office Box 788, Wiggins, MS 39577.

3.  Defendant Vaughn Perret is a person of age and a citizen, domiciliary of the Province of Nova Scotia Canada and who resides and is domiciled at Trout Point Lodge 189 Trout Point Rd, East Kemptville, NS B5A 5X9, Canada.

4.  Defendant Charles Leary is a person of age and a citizen, domiciliary of the Province of Nova Scotia Canada and who resides and is domiciled at Trout Point Lodge 189 Trout Point Rd, East Kemptville, NS B5A 5X9, Canada.

5.  Defendant Daniel G. "Danny" Abel is a person of age and a citizen, domiciliary of the State of Louisiana and who resides and is domiciled at the Super 8 Motel in Jefferson Parish Louisiana located at 2421 Clearview Parkway, Room 106, Metairie, LA 70001.

6.  Defendant Trout Point Lodge Ltd. is a limited company formed under the laws of Nova Scotia, with registered offices located 189 Trout Point Rd, East Kemptville, NS B5A 5X9, Canada.

7.    Defendant Progress Media Group Ltd. is a limited company formed under the laws of

Nova Scotia, with registered offices located 1202 - 1660 Hollis Street, Halifax, NS Canada

B3J 1V7.

8.    Defendant Marilyn Smulders is a person of age and a citizen, domiciliary of the Province

of Nova Scotia Canada and who resides in Bedford Nova Scotia and can be located for

service of process at 5163 Duke Street, Halifax, Nova Scotia, Canada B3J 3J6.

9.    Defendant, Ashoka is a not for profit corporation formed under the laws of the state of

Virginia with registered offices located at 1700 North Moore Street, Suite 2000, Arlington,

VA 22209.

### III. JURISDICTION AND VENUE

10.   Plaintiff's claims arise under the copyright laws of the United States, 17 U.S.C. §§ 101 et

seq., Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 and the

Declaratory Judgment Act including the SPEECH Act of 2010, all of which involve

questions of United States law.

11.   This Court has both general and specific jurisdiction over the Defendants because they

intentionally caused harm to Plaintiff Handshoe in Mississippi including substantively

engaging the processes contained in Title II of the Digital Millennium Copyright Act

("DMCA"), 17 U.S.C. § 512 aimed at Plaintiff Handshoe as Publisher of Slabbed New

Media, LLC and ultimately in his personal capacity and Plaintiff's media company in their

domiciliary in Mississippi. Defendants' actions submitting misrepresented DMCA

takedown notices in an attempt to force Plaintiff, as Publisher and agent for Slabbed New

Media, LLC  to take down constitutionally protected free speech in the form of journalistic

posts to the Slabbed New Media LLC website were directed to a Mississippi legal business

4

entity and ultimately its publisher/owner in his personal capacity, creating impacts on the business of that entity and its publisher in his personal capacity, including causing injury leading to damages, which subject the defendants to the jurisdiction and venue of this Court. Defendants, all of whom are purportedly either intellectual property experts, lawyers or used the services of legal counsel to submit these DMCA takedown notices knew or should have known their conduct substantively engaging the United States legal system via submission of DMCA Takedown Notices under 17 U.S.C. § 512 and related smear campaign aimed at a Mississippi resident in his personal capacity and his registered Limited liability Company would subject them to the jurisdiction and venue of this Court.

12. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and the SPEECH Act of 2010, 28 U.S.C. § 4101 et seq. Additionally this Court has subject matter jurisdiction under 28 U.S.C. § 1367 as this action involves claims that are inherently related to *Trout Point Lodge et al v Handshoe*, a case of first impressions heard and decided by this Honorable Court as affirmed by the United States Fifth Circuit Court of Appeal that the Defendants have repeatedly attempted to collaterally attack via submissions of multiple DMCA takedown notices, service of a Canadian Injunction previously found to be unenforceable by this Court, and related subsequent Defamation civil actions against Plaintiff in his personal capacity which joined his legal counsel that repeatedly assert the same allegations that have been previously rejected by this Court.

13. Venue is proper in this district under 28 U.S.C. § 1391.

## IV. FACTUAL BACKGROUND

14.   On or about May 20, 2002, a company named Nova Scotia Enterprises, LLC (NSE) was
      formed in Louisiana by Roy D'Aquila, Bennett Powell, James E. Smith, Aaron Broussard
      and others whose identities are still not fully known to Plaintiff. Nova Scotia Enterprises,
      LLC was a Louisiana holding company whose stated purpose was to own and hold certain
      pieces of real property located at the Trout Point Resort near East Kemptville Nova Scotia.
      However, Nova Scotia Enterprises LLC never owned any real property or anything of
      value in Nova Scotia nor did it ever register to conduct business in Nova Scotia.

15.   From 2002 through 2010, there were up to twelve (12) partners in Nova Scotia Enterprises
      including the now incarcerated Broussard, Broussard's ex-wife Karen Parker, Roy
      D'Aquila, James E. Smith, Bennett Powell, and others, whose identities are still not fully
      known to Plaintiff.  Many of the partners Plaintiff has identified did substantial business
      with the Parish of Jefferson, where Broussard served as the duly elected Parish President
      until he resigned his office in disgrace.

16.   Unlike every partner except for his ex-wife, Broussard was given a 42% share of Nova
      Scotia Enterprises LLC in exchange for a disproportionately small capital contribution of
      under $800 when other partners, with much smaller ownership share contributed thousands
      of dollars to the criminal enterprise.

17.   From 2002 through 2010, Nova Scotia Enterprises, using money contributed to it by the
      Louisiana partners doing business with the Parish of Jefferson under the guise of "Trout
      Point Lodge lot assessments", paid the expenses of Broussard's personally owned rental
      properties located in Nova Scotia Canada including one property known as River Bend
      Lodge. Broussard never claimed ownership of that rental property on his official annual

6

Louisiana Ethics report filings in direct violation of Louisiana law in an attempt to conceal this criminal bribery scheme that used his Canadian rental property.

18.   At all time periods from 2002 through December 2010 River Bend Lodge, located at the Trout Point Lodge Resort, was owned by Aaron Broussard personally and managed by Trout Point Lodge, Limited of Nova Scotia via its owners Charles Leary, Vaughn Perret and Daniel Abel as a property that was both a part of and indistinguishable from the main Lodge itself. However, financial transactions for the River Bend Lodge, as well as other Broussard properties that were handled by Leary, Perret and Abel d/b/a Trout Point Lodge Ltd as Broussard's agents were handled via Nova Scotia Enterprises LLC of Louisiana, despite the fact that Nova Scotia Enterprises LLC was never registered or authorized to conduct business in Canada nor did it ever own anything of value in Canada. (**Placement of the bribe**). River Bend Lodge's operations were funded by the NSE partners other than Aaron Broussard as part of a corrupt bribery and money laundering scheme facilitated by sham financial transactions conducted in Nova Scotia Canada by Leary, Perret, Abel d/b/a and Trout Point Lodge, Ltd. by the use of Canadian Limited Companies and a Louisiana Registered Limited Liability Company (**Layering**).  Leary, Perret, and Abel d/b/a Trout Point Lodge Ltd. profited from facilitating and conducting these sham financial transactions for Broussard by their own admission in numerous affidavits they submitted to a Yarmouth Nova Scotia Court in their defamation action against Louisiana Media Company, LLC over content contained in a multimedia, over-the-airwaves transmitted news broadcasts about the Broussard scandal to the New Orleans metropolitan area. The

money was returned to Broussard in the United States via Canadian registered limited companies including Kempt Wilderness Lodge Services (**Integration**)[1].

19.    In September, 2009, news reports surfaced involving St John the Baptist Parish President Bill Hubbard taking bribes from certain venders which did business with St John the Baptist Parish.

20.    From September 2009 through December 2009 news reports connected certain high level employees of the Parish of Jefferson to corrupt bribery schemes involving the selling of medical insurance to employees of the Parish of Jefferson.   The employees identified in media reports were Aaron Broussard's Parish Attorney Tom Wilkinson and his Chief Administrative Officer Tim Whitmer.

21.    On or about January 6, 2010, the New Orleans Times Picayune published a story linking Aaron Broussard to a pay to play scheme involving Parish of Jefferson venders and his properties at the Resort at Trout Point Nova Scotia that were managed by Leary, Perret and Abel d/b/a Trout Point Lodge, Limited.

22.    On or about January 7, 2010, Louisiana Media Company, LLC aka WVUE Fox 8 New Orleans published an interview between investigative reporter Val Bracy and Aaron Broussard wherein Broussard addressed the allegations surrounding Jefferson Parish government venders bribing Broussard via use of his Nova Scotia properties.

---

[1] "Placement", "Layering" and "Integration" are the three components of the money laundering process. Rental Real Estate is often a popular method of perpetrating both bribery and money laundering schemes. See also *Today's Auditing Moment: Rental Real Estate Transactions and Money Laundering. (Part 1)* http://slabbed.org/2013/11/28/todays-auditing-moment-rental-real-estate-transactions-and-money-laundering-part-1/

23. Broussard resigned from public office January 8, 2010 in disgrace, less than 12 hours after excerpts of his interview about his Nova Scotia properties aired on the late Louisiana Media Company LLC newscast in New Orleans.

24. In April 2010, in a practice known as libel tourism, Broussard, using his business agents Leary, Perret, Abel and Trout Point Lodge, filed a defamation suit against The New Orleans Times Picayune in Nova Scotia Canada.

25. On April 30, 2010, in a practice known as libel tourism, Broussard, using his business agents Leary, Perret, Abel and Trout Point Lodge, filed a defamation suit against Louisiana Media, LLC in Nova Scotia Canada.

26. Defamation lawsuits used to silence public inquiry into public issues are also known as Strategic Lawsuits against Public Participation (SLAPP).

27. Leary, Perret, Abel d/b/a Trout Point Lodge Ltd used their business relationship as Broussard's business agent and financial intermediary conducting business for Nova Scotia Enterprises LLC as the centerpiece of their damages in their Canadian SLAPP suit against Louisiana Media Company, LLC. In that Canadian civil action, Leary, Perret and Trout Point Lodge Ltd. claimed in sworn affidavits that Nova Scotia Enterprises LLC owned River Bend Lodge, despite the fact Leary and Perret, in their personal capacities, had previously purchased this property from Broussard in his personal capacity just months before in December, 2010.

28. Leary, Perret, Abel, Roy D'Aquila, Bennett Powell and other Louisiana based participants to the Broussard bribery scheme submitted numerous sworn affidavits to the Nova Scotia lawsuit against Louisiana Media Company from September, 2010 through October, 2011 which detailed the bribery payments in the form of sham financial transactions conducted

9

for Broussard's benefit by the Trout Point Criminal conspirators who used the Louisiana

domiciled Nova Scotia Enterprises LLC in support of their damages claim against

Louisiana Media Company, LLC.

29. Unknown to plaintiff at the time, more than a year into subject litigation with Louisiana

Media Company, LLC on April 26, 2011 Charles Leary, on behalf of Vaugh Perret, Daniel

Abel, d/b/a Trout Point Lodge, Ltd and Aaron Broussard (The Trout Point Criminal

Conspirators), filed a motion with the Supreme Court of Nova Scotia asking for a court

order to obtain IP addresses and email addresses of five United States Citizens including

Plaintiff, sole owner and publisher of Slabbed New Media, LLC, the owner of the website

located at www.slabbed.org. Despite having no connection to Louisiana Media Company,

LLC and in spite of the fact that Leary, Perret, Abel and Broussard demonstrably knew

instant Plaintiff's identity, Leary fraudulently claimed in the Trout Point Motion and

Affidavit to the Canadian court that he did not know any of the identities of the parties that

he claimed had defamed him and his business.   Leary also falsely claimed Slabbed New

Media was owned by Louisiana Media Company LLC.  Using the fraudulent motion and

perjured affidavit, Leary induced Canadian Justice Pierre L Muise to grant his motion and

Muise issued an order dated May 20, 2011 directed to Plaintiff's webhost to release the

confidential information.

30. After obtaining Plaintiff's IP address and those of 4 other United States citizens using the

wires, interstate and international mail and courier services along with means and process

that remain only partially known to Plaintiff at this time, Charles Leary, acting on behalf of

his co-conspirators, Trout Point Lodge Limited and Nova Scotia Enterprises LLC in

concert with Mssrs. Perret, Abel, and Broussard filed more motions for orders to United

States internet service providers such as Cox Communications and AT&T Mobility. Justice Muise issued an additional court order dated July 21, 2011 based upon Leary's and Perret's additional fraudulent affidavits and motions.

31. On May 6, 2011 Chris Yount, a process server and private investigator closely associated with Abel, Leary and Perret served an undated Nova Scotia "Notice of Intended Action" drafted by Leary, Perret and Trout Point upon Plaintiff's spouse in Bay St Louis, Mississippi.

32. In August and September 2011, Broussard, using Leary, Perret, Abel and Trout Point Lodge as his agents, filed the first of three Nova Scotia based Defamation actions against Plaintiff in his personal capacity[2], literally constructing large portions of their wild claims from whole cloth.

33. On or about September 28, 2011, Ashoka, acting in close coordination and in concert with defendants Leary, Perret, Abel and the Trout Point Lodge Criminal Enterprise, filed a DMCA takedown notice with Automattic, Inc. then web host of the Slabbed New Media Interactive website objecting to a picture of defendants Leary and Perret contained in the post, "Slabbed solves the mystery on the shores of the Tusket River in Nova Scotia as we reveal the Trout Point connection to the Jefferson Parish political Corruption Scandal." This misrepresented Takedown Notice was featured as evidence in the Canadian defamation action that this Honorable Court ruled Unenforceable in the United States in the civil action styled *Trout Point et al v Handshoe*.

34. On December 2, 2011, a Federal Grand Jury indicted Aaron Broussard for Payroll Fraud in connection with his tenure as President of the Parish of Jefferson.

---

[2] The original complaint was filed in August 2011 and was amended in September 2011.

35.   In January, 2012, Plaintiff obtained Pleadings, Affidavits and Motions filed by Leary,
      Perret, Abel and Trout Point Lodge in their defamation SLAPP suit against Louisiana
      Media Company, LLC, which illustrated the use of their financial relationships of Nova
      Scotia Enterprises, LLC, as the heart of their damages claim against Louisiana Media
      Company, LLC in 2010 and 2011 as described in paragraphs 18, 19 and 28. Plaintiff
      published these affidavits, motions and pleadings to the Slabbed New Media LLC website
      in January and February, 2012.  Defendants Leary, Perret, Abel and Trout Point Lodge,
      Ltd. hastily settled their suit against Louisiana Media Company after the publication of
      these incriminating documents in February, 2012.

36.   In May, 2012, Plaintiff was contacted by Special Agent Talarah Cataldi of the New
      Orleans office of the Federal Bureau of Investigation.  Special Agent Cataldi met with
      Plaintiff on May 30, 2012. Special Agent Cataldi asked Plaintiff to provide the FBI with
      any unpublished portions of the Canadian case record obtained by Plaintiff from the
      Louisiana Media LLC lawsuit in Canada which mentioned Nova Scotia Enterprises, LLC.
      Plaintiff fully cooperated with the FBI.

37.   On July 25, 2012, upon filing of an affidavit sworn by defendant Leary in the United States
      District Court civil action styled *Trout Point Lodge Ltd, Vaughn Perret and Charles Leary
      v Doug K. Handshoe*, Plaintiff was able to ascertain that he was entitled to due process
      notice to the hearings held in Yarmouth Nova Scotia pursuant to the Leary/Trout Point
      Motions and Affidavits of April, May, June and July 2011, as defendant Leary swore in an
      affidavit in a U. S. District Court filing that he clearly knew plaintiff's identity (prior to
      filing the Canadian motions), despite swearing affidavits in Canada in the Louisiana Media

LLC lawsuit where he claimed that he did not know the identity of the publisher of Slabbed.org.

38.  On August 31, 2012, the United States Department of Justice filed, Government's Notice of Intent to Introduce Intrinsic Evidence, or Alternatively, Notice of "Other Act" Evidence pursuant to Rule 404(b) of the Federal Rules of Evidence in the criminal case styled United States of America v Aaron Broussard.  In this Motion, United States Prosecutors identified Nova Scotia Enterprises, LLC as a Broussard bribery scheme.

39.  On December 4, 2012, during the pendency of their first action against Plaintiff in United States District Court seeking enforcement of their first Canadian defamation judgment, defendants Leary and Perret filed another defamation suit in Canada against plaintiff and one of Slabbed New Media LLC's webhosts Automattic, Inc., alleging a massive homophobic conspiracy against them which included instant plaintiff and lawyer in the SPEECH Act suit Jack E. "Bobby" Truitt among others.

40.  The purpose of this suit was to force defendant Automattic, Inc. to terminate a long standing hosting agreement between it and Slabbed New Media, LLC.[3]

41.  On December 13, 2012 defendant Leary as authorized by Ashoka and in coordination with Perret and Abel, filed a DMCA takedown notice with Automattic, Inc. asserting ownership of a creative work posted to the Slabbed New Media website that have alternatively previously been subject to DMCA takedown notices by both Ashoka and the Trout Point Criminal Enterprise. This image in question was previously litigated in Nova Scotia Canada as per the record of the "expanded" damages hearing held in January, 2012.  The

---

[3] Slabbed New Media, LLC has been forced by the Trout Point Criminal Conspirator repeated litigation terrorism to maintain multiple hosting arrangements to this day.

resulting judgement was denied comity by this Court on December 19, 2012. Automattic, Inc. assigned this notice DMCA #1405990.

42.   In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, Automattic, Inc. acted expeditiously to disable access to the material identified in the notice. But for those misrepresentations, Automattic, Inc. would not have disabled access to the media contained in the posts identified in the notice be disabled. Automattic, Inc. did not notify Slabbed New Media, LLC of this DMCA Takedown Notice.

43.   On December 14, 2012 defendant Leary, as authorized by Ashoka in coordination with Perret and Abel, filed a DMCA takedown notice with Automattic, Inc. asserting ownership of a creative work posted to the Slabbed New Media website that had previously been subject to DMCA takedown notices by Ashoka and the Trout Point Criminal Enterprise. This image in question was previously litigated in Nova Scotia Canada as per the record of the "expanded" damages hearing held in January, 2012.  The resulting judgement was denied comity by this Court on December 19, 2012. Automattic, Inc. assigned this notice DMCA #1407631.[4]

---

[4] The DMCA Takedown Notices of December 13th and 14th 2012 dealt with the same image with Leary sending separate notices for both the cropped original and scaled versions of that cropped original designed for mobile device optimization.  This image appeared on the post, *Slabbed solves the mystery on the shores of the Tusket River in Nova Scotia as we reveal the Trout Point connection to the Jefferson Parish political Corruption Scandal* published on September 8, 2011 which is found at http://slabbed.org/2011/09/08/slabbed-solves-the-mystery-on-the-shores-of-the-tusket-river-in-nova-scotia-as-we-reveal-the-trout-point-connection-to-the-jefferson-parish-political-corruption-scandal/. This post not only revealed the identities of the politically connected Louisianans that owned real property at Trout Point, reader comments would establish others connections such as the owner of the Super 8 Motel in Metairie (which remains Defendant Abel's domicile to this day), whose family owned a lot at Trout Point. The politically connected owner of the Metairie Super 8 Motel, Nipun Desai, was then under indictment for cocaine distribution and had been legally represented by Defendant Abel and Aaron Broussard in what became a multi-year legal odyssey which saw Desai's prosecution delayed for several years. It was coverage of what appeared to be a judicially sanctioned delay in prosecuting Mr. Desai on the Slabbed New Media website which forced the resolution of the criminal case against Mr. Desai, who ultimately made a plea bargain with Jefferson Parish prosecutors on the charges.

44. In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, Automattic, Inc. acted expeditiously to disable access to the material identified in the notice. But for those misrepresentations, Automattic, Inc. would not have disabled access to the media contained in the posts identified in the notice be disabled. Automattic, Inc. did not notify Slabbed New Media, LLC of this DMCA Takedown Notice.

45. On December 14, 2012, Canadian lawyer Bruce McLaughlin, representing Progress Media Group Limited and Marilyn Smulders, acting in close coordination and in concert with defendants Leary, Perret, Abel (the Trout Point Lodge Criminal Enterprise), filed a DMCA takedown notice with Plaintiff's web host objecting to a picture of defendants Leary, Perret and Abel that was posted to the Slabbed New Media website originally in January 2012 that was also used in publications published by Plaintiff to the Slabbed New Media LLC website in September and October of 2012.[5] Plaintiff was notified by New Dream Networks of this takedown notice via email on December 18, 2012. In accordance with the requirements of the Digital Millennium Copyright Act (DMCA) web host New Dream Networks requested Plaintiff disable access to the photo in question, which request Plaintiff promptly complied.

46. In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, New Dream Network acted expeditiously to require that Slabbed New Media, LLC disable access to the material identified in the notice. But for those misrepresentations, New Dream Network would not have requested that access to the media contained in the posts identified in the notice be disabled.

---

[5] Upon knowledge and belief this cropped image was first published to the Slabbed New Media website on January 24, 2012 on the post *Slabbed explores former Jefferson Parish President Aaron Broussard's business activities in Nova Scotia Part 2: You own 100% of 2% of nothing* found at http://slabbed.org/2012/01/24/slabbed-explores-former-jefferson-parish-president-aaron-broussards-business-activities-in-nova-scotia-part-2-you-own-100-of-2-of-nothing/. This same cropped image was also used in September and October of 2012 as well.

47.  On December 17, 2012 Automattic, Inc. terminated its hosting agreement with Slabbed

New Media and removed from their servers all of Slabbed New Media's files in response

to the second Trout Point Canadian SLAPP defamation lawsuit and the DMCA Takedown

Notices of December 13, 2012 and December 14, 2012.  Automattic, Inc. did not notify

Publisher Handshoe or Slabbed New Media LLC of the submission of these DMCA

Takedown Notices from the Trout Point Criminal Conspirators depriving Slabbed New

Media LLC of the chance to submit a Counter Notification.

48.  On December 19, 2012 Instant Plaintiff prevailed in *Trout Point Lodge Ltd, Vaughn Perret*

*and Charles Leary v Doug K. Handshoe*, a case of first impressions under the SPEECH

Act of 2010.

49.  On December 19, 2012, an email from New Dream Networks to Plaintiff's counsel stated

as follows concerning Defendants Progress Media Group Limited, Marilyn Smulders,

Charles Leary, Vaughn Perret and Daniel Abel, their takedown Notice of December 14,

2012 and ongoing campaign of libel terrorism that included the National Geographic

Society:

> **We are aware slabbed.org and it's critical speech are under attack by
> spurious actors using out of jurisdiction court orders and misusing
> intellectual property law in trying to get the site offline. We have silently to
> you pushed back against several such attempts in our commitment to the
> laws of the United States and the freedom of speech they afford.**

50.  Plaintiff in his capacity as publisher of Slabbed New Media LLC submitted a counter

notification to the Progress Media/Smulders DMCA Takedown Notice of December 14,

2012 on December 20, 2012, which started the process whereby the complainant can file

for an injunction in the United States District Court for the Southern District of

Mississippi. The Canadian parties asserting the copyright claim never filed for an

injunction with the US District Court. The image was subsequently restored by Plaintiff in accordance with the DMCA on or about January 5, 2013.

51.  Enraged at losing their attempt to obtain comity in the United States for their nonsensically plead Canadian SLAPP suit, on December 31, 2012, defendants Leary, Perret and Abel, d/b/a Trout Point Lodge Ltd of Nova Scotia, filed a DMCA takedown notice against the Slabbed New Media LLC website which claimed ownership of a creative work that belongs to Torstar Corporation, which first appeared on the Torstar website in a January 2012 story written by Torstar employee Richard Brennan that promoted Trout Point Lodge's campaign of libel terrorism against United States media outlets covering the Broussard scandal beginning with the first Canadian defamation judgment against instant Plaintiff that was subsequently denied comity by this Court.[6]  Additionally in the same takedown notice, Charles Leary claimed ownership of the creative work which was subject to the December 14, 2012 DMCA takedown notice previously submitted by Progress Media Group/Marilyn Smulders.

52.  In the DMCA Takedown notice of December 31, 2012, Leary, Perret and Abel wrote the following threat against New Dream Network[7] in their attempts to silence reporting on a matter of public interest on the Mississippi Gulf Coast and Louisiana:

WE WILL PURSUE LEGAL ACTION AGAINST DREAMHOST UNDER THE
CANADA COPYRIGHT ACT IF THESE IMAGES--EITHER HOSTED OR

---

[6] This image was used in the following post to the Slabbed New Media website which revealed the Trout Point Criminal Conspirators had filed a second Nova Scotia Canada SLAPP suit against Plaintiff in his personal capacity found at http://slabbed.org/2012/12/04/wash-rinse-repeat-aaron-broussards-former-property-managers-in-canada-again-sue-slabbed-for-defamation-in-nova-scotia/. The Trout Point theory in sending the takedown notices are seemingly based on the misguided notion that only Leary and Perret were entitled to voice their opinions on their various and sundry defamation actions they had filed against instant Plaintiff in Canada. Then again, the Trout Point Lodge criminal conspirators have also nonsensically asserted they are not public figures despite the very high profile they maintain in both the Canadian and US Travel media.

[7] Webhosts enjoy blanket immunity for hosting infringing content under the Canadian Copyright Act, which holds the alleged infringer responsible, rather than a third part hosting provider.

EMBEDDED--ARE NOT REMOVED FROM INFRINGING PUBLICATION. THE UNITED STATES AND CANADA HAVE NUMEROUS TREATIES RECIPROCALLY PROTECTING COPYRIGHT. THERE IS NO CDA PROTECTION FOR PUBLISHING THESE INFRINGING WORKS.

53.   In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, New Dream Network acted expeditiously to require that Slabbed New Media LLC disable access to the material identified in the notice. But for those misrepresentations and legal threats, New Dream Network would not have disabled access to the posts containing the media identified in the notice.

54.   On January 2, 2013 in accordance with the DMCA, Plaintiff in his capacity as publisher of Slabbed New Media LLC, submitted a counter notification and disabled access to the creative works while the applicable statutory time period ran for defendants Leary, Perret and Abel to file for an injunction with the United States District Court for the Southern District of Mississippi. Again defendants Leary, Perret and Abel failed to file for an injunction and the images were restored.

55.   At a date unknown in January, 2013 Leary, Perret and Trout Point Lodge Limited amended their December 2012 lawsuit, dropping plaintiff as a defendant in the action, replacing their allegations against Automattic, Inc. of Defamation with a breach of contract suit, said contract being the deletion of the Slabbed New Media LLC website previously hosted by Automattic, Inc.

56.   On January 16, 2013 Daniel Abel filed a defamation suit against instant Plaintiff and Jefferson Parish Corruption whistleblower Anne Marie Vandenweghe in the Louisiana Eastern District United States District Court. This lawsuit recycled many of the allegations from Leary and Perret first Canadian defamation suit.

57.   On February 8, 2013 Leary and Perret, in collusion with Abel and Chris Yount, served upon Plaintiff a civil suit filed in Nova Scotia against him in his personal capacity seeking a Nova Scotia injunction based up the Takedown Notices sent by the Defendants in December 2012 under the US Digital Millennium Copyright Act accusing Plaintiff of violating the Trout Point Criminal Enterprises' Canadian copyrights[8]. This suit sought a Canadian injunction. Defendants Leary, Perret, and Abel d/b/a Trout Point Lodge Ltd intentionally disregarded the proper owner of the Slabbed New Media LLC website in styling their Canadian lawsuit the allegations of which are substantively based in United States Copyright law mixed with the Nova Scotia laws of defamation and the previous judgment of the Nova Scotia Court's ruled as unenforceable in the United States pursuant to the SPEECH Act of 2010. A Copy of the Amended Notice of Application in Court along with an affidavit submitted by the Trout Point Criminal Enterprise defendants in support of this specious Canadian Action designed to deprive Plaintiff of his valuable First Amendment Rights and collaterally attack the previous judgment of this Honorable Court was attached as Exhibits 1 and 2 to the original complaint.

58.   Ashoka, after failing to pursue their previous Takedown Notice in United States District Court assigned their interest in their picture of Defendants Leary and Perret to them in order that Leary and Perret could pursue the claims related to the Ashoka Takedown Notice of September 28, 2011 described in paragraph 33 in the Nova Scotia Courts.

59.   On March 19, 2013, Defendant Abel supplemented a federal court pleading in his SLAPP suit of January 16, 2013 with information that Charles Leary, acting on behalf of Aaron Broussard and the Trout Point Criminal Enterprise, had previously fraudulently obtained

---

[8] There is no such Takedown provision in the Canadian Copyright Act, the Takedown Notice/Counter notification procedures being unique to United States Law.

via Canadian court order obtained in the Louisiana Media LLC SLAPP suit as specified in paragraphs 30 and 31.

60. On May 13, 2013, Abel, after multiplying the United States District Court proceeding with frivolous brief after frivolous brief which contained a multitude of defamatory allegations levied against plaintiff Handshoe and his codefendant in that action Anne Marie Vandenweghe, voluntarily dropped his suit on the day before a hearing to strike his defamation claims under Louisiana's Anti SLAPP statute.

61. On May 27, 2013, Defendant Abel refiled his US District Court defamation lawsuit in the New Orleans Civil District Court including as co-defendants all of Plaintiff Handshoe's previous lawyers, four in total including Jack E. "Bobby" Truitt, plus the Baldwin Haspel law firm. Substantial portions of his defamation claims, which replicated allegations from the first Trout Point Lodge Nova Scotia suit against Plaintiff which this Honorable Court denied comity along with allegations that defendants Leary, Perret and Abel specifically were able to insert into an expanded Appellate record of the SPEECH Act case was specifically pleaded by Abel as based upon his "close connection with Trout Point Lodge". This vexatious New Orleans Civil District Court case represents a blatant act of retaliation against the Plaintiff's lawyers that had either previously represented him in the SPEECH Act case before this Honorable Court or in the United States District Court Defamation suit filed by Defendant Abel on January 16, 2013 in the Louisiana Eastern District Court as well as an attempt to re-litigate the allegations previously decided by this Court in the case *Trout Point Lodge et al v Doug K. Handshoe.*[9]

---

[9] Retaliatory suits against opposing counsel by litigants unsatisfied with the results of previous litigation literally strikes at the heart of the proper administration of the justice system. In this instance the meritless defamation suits filed by Abel and their tacit sanction by the Louisiana State Courts in both Orleans and Jefferson Parishes, the

62.  On September 5, 2013 the United States Fifth Circuit Court of Appeals affirmed the decision of this Court and denied comity to the first Trout Point Nova Scotia defamation suit filed against Plaintiff under the United States SPEECH Act.  Regarding the Canadian Injunction obtained by the Trout Point Group in that first Nova Scotia defamation suit, Judge Jennifer Elrod, writing for the court noted, "the Nova Scotia Court entered a permanent injunction against Handshoe, "restraining him from disseminating, posting on the Internet or publishing, in any manner whatsoever, directly or indirectly, any statements about the plaintiffs, Trout Point Lodge, Charles L. Leary, and [Vaughn] J. Perret." The injunction included "publication, circulation and promotion on the blog named Slabbed, and any similar or other publications." The court added, for "further particularity," that Handshoe "shall not publish or cause to be published or otherwise disseminate or distribute in any manner whatsoever . . . any statements or other communications which refer to the plaintiffs by name, depiction or description." It ordered Handshoe to immediately remove any such material from publication. **Trout Point does not seek to enforce the injunction in this action. Rightly so, as the injunction does not comport with even the most basic protections against prior restraints on speech in the United States.**"  (Emphasis added)

63.  On September 30, 2013, after receiving permission from the Canadian Provincial Court, Defendants Leary, Perret and Abel aka Trout Point Lodge Ltd of Nova Scotia added a multiplicity of Defamation allegations to accompany their original copyright infringement allegations of February 8, 2013.[10]

---

exact locations of Broussard's criminal schemes, has resulted in instant Plaintiff experiencing extraordinary difficulty obtaining counsel.

[10] Attached as Exhibit 4 to the Original Complaint

64. Instant Plaintiff defaulted on the Leary, Perret, Abel Trout Point Lodge Ltd of Nova Scotia defamation suit rather than submit to a court devoid of jurisdiction to decide such matters.

65. On February 14, 2014, Kevin Coady issued an opinion on the Default finding for the Trout Point Lodge Criminal Enterprise on all counts of defamation and copyright infringement which were previously subjected to United States legal processes in the DMCA.[11]

66. Beginning on or about February 14, 2014 the Defendants Leary, Abel and Perret, on behalf of the Trout Point Criminal Enterprise, began serving the Canadian Injunction for which they had previously represented to the United States courts they were not seeking to enforce yet for which the court previously specifically denied comity, on Plaintiff's United States based Interactive Internet Service Providers along with additional Digital Millennium Copyright Act Takedown notices as follows:

67. On February 15, 2014 Defendants Leary, Abel and Perret, on behalf of the Trout Point Criminal Enterprise submitted a DMCA takedown notice and Canadian injunction to YouTube wherein the Trout Point Criminal Enterprise claimed ownership of a parody created and owned by Slabbed New Media, LLC hosted by YouTube and located at https://www.youtube.com/watch?v=M_pc4bjaLno.

68. In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, YouTube acted expeditiously to disable access to the material identified in the notice. But for those misrepresentations, YouTube would not have disabled access to the posts containing the media identified in the notice.

69. February 18, 2014 to New Dream Network in which the Trout Point Criminal Enterprise Defendants claimed ownership over parodies created by third parties unconnected to the Lodge which were published to the Slabbed new Media website with the express consent

---

[11] Attached as Exhibit 3 to the Original Complaint

of the creators of the works in question and for creative works previously subject to multiple takedown notices submitted by the National Geographic Society and Progress Media/Marilyn Smulders.[12]

70. In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, New Dream Network acted expeditiously to disable access to the material identified in the notice and subsequently terminated the valuable hosting arrangement between Plaintiff's company Slabbed New Media, LLC and New Dream Network. But for those misrepresentations, New Dream Network would not have disabled access to the posts containing the media identified in the notice nor would have the Slabbed New Media hosting account been terminated.

71. On February 26, 2014 Kevin Coady bifurcated, post opinion issuance, his judgment on the Trout Point Criminal Enterprise defamation case into a Copyright Judgement and a Defamation Judgement in an attempt to circumvent the SPEECH Act of 2010.[13]

72. The Nova Scotia Supreme Court and Canadian media outlets such as Progress Media and Torstar Corporation are the last refuge of United States criminals that perpetrate bribery and money laundering schemes which deprive United States citizens of the Honest Services of their elected officials as well as their valuable constitutional rights.

73. On March 14, 2014, using the legal services of Trout Point owner Daniel Abel, Leary, Perret and Trout Point filed a malpractice suit against their lawyer Henry Laird related to their first failed attempt to gain comity in the United States for their fraudulently obtained

---

[12] The images in question are located at http://slabbed.org/wp-content/uploads/2011/09/leary-perret1.jpg, http://slabbed.org/wp-content/uploads/2012/01/abel-leary-perret.jpg, http://slabbed.org/wp-content/uploads/2013/05/Trout-Point-Lodge-Disorder-in-the-court.jpg, and http://slabbed.org/2013/03/30/a-day-in-the-life-of-trout-point-lodgers-chuck-and-vaughn/.

[13] These judgments were attached as Exhibits A (copyright) and B (defamation) to the First Amended Complaint.

first Nova Scotia defamation judgment against instant Plaintiff filing said civil action in the

New Orleans Civil District Court, a venue with no connection to the underlying

representation of Trout Point provided in Mississippi by Laird but which is a well-known

cesspool of corruption. At the time this meritless lawsuit was filed, Leary, Perret and the

Trout Point criminal enterprise owed Laird and his firm Jones Walker $97,000 in unpaid

legal fees related to Laird's multi-year representation of their interests before this very

United States District Court.[14]

74. On March 20, 2014 Chris Yount, using the legal services of Trout Point Lodge owner

Daniel Abel, filed a Defamation suit under seal against instant Plaintiff and Plaintiff's

lawyer Jack E. Truitt.[15]

75. On April 1, 2014, Defendants Leary, Abel and Perret, on behalf of the Trout Point

Criminal Enterprise submitted a DMCA Takedown Notice to Slabbed New Media, LLC's

webhost, HostGator.com, LLC claiming ownership over creative works created and owned

by Frank Magazine that were republished to the Slabbed New media website with the

permission of Frank Magazine.

76. In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA,

HostGator.com LLC acted expeditiously to disable access to the material identified in the

notice. But for those misrepresentations, HostGator.com LLC would not have disabled

access to the posts containing the media identified in the notice.[16]

---

[14] That case was ultimately dismissed by the New Orleans Court.

[15] *Yount v Handshoe et al*, 24th LA JDC Court #736,680

[16] The post which contained the image in question is titled *"A day in the life of Trout Point Lodgers Chuck and Vaughn"* and can be found at http://slabbed.org/2013/03/30/a-day-in-the-life-of-trout-point-lodgers-chuck-and-vaughn/

77.  On April 7, 2014 Defendants Leary, Perret and Trout Point Lodge Ltd filed a Nova Scotia lawsuit against Plaintiff's Attorney from *Trout Point Lodge et al v Doug K. Handshoe* heard by this Honorable Court, Jack E. "Bobby" Truitt, including allegations of "cyber-bullying" and "defamation" over privileged statements Truitt made before this Honorable Court. This suit represents yet another collateral attack on the previous judgment of this Honorable Court by seeking to deny comity for the $48,000 Attorney fee award as well as hold Truitt responsible for the previous defamation judgments of the Nova Scotia courts against instant Plaintiff in his personal capacity.

78.  On July 28, 2014, the Louisiana 24th Judicial District Court struck *Yount v Handshoe et al* pursuant to Louisiana's Anti-SLAPP statute.

79.  On September 17, 2014 Trout Point Lodge owner Danny Abel filed for Supervisory Writs with the Louisiana State 5th Circuit Court of Appeals in *Yount v Handshoe*. In the Yount brief in support of the writ application, Abel factually plead the misrepresented takedown notice sent by Leary and Perret on February 18, 2014 as described in paragraph 68. The Trout Point criminal co-conspirators DMCA Takedown notice of February 18, 2014 would also appear in subsequent Yount briefs to the Louisiana Appeals Court in *Yount v Handshoe et al* including those prepared and filed by Ramona Fernandez of the Loyola School of Law's Stuart Smith Law Clinic on January 20, 2015 and March 3, 2015.[17]

80.  On November 6, 2014, Trout Point Lodge owner Danny Abel was suspended from the practice of law pending permanent disbarment for threat of harm to the public by the Louisiana Attorney Disciplinary Board. Abel's history, habit and practice of filing

---

[17] The exact verbiage in the January 20, 2015 Yount appellate brief signed by Fernandez of Loyola stated, "On February 18,2014, Defendant's web site, the Slabbed blog, was subsequently taken down by Defendant Handshoe's service provider due to a violation of that web host's terms of service by Handshoe, including infringing the copyright of third parties."

meritless, retaliatory lawsuits against opposing counsel, sitting judges, court employees along with Louisiana State officials such as Louisiana Attorney General Buddy Caldwell as well as a documented history of multiple court sanctions for filing frivolous, vexatious litigation and appeals precipitated the disciplinary action.

81. On March 12, 2015, Charles Leary emailed the Chambers of Chief Judge Louis Guirola accusing instant Plaintiff and his lawyers in the case *Trout Point Lodge et al v Handshoe* of committing frauds upon the Court in that case. Page three of the accompanying twenty-five page pdf memorandum dated March 11, 2015 that was attached by Defendant Leary to the email to Judge Guirola's Chambers included a direct quote from a brief submitted by co-defendant Truitt in the case *Yount v Handshoe et al* which was filed by Defendant Abel on Yount's behalf under seal on March 20, 2014. The case record in that matter was not unsealed by Judge Schlegel of the 24th Judicial District Courts until July 20, 2015.

82. On April 1, 2015, Charles Leary and Vaughn Perret filed with the Louisiana Appealate Court a Motion for Leave to File Amicus Curiae Brief. Despite the case being sealed Leary and Perret amazingly admit in their motion to the Louisiana Appellate court, "The Applicants have read the briefs of the parties as well as the Amicus brief of Jack E. Truitt". On page three of the same motion Leary and Perret write the following in reference to their emails of March 12th to the Chambers of Judge Louis Guirola and Judge Guirola's Chambers reply of March 13th:

> A motion by Applicant Leary to vacate the trial court decision based upon fraud upon the court under Federal Rule of Civil Procedure 60(d)(3) is currently in preparation as per instructions from the judge's chambers.

83. On May 21, 2015 Defendants Leary and Perret filed a Pro Se Motion for Original Discipline with the United States District Court for the Southern District of Mississippi

accusing instant Plaintiff and his lawyers in the case *Trout Point Lodge et al v Handshoe* (MSSD case number 1:12cv90) of committing frauds upon the Court in that case.  In the accompany memorandum in support thereof (ECF #64-3) Leary and Perret exhibited a sealed court document from the case *Yount v Handshoe et al* despite the fact the case was then sealed and was not unsealed by Judge Schlegel until July 20, 2015.

84.   On May 28, 2015, Robert Chaisson, writing for a Louisiana Fifth Circuit Court of Appeals panel overturned the lower court ruling striking the Yount suit. He adopted in the court's factual basis the Leary-Perret-Trout Point misrepresented takedown notice of February 18, 2014 as described more fully in paragraph 68 writing for that court:

> On February 18, 2014, the blog post containing the drawing as well as the www.slabbedorgwebsite was taken down by the webhost in response to the copyright infringement notice and violations of the webhost's terms of service.

85.   On January 15, 2016 Trout Point Lodge owner Charles Leary, using the DMCA Takedown request form provided by Slabbed New Media, LLC's reverse proxy provider CloudFlare, sent a DMCA Takedown notice to them which duplicated the DMCA Takedown Notice previous submitted by Progress Media/Marilyn Smulders on December 14, 2012 as specified in paragraph 46 of this complaint and as well as one of several images that was previously contained in the DMCA takedown sent by the Trout Point criminal coconspirators on February 18, 2014 as specified in paragraph 72. CloudFlare is a reverse proxy provider which serves but only indirectly hosts the Slabbed New Media website.

86.   In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA, CloudFlare acted expeditiously to provide the name of Slabbed New Media's hosting provider to defendants Leary and Perret. Additionally, CloudFlare forwarded this DMCA complaint to Amazon Web Services, the Hosting provider of Slabbed New Media, LLC.

87.   On January 15, 2016 Trout Point Lodge owner Vaughn Perret, using the DMCA

Takedown request form provided by CloudFlare, sent a DMCA Takedown notice

regarding an image of Trout Point Lodge which appears on the Trip Advisor website

which is identified as being the copyrighted material of Trip Advisor.

88.   In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA,

CloudFlare acted expeditiously to provide the name of Slabbed New Media's hosting

provider to defendant Leary. Additionally, CloudFlare forwarded this DMCA complaint to

Amazon Web Services, the Hosting provider of Slabbed New Media, LLC.

89.   On January 18, 2016 defendants Charles Leary and Vaughn Perret submitted a complaint

to Amazon Web Services (AWS), hosting provider of Slabbed New Media, LLC.  AWS

construed this complaint as a DMCA Takedown notice.  This takedown notice duplicated

the takedown notices of January 15, 2016 as specified in paragraphs 81 through 84 which

included the Progress Media/Smulders image and the Trip Advisor image.  Additionally

Leary and Perret, upon knowledge and belief acting on as agent of defendant Torstar, Inc.,

included as infringing an image "inline linked" to the Copyrighted story belonging to

Torstar which was previously subject to the DMCA takedown notice of December 31,

2012 as specified in paragraph 52 through 54.

90.   In reliance on the Misrepresentations, pursuant to the procedure set forth in the DMCA,

Amazon Web Services, Inc. acted expeditiously to require that instant Plaintiff, as

publisher of Slabbed New Media, LLC disable access to the material identified as

infringing in the notice. But for those misrepresentations, Amazon Web Services, Inc.

would not have disabled access to the posts containing the media identified in the notice.

## The Fair Use Doctrine

91. Pursuant to Section 107 of the Copyright Act, 17 U.S.C. § 107, certain unlicensed uses of copyrighted works are authorized by law as "fair uses."

92. In determining whether the use of a copyrighted work in any particular case is protected as fair use, the statutory factors to be considered include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.[18]

93. Plaintiff in his personal capacity had no connection to the illustrative use of the photographs in question.  However Publisher Handshoe and Slabbed New Media, LLC's use of the creative works in the context of a public interest news story involving litigation the Trout Point Criminal Enterprise defendants have themselves promoted in both the United States and Canada and journalistic reporting in the public interest is permitted under the fair use doctrine and, therefore, does not infringe upon any of the defendants' copyright.

94. Plaintiff in his personal capacity had no connection to the illustrative use of the photographs; however, Publisher Handshoe and Slabbed New Media LLC relied exclusively upon reader donations to support the interactive website and the non-commercial, highly transformative journalism in the public interest contained therein, which is entirely different from the Defendants original purpose in creating the works. Whereas Defendant's original purpose was presumably to promote Trout Point Lodge as a tourist destination or smear instant Plaintiff as part of an attempted cover-up of an

---

[18] 17 U.S.C. § 107

international bribery and money laundering conspiracy, Publisher and instant Plaintiff Handshoe's purpose acting as an agent for Slabbed New Media, LLC was and remains educational, and neither Publisher Handshoe, Slabbed New Media, LLC nor the Creative Commons[19] gained any profit from the illustrative use of the photographs in question in the various postings to the website owned by Slabbed New Media, LLC.[20]

95.   The nature of the original work is creative. However, because the photographs at the heart of this controversy were released as far back as the end of the 2006 calendar year, Publisher Handshoe and Slabbed New Media's limited use of a photograph contained in either advertising or news accounts of the numerous lawsuits filed in Canada against Plaintiff in his personal capacity as part of a smear campaign designed to cover-up the Trout Point Lodge Criminal Enterprise's misdeeds did not infringe on any of the Defendants' rights to control the first appearance of their creative work.

96.   The photographs in question compared to the entirety of the original creative works the amount used was minimal: Publisher Handshoe and Slabbed New Media LLC incorporated into the news accounts posted to the interactive website component photographs of much larger promotional stories involving the Trout Point Lodge, the Trout Point Criminal Enterprise or news accounts of their related Canadian campaign of libel terrorism and smear campaigns against the United States news media.

---

[19] Slabbed New Media, LLC is a proud member of the Creative Commons, displaying the following licensing information prominently on the face of every page on the interactive website: "Slabbed by Slabbed New Media, LLC is licensed under a Creative Commons Attribution-Non-Commercial-No-Derivatives 4.0 International License. Permissions beyond the scope of this license may be available at slabbed.org/contact."

[20] Slabbed New Media's financial statements for all relevant time periods are a matter of the public United States District Court record. It is self-evident there is no profit to be gained from reporting on Jefferson Parish political corruption when the costs of defending frivolous Canadian and Louisiana State Court suits which join counsel is factored into the business model.

97.  Plaintiff in his personal capacity caused no market harm. Publisher Handshoe's news

accounts of this international bribery and money laundering scheme included only excerpts

of the original creative works.  The news accounts on the Slabbed New Media, LCC

website is not a market substitute for the original creative works nor did those accounts

harm any market for the photographs in question, which were never intended to be nor

have been marketed for sale to the public in either the United States or Canada.[21]

### The SPEECH Act of 2010

98.  "Congress enacted the SPEECH Act in 2010 in response to the perceived threat of "libel

tourism," a form of international forum-shopping in which a plaintiff chooses to file a

defamation claim in a foreign jurisdiction with more favorable substantive law. In enacting

the statute, Congress found that "by seeking out foreign jurisdictions that do not provide

the full extent of free-speech protections to authors and publishers that are available in the

United States" and by suing United States authors or publishers in those foreign

jurisdictions, some persons were "obstructing" the free expression rights of domestic

authors and publishers and "chilling" domestic citizens' First Amendment interest in

"receiving information on matters of importance." "[g]overnments and courts of foreign

countries scattered around the world have failed to curtail this practice . . . and foreign libel

judgments inconsistent with United States [F]irst [A]mendment protections are

increasingly common." With these findings in mind, the SPEECH Act provides that a

---

[21] Aside from the comedic use of a Leary and Perret's face photographs ("muggers") originally published by the Ashoka Foundation in a paid promotion of Trout Point Lodge as a very accurate modern day depiction of Larry and Moe of the Three Stooges in "Disorder in the Court" by Patricia Faye Fournet of Opelousas Louisiana, it is hard to imagine anyone in their right minds would wish to commercially purchase the muggers of Aaron Broussard's unindicted co-conspirators despite the likeness of those perpetrators to Larry Fine (Leary) and Moe Howard (Perret).

domestic court "shall not recognize or enforce a foreign judgment for defamation" unless it satisfies both First Amendment and due process considerations. See 28 U.S.C. § 4102."[22]

99. Defendant's Perret, Leary and Abel's Canadian Amended Statement of Claim dated September 30, 2013 is based upon a foreign defamation law that offers less protection than the United States First Amendment.[23]

100. Defendant Perret, Leary's and Abel's Canadian Amended Statement of Claim pleads no facts which would establish falsity, a key burden of proof not found in Canadian law.

101. Defendant Perret, Leary and Abel's Amended Statement of claim alleged Copyright infringement involving creative works that were mixed with "defamatory script", creative works they did not own when published to the Slabbed New Media website including creative works that were included in the "expanded record" of the Canadian Defamation proceedings specifically rejected by this Court in *Trout Pont Lodge et al v Doug K. Handshoe*, 729 F.3d 481 (2013).

102. Defendant Perret, Leary and Abel's Amended Statement of Claim contained allegations of defamation related to the Concrete Busters Civil Suit which were specifically inserted as part of the expanded appellate record of *Trout Point Lodge et al v Doug K. Handshoe*, 729 F.3d 481(2013) at the insistence of the Trout Point Lodge Criminal Conspirators.

103. Plaintiff Handshoe did not draft, file or sign the Concrete Busters Civil Suit in the New Orleans Civil District Court, was never engaged to represent Concrete Busters in any capacity nor did he have any prior knowledge of its filing.[24]

·

---

[22] Opinion of the 5th Circuit Court of Appeals *Trout Point Lodge et al v Handshoe* 729 F.3d 481 (2013) quoting from the Findings to Pub. L. No. 111-223, § 2, 124 Stat. 2380, reproduced in the Notes section of 28 U.S.C. § 4101.

[23] Id.

104. Defendants Perret, Leary and Abel d/b/a Trout Point Lodge, Ltd.'s Amended Statement of Claim is so nonsensically plead it could not have garnered a default judgment in the State of Mississippi.

## V. CAUSES OF ACTION
## COUNT 1
### (Misrepresentation under 17 U.S.C. § 512(f))
### (Leary, Perret, Abel, Trout Point Lodge and Ashoka)

105. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

106. The Takedown Notice of December 13, 2012 represented that Publisher Handshoe and Slabbed New Media, LLC's posts infringed copyrights owned by Ashoka, on whose behalf the Defendants swore they were authorized to act.

107. The Slabbed New Media, LLC posts that included a photograph from the Ashoka Change Makers website is a self-evident non-infringing fair use under 17 U.S.C. § 107. This is in part because the Slabbed New Media, LLC posts non-commercially transforms a photo contained as a part of a promotional multipage magazine presentation that was made available free of charge to the public, it uses only a small, non-substantial portion of the original work, and does not substitute for the work or harm any market for the work, which was first published in 2010 and given away free of charge to the public as promotional material for the Trout Point Criminal enterprise. Additionally, Plaintiff Handshoe had no connection to those postings in his individual capacity.

---

[24] The Concrete Busters Amended Complaint does raise serious ethical questions regarding Louisiana Attorney Randy Smith's handling of that civil suit, which evidently contained a myriad of false allegations levied against Landfill Magnet Fred Heebe that Smith knew were false when he authorized the amended complaint. In any event Plaintiff has retained the email from Smith's partner Steven Gele, who forwarded Plaintiff a copy of the Amended Complaint after it was filed in Louisiana State Court as well as subsequent emails from Plaintiff to Gele asking for specific confirmation of certain of the allegations. Gele refused to answer those inquiries.

108. On information and belief, Defendants had actual subjective knowledge of the contents of the Slabbed New Media, LLC post and that it did not infringe any Ashoka copyrights on the date they sent Automattic, Inc. the takedown notice regarding the photograph of defendants Abel, Leary and Perret included in the public interest news stories. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

109. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that Publisher Handshoe and Slabbed New Media, LLC's post did not infringe on any Ashoka copyrights on the date they sent Automattic, Inc. the takedown notice under the DMCA.

110. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on Ashoka's copyright.

111. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

112. The misrepresentations contained in the Takedown Notice were material to Automattic, Inc's decision to terminate access to the Slabbed New Media, LLC posts that were subject of the Takedown Notice causing Plaintiff to incur damages. Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment.

## COUNT 2
### (Misrepresentation under 17 U.S.C. § 512(f))
### (Leary, Perret, Abel, Trout Point Lodge and Ashoka)

113. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

114. The Takedown Notice of December 14, 2012 represented that Publisher Handshoe and Slabbed New Media's post infringed copyrights owned by Ashoka on whose behalf the Defendants swore they were authorized to act.

115. The Slabbed New Media, LLC posts that included a photograph from the Ashoka Change makers website is a self-evident non-infringing fair use under 17 U.S.C. § 107. This is in part because the Slabbed New Media, LLC posts non-commercially transforms a photo contained as a part of a promotional multipage magazine presentation that was made available free of charge to the public, it uses only a small, non-substantial portion of the original work, and does not substitute for the work or harm any market for the work, which was first published in 2010 and given away free of charge to the public as promotional material for the Trout Point Criminal enterprise. Additionally, Plaintiff Handshoe had no connection to those postings in his individual capacity.

116. On information and belief, Defendants had actual subjective knowledge of the contents of Publisher Handshoe and Slabbed New Media, LLC's post and that it did not infringe any Ashoka copyrights on the date the Defendants sent Automattic, Inc. the takedown notice regarding the photograph of defendants Leary and Perret included in the public interest news stories. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

117. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that Publisher Handshoe and Slabbed New Media, LLC's post did not infringe on any Ashoka copyrights on the date they sent Automattic, Inc. the takedown notice under the DMCA.

118. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on Ashoka's copyright.

119. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

120. The misrepresentations contained in the Takedown Notice and subsequent Canadian defamation suit were material to Automattic, Inc.'s decision to terminate its long standing hosting relationship with Slabbed New Media, LLC.

121. The misrepresentations contained in the Takedown Notice were material to Automattic, Inc's decision to terminate access to the Slabbed New Media, LLC posts that were subject of the Takedown Notice causing Plaintiff to incur damages.  Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment.

**COUNT 3**
**(Misrepresentation under 17 U.S.C. § 512(f))**
**(Progress Media, Smulders)**

122. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

123. The Takedown Notice of December 14, 2012 represented that Publisher Handshoe and Slabbed New Media, LLC's posts infringed copyrights owned by Progress Media Group

Limited and Marilyn Smulders on whose behalf the Canadian lawyer swore he was authorized to act.

124. The Slabbed New Media, LLC posts is a self-evident non-infringing fair use under 17 U.S.C. § 107. This is in part because the Slabbed New Media, LLC posts non-commercially transforms a photo contained as a part of a promotional multipage magazine presentation that was given away free of charge to the public, it uses only a small, non-substantial portion of the original work, and does not substitute for the work or harm any market for the work, which was first published in late 2006 and given away free of charge to the public. Additionally, Plaintiff Handshoe had no connection to those postings in his personal capacity.

125. On information and belief, Defendants had actual subjective knowledge of the contents of the Slabbed New Media, LLC post and that it did not infringe any Progress Media Group Ltd. or Marilyn Smulders copyrights on the date they sent New Dream Network the takedown notice regarding the photograph of defendants Abel, Leary and Perret included in the public interest news stories on the Slabbed New Media, LLC public interest news stories published by Publisher Handshoe. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

126. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that the Slabbed New Media, LLC posting did not infringe on any Progress Media Group Ltd. or Marilyn Smulders copyrights on the date they sent New Dream Network the takedown notice under the DMCA.

127. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on Progress Media Group Ltd. or Marilyn Smulders copyright.

128. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

129. The misrepresentations contained in the Takedown Notice were material to New Dream Network's decision to require Plaintiff disable access to the Slabbed New Media, LLC posts that were subject of the Takedown Notice causing Plaintiff to incur damages.  Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment.

**COUNT 4**
**(Misrepresentation under 17 U.S.C. § 512(f))**
**(Leary, Perret, Abel, Trout Point Lodge)**

130. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

131. The Takedown Notice of December 31, 2012 represented that Publisher Handshoe and Slabbed New Media, LLC's posts infringed copyrights owned by Torstar Corporation on whose behalf the Defendants swore they were authorized to act.

132. The Slabbed New Media, LLC posts is a self-evident non-infringing fair use under 17 U.S.C. § 107. This is in part because the Slabbed New Media, LLC posts non-commercially transforms a photo contained as a part of a larger news story promoting the Trout Point Criminal Enterprise's campaign of Libel Tourism against the United States

media, it uses only a small, non-substantial portion of the original work, and does not substitute for the work or harm any market for the work, which was first published in February 2012. Additionally, Plaintiff Handshoe had no connection to those postings in his personal capacity.

133. On information and belief, Defendants had actual subjective knowledge of the contents of the Slabbed New Media, LLC post and that it did not infringe any Torstar Corporation copyrights on the date they sent New Dream Network the takedown notice regarding the photograph of defendants Abel, Leary and Perret included in the Slabbed New Media, LLC public interest news stories published by Publisher Handshoe. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

134. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that the Slabbed New Media, LLC posting did not infringe on any Torstar Corporation copyrights on the date they sent New Dream Network the takedown notice under the DMCA.

135. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on a Progress Media Group Ltd. or Marilyn Smulders copyright.

136. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice they were authorized to act on Torstar's behalf or that material or activity was infringing were false.

137. The misrepresentations contained in the Takedown Notice were material to New Dream Network's decision to require Plaintiff disable access to the Slabbed New Media, LLC

posts that were subject of the Takedown Notice causing Plaintiff to incur damages. Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment.

## COUNT 5
### (Misrepresentation under 17 U.S.C. § 512(f))
### (Leary, Perret, Abel, Trout Point Lodge)

138. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

139. The Takedown Notice of February 15, 2014 represented that the Slabbed New Media, LLC parody created by and published to YouTube by Publisher Handshoe infringed on copyrights owned by Charles Leary, Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. on whose behalf Defendant Leary swore he was authorized to act.

140. The Slabbed New Media, LLC parody that included a photographs Trout Point criminal Conspirators is a self-evident non-infringing fair use under 17 U.S.C. § 107.

141. On information and belief, Defendants had actual subjective knowledge of the contents of the Slabbed New Media, LLC video and that it did not infringe any of their copyrights on the date they sent YouTube the takedown notice regarding the Slabbed New Media parody. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

142. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that the

Slabbed New Media, LLC posting did not infringe on any of their copyrights on the date they sent YouTube the takedown notice under the DMCA.

143. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on their copyrights.

144. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

145. The misrepresentations contained in the Takedown Notice and service of a Canadian Injunction the United States Courts had previously found unenforceable were material to YouTube's decision to require Plaintiff disable access to the Slabbed New Media, LLC video that were subject of the Takedown Notice causing Plaintiff to incur damages. Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment.

### COUNT 6
### (Misrepresentation under 17 U.S.C. § 512(f))
### (Leary, Perret, Abel, Trout Point Lodge, Ashoka)

146. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

147. The Takedown Notice of February 18, 2014 represented that Publisher Handshoe and Slabbed New Media, LLC's republication with permission of parodies created by third parties unconnected to the Trout Point Lodge Criminal Enterprise that were published to the Slabbed New Media website with the express consent of the creators of the works in question and for creative works previously subject to multiple takedown notices submitted

by Ashoka, the National Geographic Society and Progress Media/Marilyn Smulders infringed on copyrights owned by Ashoka, the National Geographic Society, Charles Leary, Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. on whose behalf's Defendant Leary swore he was authorized to act.

148. The Slabbed New Media, LLC posts that included republication with permission of parodies created by third parties unconnected to the Trout Point Lodge Criminal Enterprise that were published to the Slabbed New Media website with the express consent of the creators of the works in question and for creative works previously subject to multiple takedown notices submitted by the National Geographic Society and Progress Media/Marilyn Smulders were either specifically allowed by the creators of the parodies or are a self-evident non-infringing fair use under 17 U.S.C. § 107. This is in part because the Slabbed New Media, LLC posts non-commercially transforms the National Geographic Society/Ashoka/Progress Media/Marilyn Smulders photos that were part of a promotional multipage magazine presentations that was made available free of charge to the public, uses only a small, non-substantial portion of the original work, and does not substitute for the work or harm any market for the work, which was first published in 2010 and 2006 respectively and given away free of charge to the public as promotional material for the Trout Point Criminal enterprise. Additionally, Plaintiff Handshoe had no connection to those postings in his individual capacity.

149. On information and belief, Defendants had actual subjective knowledge of the contents of the Slabbed New Media, LLC posts and that it did not infringe any Ashoka /National Geographic/Ashoka/National Geographic copyrights or the rights of the creators of the parodies posted to the Slabbed New Media website with the permission of the owners of

the creative works on the date they sent New Dream Network the takedown notice regarding the photograph of defendants Abel, Leary and Perret included in the public interest news stories. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

150. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that the Slabbed New Media, LLC posting did not infringe on any National Geographic/Ashoka/Progress Media/Smulders copyrights or the rights of the creators of the parodies posted to the Slabbed New Media website with the permission of the owners of the creative works on the date they sent New Dream Networks the takedown notice under the DMCA.

151. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on any National Geographic Society/Ashoka Foundation and Progress Media/Marilyn Smulders copyrights or the copyrights of the third party owners of the parodies that were published to the Slabbed New Media website with permission of the owner/creators of the parodies.

152. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

153. The misrepresentations contained in the Takedown Notice were material to New Dream Network's decision to require Plaintiff disable access to the Slabbed New Media, LLC posts that were subject of the Takedown Notice and ultimately New Dream Network's

decision to terminate its contractual hosting relationship with Slabbed New Media, LLC causing Plaintiff to incur damages. Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement, harm to his investment in Slabbed New Media, LLC, loss of professional reputation, intentional infliction of emotional distress and the harm to Plaintiff's free speech rights under the First Amendment.

### COUNT 7
### (Misrepresentation under 17 U.S.C. § 512(f))
### (Leary, Perret, Abel, Trout Point Lodge)

154. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

155. The Takedown Notice of April 1, 2014 represented that Publisher Handshoe and Slabbed New Media, LLC republication with permission of a parody belonging to Frank Magazine infringed copyrights owned by Charles Leary, Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. on whose behalf Defendant Leary swore he was authorized to act.

156. The Slabbed New Media, LLC republication with permission of a parody belonging to Frank Magazine does not infringe any copyrights owned by Charles Leary, Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. Parodies, including those that contain photographs of the Trout Point Criminal Conspirators, Trout Point Lodge and other photos are a form of self-evident non-infringing fair use under 17 U.S.C. § 107.

157. On information and belief, Defendants had actual subjective knowledge of the contents of the Slabbed New Media, LLC post and that it did not infringe any of their copyrights on the date they sent HostGator, LLC the takedown notice regarding the Slabbed New Media publication with permission of the Frank Magazine parody. With this actual subjective

knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

158. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that the Slabbed New Media, LLC posting did not infringe on any of their copyrights on the date they sent YouTube the takedown notice under the DMCA.

159. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Slabbed New Media, LLC posting infringed on their copyrights.

160. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

161. The misrepresentations contained in the Takedown Notice were material to HostGator LLC's decision to require Plaintiff disable access to the Slabbed New Media, LLC posts that were subject of the Takedown Notice causing Plaintiff to incur damages.  Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment.

## COUNT 8
### (Misrepresentation under 17 U.S.C. § 512(f))
### (Leary, Perret, Abel, Trout Point Lodge)

162. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

163. The Takedown Notices of January 15, 2016 and January 18, 2016 represented that Publisher Handshoe and Slabbed New Media, LLC publications previously subject to

multiple takedown notices submitted by Progress Media/Marilyn Smulders, Torstar/Trout Point Criminal conspirators Abel, Leary and Perret infringed on copyrights owned by Torstar Corporation, Charles Leary, Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. on whose behalf Defendant Leary swore he was authorized to act.

164. The Slabbed New Media, LLC posts that included publication of creative works previously subject to multiple takedown notices submitted by the Leary on behalf of himself, Perret and Abel and Progress Media/Marilyn Smulders are a self-evident non-infringing fair use under 17 U.S.C. § 107. This is in part because the Slabbed New Media, LLC posts non-commercially transforms the Torstar, Inc. and Progress Media/Marilyn Smulders photos that were part of a Canadian new accounts that promoted the Trout Point Criminal conspirators reign of libel tourism against US Media outlets reporting on a New Orleans bribery investigation and a promotional multipage magazine presentations that was made available free of charge to the public and uses only small, non-substantial portions of the original works, and does not substitute for the work or harm any market for the work, which was first published in 2012 and 2006 respectively, and were made available free of charge to the public as promotional material for the Trout Point Lodge Criminal enterprise. Additionally, Plaintiff Handshoe had no connection to those postings in his individual capacity.

165. On information and belief, Defendants had actual subjective knowledge of the contents of Publisher Handshoe and the Slabbed New Media, LLC posts and that it did not infringe any Torstar, Inc., Charles Leary, Vaughn Perret, Daniel Abel, Trout Point Lodge or Progress Media/Marilyn Smulders copyrights on the dates they sent CloudFlare and Amazon Web Services the Takedown notices regarding the photograph of defendants

Abel, Leary and Perret and the Trout Point Lodge building included in the public interest news stories. With this actual subjective knowledge, Defendants acted in bad faith when they sent the takedown notice, knowingly and materially misrepresenting that they had concluded that the postings were infringing.

166. In the alternative, Defendants should have known, if they had acted with reasonable care or diligence, or would have no substantial doubt had they been acting in good faith, that the Publisher Handshoe - Slabbed New Media, LLC posts did not infringe on any Charles Leary, Vaughn Perret, Daniel Abel, Trout Point Lodge or Progress Media/Marilyn Smulders copyrights on the date they sent CloudFlare and Amazon Web Services the takedown notices under the DMCA.

167. Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Publisher Handshoe-Slabbed New Media, LLC posts infringed on any Charles Leary, Vaughn Perret, Daniel Abel, Trout Point Lodge or Progress Media/Marilyn Smulders copyrights that were published to the Slabbed New Media, LLC  website.

168. On information and belief, Defendants knew at the time they sent the Takedown Notice that the representations in the Takedown Notice that material or activity was infringing were false.

169. The misrepresentations contained in the Takedown Notice were material to Amazon Web Service's decision to require Plaintiff to disable access to his and Slabbed New Media, LLC posts that were subject of the Takedown Notice.  Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement, harm to his investment in Slabbed New Media, LLC and the harm to Plaintiff's free speech rights under the First Amendment.

**COUNT 9**
**[DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201, ET SEQ.**
**(DECLARATORY JUDGMENT ACT)**
**AND THE COPYRIGHT ACT (TITLE 17 OF THE U.S. CODE)]**
**(MISUSE OF COPYRIGHT - 17 U.S.C. § 102(b))**
**(All Defendants)**

170.  Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

171.  Ashoka, Perret, Leary, Abel, Smulders and Progress Media engaged in a scheme to defraud Plaintiff of his valuable first amendment rights and silence factual news reporting in the public interest via submission of materially misrepresented takedown notices pursuant to United States law while actively planning to litigate the dispute in a foreign country after first substantively engaging United States law forcing the removal of constitutionally protected speech including journalism in the public interest.

172.  Defendants knew at the time they sent these takedown notices under United States law that they contained material misrepresentations. Further, the Defendants never intended to seek remedy in the United States Courts when they substantively engaged the legal process outlined at 17 U.S.C. § 512.

173.  Additionally defendant Ashoka never registered a copyright involving the photo shown by Publisher Handshoe under the Fair Use provisions of the United States Copyright Code. Furthermore, Ashoka's actions materially furthered the Defendants' scheme to litigate Ashoka's alleged copyright interests in Canada in a practice known as Libel Tourism.

174.  Plaintiff being informed of the events and based upon such information, knowledge and belief alleges that Defendants' motivation for alleging that Plaintiff infringed Defendants' supposed copyrights was not to protect those alleged copyrights, but rather to prevent

Plaintiff from reporting on a very newsworthy bribery and money laundering conspiracy involving the duly elected Jefferson Parish President as well as collaterally attack previous judgments of this Court including filing meritless defamation suits against Plaintiff's former legal counsel in acts of retaliation that strike at the heart of the efficient administration of justice.

175. The Defendants engaged in the misuse of their alleged copyrights when Defendants knew, or should have known, that Defendants copyrights were never registered with the United States Copyright office and/or that Plaintiff's fair use of those images did not infringe any of Defendants' alleged copyrights.

176. The numerous misrepresentations made by the Defendants were made to knowingly induce Plaintiff to engage the legal processes outlined at 17 U.S.C. § 512 to resolve the Copyright dispute while the Defendants never intended to engage the United States law beyond the takedown provisions contained in section 512.

177. Plaintiff relied on these misrepresentations made by the defendants when he engaged the processed outlined at 17 U.S.C. § 512 to resolve the Copyright dispute.

178. Plaintiff is therefore entitled to a declaration and judgment that to the extent Defendants own any valid copyright interest in the creative works in questions or have claimed to own any valid copyrights, Defendants have misused such copyrights rendering those Copyrights as unenforceable.

## COUNT 10
## [DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201, ET SEQ. (DECLARATORY JUDGMENT ACT) AND THE COPYRIGHT ACT (TITLE 17 OF THE U.S. CODE)]

179. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

180. There is a real and actual controversy between Plaintiff and Defendants regarding whether Slabbed New Media's use of certain photos in postings regarding the fall of Aaron Broussard in disgrace, his criminal prosecution and coverage of the various SLAPP suits filed against the United States Media from Canada infringes on copyrights that the Defendants lawfully owns or administers.

181. Defendants' conduct has forced both Plaintiff and Slabbed New Media to choose between performing journalism in the public interest and sharing this work with the public and risking legal liability via meritless SLAPP suits originating from Canada, a venue with no connection to Plaintiff Handshoe in his personal capacity. The controversy between Handshoe and the Defendant is thus real and substantial and demands specific relief through a decree of a conclusive character.

182. Plaintiff Handshoe is entitled to declaratory judgment that his use of the photographs in question as agent for Slabbed New Media, LLC is lawful under the fair use doctrine and does not infringe on any of the Defendants' copyrights.

183. Further Plaintiff Handshoe is entitled to declaratory judgment that as a matter of law he has no liability in his personal capacity over content belonging to a third party in which he acts as agent pursuant to the Mississippi Limited Liability Act.

184. Further, Plaintiff is entitled to an injunction prohibiting the Defendants, their agents, attorneys, and assigns from asserting a copyright claim or filing another civil action against Slabbed New Media, LLC, Plaintiff/Publisher Handshoe or Plaintiff in his personal capacity or the lawyers that have previously represented Plaintiff without first seeking leave of this Court.

## COUNT 11
## [DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 4101, ET SEQ.
## (SPEECH ACT of 2010)]

185. Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Complaint.

186. There is a real and actual controversy between Plaintiff and Defendants regarding whether the underlying Canadian defamation action and its multiple resulting judgments are repugnant to the constitution of the United States of America.

187. The 5th Circuit Court of Appeals has previously; conclusively found that there is "no meaningful dispute that the law applied by the Nova Scotia Court provides less protection of speech and press than First Amendment and Mississippi law."

188. The Canadian underlying defamation action and resulting multiple component judgments relied in part upon previous decisions of the Nova Scotia Courts this Honorable Court has previously found to be unenforceable in the United States of America.

189. The Canadian underlying defamation action and resulting multiple, component judgments were based in substantial part upon allegations previously heard and decided by this Court in the action styled *Trout Point Lodge et al v Handshoe.*

190. The Canadian underlying defamation action and resulting multiple, component judgments were based upon conclusory allegations which failed to prove the falsity of the publications at issue.

191. The Canadian underlying defamation action and resulting multiple, component judgments represents a collateral attack on the previous rulings of this Court in the action styled *Trout Point Lodge et al v Handshoe.*

192. Plaintiff is entitled to a declaratory judgment that as a matter of law each and every component judgment rendered in the case styled, *Trout Point Lodge et al v Douglas Handshoe*, Nova Scotia Supreme Court No. 411345 is REPUGNANT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA and unenforceable in the United States of America.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. Defendants owe Plaintiff an amount in compensatory damages valued by a Nova Scotia Court at $180,000. Further, because of the fraudulent, intentional, malicious course of conduct, and actions with reckless disregard for the rights of the Plaintiff, the Defendants owe an award of punitive damages in an amount sufficient to punish and deter such similar conduct in the future in an amount to be determined along with additional actual, compensatory, and nominal damages according to proof;

b. For a judgment declaring that to the extent this Court finds the defendants' have a valid copyright interests in the creative works displayed by Publisher Handshoe that the Defendants misused their copyrights.

c. For an order enjoining Defendants, their agents, attorneys, and assigns from asserting a copyright claim or filing another civil action against Slabbed New Media, LLC, Plaintiff/Publisher Handshoe or Plaintiff in his personal capacity or the lawyers that have previously represented Plaintiff without first seeking leave of this Court.

d. For a judgment declaring as "Fair Use" all photographs used in the reporting posted by Publisher Handshoe to the Slabbed New Media website that was previously subject to Takedown notices as alleged in this action.

e.  For a judgment declaring the Canadian Judgments rendered in the case styled, *Trout Point Lodge et al v Douglas Handshoe*, Nova Scotia Supreme Court No. 411345 as REPUGNANT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA and unenforceable in the United States of America.

f.  For costs and attorneys' fees pursuant to 17 U.S.C. § 512(f), or otherwise as allowed by law; and

g.  For such other and further relief as the Court shall find just and proper.

Respectfully submitted this 26[rd] day of January, 2017,

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on January 26, 2017 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

Respectfully submitted this 26rd day of January, 2017,

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

54