IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

```
                                                )
DOUGLAS HANDSHOE                                )
                                                )
v.                                              )   CIVIL ACTION NO. 1:15cv382-HSO-JCG
                                                )
VAUGHN PERRET, CHARLES LEARY &                  )
DANIEL ABEL, D/B/A/ TROUT                       )
POINT LODGE LTD OF NOVA SCOTIA                  )
& IN THEIR INDIVIIDUAL CAPACITIES               )
PROGRESS MEDIA GROUP LIMITED,                   )
MARILYN SMULDERS, & ASHOKA                      )
                                                )
```

*FILED MAR 06 2017 — SOUTHERN DISTRICT OF MISSISSIPPI, ARTHUR JOHNSTON, DEPUTY*

## MEMORANDUM OF LAW IN OPPOSITION TO VAUGHN PERRET AND CHARLES LEARY'S MOTION TO DISMISS

**COMES NOW INTO COURT**, Plaintiff Douglas Handshoe, in his individual capacity and as Publisher of Slabbed New Media, LLC and submits this Memorandum of Law in Opposition to Vaughn Perret and Charles Leary's Motion to Dismiss [ECF #96]. In support thereof he respectfully submits the following:

### INTRODUCTION

The salient facts and background are stated in detail in Plaintiff's Third Amended Complaint. Plaintiff owns a Media Company for which he acts as Publisher. The Defendants, enraged that the Plaintiff's Media Company uncovered their participation in financial transactions assisting a Louisiana domiciled Limited Liability Company's conduct of an illegal bribery and money laundering scheme involving former Jefferson Parish President Aaron Broussard, have conducted a defamation jihad against Plaintiff and several of his former attorneys. The Defendants have also submitted numerous misrepresented takedown notices involving the same content that is owned by Slabbed New Media, LLC..

1

Defendants have also submitted numerous misrepresented takedown notices involving the same content that is owned by Slabbed New Media, LLC..

## LAW AND ARGUMENT

## STANDARDS FOR DISMISSAL

A claim must be dismissed, pursuant to Rule 12(b)(1), "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party seeking to invoke the court's subject matter jurisdiction has the burden of establishing that such jurisdiction exists. *Hartford Ins. Group v. LouCon Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

Rule 12(b)(6) motions are disfavored in the law, and a court will rarely encounter circumstances that justify granting them. *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988). A court may dismiss a claim only when it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations found in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A motion to dismiss should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him or her to relief. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The claimant is not required to set out in detail the facts upon which the claim is based. Rather, the Rules require that the claim simply give the defendant "fair notice." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993). Further, a court may not look beyond the pleadings. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The court must accept as true the allegations in the complaint, and must view the allegations in the light most favorable to the plaintiff. Id. The allegations in the claim need only give the defendants fair notice of the nature of the claim and the grounds on

which it rests. See *Mahone*, 836 F.2d at 926. The Rules also dictate that the pleadings be liberally construed "as to do substantial justice." Id.

## REASONS FOR DENYING THE MOTION

### I.  THE PLAINTIFF SUFFERED ACTUAL INJURY SPECIFIC TO HIM THUS HE HAS STANDING TO BRING THIS ACTION UNDER ARTICLE III AND THERE IS AMPLE EVIDENCE THAT STATES A VIABLE CAUSE OF ACTION AGAINST PERRET AND LEARY AS INDIVIDUALS

The Defendants frame the question of standing as that plaintiff failed to allege "facts demonstrating both a particularized injury in fact that is personal and fairly traceable to the actions of Leary and Perrett in their personal capacity (based upon the allegations in the Complaint), and that he is asserting his own legal rights and interests and not the legal rights or interest of third parties. The Third Amended Complaint conclusively establishes that the plaintiff has not personally suffered a particularized injury that is fairly traceable to any actionable conduct of Leary or Perrett acting in their individual capacity."

The Defendants claim the DMCA Notices were sent on behalf of Trout Point Lodge Ltd, disavowing any involvement in their personal capacities with the submission of misrepresented takedown notices or ostensibly using those misrepresented notices in Canadian civil litigation for Defamation and Copyright Infringement. However, the defendant's self-contradict these assertions in both filings to this Honorable Court, The Fifth Circuit Court of Appeals as well as their own pleadings filed in the Canadian copyright/defamation action which incorporated and used the misrepresented takedown notices as evidence of copyright infringement.

In the docket of this instant matter at ECF 1-2[1] is a true and correct copy of the Amended Canadian Notice of Application in Court filed by Defendants Leary, Perret and Trout Point

---

[1] See also Exhibits E and F Attached to the Affidavit in Support of this Opposition

Lodge on February 8, 2013. Paragraph 14 alleges infringement of the Ashoka Photographs and identifies Charles Leary as the owner of that intellectual property. Paragraph 13 asserts "moral rights" under the Canadian Copyright act to Vaughn Perret involving a picture of the Lodge that is the copyrighted property of Expedia. Not only was the application in Court styled "Trout Point Lodge, Vaughn Perret and Charles Leary" as Applicants, damages for Copyright infringement and Defamation were awarded to each of the three parties in that civil action. Clearly the actions of the Defendants sending Takedown Notices over content owned by Slabbed New Media L.L.C. that was published by the Plaintiff, which the Defendants claimed was the intellectual property of both Charles Leary and Vaugh Perret, exceeded that of simply acting the part of representatives of a Canadian Limited Company as Leary and Perret also clearly acted on their own behalf as well in sending these notices by their own admission in Canadian Court filings.

Further Defendants Leary and Perret have taken the positon that Trout Point Lodge, Ltd should be disregarded as an entity in determining the subject matter jurisdiction of this Court in the case styled *Trout Point Lodge et al v Handshoe*[2]. In their appeal of the denial of their Rule 60 Motion by Chief Judge Guirola, citing the pleadings filed in this instant case and representing them to that Court as true, Defendant's Leary and Perret were more explicit with their assertion that Trout Point Lodge should be disregarded:[3]

> It remains to this day unestablished that Appellee is a "citizen of a state" and that Trout Point is not what under the law of federal jurisdiction it must be presumed to be: an artificial entity other than what the law would recognize as a company being made up of the citizenship of its stateless members. Appellee admitted in federal court filings, after the motions to vacate were filed, that Perret and Leary "do business as" TPL; this Court may take judicial notice of

---

[2] See Exhibit A to the Accompanying Affidavit, Document 73, Case 1:12-cv-00090-LG-JMR Filed 06/09/16 by the Defendants.

[3] See Exhibit B to the Accompanying Affidavit, Document 00513686769, Case16-60508 Filed 09/20/2016 in the Fifth Circuit Court of Appeal by the Defendants.

4

such pleadings and the resulting admission that **Appellants are not separate entities from TPL**. (*Emphasis added*)

Leary and Perret are silent in their motion to dismiss regarding the fact that paragraph six of the Third Amended Complaint filed by Plaintiff reads:

> Defendant Trout Point Lodge Ltd. is a limited company formed under the laws of Nova Scotia, with registered offices located 189 Trout Point Rd, East Kemptville, NS B5A 5X9, Canada.[4]

The Plaintiff has suffered concrete and particularized injury in fact, and thus Defendant's Motion to Dismiss claims facts that are divorced from the record of this case. A "concrete" injury is one that actually exists. *Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016). There is no dispute that a video owned by Slabbed New Media that published by Plaintiff to his personal YouTube account was taken down from YouTube for several weeks.[5] That censorship is an actual, not conjectural or hypothetical, injury.

A "particularized" injury is one that has a personal and individualized effect on the plaintiff. *Spokeo*, 136 S. Ct. at 1548. Plaintiff complains in part about the takedown of Slabbed New Media parody published to his personal YouTube account. Plaintiff's injury is therefore both concrete and particularized, and is neither conjectural nor hypothetical. The Misrepresented Takedown Notices were submitted by Charles Leary on his own behalf[6], Vaughn Perret's behalf[7] as well as on behalf of their shell corporation Trout Point Lodge Ltd[8] that were subsequently used by all three in Canadian Copyright and Defamation litigation that resulted in damages

---

[4] The Court Clerk refused to stamp the summons for Trout Point Lodge, which is why it has yet to be issued.
[5] See Exhibit C to the Accompanying Affidavit, Screen Capture of Parody Video created and owned by Slabbed New Media, LLC hosted by YouTube via the Publisher's account located at https://www.youtube.com/watch?v=M_pc4bjaLno that was subject to the February 15, 2014 Takedown Notice.
[6] See ECF 1-3, Page 6 filed 11/16/2015 in this matter.
[7] See ECF #1-3, Page 11 filed 11/16/2015 in this matter.
[8] See Exhibit F in the Accompanying Affidavit in Support of this Opposition, specifically Paragraph 4(c) where Leary swears the DCMA Takedown Notices were submitted on behalf of "the applicants", which were Charles Leary, Vaughn Perret and Trout Point Lodge Ltd.

awards to all three were clearly aimed at Plaintiff in his personal capacity and caused particularized injury to the Plaintiff by all of the Trout Point Defendants.

Defendant's assertions that the Third Amended Complaint contains state common law causes of action which are preempted is without support as the Third Amended Complaint pleads no state law causes of action. Additionally, Counts One through Five of the Third Amended Complaint were properly asserted before the expiration of the Statute of Limitations for the reasons stated above.

## II. LEARY, PERRET OR TROUT POINT LODGE, LTDS CANADIAN COPYRIGHTS DO NOT ESTABLISH ANY BASIS FOR THE ISSUANCE OF THE TAKEDOWN NOTICES UNDER UNIITED STATES SUBSTANTIVE LAW

The Defendants' argument that Plaintiff fails to state a claim for which relief can be obtained because "the notices provided by Trout Point were made pursuant to Canadian law" is again directly contradicted by Defendants' own filings to the Canadian Courts. In the Affidavit dated January 23, 2013 that accompanied both the Original and Amended Applications in Court (dated January 23, 2013 and February 8, 2013 respectively) in paragraph 4(c) Defendant Leary, on behalf of himself and the other defendants stated:

> The applicants have served Take Down Notices on New Dream Networks and Respondent's prior web host Automattic as per the relevant Digital Millennium Copyright Act (DMCA) of the United States of America and in each case these have been passed on to Respondent. He has filed Counter Notifications under penalty of perjury, and is aware of the Applicants' claims of copyright infringement. Examples of DMCA Notices and Counter Notifications are attached hereto as Exhibit "A."

Further, not only did the defendants clearly state they had engaged a substantive United States legal process, no Canadian Court could rule after the fact on the issue as to whether the Takedown notices were misrepresented *at the time they were submitted*, a question of United

6

States Substantive Law. To the extent the defendants submitted Takedown notices involving content they did not own or possess any element of copyrightable interest at the time the takedown notices were submitted indicates they were misrepresented when they were sent and no later Canadian Court ruling can change that basic fact. United States law was engaged by the Defendants and the requirement under United States law that fair use be considered before the submission of a Takedown notice to a service provider clearly is applicable.[9]

Additionally, any claim the defendants may make that they were submitting later notices pursuant to the Canadian Copyright Act to service providers such as YouTube is also not credible under a closer inspection. Attached as Exhibit G to the Affidavit Accompanying this Opposition is YouTube's Terms of Service dated June 9, 2010. Paragraph 8 states:

> 8. Digital Millennium Copyright Act
> If you are a copyright owner or an agent thereof and believe that any Content infringes upon your copyrights, you may submit a notification pursuant to the Digital Millennium Copyright Act ("DMCA") by providing our Copyright Agent with the following information in writing (see 17 U.S.C 512(c)(3) for further detail):

Further the policies of both HostGator and DreamHost with regard to claims of Copyright Infringement are attached as Exhibits H and I respectively to the Accompanying Affidavit in support of this Opposition. Dream Host succinctly explains why United States Interactive Service Providers exclusively use the processes contained in the United States Copyright Act to handle reports of Infringement for its United States domiciled customers:

> The Digital Millennium Copyright Act (DMCA) is a United States copyright law that implements 1996 treaties of the World Intellectual Property Organization (WIPO). A DMCA claim occurs when someone suspects a website of copyright infringement.
>
> If you'd like to file a claim of copyright infringement can do so via either email or postal mail.

---

[9] *Lenz v. Universal Music Corp.*, 801 F.3d 1126 (2015) Writ to United States Supreme Court Denied

Alternatively, defendants claim that their Canadian judgment which was obtained after several of the misrepresented Takedown Notices were sent is somehow applicable to the owner of the website in question, Slabbed New Media LLC is misplaced as they deliberately disregarded the legal owner of the website and/or the owner creators of the works objected to in their Canadian proceedings preferring instead to target Plaintiff in his personal capacity.

For instance, the February 15, 2014 Takedown Notice to YouTube which forms Count Five of the Third Amended Complaint included a reference to a Canadian judgment and injunction against Publisher Handshoe personally involving content that was created and owned by Slabbed New Media, LLC that was published to the Publisher's personal YouTube account in order to facilitate the video's publication to the Slabbed New Media website.  Plaintiff disputes that a Canadian judgment against a party that owned none of the elements of copyrightable interests in the underlying creative work creates an enforceable legal right against the rightful owner of the creative work which was alleged as infringing.  Defendants filed their Canadian action against a third party other than the creator owner of the work alleged as infringing while representing their judgment as being applicable to the entity they purposely disregarded in their Canadian civil litigation. In any event the Takedown Notice Plaintiff's YouTube account was clearly aimed at Plaintiff in his personal capacity.

Similarly, the February 18, 2014 Takedown Notice alleged in Count 6 of the Third Amended Complaint in part involve allegations of infringement over content that was created and owned by third parties that were also never parties to the underlying Canadian Litigation such as parodies created and owned by Patricia Fournet of Opelousas Louisiana or Frank Magazine of Halifax Nova Scotia that were republished to the Slabbed New Media, LLC website with the express permission of both parties. The Frank Magazine post to the Slabbed New Media website

is attached as Exhibit J to the Accompanying Affidavit in Support of this Opposition.[10] The Takedown notice contained the Canadian Court Judgment and Order bearing Plaintiff's name thus the Takedown notice was clearly aimed at him as well as the legal owner of the website, Slabbed New Media, LLC, which the defendants deliberately disregarded in their Canadian legal proceedings. In the circumstances described above, no Canadian Court order can cure the numerous misrepresentations contained in the Defendant's DMCA Takedown Notices that were sent to a entity the defendants purposely disregarded in their Canadian litigation.

### III. PLAINTIFF PROPERLY ALLEGED THE ELEMENTS NECESSARY TO SUPPORT CAUSATION.

Defendant's, without citing any applicable case law attempt to draw a distinction involving the applicability of Section 512(f) depending on whether the Service Provider directly disables the material identified as infringing in the Takedown Notice or whether the service provider requires the owner of the website subject to the notice to disable the material in response to a Takedown Notice provisions of section 512. This is a difference without a distinction as both courses of action are designed to gain the service provider the immunity provided by section 512(a) by disabling the material identified as infringing.

Since the relief available under Section 512(f) accrues to anyone that is damaged by misrepresentations, "including costs and attorneys' fees, incurred by **the alleged infringer**, by any **copyright owner** or **copyright owner's authorized licensee**, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such

---

[10] See also ECF #96-11, Page 7 for the related Takedown Notice.

misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."[11]

In this instant matter, it is clear that the Plaintiff is the "alleged infringer" while Slabbed New Media is the owner of the Copyright Material alleged to be infringing and relief under Section 512(f) is available to both. There is no requirement under a plain read of Section 512 (f) that the service provider must be a party to 512(f) litigation in order for other parties to obtain relief under that portion of the copyright act.

## IV. SIMILARY, COUNTS 6 THROUGH 8 OF THE THIRD AMENDED COMPLAINT STATE VIABLE CLAIMS UNDER 512(f)

*Lenz v. Universal Music Corp.*, 801 F.3d 1126 (2015) makes it abundantly clear that Fair Use should be considered prior to the submission of Takedown Notices under United States Law in order for such notices to not be misrepresented. The Defendants repeat their lack of standing arguments to argue for the dismissal of Counts 6 through 8 of the Third Amended Complaint. The Defendant's claim Plaintiff admits to this lack of standing as he plead, "Plaintiff Handshoe had no connection to those postings in his individual capacity." This statement of fact is absolutely true, in his individual capacity the Plaintiff had no legal connection to the postings despite what the Defendant's alleged in their Canadian Civil suit. As Plaintiff is publisher of Slabbed New Media, LLC rather than "slabbed.org", as alleged by the defendants in Canada, they sued him in a nonsensical, nonexistent capacity. That said the resulting defamation and Copyright judgments were rendered against him personally.

Both Charles Leary and Vaughn Perret made it abundantly clear their complete disregard of the legal owner of the website on May 27, 2016 when they wrote the following:[12]

---

[11] Quoting 17 U.S.C. 512(f)(2) Emphasis added.

It is well settled that under Section 230 of the Communications Decency Act at 47 U.S.C. § 230 that publishers of "Interactive Computer Services" can theoretically be held liable for Copyright Infringement by specifically exempting the Copyright Act from the scope of the law.[13]

Plaintiff points to the fact that the Takedown Notices sent by the Defendants were not directed to any specific legal entity. However, Defendants own actions, Canadian judgments and correspondence clearly illustrate the alleged infringer within the meaning of Section 512(f) was Plaintiff as Publisher - whether it was the nonsensically styled as Publisher of Slabbed.org or more properly Slabbed New Media, LLC, such entity completely disregarded in each of the derivative Canadian actions which sought to litigate United States Copyright matters.

In any event as Publisher, Plaintiff has absolute standing to sue on behalf of his acts as publisher and in this instance personally as the documentary evidence clearly indicates the takedown notices were directed at him exclusively in those capacities and as previously discussed Plaintiff has suffered concrete and particularized injury in fact as a result of the defendants' tortious conduct.

Plaintiff notes with some irony that the Defendants, by their own admission[14], sent DMCA Takedown Notices to an entity the defendants would later purposely disregard in subsequent Canadian litigation that was supported by those misrepresented Takedown notices. Those misrepresented Takedown Notices were followed by yet more Takedown notices to the disregarded entity (Slabbed New Media, LLC) accompanied by a court order from a civil action

---

[13] 47 U.S.C. § 230(e)(2)

[14] ECF #97, Page 26 in section styled conclusion, "Handshoe lacks standing to bring these claims as they belong to Slabbed New Media, LLC." Slabbed New Media, LLC has since filed a Motion to Intervene in this instant matter.

for defamation and copyright infringement against a third party is the epitome of misrepresented Takedown Notices.[15]

Finally and conclusively the Defendant's misframe the legal questions as to the Defendant's duties engaging United States copyright law provisions contained in section 512 terming fair use as only an affirmative defense concluding, "Rather, the issue as alleged by Plaintiff boils down to what is required of a Canadian copyright owner prior to filing a takedown notice."

,*Lenz v. Universal Music Corp.*, 801 F.3d 1126 (2015) requires that all rightsholders issuing Takedown notices under Section 512 **must consider** whether a use is a lawful fair use before issuing a takedown notice holding that fair use is not just a carve-out of the copyright system but a right on the same level of those described in the rest of the statute. *Lenz* also held that a victim of takedown abuse can vindicate their rights even if the victim cannot show actual monetary loss.

Leary and Perret disregard *Lenz* in favor of *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004) quoting that "In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation." However, the decision in *Lenz* is entirely consistent with *Rossi* by determining that failure of a copyright holder to consider fair use constitutes a "knowing misrepresentation":

> We must first determine whether 17 U.S.C. § 512(c)(3)(A)(v) requires copyright holders to consider whether the potentially infringing material is a fair use of a copyright under 17 U.S.C. § 107 before issuing a takedown notification. Section 512(c)(3)(A)(v) requires a takedown notification to include a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." The parties dispute whether fair use is an authorization under the law as contemplated by the statute — which is so far as we know an issue of first impression in any circuit across the nation. "Canons of statutory

---

[15] Every DMCA Takedown Notice submitted to Slabbed New Media's webhosts after February 14, 2014 had the Canadian orders directed at Plaintiff personally attached to them. (See ECF 96-11.)

> construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning.... A court looks to legislative history only if the statute is unclear." *United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir.1995) (citations omitted). We agree with the district court and hold that the statute unambiguously contemplates fair use as a use authorized by the law.
>
> Fair use is not just excused by the law, **it is wholly authorized by the law**. (Emphasis added)

*Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1132 (2015), As Amended 2016

The Court in *Lenz* specifically reconciled their findings to *Rossi*:

> Universal faces liability if it knowingly misrepresented in the takedown notification that it had formed a good faith belief the video was not authorized by the law, i.e., did not constitute fair use.

*Id* at 1134.

Defendants point to their Canadian order against the Plaintiff as proof they did not have to consider fair use before sending the Take down notices in counts 6 through 8. Plaintiff points out that to the extent their Canadian order is underpinned by previously issued misrepresented takedown notices and that the legal owner of the material in dispute was disregarded in the Canadian litigation, their Canadian order is essentially worthless for purposes of the determination of whether or not the defendants made knowing misrepresentations at the time they sent the DMCA notices, which they now maintain were sent to Slabbed New Media LLC, the disregarded entity, rather than the Plaintiff.

## V. COUNTS NINE AND TEN ARE ALSO VIABLE

Plaintiff as Publisher has absolute standing to seek declaratory relief involving DMCA Takedown Notices sent involving the creative property owned by Slabbed New Media, LLC. As it is clear Plaintiff is the "Alleged Infringer" within the meaning of Section 512(f) and multiple

Takedown notices have been sent by the defendants involving the same Slabbed New Media LLC creative works before engaging in libel tourism forum shopping the resulting lawsuit to Canada[16] he is entitled to a declaratory judgment.

"The purpose of the Declaratory Judgment Act is 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued.' (citations omitted); see also *United Parcel Service, Inc. v. Pennie*, 2004 WL 2064547, at *3 (N.D.Ill. Sep. 8, 2004) (holding that the Declaratory Judgment Act 'does not authorize a party to seek a determination of its adversary's rights and obligations and potential damages' but rather is to be used to "avoid accrual of avoidable damages to one not certain of his rights")" *Illinois Cent. R. Co. v. Cain*, 434 F. Supp. 2d 415, 419 (S.D. Miss. 2006). "The Fifth Circuit has detailed the district court's responsibility when considering whether or not to entertain a declaratory judgment action:

> When considering a declaratory judgment action, a district court must engage in a three-step inquiry. First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. See *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir.1989) .... Second, if it has jurisdiction, then the district court must resolve whether it has the "authority" to grant declaratory relief in the case presented. See *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir.1993) ("Prior to determining whether the district court abused its discretion by failing to review the merits of this case, this Court must first determine whether the district court had authority to grant a declaratory judgment here."). Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action. See id. at 778 (recognizing a district court's vast discretion in the declaratory judgment context). We review the dismissal of a declaratory judgment action for abuse of discretion. See *Wilton v. Seven Falls Co.*, 41 F.3d 934, 935 (5th Cir.1994).

---

[16] The underlying judgments that are subject to the SPEECH Act complaint represents the third suit for defamation and copyright infringement filed against Plaintiff by the Defendants in Canada.

14

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir.2000)." *Illinois Cent. R. Co. v. Cain*, 434 F. Supp. 2d 415, 417 (S.D. Miss. 2006)

As to the first step, justiciability, there is still a controversy among the parties as Leary, Perret and Trout Point Lodge Ltd have sent additional Takedown Notices pursuant to the DMCA since this litigation commenced by their own admission.[17] Their claims that Plaintiff does not have standing to seek declaratory is belied by the fact they included a Canadian judgment involving the Plaintiff to Slabbed New Media's webhost in those 2016 Takedown notices to AWS.[18]

Regarding the broad exercise of discretion, the Defendants rightfully point out that "the Fifth Circuit has mandated that the following factors be considered by the court when deciding the issue:

1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

3) whether the plaintiff engaged in forum shopping in bringing the suit;

4) whether the possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

5) whether the federal court is a convenient forum for the parties and witnesses; and

6) whether retaining the lawsuit in federal court would serve the purpose of judicial economy

*Illinois Cent. R. Co. v. Cain*, 434 F. Supp. 2d 415, 420 (S.D. Miss. 2006).

---

[17] As stated earlier the DMCA is the only way a United States service provider to a United States based interactive website can resolve a copyright matter under existing treaties.

[18] See ECF #96-11, Page 16

There are no pending state actions currently on the issue of Misrepresented Takedown Notices and this issue has never previously been before this Court nor could it be litigated to conclusion under Canadian copyright law or other laws. The second factor leans towards this court taking the case due to the previous Canadian lawsuits and continued submission of Takedown Notices[19] complete with threats of additional litigation in Canada involving creative works that the Plaintiff does not own. The third factor would also favor the court taking the case as the Plaintiff is clearly not forum shopping this matter involving substantive United States law. Plaintiff agrees with the defendant that there will be no inequity due to precedence, thus the fourth factor is satisfied. As this matter involves substantive United States law that has never been litigated the last two factors overwhelmingly favor the Court rendering Declaratory Judgments in this matter.

Based upon the above, the Plaintiff's claims for declaratory relief as stated in the Third Amended Complaint are viable and should not be dismissed.

## VI.  PLAINTIFF STATES A VIABLE CAUSE OF ACTION UNDER THE SPEECH ACT OF 2010

Defendants Perret and Leary allege that, "Plaintiff has failed to allege any controversy involving claims of defamation and has failed to state a claim for which relief can be granted. In particular, under the SPEECH Act it is Plaintiff's burden to establish in the 3rd Amended Complaint either that (a) the law applied by the Canadian court did not afford him the same protections as he would have had in the United States, or (b) that he would not have been found liable for defamation in Mississippi over the same allegations." This is a straw man argument as Plaintiff's "burden" was met when the Third Amended Complaint met the requirements of

---

[19] The demand the material be disabled belies the fact the last notices submitted to AWS by the Defendants, despite being styled as issued under the Canadian Copyright Act, called for the disabling of material identified as infringing, such remedy existing exclusively under United States law in Section 512 as the Canadian Copyright Act uses and "Notice and Notice" regime with service providers having blanket immunity for contributory infringement and no requirement the service provider disable the material identified as infringing..

*Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993). Specifically, the claimant is not required to set out in detail the facts upon which the claim is based. Rather, the Rules require that the claim simply give the defendant "fair notice." The Third Amended Complaint provides more than ample notice of the claims made under the SPEECH Act.

It is undisputed that Defamation claims were made by the Defendants in Nova Scotia in 2013 and 2014 against Plaintiff personally. The Fifth Circuit Court of Appeals has previously; conclusively found that there is "no meaningful dispute that the law applied by the Nova Scotia Court provides less protection of speech and press than First Amendment and Mississippi law."[20] This was actually pleaded by the Plaintiff in the Third Amended Complaint in paragraph 187.

Further Defendants' contention the Speech Act somehow does not apply as Plaintiff appeared in Nova Scotia is also without support as 28 U.S.C. § 4102(d) states, "An appearance by a party in a foreign court rendering a foreign judgment to which this section applies shall not deprive such party of the right to oppose the recognition or enforcement of the judgment under this section, or represent a waiver of any jurisdictional claims."

Finally, the Defendant contend that Plaintiff was required to bring counter claims under Rule 13 in a state court action that was filed after this instant action.[21] Since Defendants cited Rule 13 in an attempt to mislead this Court, Plaintiff points out that he properly brought all of his claims in this instant action before the state court action was commenced and thus meets the exception to the Rule 13 compulsory counterclaim as listed in Rule 13(a)(2)(a).

---

[20] See also ECF #9-2, the component judgment for Defamation issued in the underlying Canadian litigation.

[21] This action was filed on November 16, 2015. The State Court Action which attempted sought to enroll one of the two Canadian Judgments was filed on December 9, 2015. See MSSD case number 1:16-cv-7.

17

## VII. THE HEIGHTENED PLEADING REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 9(b) DOES NOT APPLY TO THIS MATTER.

Although the Defendants raise the applicability of Rule 9(b) to this matter in their Motion they do not specify which counts they contend Rule 9(b) would apply. Rule 9(b) requires that fraud be plead with particularity, but Plaintiff has not alleged fraud in the Third Amended Compliant. In the Fifth Circuit, Rule 9(b) is properly applied to fraud claims, securities fraud claims, False Claims Act and civil RICO claims based on fraud, but generally not to misrepresentation or other non-fraud causes of action. To the extent that the Section 512(f) claims relate to "Any person who knowingly materially misrepresents under this section— (1) that material or activity is infringing..." is a non-fraud cause of action within the meaning of Rule 9(b).

Alternatively, to the extent this Court could find otherwise, Plaintiff contends the misrepresentation counts meet the heightened pleading requirements of Rule 9(b). The Fifth Circuit ".... has succinctly described Rule 9(b) as requiring the plaintiff to "set forth the who, what, when, where, and how of the alleged fraud." *Spicer*, 751 F.3d at 365 (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010))

Finally, to the extent Defendants cited Rule 9(b) as a reason for dismissal without any specificity as to which counts they contend it applies, their Motion for dismissal on that ground should be disregarded as unsupported.

## CONCLUSION

For all the foregoing reasons, the Third Amended Complaint should not be dismissed with respect to the Defendant's Leary and Perret.

Respectfully submitted this 6th day of March, 2017,

_____

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on March 6, 2017 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

Respectfully submitted this 6th day of March, 2017,

_____
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com