

FAXED

```
Court Administration
APR 0 8 2014
Halifax, N.S.
```

To: Bonnie
Court Administration
Supreme Court
424-0524

From: Charles Leary
761-2080

I will fax the other requested forms tomorrow.

Form 34.03

2014

No. 426076

Supreme Court of Nova Scotia

Between:

Charles Leary, Vaughan Perret, & Trout Point Lodge, Limited

and

Jack Etherton Truitt & The Truitt Law Firm, LLC

**Appointment of Agent**

Court Administration
APR 0 8 2014
Halifax, N.S.

Trout Point Lodge, Limited        appoints Charles L. Leary

as its agent with authority to speak for the corporation and to bind the corporation on any subject relating to this proceeding. This authority continues unless we replace the agent with another agent or counsel, and file a replacement of agent or notice of new counsel.

The signing officers personally represent to the court and the other parties that they have authority to make this appointment, and it is properly executed by the corporation.

**Signature**
Signed

# Trout Point Lodge of Nova Scotia



189 Trout Point Road
East Kemptville, Nova Scotia B5A 5X9

```
Court Administration

APR 0 7 2014

Halifax, N.S.
```

April 7, 2014

BY FACSIMILE   — total of 16 pages

Court Administration
Supreme Court of Nova Scotia
Halifax Law Courts
Halifax NS

Re: Originating Notice & Statement of Claim for filing

Attached please find a Notice of Action and Statement of Claim for filing today.

Please charge any filing and stamp costs to my credit card:

I will forward copies for the Plaintiffs and for service on the Defendants of the Notice and Statement of Claim by post to be stamped and returned to the address above.

Also attached, please find an Appointment of Agent form for Trout Point Lodge.

Sincerely,

Charles L. Leary
(902) 761-2080

(902) 761-2142  www.troutpoint.com  troutpoint@foodvacation.com



**Form 34.03**

2014                                                                     No.

Supreme Court of Nova Scotia

Between:

Charles Leary, Vaughan Perret, & Trout Point Lodge, Limited

and

Jack Etherton Truitt & The Truitt Law Firm, LLC

### Appointment of Agent

Trout Point Lodge, Limited                 appoints

as its agent with authority to speak for the corporation and to bind the corporation on any subject relating to this proceeding. This authority continues unless we replace the agent with another agent or counsel, and file a replacement of agent or notice of new counsel.

The signing officers personally represent to the court and the other parties that they have authority to make this appointment, and it is properly executed by the corporation.

**Signature**
Signed

Page 1 of 1

**Form 4.02A**

2014

*Court Administration*
*APR 07 2014*
*Halifax, N.S.*

Hfx No. 426076

Supreme Court of Nova Scotia

Between:



        Charles Leary, Vaughan Perret, & Trout Point Lodge, Limited      Plaintiff(s)
        and
        Jack Etherton Truitt & The Truitt Law Firm, LLC      Defendant(s)

**Notice of Action**

To:    Jack Etherton Truitt & The Truitt Law Firm, LLC

**Action has been started against you**
The plaintiff takes action against you.

The plaintiff started the action by filing this notice with the court on the date certified by the prothonotary.

The plaintiff claims the relief described in the attached statement of claim. The claim is based on the grounds stated in the statement of claim.

**Deadline for defending the action**
To defend the action, you or your counsel must file a notice of defence with the court no more than the following number of days after the day this notice of action is delivered to you:

- 15 days if delivery is made in Nova Scotia

- 30 days if delivery is made elsewhere in Canada

- 45 days if delivery is made anywhere else.

**Judgment against you if you do not defend**
The court may grant an order for the relief claimed without further notice, unless you file the notice of defence before the deadline.

**You may demand notice of steps in the action**
If you do not have a defence to the claim or you do not choose to defend it you may, if you wish to have further notice, file a demand for notice.

If you file a demand for notice, the plaintiff must notify you before obtaining an order for the relief claimed and, unless the court orders otherwise, you will be entitled to notice of each other step in the action.

**Rule 57 - Action for Damages Under $100,000** Civil Procedure Rule 57 limits pretrial and trial procedures in a defended action so it will be more economical. The Rule applies if the plaintiff states the action is within the Rule. Otherwise, the Rule does not apply, except as a possible basis for costs against the plaintiff.

This action is within     Rule 57.

**Filing and delivering documents**
Any documents you file with the court must be filed at the office of the prothonotary
1815 Upper Water     Street, Halifax     Nova Scotia (telephone # 902-424-4900 ).

When you file a document you must immediately deliver a copy of it to each other party entitled to notice, unless the document is part of an *ex parte* motion, the parties agree delivery is not required, or a judge orders it is not required.

**Contact information**
The plaintiff designates the following address:

189 Trout Point Road, East Kemptville, NS B5A 5X9
(800) 980-0713 facsimile

Documents delivered to this address are considered received by the plaintiff on delivery.

Further contact information is available from the prothonotary.

**Proposed place of trial**
The plaintiff proposes that, if you defend this action, the trial will be held in

Hfx - Halifax, except Family Division     , Nova Scotia.

**Signature**

Signed

                                            Signature of plaintiff
Print name: Vaughan Perret; C. Leary

[or]

                                            Signature of counsel
                                                      as counsel

for

**Prothonotary's certificate**
I certify that this notice of action, including the attached statement of claim, was filed with the court on
April 7, 2014

                                                       Prothonotary

                                                     Bonnie Dalton
                                                     Deputy Prothonotary

Form 4.02B

## STATEMENT OF CLAIM

1. The Plaintiffs seek a Declaration that the December 11, 2013, "Order Granting Defendant's Motion for Attorney's Fees" of the U.S. Federal District Court for the Southern District of Mississippi, in the matter of *Trout Point Lodge, Charles Leary, and Vaughn Perret v. Douglas Handshoe* is unenforceable in this Province.

2. There is an actual or palpable dispute between the parties, and the requested Declaration is in the interest of the speedy and just resolution of this dispute.

3. This Court has inherent jurisdiction to grant all remedies necessary to do justice between the parties. Such jurisdiction includes the power to grant declarations. In this regard, the Plaintiffs rely on s. 41(g) of the *Judicature Act, R.S.N.S. 1989, c. 240*.

4. The Plaintiffs also make reference to the *Cyber-safety Act*, the *Defamation Act*. R.S., c. 122, s. 1., the *Reciprocal Enforcement of Judgments Act. R.S., c. 388, s. 1*. the *Statute of Elizabeth*, and the *Assignments and Preferences Act*. R.S., c. 25, s. 1.

5. The Defendant, Jack Etherton Truitt, is a resident of Covington, Louisiana, United States of America. He was Douglas Handshoe's attorney in Mississippi and also a contributor to his blog "Slabbed" as well as an author of a Twitter.com feed that refers to the Trout Point Plaintiffs.

6. Defendant, The Truitt Law Firm, LLC, is a Louisiana Limited Liability Company.

7. In addition to his role as an attorney, Defendant Truitt financed and otherwise assisted the Slabbed enterprise. Hereafter the two defendants may be referred to as the "Truitt Defendants."

8. The Plaintiffs Charles Leary and Vaughn Perret are residents of East Kemptville, Nova Scotia, and own and operate Trout Point Lodge.

9. Trout Point Lodge is a Nova Scotia Limited Company registered since 1998 with the Registry of Joint Stocks and with its place of operations in East Kemptville, Nova Scotia. Hereafter the three Plaintiffs may be referred to as the "Trout Point Plainitffs."

### The 2012 NS SC Judgement and Its Legal Aftermath

10. In January, 2012, this Court granted general, aggravated, and punitive damages against Douglas Handshoe in favour of the Trout Point Plaintiffs for defamation, intentional infliction of mental distress, civil assault, and other causes of action in the amount of $425,000 plus $2,000 in costs. That decision was reported as 2012 NS SC 245. The decision anticipated that the Trout Point Plaintiffs would seek enforcement of the damages award in the defendant Handshoe's home jurisdiction.

11. This Court also granted mandatory and permanent injunctions against Douglas Handshoe publishing about or referring to the Plaintiffs, including specifically on his blog "Slabbed."

12. The injunctive relief has been effective in that Google now blocks search results from the Slabbed blog that refer to the Plaintiffs; certain web hosts have also terminated service to Mr. Handshoe.

13. Mr. Handshoe did not exercise his right to appeal or otherwise seek to overturn this judgement in Nova Scotia.

14. In February, 2012, Douglas Handshoe filed in a Mississippi court an action for a declaratory order to block the Nova Scotia judgement.

15. In or around the first week of March, 2012, the Plaintiffs through Mississippi attorney Henry Laird, Jr. registered their money judgement (but not the injunctions) with Hancock County, Mississippi, Circuit Court. This was not an action and constituted the Plaintiffs' sole contact with Mississippi.

16. The Plaintiffs had a good faith belief that, given Mr. Handshoe's conduct, and following longstanding principles of comity in the relationship between the world's largest trading partners, the United States and Canada, the valid and final Nova Scotia judgement would be enforced.

17. Douglas Handshoe removed the judgement from state court under the 2010 federal U.S.

SPEECH Act and started a 2nd action to block this Court's judgement. The SPEECH Act allows for removal to federal court jurisdiction regardless of the connections between the jurisdiction and the defamation judgement creditors.

18. As reported in 2014 NS SC 65, the Trout Point Plaintiffs "have not been able to realize on any of these awards due to the exigencies of Mississippi legislation and notwithstanding applications to an appellate level." Among other errors, U.S. courts misconstrued Canadian defamation law and took judicial notice of disputed facts never entered into evidence by any of the parties.

19. As a punitive measure, the SPEECH Act mandates the awarding of attorney's fees to a defamation defendant who prevails in an action to block a non-U.S. defamation judgement absent "exceptional circumstances."

20. The Plaintiffs opposed Mr. Handshoe's motion for attorney's fees on various grounds, including procedural ones. Despite agreeing that Mr. Handshoe and his attorney Mr. Truitt had not followed the appropriate Rules of Civil Procedure, the federal court granted an award to Mr. Handshoe of $48,000 to cover the purported actual cost of attorney's fees he had, it later became clear, never paid to Defendant Truitt.

21. The $48,000 figure was based on a single invoice from Defendant The Truitt Law Firm dated the same day it was filed with the Mississippi court. The invoice covered the entire period of Mr. Truitt's purported representation of Mr. Handshoe, which was about nineteen months in length. No periodic billing statements were presented. The purported invoice was not entered into evidence in a sworn affidavit or as a sworn exhibit to an affidavit. In fact, no evidence was filed by Mr. Handshoe.

22. The Plaintiffs instructed their Mississippi counsel to appeal the district court judgement, which the attorney, Henry Laird, Jr. failed to do before expiry of a a time limit under the Federal Rules of Civil Procedure.

### The 2014 NS SC Judgment & Its Consequences

23. After filing the September 1, 2011, 1st Amended Statement of Claim that resulted in the 2012 NS SC judgement, Mr. Handshoe began to make extensive publication on Slabbed of images of the Trout Point Plaintiffs as part of his unceasing campaign to damage, harass, and embarrass them.

24. In January, 2013, the Trout Point Plaintiffs filed an Application in this Court for copyright infringement under the Copyright Act relating to some of those images. Mr. Handshoe was personally served, defended, and otherwise participated in that proceeding, which was later converted to an action adding causes of action for defamation occurring or discovered during the course of the copyright proceeding. The history of that proceeding is summarized in 2014 NS SC 65.

25. In May, 2013, the Nova Scotia Legislature passed the *Cyber-safety Act*.

26. On February 14, 2014, this Court granted an award against Mr. Handshoe of $80,000 for four instances of copyright infringement, $100,000 in exemplary damages for copyright infringement; as well as an additional $210,000 in general, aggravated, and punitive damages for defamation.

27. On or around the third week of February, 2014, the Trout Point Plaintiffs began to seek Mississippi counsel to enforce their 2014 money judgement. Mr. Handshoe somehow shortly thereafter became aware of their efforts to find Mississippi counsel to enforce the new judgement.

28. On February 28, 2014, this Court issued two Orders, one relating to damages for copyright infringement and one relating to damages for defamation. These were sent by Justice Coady's office to Mr. Handshoe.

29. On March 5, 2014, Mr. Handshoe swore the "Assignment of Rights & Claims" relating to the $48,000 Mississippi attorney's fees judgement to the Truitt Defendants.

30. On March 19, 2014, Handshoe published on Slabbed: "Canadian court orders? Here at Slabbed New Media we wipe our asses with 'em."

31. On or around the week of March 31, 2014, Plaintiffs' Mississippi counsel enrolled the NS SC Order for damages relating to copyright infringement in Hancock County, Mississippi Circuit Court.

**Defendants Stand in Handshoe's Shoes in Attempting an End-Run Around this Court's Orders**

32. Defendant Truitt has once before attempted to enforce a judgement of the Mississippi court in this Court. On or around April 5, 2013, Defendant Truitt attempted to file with this Court a December 19, 2012, Order from the Mississippi court, citing comity with Canada, seeking to nullify the 2012 mandatory and permanent NS SC injunctions against Mr. Handshoe based on the Mississippi court's determination that the NS SC injunctions were not enforceable. In representations made to this Court, Defendant Truitt cited the *Reciprocal Enforcement of Judgments Act. R.S., c. 388, s. 1.*

33. The Mississippi court had pronounced on the NS SC injunctions even though the Trout Point Plaintiffs never sought enforcement of those injunctions in Mississippi.

34. Based on admissions from Defendant Truitt, the Defendants have now engaged a Nova Scotia law firm (Boyne Clarke) to enforce here the purported debt for attorney's fees in the amount of U.S. $48,000. According to the aforementioned sworn March 5, 2014, agreement signed by Mr. Handshoe, the Truitt Defendants have assumed the "full right" of action of Mr. Handshoe "as if instituted by" Mr. Handshoe.

35. At the time of the transfer of the debt from Handshoe to Truitt, Mr. Handshoe was aware that the Plaintiffs were in the process of enforcing their $180,000 judgement for copyright infringement in Mississippi.

36. At the time of the transfer, Douglas Handshoe owed the Plaintiffs $817,000 in Nova Scotia court judgements.

37. At the relevant time, Mr. Handshoe was unable to pay his debts in full. The conveyance from Handshoe to the Defendants had the intention of defeating or delaying the Plaintiffs as judgement creditors.

38. Any good and valuable consideration actually paid to the Truitt Defendants by Mr. Handshoe was due and payable to the Plaintiffs as judgement creditors.

39. The Truitt Defendants are simultaneously seeking to enforce the self-same conveyed debt and judgement in New Orleans, Louisiana, Civil District Court through a *Petition for Intervention* filed March 24, 2014, in the matter of the Plaintiffs herein versus Jones Walker, LLP, Henry Laird, and ABC Insurance Company.

40. This could result in conflicting decisions.

41. Defendant Truitt has participated in and supported cyberbullying of Charles Leary and Vaughan Perret on Slabbed and Twitter in contravention of the Cyber-safety Act and the mandatory and permanent injunctions issued by this Court.

42. In particular during the course of Mr. Handshoe's campaign to damage and cyberbully the Trout Point Plaintiffs, Defendant Truitt has admitted to financing Slabbed, has fund raised for Mr. Handshoe, has republished Handshoe's injurious words and innuendo, and has contributed to serial Internet publications intended or that could reasonably be expected to cause fear, intimidation, humiliation, distress or other damage or harm to the personal Plaintiffs' health, emotional well-being, self-esteem or reputation.

43. On February 14, 2014, the day Justice Coady sent, pursuant to his Demand for Notice, a copy of his written decision in 2014 NS SC 65 to Mr. Handshoe, Defendant Truitt published on Twitter: "Nova Scotia Supreme Court: Ignorant and damn proud of it. http://shar.es/QT66f via @Slabbedblog #mockeryofjustice #freespeech".

44. On February 4, 2014, Truitt published on the Slabbed blog, referring to Douglas Handshoe's fund raising attempts: "The personal investment and risk is certainly unknown to the general

public, mainly because you guys do not trumpet that, but appreciation and reduction of that risk can be shown with a donation, no matter what size. I urge your followers, posters, and contributors to kick in on this great experiment known as democracy and the First Amendment."

45. On December 20, 2013, Truitt published on the Slabbed blog, "Thanks, Doug, for shining the light of truth on corruption and those who attempt to trample the First Amendment. Merry Christmas." Truitt is referring to the Plaintiffs. It is false and injurious that (a) Plaintiffs have been involved in criminal corruption, which read in context means the repeated Handshoe allegations that Plaintiffs are participants in Louisiana political corruption involving former Jefferson Parish President Aaron Broussard, or that (b) the Plaintiffs have sought to illegally "trample" anyone's free speech rights.

46. On September 19, 2013, Defendant Truitt published on a Slabbed blog post urging readers to donate money to Mr. Handshoe: "So, it is a worthwhile cause. I would liken this to a Kickstarter campaign, and the "quid pro quo" is the protection of free speech and more honest government. Contribute what you can. I personally kicked in $100 today. So, I am sure that any amount would be appreciated."

47. On September 7, 2013, Truitt published on Twitter: ""@SLABBEDblog: SPEECH Act in the news as word spreads of my historic victory over Broussard's boys http://shar.es/ifY9N Thanks!" By referring to the personal plaintiffs as "Broussard's boys" Defendant Truitt was republishing the false and defamatory innuendo that they were involved in Broussard's alleged criminal acts and were under his control in a complex example of criminal racketeering. Handshoe has repeatedly referred to the personal plaintiffs as Broussard's briefcase boys.

48. On February 25, 2013, Defendant Truitt published on Twitter: "4 years in prison for New Orleans corruption figure with Nova Scotia ties http://www.southcoasttoday.ca/content/4-years-prison-new-orleans-corruption-figure-nova-scotia-ties ..." thus republishing the false,

defamatory innuendo incessantly propounded by Mr. Handshoe that the Plaintiffs were somehow involved in the criminal activities of former Jefferson Parish President Aaron Broussard, who was sentenced to federal prison for felonies.

49. On February 23, 2013, Defendant Truitt published via Twitter "I find the cowardice of Leary and Perret in using Canadian courts amusing; their day is coming. http://www." It is false & injurious to publicly refer to the personal plaintiffs as cowards.

50. On December 19, 2012, on Handshoe's Slabbed blog, Defendant Truitt published "Maybe the fact that Leary and Perret submitted to the jurisdiction of a U.S. Federal Court and got shot down on their "libel terrorism" will send them scurrying back to Canada where they came from. As someone who was frivolously named as a "co-conspirator" in a recent re-hash they filed in Canada, I can tell you that this is personal for me too." Terming the Plaintiffs as libel terrorists is false and injurious.

51. On September 9, 2012, Defendant Truitt published via Twitter: "Looks like #aaronbroussard was in deep in #novascotia. Sounds like @SLABBEDblog on to something! https://ecf.laed.uscourts.gov/doc1/08516053368 ..." This was, again, a republication of the defamatory innuendo that the Plaintiffs were involved in criminal acts in conspiracy with Aaron Broussard in Nova Scotia, and that they were the subjects of criminal investigation by the United States Department of Justice. It is also a public statement that Handshoe's adjudicated false & defamatory allegations had some basis in reality, that he was "on to something," i.e. a public affirmation of Handshoe's false allegations.

52. Mr. Truitt went far beyond the usual course of professional representation an attorney provides to a client, and participated in Handshoe's campaign to damage the Plaintiffs.

**Statement of Fact & Law Relating to Reciprocity, Comity, and Public Policy**

53. For a second time in one year, Defendant Truitt is attempting to rely on comity between Nova

Scotia and Mississippi to aid and abet Mr. Handshoe in trying to defeat and escape this Court's valid judgements within Canada.

54. Judgements from Mississippi do not qualify for enforcement under the *Reciprocal Enforcement of Judgments Act. R.S., c. 388, s. 1*. Neither the State of Mississippi nor the United States are "reciprocating states" according to the Reciprocating States Declarations (Judgments) Regulations, NS Reg 142/73.

55. The principle or existence of reciprocal enforcement between Nova Scotia and Mississippi in relation to 2012 NS SC 245 has been nullified by the actions of the Mississippi courts.

56. The SPEECH Act is a blocking statute. The SPEECH Act mandated Mississippi jurisdiction regardless of any real and substantial connection between the Plaintiffs and the forum.

57. This Court possesses at least the normal court power to consider and make findings of fact as to the constitutionality and public policy effect of the laws of another jurisdiction. Such findings will affect conclusions on lawful excuse, comity and public policy and allow this Court to make the Declaration sought by the Trout Point Plaintiffs.

58. Without having to determine if the SPEECH Act is or is based on repugnant law, it is on its face a blocking statute aimed, at least in part, at the courts of Nova Scotia and Canada.

59. It is a fact that the whole purpose of the SPEECH Act is to impede successful litigation or prosecution in other jurisdictions by refusing in the United States recognition and compliance with orders issued in Canada or elsewhere. The point of the blocking statute out of which the U.S. $48,000 judgement arises is to prevent compliance with non-U.S. court orders, and so the success of legitimate defamation litigation outside the United States. This is part of sovereign right, but it runs counter to the very comity that the Defendants now hypocritically seek to rely on. In the United States political realm this belief in American sovereign "free speech" exceptionalism has lead to strict retaliatory laws, and it discourages international commerce and efficient allocation and conduct of litigation. But the SPEECH Act goes beyond merely

blocking, it is also punitive against innocent defamation victims like the Plaintiffs.

60. The Defendants are, in effect, seeking to limit Canadian sovereignty.

61. Were Douglas Handshoe to appear in this Court, not only would he be held in contempt, the $48,000 judgement he possesses would on grounds of justice and fair play alone never be enforced here. That purported debt is premised on punishing the Trout Point Plaintiffs for following the normal course this Court anticipated in their seeking to enforce its valid Order.

62. In enacting the Cyber-safety Act and the Defamation Act, Nova Scotia has clearly and recently voiced its policy that conduct like that engaged in by Mr. Handshoe and Defendant Truitt are not in accordance with Nova Scotia or Canadian values and public policy, they will not be tolerated, and they will be punished.

63. The Truitt Defendants now seek an end-run around the consequences that would arise were Mr. Handshoe personally to appear in Nova Scotia. Mr. Handshoe, in turn, has sought to illegally shield his judgement from the Plaintiffs as judgement creditors in 2014 NS SC 65. Yet by Handshoe's own sworn conveyance, Defendant Truitt now for all legal purposes stands in Handshoe's place. This Court cannot on equitable, public policy, and constitutional grounds participate in punishing the Plaintiffs for seeking to carry out the terms of this Court's own Order.

64. The $48,000 Mississippi judgement should be declared unenforceable. Such a Declaration would save further costly litigation, and be in the interests of the just, speedy, and inexpensive determination of this dispute.

65. In the alternative, were this Court to find the Mississippi judgement enforceable, it must be offset against the $817,000 owed to the Plaintiffs by Mr. Handshoe, as the Defendants are his successors.

66. As the Defendants are now Mr. Handshoe's successors, and all rights to money judgements arising out of the Handshoe dispute have been transferred to the Truitt Defendants, this Court

should also enter all judgements arising out of the Handshoe dispute also against the Truitt Defendants.

67. The Plaintiffs pray for the requested relief, a Declaration that the Mississippi money judgement is not enforceable in this province whether owned by Mr. Handshoe or the Truitt Defendants. The Plaintiffs reserve their right to amend this Statement of Claim to pray for damages for the torts of cyber-bullying and defamation, and/or to declare the "Assignment of Rights & Claims" null and void under applicable law already referred to.

Signature

Signed

_Charles L. Leary_

_Vaughan J. Perret_