# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

DOUGLAS HANDSHOE )
)
v. ) CIVIL ACTION NO. 1:15cv382-HSO-JCG
)
VAUGHN PERRET, CHARLES LEARY & )
DANIEL ABEL, D/B/A/ TROUT )
POINT LODGE LTD OF NOVA SCOTIA )
& IN THEIR INDIVIIDUAL CAPACITIES )
PROGRESS MEDIA GROUP LIMITED, )
MARILYN SMULDERS, & ASHOKA )
)

## MEMORANDUM OF LAW IN REPLY TO VAUGHN PERRET AND CHARLES LEARY'S RESPONSE IN OPPOSITION TO SLABBED NEW MEDIA L. L. C.'s MOTION TO INTERVENE

**COMES NOW INTO COURT**, Slabbed New Media, L. L. C. (herein after Slabbed New Media) via the undersigned counsel and submits this Rebuttal of Vaughn Perret and Charles Leary's Opposition to Slabbed New Media's Motion to Intervene. In support of this rebuttal, the following is respectfully submitted:

## FACTUAL BACKGROUND

This Court is well aware of the allegations, facts as plead and procedural status of this matter. Slabbed New Media owns an interactive website called Slabbed.  The Defendants, enraged that Slabbed uncovered their participation in financial transactions assisting a Louisiana domiciled Limited Liability Company's conduct of an illegal bribery and money laundering scheme involving former Jefferson Parish President Aaron Broussard, have conducted a coordinated campaign of meritless defamation actions against the Plaintiff, the Intervenor and several of the Plaintiff's former attorneys.  The Defendants have also submitted numerous misrepresented

takedown notices, involving the same content published by the Plaintiff to the Slabbed New
Media interactive website. The Defendants purposely disregarded Slabbed New Media, L.L.C. in
their various Canadian defamation actions instead asserting their torts of defamation and
copyright infringement against the owner of the Limited Liability Company.[1]

## LAW AND ARGUMENT

The Defendants present the wrong questions in the wrong case. The question framed by both
Defendants' opposition to Slabbed New Media's Motion to Intervene and Leary and Perret's
Motion to Dismiss is based in part on four bases: 1) a lack of concrete and particularized injury;
2) a lack of standing; 3) that Slabbed New Media's interests are identical to the Plaintiff's and
thus are adequately represented by a pro se litigant and 4) a conflation of relief that only Slabbed
New Media can obtain and the relief both the Plaintiff and Slabbed New Media can obtain under
17 U.S.C.A. § 512(f). These bases do not exist in this case, first because Plaintiff Handshoe was
injured—for instance his YouTube account that displayed, in the course of his work as an agent
for Slabbed New Media, a video belonging to Slabbed New Media was actually disabled for over
twenty weeks. Similarly, Intervenor, as owner of the Copyright material was damaged by every
notice as its creative works were disabled by the service provider and its business relationships
with those service providers disrupted, in certain cases over the same creative works multiple
times over, for at least 14 days per incident. The Defendants have since admitted they were
directing these notices to Slabbed New Media L.L.C.'s service providers but it is clear from the
legal actions they filed in Canada as well as subsequent takedown notices the alleged infringer
was Plaintiff. Both Leary and Perret Motion to Dismiss and their opposition to Intervenor's
Motion to Intervene present arguments that have no basis in the record in this case.

---

[1] Intervenor notes defendants procedural Posture and related footnote 1 suggesting the Plaintiff was late
submitting opposition to their Motion to Dismiss under Rule 12(b)(1) and 12(b)(6). Slabbed New Media suggests
the defendants consult Rule 6D for guidance on that topic

***Injury in fact:*** Slabbed New Media, L.L.C.'s intellectual property was censored repeatedly. Conflating "particularized and concrete" with "economic," Leary and Perret nonetheless insist that Plaintiff Handshoe was not injured because he plead in the Third Amended Complaint "Plaintiff in his personal capacity had no connection to the illustrative use of the photographs" an absolute statement of fact. However, the record in the submission of the takedown notices and their later use in Canadian litigation for defamation and copyright infringement against Plaintiff in his personal capacity with the legal owner of the website disregarded indicates a particularized and concrete injury to the Plaintiff as the alleged infringer despite having no connection in his personal capacity to the illustrative use of the photographs at controversy. The above describved is derived from the Defendants' actions submitting misrepresented takedown notices.

The Supreme Court has long recognized that even non-pecuniary injury can support standing. In any event, both the Plaintiff and Intervenor suffered calculable economic harm. The Defendants' false takedown notices created that calculable economic harm.

***Redressability***: The Digital Millennium Copyright Act ("DMCA") renders the defendants liable for "any damages…. incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider" for their misdeeds—broad language that encompasses relief for both the alleged infringer and the copyright owner including compensation for the time spent addressing the notices as well as other damages caused by the misrepresented notices. 17 U.S.C.A. § 512(f). Finally, as Slabbed New Media plead in its Motion to Intervene as the lawful copyright owner, only it can pursue the Infringement Counts which derived from its September 2016 discovery that the Defendants had copied and disseminated Slabbed New Media's intellectual property.

***Special Circumstances Exist***: The Defendants have filed or have a close connection to no less than 6 separate civil actions against the Plaintiff, including 2 that additionally targeted lawyers who had represented Plaintiff in previous litigation.  Further, the Defendants filed a separate lawsuit in Nova Scotia against one of Plaintiff's former lawyers[2] seeking to hold him responsible for a Defamation award the United States Courts rejected under the SPEECH Act of 2010 with that court awarding Plaintiff $48,000 in attorney fees.[3] That Canadian civil action represented an act of retaliation against Truitt for attempting to enroll the Attorney Fee judgment obtained by the Plaintiff in the SPEECH Act matter. The sheer number of retaliatory suits against opposing Counsel in both the United States and Canada has made it virtually impossible for either Plaintiff or Intervenor to obtain legal representation in the subsequent litigation against the Defendants.

<b>REASONS FOR GRANTING THE MOTION TO INTERVENE</b>

*Plaintiff and Intervenor Suffered Actual Injuries Specific to Them Which Results in Standing to Bring This Action Under Article III to Both Parties Therefore The Complaint is Viable.*

Both Plaintiff and Intervenor have suffered concrete and particularized injury in fact so that both the Defendants' Motion to Dismiss and their Opposition to Slabbed New Media's Motion to Intervene make claims that are divorced from the record of this case. For instance, Perret and Leary's jurisdictional claim to be acting solely on behalf of Trout Point Lodge, Ltd. in sending the numerous Takedown Notices is directly contradicted by both the takedown notices and the resulting Canadian legal action directed at the Plaintiff. (See ECF 111-6 ¶¶ 13-14, and ECF 111-7, Page 2, ¶ 4(c) as well as the Takedown Notice exhibited at ECF 111-7, page 8). The February 14, 2014 judgment that Leary and Perret spend several pages recapping in their Opposition to

---

[2] See the Canadian Civil Action styled Trout Point et al v Truitt attached as Exhibit 1 to the Rebuttal.
[3] *Trout Pont Lodge et al v Doug K. Handshoe*, 729 F.3d 481 (2013).

Slabbed New Media Motion to Intervene (See ECF 108 beginning at page 6) resulted from that original "Application in Court" shown at ECF 111-6[4] and was styled Trout Point Lodge Ltd, Vaughn Perret and Charles Leary v Douglas Handshoe. Such self-contradiction is not a rare event for these Defendants as they also claimed to be acting on behalf of a foreign limited company in this matter while simultaneously arguing the same foreign limited company be disregarded in filings with both this Court and the Fifth Circuit Court of Appeals. (See ECF 111-3, page 34 of 79).

A "concrete" injury is one that actually exists. *Spokeo v. Robins*, 136 S. Ct. 1540, 1548 (2016). There is no dispute that numerous creative works were forced to be taken down multiple times in 14 day increments. Defendants' actions constitute censorship which is an actual, not conjectural or hypothetical, injury. There is also no dispute that the Defendants obtained a copyright judgment that was underpinned in large part by takedown notices issued under United States law which are alleged to be misrepresented. The resulting financial injury, from the time and expenses expended responding to those notices to the reputational damage done are actual, not conjectural or hypothetical, injuries.

A "particularized" injury is one that has a personal and individualized effect (on the Plaintiff and Intervenor) per *Spokeo*, 136 S. Ct. at 1548. Plaintiff complains about the misrepresented notices being used against him in Canadian Defamation and Copyright litigation that named him personally and the takedown of Slabbed New Media parody published to his personal YouTube account. Plaintiff's injuries are therefore both concrete and particularized to him as the "alleged infringer", and are neither conjectural nor hypothetical. Likewise, the misrepresented takedown

---

[4] This Application in Court would eventually balloon into a Defamation/Copyright action which resulted in that February 14, 2014 judgment against the Plaintiff

notices submitted by Charles Leary on his own behalf[5], on Vaughn Perret's behalf[6] as well as on behalf of their shell corporation Trout Point Lodge Ltd[7] that were subsequently used by all three Defendants in Canadian Copyright and Defamation litigation that resulted in damages awards to all three were clearly aimed at Plaintiff in his personal capacity and caused particularized injury to the Plaintiff in that capacity.

Similarly, Intervenor Slabbed New Media complains about those same misrepresented takedown notices forcing the removal of its own intellectual property from publication multiple times in 14 day increments as the Copyright Owner. Intervenor's injuries are therefore both concrete and particularized as well.

Defendants create a strawman argument asserting it was Slabbed New Media's service providers that, "were affected by the DMCA notices" with those same notices ostensibly causing no concrete or particularized injury to Handshoe or Slabbed New Media. The very act of the service providers gaining the safe harbor contained in Section 512 requires they disable access to the material identified as infringing. Whether it was Automattic disabling access to the material identified as infringing or New Dream Networks requiring Slabbed New Media disable the same material the end result is the same. While Slabbed New Media has no doubt that its service providers such as New Dream Networks and HostGator LLC could also bring claims for these misrepresented takedown notices under Section 512(f)(2) as the "service provider" the relief available under Section 512(f)(2) is clearly not limited to only the service providers.

Slabbed New Media agrees that the jurisdictional issue of standing will be addressed before the Court can rule on the Motion to Intervene as a matter of necessity. However, for all the

---

[5] See ECF 111-7, Page 6
[6] See ECF 111-7, Page 11
[7] See ECF 111-7, Page 2, Paragraph 4(c) where Leary swears the DCMA Takedown Notices were submitted on behalf of "the applicants", which were Charles Leary, Vaughn Perret and Trout Point Lodge Ltd.

reasons stated above Defendant's suggestion that this matter will be dismissed for a lack of standing so that the Motion to Intervene should be dismissed is both conclusory and speculative given Defendants' self-contradictory legal positions along with self-contradiction of the basic facts of the case they have asserted, such as their claim they were acting solely on behalf of Trout Point Lodge in sending the Takedown Notices when clearly such was not the case per the Defendants' own affidavits and Canadian Court pleadings.

*Slabbed New Media meets the requirements to Intervene under both Rule 24(a) and it is within the discretion of the court to allow intervention under Rule 24(b).*

Slabbed New Media's motion is timely. In *Swoboda v Manders* No. 16-30074 (5th Circuit 2016), Swoboda argued against the intervention by a third party maintaining the case had been pending for more than 625 days at the time the Motion to Intervene was filed and that to allow a third party to intervene would only further delay the discovery process. The Fifth Circuit rejected that argument quoting an earlier ruling finding it has "rejected the notion that the date on which the would-be intervenor became aware of the pendency of the action should be used to determine whether it acted promptly,"[8] Here the Defendants maintain that Slabbed New Media "dallied over fifteen (15) months" suggesting the date which this action was filed as determinative of timeliness, an argument the Fifth Circuit has expressly rejected in favor of an analysis that centers on whether "the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties."[9] The Fifth Circuit set forth a four part test in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir.1977) to determine whether a Motion to Intervene is timely:

(1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene;

---

[8] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)
[9] *Id.*

(2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

Adding additional contextual analysis, the court in *Stallworth* explained:

"The analysis is contextual; absolute measures of timeliness should be ignored. *Id*. at 266 (citation omitted). The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. *McDonald v. E.J. Lavino Co*., 430 F.2d 1065, 1074 (5th Cir.1970) (citation omitted). Federal courts should allow intervention "where no one would be hurt and greater justice could be attained." *Id*.

Here there is simply little or no prejudice to the parties in allowing Slabbed New Media to intervene. Slabbed New Media incorporated the existing allegations as its own, adding one count of Copyright Infringement against the Trout Point defendants related to the September, 2016 discovery of the contents of the hearing book for damages assessment in the Canadian civil action filed by the Defendants against Plaintiff Handshoe. Slabbed New Media was not a party to the Canadian Civil action and in fact was purposely disregarded by the Defendants in that action. Plaintiff Handshoe was never given the evidence used against him at the December 2013 damages hearing by the Defendants, and he ordered it for use in this matter in August 2016.

While Plaintiff Handshoe could ostensibly represent Slabbed New Media's interests in the 512(f) action alone, it could not represent Slabbed New Media's interest in an infringement action as the Plaintiff is not the copyright owner so that he lacks standing to bring infringement torts against the Defendants. Would-be intervenor Slabbed New Media's interests in the entirety of the transactions and events that comprise the subject matter of the litigation which began with the submission of misrepresented takedown notices fundamentally diverged from those of

8

Plaintiff when the issues unique to being the "copyright owner" within the meaning of section 512(f) arose when it became clear that its intellectual property rights had been infringed by the Defendants.[10]

The Defendants have failed to elucidate any prejudice that would accompany Slabbed New Media's intervention in this case. While they complained in a general sense about massive litigation expenses in their long running battle with Plaintiff Handshoe[11] they fail to elucidate how they are prejudiced by the granting of Slabbed new Media's Motion to Intervene in this action while also maintaining their Motion to Dismiss for lack of jurisdiction will be ruled upon first by this Court. To the extent Slabbed New Media asserted the same 512(f) claims as Plaintiff Handshoe, the Intervenor is at a loss to fathom how Slabbed New Media's Intervention, assuming the jurisdictional challenge is defeated by the Plaintiff, would prejudice them at all as the Defendants have yet to so much as file an answer to the third amended complaint. Finally, the Defendants omit the fact they successfully evaded service of process of the Second Amended Complaint in this action until July 29, 2016, roughly six and a half months before Slabbed New Media filed to intervene in this action. Far from seeking to delay this action Slabbed New Media's Intervention will ensure all claims related to these events will be heard in one case, an action that results in not only in judicial economy but also saves the Defendants the expense of defending a separate infringement action apart from this instant action.

---

[10] Slabbed New Media in the process of obtaining the registration of the entire website and will surely bring more infringement counts against the Trout Point defendants, whether in this action with leave of the court or a separate action.

[11] When they sued their own lawyer Henry Laird for legal malpractice in New Orleans Civil District Court after losing the Fifth Circuit case styled [11] *Trout Pont Lodge et al v Doug K. Handshoe*, 729 F.3d 481 (2013), defense pleadings submitted by Laird and the Jones Walker Law Firm indicate the Defendants ran up over $125,000 in legal fees from Laird's representation in that and two other cases, while the Defendants actually paid Jones Walker and Laird less than $30,000, stiffing him for the balance thus their claims of having paid massive legal bills ring hollow.

The Defendants had an obligation to bring all of their claims against all the parties when they filed their Defamation/Copyright action and they purposely disregarded and failed to bring those claims against the owner of the website and the creative works at issue. They are estopped from bringing those claims now, which are also now time barred in any event.

However, the Defendants have sent the Canadian judgment and Canadian Court opinion to Slabbed New Media's webhosts including AWS representing it as valid and enforceable against the Slabbed New Media website by again purposely disregarding the legal owner of the website and thereby conflating its ownership. The Defendants exhibited this takedown notice themselves at ECF 96-11 beginning on page 13:

> I have a judgment from Nova Scotia Supreme Court declaring its ownership of the work, and that the use on slabbed.org is infringing. slabbed.org serially infringes copyrighted works. The U.S. District Court for the Southern District of Mississippi has just found that slabbed.org has hosted another copyrighted work without permission. That court found that the publisher of slabbed.org, Douglas Handshoe, "posted the Image without permission of the copyright owner or his agent."

It is these very actions of the Defendants which have forced Slabbed New Media to take action to protect its intellectual property.  The entire email chain between Charles Leary and AWS illustrates the myriad of misrepresentations including the conflation of the ownership of the website and misrepresentation that a court order from a civil action to which Slabbed New Media was never a party somehow applies to Slabbed New Media perfectly illustrates exactly why this intervention is needed. While Plaintiff Handshoe certainly has standing to assert 512(f) claims as the alleged infringer, only Slabbed New Media can protect its ownership interest in its copyrighted material.

Slabbed New Media would be greatly prejudiced if it were not allowed to intervene in this matter to protect its Copyright Interests.  The Defendants again posit the strawman theory

regarding the Plaintiff's lack of standing to bring the case reasoning there can be no prejudice to Slabbed by denying the Motion since the case will be dismissed anyway. This assumes that 1. The case will be dismissed and 2. that Slabbed New media's intervention is an attempt to cure defects in the standing of the Plaintiff to bring this action, both of which Slabbed New Media disputes for all the reasons stated above.

As previously stated the Defendants' documented history and habit of filing retaliatory suits against opposing counsel has made it extraordinarily difficult for Slabbed New Media to obtain counsel. Defendants allege Slabbed New Media made some sort of conscious tactical judgment to remain on the sidelines, an assertion with no basis in reality. Four months' time elapsed between the time Slabbed New Media learned that its Copyrights had been infringed by the Defendants in September 2016 and the registration of the parody video in January 2017. Far from a tactical decision to delay, those four months actually represented a frantic race to engage counsel. The Defendants point to the elapsed time since the suit was filed as the sole proof that Slabbed New Media made a conscious decision to delay entry. Slabbed New Media points to the retaliatory lawsuits to which Defendants filed against Jack E. "Bobby" Truitt, Esq., Scott Sternberg Esq, Brodie Glenn, Esq, Paul Vance, Esq and the Baldwin Haspel Law Firm as proof that engaging counsel has been extraordinarily difficult as the first question asked by a would-be lawyer in an introductory meeting is, "I assume if I litigate this case I too will be sued." Far from seeking a tactical delay Slabbed New Media is thankful to have finally obtained counsel as quickly as it did.

Defendants attempt to put words into Slabbed New Media's mouth maintaining that Slabbed New Media "in essence is arguing that it should have been the sole Plaintiff with respect to all the copyright-related counts." Slabbed New Media has never advanced that argument. And it is

clear the interests of the Plaintiff and Intervenor are not identical.  The Defendants exhibited the

Slabbed New Media Copyright registration of the parody video, "Slabbed: No Fear Journalism"

at ECF #107-1. The Plaintiff has no ownership interest in the video and thus lacks standing to

assert Slabbed New Media's intellectual property rights in it. These circumstances constitute the

very definition of a third party "interest different from those of the parties" that the Defendants

disregard much in the same manner they purposely disregarded Slabbed New Media, LLC when

they filed their claims of infringement in Canada.

*Slabbed has a viable interest in the subject matter of this litigation.*

The dates of Slabbed New Media Motion to Intervene and the dates the misrepresented

Takedown Notices were sent by the Defendants are not in dispute. Counts six, seven and eight

for example are facially viable as are the declaratory judgment counts. As Intervenor previously

stated, Slabbed New Media and the Plaintiff did not learn of the unauthorized copying and

dissemination of Slabbed New Media's creative works by the Defendants in December 2013

until September, 2016.

The Defendants claim prejudice in having to seek the dismissal of counts asserted by Slabbed

New Media which they claim are time barred. However, to the extent Plaintiff has demonstrated

using the Defendants' own court filings in Canada: 1. That he is the alleged infringer within the

meaning of the statute and 2. Has standing to bring an action as the alleged infringer, "for any

damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright

owner or copyright owner's authorized licensee, or by a service provider, who is injured by such

misrepresentation, as the result of the service provider relying upon such misrepresentation in

removing or disabling access to the material or activity claimed to be infringing, or in replacing

the removed material or ceasing to disable access to it"[12] it is likely the Defendants will be

forced to defend those counts irrespective of Slabbed New Media's Intervention. Any prejudice

that would result from having to defend these misrepresented takedowns against the Plaintiff

alone versus the Plaintiff and the would-be intervenor would be minimal as would the prejudice

to the Defendants in having to file a Rule 12 motion regarding counts they argue are possibly

time barred with respect to Slabbed New Media.

The Defendants build another straw man maintaining that Slabbed New Media's claim for

damages for Copyright Infringement fails because of its claim for Statutory damages. Slabbed

pleaded its damages as, "Slabbed New Media is entitled to injunctive relief under 17 U.S.C.A. §

502, Defendant's profits and Slabbed New Media's damages under 17 U.S.C.A. § 504(2), **or**

**alternatively** statutory damages in an amount not less than $750 nor more than $150,000 under

17 U.S.C.A. § 504(c), along with all costs and attorney fees under 17 U.S.C.A. § 505."

(Emphasis added).[13] Slabbed New Media absolutely established the elements of Copyright

Infringement in the unauthorized copying and dissemination of its intellectual property for use in

Canadian defamation and copyright infringement actions against third parties where the

Defendants enriched themselves obtaining money judgments for both defamation and copyright

infringement using Slabbed New Media's intellectual property. At the minimum, Slabbed New

Media as a matter of law, is entitled to relief under 17 U.S.C.A. § 504(2) in the form of the value

of the Canadian judgments obtained via infringement of Slabbed's Intellectual property along

with associated attorney fees and costs.

Defendants repeatedly couch their jurisdictional arguments made in their Motion to Dismiss

the Third Amended Complaints by maintaining that their motion is essentially *fait accompli* and

---

[12] 17 U.S.C.A. § 512(f)(2)

[13] Proposed Complaint in Intervention of Slabbed New Media ¶32.

will be granted by the Court.  However, for all the reasons previously stated including and especially the self-contradictory assertions made by the Defendants about their individual roles sending or using misrepresented takedown notices and whether Trout Point Lodge Ltd., should even be disregarded as an entity coupled with documentary evidence in the form of the Original Affidavit, Amended Application in Court and the Takedown Notices themselves, which clearly indicate that Plaintiff is the "alleged infringer" subject of the notices within the meaning of Section 512(f)(2), the dismissal of the Third Amended Complaint is far from the foregone conclusion this case will be dismissal posited by the Defendants to the Court in their Motion to Dismiss, which they incorporated in their Opposition to Slabbed New Media's Intervention.

## CONCLUSION

For the foregoing reasons, the Slabbed New Media, L.L.C. Motion to Intervene should be granted.

Respectfully submitted this 10th day of March, 2017,


s/G. Gerald Cruthird\_\_\_\_\_
G. GERALD CRUTHIRD
Of Counsel for the Defendant Douglas Handshoe
Attorney at Law
Post Office Box 1056
Picayune, MS 39466
Telephone: (601) 798-0220
picayunebarrister@cruthirdlaw.com

## CERTIFICATE OF SERVICE

I, G. Gerald Cruthird, Attorney for Slabbed New Media, LLC, do hereby certify that I have this date electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk and via U. S. Mail upon any non-ECF participants at their address of record.

So certified, this 10th day of March, 2017,


/s/G. Gerald Cruthird____
G. GERALD CRUTHIRD
Attorney At Law
Post Office Box 1056
Picayune, MS 39466
Telephone: (601) 798-0220
picayunebarrister@cruthirdlaw.com