

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

SEP 18 2017

ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS HANDSHOE                                                    PLAINTIFF

VS.                                                   CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES,
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA                              DEFENDANTS

---

**DEFENDANTS PERRET & LEARY'S MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR JUDICIAL NOTICE AND TO LIMIT VALUE OF PLAINTIFF'S
ACTION BASED ON FRESH ADMISSION, WAIVER**

---

### I. RELEVENT PROCEDURAL HISTORY AND RELATED ACTIONS

Defendants would show the Court that : (1) this case is a worth much less than Mr.

Handshoe has represented, and (2) that Mr. Handshoe is willing to misrepresent facts and

allegations, and change his position in this court and others as it suits his tactical needs at a

particular time; both of which have cost both this court and all defendants dearly in terms of

time, cost, efficiency, and wasted decision making.

Plaintiff filed his Third Amended Complaint on January 26, 2017. Defendants Leary and

Perret filed a Motion to Dismiss on February 15, 2017, arguing *inter alia* that the Plaintiff lacked

standing at the time of filing, and that the Complaint is a "shotgun pleading." In the Third

Amended Complaint, Plaintiff prays for $180,000 in compensatory damages, plus other relief, as

he has done in each of the previous versions of the Complaint. In April, 2017, Plaintiff argued

that he had truly always meant to add Trout Point Lodge, Limited—a joint stock company—as a

defendant, although he named Leary and Perret (as well as Defendant Abel) as "doing business

as" Leary and Perret. The Court granted him time to serve a summons on Trout Point Lodge,

Limited, however the caption of the summons that only names Abel, Leary, and Perret as "dba"

TPL was not altered.[1]

Relatedly, in Case No. 1:13-cv-00251-LG-JMR in this Court, in pursuit of a remand to

state court, Plaintiff assured this Court that he would never seek more than $74,999 in damages.

Based on these (mis)representations, the case was remanded to Hancock County Circuit Court on

September 23, 2013, whereafter Plaintiff in October, 2014, filed an amended complaint seeking

$817,000 in damages, to be trebled, or $2,451,000 (Exhibit "A").

Also relatedly in Case No. 1:14-cv-00159-KS-MTP in this Court,

> Plaintiff [Handshoe] submitted a signed, sworn Affidavit [75-1] representing that his
> damages in this action amounted to $75,000. In doing so, Plaintiff represented by
> implication that this amount was calculated based on the total amount of damages which
> he incurred and to which he was entitled under law. Plaintiff's argument now amounts to
> an admission that he previously made false representations concerning his damages to the
> Court and that, in doing so, willingly forewent an additional potential award of about
> $40,000 from Abel in default judgment. The Court will not accept this argument. The
> Court will take Plaintiff's signed and sworn Affidavit [75-1] as true, and find that the
> damages claimed in this action amount to $75,000. As such, the jurisdictional amount
> required for diversity jurisdiction under 28 U.S.C. § 1332(a) is not met . . .

Finally, on May 11, 2017, Defendants filed a Request for Execution with Stone County Circuit

Court (Exhibit "B"), regarding certain assets of Plaintiff, including two choses in action,

*including this case*. In May, 2017, Plaintiff filed with that state court a Motion to Quash (Exhibit

---

1A Nova Scotia limited company, like a U.S. limited liability company, is a separate juridical entity and must be
sued separately like a corporation. Instant defendants cannot be responsible for alleged acts of Trout Point Lodge,
Limited, but the 3rd Amended Complaint fails to distinguish what alleged acts and claims he attributes to Trout Point
Lodge versus the personal defendants. "Here, the "separate entity" aspect of Plaintiff's Complaint appears to be
indeterminate and contradictory" (Williams v. First National Bank of St. Louis, No. 4: 14CV01458 ERW (E.D. Mo.
Nov. 7, 2014)).

     "Doing business as" means a company [or other person] is using an assumed name. Black's Law Dictionary
403 (7th ed. 1999). If Company A "does business as" Company B, there is only one entity. Thus, Central
Bancompany cannot simultaneously be "doing business as" FNB and be sued as a separate entity from
     FNB.

On "separate entity," see also Snowden v. CheckPoint Check Cashing, 290 F.3d 631 (4th Cir. 2002) at fn. 2, finding
one juridical person "doing business as" another were truly a single entity for purposes of liability (not diversity of
citizenship).

"C"). In the signed pleading, through the same counsel in this case for potential Intervenor

Slabbed New Media, LLC—attorney G. Gerald Cruthird--Plaintiff argues to the state court that

all of his assets, including his accounting practice PLLC, his action in Hancock County Circuit

Court, *the instant action*, and the Slabbed New Media business are all worth less than an

*aggregate* value ten thousand dollars ($10,000), further arguing that they therefore cannot be

collected upon under Mississippi law. This valuation includes the value of the Slabbed New

Media business, which bore the alleged damage by the purported misrepresented DMCA notices.

There is only one Paintiff in this case.

## II. ARGUMENT

All defendants, past and present, including Perret and Leary, have relied upon and based

their decision making regarding this lawsuit based on the prayer for relief in the amended

complaints authored by Plaintiff Handshoe. This has included decisions regarding continued

legal representation and cost, the potential of making an offer of judgment, settlement, etc. This

decision making always included the $180,000 in compensatory damages prayed for in the

Handshoe Complaint(s). There has as of yet been no conference, as Plaintiff has been allowed

various amendments, including most recently what in essence amounted to adding a new

defendant without amendment. All Defendants have spent tens of thousands of dollars in legal

fees, and an extraordinary amount of time responding not only to Plaintiff's complaint, but also

various motions to amend.

In cases of subsequent amendments made to a state court complaint to plead an amount

greater than $75,000 after a remand from this Court based on the amount in controversy "such an

amendment [...] would be allowing the Plaintiff to perpetrate a fraud on this Court" *Lewis v.

CHARLEY CARRIERS, INC.*, Civil Action No. 5: 09-CV-170-DCB (S.D. Miss. Mar. 31, 2010).

This is exactly what Plaintiff did in Case No 1:13-cv-00251-LG-JMR. As noted by this Court in

that "Handshoe v. Broussard" case (Cause No. 1: 13CV251-LG-JMR (S.D. Miss. Sept. 23,

2013)), Mr. Handshoe wanted remand of his "abuse of process" case against the Plaintiffs back

to state court. This Court summarized representations and sworn testimony submitted by

Handshoe:

> The Court is not persuaded by the defendants' arguments that Handshoe may later seek
> damages exceeding $75,000. Handshoe's Complaint makes no reference to punitive
> damages, and in affidavits filed one month after removal of the case to this Court,
> Handshoe stated that his damages totalled $25,000. (Handshoe II, ECF Nos. 19-1, 20-1,
> 24-1). In his brief concerning subject matter jurisdiction, Handshoe itemized those
> damages and specifically stated that the damages he sought at the time of removal
> totalled $25,000. He also submitted an affidavit in which he specifically disavowed his
> right to recover any damages in excess of $74,999.99 in this lawsuit.

This Court remanded the case to Hancock County Circuit Court with that decision. Then, on

October 31, 2014, Mr. Handshoe filed an amended complaint with that court in which he seeks

over $2.4 million in damages. How Mr. Handshoe's damages rose from $25,000 to $2.4 million

is not explained in the complaint, nor is his decision to toss to the side his sworn avowal to this

Court that he would not seek any damages in excess of $74,999.99.

And in Case No. 1:14-cv-00159-KS-MTP Plaintiff made "an admission that he

previously made false representations concerning his damages to the Court." Analogously,

arguing before Stone County Circuit Court that this case is worth a diminimous amount when

facing a Writ of Execution, while *simultaneously* arguing to this Court that the action is worth

hundreds of thousands of dollars amounts to intentional and strategic misrepresentation to both

this Court and the state court.

Now, as he did before Judge Starrett, Plaintiff has made an admission in a court filing. He

has admitted that this case is worth not $180,000 or more, but rather a fraction, and probably a

tiny fraction, of $10,000. Looking at the related cases listed above, Plaintiff's habit and practice

of playing loose with damage amounts to suit his particular litigation agenda at a particular point

in time, and with regards to a particular court, is abundantly clear.

Based on Mr. Handshoe's Motion to Quash filed in state court, Defendants pray that

either Plaintiff be estopped from claiming more than $2500 in damages in this case, or,

alternatively, that he be found to have waived any claim for greater than $2500.

> Although *waiver* and *estoppel* are sometimes used interchangeably, especially in the law of insurance, there is a subtle but significant legal distinction between the two. *See Intel Corp. v. Hartford Accident & Indem. Co.,* 692 F.Supp. 1171, 1179 (N.D.Cal.1988). Strictly defined, *waiver* describes the act, or the consequences of the act, of one party only, while *estoppel* exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. *Id.* at 1179 n. 8. In contrast to waiver, then, estoppel involves some element of reliance or prejudice on the part of the insured before an insurer is foreclosed from raising a ground for denial of liability that was known at an earlier date. *See* Restatement (Second) of Torts § 894(1) (1977).
>
> [...]
>
> *Waiver* is the voluntary or intentional relinquishment of a known right. *See General Elec. Supply Co. v. Utley-James of Texas, Inc.,* 857 F.2d 1010, 1013 n. 1 (5th Cir.1988); *Peterson v. S.S. Wahcondah,* 331 F.2d 44, 48 (5th Cir.1964); 16B Appleman, *Insurance Law and Practice,* § 9086, at 536-39 (1981).

*Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991); also *Salzstein v. Bekins*

*Van Lines, Inc.,* 993 F.2d 1187 (5th Cir. 1993).

RESPECTFULLY SUBMITTED, this the 14th day of September, 2017.

VAUGHN PERRET, DEFENDANT, and
CHARLES LEARY, DEFENDANT

appearing *pro se*