## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS HANDSHOE** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:15CV382-HSO-JCG** |
| | § | |
| | § | |
| **VAUGHN PERRET,** *et al.* | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASHOKA'S [94] MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANTS VAUGHN PERRET AND CHARLES LEARY'S [96] MOTION TO DISMISS; AND DENYING SLABBED NEW MEDIA, LLC'S [101] MOTION TO INTERVENE

BEFORE THE COURT are three Motions:  (1) a Motion to Dismiss [94] filed by Defendant Ashoka; (2) a Motion to Dismiss [96] filed by Defendants Vaughn Perret and Charles Leary; and (3) a Motion to Intervene [101] filed by Slabbed New Media, LLC.  These Motions are fully briefed.

After due consideration of the Motions, the related pleadings, the record, and relevant legal authority, the Court finds that Ashoka's Motion to Dismiss [94] should be granted, that Perret and Leary's Motion to Dismiss [96] should be granted in part and denied in part, and that Slabbed New Media, LLC's Motion to Intervene [101] should be denied.  All of Plaintiff's claims should be dismissed except for the misrepresentation claims pursuant to 17 U.S.C. § 512(f) against Defendants Progress Media Group Limited and Marilyn Smulders contained in Count 3 of the Third Amended Complaint and against Defendants Charles Leary and Trout Point Lodge in Count 5.  These two claims will remain.

# I.  BACKGROUND

## A.  Procedural History

Plaintiff Douglas Handshoe ("Plaintiff" or "Handshoe") alleges that he is the publisher of Slabbed New Media, LLC's "regionally noted website."  3d Am. Compl. [90] at 3.  Plaintiff has been embroiled in litigation for years with certain of the Defendants in this case in various courts throughout the United States and Canada. According to the Third Amended Complaint, which is the operative pleading here, Trout Point Lodge Ltd. ("Trout Point Lodge"), Charles Leary ("Leary"), Vaughn Perret ("Perret"), and Daniel Abel ("Abel")[1] have commenced three defamation suits against Plaintiff in his personal capacity in Nova Scotia, Canada.  *Id.* at 11, 13.[2]

The Third Amended Complaint alleges that Defendants sent certain "takedown notices" pursuant to 17 U.S.C. § 512, which is part of the Digital Millennium Copyright Act ("DMCA"),[3] "in an attempt to force Plaintiff, as Publisher

---

[1]  The Court has now dismissed Plaintiff's claims against Abel pursuant to Federal Rule of Civil Procedure 4(m).

[2]  *See also, e.g., Trout Point Lodge, Limited v. Handshoe*, 729 F.3d 481 (5th Cir. 2013); *Perret v. Handshoe*, No. 1:16cv7-LG-RHW (S.D. Miss. Jan. 7, 2016); *Perret v. Handshoe*, 1:14cv241-LG-JCG (S.D. Miss. June 11, 2014); *Handshoe v. Abel*, No. 1:14cv159-KS-MTP (S.D. Miss. Apr. 10, 2014); *Handshoe v. John Does aka "Randall Cajun,"* No. 1:13cv254-HSO-RHW (S.D. Miss. June 12, 2013); *Handshoe v. Broussard*, No. 1:13cv251-LG-JMR (S.D. Miss. June 11, 2013); *Slabbed New Media, LLC v. Trout Point Lodge, Limited*, No. 1:12cv38-HSO-RHW (S.D. Miss. Feb. 8, 2012).

[3]  The United States Court of Appeals for the Ninth Circuit has described takedown notices as follows:

> Section 512(c) permits service providers, e.g., YouTube or Google, to avoid copyright infringement liability for storing users' content if—among other requirements—the service provider "expeditiously" removes or disables access to the content after receiving notification from a copyright holder that the content is infringing.  17 U.S.C. § 512(c) . . . .  The procedures outlined in §

and agent for Slabbed New Media, LLC to take down constitutionally protected free speech in the form of journalistic posts to the Slabbed New Media LLC website . . . ." *Id.* at 4. Plaintiff maintains that these takedown notices were "directed to a Mississippi legal business entity and ultimately its publisher/owner in his personal capacity, creating impacts on the business of that entity and its publisher in his personal capacity, including causing injury leading to damages . . . ." *Id.* at 4-5.

Plaintiff maintains that the posts in question constituted journalistic reporting in the public interest related to a "massive political corruption scandal, resulting criminal investigation, conviction and incarceration of former Jefferson Parish[, Louisiana,] President Aaron Broussard," *id.* at 2, and that some posts were

---

512(c) are referred to as the DMCA's "takedown procedures."

To avoid liability for disabling or removing content, the service provider must notify the user of the takedown. *Id.* § 512(g)(1)–(2). The user then has the option of restoring the content by sending a counter-notification, which must include a statement of "good faith belief that the material was removed or disabled as a result of mistake or misidentification . . . ." *Id.* § 512(g)(3)(C). Upon receipt of a valid counter-notification, the service provider must inform the copyright holder of the counter-notification and restore the content within "not less than 10, nor more than 14, business days," unless the service provider receives notice that the copyright holder has filed a lawsuit against the user seeking to restrain the user's infringing behavior. *Id.* § 512(g)(2)(B)–(C). The procedures outlined in § 512(g) are referred to as the DMCA's "put-back procedures."

If an entity abuses the DMCA, it may be subject to liability under § 512(f). That section provides: "Any person who knowingly materially misrepresents under this section—(1) that material or activity is infringing, or (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages . . . ." *Id.* § 512(f). Subsection (1) generally applies to copyright holders and subsection (2) generally applies to users.

*Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2015), *as amended* Mar. 17, 2016.

parodies created by Slabbed New Media, LLC, or third parties who gave express consent for Slabbed New Media, LLC, to publish the works. *See, e.g., id.* at 22, 29, 40-44, 48.

However, according to the Third Amended Complaint, "Plaintiff in his personal capacity had no connection to the illustrative use of the photographs in question." *Id.* at 29. Slabbed New Media, LLC, as a journalistic website, and Plaintiff as publisher of that website, used "the creative works in the context of a public interest news story . . . and journalistic reporting in the public interest . . . ." *Id.*

Plaintiff filed a pro se Civil Complaint for Damages, Declaratory, and Injunctive Relief [1] in this Court on November 16, 2015. Plaintiff has since filed three amended pleadings, two of which were filed after obtaining leave of Court to do so. The operative pleading is now the Third Amended Complaint [90], which advances eight counts of misrepresentation pursuant to 17 U.S.C. § 512(f) related to takedown notices dated from December 2012 to January 2016. 3d Am. Compl. [90] at 33-47.

The Third Amended Complaint also seeks certain declarations, including that: (1) "to the extent Defendants own any valid copyright interest in the creative works in questions [sic] or have claimed to own any valid copyrights, Defendants have misused such copyrights rendering those Copyrights as unenforceable," *id.* at 49; (2) Plaintiff's "use of the photographs in question as agent for Slabbed New Media, LLC is lawful under the fair use doctrine and does not infringe on any of the

Defendants' copyrights," *id.* at 50; (3) "as a matter of law [Plaintiff] has no liability in his personal capacity over content belonging to a third party in which he acts as agent pursuant to the Mississippi Limited Liability Act," *id.*; and (4) "as a matter of law each and every component judgment rendered in the case styled, *Trout Point Lodge et al. v. Douglas Handshoe*, Nova Scotia Supreme Court No. 41135 is REPUGNANT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA and unenforceable in the United States of America," under the Securing the Protection of our Enduring and Established Constitutional Heritage Act, 28 U.S.C. § 4101, *et seq.* ("SPEECH Act"), *id.* at 52.

B.   The takedown notices at issue

In total, nine takedown notices are at issue here.  Each is summarized in a separate count of the Third Amended Complaint.[4]

1.   The December 13 and 14, 2012, and February 18, 2014, takedown notices (Counts 1, 2, and 6)

Counts 1, 2, and 6 of the Third Amended Complaint assert claims under § 512(f) against Leary, Perret, Abel, Trout Point Lodge, and Ashoka,[5] related to takedown notices dated December 13, 2012; December 14, 2012; and February 18, 2014, respectively.  3d Am. Compl. [90] at 33-36, 41-44.  With respect to the

_____

[4]  Two takedown notices are the subject of one count, Count 8.  3d Am. Compl. [90] at 45-47.

[5]  According to the Third Amended Complaint, Ashoka "is a not for profit corporation formed under the laws of the state of Virginia . . . ."  3d Am. Compl. [90] at 4.  The pleading also mentions the "Ashoka Change Makers website" twice.  *See id.* at 33, 35.  Although it is not clear from the record, it appears that Ashoka publishes a magazine and related website and owns some of the copyrights which were the subject of certain of the takedown notices at issue.  *See, e.g., id.* at 33-35.

December 13, 2012, notice, Plaintiff asserts that

> Leary as authorized by Ashoka and in coordination with Perret and Abel,
> filed a DMCA takedown notice with Automattic, Inc. asserting ownership
> of a creative work posted to the Slabbed New Media website that have
> [sic] alternatively previously been subject to DMCA takedown notices by
> both Ashoka and the Trout Point Criminal Enterprise.  This image in
> question was previously litigated in Nova Scotia Canada . . . .  The
> resulting judgment was denied comity by this Court on December 19,
> 2012.

*Id.* at 13-14; *see also* Notice [1-3] at 10-11 (DMCA Notice sent by Leary on December

13, 2012).[6]

The December 13, 2012, takedown notice related to "a photograph from the

Ashoka Change Makers website . . . ."  3d Am. Compl. [90] at 33.  The image for

which Leary sent the takedown notice was an image of Leary and Perret, *see* Notice

[96-11] at 1, which

> appeared in the post, *Slabbed solves the mystery on the shores of the
> Tusket River in Nova Scotia as we reveal the Trout Point connection to the
> Jefferson Parish political Corruption Scandal* published on September 8,
> 2011 which is found [on the slabbed.org website,]

*Id.* at 14 n.4.

Count 2 asserts a § 512(f) claim for an initial takedown notice sent by Leary

on December 14, 2012, which "dealt with the same image" as the December 13,

2012, notice.  3d Am. Compl. [90] at 14 n.4; *see also* Notice [1-3] at 21-22.  Leary

sent "separate notices for both the cropped original and scaled versions of that

cropped original designed for mobile device optimization."  3d Am. Compl. [90] at 14

---

[6]  The Third Amended Complaint repeatedly refers to the "Trout Point Criminal
Enterprise," *see, e.g.,* 3d Am. Compl. [90] at 11, 13, 14, 15, 19, 22-24, 29, 30, 33, 35, 38, 41,
42, which it seems to define as Perret, Leary, and Abel, *id.* at 15.

n.4.

As for Count 6, Leary allegedly submitted a takedown notice on February 18,

2014, which

> represented that Publisher Handshoe and Slabbed New Media, LLC's
> republication with permission of parodies created by third parties
> unconnected to the Trout Point Lodge Criminal Enterprise that were
> published to the Slabbed New Media website with the express consent of
> the creators of the works in question and for creative works previously
> subject to multiple takedown notices submitted by Ashoka, the National
> Geographic Society and Progress Media/Marilyn Smulders infringed on
> copyrights owned by Ashoka, the National Geographic Society, Charles
> Leary, Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. on
> whose behalf's [sic] Defendant Leary swore he was authorized to act.

3d Am. Compl. [90] at 41-42.  At issue were "Slabbed New Media, LLC posts" that

"were published to the Slabbed New Media website . . . ."  *Id.* at 42.

Plaintiff alleges that each Slabbed New Media, LLC post is a "self-evident

non-infringing fair use," *id.* at 33, 35, 42, and that he had no connection to these

postings in his individual capacity, *id.*  However, Plaintiff asserts that he incurred

damages when the service providers terminated access to the Slabbed New Media,

LLC, posts that were subject to these takedown notices.  *Id.* at 34, 36, 43-44.

2.      The Second December 14, 2012, takedown notice (Count 3)

Count 3 raises a claim under § 512(f) against Progress Media and Smulders.

3d Am. Compl. [90] at 36.  Plaintiff refers to Progress Media as a Canadian media

outlet with which Smulders is apparently associated, although there is little

information in the record as to the identity of these two foreign Defendants, neither

of whom has entered an appearance in this case.  *Id.* at 23.

The Third Amended Complaint alleges that "[t]he Takedown Notice of

December 14, 2012 represented that Publisher Handshoe and Slabbed New Media, LLC's post infringed copyrights owned by Progress Media Group Limited and Marilyn Smulders on whose behalf the Canadian lawyer swore he was authorized to act." *Id.* at 36-37. The post was a "picture of defendants Leary, Perret and Abel that was posted to the Slabbed New Media website . . . ." *Id.* at 15. Plaintiff again claims "[t]he Slabbed New Media, LLC posts is [sic] a self-evident non-infringing fair use under 17 U.S.C. § 107," and that "Plaintiff Handshoe had no connection to those postings in his personal capacity." *Id.* at 37. Plaintiff asserts that he incurred damages as a result of Progress Media and Smulder's misrepresentations, and that "[s]uch injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment." *Id.* at 38.

      3.    <u>The December 31, 2012; April 1, 2014; and January 15 and 18, 2016, takedown notices (Counts 4, 7, and 8)</u>

Counts 4, 7, and 8 advance claims under § 512(f) against Leary, Perret, Abel, and Trout Point Lodge related to takedown notices dated December 31, 2012; April 1, 2014; January 15, 2016; and January 18, 2016. 3d Am. Compl. [90] at 38-40, 44-47. Leary submitted the December 31, 2012, takedown notice as to two alleged "copyrighted works being infringed on slabbed.org," *see* Notice [1-3] at 5, which is the basis of Count 4, and the April 1, 2014, takedown notice related to "three creative works subject to infringing publication at www.slabbed.org," *see* Notice [96-11] at 12, which is the basis of Count 7.

Count 8 references two takedown notices–one sent on January 15, 2016, and

another on January 18, 2016.  3d Am. Compl. [90] at 45.  According to Plaintiff,

> [o]n January 15, 2016[,] Trout Point Lodge owner Charles Leary, using
> the DMCA Takedown request form provided by Slabbed New Media,
> LLC's reverse proxy provider CloudFlare, sent a DMCA Takedown notice
> to them [sic] . . . .   CloudFlare is a reverse proxy provider which serves
> but only indirectly hosts the Slabbed New Media website.
>
> *  *  *
>
> On January 18, 2016 defendants Charles Leary and Vaughn Perret
> submitted a complaint to Amazon Web Services (AWS), hosting provider
> of Slabbed New Media, LLC.  AWS construed this complaint as a DMCA
> Takedown notice. This takedown notice duplicated the takedown notices
> of January 15, 2016 . . . .

Id. at 27, 28.

Plaintiff maintains that each Slabbed New Media, LLC, post is a self-evident

non-infringing fair use under 17 U.S.C. § 107.  Id. at 38, 44, 46.  As to Counts 4 and

7, the Third Amended Complaint states that "Plaintiff Handshoe had no connection

to those postings in his individual capacity."  Id. at 39, 46.

4.    The February 15, 2014, takedown notice (Count 5)

Count 5 advances a claim under § 512(f) against Leary, Perret, Abel, and

Trout Point Lodge, related to a February 15, 2014, takedown notice.  3d Am. Compl.

[90] at 40.  Count 5 asserts that

> [t]he Takedown Notice of February 15, 2014 represented that the Slabbed
> New Media, LLC parody created by and published to YouTube by
> Publisher Handshoe infringed on copyrights owned by Charles Leary,
> Vaughn Perret and Daniel Abel d/b/a Trout Point Lodge Ltd. on whose
> behalf Defendant Leary swore he was authorized to act.

Id.  According to Plaintiff, "[t]he Slabbed New Media, LLC parody that included a

photographs [sic] Trout Point criminal Conspirators is a self-evident non-infringing

fair use under 17 U.S.C. § 107."  Id.

-9-

Plaintiff argues that "Defendants violated 17 U.S.C. § 512(f) by knowingly [and] materially misrepresenting that the Slabbed New Media, LLC posting infringed on their copyrights," and that the misrepresentations "were material to YouTube's decision to require Plaintiff disable [sic] access to the Slabbed New Media, LLC video . . . causing Plaintiff to incur damages." *Id.* at 41. "Such injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to Plaintiff's free speech rights under the First Amendment." *Id.*

Leary submitted the takedown notice to YouTube for this video, as director of Trout Point Lodge, Limited, and listed Trout Point Lodge, Limited, as the copyright owner. Notice [96-11] at 10-11. Plaintiff has supplied a screen shot of this YouTube video, which was published on May 6, 2013. Screen Shot [111-4] at 2. The opening of the video is depicted as: "Slabbed The Alternative New Media for the Gulf South." *Id.* At the bottom left of the video, the screen states "Slabbed: No Fear Journalism," and "Doug Handshoe." *Id.*

C.   The Parties' Pending Motions

Defendants in this case have previously filed Motions to Dismiss, *see* Mots. [14], [34], [47], [55], [64], [75], to which Plaintiff responded in part by requesting leave to amend his pleadings, *see* Mots. for Leave [29], [82]. The Court has twice denied Defendants' Motions without prejudice and granted Plaintiff leave to amend his Complaint in order to attempt to cure defects in his pleadings. *See* Orders [43], [89].

On February 9, 2017, Defendant Ashoka filed a Motion to Dismiss [94] pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds that the Third Amended Complaint fails to state a claim against Ashoka.  Mot. [94] at 1.  On February 15, 2017, Defendants Perret and Leary filed a Motion to Dismiss [96] pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).  Perret and Leary take the position that the Third Amended Complaint should be dismissed under Rule 12(b)(1) because Plaintiff lacks standing to bring his claims, and alternatively on grounds that dismissal is warranted under Rule 12(b)(6).  Mot. [96] at 1.  These Motions to Dismiss [94], [96] are fully briefed.

On February 17, 2017, Slabbed New Media, LLC, filed a Motion to Intervene [101] as a party Plaintiff pursuant to Federal Rule of Civil Procedure 24(a)(2).  Mot. [101] at 1.  Alternatively, Slabbed New Media, LLC, seeks to intervene under Rule 24(b)(1)(B).  *Id.*  Ashoka, Perret, and Leary oppose this Motion [101].  *See* Resps. [105], [107]; Mems. [106], [108].

## II.  DISCUSSION

**A.    Perret and Leary's Motion to Dismiss [97] the Third Amended Complaint should be granted in part and denied in part.**

Perret and Leary ask the Court to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff lacks standing.  Mem. [97] at 9.  Perret and Leary alternatively seek dismissal pursuant to Rule 12(b)(6), for failure to state a claim.

### 1.    Federal Rule of Civil Procedure 12(b)(1)

When faced with a Rule 12(b)(1) motion to dismiss for lack of subject-matter

jurisdiction,

> a trial court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Crane v. Johnson*, 783 F.3d 244, 250 (5th Cir. 2015) (quotation omitted).  "[T]he jurisdictional issue of standing is a legal question," and "[t]he party invoking federal jurisdiction bears the burden of establishing standing."  *Id.* (quotation omitted).  In this case, in resolving whether the Court has subject-matter jurisdiction, it has relied upon the Third Amended Complaint supplemented by undisputed facts evidenced in the record.  *See id.*

### 2.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

In considering a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true and view those facts in the light most favorable to plaintiff.  *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015).  Mere labels and conclusions, or a "formulaic recitation of the elements of a cause of action will

not do." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

When resolving a Rule 12(b)(6) motion to dismiss, a court "may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (Apr. 12, 2017). The Court has not considered any evidence supplied by the parties outside of the pleadings that the Court is not permitted to consider under Rule 12(b)(6). The Court therefore has not considered evidence such as Plaintiff's Affidavit [111-1]; thus it need not treat these Motions to Dismiss as ones for summary judgment. *See* Fed. R. Civ. P. 12(d).

3.   Article III and statutory standing

Perret and Leary's Motion [96] contends that Plaintiff lacks both constitutional and prudential standing to pursue this case. *See* Mem. [97] at 9-11 (citing cases and making arguments as to both constitutional and prudential requirements for standing). To establish standing under a particular statute, a plaintiff must satisfy both constitutional and prudential requirements. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).

a.  <u>Article III Standing</u>

"Article III of the United States Constitution limits the jurisdiction of federal courts to actual 'Cases' and 'Controversies.'"  *Crane*, 783 F.3d at 251 (citing U.S. Const., art. III, § 2).  Article III standing requires "plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf."  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation omitted).

According to the United States Supreme Court,

[t]o establish Article III standing, the plaintiff seeking compensatory relief must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Id.* (quotation omitted).  A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the three elements of Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."  *Id.* (quotation omitted).

"Implicit in the first requirement of Article III standing is the notion that the injury in fact is particularized to the Plaintiffs."  *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (citing *Spokeo, Inc.*, 136 S. Ct. at 1548).  "At the pleading stage, allegations of injury are liberally construed."  *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).  General factual allegations of injury resulting from a defendant's conduct may suffice when resolving a motion to dismiss because courts "presume that general allegations embrace those specific facts that are

necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)

(quotation omitted); *see also Little*, 575 F.3d at 540.

The Supreme Court has emphasized that "standing is not dispensed in

gross." *Town of Chester, N.Y.*, 137 S. Ct. at 1650 (quotation omitted).  Instead, "a

plaintiff must demonstrate standing for each claim he seeks to press and for each

form of relief that is sought."  *Id.*  A court must, where necessary, raise the question

of Article III standing sua sponte.  *Ford v. NYLCare Health Plans of Gulf Coast,

Inc.*, 301 F.3d 329, 332 (5th Cir. 2002).

> b.  <u>Statutory or Prudential Standing</u>

Whether a plaintiff lacks standing under a governing federal statute

implicates prudential or statutory standing, and "statutory standing is not

indicative of Article III jurisdictional standing."  *Camsoft Data Systems, Inc. v.

Southern Electronics Supply, Inc.*, 756 F. 3d 327, 332 (5th Cir. 2014).  "Prudential

standing requirements exist in addition to the immutable requirements of Article

III as an integral part of judicial self-government."  *Superior MRI Servs., Inc. v. All.

Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quotation omitted).

> Prudential standing requirements are judicially created limits that
> concern whether a plaintiff's grievance arguably falls within the zone of
> interests protected by the statutory provision invoked in the suit, whether
> the complaint raises abstract questions or a generalized grievance more
> properly addressed by the legislative branch, and whether the plaintiff is
> asserting his or her own legal rights and interests rather than the legal
> rights and interests of third parties.

*Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 460 n.9 (5th Cir.

2001) (quotation omitted); *see also Superior MRI Services, Inc.*, 778 F.3d at 504

("One principle of prudential standing requires that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (quotation omitted).

The Supreme Court has held that "the label 'prudential standing' [is] misleading, for the requirement at issue is in reality tied to a particular statute." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). "The question is whether the statute grants the plaintiff the cause of action that he asserts." *Id.* In answering that question, the Supreme Court "presume[s] that a statute ordinarily provides a cause of action only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* (quotation omitted). "Whether a plaintiff comes within 'the zone of interests' is an issue that requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 1302-03 (quotation omitted).

If a plaintiff's claim falls within the zone of interests of the statute, a court must next consider the question of causation, that is "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 1305 (quotation omitted). "[P]roximate cause generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Id.* at 1306 (quotation omitted).

    4.    <u>17 U.S.C. § 512(f)</u>

Section 512(f) provides that

[a]ny person who knowingly materially misrepresents under this section--
(1)    that material or activity is infringing, or
(2)    that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, *incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation,* as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f) (emphasis added).[7]

Plaintiff's § 512(f) misrepresentation claims in Counts 1 through 8 of the Third Amended Complaint assert that he and Slabbed were alleged infringers of various copyrights purportedly owned by Ashoka, Progress Media, Smulders, Torstar, the National Geographic Society, Leary, Perret, Abel, and Trout Point Lodge, but that each of Plaintiff and Slabbed's posts was a non-infringing fair use of such copyright under 17 U.S.C. § 107.  3d Am. Compl. [90] at 33, 35, 36-37, 38, 40, 41-42, 44, 45-46.  In Counts 6 and 7, Plaintiff maintains that he and Slabbed republished parodies to the Slabbed website created by third parties, with the express permission of the creators of the works in question.  *Id.* at 41-44.

---

[7]  The statute defines "service provider" as a provider of online services or network access, or the operator of facilities therefor.  17 U.S.C. § 512(k)(1)(B).  A "service provider" includes

an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.

17 U.S.C. § 512(k)(1)(A).

5.  <u>The Third Amended Complaint contains enough general factual allegations of injury to establish Article III standing as to Counts 1 through 8.</u>

The § 512(f) misrepresentation claims set forth in Counts 1 through 8 of the Third Amended Complaint relate to takedown notices aimed at Automattic, Inc., New Dream Network, YouTube, HostGator LLC, CloudFlare, and Amazon Web Services, which were acting as service providers for Slabbed New Media, LLC. *See* 3d Am. Compl. [90] at 33-47. In some of these Counts, Plaintiff specifically disavows any "connection to those postings in his individual capacity." *Id.* at 33, 35, 37, 39, 42, 46.

Having thoroughly reviewed the Third Amended Complaint, however, Counts 1 through 8 contain general factual allegations that the purported misrepresentations made to the service providers caused Plaintiff to incur damages, including financial and personal expenses associated with responding to the claim of infringement. *See id.* at 34, 36, 38, 40, 41, 43-44, 45, 47. Construing the Third Amended Complaint liberally since Plaintiff is proceeding pro se, the Court finds that these general factual allegations of injury resulting from Defendants' conduct are sufficient to demonstrate Article III standing at the pleading stage. *See Lujan*, 504 U.S. at 561; *Little*, 575 F.3d at 540.

6.  <u>Plaintiff lacks statutory standing to pursue the claims in Counts 1, 2, 4, 6, 7, and 8.</u>

Section 512(f) permits recovery of damages by "the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured" by knowing material misrepresentations contained in takedown

notices.  17 U.S.C. § 512(f).  As the Court has stated, the misrepresentation claims referenced in Counts 1, 2, 4, 6, 7, and 8 of the Third Amended Complaint relate to takedown notices directed to service providers for websites published by Slabbed New Media, LLC, not by Plaintiff individually.  *See* 3d Am. Compl. [90] at 33-40, 41-47; *see also* Takedown Notices [96-11] at 1-23.  The takedown notices referenced Uniform Resource Locators ("URLs") or web addresses for Slabbed's posts.  *See* Takedown Notices [96-11] at 1-23.  Plaintiff has further disavowed any "connection to those postings in his individual capacity."  3d Am. Compl. [90] at 33, 35, 39, 42, 46.

Plaintiff's personal or individual claims in Counts 1, 2, 4, 6, 7, and 8 do not arguably fall within the zone of interests protected by § 512(f), as the takedown notices related to those Counts were directed to a third party, Slabbed's, published posts, not to those of Plaintiff individually.  Section 512(f) therefore does not "grant [Plaintiff] the cause of action that he asserts."  *Bank of Am. Corp.*, 137 S. Ct. at 1302; *see also Logan*, 263 F.3d 447, 460 n.9.  Nor is Plaintiff pursuing his own legal rights and interests in these Counts.  Instead, Plaintiff is asserting the legal rights and interests of Slabbed New Media, LLC.  *See Logan*, 263 F.3d 447, 460 n.9; *see also Superior MRI Services, Inc.*, 778 F.3d at 504.  Plaintiff lacks statutory standing to assert the claims in Counts 1, 2, 4, 6, 7, and 8 on his own, individual behalf, and these claims will be dismissed as to all Defendants.[8]  *See Nat'l Solid Waste Mgmt.*

---

[8]  Count 3 asserts a § 512(f) misrepresentation claim against Progress Media and Smulders, *see* 3d Am. Compl. [90] at 36-38, both of whom are in default, *see* Clerk's Entry of Default [150] at 1.  The parties have not directed the Court to a copy of the December 14, 2012, takedown notice which is the subject of this claim.  This Count will proceed.

*Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 498 (5th Cir. 2004).

      7.    <u>Plaintiff arguably has constitutional and statutory standing to advance the § 512(f) misrepresentation claim contained in Count 5, but Count 5 does not contain sufficient factual allegations to withstand the Rule 12(b)(6) challenge as to Perret.</u>

While it is not completely clear, it appears that the February 15, 2014, takedown notice which is the subject of Count 5 was sent to YouTube and may have related to a video created by Slabbed New Media, LLC, but published to Plaintiff's own personal YouTube channel. The video was purportedly "a parody created and owned by Slabbed New Media, LLC hosted by YouTube." 3d Am. Compl. [90] at 22. The subject of the video is unclear from the record.

Plaintiff has submitted a screen shot of the video, which could be construed as being posted on his own YouTube account. Screen Shot [111-4] at 2. Plaintiff argues that the screen shot demonstrates that the video was "published by Plaintiff to his personal YouTube account," and that it was "taken down from YouTube for several weeks." Mem. [112] at 5. To the extent Plaintiff incurred damages in his personal capacity as an alleged infringer as a result of an alleged knowing and material misrepresentation by a Defendant, Plaintiff would arguably have both Article III and statutory standing to pursue the claim in Count 5.

While Plaintiff may have standing and has stated a claim as to Leary, Count 5 nevertheless fails to state a claim for misrepresentation upon which relief may be granted as to Perret. Section 512(f) provides that any person who knowingly materially misrepresents that material or activity is infringing shall be liable for certain damages incurred as a result of the service provider relying upon such

misrepresentation in removing or disabling access to the material or activity claimed to be infringing.  *See* 17 U.S.C. § 512(f).

The Third Amended Complaint alleges that Leary knowingly and materially misrepresented to YouTube in the February 15, 2014, takedown notice that Plaintiff's posting on his YouTube account infringed copyrights owned by Leary, Perret, and Abel, doing business as Trout Point Lodge.  3d Am. Compl. [90] at 40-41.  A copy of this takedown notice, which was incorporated into the Third Amended Complaint by reference, was supplied by Perret and Leary in support of their Motion to Dismiss, Notice [96-11] at 10-11, and can be considered by the Court in resolving the Motion under Rule 12(b)(6), *Doe*, 853 F.3d at 800.  The takedown notice reflects that it was submitted to YouTube by Leary, as director of Trout Point Lodge, Limited, which is listed as the copyright owner.  Notice [96-11] at 10-11.

The Third Amended Complaint does not plausibly allege a knowing, material misrepresentation by Perret.  There are no facts stated in Count 5 to suggest that Perret had any personal involvement in this particular takedown notice.  Accordingly, Plaintiff has not stated a claim for relief under § 512(f) as to Perret individually.  The Motion to Dismiss will be granted to the extent it seeks dismissal of Count 5 as to Perret.

As for Leary, liberally construing Plaintiff's pro se Third Amended Complaint as a whole and assuming all well-pleaded facts are true, and assuming there was a takedown by YouTube under § 512(f),[9] Count 5 contains sufficient factual matter to

---

[9]  At one point in the Third Amended Complaint, Plaintiff alleges that YouTube disabled access to the posts containing the media identified in the February 15, 2014,

state a plausible claim for misrepresentation against Leary under 17 U.S.C. §

512(f).  Count 5 will proceed as to Leary and Trout Point Lodge, which has not yet

appeared in this action.

> 8.   <u>The request for declaratory relief contained in Count 9 will be dismissed for lack of subject-matter jurisdiction.</u>

Count 9 of the Third Amended Complaint seeks declaratory relief pursuant to

the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and 17 U.S.C. § 102(b), and

alleges misuse of copyright as to all Defendants.  3d Am. Compl. [90] at 48-49.

Plaintiff requests a declaration that "to the extent Defendants own any valid

copyright interest in the creative works in questions [sic] or have claimed to own

any valid copyrights, Defendants have misused such copyrights rendering those

Copyrights [sic] as unenforceable."  *Id.* at 49.

Under the Declaratory Judgment Act, "in any actual controversy within its

jurisdiction," a district court "may declare the rights and other legal relations of any

---

notice.  3d Am. Compl. [90] at 22.  However, Count 5 charges that "[t]he misrepresentations contained in the Takedown Notice and service of a Canadian Injunction the United States Courts had previously found unenforceable were material to YouTube's decision to require Plaintiff disable access to the Slabbed New Media, LLC video that were [sic] subject of the Takedown Notice causing Plaintiff to incur damages."  *Id.* at 41.  The parties have not cited any controlling authority on whether this action by YouTube constitutes a takedown under § 512(f), which contemplates "the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ."  17 U.S.C. § 512(f).

The record reflects that on February 19, 2014, YouTube responded to this takedown notice, requesting more information from Leary as to Trout Point lodge, the corporate entity identified as the copyright holder in the takedown notice.  Notice [96-11] at 10.  YouTube explained to Leary that "the content will remain live on the site until we have received this verification . . . ."  *Id.*  It is unclear what happened after YouTube's response.  The parties have not sufficiently briefed this issue, and at this juncture, liberally construing Plaintiff's pro se pleadings, the Court finds that Plaintiff has stated a plausible claim under § 512(f) as to Leary.

interested party seeking such declaration, whether or not further relief is or could

be sought."  28 U.S.C. § 2201(a).

> When considering a declaratory judgment action, a district court must
> engage in a three-step inquiry.  First, the court must determine whether
> the declaratory action is justiciable.  Typically, this becomes a question
> of whether an "actual controversy" exists between the parties to the
> action.  *See Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir.
> 1989).  A court's finding that a controversy exists such that it has subject
> matter jurisdiction is a question of law . . . . *See In re Canion (Randall &
> Blake, Inc. v. Evans)*, 196 F.3d 579, 584 (5th Cir. 1999).  Second, if it has
> jurisdiction, then the district court must resolve whether it has the
> "authority" to grant declaratory relief in the case presented.  *See
> Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774,
> 776 (5th Cir. 1993) ("Prior to determining whether the district court
> abused its discretion by failing to review the merits of this case, this
> Court must first determine whether the district court had authority to
> grant a declaratory judgment here.").  Third, the court has to determine
> how to exercise its broad discretion to decide or dismiss a declaratory
> judgment action.

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

Plaintiff relies upon 17 U.S.C. § 102(b) which relates to the subject matter of

copyright and provides that

> [i]n no case does copyright protection for an original work of authorship
> extend to any idea, procedure, process, system, method of operation,
> concept, principle, or discovery, regardless of the form in which it is
> described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b).  This statute does not relate to misuse of a copyright, nor does it

appear to be applicable to the claims raised in the Third Amended Complaint.  *See

id.*

Copyright misuse is an "equity-based defense . . . which prevents a culpable

plaintiff from prevailing in an action for the infringement of a misused copyright,

[and] forbids the use of the copyright to secure an exclusive right or limited

monopoly not granted by the Copyright Office and which is contrary to public policy to grant." *Veeck v. S. Bldg. Code Cong. Int'l Inc.*, 241 F.3d 398, 409 (5th Cir. 2001). "This doctrine–which has its historical roots in the unclean hands defense–bars a culpable plaintiff from prevailing on an action for the infringement of the misused copyright." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) (quotation omitted).

Plaintiff's request in Count 9 is, in essence, that the Court resolve in his favor a potential affirmative defense to any future copyright infringement litigation brought against him personally by Defendants. This is not sufficient to establish that the request for declaratory relief in Count 9 is justiciable, as no such future litigation or actual controversy yet exists. *See Orix Credit Alliance, Inc.*, 212 F.3d at 896.

"The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Id.* at 897. The filing of the lawsuit being contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action. *Id.* "However, in determining whether a justiciable controversy exists, a district court must take into account the likelihood that these contingencies will occur." *Id.* The ripeness inquiry "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Id.* (quotation omitted).

The Third Amended Complaint does not contain sufficient factual allegations to indicate that a copyright infringement claim against Plaintiff is likely to happen.

According to the Third Amended Complaint "Defendants never intended to seek remedy in the United States Courts when they substantively engaged the legal process outlined in 17 U.S.C. § 512." 3d Am. Compl. [90] at 48.  Instead, Plaintiff asserts that when Defendants sent the takedown notices, they were "actively planning to litigate the dispute in a foreign country . . . ." *Id.*  The Third Amended Complaint reflects that Leary, Perret, Abel, and/or Trout Point Lodge have already pursued at least one copyright infringement claim in the Canadian courts.  *See id.* at 21-22.  There is no indication from the Third Amended Complaint that there is another specific and concrete threat of copyright infringement litigation against Plaintiff related to the copyrights at issue in this case.

In sum, the controversy Plaintiff seeks to resolve is at this stage largely hypothetical.  *See Orix Credit Alliance, Inc.*, 212 F.3d at 896.  Unasserted, unthreatened, and unknown potential future copyright claims against Plaintiff do not present an immediate or real threat which merits declaratory relief.  *See id.* Because no justiciable controversy exists, the Court lacks subject-matter jurisdiction as to Count 9, which will be dismissed as to all Defendants.

9.   The declaratory relief sought in Count 10 will be dismissed for lack of subject-matter jurisdiction.

Count 10 of the Third Amended Complaint seeks declarations under the Declaratory Judgment Act and the Copyright Act that, as to all Defendants, Plaintiff's "use of the photographs in question as agent for Slabbed New Media, LLC is lawful under the fair use doctrine and does not infringe any of the Defendants' copyrights," and that "he has no liability in his personal capacity over content

belonging to a third party in which he acts as agent pursuant to the Mississippi

Limited Liability Act." 3d Am. Compl. [90] at 50. Count 10 further seeks "an

injunction prohibiting the Defendants, their agents, attorneys, and assigns from

asserting a copyright claim or filing another civil action against Slabbed New

Media, LLC, Plaintiff/Publisher Handshoe or Plaintiff in his personal capacity or

the lawyers that have previously represented Plaintiff without first seeking leave of

this Court." *Id.*

The declaratory relief sought in Count 10 again relates to unasserted,

unthreatened, and unknown theoretical, future claims against Plaintiff himself

which do not present an immediate or real threat. *See Orix Credit Alliance, Inc.*,

212 F.3d at 896. Because this does not rise to the level of a justiciable controversy,

granting such relief would be improper. *See id.* Nor has Plaintiff shown that the

Court has authority to grant it. The Court lacks subject-matter jurisdiction with

respect to the relief sought in Count 10 as to all Defendants.

> 10.   <u>The declaratory relief contained in Count 11 will be dismissed for lack
> of subject-matter jurisdiction.</u>

Count 11 invokes the Declaratory Judgment act and the SPEECH Act and

asks the Court to declare that

> as a matter of law each and every component judgment rendered in the
> case styled, *Trout Point Lodge et al v. Douglas Handshoe*, Nova Scotia
> Supreme Court No. 411345 is REPUGNANT TO THE CONSTITUTION
> OF THE UNITED STATES OF AMERICA and unenforceable in the
> United States of America.

3d Am. Compl. [90] at 52. According to the Third Amended Complaint, there is a

real and actual controversy between Plaintiff and Defendants as to "whether the

underlying Canadian defamation action and its multiple resulting judgments are repugnant to the constitution of the United States of America." *Id.* at 51. Plaintiff maintains that "[t]he Canadian underlying defamation action and resulting multiple, component judgments represents [sic] a collateral attack on the previous rulings of this Court in the action styled *Trout Point Lodge et al v. Handshoe.*" *Id.*

In *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013), Trout Point Lodge, Perret, and Leary sought "to enforce a defamation-based default judgment that they obtained against [Plaintiff Handshoe] in Nova Scotia, Canada." *Trout Point Lodge, Ltd.*, 729 F.3d at 483. Trout Point Lodge, Perret, and Leary enrolled the Nova Scotia Judgment in the Circuit Court of Hancock County, Mississippi, in March 2012 in an attempt to collect a damages award, and Handshoe removed the action to the United States District Court for the Southern District of Mississippi pursuant to the SPEECH Act. *Id.* at 486. On cross-motions for summary judgment, the district court found that Trout Point Lodge, Perret, and Leary had failed to carry their burden under the SPEECH Act and granted summary judgment in Handshoe's favor.

On appeal, the Fifth Circuit affirmed and held that the Nova Scotia judgment was unenforceable. *Id.* at 496. The Fifth Circuit explained that the SPEECH Act was enacted by Congress "in response to the perceived threat of 'libel tourism,' a form of international forum-shopping in which a plaintiff chooses to file a defamation claim in a foreign jurisdiction with more favorable substantive law," thus obstructing the free expression rights of domestic authors and publishers. *Id.*

at 487.  "[T]he SPEECH Act provides that a domestic court 'shall not recognize or enforce a foreign judgment for defamation' unless it satisfies both First Amendment and due process considerations."  *Id.* (quoting 28 U.S.C. § 4102).

The present case appears to relate to a separate, distinct Canadian judgment from the one that was before the Fifth Circuit in 2013.  Very little about this purported judgment, which was apparently entered in Nova Scotia Supreme Court No. 411345, can be ascertained from the Third Amended Complaint itself. However, Plaintiff attached as Exhibit "3" to his original Complaint a decision from the Supreme Court of Nova Scotia in No. 411345 dated February 14, 2014, *see* Decision [1-4] at 2-19, which he has referenced in the Third Amended Complaint, *see* 3d Am. Compl. 90 at 22 n.11.  Trout Point Lodge, Leary, and Perret were the applicants in that Canadian proceeding, and Plaintiff was the respondent.  *Id.* at 2.

The Nova Scotia Court found that the previous Canadian action and No. 411345 were similar, "in that they are a response to Mr. Handshoe's defamatory actions conducted through the Internet."  *Id.* at 5.  According to the Nova Scotia Court, "Mr. Handshoe has continued to defame the applicants notwithstanding the injunction" from the prior lawsuit.  *Id.* at 8.  The Nova Scotia Court again awarded Trout Point Lodge, Leary, and Perret damages for defamation.  *Id.* at 11-12; *see also* Order [9-2] at 2 (February 26, 2014, Order assessing damages against Handshoe for defamation claims by Trout Point, Leary, and Perret in No. 411345).

The SPEECH Act, 28 U.S.C. § 4102, relates to recognition and enforcement of foreign defamation judgments in the courts of the United States.  Plaintiff's request

for declaratory relief under the SPEECH Act presupposes that Trout Point Lodge, Leary, or Perret will seek to enforce the defamation judgment by the Nova Scotia Court in No. 411345 against him here in the United States.  *See* 28 U.S.C. § 4102. Plaintiff has not shown that any Defendant has sought to enforce this judgment in the United States.  Plaintiff's request is therefore premature.

Because no justiciable controversy exists at this time, granting the declaratory relief sought in Count 11 would be improper.  *See Orix Credit Alliance, Inc.*, 212 F.3d at 896.  The Court will dismiss this Count as to all Defendants for lack of subject-matter jurisdiction.

In sum, the Court will dismiss Counts 1, 2, 4, 6, 7, and 8 as to all Defendants for lack of statutory standing and will dismiss Counts 9 through 11 as to all Defendants for lack of subject-matter jurisdiction.  The Court will also dismiss Count 5 as to Perret for failure to state a claim against him upon which relief can be granted.  Count 5 as to Leary and as to Trout Point Lodge, which has not yet appeared in this action, will proceed.

B.   Ashoka's Motion to Dismiss [94] will be granted.

Ashoka argues that the Third Amended Complaint fails to state a claim against it and seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Me. [95] at 5, 12-13.  For the same reasons the Court has previously discussed with respect to Perret and Leary's Motion to Dismiss [96], the Court lacks subject-matter jurisdiction over Counts 9 through 11.  As for the § 512(f) misrepresentation claims, Ashoka is only named as a Defendant in Counts 1, 2, and 6, *see* 3d Am. Compl. [90]

at 33-36, 41-44, and as the Court has already determined, Plaintiff does not have statutory standing to pursue these claims individually.

Moreover, the Third Amended Complaint fails to state a claim against Ashoka upon which relief can be granted. Ashoka is named in Counts 1, 2, 6, and 9. *See id.* at 33-36, 41-44, 48-49.[10] The Third Amended Complaint does not contain sufficient factual matter, accepted as true, to state a claim for relief under § 512(f) against Ashoka in Counts 1, 2, or 6. *See Iqbal*, 556 U.S. at 678. As for Count 9, the Third Amended Complaint does not contain sufficient factual matter to state a plausible copyright misuse defense, as there are insufficient factual allegations as to Ashoka to show that the defense of misuse would apply. Ashoka's Motion to Dismiss [94] will be granted.[11]

C.    Plaintiff should not be granted leave to file a Fourth Amended Complaint.

Plaintiff has not requested leave to amend his pleading and file a Fourth Amended Complaint, standing on the allegations contained in his Third Amended

---

[10]  Plaintiff does not specify against whom he asserts Counts 10 and 11. 3d Am. Compl. [90] at 49-52. Plaintiff generally refers to "Defendants" in these counts, but the allegations appear related to litigation between Plaintiff and those Defendants associated with Trout Point Lodge, not Ashoka. *See id.* Counts 10 and 11 make no factual allegations as to Ashoka, and therefore fail to state a claim against it. *See id.*

[11]  The Court notes that the Third Amended Complaint contains an allegation that Ashoka submitted a "misrepresented Takedown Notice" to Automattic, Inc., on or about September 28, 2011. 3d Am. Compl. [90] at 11. Based upon a reading of the claims contained in the Third Amended Complaint, however, Plaintiff does not appear to be asserting a claim under 17 U.S.C. § 512(f) for this alleged misrepresentation. In its Motion [94], Ashoka seeks dismissal of this claim, arguing that any such claim is barred by the statute of limitations. Mem. [95] at 10-12. Plaintiff responds that he is not seeking relief related to the September 2011 takedown notice, as he "recognized that notice was outside the applicable statute of limitations when this matter was commenced . . . ." Mem. [110] at 3. The Court therefore need not address this claim.

Complaint.  Even if Plaintiff had sought such leave, the Court would deny it.

Plaintiff filed this lawsuit on November 16, 2015, over one-and-a-half years ago.  Plaintiff was permitted three previous opportunities to amend his pleadings in an attempt to state claims against all Defendants, and he has been unable to do so to the extent the Court has found the pending Motions to Dismiss to be meritorious. The Court finds that any further request for leave to amend would be futile.  *See Jones v. Robinson Prop, Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (holding that futility of the amendment and repeated failures to cure deficiencies are two of the factors a court may consider in deciding whether to grant leave to amend).  Plaintiff appears to have "already pleaded his 'best case,'" yet he lacks standing and otherwise cannot survive a Rule 12(b)(6) challenge as to those of his claims the Court has discussed in this Order.  *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

D.     <u>Slabbed New Media, LLC's Motion to Intervene [101] will be denied.</u>

Slabbed New Media, LLC, seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, Rule 24(b)(1)(B).  Mot. [101] at 1.  Rule 24(a)(2) allows intervention of right for anyone who

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  Rule 24(b)(1)(B) provides that a court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "The

intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved but is not intended to allow the creation of whole new lawsuits by the intervenors." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994).

Even if Slabbed otherwise satisfied the requirements for intervention, the Court would deny the Motion [101]. Rule 24(a) and 24(b) both require a "timely motion." Fed. R. Civ. P. 24(a), (b). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422 (5th Cir. 2002) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). The Fifth Circuit has announced four factors a court should consider in determining whether a motion to intervene is timely:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it sought to intervene; (2) the prejudice that existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) whether unusual circumstances militate for or against a determination that the application is timely. There are no absolute measures of timeliness; it is determined from all the circumstances.

*Id.* at 422-23.

Plaintiff filed his original Complaint [1] in this case on November 16, 2015, and has since filed three amended pleadings. Ashoka, Perret, and Leary filed Motions to Dismiss [55], [75] Plaintiff's Second Amended Complaint [44], which the

Court denied without prejudice when it granted Plaintiff leave to file another amended pleading.  *See* Order [89] at 6-7.  Slabbed waited until February 17, 2017, after Defendants had filed yet another round of dispositive motions, to seek intervention.

Plaintiff is a member or manager of, and operates, Slabbed.[12]  Slabbed has known or reasonably should have known of its interest in the case since the takedown notices were sent, or certainly by the date the original Complaint [1] was filed on November 16, 2015.  Permitting Slabbed to intervene at this late date would unduly prejudice Defendants, who have filed multiple dispositive motions and expended significant resources defending these claims.  Slabbed offers only a conclusory statement that "the remaining parties in this matter will in no way be prejudiced by Slabbed joining this action."  Mem. [102] at 4.  The Court is not persuaded that Defendants would not be prejudiced.

As for the alleged prejudice Slabbed will suffer, it maintains that it will suffer "great prejudice" because

> the transformative creative works in question that were subjected to numerous misrepresented Takedown Notices sent by the Defendants were in some instances both created and owned by Slabbed New Media, LLC or displayed on the company owned website with the express permission of the creator/owner of the transformative works.

*Id.*  This begs the question why Slabbed did not seek to intervene much earlier, or why it did not bring its own independent action pursuant to 17 U.S.C. § 512(f) to

---

12   The signature line of Slabbed New Media, L.L.C.'s Motion [101], proposed Complaint in Intervention [101], and Memorandum [102] are signed by counsel who is "Of Counsel for the Defendant [sic] Douglas Handshoe."

pursue its claims.  Nor does the Court find any circumstances exist which are so unusual as to militate against a determination that Slabbed's Motion is untimely. Having considered the  factors set forth by the Fifth Circuit and all of the circumstances presented in this case, the Court finds that Slabbed's Motion is untimely.  *See Heaton*, 297 F.3d at 422-23.  Slabbed's Motion to Intervene [101] will be denied.

Moreover, even if the intervention were timely sought under Rule 24, Defendants argue that the three-year statute of limitations for filing a § 512(f) claim expired as to all claims which accrued more than three years before February 17, 2017, the date the Motion to Intervene [101] was filed.  *See* Mem. [108] at 19. Slabbed has not addressed this argument in its Replies [113], [115], or Memoranda [114], [116].

The claims remaining in this case are the § 512(f) misrepresentation claims against Progress Media and Smulders set forth in Count 3, and against Leary and Trout Point Lodge contained in Count 5.  The claim in Count 3 relates to a takedown notice purportedly sent by a Canadian lawyer on behalf of Progress Media and Smulders on December 14, 2012.  Count 5 relates to a February 15, 2014, takedown notice which Plaintiff contends was directed to YouTube, as the service provider of his own personal YouTube account.  The three-year statute of limitations on both claims would have expired prior to Slabbed's Motion to Intervene [101] being filed on February 17, 2017.  *See* 17 U.S.C. § 107 ("No civil action shall be maintained under the provisions of this title unless it is commenced

within three years after the claim accrued."); *United States ex rel. Canion v.
Randall & Blake*, 817 F.2d 1188, 1192 (5th Cir. 1987) (holding that the filing of the
motion for intervention determines the commencement of the action for purposes of
the statute of limitations).  Slabbed's request to intervene as to those two remaining
Counts would be untimely and thus futile.

Nor has Slabbed shown that it has Article III or statutory standing to pursue
the claim contained in Count 5, which alleges that the YouTube post at issue was
published by Plaintiff on his own YouTube account.  3d Am. Compl. [90] at 40.
Neither the Third Amended Complaint nor Slabbed's proposed Complaint in
Intervention [101] contains sufficient factual detail as to how Slabbed New Media,
LLC, was injured by this specific misrepresentation to YouTube, as it pertained to
Plaintiff's own personal account.  *See* 17 U.S.C. § 512(f).  Slabbed's proposed
Complaint in Intervention [101] simply incorporates large portions of the Third
Amended Complaint [90] and "joins and specifically re-alleges Counts 1 through 8
contained in the Third Amended Complaint . . . ."  Compl. in Intervention [101] at 9.

Slabbed has not shown that it satisfies the requirements for intervention of
right or for permissive intervention, particularly in light of the dismissal of all of
Plaintiff's claims with the exception of Counts 3 and 5.  The statute of limitations
has run as to Counts 3 and 5 as to Slabbed, and Slabbed is not so situated that
disposing of what remains of this case, specifically Counts 3 and 5, may as a
practical matter impair or impede its ability to protect its own interests.  *See* Fed.
R. Civ. P. 24(a)(2).  Moreover, as for Count 5, Slabbed does not appear to claim an

-35-

interest in Plaintiff's personal YouTube account, and Slabbed's claims are distinct from Plaintiff's claim in that Count.  *See* Fed. R. Civ. P. 24(b)(1)(B).  Even if the statute of limitations had not run as to Count 5, any intervention by Slabbed at this juncture would unduly multiply these proceedings and essentially create a whole new lawsuit.  *See Deus*, 15 F.3d at 525.  For these reasons, the Court will deny Slabbed's Motion to Intervene [101].

### III.  <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  Ashoka's Motion to Dismiss [94] will be granted.  Perret and Leary's Motion to Dismiss [96] will be granted in part and denied in part, such that all of Plaintiff's claims will be dismissed except Count 5 as to Leary and Trout Point Lodge.  Count 3 will also proceed as to Progress Media and Smulders, who are in default.  Slabbed New Media, LLC's Motion to Intervene [101] will be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Dismiss [94] filed by Defendant Ashoka is **GRANTED**, and the Motion to Dismiss [96] filed by Defendants Vaughn Perret and Charles Leary is **GRANTED IN PART and DENIED IN PART**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all of Plaintiff's claims in Counts 1, 2, 4, 6, 7, 8, 9, 10, and 11 are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all of Plaintiff's

claims against Defendants Ashoka and Vaughn Perret are **DISMISSED**, and all of Plaintiff's claims against Defendant Charles Leary, except for the claim contained in Count 5 of the Third Amended Complaint, are **DISMISSED.**

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's misrepresentation claim under 17 U.S.C. § 512(f) contained in Count 3 of the Third Amended Complaint will proceed against Defendants Progress Media Group Limited of Nova Scotia and Marilyn Smulders, and that Plaintiff's misrepresentation claim under 17 U.S.C. § 512(f) contained in Count 5 of the Third Amended Complaint will proceed against Defendants Charles Leary and Trout Point Lodge.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion to Intervene filed by Slabbed New Media, LLC, is **DENIED**.

      **SO ORDERED AND ADJUDGED**, this the 19th day of September, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE