IN THE CIRCUIT COURT OF HANCOCK COUNTY MISSISSIPPI
SECOND JUDICIAL DISTRICT

**DOUGLAS HANDSHOE**  PLAINTIFF

**VERSUS**  CIVIL ACTION NUMBER 13-0186

**AARON F. BROUSSARD**
**DANIEL G. ABEL**
**CHARLES LEARY**
**VAUGHN PERRET**  DEFENDANTS
**CHRIS YOUNT**
**TROUT POINT LODGE LIMITED**
**NOVA SCOTIA ENTERPRISES L.L.C.**

SUMMONS

THE STATE OF MISSISSIPPI

TO:  Vaughn Perret
189 Trout Point Road
East Kemptville, NS B0W 1Y0

NOTICE TO DEFENDANT(S)

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand deliver a copy of a written response to the Complaint to Douglas Handshoe, the attorney for the Plaintiff(s), whose post office address is 214 Corinth Drive, Bay St Louis, MS 39520 and whose street address is 214 Corinth Drive, Bay St Louis, MS 39520. Your response must be mailed or delivered within (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this __31__ day of October, 2014.

_____
Clerk of Hancock County, Mississippi
(Seal)

Ex. A

IN THE CIRCUIT COURT OF HANCOCK COUNTY MISSISSIPPI

**DOUGLAS HANDSHOE**                           **PLAINTIFF**

**VERSUS**                                   **CIVIL ACTION NUMBER 13-0186**

**AARON F. BROUSSARD**
**DANIEL G. ABEL**
**CHARLES LEARY**
**VAUGHN PERRET**                         **FILED**
**CHRIS YOUNT**                         **OCT 3 1 2014**      **DEFENDANTS**
**TROUT POINT LODGE LIMITED**
**NOVA SCOTIA ENTERPRISES L.L.C.**    KAREN LADNER RUHR
                                         CIRCUIT CLERK, HANCOCK CO.
                                         BY_____D.C.

**FIRST AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF**

Comes now Plaintiff Douglas Handshoe, who files this amended complaint and sues Aaron F. Broussard, Daniel G. Abel, Charles Leary, Vaughn Perret, Chris Yount, Trout Point Lodge, Ltd and Nova Scotia Enterprises, L.L.C. and in support shows the following:

**NATURE OF THE AMENDED ACTION**

1. This action is to recover damages and make Plaintiff whole after defendants, in a coordinated campaign of libel terrorism, fraudulently obtained two money judgments in a Canadian court against Plaintiff for defamation in acts of retaliation against Plaintiff for exposing their roles in a bribery and money launderings scheme perpetrated by for Jefferson Parish President Aaron Broussard and for cooperating with the Federal Bureau of Investigation in related matters. This amended action adds counts related to the racketeering activities of the defendants which arise from the same nexus of facts as the original complaint.

**THE PARTIES**

2. Plaintiff is a Mississippi resident and owner of Slabbed New Media, LLC, resides in and publishes the internationally noted investigative weblog Slabbed in the Mississippi Second Judicial District in Hancock and Stone Counties.

3. Defendant, Aaron F. Broussard is a person of age and a citizen, domiciliary of the State of Louisiana and who currently resides and is incarcerated in the Federal Prison Camp, Pensacola Florida.

4. Defendant, Daniel G. Abel is a person of age and a citizen, domiciliary of the State of Louisiana and who resides and is domiciled in Jefferson Parish Louisiana.

5. Defendant, Charles Leary is a person of age and a citizen of the United States of America, domiciliary Province of Nova Scotia and who resides and is domiciled in Nova Scotia, Canada.

6. Defendant, Vaughn Perret is a person of age and a citizen of the United States of America, domiciliary Province of Nova Scotia and who resides and is domiciled in Nova Scotia, Canada.

7. Defendant, Chris Yount is a person of age and a citizen, domiciliary of the State of Louisiana and who resides and is domiciled in Jefferson Parish Louisiana.

8. Defendant Trout Point Lodge, Limited a Nova Scotia Limited Company registered in the Province of Nova Scotia, domiciliary Province of Nova Scotia whose registered office is in the town of Kemptville, Nova Scotia.

9. Defendant, Nova Scotia Enterprises, L.L.C. is a limited liability company, domiciliary of the State of Louisiana and whose registered office is in the City of Kenner, Jefferson Parish Louisiana.

## VENUE AND JURISDICTION

10. Jurisdiction and venue are proper under section 13-3-57 Mississippi Code Annotated (1972) and Mississippi Rules of Civil Procedure as substantial portions of the events that give rise to these claims occurred in Mississippi along with the injury leading to damages. Additionally the United States Racketeering Statute found at 18 U.S. Code § 1961 et seq. is the supreme law of the nation with state courts presumed to have original/concurrent jurisdiction over such claims.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

11. On or about May 20, 2002, a company named Nova Scotia Enterprises, LLC (NSE) was formed in Louisiana by Roy D'Aquila, Aaron Broussard and others whose identities are not fully known to Plaintiff. Nova Scotia Enterprises, LLC was a holding company whose stated purpose was to own and hold certain pieces of real property located at the Trout Point Resort near East Kemptville Nova Scotia. However, Nova Scotia Enterprises never owned any real property or anything of value in Nova Scotia.

12. From 2002 through 2010, there were up to twelve (12) partners in Nova Scotia Enterprises including defendant Broussard, Broussard's ex-wife Karen Parker, Roy D'Aquila, James E. Smith and others, whose identities are not fully known to Plaintiff. Many of the partners did substantial business with the Parish of Jefferson, where Broussard served as the duly elected Parish President.

13. Unlike every partner except for his ex-wife, Broussard was given a 42% share of Nova Scotia Enterprises in exchange for a disproportionately small capital contribution of under $800 when other partners, with much smaller ownership share contributed thousands of dollars to the enterprise.

14. From 2002 through 2010, Nova Scotia Enterprises, using money contributed to it by the Louisiana partners doing business with the Parish of Jefferson under the guise of "Trout Point Lodge lot assessments", paid the expenses of rental property located in Nova Scotia Canada known as River Bend Lodge, which was owned by Aaron Broussard personally.

15. At all time periods from 2002 through 2010 River Bend Lodge located at the Trout Point Resort was owned by Aaron Broussard and managed by Trout Point Lodge, Limited of Nova Scotia via its owners Charles Leary, Vaughn Perret and Daniel Abel as a property that was both a part of and indistinguishable from the main Trout Point Lodge itself. The financial transactions for River Bend Lodge were conducted by Leary, Perret and Trout Point Lodge Ltd in the name of Nova Scotia Enterprises LLC, despite the fact NSE was not registered or authorized to conduct business in Canada or own anything of value in Canada. River Bend Lodge's operations were funded by the NSE partners other than Aaron

Broussard as part of a corrupt bribery scheme facilitated by sham financial transactions conducted in Canada by Leary, Perret. Abel and Trout Point Lodge.

16. In September, 2009, news reports surfaced involving St John the Baptist Parish President Bill Hubbard taking bribes from certain venders which did business with St John the Baptist Parish.

17. From September 2009 through December 2009 news reports connected certain high level employees of the Parish of Jefferson to corrupt bribery schemes involving the selling of medical insurance to employees of the Parish of Jefferson. The employees identified were Aaron Broussard's Parish Attorney and Chief Administrative Officer.

18. In January 2010, the New Orleans Times Picayune published a story linking Aaron Broussard to a pay to play scheme involving Parish of Jefferson venders and his properties at the Resort at Trout Point Nova Scotia.

19. On or about January 7, 2010, Louisiana Media Company, LLC aka WVUE Fox 8 New Orleans published an interview between investigative reporter Val Bracy and Aaron Broussard wherein Broussard addressed the Nova Scotia bribery allegations.

20. Broussard resigned from public office January 8, 2010 less than 12 hours after excerpts of his interview aired on the late Louisiana Media Company LLC newscast.

21. In April 2010, in a practice known as libel tourism, Broussard, using his business agents Leary, Perret, Abel and Trout Point Lodge, filed a defamation suit against The New Orleans Times Picayune in Nova Scotia Canada.

22. In April, 2010, in a practice known as libel tourism, Broussard, using his business agents Leary, Perret, Abel and Trout Point Lodge, filed a defamation suit against Louisiana Media in Nova Scotia Canada.

23. Defamation lawsuits used to silence public inquiry into public issues are also known as Strategic Lawsuits against Public Participation.

24. Leary, Perret, Abel and Trout Point Lodge used their business relationship as Broussard's financial intermediaries that conducted sham financial transactions designed to facilitate the Broussard bribery scheme involving Nova Scotia Enterprises, LLC as the centerpiece of their damages claim against Louisiana Media Company, LLC. Defendants claimed Nova Scotia Enterprises LLC owned River Bend Lodge despite personally purchasing the property from Defendant Broussard months before.

25. Leary, Perret, Abel and Trout Point Lodge submitted sworn affidavits to the Nova Scotia lawsuit against Louisiana Media Company which detailed the sham financial transactions they conducted for their and Broussard's financial benefit with Nova Scotia Enterprises LLC to substantiate portions of their damages claim in the Louisiana Media defamation suit.

26. Unknown to plaintiff, more than a year into subject litigation with Louisiana Media Company, LLC, on April 26, 2011 defendant Leary on behalf of Trout Point filed a motion with the Supreme Court of Nova Scotia asking for a court order to obtain IP addresses and email addresses of 5 United States Citizens including Plaintiff, sole owner and publisher of Slabbed New Media, LLC, owner of the website www.slabbed.org. Despite having no connection to Louisiana Media Company, LLC and in spite of the fact that Leary, Perret, Abel and Broussard demonstrably knew Plaintiff's identity, Leary fraudulently claimed in the Trout Point Motion and Affidavit to the Canadian court that he did not know any of the identities of the parties that he had identified and that these 5 anonymous internet posters had defamed him and his business.[1] Using the fraudulent motion and perjured affidavit, Leary induced Canadian Justice Pierre L Muise to grant his motion and Muise issued an order dated May 20, 2011 directed to Plaintiff's webhost to release the confidential information.

27. After obtaining Plaintiff's IP address and those of 4 other United States citizens using the wires, interstate and international mail and courier services along with means and process that remain

---

[1] Leary's claims of defamation and homophobia in this brief are best summed up by his stated grounds of suing Slabbed commenter Telemachus: "concluded his posting by suggesting that the Plaintiff Leary Perret and *Abel* belonged in the proverbial "woodpile". Leary claimed this was an old English homophobic slur instead of its true southern roots derived from the colloquial expression "there is a snake in the woodpile".

only partially known to Plaintiff at this time, defendant Leary, acting on behalf of Trout Point Lodge Limited and Nova Scotia Enterprises LLC in concert with Mssrs. Perret, Abel, and Broussard filed more motions for orders to United States internet service providers such as Cox Communications and AT&T Mobility. Justice Muise issued an additional court order dated July 21, 2011 based upon Leary's additional fraudulent affidavit and motion.[2]

28. On May 6, 2011 Chris Yount, a process server and private investigator closely associated with defendant Abel, served an undated Nova Scotia "Notice of Intended Action" drafted by Leary, Perret and Trout Point upon Plaintiff's spouse in Bay St Louis, Mississippi.

29. In August 2011, Broussard, using Leary, Perret, Abel and Trout Point Lodge as his agents, filed the first of three Nova Scotia based Defamation against Plaintiff, literally constructing large portions of their wild claims from whole cloth.

30. On December 2, 2011, a Federal Grand Jury indicted Defendant Broussard for Payroll Fraud in connection with his tenure as President of the Parish of Jefferson.

31. In January, 2012, Plaintiff obtained certain Pleadings, Affidavits and Motions filed by Leary, Perret, Abel and Trout Point Lodge in their defamation suit against Louisiana Media Company, LLC which illustrated the use of the financial relationships involving defendants and Nova Scotia Enterprises, LLC, as the heart of their damages claim in the Louisiana Media suit. Plaintiff published these affidavits, motions and pleadings to the Slabbed New Media website in January and February, 2012. Defendants Leary, Perret, Abel and Trout Point Lodge hastily settled their suit against Louisiana Media Company after the publication of these documents in February, 2012.

32. In May, 2012, Plaintiff was contacted by Special Agent Talarah Cataldi of the New Orleans office of the Federal Bureau of Investigation. Special Agent Cataldi met with Plaintiff on May 30,

---

[2] In a supporting affidavit dated June 13, 2011 Mr. Leary states, "On or around June 11, 2011, I spoke with Danny Abel, Esq. of Louisiana. He told me, and I verily believed him, that he could have an order from the Supreme Court of Nova Scotia domesticated and enforced by a judge of competent jurisdiction in Louisiana".

2012. Special Agent Cataldi asked Plaintiff to provide the FBI with any unpublished portions of the Canadian case record obtained by Plaintiff from the Louisiana Media Suit in Canada which mentioned Nova Scotia Enterprises, LLC. Plaintiff fully cooperated with the FBI and was assigned a confidential informant number by Special Agent Cataldi.

33. On July 25, 2012, upon filing of an affidavit sworn by defendant Leary in the United States District Court civil action styled Trout Point Lodge LTD, Vaughn Perret and Charles Leary v Doug K. Handshoe, Plaintiff was able to ascertain that he was entitled to due process notice to the hearings held in Yarmouth Nova Scotia pursuant to the Leary/Trout Point Motions and Affidavits of April, May, June and July 2011, as defendant Leary swore in the US Court filing that he clearly knew plaintiff's identity (prior to filing the Canadian motions), despite swearing affidavits in Canada in the Louisiana Media suit which claimed that he did not know the identity of the publisher of Slabbed.[3]

34. On August 31, 2012, the United States Department of Justice filed, Government's Notice of Intent to Introduce Intrinsic Evidence, or Alternatively, Notice of "Other Act" Evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. In this Motion, United States Prosecutors identified Nova Scotia Enterprises, LLC as a Broussard bribery scheme.

35. On December 4, 2012, during the pendency of their first action against Plaintiff in United States District Court seeking enforcement of their first Canadian defamation judgment, defendants filed another defamation suit in Canada against plaintiff and plaintiff's former webhost Automattic, alleging a massive homophobic conspiracy against them which included plaintiff, plaintiff's lawyer Jack E. "Bobby" Truitt among others.

36. The purpose of this suit was to force defendant Automattic to terminate a long standing hosting agreement between it and Plaintiff.

---

[3] Affidavit of Charles Leary, Trout Point et al v Handshoe, U.S.D.C. (MSSD) case #12cv90, Document 21, Paragraph 20, Filed 7/25/12.

37. On December 17, 2012 Automattic terminated its hosting agreement with Slabbed New Media and removed from their servers all of Slabbed New Media's files.

38. On December 19, 2012, a Canadian lawyer acting on the behest of Leary, Perret, Abel and Trout Point Lodge filed a takedown notice with Plaintiff's web host objecting to a picture of defendants Leary, Perret and Abel that posted to the Slabbed New Media website. In accordance with the requirements of the Digital Millennium Copyright Act (DMCA) web host New Dream Networks disabled the photo in question. In accordance with the DMCA, Plaintiff submitted a counter notification, which starts a process whereby the complainant can file for an injunction in the United States District Court for the Southern District of Mississippi. Neither the Canadian lawyer asserting the copyright claims or defendants Leary and Perret filed for an injunction with the US District Court and the image was subsequently restored by Plaintiff in accordance with the DMCA.

39. On December 31, 2012, defendant Leary filed two additional DMCA takedown notices against the Slabbed website. Again in accordance with the DMCA, Plaintiff submitted a counter notification and removed the images while the applicable statutory time period ran for defendant Leary to file for an injunction with the United States District Court for the Southern District of Mississippi. Again defendant Leary did not file for an injunction and the images were restored.

40. At a date unknown in January, 2013 defendants Leary, Perret and Trout Point Lodge Limited amended the lawsuit dropping plaintiff as a defendant in the action, replacing their allegations against Automattic of defamation with a breach of contract suit, said contract being the deletion of the Slabbed website previously hosted by Automattic.

41. On January 16, 2013 defendant Daniel Abel filed a defamation suit against plaintiff and Jefferson Parish Corruption whistleblower Anne Marie Vandenweghe in the Louisiana Eastern District United States District Court.

42.     On February 4, 2013 defendants Leary and Perret, in collusion with defendants Broussard, Abel and Yount, served upon Plaintiff a civil suit filed in Nova Scotia seeking relief under the US Digital Millennium Copyright Act that accusing plaintiff of "submitting bogus counter notifications". This suit sought a Canadian injunction.

43.     On March 19, 2013, defendant Abel willfully supplemented a federal court pleading with information obtained via the Canadian court order obtained as specified in paragraphs 26 and 27.[4]

44.     On May 13, 2013, Defendant Abel, after multiplying the United States District Court proceeding with frivolous brief after frivolous brief which contained a multitude of defamatory allegations levied against plaintiff Handshoe and his codefendant in that action Anne Marie Vandenweghe, voluntarily dropped his suit on the day before a hearing to strike his Abel's defamation claims under Louisiana's Anti SLAPP statute.

45.     On May 27, 2013, Defendant Abel refiled his US District Court defamation lawsuit in the New Orleans Civil District Court including as co-defendants all of Plaintiff Handshoe's previous lawyers.

46.     On September 5, 2013 the United States Fifth Circuit Court of Appeals denied comity of the first Trout Point Nova Scotia defamation suit filed against Plaintiff under the United States SPEECH Act. Regarding the Canadian Injunction obtained by the Trout Point in that first Nova Scotia defamation suit, Judge Jennifer Elrod, writing for the court noted, "the Nova Scotia Court entered a permanent injunction against Handshoe, "restraining him from disseminating, posting on the Internet or publishing, in any manner whatsoever, directly or indirectly, any statements about the plaintiffs, Trout Point Lodge, Charles L. Leary, and [Vaughn] J. Perret." The injunction included "publication, circulation and promotion on the blog named Slabbed, and any similar or other publications." The court added, for "further particularity," that Handshoe "shall not publish or cause to be published or otherwise disseminate or distribute in any manner whatsoever . . . any statements or other communications which refer to the

---

[4] Abel v Handshoe et al, U.S.D.C. (LAED) case number 13CV88 Document 21-2. Worth noting is the date on the hearing transcript, May 30, 2011.

plaintiffs by name, depiction or description." It ordered Handshoe to immediately remove any such material from publication. **Trout Point does not seek to enforce the injunction in this action. Rightly so, as the injunction does not comport with even the most basic protections against prior restraints on speech in the United States.**[5] (Emphasis added)

47.  Beginning on or about February 14, 2014 the Defendants Leary and Perret on behalf of the Trout Point Racketeering Enterprise began serving the Canadian Injunction for which they had previous represented to the United States courts they were not seeking to enforce yet for which the court previously specifically denied comity, on Plaintiff's United States based Interactive Internet Service Providers along with Digital Millennium Copyright Act Takedown notices as follows:

- On February 15, 2014 to YouTube wherein the Trout Point claimed ownership over a parody created by Slabbed New Media, LLC.
- February 18, 2014 to New Dream Network in which defendants claimed ownership over parodies created by third parties unconnected to the Lodge which were published to the Slabbed new Media website with the express consent of the creators of the works in question.
- On April 1, 2014 to HostGator, LLC claiming ownership over creative works created by Frank Magazine that were republished to the Slabbed New media website with the permission of Frank Magazine.

### CAUSES OF ACTION

### COUNT 1: ABUSE OF PROCESS

48.  Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition with emphasis on paragraphs 26 through 29.

---

[5] Trout Point et al v Handshoe, 729 F.3d 481 (5th Cir. 2013) Opinion of the Court 2013, WL 4766530 issued by the 5th Cir. on Sept. 5, 2013, Footnote 5

49. By depriving plaintiff of his due process rights via a foreign lawsuit to which he was not a party via false and misleading affidavits defendants:

- Made an illegal use of the legal process
- With the ulterior motive of invading the privacy of American Internet Commenters and bolstering later litigation with tainted evidence
- Causing damage to plaintiff and his investment in Slabbed New Media

## COUNT 2: ABUSE OF PROCESS

50. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this complaint with emphasis on paragraphs 38 and 39.

51. By filing, and causing others takedown notices under the Digital Millennium Copyright Act without the intention of completing the process by filing for an injunction in the proper jurisdiction defendants:

- Made an illegal use of the legal process
- With the ulterior motive of causing harm to Plaintiff's website.
- Causing damage to plaintiff and his investment in Slabbed New Media

## COUNT 3: ABUSE OF PROCESS

52. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition with emphasis on paragraphs 35 through 40.

53. By filing, a second defamation suit in Canada for the purpose of causing codefendant Automattic to terminate a long standing business relationship with plaintiff the defendants:

- Made an illegal use of the legal process
- With the ulterior motive of causing Plaintiff's webhost to terminate a long standing business relationship.
- Causing damage to plaintiff and his investment in Slabbed New Media

## COUNT 4: MALICIOUS PROSECUTION

54. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition with emphasis on paragraphs 35 through 40:

The defendants:

- Instituted a proceeding
- At the insistence of the defendants
- Which terminated in Plaintiff's favor
- Such proceedings brought with the intent of further harassing defendant.
- For want of probable cause or chance of victory
- Causing damage to plaintiff and his investment in Slabbed New Media.

## COUNT 5: MALICIOUS PROSECUTION

55. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition with emphasis on paragraphs 41 through 44:

The defendants:

- Instituted a proceeding
- At the insistence of the defendants
- Which terminated in Plaintiff's favor
- Such proceedings brought with the intent of further harassing defendant.
- For want of probable cause or chance of victory
- Causing damage to plaintiff and his investment in Slabbed New Media.

## COUNT 6: ABUSE OF PROCESS

56. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition with emphasis on paragraph 46 and 47:

57. By serving a Canadian Injunction which was previously denied comity on Planintiff's Interactive Service Providers while representing the order as valid and enforceable in the United States the defendants:

- Made an illegal use of the legal process
- With the ulterior motive of depriving Plaintiff interfering with business relationship established by Plaintiff and to cause harm to Plaintiff's website.
- Causing damage to plaintiff and his investment in Slabbed New Media.

## COUNT 7: ABUSE OF PROCESS

58. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition with emphasis on paragraphs 46 and 47.

59. By serving DMCA Takedown notices on Planintiff's Interactive Service Providers under penalty of perjury that defendants owned creative works that were the intellectual property of others the defendants:

- Made an illegal use of the legal process
- With the ulterior motive of depriving Plaintiff of his right to free speech and to interfere with business relationship established by Plaintiff and to cause harm to Plaintiff's website.
- Causing damage to plaintiff and his investment in Slabbed New Media.

## COUNT 8: CIVIL CONSPIRACY

60. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition.

61. As hereinabove alleged, defendants combined for the purpose of accomplishing unlawful purposes and/or lawful purposes unlawfully, as a direct and proximate result of which plaintiff suffered injury and damages.

62. As hereinabove alleged, defendants combined to accomplish by concerted action an unlawful purpose and/or a lawful purpose by unlawful means, with resultant damage to the plaintiff from the defendants' acts committed in furtherance of the conspiracy.

## COUNT 9: RACKETEERING §97-43-5 Miss. Code Ann. (1972) / 18 U.S. CODE § 1962(b) and (c)

63. Plaintiff hereby incorporates and realleges all of the allegations in paragraphs 11 through 47 of this petition.

64. Defendants Broussard, Abel, Leary, Perret, Yount, Trout Point Lodge Limited of Nova Scotia and Nova Scotia Enterprises, LLC constitute persons within the meaning of 18 U.S. Code § 1961(3) who formed an "Enterprise" within the meaning of §97-43-3(c) Miss Code Ann. (1972) and 18 U.S. Code

§ 1961(4) that engaged in a pattern of racketeering activity in both interstate and foreign commerce within the meaning of 18 U.S. Code § 1962 and §97-43-3(d) Miss. Code Ann (1972).

65. From 2002 through 2010 defendants Broussard, Abel, Leary, Perret, Yount, Trout Point Lodge Limited of Nova Scotia and Nova Scotia Enterprises, LLC committed multiple acts of bribery and money laundering within the meaning of § 97-9-9 Miss. Code Ann. (1972), 18 U.S. Code § 201 and 18 U.S. Code § 1956.

66. Defendants Broussard, Abel, Leary, Perret, Yount, Trout Point Lodge Limited of Nova Scotia and Nova Scotia Enterprises, LLC filed numerous Strategic Lawsuits Against Public Participation in a foreign jurisdiction against three United States media companies in order to attempt concealment of their illegal activities. Additionally, after being informed that Plaintiff had actively cooperated with the Federal Bureau of Investigation, defendants Broussard, Abel, Leary, Perret, Yount, Trout Point Lodge Limited and Nova Scotia Enterprises perpetrated additional acts of retaliation against Plaintiff in direct violation of § 97-9-127 Miss. Code Ann. (1972) and 18 U.S. Code § 1512 and 18 U.S. Code § 1513.

67. Defendants Broussard, Abel, Leary, Perret, Yount, Trout Point Lodge Limited of Nova Scotia and Nova Scotia Enterprises, LLC, transmitted Canadian court orders obtained by fraudulent means to the United States in direct violation of § 97-19-83 Miss Code Ann. (1972) and 18 U.S. Code § 1341 and 18 U.S. Code § 1343.

68. Defendants Broussard, Abel, Leary, Perret, Yount, Trout Point Lodge Limited of Nova Scotia and Nova Scotia Enterprises, LLC obtained Canadian Judgments against Plaintiff as a result of their Criminal Enterprise and the cover-up related thereto in the amounts of $427,000 and $390,000, respectively, thereby valuing the fruits of their illegal activity and racketeering conspiracy.

### PRAYER FOR DAMAGES AND OTHER RELIEF

WHEREFORE, Plaintiff Douglas Handshoe, prays that after due proceedings are had, judgment be entered in his favor and against the Defendants Aaron F. Broussard, Daniel G. Abel,

Charles Leary, Vaughn Perret, Chris Yount, Trout Point Lodge Limited and Nova Scotia Enterprises L.L.C. in the amount of $817,000, to be trebled according to the law and for all other damages including punitive, exemplary and other damages related to the other torts herein alleged as is reasonable in the premises together with legal interest thereon, from judicial demand until finally paid, for all costs of these proceedings, and for any other and further legal and equitable relief as the court deems necessary and proper.

### INJUNCTIVE RELIEF

Plaintiff Douglas Handshoe, prays that after due proceedings are had, that Plaintiffs Leary, Perret, Abel and Trout Point Lodge be permanently enjoined from contacting, serving foreign court orders upon or harassing with threat of defamation, copyright or similar lawsuit any and all of Plaintiff's interactive internet service providers without first seeking leave of this honorable court. Further Plaintiff Douglas Handshoe prays this Court permanently enjoin Defendants Abel, Leary, Perret and Trout Point Lodge Limited from filing additional defamation, copyright or similar actions against Plaintiff, Plaintiff's Interactive Service Providers, or Plaintiff's lawyers without first seeking leave of this Court.

Respectfully submitted this 31st day of October, 2014,

_/s/_

Douglas Handshoe
214 Corinth Drive
Bay St Louis, MS 39520
Phone: (601) 928-5380
earning04@gmail.com