

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS HANDSHOE                                         PLAINTIFF

VS.                                      CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES,
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA                               DEFENDANTS

**CHARLES LEARY & VAUGHAN PERRET'S PRO SE
MEMORANDUM IN SUPPORT OF MOTION TO QUASH SERVICE OF PROCESS
AND NOTATION OF DEFAULT**

Defendants have an obligation to point out Plaintiff's disobedience of an Order of this Court, and are also being prejudiced by the dilatory tactics of Mr. Handshoe.

On June 19, 2018, this Court ordered that "service of process [on Trout Point Lodge, Limited] should be effected pursuant to the Hague Convention absent waiver or a provision of federal law to the contrary"; cf. Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Convention), [1969] 20 U.S.T. 361. The U.S. Court of Appeals for the Fifth Circuit has found that "insisting on service of process in accordance with the Hague Convention" is "well founded in fact and warranted by existing law" *Sheets v. Yamaha Motors Corp., USA*, 891 F.2d 533 (5th Cir. 1990). "Judicial" documents include those "issued in the course of a civil or commercial litigation...[such as]... a summons and complaint, writ, warrant, mandate, citation, show cause order, subpoena, or judgment... requiring formal service...." See Bruno A. Ristau, *International Judicial Assistance: Civil and Commercial* § 4-2-2 (3d ed. 2000), § 4-1-4(7). "By virtue of the Supremacy Clause, U. S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." If "the forum's internal law required transmittal of documents for service abroad" then "the Convention therefore provided the exclusive

means of valid service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2D 722 (1988).

Before making the relevant motions, Plaintiff had previously attempted to personally serve Trout Point Lodge's (TPL) recognized agent (cf. exhibit to Handshoe brief, ECF 139-1), through Nova Scotia counsel familiar with Nova Scotia law, making it clear that Mr. Handshoe is aware of the propriety of personal service on TPL's recognized agent. He has now decided he alone knows what is proper, and has publicly flaunted his disobedience of this Court's instructions.

At the same time as it granted a final chance to Plaintiff to serve TPL properly, this Court very specifically denied Plaintiff's motion to serve TPL using alternative means under Rule 4(f)(3). This Court's Order therefore governs completely how service was to be conducted by Mr. Handhshoe. The Order was perfectly in accord with the law in this Circuit and the Hague Convention. "Federal Rule of Civil Procedure 4(f)(1) provides that use of Hague Convention procedures is "mandatory if available at the place of service," *Gramercy Ins. Co. v. Kavanagh*, 3:10-cv-1254, 2011 U.S. Dist. Lexis 50003, at *2 (N.D. Tex. May 10, 2011) (citing 4B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1134, at 311 (3d ed. 2002 & Supp. 2011))." *RPOST HOLDINGS, INC. v. Kagan*, Civil Action No. 2: 11-cv-238-JRG (E.D. Tex. Jan. 23, 2012), noting use of Israel's Central Authority to effect service.

> Service must be "in accordance with the requirements of the Hague Convention"; "Articles 2 and 3 of the Convention require signatory countries to designate a central authority to receive requests for service, and require that a request for service of judicial documents and the documents to be served be forwarded to the central authority. Therefore, by sending a copy of the process directly to the Defendant, the Plaintiff did not comply with the Hague Convention, and the Plaintiff's attempted service is ineffective.

*Kim v. FRANK MOHN A/S*, 909 F. Supp. 474 (S.D. Tex. 1995).

Rule 4 of the Federal Rules of Civil Procedure effectively requires service on a foreign corporation that occurs outside any judicial district of the United States to be perfected in accordance with the Hague Convention, when the treaty applies and absent waiver or absent a provision of federal law to the contrary. W.J. Enterprises, Inc. of Jefferson v. Granwood Flooring, Ltd., No. CV 16-9492, 2016 WL

3746225, at *2 (E.D. La. July 13, 2016) (citing Fed. R. Civ. P. 4(f)(1)). The treaty clearly applies in this case, since the summons and complaint are to be served in Canada, like the United States, a signatory to the Convention. See also: *Chanel, Inc. v. Zhibing,* 2010 U.S. Dist. LEXIS 25709, at *3 (W.D. Tenn. Mar. 17, 2010) (granting constructive service on foreign defendant only "[b]ecause the [Hague] Convention does not apply. . . ").

> The Hague Convention was formulated to provide a simpler way to serve process abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). The primary means of service under the Hague Convention is through a receiving country's "Central Authority," which receives requests for service, arranges for service, and returns proofs of service. *Id.* at 698-99, 108 S.Ct. 2104. "[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies...." *Id.* at 699, 108 S.Ct. 2104; *see also George,* 223 F.3d at 449 n. 2.

*In re Potash Antitrust Litigation,* 667 F. Supp. 2d 907 (N.D. Ill. 2009).

There was also neither waiver nor another provision of federal law allowing alternative service on this Canadian defendant. Plaintiff did not observe Nova Scotia law and practice as required by Rule 4(f)(2)(A), as detailed below. In addition under Rule 4(h)(2), which is the personal service exception, Rule 4(f)(2)C)(1) can't be used to effect service on an entity like TPL. Thus only way personal service works is under 4(f)(2)(A), which Plaintiff failed to do. Defendant has not been properly served pursuant to this Court's Order, the Hague Convention, and/or Rule 4; Plaintiff has publicly disregarded this Court's instruction, and now most egregiously Plaintiff has asked the Clerk to note TPL in default.

This Court also ordered: "To the extent that Plaintiff seeks to have the Court discretionarily invoke Rule 4(f)(3) to allow for service 'by other means *not prohibited* by international agreement,' the Court declines to do so" (emphasis added). Those other means would include those found in Article 10 of the Hague Convention, which are means not "authorized by the Hague Convention" (Rule 4(f)(1)) but rather means the Convention does not "interfere" with (Hague Convention Art.10).[1]

---
[1] The Supreme Court emphasized the importance of "authorized" means of service in Its decision in *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504 (U.S. 2017), stating "Article 10(a) encompasses service by mail. To be clear, this does not mean that the Convention affirmatively *authorizes* service by mail. Article 10(a) simply provides that [...] the Convention does not "interfere with ... the freedom" to serve documents through postal channels." The court went on to find that alternate service methods (like mail) are "permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is *authorized under otherwise-applicable law.* See *Brockmeyer,* 383 F.3d, at 803-804" (emphasis added). In *Brockmeyer,* the U.S. Court of Appeals for the Ninth Circuit emphasized: "In other words, we must look outside the Hague Convention for affirmative authorization of the [alternate] service that is merely

> Rule 4(f)(1) requires service "by any internationally agreed means of service . . . such as those authorized by the Hague [Service] Convention." The forms of service mentioned in Article 10 [of the Convention] are not internationally agreed means of service authorized by the Hague Service Convention. See Brockmeyer v. May, 383 F.3d 798, 803-04 (9th Cir. 2004) [...]. Rather, the means of service authorized by the Hague Service Convention are: (1) use of the State of destination's Central Authority, as authorized by Articles 3 through 6; (2) use of a contracting State's own diplomatic or consular agents, as authorized by Article 8; and (3) use of "those authorities of another contracting State which are designated by the latter for this purpose," as authorized by Article 9.

*MICHNOVEZ v. BLAIR, LLC*, Civil No. 10-cv-110-LM (D.N.H. Oct. 31, 2011).

The Hague Convention affirmatively authorizes service of process through the Central Authority of a receiving state. Rule 4(f)(1), by incorporating the Convention, in turn affirmatively authorizes use of a Central Authority. However, Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements. "A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) at fn 4. In sum, this Court ordered Plaintiff to accomplish service in accord with methods approved by the Hague Convention, and specifically *denied* Plaintiff's motion for using any alternative method of service.

It is undisputed that Plaintiff did not use means affirmatively authorized by Rule 4(f)(1) and the Hague Convention. Plaintiff therefore disregarded this Court's Order. In a rush to default TPL in order to gain an upper hand in a related litigation, Plaintiff disobeyed this Court, engaged in alternative service, and did not properly serve defendant, in yet now seeks to default defendant.[2]

In conclusion, there is no need for this Court to go further. Service was not accomplished in accordance with this Court's Order, Rule 4(f) and (h), or the Hague Convention, and both the service and the notation of default on which it is based should be quashed, allowing this matter to proceed.

**Alternate Service Also Defective**

---

not forbidden by Article 10(a). Any affirmative authorization of service by [alternate means], and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed." In this case, not only was alternate service not authorized by Rule 4(f), it was specifically denied by this Court in Its Order to Plaintiff.

2  Plaintiff is facing execution of a CAN $180,000 money judgment for copyright infringement, and underwent a judgment debtor examination on August 14, 2017. Handshoe earlier improperly removed that action; cf. 1:16-cv-00007-LG-RHW Perret et al v. Handshoe.

In the alternative, should the Court wish to entertain if alternative service denied to Plaintiff by this Court was effective, Plaintiff has also failed to properly effect service by such means already disallowed by the Court.

Plaintiff had to obtain prior court approval for the alternate method of serving process, and in this case not only did he not do so, he also disobeyed the Court's explicit order *not* to effect service via alternative means, i.e. by dropping two unmarked, sealed envelopes at the reception desk of Trout Point Lodge, with no indication of what the envelopes contained, who was serving it, or for what reason. See sworn declaration of Sophia Gruber, the woman mentioned in Plaintiff's service affidavit (Exhibit "A").

Mr. Handshoe also did not accomplish service of the summons in compliance with other sections of Rule 4.

Plaintiff did not follow Rule 4(f)(2) in effecting service. There is no record of a letter rogatory. Plaintiff did not effect service in accord with Rule 4(f)(2)(A), that is "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Without court instruction otherwise, Nova Scotia Civil Procedure Rule 31.03(1)(d) *requires* service of an originating notice (summons) to be served by "by handing it to the recognized agent" of the company; that is, by personal service on the Recognized Agent. In Nova Scotia, the requirement for personal service (or service in such other manner as directed by the Court) on a company is not a mere technicality: see North Hills Nursing Home Ltd. v. Roscoe Construction Ltd., [1994] N.S.J. No. 128 (S.C.) at para. 11 and Maloney v. W. & W. Windows International [1989] N.S.J. No. 541 (Co. Ct.).

It is undisputed that Trout Point Lodge, Limited, has a Recognized Agent, that his address is known, and that the Recognized Agent of TPL was *not* personally served with the summons. Rather a foreign worker on a temporary apprenticeship visa was served with two sealed unmarked envelopes.

> [T]he common understanding of Rule 4(f)(2)(A) is that it is limited to personal service. [...] [C]ourts have applied Rule 4(f)(2)(A) to approve personal service carried out <u>in accordance with foreign law</u>. (emphasis added)

*Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004), cited by *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (U.S. 2017).

It is also undisputed that the plaintiff in this case did not comply with the requirements of Rule 4(f)(2)(C)(ii), which defendants in any event deny would be proper service, as notice was not sent by the clerk of the district court, nor by a form of mail requiring a signed receipt. Rule 4(f)(2)(C)(ii) therefore does not provide a basis for service in this case. Rule 4(f)(2) in general therefore does not provide a basis for service in this case. In addition, "we cannot read 4(f)(3) as permitting that which has already been specifically prohibited under 4(f)(2)." *Prewitt Enterprises v. ORGANIZATION OF PETROLEUM*, 353 F.3d 916 (11th Cir. 2003).

Speaking to alternative service under the Hague Convention, the Court in *CGC HOLDING COMPANY, LLC v. Hutchens*, Civil Action No. 11-cv-01012-WYD-KLM (D. Colo. June 28, 2011) found: "The Convention allows for service of process on a defendant located in Canada "in compliance with Canadian procedures, so long as Canada does not specifically object to the use of those procedures." *The Haskell Co. v. Radiant Energy Corp.*, No. 05-CV-04403 (DLI)(MDG), 2007 WL 2746903, at *6 (E.D.N.Y. Sept. 19, 2007) (unreported decision)." See also *Walton v. BILINSKI*, No. 2:15 CV 36 CDP (E.D. Mo. Dec. 30, 2015) (finding it necessary in a case involving a Canadian defendant to look to "internal service rules of the destination State" to determine if alternative service methods are acceptable under the Convention, and referring to the Alberta Rules of Court ); *Dimensional Communications, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653 (D.N.Y. 2002) ("Courts have also looked to the internal service rules of the destination State to determine whether that State would object to the particular method of service utilized under Article 10", treating Canadian law); *In re Mak Petroleum, Inc.*, 424 B.R. 912 (Bankr. M.D. Fla. 2010) (discussing "Canada's preference for the procedures established by the Hague Convention" and finding: ""Article 19 is appropriately and sensibly read as allowing only those methods of service explicitly sanctioned by the contracting state." *ePlus Technology, Inc. v. Aboud,* 155 F.Supp.2d at 700. Neither Rule 16 nor Rule 17 of the Ontario Rules of Civil Procedure expressly permit foreign plaintiffs to serve Canadian defendants by" alternate

means). See also *Hunt's Pier Assoc. v. Conklin,* 156 B.R. 464, 470 (Bankr.E.D.Pa. 1993):

> To determine whether the destination country "objects" to a particular form of service, the courts have looked to the service laws of that country to determine whether the method of service utilized would be valid in that country. *See Gallagher, supra,* 781 F.Supp. at 1081-82; and *Chowaniec, supra,* slip op. at *3. Those cases hold that, only if service is valid under the service rules of the destination country can it be found that the destination country does not "object" to the form of service utilized. Practically, it is appropriate to observe that, if the plaintiff's method of service does not comply with the requirements of the destination country, it is unlikely that the destination country would enforce any judgment obtained which is dependent upon form of service. *See Schlunk, supra,* 486 U.S. at 706, 108 S.Ct. at 2111-12; and *Chowaniec, supra,* slip op. at *2.
>
> Accordingly, this court must look to the rules of service of Ontario, Canada, to determine whether the service made upon the Defendant was proper.

Plaintiff's repeated, knowingly faulty service attempts, his filing of a defective and false (service was not effected on June 22, 2017) affidavit of service, and now his petition to default TPL are all dilatory tactics and a serious waste of judicial resources. Every minute of extra delay in this case is prejudicial to all defendants.

**Default is Not Yet Allowed Under the Hague Convention and For This Additional Reason This Process is Dilatory and a Waste of Judicial Resources**

Article 15 of the Hague Convention, provides, in pertinent part: "Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established" that service was effected in a manner approved of by the Convention. Cf. *E360 INSIGHT v. The Spamhaus Project,* 500 F.3d 594 (7th Cir. 2007), finding that Art. 15 "appl[ies] to a party who has [not] appeared," and that a court has "an affirmative obligation, under these circumstances, to raise service of process on behalf of defendant prior to entering the default." In addition, in this Circuit, it is Plaintiff's burden to establish proper service under this Court's Order and the Convention. *NATIONAL OILWELL VARCO, LP v. MUD KING PRODUCTS, INC.,* Civil Action No. 4: 12-cv-03120 (S.D. Tex. Mar. 28, 2014). Indeed, Plaintiff has not fulfilled any of the requirements of paragraph one of Art. 15,

including that no certificate of service from the Canadian Central Authority has been filed with this Court.

> Paragraph Two applies when "no certificate of service or delivery has been received." The "certificate" in question is one prepared and delivered by the "central authority" for process of service each signatory is required to establish. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). The central authority receives requests for service, facilitates service in accordance with the state's internal law, and is then required to provide a certificate of service to the requester, providing information on how service was, or was not, accomplished. *Id.* at 699; 20 U.S.T. 361, Arts. 5 and 6.

SUBOTICH v. TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, No. 15-CV-219-JPS-JPS (E.D. Wis. July 7, 2017).

In addition, Plaintiff has failed to fulfill *any* element his burden of proof under Art. 15 as well.

> While Plaintiff has addressed the latter half of this Article [15 of the Hague Convention]in its Motion, *see* Motion, ¶ 15, it fails to address the first half of the Article or offer evidence sufficient to enable the Court to determine that its provisions were met. Specifically, Plaintiff has not offered to the Court legal authority explaining the methods by which a party can serve documents under "the internal law of the state addressed for the service," [..] nor has it offered proof that it served or attempted to serve [defendant] in this manner. Moreover, Plaintiff has not offered evidence that "the document was actually delivered to the defendant or his residence" via a method permitted by the Hague Convention. Finally, while Plaintiff states that it has not received a certificate of service from the [...] Central Authority, it fails to show through competent evidence that it has used "every reasonable effort . . . to obtain it." The Court declines to grant the Motion on this record.

NATIONAL OILWELL VARCO, LP v. MUD KING PRODUCTS, INC., Civil Action No. 4: 12-cv-03120 (S.D. Tex. Mar. 28, 2014).

**Plaintiff Has A Habit of Disregarding Court Rules, Instructions and Orders**

In this instance, Plaintiff has ignored the direct Order of this Court not to serve TPL via alternative means. Earlier in this case, this Court had to *sua sponte* dismiss Plaintiff's Second Amended Complaint (ECF 22) because he did not have permission or consent to do so and finding Plaintiff's "failure to follow local court rules" (ECF 25). In a related case, Mr. Handshoe had at that time just been admonished by this court for similar practices; see Handshoe v. Abel, No. 1;14-cv-159-KS-MTP, 2016 WL 110519, slip op. at *2 (S.D. Miss. Jan. 8, 2016) (striking Plaintiff's amendments to add new claims and parties and warning "that the proper avenue for adding such claims and parties is through a motion

for the Court's leave or with opposing party's written consent pursuant to Federal Rule of Civil Procedure 15(a)(2).") In that same case, Mr. Handshoe also attempted to manipulate the amount in controversy requirement by submitting a sworn affidavit that he later contradicted in an attempt to vest jurisdiction where none existed.

> Plaintiff submitted a signed, sworn Affidavit [75-1] representing that his damages in this action amounted to $75,000. In doing so, Plaintiff represented by implication that this amount was calculated based on the total amount of damages which he incurred and to which he was entitled under law. Plaintiff's argument now amounts to an admission that he previously made false representations concerning his damages to the Court and that, in doing so, willingly forewent an additional potential award of about $40,000 from Abel in default judgment. The Court will not accept this argument.

*Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Jan. 8, 2016).

In another related case, Mr. Handshoe ignored the rules regarding the timing of filing a motion for attorney's fees. This court found: "Defendant Handshoe and his counsel are admonished [...] to adhere to the Federal Rules of Civil Procedure in the future, so that the parties and the Court will not expend resources on avoidable disputes such as this one." *TROUT POINT LODGE LIMITED v. Handshoe*, Cause No. 1: 12CV90-LG-JMR (S.D. Miss. Dec. 11, 2013).

**Plaintiff Has A Habit of Suing and Seeking Default**

Since 2013 Plaintiff has sued in state or federal court Michael Coyle, a Nova Scotia legal commentator; "Randall Cajun," an anonymous blogger; former Louisiana politician Aaron Broussard; civil process server Chris Yount; attorney Daniel Abel (multiple times); Loyola University Law School; the head of Loyola's legal clinic; a Loyola law student; the National Geographic Society; the parent company of the Toronto Star newspaper (twice); the Halifax Chronicle-Herald newspaper; Nova Scotia Enterprises, a Louisiana LLC; Progress Media, a Nova Scotia magazine publisher; Marilyn Smulders, a freelance journalist; as well as the instant defendants and Trout Point Lodge.

Most of these suits are in reaction to civil suits filed by instant defendants and Mr. Abel against Plaintiff related to blog publications making untrue and unsubstantiated criminal allegations about his targets; these are bald faced attempts to coerce an end to litigation by resort to new & independent

vexatious litigation, creating the kind of multiplicity of litigation condemned by the Supreme Court; *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 109, 9 L.Ed.2d 31 (1962).

In many of those cases, Plaintiff has also demonstrated a pronounced tendency to seek default. He has done so in the instant case against Smulders, Progress Media, and TPL. He has defaulted Michael Coyle in state court. He has defaulted (or attempted to default) Aaron Broussard in this district court. He has defaulted Abel and Yount, in which case Judge Starrett ruled against the default judgments.

Mr. Handshoe has over the past 4 years increasingly resorted to the courts, instead of his blog Slabbed, to exact a pound of flesh from his litigation opponents, including making unsubstantiated *per se* defamatory statements about them in pleadings, and including publishing those pleadings to third parties to inflict further damage through public humiliation. For example, Plaintiff published his original Complaint in this proceeding by sending it out along with a press release, and it was indeed published as was reasonably foreseeable on the Mississippi web site Jackson Jambalaya among other places; see http://kingfish1935.blogspot.com.es/2015/11/coast-blogger-beats-defamation-lawsuit.html.[3]

Such use of this court proceeding and pleadings filed therein to defame should not be condoned by this Court and indeed should be condemned.

> Mississippi would not extend protection once the statements are republished to the general public. One of the earliest cases adopting the litigation privilege in this state is *Lewis v. Black,* where the court noted that "[i]n all judicial proceedings . . . the parties are permitted to speak freely; and if they should ever make use of harsh expressions, they will not be liable to an action although the same words spoken on another occasion would be actionable." 27 Miss. 425 (1854) (citing *Kean v. M'Laughlin,* 2 Serg. & Rawle 469 (Penn. 1816)). Later, in *Netterville v. Lear Siegler, Inc.,* the Mississippi Supreme Court addressed the litigation privilege in the context of attorney disciplinary proceedings. 397 So. 2d 1109 (Miss. 1981). Although the context was different and subject to a state statute, the court expressly stated that its ruling was based in part on the common law, and it provided the following synopsis:
>
>> Any person or legal entity filing such complaint shall be immune from any civil suit predicated thereon, so long as the statements are made within the course and framework of the disciplinary process and are reasonably relevant to the complaint.

---

[3] This court may properly take judicial notice of this internet publication; cf. *Trout Point Lodge, Ltd. v. Handshoe,* 729 F.3d 481 (5th Cir. 2013) at fn. 12.

*Id.* at 1113 (citing *Ramstead v. Morgan,* 219 Or. 383, 347 P.2d 594, 77 A.L.R.2d 481 (1959)). The Court then concluded that the same statements lost their privilege if "circulated to persons who were not entitled to receive it." *Id.*

As stated, the context in *Netterville* is different, but the case is consistent with cases from many other jurisdictions holding that a statement made in the course of a judicial proceeding may lose absolute privilege when republished. *See Helena Chem. Co. v. Uribe,* 255 P.3d 367, 376 (N.M. 2001) (reversing finding of absolute privilege for statements made to news reporters despite argument that the statements related to the subject matter of the judicial proceeding); *Bochetto v. Gibson,* 860 A.2d 67, 72 (Pa. 2004) (reversing finding of judicial privilege in transmittal of complaint to a reporter) (citing *Pawlowski v. Smorto,* 588 A.2d 36, 41 n.3 (Pa. 1991) ("[E]ven an absolute privilege may be lost through overpublication . . . . In the case of the judicial privilege, overpublication may be found where a statement initially privileged because made in the regular course of judicial proceedings is later republished to another audience outside of the proceedings."); *Barto v. Felix,* 378 A.2d 927, 930 (Pa. 1977) (although allegations in attorney's brief were protected by judicial privilege, attorney's remarks concerning contents of brief during press conference were not likewise protected by privilege)).

*VIRGINIA COLLEGE, LLC v. Martin,* Civil Action No. 3: 11CV682 DPJ-FKB (S.D. Miss. July 12, 2012).

**SPEECH Act Does Not Allow Service Outside of a Judicial District of the United States**

As previously argued before this Court, the SPEECH Act of 2010 specifically prohibits service on a defendant outside of a judicial district of the United States via its "nationwide service of process provision" under the declaratory judgment cause of action. The nationwide service of process provision is the same as in the federal RICO statute, and other similar statutes. For this reason, as well, Plaintiff's service is defective.

> Nor does there exist a valid method of service upon the Belgians under federal statutes or rules. Although RICO authorizes nationwide service of process, *see* 18 U.S.C. § 1965, it does not, by its very language, authorize service in a foreign country.
>
> Because Rule 4(i) "speaks only to the manner of service and not to whether a particular defendant is amenable to suit — authority for extra-territorial service must be found in a relevant state or federal statute." 4 Wright & Miller, *Federal Practice and Procedure* § 1134, at 559 (1969). The Advisory Committee Notes to Rule 4(i) echo the commentators: "the authority for effecting foreign service must be found in a statute of the United States or a statute or rule of the State in which the district court is held providing in terms or upon proper interpretation for service abroad upon persons not inhabitants of or found within the State."
>
> ...
>
> Thus, in the absence of statutory authority for effecting service abroad upon the Belgian individual counterclaim defendants, such service cannot be made.

*Soltex Polymer Corp. v. Fortex Industries, Inc.,* 590 F.Supp. 1453, 1458 (E.D.N.Y.1984)

**Subject Matter Jurisdiction Has Yet to be Determined**

Lastly, Defendants object to Plaintiff's motion for default as the threshold matter of subject-matter jurisdiction has yet to be determined. Existing defendants have challenged Plaintiff's standing. This Court cannot proceed to determine a matter such as default judgment.

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (internal citations removed)

Also: Russell v. Basila Mfg. Co., 246 F.2d 432 (5th Cir. 1957) ("Clearly this was the act of a Court having no jurisdiction." When jurisdictional obstacle "was eliminated only by virtue of the adjudication by the Court presuming to have jurisdiction, i. e., power to act, not then existing," that cure is "ineffective to remove the obstacle.")

Therefore, for all the above reasons, *pro se* Defendants Perret & Leary urge this Court to quash the purported service of Trout Point Lodge and the motion for default.

RESPECTULLY SUBMITTED THIS 15th DAY OF SEPTEMBER, 2017

Charles L. Leary        Vaughan J Perret
Defendants appearing pro se

140 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9
(902) 761-2080
foodvacation@gmail.com