IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



DOUGLAS HANDSHOE                                                                           PLAINTIFF

VS.                                                            CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, ASHOKA, XYZ
FOUNDATION & JOHN DOES 1-50                                                         DEFENDANTS

**DEFENDANT LEARY'S BRIEF ON HIS MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

In Its decision on Defendant Leary's motion to dismiss, this Court found it could not dismiss Count 5 of the Third Amended Complaint due to the fact that "[t]he parties have not cited any controlling authority on whether this action by YouTube constitutes a takedown under § 512(f)" and further "[t]he parties have not sufficiently briefed this issue" of whether Count 5 states a valid claim (ECF 157).

Plaintiff Handshoe filed his Third Amended Complaint in January, 2017. Plaintiff made multiple claims of misrepresentation under 17 U.S.C. section 512(f) as well as seeking equitable relief. Leary was named in his individual capacity and as "d/b/a" Trout Point Lodge. Handshoe also sought $180,000 in compensatory damages. Defendant Leary filed a motion to dismiss. On September 19, 2017, this Court dismissed all claims against Leary except for Count 5 under section 512(f).

Pleadings have now closed with the filing of Leary's answer, defence, and counterclaims.

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and

1

any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir.1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509-10 (1990)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes,* 278 F.3d at 420 (quoting *St. Paul Mercury Ins. Co.,* 224 F.3d at 440 n. 8).
*Great Plains Trust v. Morgan Stanley Dean Witter,* 313 F.3d 305 (5th Cir. 2002).

In the alternative, Leary moves for summary judgment and submits his declaration regarding the copyright complaint submitted to YouTube. FED. R. CIV. P. 56(a). Leary in good faith believes that this motion will save judicial resources as well as enhance the overall efficiency of this proceeding.

**The Law on 17 U.S.C. 512(f)**

A material misrepresentation is one that affected the service provider's response to a DMCA notification. *Capitol Records, Inc. v. MP3tunes, LLC,* 611 F.Supp.2d 342, 346 (S.D.N.Y.2009); *Online Policy Grp. v. Diebold, Inc.,* 337 F.Supp.2d 1195, 1203 (N.D.Cal.2004); *Ground Zero Museum Workshop v. Wilson,* 813 F. Supp. 2d 678 (D. Md. 2011). As long as a defendant acted in good faith belief that infringement was occurring, there is no cause of action under § 512(f). *Rossi v. Motion Picture Ass'n of America,* 391 F.3d 1000 (9th Cir.2004); *Dudnikov v. MGA Entertainment, Inc.,* 410 F. Supp. 2d 1010 (D. Colo. 2005). On summary judgment, when defendant asserts a good faith belief that the Plaintiffs' publication or use was an infringement, Plaintiff has the burden of demonstrating material facts showing otherwise. Dudnikov, *supra.* A plaintiff must "prove that the service provider relied on the misrepresentation or that it incurred [...] damages as a result of the notice." Ground Zero, *supra.*

Whether or not Defendant possessed valid copyright in the work that was the subject of the DMCA notice is material to the existence of a valid cause of action.

> To succeed on its DMCA claim, plaintiff must first establish that defendant falsely misrepresented a claim of copyright infringement. See 17 U.S.C. § 512(f). To establish copyright infringement, an alleged owner must show (1) ownership of the copyright, and (2) copying of the protected expression by the defendant. Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999).

*DESIGN FURNISHINGS, INC. v. ZEN PATH, LLC,* No. CIV. 2: 10-2765 WBS GGH (E.D. Cal. Dec.

2

23, 2010).

Subsection (f) "sets out a private cause of action for anyone who is injured by a material representation that content or activity is infringing *when it is not.*" *Disney Enters., Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286, at *46 (S.D. Fla. Sept. 20, 2013) (emphasis added). Also: *Rossi v. Motion Picture Ass'n of America*, 391 F.3d 1000 (9th Cir. 2004) (When Plaintiff's website contains "explicit" representations of the use of copyrighted works without permission, "the district court properly found that no issue of material fact existed as to [defendant]'s "good faith belief" that [plaintiff]'s website was infringing upon its copyrighted materials."); *Online Policy Grp. v. Diebold, Inc.*, 337 F.Supp.2d 1195, 1203 (N.D.Cal.2004) (court looked to the fact that Defendant's "email archive is not protected by copyright law" in determining misrepresentation under 512(f)); *Johnson v. NEW DESTINY CHRISTIAN CENTER CHURCH, INC.*, No. 6: 17-cv-710-Orl-37GJK (M.D. Fla. Aug. 25, 2017) (In finding plaintiff's "allegations suffice to support a § 512(f) claim" court considered that plaintiff pleaded defendant "did not hold a valid copyright registration or certificate to the content contained in [plaintiff's] videos at the time of the misrepresentations'"); *Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Jan. 8, 2016) (court considered existence of copyright and the fact that there is no "dispute that Plaintiff posted the image without permission of the copyright owner or his agent").

Following the U.S. Court of Appeals for the Ninth Circuit in *Lenz v. Universal Music Corp.*, 801 F.3d 1126 (9th Cir. 2015), some courts have found that if Plaintiff did not own the copyright but was using the work that was subject of the DMCA notice, "the only avenue through which Plaintiff could have used the image was through the doctrine of fair use. *See* 17 U.S.C. §§ 106-07." *Abel, supra.* The U.S. Court of Appeals for the Fifth Circuit has not spoken on this issue. However, in such a case, this district court has found a plaintiff must "allege that [defendant] did not in good faith consider any fair use defense [plaintiff] may have had before issuing the DMCA takedown notice." *Abel, supra.*

3

A 17 U.S.C. 512(f) plaintiff cannot claim damages based on First Amendment Rights.

Nestled in Johnson's misrepresentation and abuse of process claims are allegations that Defendants' actions deprived her of her First Amendment rights to free speech. (Doc. 1, ¶¶ 51, 62.) The First Amendment "prohibits *Congress and the States* from making any law abridging the freedom of speech." *United Bhd. of Carpenters & Joiners of Am. Local 610 v. Scott*, 463 U.S. 825, 831 (1983). As such, the First Amendment protects individuals against *government action*, not against wrongs by individuals or private entities." *Johnson*, 2017 WL 1093446, at *4.
New Destiny, *supra*. Also: *Johnson v. NEW DESTINY CHRISTIAN CENTER CHURCH, INC.*, No. 6:15-cv-1698-Orl-37GJK (M.D. Fla. Mar. 23, 2017).

There exists a cause of action under 512(f) only if the *service provider removed* the allegedly infringing material after relying on the defendant's DMCA notice and the *service provider's removal* proximately caused plaintiff's damages. "[T]he statute is unambiguous in entitling an alleged infringer to damages caused "as the result of the service provider ... removing or disabling access to the material...." 17 U.S.C. § 512(c)." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011). This is consistent with the purpose of the DMCA, to provide a safe harbor for service providers (not alleged infringers). *ALS Scan v. RemarQ Communities*, 239 F.3d 619 (4th Cir. 2001). " Once properly notified, *a service provider* must "respond[ ] expeditiously to remove, or disable access to, the material that is claimed to be infringing." *Recording Industry Ass'n of America v. Verizon Internet Servs.*, 351 F.3d 1229, 1234 (D.C.Cir.2003). If a *service provider* fails to take down the potentially infringing material, it exposes itself to copyright liability." *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) (emphasis added).

Non *de minimis* use of a copyrighted creative work within another work, like a YouTube video or a television program is actionable for infringement *Woods v. Universal City Studios, Inc., 920 F.Supp. 62 (S.D.N.Y.1996)* (film infringed architectural drawing, injunction granted*); Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70 (2d Cir.1997) (finding allegedly infringing use non *de minimis* when the artwork was "clearly visible" and "recognizable as a painting ... with sufficient

4

observable detail for the `average lay observer' ... to discern African-Americans in Ringgold's colorful, virtually two-dimensional style," *Ringgold,* 126 F.3d at 77). "Whether an infringement is *de minimis* is determined by the amount taken without authorization from the infringed work, and not by the characteristics of the infringing work." Woods, *supra.*

In order for there to be fair use, a parody of a copyrighted work must be transformative. That is, the use of the copyrighted work must be "commenting on the original or criticizing it" at least "to some degree." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2D 500 (1994). "[T]he copied work must be, at least in part, an object of the parody, otherwise there would be no need to conjure up the original work. *See MCA, Inc. v. Wilson,* 677 F.2d at 185; 3 Nimmer, § 13.05[C] n. 60.9." *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir.1992). The pertinent issue is

> whether the new work merely "supersede[s] the objects" of the original creation, *Folsom* v. *Marsh, supra,* at 348; accord, *Harper & Row, supra,* at 562 ("supplanting" the original), or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2D 500 (1994). Also: *Veeck v. Southern Bldg. Code Congress Intern.,* 293 F.3d 791 (5th Cir. 2002).

"[E]very commercial use . . . is presumptively . . . unfair," *Sony Corp. of America* v. *Universal City Studios, Inc.,* 464 U. S. 417, 451 (1984).

Foreign works are protected under United States copyright laws. 17 U.S.C. § 411; *Berne Convention for the Protection of Literary and Artistic Works; Berne Convention Implementation Act* of 1988.

Finally, to succeed a 512(f) claim plaintiff must "adequately allege the amount of damages he has suffered as a direct result of his web host relying on any misrepresentation" *Handshoe v. Abel,* Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Dec. 16, 2015).

5

**The Third Amended Complaint and Count 5**

The Third Amended Complaint refers to the February 14, 2014, decision of Nova Scotia Supreme Court, which was incorporated by reference in the complaint and attached as Exhibit "3" to the original Complaint. That judgment found Handshoe liable for copyright infringement, and particularly for infringement of a "photo [that] depicts Mr. Leary and Mr. Perret standing in front of Trout Point Lodge with their dog." The Nova Scotia court also found, regarding that photograph: "I have in evidence a Certificate of Registration Copyright dated July 8, 2013 in the name of Trout Point Lodge Ltd." (See also Exhibit to Leary declaration, public record, copyright registration from Canada Intellectual Property Office). The Third Amended Complaint also charges that Leary sent a copy of a Canadian court injunction to his service providers, including YouTube, which forbade Handshoe from publishing about Leary or Trout Point Lodge.

The Third Amended Complaint admits that the YouTube video Handshoe published "contain[ed] the media identified in the notice." Cf. *Woods v. Universal City Studios, Inc., 920 F.Supp. 62 (S.D.N.Y.1996); Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70 (2d Cir.1997). The Complaint misrepresents that U.S. courts had found the injunction unenforceable, but this is contradicted by the decision of the U.S. Court of Appeals for the Fifth Circuit quoted in the Third Amended Complaint, which stated that Leary and his fellow plaintiffs never sought to enforce the injunction in the United States. The issue of the injunction was never before U.S. courts. Trout Point Lodge, Ltd. v. Handshoe, 729 F.3d 481 (5th Cir. 2013).

Count 5 incorporates by reference the February 15, 2014, submission of a fillable web page form to YouTube by Leary, and alleges that the DMCA notice sent by Leary on February 15, 2014, said the YouTube video infringed on "copyrights." In fact the notice only alleged infringement of copyright in one work, that identified by the Nova Scotia court above: Leary & Perret with a dog.

That submission to YouTube did not identify the entire video as infringing, but rather 5 seconds

6

where the video used the entirety of the copyrighted photograph of Perret & Leary with their dog (see ECF 96, 11). In addition, the fillable web form used by Leary from Canada did not say it was a DMCA notice or refer in any way to 17 U.S.C. 512. It said it was to be used for informing YouTube about instances of copyright infringement and specifically asked the complainant to identify their jurisdiction, in this case, Canada. The web form allowed a complainant to select in what county the copyright existed.[1]

Count 5 then alleges that the use of the copyrighted photograph was fair use under the "parody" exception to infringement. Count 5 alleges that Leary had definite subjective knowledge that the use of the copyrighted photograph in the video was non-infringing because of fair use, or that exercising reasonable care and good faith, he should have known this to be the case. Count 5 says the alleged misrepresentation was "material" but does not state how. Finally, Count 5 charges that "[t]he misrepresentations contained in the Takedown Notice and service of a Canadian Injunction the United States Courts had previously found unenforceable were material to YouTube's decision to require *Plaintiff disable access* to the Slabbed New Media, LLC video that were [sic] subject of the Takedown Notice causing Plaintiff to incur damages" (emphasis added). Handshoe refers to "financial and personal expenses associated with responding to the claim" as well as "harm" to his "free speech rights under the First Amendment" as his damages. Handshoe has subsequently said to Leary that he continues to seek $180,000 in "compensatory damages." (See Exhibit "A", email from Handshoe, October 6, 2017).

**Application of the Law to Count 5**

Leary respectfully submits that Count 5 is due to be dismissed for the following reasons:

1. Leary was informing YouTube of infringement using a fillable web form provided by YouTube

---

[1] As documents incorporated by reference in the Third Amended Complaint, this Court may take those documents into consideration under Rule 12(c) without converting this to a summary judgment motion. Taking notice of these types of documents is already the law of this case. The web forms can be found as exhibits to the Leary declaration filed with this brief, and the email from YouTube has already been referenced by this Court at ECF 157 fn 9.

7

that was not identified as a DMCA notice, but rather as a form to "submit a copyright complaint" (Exhibit to Leary declaration: YouTube copyright complaint pages). YouTube is wholly owned by Google (Lenz, 9th Circuit, *supra*), and Google Canada is a Nova Scotia unlimited liability company (Exhibit "B": Nova Scotia Joint Stocks Registry for Google Canada). Leary clearly identified that he was complaining about infringement of a Canadian copyright (ECF 96, 11), and he did so from Canada one day after a Canadian court had found (a) Trout Point Lodge owned the copyright in the photograph in question and (b) that Handshoe was infringing copyright in it on a commercial website. Leary acted solely as an officer and director of Trout Point Lodge, Limited. His complaint form was received by YouTube in California; *Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008) (YouTube notices received in California). There are two reasons these facts are significant: First, copyright law is territorial in nature (*Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 118 S. Ct. 1125, 140 L. Ed. 2D 254 (1998), see concurring opinion by Justice Ginsburg). Handshoe's Third Amended Complaint fails to state facts showing how Leary's Canadian actions implicated the DMCA, and then proximately caused damage to Handshoe in Mississippi. To suggest otherwise could lead to an absurd result obviously not intended by Congress: that any non-U.S. resident anywhere in the world who complains to YouTube about copyright infringement he or she sees in his or her country regarding a work copyrighted in that foreign country would be subject to the remedies of 17 U.S.C. 512(f).

> [T]he DMCA provides explicitly that internet users, such as Sapient who wish to rebut a takedown notice must consent to the jurisdiction of a federal district court (see 17 USC 512(g)(3) (D)), but the statute does not require copyright owners who send takedown notices (such as defendants here) to consent to personal jurisdiction (see 17 USC 512(c)(3)). That difference must be viewed as intentional. See *The Adeline,* 9 Cranch 244, 13 U.S. 244, 253, 3 L.Ed. 719 (1815). If that result seems asymmetrical and unfair, then the problem should be resolved by Congress, not this court.

*Doe v. Geller,* 533 F.Supp.2d 996, 1010 (N.D.Cal. 2008)

Second, 17 U.S.C. § 512(f) refers specifically to "[a]ny person who knowingly materially misrepresents *under this section*" (emphasis added). Leary was not acting "under this section" but rather under Canadian law about a Canadian work from within Canada. Therefore, Handshoe fails to state a claim under the DMCA over which this Honorable Court has jurisdiction. Whether territoriality is an element of a claim or whether it applies more basically to subject-matter jurisdiction is irrelevant, because in either case, the Third Amended Complaint fails to state a claim on which relief under 17 USC § 512 can be based.

2. The Third Amended Complaint fails to state a claim based on its "fair use" allegations. First, Handshoe admits in the Third Amended Complaint that the video he published for Slabbed New Media used the work; and there is absolutely no indication there was permission of the copyright owner, Trout Point Lodge, to use the copyrighted foreign work, which is protected under the United States *Copyright Act* without registration in the United States, 17 U.S.C. § 411; *THE FOOTBALL ASS'N PREMIER LEAGUE v. YouTube, Inc.*, 633 F. Supp. 2d 159 (S.D.N.Y. 2009) ("Section 411(a) of the Act, which requires preregistration or registration before any copyright infringement suit may be brought, is limited to U.S. works, stating "no civil action for infringement of the copyright in any *United States work* shall be instituted until preregistration or registration of the copyright claim has been made", 17 U.S.C. § 411(a) (emphasis added), and thus allows suits to be brought upon foreign works without registration of them . . ."). Second, there is no allegation that the YouTube video was a parody of the copyrighted photograph of Perret and Leary with their dog, which the *Toronto Star* published with permission on its web site. There is no allegation the video was "transformative" of that work in any way; and in fact it was not. The only allegation is that the video itself—as a whole-- was a parody. In addition, the use was commercial, which makes fair use highly

9

unlikely.[2] Finally, Count 5 does not "allege that [Leary] did not in good faith consider any fair use defense [Handshoe] may have had before issuing the DMCA takedown notice." Abel, *supra*. "If [...] a copyright holder forms a subjective *good faith* belief the allegedly infringing material does not constitute fair use, we are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion." *Lenz v. Universal Music Corp.*, 801 F.3d 1126 (9th Cir. 2015). Thus, there was no fair use, only infringing use, and the allegations of the Third Amended Complaint fails to adequately plead the subjective lack of good faith of Leary regarding fair use.

3. There is no compelling law in this circuit that Leary had to consider "fair use" at all, as alleged in the Third Amended Complaint when sending a notice to YouTube. In this Circuit, fair use is an affirmative defense to copyright infringement, not a positive right. *Sugar Busters LLC v. Brennan*, 177 F.3d 258 (5th Cir. 1999); *GREAT AMERICAN RESTAURANT COMPANY v. DOMINO'S PIZZA LLC*, No. 08-40654 (5th Cir. Sept. 30, 2009); also Campbell v. Acuff-Rose, *supra*.[3] Many district courts have found that if copyright infringement was actually occurring, then there is no 512(f) claim for issuing an infringement notice. Fair use did not enter into such decisions. Any reliance on fair use in the Third Amended Complaint may be disregarded. Even if fair use were to be considered, see the arguments in paragraph 2 above.

---

2  Slabbed New Media is a commercial enterprise and Handshoe has admitted that he posted the Slabbed New Media video to his personal YouTube account as publisher of Slabbed.

3  Leary respectfully suggests that the Ninth Circuit's decision in Lenz oversteps the proper bounds of fair use, and also misapplies *dicta* from a single judge of the 11th Circuit to support its position. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 n. 22 (11th Cir.1996) (Birch, J.). In its decision, the Ninth Circuit here cut out the first half of the footnote, where the Eleventh Circuit quotes binding Supreme Court precedent explicitly saying that "fair use is an affirmative defense" and then explains what must be done when analyzing such an "excused infringement." The Ninth Circuit also uses an ellipsis to cut out the part in the second half of the footnote where Judge Birch makes clear that he's "speaking only for himself" when he says that fair use is not an "infringement to be excused." The Ninth Circuit pretends to be adopting the Eleventh Circuit's reasoning, when in fact it's rejecting it. Judge Birch himself even reiterates the point five years later in his opinion in *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001) at fn 3. In discussing the opinion of the court, he refers to the defendant's "affirmative defense of fair use." But then in the accompanying footnote, he likewise says that it's only his personal opinion that fair use is a right. As far as Leary can determine, the Lenz case has not been relied upon by another circuit court since it was issued. One district court has explicitly found fair use should not be a consideration under 17 USC 512(f) *Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333 (D. Mass. 2013).

10

4. This Honorable Court can infer Leary's good faith from the following facts alleged in or referred to in the Third Amended Complaint. First, Leary filled out the complaint form and sent it to YouTube *one day after* Nova Scotia Supreme Court rendered its final decision finding Handshoe infringed copyright in the work identified in the web form. That is, Leary waited until there was a binding judicial decision to inform YouTube of the infringing use, which strongly indicates good faith. In the Canadian proceeding in which he entered a general appearance,[4] Handshoe had the opportunity to defend agains the infringement allegation through the affirmative defence of "fair dealing", which notably includes "satire" and "parody", but he chose not do so. See: *United Airlines, Inc. v. Cooperstock, 2017 FC 616* (Canadian Federal Court on parody defence). This failure to defend also would have reasonably entered into Leary's good faith belief, and Handshoe should be estopped from relying on such affirmative defenses. Second, Leary informed YouTube that the copyright was Canadian, not knowing what action YouTube would take, and in fact YouTube did not remove the video, but asked for more information.[5] According to the Third Amended Complaint, that included then sending YouTube a copy of Leary's Canadian injunction, which determined YouTube's final decision.

5. The Third Amended Complaint does not establish that any DMCA notice materially affected YouTube's decision making regarding the video under the DMCA's provisions rather than, say, Canadian law. Count 5 says specifically Leary sent YouTube a Canadian injunction before YouTube removed the video. It is already established that YouTube did not immediately remove the video after receiving the copyright complaint, but rather wrote to Leary requesting

---

4 Mississippi Circuit Court, "Trout Point Lodge v. Handshoe" (2017). *Historical and Topical Legal Documents*. 1377 available at http://digitalcommons.law.scu.edu/historical/1377.
5 As this Court noted (ECF 157, page 22): "The record reflects that on February 19, 2014, YouTube responded to this takedown notice, requesting more information from Leary as to Trout Point lodge, the corporate entity identified as the copyright holder in the takedown notice. Notice [96-11] at 10. YouTube explained to Leary that "the content will remain live on the site until we have received this verification . . . ." Id.

11

additional information. YouTube and Google operate in Canada, Google's Canadian subsidiary is a Nova Scotia company, and YouTube is subject to Nova Scotia jurisdiction. The injunction and considerations of Canadian law, not any DMCA notice, caused any alleged removal of the video, according to the Third Amended Complaint. Thus, the Third Amended Complaint fails to state the elements necessary for a 17 USC 512(f) claim against Leary.

6. According to the email sent from YouTube, Leary precisely identified the 5 seconds where the alleged infringement occurred, and did not request removal of the entire video. Any decision to remove the entire video rather than disable access to those 5 seconds was YouTube's decision for which Leary cannot be held culpable under 512(f). The methods of disabling access to the infringing use are myriad, including simply editing out that segment. Any damage proximately caused by the alleged removal of the entire video accrues to YouTube and it was not Leary that proximately caused alleged damage to Handshoe.

7. Count 5 of the Third Amended Complaint alleges that Handshoe, not service provider YouTube removed the video. Under the statute and case law, it must be the *service provider* not the alleged infringer that disables access to the allegedly infringing material, causing damage to the service provider and/or the alleged infringer. That essential element is missing from Handshoe's claim. Amaretto Ranch Breedables, LLC v. Ozimals, Inc., 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011) and related cases cited above.

8. Handshoe has failed to "adequately allege the amount of damages he has suffered as a direct result of his web host relying on any misrepresentation" *Handshoe v. Abel*, Civil Action No. 1:14-CV-159-KS-MTP (S.D. Miss. Dec. 16, 2015).

9. Handshoe cannot claim damages based on his First Amendment rights in this case. Leary is not a governmental or state actor. This allegation must be dismissed.

10. Handshoe cannot claim $180,000 in compensatory damages in this case based on 17 USC

12

512(f), which is a strictly limited cause of action allowing only nominal damages. Handshoe is *pro se*. Lenz, 9th Circuit, *supra*. The claimed $180,000 just happens to match the figure that Nova Scotia Supreme Court ordered in damages for copyright infringement against Handshoe, making it tantamount to an illegal collateral attack on the final judgment of a sister court that has also been recognized as a judgment of Hancock County Circuit Court (ECF 96, 8).

For all the above reasons, Count 5 against Leary must be dismissed with prejudice. The plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the Third Amended Complaint. *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir.1996).

**Summary Judgment**

In the alternative, Leary asks for summary judgment based on the evidence contain in his Declaration regarding the complaint sent to YouTube.[6]

> Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*McManaway v. KBR, INC.*, 852 F.3d 444 (5th Cir. 2017).

> "A party opposing a properly supported motion for summary judgment `may not rest upon the mere allegations or denials of [his] pleadings,' but rather must `set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (quoting former Fed. R.Civ.P. 56(e)). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Id.* Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the

---

6  Under Rule 56(c), a motion for summary judgment may be supported by "affidavits or declarations." Pursuant to 28 U.S.C. § 1746, an unsworn declaration is treated with "like force and effect" as a sworn declaration or affidavit if it is "in writing of [a] person which is subscribed by him, as true under penalty or perjury, and dated," and includes substantially the following statement before the person's signature: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *US v. Ledesma*, 33 F. Supp. 3d 734 (S.D. Tex. 2012).

13

existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254, 106 S.Ct. 2505; *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "A mere scintilla of proof ... will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir.2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Emmett*, 532 F.3d at 297.

In particular, Leary had a subjective good faith belief that the use of the photograph infringed copyright when he filled out and sent the YouTube copyright complaint form on February 15, 2014. This was based on the February 14, 2014, decision of Nova Scotia Supreme Court combined with his knowledge that fair use had to in some way criticize or speak to the original work, and that it had to be transformative of that work. By contrast, the impugned video simply used the entire work without criticizing or modifying it. Leary also based his decision on the fact that the video used the work in its entirety, and that the use was commercial. "If [...] a copyright holder forms a subjective *good faith* belief the allegedly infringing material does not constitute fair use, we are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion." *Lenz v. Universal Music Corp.*, 801 F.3d 1126 (9th Cir. 2015).

Finally, it is clear that the use of the photograph in the YouTube video published by Handshoe was infringing. Nova Scotia Supreme Court has said so. Handshoe admits the copyrighted work is published in the video. Leary affirms that Trout Point Lodge, Limited, never gave permission to Slabbed New Media or Handshoe to use, copy, and publish the work. A use that is actually infringing cannot be the subject of a "misrepresented" copyright notice claiming infringement, that is a true representation. Subsection (f) "sets out a private cause of action for anyone who is injured by a material representation that content or activity is infringing *when it is not." Disney Enters., Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286, at *46 (S.D. Fla. Sept. 20, 2013) (emphasis added). Also: *DESIGN FURNISHINGS, INC. v. ZEN PATH, LLC*, No. CIV. 2: 10-2765 WBS GGH (E.D. Cal. Dec.

14

23, 2010); *Rossi v. Motion Picture Ass'n of America, 391 F.3d 1000 (9th Cir. 2004)*; (*Online Policy Grp. v. Diebold, Inc., 337 F.Supp.2d 1195, 1203 (N.D.Cal.2004)*.

For the forgoing reasons, in the alternative, this court should find for Defendant Leary on summary judgment on Count 5 of the the Third Amended Complaint.

All of the above is respectfully submitted this 9th day of October, 2017.

Charles L. Leary
appearing *pro se*

140 Trout Point Road
E. Kemptville, NS B5A 5X9 CANADA
Tel 902-482-8360
Fax 800-980-0713
foodvacation@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that, on October 9, 2017, I caused a true and correct copy of the above and foregoing to be filed utilizing the Court's CM/ECF electronic document filing system, which caused notice of such filing to be delivered to all counsel of record and parties requesting notice, and by United States First Class Mail, postage prepaid, to the following non-ECF participants having appeared in this action:

[none]

Charles L. Leary