IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



DOUGLAS HANDSHOE                                                               PLAINTIFF

VS.                                                            CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, ASHOKA, XYZ
FOUNDATION & JOHN DOES 1-50                                 DEFENDANTS

**CHARLES LEARY'S REBUTTAL TO DEFENDANT'S
REPLY TO MOTION FOR JUDGMENT ON THE PLEADINGS OR
IN THE ALTERNATIVE SUMMARY JUDGMENT**

Defendant Leary respectfully submits this rebuttal to Plaintiff Handshoe's Reply to Leary's Motion for Judgment on the Pleadings or in the Alternative Summary Judgment on Handshoe's Third Amended Complaint ("TAC").

First, as argued in the primary brief, under the applicable summary judgment standard, if (a) Leary had good faith belief the use of the Trout Point Lodge ("TPL") photograph was infringing when he complained to YouTube, there was no misrepresentation under 17 U.S.C. section 512(f), and/or (b) if the use of the photograph was actually infringing, there was no "misrepresentation," it was a true representation. Leary has already evidenced his good faith belief. Handshoe has provided the Court with no affidavits or declarations to place any *material* fact at issue. In this rebuttal brief, Leary will show the material was *prima facie* infringing.

Second, Handshoe does not counter Leary's arguments for dismissal under Fed.R.Civ.P. 12(c).

1

Instead, he argues that pleadings have not closed, and therefore there can be no motion under Rule 12(c); he also confuses the legal standards and alleged (but not proven) facts between dismissal on the pleadings and on summary judgment. In fact, this Court may consider the motion under the applicable standard, and dismissal with prejudice should be granted.

**Summary Judgment**

Leary has filed a motion for summary judgment in the alternative as to Count 5. Handshoe says the Court may "construe" the motion as one for summary judgment, however Leary has affirmatively presented a motion for summary judgment in the alternative. It is not uncommon to file a motion for judgment on the pleadings or in the alternative for summary judgment.[1]

Handshoe argues this motion for summary judgment is premature because discovery is not complete. However, Fed.R.Civ.P. 56(b) clearly states: "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." ""Rule 56 does not require that any discovery take place before summary judgment can be granted." *Baker v. American Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005)(citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990))." *Coombs v. UNIQUE REFINISHERS, INC., No. 2: 12CV102 (N.D. Miss. Mar. 27, 2013).* See also *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299 (M.D. Fla. 2012) at fn 2.

Through his declaration, Leary has pointed out to the Court an absence of evidence to show that under 17 U.S.C. Section 512(f) he did not have a good faith belief that material in the YouTube video was infringing when he complained; Leary inferred that if the material was actually infringing there was no misrepresentation and will now show Handshoe unable to prove his case at trial.

> [T]he moving party simply may show[] — that is, point[] out to the district court — that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

---

[1] *Continental Gin Company v. Freeman*, 237 F. Supp. 240 (N.D. Miss. 1964); *Windfield v. Groen Div., Dover Corp.*, 740 F. Supp. 1230 (S.D. Miss. 1990); *Harried v. FORMAN PERRY WATKINS KRUTZ & TARDY RONALD KING*, Civil Action No. 3: 11cv102TSL-MTP (S.D. Miss. Oct. 20, 2011).

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

Handshoe has not filed an affidavit or declaration. "In response to a summary judgment motion, [...] the plaintiff can no longer rest on [...] "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2D 351 (1992).

> This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," *Lujan,* 497 U.S. at 871-73, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir.1994). We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*
> *Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994)* (emphasis in original)

Handshoe does make conclusory allegations that he already possesses certain email evidence regarding a DMCA counter notification he served on YouTube in July, 2014. He does not explain how that evidence is relevant to the February, 2014 copyright complaint sent to YouTube at issue in Count 5 or Leary's good faith belief.[2]

The evidence actually before the Court is as follows: Handshoe admits on page 6 of his reply brief that Leary was "acting for TPL" when he filled out a copyright complaint webform on YouTube's web site on February 15, 2014, one day after a Canadian court decision finding infringement of the work in question; no takedown occurred immediately after YouTube received the complaint on February 15, 2014 (ECF 157 at fn. 9); instead YouTube wrote to Leary asking for more information; then, Handshoe admits to submitting a 17 U.S.C. 512(g)(3) counter notification to YouTube in July, 2014 (ECF 183, page 6 and ECF 175, 5); in August, 2014, YouTube disabled access to the video *in*

---

[2] On its face no additional discovery is required because Plaintiff says he already has that evidence in his possession or control, but he has not presented it for the benefit of the Court. *RIGHTHAVEN, LLC v. Hoehn*, 792 F. Supp. 2d 1138 (D. Nev. 2011); *ENVIRONMENTAL, SAFETY & HEALTH CONSULTING SERVICES v. CREST ENERGY PARTNERS, LP*, Civil Action No. 13-cv-5747 (E.D. La. May 21, 2015).

3

*Canada* and informed TPL of that action (ECF 175, 4). Count 5 of the TAC claims Handshoe disabled the video due to the copyright infringement complaint, but he has failed to prove this critical fact through an affidavit or declaration. "For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact." Fitzpatrick, *supra*. There is no preponderance of evidence showing a take down actually occurred based on the February, 2014 copyright infringement complaint, which webform, again, listed Canada as the jurisdiction, did not complain about the entire video, refer to the DMCA, or specifically ask for its removal from publication.

In addition, as in *Rossi v. Motion Picture Ass'n of America*, 391 F.3d 1000 (9th Cir. 2004), the genuine issue of material fact here is Leary's good faith belief when submitting a copyright infringement complaint as an officer of TPL, not subsequent communications between Handshoe and YouTube regarding his (illegal) DMCA counter notification to that complaint. Cf. ECF 157, citing *Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1151 (9th Cir. 2015), *as amended* Mar. 17, 2016.[3] A fact is only material if it would affect the outcome of the suit under the applicable law. *Fiess v. State Farm Lloyds,* 392 F.3d 802, 807 (5th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)).

To prevail here, Leary has to demonstrate the absence of a genuine issue of material fact regarding his subjective good faith belief (though demonstrating by evidence actual infringement would also defeat Count 5). The moving party is not required to provide affidavits or declarations

---

3   Handshoe again asserts that a Canadian injunction was sent to YouTube in the summer of 2014, after he filed a (misrepresented) counter notification under the DMCA. Leary has previously supplied in evidence an email from YouTube dated August 6, 2014 stating that "the content has been blocked and is no longer viewable in Canada." This removal in Canada that Handshoe alleges is due to a Canadian injunction (not a DMCA notice) is not actionable under 17 U.S.C. section 512(f) and is not the alleged removal at issue in Count 5, which "takedown" remains unestablished by any evidence presented by Handshoe. Again, all of this discussion is a smokescreen for the material issue: Leary's good faith belief when he complained to YouTube.

4

which negate the opponents claim. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The analysis here is not difficult. In *Rossi*, a summary judgment case addressing 512(f), the U.S. Court of Appeals for the Ninth Circuit considered the presence of valid "copyrighted motion pictures" owned by the defendant, "representations on the [plaintiff's] website" indicating infringement in those works, and the absence of any "suggestion in the record that [defendant's] belief regarding [plaintiff's] asserted infringement was other than sincere" (fn 8). The Court affirmed summary judgment for the defendant.

> [A] copyright holder need only form a subjective good faith belief that a use is not authorized. *Rossi v. Motion Picture Ass'n of Am. Inc.,* 391 F.3d 1000 (9th Cir.2004). In *Rossi,* we explicitly held that "the 'good faith belief' requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than objective standard," and we observed that "Congress understands this distinction." *Id.* at 1004. We further held:
>
>> When enacting the DMCA, Congress could have easily incorporated an objective standard of reasonableness. The fact that it did not do so indicates an intent to adhere to the subjective standard traditionally associated with a good faith requirement....
>>
>> In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation. A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner.
>
> *Id.* at 1004-05 (citations omitted). Neither of these holdings are dictum.

*Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1151 (9th Cir. 2015), *as amended* Mar. 17, 2016

At page 3 of his brief, Handshoe argues that YouTube's 2010 terms of service refer to the DMCA.[4] However, Handshoe cannot create material facts in dispute by failing to present evidence and this bald assertion does not positively establish (a) that the video was actually taken down, which is an open question Handshoe has failed to resolve through evidence, even though on notice by the Court

---

4   The Terms of Service indicate a copyright owner "may" submit a DMCA notice to YouTube by contacting the Copyright Agent via mail, email, or fax. Leary did none of these things. He used the online "copyright complaint" web form provided by YouTube. The Terms of Service also state: "Content you submit to the Service will not contain third party copyrighted material" and goes on to require "permission from the rightful owner of the material" and that you are "legally entitled to post the material and to grant YouTube all of the license rights granted herein." (Paragraph 6 D).

and Leary's motion of that live issue;[5] (b) that YouTube did not require Handshoe to take down the video because of the Canadian injunction and court decisions (which is admitted by Handshoe), or most importantly (c) that Leary was (subjectively) aware of the Terms of Service and therefore somehow lacked a good faith belief that the use of the creative work belonging to TPL was not infringing when he filled out the YouTube webform. Even if Leary were aware of the Terms of Service, which is not in evidence, this does not mean he did not have the same good faith belief evidenced in his declaration. Finally, the Terms of Service Handshoe previously placed in the record are from 2010, not 2014 when the complaint was sent to YouTube.

Handshoe says Leary was communicating with YouTube about "content displayed in the United States," but fails to address the fact that foreign works are protected by the United States *Copyright Act*. In fact, U.S. federal courts can claim subject-matter jurisdiction over violations of foreign copyright law.[6] His allegation does not establish that he actually has a valid cause of action under section 512(f) or that the fact the infringing photograph was "displayed in the United States" had anything to do with Leary's good faith belief, or the fact that the material was not actually infringing.

*Ownership of Copyright*

*For the first time ever in this case*, addressing the summary judgment motion, Handshoe on page 4 argues that the creative work in question belonged to the *Toronto Star* for no other reason than it

---

5 "YouTube responded to this takedown notice, requesting more information from Leary as to TPL, the corporate entity identified as the copyright holder in the takedown notice. Notice [96-11] at 10. YouTube explained to Leary that "the content will remain live on the site until we have received this verification. . . ." *Id.* It is unclear what happened after YouTube's response. The parties have not sufficiently briefed this issue . . ." *Handshoe v. Perret*, supra at fn 9.

6 "[N]umerous courts have held that there is "no principled reason to bar, in absolute fashion, copyright claims brought under foreign law for lack of subject matter jurisdiction." *Armstrong*, 91 F.Supp.2d at 637; *see also Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir.1995) ("This Court has recognized the potential of American courts to entertain actions under the copyright laws of other nations," citing *Subafilms*, 24 F.3d at 1095 n. 10); *Carell v. Shubert Org., Inc.*, 104 F.Supp.2d 236, 258 (S.D.N.Y.2000) ("[A]t this stage in the proceedings, there is no reason to believe that the Court would be foreclosed from applying foreign law to plaintiff's foreign infringement claims."); *Frink America, Inc. v. Champion Road Mach., Ltd.*, 961 F.Supp. 398, 404-05 (N.D.N.Y.1997) (stating that objections to the court's subject matter jurisdiction "are without merit"); *London Film*, 580 F.Supp. At 49." *Rundquist v. Vapiano SE*, 798 F.Supp.2d 102, 129-30 (D.D.C.2011); also *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F.Supp.2d 101, 120 (D.D.C.2013).

6

was published by that newspaper on its web site. Leary does not have to address this unsupported allegation on summary judgment in order to prevail, but will do so to clarify the record.

In making this allegation Handshoe demonstrates "a plain misunderstanding of copyright law" that is at a minimum reckless in its disregard for intellectual property rights. *Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Dec. 16, 2015). Handshoe's allegation about ownership is unsupported by any evidence, and in fact the affidavit provided by Torstar in this litigation contradicts Handshoe's assertion (ECF 64, 4).

This factual situation is very close to that in *Handshoe v. Abel*.

> Under Plaintiff's theory, Abel is liable under this section [512(f)] because the minor child held no copyright in the drawing. This, however, is a plain misunderstanding of copyright law. Plaintiff admits that the minor child was the author of the drawing. (Amended Complaint [27] at ¶ 14.) By that fact alone, the minor child possesses a copyright in the drawing under 17 U.S.C. § 102(a)(5). Plaintiff does not allege in his complaint that his use of the drawing was authorized by either the copyright owner or law, and asserts only that a copyright does not exist. As the Court must find that a copyright does exist, Plaintiff has failed to plead a misrepresentation under § 512(f).

Handshoe v. Abel, *supra*.

In the instant case, instead of arguing that copyright does not exist in a child's drawing, Handshoe now asserts that someone else owns the copyright in an original photograph, but he never alleges or proves his use "was authorized by either the copyright owner or law." The result is the same. TPL has always owned copyright in the photograph in question from its inception. The fact that *The Star* published a photograph authored by TPL employee Kara Crowell taken in the normal course of her employment for Trout Point, does not mean the copyright belongs to anyone but TPL (see affidavit of Kara Crowell who testifies she has worked for TPL for over ten years; Leary declaration supporting rebuttal). See also: Canada *Copyright Act* section 13.3 "Work made in the course of employment":

> Where the author of a work was in the employment of some other person under a contract of service or apprenticeship and the work was made in the course of his employment by that person, the person by whom the author was employed shall, in the absence of any agreement to the contrary, be the first owner of the copyright . . .

7

In fact, after receiving a request for an image from *The Star*, Leary instructed that Crowell take the photograph and then TPL licensed it to the *Toronto Star* (Leary declaration in support of rebuttal). The fact that actual registration of the work with the Canada Intellectual Property Office did not occur until later does not invalidate the existence of Trout Point's copyright. Handshoe v. Abel, *supra*; Canada *Copyright Act* 13.3.

> A claim for copyright infringement requires that the plaintiff show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).
>
> [...]
>
> To establish "copying," a plaintiff must show "factual copying and substantial similarity." *Guzman v. Hacienda Records and Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015). Further, "factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Id.* (quoting *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 368 (5th Cir. 2004), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). If "access" cannot be shown, the plaintiff may prove factual copying by "showing such a `striking similarity' between the two works that the similarity could only be explained by actual copying." *Armour v. Knowles*, 512 F.3d 147, 152 n.3 (5th Cir. 2007).

*Vallery v. AMERICAN GIRL, LLC*, No. 15-30472 (5th Cir. June 29, 2017).

In the TAC Handshoe disputes—without evidence--TPL's ownership of a valid copyright, but admits to copying and publication, which is therefore undisputed. In his reply brief and in the TAC, Handshoe admits to taking the photograph from *The Star*'s Canadian web site, and using that photograph in creating the May 6, 2013 Slabbed video in Mississippi. The TAC admits the video was "created by and published [...] by Publisher Handshoe" (Count 5, paragraph 139).

The Terms & Conditions of the *Toronto Star* web site updated November 9, 2012, in vigor up to and beyond May 6, 2013, clearly prohibited Handshoe's taking of the photograph for use in the Slabbed New Media video, under the section entitled "Restrictions on Use of Materials" (Cf. exhibit to Leary declaration). That section refers to "the content" available on the web site as materials that are "the property of the Toronto Star *or its licensors* and are protected, without limitation, pursuant to Canadian

8

and foreign copyright, trademark and other laws" (emphasis added). That Section continued to state:

> Other than as explicitly set forth in these Terms and Conditions, nothing will be construed as granting any license or right to use any Content in any manner without the prior written consent of the Toronto Star or *such third party that may own the Content* displayed on the Toronto Star Property, Service or Paid Service. Any unauthorized use of any of the Content is strictly prohibited. Except as provided herein, you agree not to reproduce, sell, republish, broadcast, distribute, make derivative works of or otherwise make available any Content, including without limitation by framing, caching or other similar means, without the prior written consent of the copyright owner of such Content. (emphasis added)

Ownership in the copyright in that photograph always remained with TPL at all relevant times. In addition, Nova Scotia Supreme Court has already found on February 14, 2014, that the copyright in the work belongs to TPL, and this issue is *res judicata*. *Trout Point Lodge Ltd. v. Handshoe*, 2014 NSSC 62. Handshoe's theory that a creative work loses copyright protection simply because the copyright owner authorized a third-party publication is completely misplaced, under the copyright law of both Canada and the United States. The declaration of Torstar employee Kathy English (ECF 64, 4) referred to by Handshoe does not establish otherwise. Torstar claimed no ownership interest whatsoever in the photographic work in question.

In essence Leary has demonstrated Trout Point's ownership of copyright and Handshoe has admitted the video copied and published that work, establishing *prima facie* infringement; *Vallery v. AMERICAN GIRL, supra*. Leary's good faith belief is substantiated by evidence, and Handshoe has presented no affidavit or declaration to contradict that fact. His argument about *The Star* owning the photograph, and thus the lack of ownership by TPL was also never made anywhere in the TAC or any of its predecessors.

***Other Issues***

Handshoe then appears to argue that 5 seconds of use was *de minimis*, but that does not speak to a good faith belief, and in any event the case law disagrees[7]:

---

7 Handshoe conflates *de minimis* use with fair use; they are distinct legal concepts. *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986); *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994). No court has held that someone submitting a copyright notice under section 512 must consider if the use was *de minimis* before serving the notice.

9

> Universal argues that the infringement is *de minimis* because the infringing footage in *12 Monkeys* amounts to less than five minutes in a movie 130 minutes long. Whether an infringement is *de minimis* is determined by *the amount taken without authorization from the infringed work*, and not by the characteristics of the infringing work. As discussed above, *12 Monkeys* copies substantial *portions* of Woods' drawing.

Woods v. Universal City Studios, Inc., 920 F.Supp. 62 (S.D.N.Y.1996) (emphasis added)

Handshoe has presented no evidence to establish that the video did not use the entirety of the work, as established by Leary in his declaration and the exhibit to the Leary declaration to this rebuttal, which shows the video using the entire work. In addition, again, Handshoe does not provide any evidence as to how this allegation negates Leary's good faith belief the use was infringing when he filled out the YouTube copyright complaint form or that the use *was* actually infringing.

Handshoe next states to this Court that the posting of the Slabbed New Media video (which he created as "Publisher") was non-commercial. Yet in Handshoe's opposition to Leary's motion to dismiss the TAC (ECF 112), Handshoe makes the judicial admission on page 8 that he "published to the Publisher's [Handshoe] personal YouTube account in order to facilitate the video's publication to the Slabbed New Media website."

> A court can appropriately treat statements in briefs as binding judicial admissions of fact. *Leslie v. Knight Soda Fountain*, 55 F.2d 224, 225 (2d Cir. 1932), *See also City Nat. Bank v. U.S.*, 907 F.2d 536, 544 (5th Cir.1990); *see also Young & Vann Supply Co. v. Gulf F. & a.R. Co.*, 5 F.2d 421, 423 (5th Cir.1925).

*Purgess v. Sharrock*, 33 F.3d 134 (2d Cir. 1994).

On judicial admissions in pleadings and briefs see also *Hill v. Federal Trade Commission*, 124 F.2d 104 (5th Cir. 1941) ("judicial admissions are proof possessing the highest possible probative value"); *Postscript Enter. v. City of Bridgeton*, 905 F.2d 223, 227-28 (8th Cir. 1990); *Holman v. Kemna*, 212 F.3d 413 (8th Cir. 2000); *Ross v. Philip Morris & Company*, 328 F.2d 3 (8th Cir. 1964); *Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) at fn 29.

Thus, as admitted by Plaintiff himself, the publication was commercial in its purpose and not fair use. Notably, Slabbed New Media went into Chapter 11 bankruptcy in 2015 as a commercial

10

enterprise, and Handshoe's publishing activities on Slabbed were found to be a commercial enterprise by Nova Scotia Supreme Court. *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016).

***No Material Facts in Dispute***

Finally, Handshoe conclusorily asserts that there are "a myriad of disputed facts." However, what Handshoe asserts as facts in dispute are truly legal issues, and therefore summary judgment is appropriate. The facts are clear:

- the Slabbed New Media use was commercial, as Slabbed is admitted in the TAC to be a commercial enterprise ("media company"; "Mississippi legal business entity and its [...] publisher/owner"); see also *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016) ("Slabbed's schedules reveal *a business* with little revenue or assets and one large liability" emphasis added);
- the TAC also admits the video was "created by and published [...] by Publisher Handshoe" (Count 5, paragraph 139);
- in a brief opposing Leary's motion to dismiss Handshoe admits he "published to the Publisher's personal YouTube account in order to facilitate the video's publication to the Slabbed New Media website" (see above);
- the photograph appeared for about 5 seconds in the YouTube video also published on the Slabbed web site;
- Handshoe admits he took the video from the Toronto Star's web site (reply brief, ECF 183, page 4);
- Handshoe copied the entire photograph in creating the video (Leary declaration).

Whether Leary was acting under Canadian law is also a legal issue. Leary has established his good faith belief that the use was infringing when he filled out the YouTube webform. Beyond that, as seen above, the use was actually infringing and thus there was no misrepresentation.

> A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. *See* § 512(f). Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner.

*Rossi v. Motion Picture Ass'n of America*, 391 F.3d 1000 (9th Cir. 2004).

Handshoe has not bothered to present this Court with any evidence to counter the fact of Leary's good faith belief, which therefore remains undisputed. "Where the non-movant bears the burden of proof at

11

trial, "the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995) (per curiam)." *Nola Spice Designs, LLC v. Haydel Enterprises*, 783 F.3d 527 (5th Cir. 2015).

Handshoe presents no new evidence, and the only evidence already in the record used by Handshoe in his reply does not put into dispute any material fact.

Handshoe's failure to present any evidence that material facts are in dispute is fatal to his opposition to the summary judgment motion. Once the moving party fulfills his responsibility, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir.2014).

For the above reasons, this Court should find for Leary on summary judgment, dismiss Count 5 with prejudice, and order any other relief It believe just given the circumstances, the law, and the facts proven here.

### Dismissal Under Rule 12(c)

This Court may consider dismissal based on the pleadings. Leary seeks dismissal of one count, Count 5, and Mr. Handshoe will not be amending the complaint further. Leary has filed his defence to Count 5. Leary now recognizes that also filing a counterclaim technically means that pleadings have not closed; Fed.R.Civ.P. 7(a). However, this Court has the discretion to consider such a motion now, particularly when it relates to lack of subject-matter jurisdiction or failure to state a claim on which relief can be granted; *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623 (W.D. Mich. 2015) (addressing a situation where "Defendants' Rule 12(c) motion [...] is premature" and "the Individual Defendants are not technically in a position to bring either a Rule 12(b)(6) or a Rule 12(c) motion."); *Puckett v. US*, 82 F. Supp. 2d 660 (S.D. Tex. 1999); *Wells v. Radiator Specialty Co.*, 413 F. Supp. 2d

12

778 (S.D. Miss. 2006). In addition, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d); *Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998) at fn. 1, citing *Baker v. Putnal,* 75 F.3d 190, 197 (5th Cir.1996); *Curb v. MCA Records, Inc.*, 898 F. Supp. 586 (M.D. Tenn. 1995). In light of this case law, and for the sake of judicial efficiency, this Court may consider the issues raised.

The TAC and Handshoe's reply have not established that he has standing or that he states a claim on which relief can be granted. Handshoe admits both in the TAC and in his reply that the YouTube video in question used the copyrighted work, a photograph, and that he created the video. He bases the Count 5 "misrepresentation" claim on the sole issue that Leary allegedly failed to in good faith consider fair use when complaining to YouTube about infringing publication. Handshoe's fair use argument is based on the parody exception to infringement, which as used in the TAC is wrongheaded as a matter of law (see fn 8). In the Fifth Circuit, if the use was actually infringing, then there can be no misrepresentation and no "injury in fact"; if an alleged infringer is actually infringing copyright there is no "invasion of a legally protected interest" when someone complains about it to a service provider under 17 U.S.C. section 512. Handshoe has not refuted that in this Circuit, fair use in not a right, but rather an affirmative defense.[8] "[T]he plaintiff must have suffered an "injury in fact"—an invasion of a *legally protected interest* which is concrete and particularized" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2D 351 (1992) (emphasis added). Count 5 therefore fails to state a

---

8  Handshoe again argues in his reply brief that there is an issue as to "whether *the video* constitutes a transformative use as a parody" (emphasis added). He does so in the section of his brief relating to summary judgment. But in fact, Leary discusses the law of the transformative nature of fair use in his Rule 12(c) motion on the TAC, not on summary judgment on evidence. Leary argues that the allegations of the TAC establish that *the video* is allegedly a parody, not any transformation of the infringed photograph, which is admitted in the TAC to be used in the video. As a matter of law, infringing use of the original work without transforming it is not fair use under the parody exception to infringement. Handshoe again fails to show how the TAC alleges that the infringed work itself was transformed into a parody of the original work—as required by controlling case law including *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2D 500 (1994); rather he again alleges that *the video* was a parody. If the use was not transformative of the original work being infringed, it was *prima facie* not fair use according to binding United States Supreme Court precedent

13

cause of action on which relief can be granted.

In addition, Handshoe has not refuted the fact that Leary submitted a copyright complaint under Canadian jurisdiction and law, as established by documents referred to in the TAC. He has not refuted that the TAC admits the video was actually violating TPL's copyright by using the photograph without permission.

He has also not refuted Leary's argument that the TAC admits that *he* took down the video, not the section 512 "service provider", therefore the TAC does not allege the elements Congress in plain language placed in section 512(f) to create a cause of action, legislation to provide safe harbor for service providers. The *service provider* must take down the allegedly infringing work, not the alleged infringer.[9] He has not refuted that Leary did not complain asking for a "takedown" of the entire video, which fact is established in the copyright complaint referenced in the TAC. That was either YouTube or Handshoe's decision. He has not further shown how the TAC stated or specified his damages to the requisite degree or how Leary—a non-state actor--can be sued over alleged First Amendment rights violations.

Regarding the reason why the YouTube video was allegedly disabled, Handshoe's reply doubles down on his argument that it was due to a Canadian injunction, as stated in the TAC. This is not actionable under 512(f).

For all of the above reasons, Count 5 should be dismissed because the TAC fails to established that Handshoe has a viable cause of action under section 512(f) or that he has the required standing to assert the claim, having suffered no injury to a legally cognizable interest.

This the 6TH day of NOVEMBER, 2017.

CLL

---

[9] "[T]he statute is unambiguous in entitling an alleged infringer to damages caused "as the result of the service provider ... removing or disabling access to the material...." 17 U.S.C. § 512(c). Moreover, that limitation does not create so perverse a result as to suggest that this Court ought to read the phrase "as the result of the service provider... removing or disabling access" out of the statute. See Lenz, 2010 WL 702466 at *10 ..." Amaretto Ranch Breedables, LLC v. Ozimals, Inc., 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011).

Respectfully submitted,
DEFENDANT (PLAINTIFF BY COUNTERCLAIM)
DR. CHARLES L. LEARY

*[signature]*

appearing pro se

Charles L. Leary
140 Trout Point Road
E. Kemptville, Nova Scotia B5A 5X9 CANADA
Telephone 902-482-8360
Fax 800-980-0713
foodvacation@gmail.com

## CERTIFICATE OF SERVICE

I, Charles Leary, defendant and plaintiff by counterclaim, hereby certify that I have this date filed the foregoing with the Clerk of the Court via postal channels, and that the ECF system will send notification of such filing to the following:

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
*Pro Se* **Plaintiff**

So certified, this 6th day of November, 2017.

*Charles L. Leary*
Charles L. Leary

IN THE PROVINCE OF NOVA SCOTIA
COUNTY OF YARMOUTH

**U.S. District Court for the Southern District of Mississippi, Case 1:15-cv-00382-HSO-JCG**

### Declaration of Charles L. Leary
### In Rebuttal of Plaintiff's Reply to Motion for Summary Judgment

1. I am Charles L. Leary, a United States citizen currently resident in Nova Scotia. I reside at 140 Trout Point Road, East Kemptville, Yarmouth County, Nova Scotia.
2. I received my M.A. and Ph.D. degrees from Cornell University. I am a director of Trout Point Lodge, Limited, and was formerly the Secretary of Trout Point Lodge, Limited, including during the period 2012-2014. I have been a Managing Director of Trout Point since it opened in 2000.
3. On or around February 2, 2012, *Toronto Star* journalist Richard Brennan contacted Trout Point Lodge for a story on a legal victory over Douglas Handshoe in Nova Scotia Supreme Court. I spoke with Mr. Brennan. Mr. Brennan asked me for a photograph or photographs of Vaughan Perret and myself for the newspaper to use with the story.
4. I called on Trout Point Lodge employee Kara Crowell to take some photographs of Mr. Perret and myself. Ms. Crowell was acting as a Lodge employee when she took the photographs.
5. I then supplied the photographs, via email, to Mr. Brennan the same day. A true copy of the email containing the photograph at issue in this case is attached hereto as Exhibit "A".
6. The newspaper used the photograph both in the print and web editions of the story.
7. On behalf of Trout Point Lodge, I authorized *The Star* to use the photographs for that story, but did not assign copyright in the photographs to *The Toronto Star* or Torstar Corporation.
8. I have read the Terms and Conditions of the Toronto Star web site on a few occasions. The Terms and Conditions in effect in May, 2013, which say they were written on November 9, 2012, are attached hereto as Exhibit "B".
9. I have watched the YouTube video made by Douglas Handshoe that uses the photograph of Mr. Perret and myself published by the Toronto Star on February 2, 2012. I took a screen shot of the Slabbed video publishing that photograph in its entirety, which is attached hereto as Exhibit "C". The web version of the Toronto Star story is also attached hereto as Exhibit "D".

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 6, 2017 (date).

_____
Charles L. Leary (signature)