IN THE PROVINCE OF NOVA SCOTIA
COUNTY OF YARMOUTH

**U.S. District Court for the Southern District of Mississippi, Case 1:15-cv-00382-HSO-JCG**

**Declaration of Charles L. Leary
supporting the Motion for Summary Judgment regarding
bankruptcy stay violations and copyright infringement**

1. I am Charles L. Leary, a United States citizen currently resident in Nova Scotia. I reside at 140 Trout Point Road, East Kemptville, Yarmouth County, Nova Scotia.
2. I have been a Managing Director and Recognized Agent of Trout Point since it opened in 2000.
3. I have never been served with any process, including show cause orders, in case 12-cv-90, U.S. District Court for the Southern District of Mississippi, during 2016 and 2017; I was also never served with any motion for a judgment debtor examination or to appear for a judgment debtor exam in 2016 in that case.
4. I have become aware of what might have been service attempts at Trout Point Lodge through talking to former temporary employees Sophia Gruber and Ulysse Martin, and I asked them to provide declarations about what occurred before they left employment. Neither was ever authorized to accept service on my behalf and neither was a manager, officer, or director of my business. They were both temporary foreign workers. I have not seen Ulysse Martin since Don Acker visited Trout Point Lodge.
5. I was a judgment creditor in the Chapter 11 bankruptcy of Slabbed New Media, LLC filed in the U.S. Bankruptcy Court for the Southern District of Mississippi. Douglas Handshoe was also a creditor, claiming he was owed $500,000 in a document filed on October 12, 2015. See Exhibit "Q". That bankruptcy case was closed by the court in October, 2016.
6. I have personal knowledge that Mr. Handshoe, who was Slabbed New Media's sole member, caused the LLC to file a suggestion of bankruptcy motion in the case Yount v. Handshoe, et. al. in Louisiana's 24th Judicial District Court case no. 736-680. I know that case was stayed during the pendency of that bankruptcy. Attached hereto as Exhibit "R" is the motion and Notice of Bankruptcy Case Filing filed in that Louisiana case by Slabbed New Media, LLC.
7. Attached hereto as Exhibit "A" is a true copy of a motion for a judgment debtor exam filed by Mr. Handshoe in the U.S. District Court for the Southern District of Mississippi, case no. 12-cv-90. It was filed before the bankruptcy case was dismissed and closed and while a bankruptcy stay was in place.
8. I was informed by my attorney Gary Thrash that Douglas Handshoe was served with a Writ of Execution relating to a $180,000 money judgment from Nova Scotia Supreme Court, enrolled in Hancock County Circuit Court, on May 15, 2017. Mr. Handshoe's own witness, Sheila Cruthird, has stated in an affidavit in this case (ECF 180-1) that execution was attempted at that time.
9. As part of a motion for original discipline in 2016, I put Mr. Handshoe and his attorney Mr. Truitt on notice that none of the plaintiffs in case 12-cv-90 were receiving notices via attorney M. Judith Barnett. Mr. Perret and I both appeared and filed *pro se* motions in case 12-cv-90 on June 9, 2016 (ECFs 70 & 72) and were never actually represented by Ms. Barnett. Her enrollment was her error and she never gave us notices of any motions in that case or worked on the case, which was closed at the time she enrolled in error.
10. It is my belief that faced with possible execution on my $180,000 judgment, Mr. Handshoe confected a situation where he filed a motion for a judgment debtor exam, did not send notice to

the plaintiffs in Canada knowing that Ms. Barnett would not pass on notice to the plaintiffs. He knew Ms. Barnett was no longer working for us and I informed him she was not passing on notices. He knew Mr. Perret and I were *pro se*. He therefore knew it to be highly likely we would not oppose the motion and would not show up for the subsequent debtor exam. He argued Mississippi law as the basis for the debtor exam, which statute states that contempt is possible if a debtor does not appear for an exam. As I have not received subsequent notices or orders in that case, I believe there was a continuing pattern of such conduct of intentionally not giving notice or effecting proper service.

11. Mr. Handshoe has used contempt or possible contempt repeatedly in briefs he has recently filed in state court (Hancock County Circuit Court) and in this U.S. district court in this case. I believe he is using that situation he created to embarrass me, to discredit me, and to use it as a negotiating tactic or tool. Mr. Cruthird also sent me a "courtesy copy" of a motion for continuance in 12-cv-90 and cc'd Judge Guirola's chambers in September, 2017. He had never before emailed anything to me regarding the supplemental proceeding to me. I have never seen anyone cc the judge on such communications between parties in any court case I have been involved with.
12. I have suffered a lot of stress and emotional distress since Mr. Handshoe began using the orders he obtained from the U.S. district court in the FRCP 69 post-judgment proceeding he started. This has included increased high blood pressure. On medical advice from Dr. Zia Rahman I have doubled my daily dosage of my blood pressure medication Coversyl from 2 mg to 4 mg since learning of Handshoe's supplementary proceeding tactics and their results.
13. I have also suffered from sleeplessness, often waking up extremely early in the morning-- like 4 or 5 am—worried about Handshoe's actions in the supplemental proceeding. I often cannot get back to sleep. This has caused me to be tired and be less alert and able to focus.
14. I also suffer from headaches and the occasional feeling of heart palpitations. I often find it hard to concentrate on other important matters. This is all related to the supplemental proceeding.
15. Supervising attorney in case 12-cv-90, Mr. Cruthird, did not sign the motion for a judgment debtor exam filed by Mr. Truitt on behalf of Mr. Handshoe. Mr. Truitt appeared in that case *pro hac vice*, and the case closed in December, 2012. Mr. Truitt never applied to be re-admitted before filing the debtor exam motion.
16. As Managing Director of Trout Point Lodge, I have personal knowledge that in September, 2017, someone named Stephen Kennedy, who was hired by Mr. Handshoe, made a room reservation at Trout Point Lodge. Kennedy is a civil process server (licensed civil constable) located in Halifax, Nova Scotia. I know who Mr. Kennedy is as I have used his services in the past.
17. Instead of Mr. Kennedy appearing for the room reservation, someone who verbally identified himself as "Bob Watson" showed up alone. He was dressed like a biker gang member, wearing a leather vest with no shirt on underneath. He refused to present identification or a credit card when asked. Trout Point is a 5-star wilderness resort. "Bob Watson" was a very unusual and disturbing guest based on his appearance and his strange behavior. It is a legal requirement in Nova Scotia that hotel guests present identification.
18. "Bob Watson" told two Trout Point Lodge staff members—Shaheen Gonbaldi and Ulysse Martin—that he knew Vaughn Perret and I, and that he wanted to talk to us. When they insisted that he had to provide ID and a credit card, he suddenly left without settling his bill.
19. Bob Watson's appearance at Trout Point Lodge and his behavior, as well as the strange circumstances surrounding his presence at my place of business, caused me a great deal of concern and stress, including concern for the physical safety of my employees, my business, Mr. Perret, and myself. Trout Point Lodge is in a very remote location, and based on personal experience it takes 25-45 minutes for emergency services or police to arrive after a 911 call. Mr.

Handshoe submitted a brief in case 12-cv-90 in which he said that he had attempted service in that case as late as September 17, 2017. That service attempt was "Bob Watson," but I believe his dress and his conduct was also meant to convey a threat of violence or disruption of my business. This has caused me substantial further distress.

20. I checked on Bob Watson's status as a civil constable (process server) with the Nova Scotia Department of Justice. Justice official Mr. Michael Balcolm informed me that "Bob Watson" is not a licensed civil constable.
21. Since learning of Handshoe's tactics with the post-judgment proceeding, I have incurred PACER expenses from that service that stem from researching the aid-of-execution proceeding initiated during the bankruptcy stay of $241.60 in the months of October, November, and to date in December 2017. I have also had to expend 82 hours of personal time working on researching and writing briefs related to the stay violation, including in this case. As a researcher and consultant I have in the past been paid U.S. $225/hour for my time. I also incurred over $75 in costs getting transcripts of hearings in case 12-cv-90.

**Copyright Infringement**

22. In November, 2017, I reviewed the web site at slabbed.org. It is purportedly published by Slabbed New Media, LLC, with Mr. Handshoe as the publisher, as he repeatedly states in his Third Amended Complaint for Damages. Mr. Handshoe, identified by name, is the author of the vast majority of the content on slabbed.org.
23. Slabbed.org continues to publish four photographs that were the subject of a copyright infringement lawsuit in Nova Scotia against Handshoe that concluded in a judgment against him on February 14, 2014. These photographs are stored at locations on slabbed.org servers like /wp-content/uploads/2013/04 and /wp-content/uploads/2012/01. See the attached exhibits "B" and "C," which are true copies of the content of slabbed.org. In addition, slabbed.org is also publishing without permission a fifth photograph not part of any earlier litigation, which is a photograph or Trout Point Lodge and its firepit taken by professional photographer William Taylor. Mr. Taylor was paid for the transfer of rights in this photograph.
24. The five photographs currently appear in slabbed.org posts and are publicly available online. See attached examples, exhibits "D", "E", "F", "G", "H", "J". The photograph taken by Marilyn Smulders appears in its entirety in the YouTube video published on Douglas Handshoe's account, so that it could be republished on slabbed.org. A screen shot of that photograph appearing in the video is attached as Exhibit "P." As I have also earlier declared the entirety of the photograph of Vaughn Perret and I taken by Kara Crowell also appears in its entirety in the same YouTube video.
25. Neither I nor Trout Point Lodge have ever given Handshoe or Slabbed New Media permission or license to publish, copy, or distribute these five photographs.
26. I was assigned the United States rights in these and other photographs in September, 2016. See attached exhibit "I". I provided this copyright assignment to Mr. Handshoe in my initial disclosures in October, 2017, but he persists in publishing the photographs knowing that I have the exclusive U.S. rights in them.
27. These photographs were valuable for the promotion and marketing of my business Trout Point Lodge. One photograph of Vaughn Perret and myself also helped celebrate our position as official delegates to the National Geographic Society Geotourism Summit in Washington, D.C. in 2010, as well our acceptance of an award at that event on behalf of Trout Point Lodge for being one of 10 worldwide finalists in the 2009 National Geographic/Ashoka Geotourism Challenge.
28. The goodwill and value of those photographs is being horribly sullied by Mr. Handshoe's infringing use of them to publish false criminal allegations about us. He uses publication of them on slabbed.org and YouTube to personally identify us to third parties and the general

      public as criminals, which is untrue.
29. I checked with the United States Copyright Office via its official web page. I learned that Mr. Handshoe registered copyright in the YouTube video at issue in Count 5 of his Third Amended Complaint. See Exhibit "K". That video uses the image of Vaughn Perret, Daniel Abel, and I authored by Marilyn Smulders as well as the photograph of Mr. Perret and I with our dog authored by Kara Crowell, to which I own the U.S. rights.
30. The original photograph assigned to me by Ashoka appears in Exhibit "L"; the original photo authored by Kara Crowell appears in Exhibit "M"; the original photo authored by Vaughn Perret appears in Exhibit "N"; the original photo authored by Marilyn Smulders appears in Exhibit "O"; the original photo authored by Mr. Taylor appears in Exhibit "S".
31. I have compared the original photographs to the photographs published on Slabbed.org and on YouTube. The five original digital images are the same as the images copied and then published by Mr. Handshoe to slabbed.org and in the YouTube video described in Count 5 of Handshoe's Third Amended Complaint, with perhaps minor cropping of the Smulders photograph. Again, neither Mr. Handshoe nor Slabbed had permission to use these photographs in any way at any time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __12/11/17__ (date).

_____
Charles L. Leary (signature)