**24TH JUDICIAL DISTRICT COURT OF PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**CASE NUMBER: 736-680**                    **DIVISION: "D"**

**CHRIS E. YOUNT**

**VERSUS**

**DOUGLAS K. HANDSHOE, SLABBED.ORG, SLABBED NEW MEDIA, LLC AND JACK E. "BOBBY" TRUITT**

---

## SUGGESTION OF BANKRUPTCY

COMES NOW Slabbed New Media, LLC (the "Defendant"), and files this Suggestion of Bankruptcy, and in support thereof, would respectfully show as follows:

1. The Defendant provides this Suggestion of Bankruptcy and states that on June 16, 2015, it filed a Voluntary Petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Mississippi. All defenses are reserved.

2. The style of the Chapter 11 case and the corresponding case number are as follows: In re: Slabbed New Media, LLC, Case No. 15-50963-KMS, as per the Notice of Bankruptcy Case Filing, attached hereto and incorporated herein as Exhibit "A".

3. The filing of the Petition invokes the automatic stay provisions of 11 U.S.C. §362.

WHEREFORE, PREMISES CONSIDERED, the Defendant provides this Suggestion of Bankruptcy and notice of invocation of the automatic stay provisions of 11 U.S.C. §362.

Ex. R

This, the 18th day of June, 2015.

Respectfully submitted:

MONTGOMERY LAW CENTER, LLC

/s/ Connie S. Montgomery
Connie S. Montgomery, No. 24848
1403 West Esplanade Avenue
Kenner, Louisiana 70065
Telephone: (504) 464-7000
Telecopier: (504) 464-0908
Email: CMontgomeryLaw@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on the 18th day of June, 2015.

/s/ Connie S. Montgomery

MONTGOMERY LAW CENTER, LLC
Connie S. Montgomery, No. 24848
1403 West Esplanade Avenue
Kenner, Louisiana 70065
Telephone: (504) 464-7000
Telecopier: (504) 464-0908
Email: CMontgomeryLaw@aol.com

United States Bankruptcy Court
Southern District of Mississippi

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 11 of the United States Bankruptcy Code, entered on 06/16/2015 at 2:46 PM and filed on 06/16/2015.

**Slabbed New Media, LLC**
P.O. Box 788
Wiggins, MS 39577
Tax ID / EIN: 46-3865279



The case was filed by the debtor's attorney:

**Craig M. Geno**
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Pkwy.
Ridgeland, MS 39157
601 427-0048

The case was assigned case number 15-50963-KMS to Judge Katharine M. Samson.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page www.mssb.uscourts.gov or at the Clerk's Office, Dan M. Russell, Jr. U.S. Courthouse, 2012 15th Street, Suite 244, Gulfport, MS 39501.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Danny L. Miller
Clerk, U.S. Bankruptcy Court

557 B.R. 911 (2016)

IN RE: SLABBED NEW MEDIA, LLC, Debtor

<u>CASE NO. 15-50963-KMS.</u>

United States Bankruptcy Court, S.D. Mississippi.

Signed September 16, 2016.

912 *912 Craig M. Geno, Jarret P. Nichols, Law Offices of Craig M. Geno, PLLC, Ridgeland, MS, for Debtor.

# MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION AND DISMISSING CASE

Katharine M. Samson, United States Bankruptcy Judge

THIS MATTER came on for hearing on July 28, 2016, for final approval of the Second Amended Disclosure Statement (Dkt. No. 101) and the continued hearing on Confirmation of the Plan of Reorganization (Dkt. No. 72) filed by Slabbed New Media, LLC ("Slabbed"); and on the objections thereto filed by Henry G. Hobbs, Jr., Acting United States Trustee for Region 5 ("US Trustee") (Dkt. No. 90), Charles Leary and Vaughn Perret (Dkt. Nos. 92, 124), and Daniel G. Abel (Dkt. No. 93). Jarret P. Nichols appeared at the Confirmation Hearing on behalf of Slabbed; Robert Wolford appeared on behalf of Leary and Perret; and Sammy Tharpe appeared for the US Trustee. The prior hearing on confirmation and final approval of the Disclosure Statement was scheduled for June 2, 2016.[1] Dkt. No. 80. At the conclusion of the first hearing, the Court instructed the Debtor to file an amended disclosure statement and the confirmation hearing was continued to July 7, 2016. Dkt. Nos. 97, 98. The Second Amended Disclosure Statement was conditionally approved on June 24, 2016, and the date for the confirmation hearing on the Debtor's Plan of Reorganization was rescheduled to July 28, 2016. Dkt. No. 109. After considering the evidence and testimony, as well as arguments of counsel, and applicable law, the Court denied confirmation because Slabbed did not prove its plan was feasible. Dkt. No. 125. Further, the case was dismissed pursuant to an agreed order directing that "if the Debtor fails to obtain confirmation of a chapter 11 small business plan on or before July 28, 2016, this case shall be dismissed without further notice or hearing." Dkt. No. 115.

## I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §
913 1334. This matter is a core proceeding pursuant to 28 *913 U.S.C. § 157(b)(2)(A), (B), (L), & (O).[2]

## II. Factual and Procedural Background

914 On June 16, 2015, Slabbed filed a petition for Chapter 11 relief, signed by Douglas Handshoe as Member/Manager. Dkt. No. 1 at 3. Handshoe is the manager and sole member of Slabbed. Dkt. No. 8. Slabbed's schedules reveal a business with little revenue or assets and one large liability. Slabbed's scheduled assets total $48,094.75 ($94.75 in cash and a judgment receivable for $48,000.00[3]) and liabilities of $485,080.00. Dkt. No. 31. Slabbed amended its schedules to include the domain name "Slabbed.org" as well as certain causes of action described in the Second Amended Disclosure Statement. Dkt. Nos. 102, 103. Slabbed owns no real property. Dkt. No. 31 at 3. According to its schedules, Slabbed's largest liability is an unsecured claim in the amount of $425,000.00 for alleged indemnification of a Canadian defamation judgment[4] held by Trout Point Lodge, Ltd, Leary, and Perret that is actually against Handshoe individually.

Dkt. No. 31 at 10. The remaining creditors include the Montgomery Law Center[5] ($12,000.00), The Truitt Law Firm[6] ($48,000.00), Tourism Business Solutions ($80.00) and Chris Yount, holding an unliquidated claim.[7] Dkt. No. 31 at 9-10. The *914 Statement of Financial Affairs shows business income of $869.00 for 2015 (year-to-date at the time of filing in June of that year), $4,826.00 for 2014, and $5,768.00 for 2013. Dkt. No. 32 at 1.

On March 14, 2016, the US Trustee filed a motion to convert or dismiss the bankruptcy for the failure to file a disclosure statement and confirmable plan and for the absence of reasonable likelihood of rehabilitation. Dkt. No. 61. The US Trustee noted that the Debtor owns no real property, only listed two assets[8] — one being a judgment receivable, listed no secured creditors, no unsecured priority creditors and has no employees other than Handshoe. The US Trustee pointed out that the December 2015 monthly operating report showed a year to date negative net income of $13,451.00, with net cash flow from operating activities as of December 31, 2015 of negative $13,371.00. Dkt. No. 61 at 3. The US Trustee noted that Slabbed's business is a limited liability company owned solely by Handshoe who is a public interest blogger for the website "www.Slabbed.org." Dkt. No. 61 at 2. Slabbed responded, stating that it believed its Plan will be "viable and will return significant distributions to creditors and to equity." Dkt. No. 66 at 2. An agreed order was entered directing that Slabbed shall confirm a Chapter 11 small business plan on or before July 27, 2016 or the case *shall be dismissed* without further notice or hearing. Dkt. No. 87. This deadline was later extended to July 28, 2016. Dkt. No. 115.

Slabbed filed its Plan of Reorganization and initial Disclosure Statement on April 26, 2016. Dkt. Nos. 72, 73. Article V of Slabbed's Plan provides that the Plan provisions will be executed via "claims resolution," specifying that "[t]he Debtor is involved in multiple lawsuits that should provide a means of resolution of all claims in the bankruptcy case. The Debtor plans to fund the Plan by the resolution of these claims." Dkt. No. 72 at 3.

The US Trustee objected to Slabbed's Plan and Disclosure Statement stating that "the Debtor did not include any estimates or projections of what the Debtor's `net sales proceeds' will be, so it is unclear how much unsecured claim[ants] will be paid." Dkt. No. 90 at 1. The US Trustee requested an update on pending litigation and information as to what "additional causes of action the Debtor intends to pursue" that are referred to as assets of the Debtor. Dkt. No. 90 at 1-2.

Leary and Perret filed a lengthy objection to the Plan categorizing their objections into nine points, summarized as follows: (1) the majority of debts listed for Slabbed are Handshoe's personal debts resulting from internet activities *ultra vires* to his official capacity; (2) judgments are the result of intentional torts by Handshoe personally that are not dischargeable in bankruptcy; (3) the plan contains defamatory and scandalous statements which relate to the kind of intentional torts committed by Handshoe via the internet; (4) Handshoe misrepresented to the Court that a $48,000.00 judgment belongs to Slabbed; (5) the plan of reorganization provides no viable plan for Slabbed "to survive as a business concern, and its supposed future viability rests solely on vague assertions of legal claims in civil suits where Mr. Handshoe's personal liability for intentional acts do not make such legal actions subject to bankruptcy protection or *915 discharge;" (6) the website is owned personally by Handshoe and not Slabbed;[9] (7) Handshoe himself is the only purported creditor of Slabbed who filed a claim for more than $100.00, and he filed papers claiming he is owed $500,000.00 under an indemnification agreement that has not been produced; (8) Handshoe intentionally used the bankruptcy proceeding to delay other civil proceedings against him and "[h]e has used this shelter to continue to defame and harass;" and (9) Handshoe has listed three creditors, Leary, Perret and Trout Point Lodge as a single entity rather than three, each possessing its own judgment debt against Handshoe. Dkt. No. 92 at 1-2.

Daniel Abel objected to the Plan claiming to have been fraudulently listed as a creditor of Slabbed and alleging that this "is part of a larger ongoing fraud and defamation campaign by Douglas K. Handshoe since 2010." Dkt. No. 93 at 1. Abel avers that he prevailed against Handshoe and his attorney in Louisiana litigation and has obtained mandatory fee judgments against them personally but that Slabbed does not owe him anything. *Id.* Abel alleges that the bankruptcy was filed in "bad faith" and with "ulterior motives," contending that Handshoe is attempting to include his personal debts in the bankruptcy of Slabbed. Dkt. No. 93 at 2. Abel further stated in support of his position that five courts have found that Handshoe "has conducted a campaign to defame and

humiliate me, Dr. Leary and Mr. Perret." *Id.* Finally, Abel adopted the objections filed by Leary and Perret. *Id.*

The first confirmation hearing was held on June 2, 2016. Dkt. No. 97. The Court heard arguments by counsel for Slabbed and testimony from Handshoe, and the Court directed Slabbed to file amended schedules and an amended disclosure statement to accurately identify Slabbed's assets and to describe with specificity the claims Slabbed intended to assert, including the lawsuits upon which it intended to fund its plan. Dkt. No. 97. The confirmation hearing was continued to a later date. Dkt. Nos. 97-98. On June 13, 2016, Slabbed amended its disclosure statement and schedules to include four lawsuits in which Slabbed allegedly asserts claims and to list as an asset of Slabbed the domain name "Slabbed.org." Dkt. Nos. 101-103. Those lawsuits include (1) *Yount v. Slabbed New Media, et al,* (counterclaim that somehow relates to the $48,000.00 attorney fee award in the *Trout Point Lodge* case); (2) *Handshoe v. Perret, Leary, Trout Point Lodge, National Geographic Society, et al* (asserting claims under 17 U.S.C. § 512 for purpose of gathering "the claims for a civil conspiracy"); (3) *Perret, et al v. Handshoe* (unasserted abuse of process claim); and (4) *Handshoe v. Broussard, et al* (unasserted racketeering claims). Dkt. No. 101 at 1-3. On July 24, 2016, Leary and Perret reurged their prior objections. Dkt. No. 124.

On July 28, 2016, the Court held the second confirmation hearing. Dkt. No. 125. Counsel for Leary and Perret argued that the Second Amended Disclosure Statement still did not provide sufficient information about the litigation proceeds to fund the Plan, such as where lawsuits are or would be filed and the status of the cases and theories of recovery, and noted potential jurisdictional issues if Slabbed intended to move litigation to the Bankruptcy Court. Moreover, counsel argued that the Plan is not feasible on its face. Debtor's counsel responded that they were under no duty to provide legal strategies for their lawsuits and argued that they had complied with *916 requirements for disclosure under the Bankruptcy Code. Counsel for the US Trustee was satisfied that its objections were resolved by the amendment, but stressed that if the plan was not confirmed that day the case was to be dismissed.

At the hearing, the Court made several observations:

> (1) Slabbed basically has no income and no liabilities other than (a) the $48,000 attorney fee liability of Handshoe that was assigned to Slabbed along with a right to recover a judgment for attorney fees, (b) a $12,000 attorney fee claim by Montgomery Law Center, and (c) a $450,000 alleged indemnification obligation from Slabbed to Handshoe related to the Canadian defamation judgment, an intentional tort;
>
> (2) The current operating report filed by Slabbed showed that it was operating at a loss[10];
>
> (3) Handshoe testified that Slabbed receives income from donations that should increase;
>
> (4) Handshoe rather than Slabbed is the party to most of the litigation in the Plan; and
>
> (5) Handshoe and Slabbed are separate entities with separate assets and liabilities.

Ultimately, the Court held that the proposed Plan was not feasible because the litigation proceeds are purely speculative and that the Debtor has no foreseeable hard cash prospects, capital or other assets with which to fund the Plan. The following authorities are cited in further support of the Court's denial of confirmation of Slabbed's Plan.

## III. Conclusions of Law

To have its Plan confirmed, Slabbed must satisfy the confirmation requirements enumerated under § 1129(a) of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a). "Among the critical requirements [of § 1129(a)] are the best interest of creditors test and the feasibility test." Collier on Bankruptcy ¶ 1129.01 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.). Specifically, a plan is feasible[11] under § 1129(a) if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization... unless such liquidation

or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). "[T]he bankruptcy court must make a specific finding that the plan as proposed is feasible." *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997). Slabbed must prove plan feasibility by a preponderance of the evidence. *Save Our Springs (S.O.S.) Alliance, Inc. v. WSI (II)-COS, L.L.C. (In re Save Our Springs (S.O.S.) Alliance, Inc., 632 F.3d 168, 172 (5th Cir. 2011)*. To show feasibility, Slabbed is required to prove "only a reasonable assurance of commercial viability" rather than a "guarantee of success." *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe* *917 *Enters., Ltd., II), 994 F.2d 1160, 1165-66 (5th Cir. 1993)*. The feasibility requirement contemplates "actual performance of the provisions of the plan and whether the things to be done under the plan can be done as a practical matter under the facts." *In re Landing Assoc., Ltd., 157 B.R. 791, 819 (Bankr. W.D. Tex. 1993)*; *In re CRB Partners, LLC*, No. 11-11924, 2013 WL 796566, at *7 (Bankr. W.D. Tex. Mar. 4, 2013) ("One purpose of the feasibility test is to weed out plans that promise more than debtors can deliver".).

In assessing feasibility of debtor's plan, courts typically consider:

> (1) the adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) and [sic] any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*In re Save Our Springs (S.O.S.) Alliance*, 632 F.3d at 173 n.6 (quoting *In re M & S Assocs., Ltd.*, 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992)). "[A] court can weigh (or indeed ignore) various factors at its discretion." *In re Geijsel*, 480 B.R. 238, 257 (Bankr. N.D. Tex. 2012). In considering these factors, the Court must review the sufficiency of the Plan of Reorganization's sources of funding.

The primary source of funding for the Plan is from litigation settlements or judgments. Slabbed's possibility of recovery from the pending or as yet unfiled lawsuits in an amount sufficient to fund the Plan within a reasonable time is at best highly speculative especially when one considers that Slabbed is not even a party in three of the four actions. Collier on Bankruptcy ¶ 1129.02[11] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (A "plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely.") (citing *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012); *In re FRGR Managing Member LLC*, 419 B.R. 576, 583 (Bankr. S.D.N.Y. 2009) ("[P]otential recovery from a lawsuit is insufficient to create a reasonable likelihood of rehabilitation."); *cf. In re Milstein*, No. 13-17286, 2014 WL 3511526 (Bankr. D. Colo. July 15, 2014) ("Numerous courts have found that debtors who propose to fund their chapter 13 plans from a hoped for favorable litigation outcome cannot satisfy the feasibility requirement of § 1325(a)(6).").

Handshoe testified that income for the business was primarily from donations to Slabbed's website, and there was no testimony to show that donations were concrete or contractual in nature. This income is too speculative to make the Plan feasible. *In re Save Our Springs (S.O.S.) Alliance*, 632 F.3d at 172-73 (nonprofit debtor reorganization plan was not feasible where debtor secured pledges from donors but presented no evidence of firm commitments and pledges were too speculative); *cf. In re Nesbit*, Bap No. EP 07-068, 2008 WL 8664762, at *5 (1st Cir. BAP June 17, 2008) (noting in a Chapter 13 case that many courts have held that "unsubstantiated expectations of financial contributions from third parties are insufficient to meet the feasibility requirement"). In addition, Handshoe testified that he would personally contribute $10,000.00 in funds from his accounting practice for distribution to unsecured creditors.[12] But even if this income *918 were guaranteed, Slabbed's historical income is insufficient to fund the Plan, and Handshoe's $10,000.00 contribution would not change this. Slabbed reported minimal income in its schedules. *See supra* p. 3 (listing from Statement of Financial Affairs, $5,768.00 for 2013, $4,826.00 for 2014 and $869.00 at time of filing in 2015). The monthly operating report for December 2015 showed a year to date negative net income of $13,451.00. And the Debtor's more recent monthly operating reports for the months of May, June and July, 2016, show a net monthly income of negative $367.00, negative $5,398.00, and $68.00, respectively. Dkt. Nos. 108, 123, 127.

Thus, the evidence shows that the Debtor does not have sufficient earning power or capital with which to fund the Plan. See *In re Friendship Dairies,* No. 12-20405-RLJ-11, 2014 WL 29081, at *10-11 (Bankr. N.D. Tex. Jan. 3, 2014) ("Courts, understandably, look favorably on debtors with available capital" and courts "should consider `concrete' and not `speculative' projections of a business.").

Slabbed proposes to fund the Plan through two identified means: (1) the proceeds of successful litigation as identified in the Plan itself and (2) donations from visitors to Slabbed's website and a $10,000.00 personal contribution from Handshoe. These sources of funding are far too speculative to be feasible, and confirmation, therefore, must be denied. See *In re CRB Partners,* 2013 WL 796566, at *9 (plan could not be confirmed where funding was too uncertain to make it feasible).

## IV. Conclusion

Confirmation of the Plan must be denied. The objections to the Plan are sustained to the extent that they raised feasibility of Slabbed's Plan, and the remaining issues raised therein are moot. Furthermore, because Slabbed did not succeed in confirming a plan of reorganization by the deadline set forth in the extended agreed order on the US Trustee's motion to dismiss, the Chapter 11 case is, in accordance with the terms of the order, dismissed.

IT IS THEREFORE ORDERED AND ADJUDGED that the Debtor has failed to meet its required burden of proof for confirmation to establish that the plan is not likely to be followed by liquidation of further financial reorganization under § 1129(a)(11), and confirmation of Slabbed New Media, LLC's Plan is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions are DENIED AS MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that the Debtor's Chapter 11 case is DISMISSED for failure to confirm a plan of reorganization by the deadline established by prior Court order.

SO ORDERED.

[1] The order conditionally approving the Disclosure Statement and setting the hearing for confirmation of the Plan was entered on April 26, 2016. Dkt. No. 80. At the June 2, 2016 hearing, Craig Geno appeared on behalf of Slabbed and Christopher Steiskal appeared for the US Trustee. Dkt. No. 97.

[2] Pursuant to Federal Rule of Civil Procedure 52, made applicable here by Federal Rules of Bankruptcy Procedure 9014(c) and 7052, the following constitutes findings of fact and conclusions of law of the Court.

[3] The judgment is shown as a receivable in connection with a lawsuit in the United States District Court for the Southern District of Mississippi, *Trout Point Lodge, et al. v. Handshoe,* No. 1:12cv90. Dkt. No. 31 at 5.

[4] Although Slabbed listed the debt as contingent, unliquidated and disputed, this listing is improper because the debt has been reduced to judgment. See *In re Scott,* No. 06-80176-G3-13, 2006 WL 3166841, at *3 (Bankr. S.D. Tex. Nov. 1, 2006) ("A final, binding judgment is not required for a debt to be noncontingent or unliquidated. Similarly, the fact that a judgment is on appeal does not make the debt noncontingent or unliquidated. A judgment on appeal represents a liability which is fixed and noncontingent and remains a final, enforceable judgment until it is reversed, if ever, on appeal."). This foreign judgment, however, has been held unenforceable here under the SPEECH Act. *Trout Point Lodge, Ltd. v. Handshoe,* 729 F.3d 481, 496 (5th Cir. 2013). But the definition of a claim in bankruptcy is broad enough to include this debt; although the judgment cannot be enforced against any assets held in the United States, it is still valid as against any foreign assets whether currently possessed or later acquired.

[5] The List of Creditors Holding 20 Largest Unsecured Claims lists Connie S. Montgomery with a claim for legal fees in the amount of $12,000. Dkt. No. 2. This includes two claims: (1) $5,398.48 incurred May 2014 through July 2014 and (2) $6,600.52 incurred August 2014 through June 15, 2015. Dkt No. 31 at 9.

[6] The List of Creditors Holding 20 Largest Unsecured Claims lists Jack E. "Bobby" Truitt with a claim for legal fees in the amount of $48,000. Dkt. No. 2. These fees were incurred in the representation of Handshoe in the *Trout Point Lodge* case. *Trout Point Lodge Ltd. v. Handshoe,* No. 1:12-cv-90, at 19 (S.D. Miss. Dec. 11, 2013).

[7] The Court believes that the schedules erroneously identify this creditor as "Chris Young." The Court of Appeal of Louisiana, reversing a lower court decision in favor of Slabbed and Handshoe, awarded Yount reasonable attorney's fees in that action. *Yount v. Handshoe*, 171 So.3d 381, 390 (La. Ct. App. 2015). Yount sued Slabbed and Handshoe for "defamation *per se,* intentional infliction of emotional distress, invasion of privacy, and cyberstalking. In particular, Mr. Yount allege[d] that Mr. Handshoe's comments constituted defamation *per se* or libel by innuendo by insinuating inappropriate and illegal sexual relations with the minor child." *Id.* at 384. That court found that "a pornographic drawing and evidence under seal from private divorce proceedings" were "published and distributed as clickbait to millions of people on the internet in a manner that defame[d] or invade[d] the privacy of another." *Id.* at 389-90. It is unclear to the Court whether the proceedings on remand have been completed or whether Yount's entitlement to attorney's fees has been reduced to a final judgment.

[8] Slabbed amended its schedules to add additional assets after the US Trustee's Motion to Convert or Dismiss. Dkt. Nos. 61, 102, 103.

[9] After Leary and Perret filed their objection, Slabbed amended its bankruptcy schedules to list the website as an asset of Slabbed. Dkt. Nos. 102, 103.

[10] The monthly operating report filed by Slabbed for May 2016 shows income of $150.00 and expenses of $517.00 with a negative $367.00 cash profit for the month. Dkt. No. 108 at 2. The June 2016 report shows income of $375.00, expenses of $5,773.00 for a negative $5,398.00 for the month. Dkt. No. 123 at 2. The July 2016 report shows income of $525.00, expenses of $457.00 and a positive cash profit of $68.00. Dkt. No. 127 at 2.

[11] "Although the Bankruptcy Code does not use the terms `feasible' or `feasibility,' the requirement imposed by § 1129(a)(11) is commonly known as the `feasibility' test for confirmation." *In re Trenton Ridge Inv'rs, LLC,* 461 B.R. 440, 478 (Bankr. S.D. Ohio 2011) (internal citation, quotation marks, and brackets omitted).

[12] No evidence regarding the income of the accounting practice was submitted.

**Save trees - read court opinions online on Google Scholar.**