

Ex. 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

Civil Action No. 1:15cv382-HSO-JCG

Sworn Declaration of Sophia Gruber

1. I am Sophia Gruber, a citizen of Austria, currently working in Nova Scotia, Canada. I was born on March 16, 1995.
2. I have been working at Trout Point Lodge during its 2017 season. I continue to work at the Lodge now.
3. I am working in Nova Scotia pursuant to a temporary apprenticeship work permit issued by the Government of Canada.
4. On June 28, 2017, I was working at the reception desk of Trout Point Lodge. A man appeared and asked for Charles Leary. I told the man he was not available. Charles Leary was not on the property.
5. He handed me two sealed, unmarked envelopes and said they were for Charles Leary. There was nothing written on the outside of the envelopes.
6. The man twice asked me my name and I told him.
7. The man did not identify himself, leave a card, or indicate in any way what the envelopes contained.
8. I thought he was the Lodge accountant or something similar.
9. I stored the envelopes at the reception desk.
10. I later left them out with some other mail at the desk.
11. I do not know what happened to them after that. That is all I know.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on Sep 12th, 2017 (date).

_Sophia Gruber_
Sophia Gruber (signature)

PROVINCE OF NOVA SCOTIA
COUNTY OF YARMOUTH

### Sworn Declaration of Ulysse Martin

1. I am Ulysse Martin, a French citizen currently resident in Nova Scotia on a Francophone Mobility temporary work permit. I currently live at 140 Trout Point Road, East Kemptville, Nova Scotia.

2. Last year I worked at Trout Point Lodge as a student intern, when I lived at 189 Trout Point Road. I returned this year in late June to work full time at the lodge.

3. I am not an officer or recognized agent of Trout Point Lodge, Limited, and never have been.

4. This year on or around August 17, 2017, a man came to the lodge while I was working. He told me his name was Donnie Acker. He asked me to identify myself which I did. He handed me three opened envelopes on which court papers where stapled, those court papers being therefore easily viewable without having to look inside.

5. He put those envelopes in my hands without my approval. When I took a look at these envelopes, without opening them, in front of him, I saw that he had handed me some kind of court documents. They were in my hands, but only because he had not told me what he was giving me. I told him that I didn't want to accept any court documents on behalf of anyone, including Trout Point Lodge. He told me that I had to take the papers or he would come again with the RCMP in order to display those documents on the Lodge's doors. Donnie Acker left. I mentioned the incident to my boss in an email.

6. Since then I have seen an email from the Nova Scotia Department of Justice stating that Donnie Acker is not a licensed Civil Constable in the Province of Nova Scotia.

7. I have never seen anyone attempt to deliver court papers personally to Charles Leary or Vaughn Perret at their home or inquire as to where they live. This includes Donnie Acker in 2017.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Oct 14th 2017_ (date). _____ Ulysse Martin (signature)

PROVINCE OF NOVA SCOTIA
COUNTY OF YARMOUTH

**Sworn Declaration of Ulysse Martin**

1. I am Ulysse Martin, a French citizen currently resident in Nova Scotia on a Francophone Mobility temporary work permit. I currently live at 140 Trout Point Road, East Kemptville, Nova Scotia.

2. Last year I worked at Trout Point Lodge as a student intern, when I lived at 189 Trout Point Road. I returned this year in late June to work full time at the lodge.

3. I am not an officer or recognized agent of Trout Point Lodge, Limited, and never have been.

4. This year on or around August 17, 2017, a man came to the lodge while I was working. He told me his name was Donnie Acker. He asked me to identify myself which I did. He handed me three opened envelopes on which court papers where stapled, those court papers being therefore easily viewable without having to look inside.

5. He put those envelopes in my hands without my approval. When I took a look at these envelopes, without opening them, in front of him, I saw that he had handed me some kind of court documents. They were in my hands, but only because he had not told me what he was giving me. I told him that I didn't want to accept any court documents on behalf of anyone, including Trout Point Lodge. He told me that I had to take the papers or he would come again with the RCMP in order to display those documents on the Lodge's doors. Donnie Acker left. I mentioned the incident to my boss in an email.

6. Since then I have seen an email from the Nova Scotia Department of Justice stating that Donnie Acker is not a licensed Civil Constable in the Province of Nova Scotia.

7. I have never seen anyone attempt to deliver court papers personally to Charles Leary or Vaughn Perret at their home or inquire as to where they live. This includes Donnie Acker in 2017.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed on Oct 14th 2017 (date). _____ Ulysse Martin (signature)

# AFFIDAVIT OF SERVICE

**CANADA**

**PROVINCE OF NOVA SCOTIA**

**COUNTY OF DIGBY**

THAT ON _Thursday, October 6th_ 2016, I, WAYNE P. SNOW, hereby state the following:

1) That I, WAYNE P. SNOW, a Provincial Civil Constable in the province of Nova Scotia, Canada, am qualified to make service in the Province of Nova Scotia.

2) That on _Thursday, October 6th_, 2016, I made personal service upon Trout Point Lodge, 189 Trout Point Road, E. Kemptville, NS B5A 5X9, thru

Name: _Ulysses Martin_,

Position with company _Acting Manager_, as a representative of Trout Point Lodge, thus, effecting service.

This Affidavit is based on personal knowledge, information and belief.

_Wayne P. Snow_
**WAYNE P. SNOW**

Wayne Snow
A Provincial Civil Constable in
The Province of Nova Scotia

SWORN TO AND SUBSCRIBED
BEFORE ME, NOTARY PUBLIC,
ON THE ___ DAY OF
_____, 2016.

_____
NOTARY PUBLIC

OLIVER JANSON
A Notary Public in and for the
Province of Nova Scotia

IN THE COUNTY OF YARMOUTH
PROVINCE OF NOVA SCOTIA, CANADA

U.S. District Court for the Southern District of Mississippi **CASE NO 15-CV-382**

DECLARATION OF CHARLES L. LEARY REGARDING ATTORNEY M. JUDITH BARNETT

1. On or around April, 2014, Trout Point Lodge, Vaughan Perret, and I engaged attorney M. Judith Barnett to enrol a Canadian copyright infringement judgment against Douglas Handshoe in Mississippi State court. Ms. Barnett was never engaged to appear in federal court in any matter.
2. I transcribe below portions of emails between myself and Ms. Barnett because this is necessary to create a proper record, but in so doing I am not waiving any attorney-client privilege.
3. Apparently, without the knowledge of Vaughan Perret and myself, Ms. Barnett enrolled in case 12-cv-90 in the U.S. District Court for the Southern District of Mississippi as counsel of record for all plaintiffs shortly after Henry Laird withdrew as counsel of record for all plaintiffs. The Order granting Laird's withdrawal was filed on April 10, 2014, according to my email records.
4. We never instructed Ms. Barnett to enrol in case 12-cv-90 and did not know show he had done so until November 24, 2014, when Barnett emailed us announcing she was "pleased to attached [sic] hereto two (2) Orders from the USDC for the Southern District of MS. One is an Order denying Handshoe's Motion for Writ of Garnishment and the other is, Order Granting Motion to Remand. Congratulations!!! Happy Thanksgiving."
5. Ms. Barnett had never informed us of the motion for garnishment in case 12-cv-90 and did not file an opposition to that motion.
6. We wrote back to Ms. Barnett the same day and said: "We were really surprised to see the Order re: garnishment. We had never seen the motion by Jack Truitt, which was filed in another case long terminated (the 1st SPEECH Act case). It was also not filed on behalf of Handshoe as the docket indicates, but on behalf of himself. Truitt says he served everyone (all counsel of record). Did you receive anything from him on or around October 8? We certainly did not." Our confusion about who the motion was filed on behalf of was due to the fact that Mr. Truitt was at that time claiming ownership of the judgment debt in three Louisiana state court cases.
7. We then spoke with Ms. Barnett by telephone shortly thereafter and she denied having received any notice of the garnishment motion.
8. Notably, Ms. Barnett also enrolled in error in a Hancock County Circuit Court case that Douglas Handshoe had filed and we had to request on multiple occasions that she withdraw from that case as well. We wrote to her in September, 2015: "We need to make sure you have removed yourself from the Broussard case, as you were never supposed to have enrolled in that case in the first place. We only hired you to deal with the enforcement of the Nova Scotia copyright judgment. If you have not done so as previously instructed, remove yourself from the case now, please."
9. Ms. Barnett wrote back and said: "I have not received anything on this case ever."
10. Based in part on assurances from Ms. Barnett that she had never received notices in case 12-cv-90, I filed a motion for original discipline with the U.S. district court. We alerted her we were doing so. I wrote to Ms. Barnett in May, 2015: "I wanted to alert you that I have filed a brief *pro se* motion in our original SPEECH Act case complaining about the conduct of Truitt/Handshoe last October where they filed a garnishment motion without giving us notice, and lying to Judge Guirola about who owned the judgment debt (Handshoe had transferred it in a notarized document to Truitt 7 months earlier). I do not know why, but someone did file a motion in that case enrolling you last May (despite the fact the case was closed). I assume that

was an error either by the court or someone in your office. In any event, Truitt did not notice us."

11. Again, at that time, Ms. Barnett took no action to remove herself as counsel of record in that case and also kept up her assurances to us that she had never received notices in that case.

12. At some point in the fall of 2015, Ms. Barnett passed our case onto another attorney at another law firm, Trey O'Cain. She originally had Mr. O'Cain appear for her in a bankruptcy case Handshoe had caused to be filed for his LLC, Slabbed New Media. Shortly thereafter, our enrolment of the Canadian judgment in Hancock County Circuit Court was dismissed because Ms. Barnett had failed to file a necessary affidavit. We continued to be billed for Mr. O'Cain's work through Ms. Barnett's office.

13. We received no communication, notices, or orders whatsoever from Ms. Barnett regarding case 12-cv-90 in 2016. She also filed nothing in that case in 2015 or 2016.

14. Sometime in early 2016, we became dissatisfied with the representation provided by Ms. Barnett and subsequently the attorney she passed us onto, Mr. O'Cain. They had both failed to properly set motions for hearing in state court, in yet travelled long distances for the unscheduled hearings, and were also charging us the same hourly rate for travel time as for legal work. We reached an agreement with Ms. Barnett that she would pay a large part of Mr. O'Cain's billing, and we ended our relationship with both. It was my impression Ms. Barnett was not happy with having to pay Mr. O'Cain. Ms. Barnett was paid in full, and in fact at one point made a billing error, failing to credit us in full for a payment.

15. In November, 2016, I again wrote to Ms. Barnett:

> "It has come to our attention that you are still enrolled in Trout Point Lodge v. Handshoe, U.S. District Court for the Southern District of Mississippi 12-cv-90.
>
> This is another case your office apparently enrolled you in, even though we never engaged you for this case, and the case was closed. Twice now, motions have been filed by Handshoe in this     case, and we are not receiving notice of the motions; they must be going to you by ECF. . . .
>
> You need to immediately withdraw from the case and indicate in the motion that you were never engaged for this case, your enrollment was an error, and you have never worked on it or given us notice of motions.
>
> Please confirm that you will be doing this."

16. Ms. Barnett replied: "I have not received any notices from the courts for this case. Do you have some type of entry of appearance that would show that I am in this case because I have no such notice. [. . .] The Clerk should not take filings in a closed file unless someone reopens those files. Federal files are usually not reopened."

17. We provided Ms. Barnett with a copy of the list of attorneys in the case 12-cv-90, including herself. Ms. Barnett did not withdraw, so I again wrote to her and said: "I am again writing to ask that you immediately withdraw from this case. We never engaged or authorized you to make make yourself an attorney of record in this case."

18. Ms. Barnett replied: "I will check into this when I have time. I am short staffed. You stiffed me on my bill and then did not pay Trey O'Cain. This is at the bottom of the paying clients. I have withdrawn from every case I had with nod [sic] I do not receive notices. If this case is closed, then I can not file anything in it."

19. Ms. Barnett did not withdraw from case 12-cv-90 in 2016.

20. We received no communications initiated by Ms. Barnett in 2017.
21. In September, 2017, I again wrote to Ms. Barnett and asked her to withdraw from case 12-cv-90. She did not respond, so I wrote again.
22. On September 22, 2017, Ms. Barnett wrote: "It is my belief that I have withdrawn from all of your litigation. which [sic] cause no. is Judge Guirola saying that I am the attorney of record? I need the cause number in order to determine what my status is and if I can call the Judge and explain and hopefully extricate you from any fines."
23. Instead of doing what she promised, over that weekend Ms. Barnett filed a Motion to Withdraw, but did not explain any pertinent facts or set the record straight regarding her clients Trout Point Lodge, Vaughn Perret, and myself never receiving notice of motions or copies of orders in case 12-cv-90 since she was enrolled as counsel of record. She also misrepresented in her motion that we had just then told her we no longer wanted her services, which was not the case.
24. Both before and after her filing of her first Motion to Withdraw I told Ms. Barnett that I did not consent to her withdrawal and that we expected her to make full disclosure of the situation to the court. She refused to do so, and continued to represent to the court that we requested her to withdraw at that time.
25. At all times we communicated with Ms. Barnett via the same email address that is registered with the district court's ECF system. Ms. Barnett never communicated any of the above relevant facts to the court in her motions to withdraw as counsel of record.
26. In think it relevant that at page 2 of Douglas Handshoe's Motion to Dismiss filed in the U.S. District Court for the Southern District of Mississippi case 15-cv-382, filed November 13, 2017, document 188, Mr. Handshoe argues at fn. 2: "Leary falsely claims in paragraph 28 of his Countercomplaint that he and his common law husband Vaughn Perret 'were on the docket as pro se' when it is clear their Attorney Judith Barnett was enrolled to represent their interests until October 18, 2017." I note that I do not have a common law husband and my statement was not false. Mr. Handshoe should stick to representing facts that he knows are facts.
27. Vaughn Perret and I appeared on the docket of case 12-cv-90 as *pro se* on June 9, 2016, before Mr. Handshoe filed his debtor exam motion. My Canadian address was on file. I received no notice of the motion for the judgment debtor examination, by mail or otherwise.
28. Although I have gained knowledge of subsequent motions in that case, I have never been served with any notices or orders in case 12-cv-90 in 2016 or 2017. I believe that personal notice is a legal requirement for compulsory process served in Canada and for show cause orders served in Canada. It is a legal requirement under the Nova Scotia Civil Procedure Rules. To my knowledge, Mr. Handshoe has presented no proof or evidence whatsoever of my receiving personal notice in 12-cv-90, and the same is true for Mr. Perret.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 12/12/17 (date).

_____
Charles L. Leary (signature)