

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

DOUGLAS HANDSHOE

v.                                    CIVIL ACTION NO. 1:15cv382-HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A/ TROUT POINT
LODGE LTD OF NOVA SCOTIA & IN
THEIR INDIVIIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**

This Memorandum in Support of Motion for Partial Summary Judgment is

respectfully submitted by Plaintiff Douglas Handshoe.

## <u>Legal Standard</u>

Summary judgment is warranted under Rule 56 when evidence reveals no

genuine dispute regarding any material fact, and that the moving party is entitled to

judgment as a matter of law. (FED. R. CIV. P. 56(c)) The party moving for

summary judgment bears the initial responsibility of informing the district court of

the basis for its motion and identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its burden, the non-

moving party must "come forward with specific facts showing a genuine factual

1

issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689, 123 L.Ed. 2d 317 (1993); *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## THE UNDISPUTED FACTS

On May 6, 2013 Plaintiff, pursuant to the Creative Commons Attribution-NonCommercial-NoDerivatives 4.0 International License, posted a parody video owned by Slabbed New Media, LLC to his personal YouTube account. After the video was uploaded to the YouTube service, it was hosted by YouTube at the following URI, where it remains to this date:

https://www.youtube.com/watch?v=M_pc4bjaLno

The subject video consists of a two minute forty second pictorial montage followed by 33 seconds of credits all of which was set to music.  Slabbed New

Media, LLC created the video on or about May 5, 2013. It bears United States Copyright registration number PA0002019025 dated January 31, 2017[1].

Of the two-minute forty second video run time of the pictorial montage, a photo of Leary and Perret with ugly dog was displayed for five seconds[2]. This photograph is the Copyrighted material of the Toronto Star and was obtained by Plaintiff for Slabbed New Media, LLC from the Toronto Star website[3]. This photograph was first published in a Star news story about Leary and Perret which ran on or about February 2, 2012[4]. Leary, voluntarily submitted this photo to the Toronto Star on February 2, 2012 for the Star's copyrighted use in their news story, without reservation of any rights[5], which were owned at the time of the photo's submission to the Toronto Star by Kara Krowell, who was credited by the Toronto Star for the Photo[6]. The Toronto Star never sent nor authorized any third party to send a DMCA Takedown Notice concerning this photograph[7].

---

[1] See **ECF 203-12** US Copyright Office's Copyright Catalogue at Exhibit 1 to Declaration Accompanying the Motion filed with this memorandum.

[2] See **ECF 186-3**, Screen Capture of Photo used in YouTube video at Exhibit 2 to Declaration Accompanying the Motion filed with this memorandum.

[3] See **About: Terms & Conditions of the Toronto Star** website captured on May 3, 2013 by Archive.org (https://web.archive.org/web/20130503144802/https://www.thestar.com/about/terms.html) at Exhibit 3 to Declaration Accompanying the Motion filed with this memorandum.

[4] See **ECF 34-1** submitted by Torstar at Exhibit 4 to Declaration Accompanying the Motion filed with this memorandum.

[5] See **ECF 186-1** submitted by Mr. Leary at Exhibit 5 to Declaration Accompanying the Motion filed with this memorandum.

[6] See **ECF 34-1** submitted by Torstar at Exhibit 4 to Declaration Accompanying the Motion filed with this memorandum.

[7] See **ECF 64-4** Declaration of Kathy English submitted by Torstar at Exhibit 6 to Declaration Accompanying the Motion filed with this memorandum.

Additionally, a second photo of Leary, Perret and Daniel Abel was displayed in the video for five seconds[8]. It was obtained by Slabbed New Media, LLC from Nova Scotia Open to the World, a publication of Progress Media, a party which has defaulted in this instant case. The photograph, which was taken by Marilyn Smulders, another party in default in this instant matter and was used in the Fall/Winter, 2006 edition of Nova Scotia Open to the World, which was given away free of charge to the public[9] [10].

After the publication of the YouTube Video in question Trout Point Lodge would obtain Canadian Copyright Registrations of the above mentioned creative works on July 8, 2013.[11]

On February 15, 2014 Leary, using YouTube Fill in webform complaint, submitted a DMCA Takedown notice claiming the Slabbed New Media video violated his copyright interest in the above-mentioned photographs that each

---

[8] See ECF 203-17 submitted by Mr. Leary at Exhibit 7 to Declaration Accompanying the Motion filed with this memorandum.
[9] See New World Creole, Open to the World Magazine, Winter 2006 Edition at Exhibit 8 to Declaration Accompanying the Motion filed with this memorandum.
[10] See also: DMCA Takedown Notice by Progress Media Group dated December 13, 2012 at Exhibit 9 to Declaration Accompanying the Motion filed with this memorandum.
[11] See ECF 175-2, Canadian Copyright Registration Number 1106087 at Exhibit 10 to Declaration Accompanying the Motion filed with this memorandum.

appears for 5 seconds in the two-minute forty second pictorial montage video.[12] [13] [14]

At all times specified in this chain of events, YouTube's terms of service expressly defined the controlling authority for Copyright Infringement Complaints[15]:

> 8. Digital Millennium Copyright Act
> If you are a copyright owner or an agent thereof and believe that any Content infringes upon your copyrights, you may submit a notification pursuant to the Digital Millennium Copyright Act ("DMCA") by providing our Copyright Agent with the following information in writing (see 17 U.S.C 512(c)(3) for further detail):

On July 14, 2014 Plaintiff, using YouTube's webform submitted a DMCA Counter notification to the Trout Point Lodge DMCA Takedown Notice dated February 15, 2014. Plaintiff received an Email from YouTube confirming the Counter Notification.[16] YouTube also forwarded the Counter Notification to Trout Point Lodge, Limited on the same date.

---

[12] See **Email to Douglas Handshoe by YouTube** dated February 15, 2014 for the Notification sent him concerning the Trout Point Lodge DMCA Takedown Notice sent by Charles Leary at Exhibit 11 to Declaration Accompanying the Motion filed with this memorandum.

[13] See **ECF 175-3** submitted by Mr. Leary for the fill in YouTube form used by Mr. Leary to submit the takedown notice at Exhibit 12 to Declaration Accompanying the Motion filed with this memorandum.

[14] See **ECF 96-11** pages 10 and 11 submitted by Mr. Leary for follow-up correspondence between Trout Point and YouTube, which specifically mentions DMCA Section 512(f) at Exhibit 13 to Declaration Accompanying the Motion filed with this memorandum.

[15] See **ECF 111-8** YouTube's terms of Service at Exhibit 14 to Declaration Accompanying the Motion filed with this memorandum.

[16] See Email from YouTube to Handshoe dated July 14, 2014 at Exhibit 15 to Declaration Accompanying the Motion filed with this memorandum.

On July 15, 2014 "Vaughn Perret, JD" acting for Trout Point Lodge sent an email to YouTube which termed the July 14, 2014 Counter Notification, "an actionable instance of misrepresentation under the **Digital Millennium Copyright Act** by Douglas Handshoe." (Emphasis added) Perret attached the 2012 Canadian Injunction[17] he obtained against Plaintiff to the email along with the Court Opinion from Trout Point Lodge et al v Handshoe (2014 NSSC 62) to the email.

On August 6, 2014 YouTube notified Trout Point Lodge[18] that the content would be blocked in Canada as a result of the July 15, 2014 Perret email to YouTube. On August 6, 2014 Leary replied to the YouTube email and asked that "you **disable** the sections of the video where the copyrighted works appear". On August 6, 2014 Perret also replied to the YouTube email referencing the DMCA by stating in part, "The 512(c) safe harbor will apply only if the service provider…"[19]

---

[17] The Canadian Defamation Judgment supporting the 2012 injunction has been previously found to be unenforceable in the United States of America under the United States SPEECH Act.

[18] See **ECF 175-4**, Email from YouTube to Trout Point submitted by Mr. Leary at Exhibit 16 to Declaration Accompanying the Motion filed with this memorandum. Notably Mr. Leary exhibited on a small portion of the total email exchange with YouTube.

[19] See the **Entire email chain between YouTube and Trout Point** which also illustrates Perret's involvement in the February 15, 2014 Takedown Notice beginning with the July 14, 2014 Notice of Counter notification under the DMCA at Exhibit 17 to Declaration Accompanying the Motion filed with this memorandum. Mr. Leary submitted the entire chain to Plaintiff as part of his disclosures on October 30, 2017.

On August 6, 2014 YouTube notified Plaintiff via email about the 2012 Canadian Injunction submitted by Perret and that the video would not be viewable in Canada.[20] The video was restored for public viewing elsewhere.

Finally, Mr. Leary was served with Requests for Admissions on January 4, 2018 and as of this date has failed to respond. Leary is deemed to have admitted that he did not consider the five fair use factors before sending the DMCA Takedown Notice to YouTube.[21]

### APPLICATION OF THE LAW TO THE UNDISPUTED FACTS

The undisputed facts recited above and Defendant Leary's assertion that Plaintiff has infringed on his copyrights implicate several aspects of the Copyright Statute including whether or not Mr. Leary would have an actionable copyright claim and whether or not he considered "fair use" before sending the notice for Trout Point Lodge, Limited.

### There is no Copyright Infringement as the Leary can not as a matter of law prove the elements of Copyright Infringement

In order to prove copyright infringement with respect to the YouTube video plaintiff posted under creative commons license that is owned by Slabbed New Media, LLC, Leary would have to prove Slabbed New Media LLC copied original

---

[20] See **Email to Handshoe from YouTube dated August 6, 2014** including the attachment at Exhibit 18 to Declaration Accompanying the Motion filed with this memorandum.
[21] See Plaintiff's Requests for Admissions of Facts dated January 4, 2018 at Exhibit 19 to Declaration Accompanying the Motion filed with this memorandum.

expression from Leary's copyrighted work, which he obtained by after the fact assignment. Leary would also have to prove that the defendant's use of the copyrighted work was substantial. To determine whether Slabbed New Media's use of the copyrighted work was substantial, consideration focuses on how important the copied portion was to the copyrighted work as a whole.

Leary would have to show that Slabbed New Media had access to his copyrighted work and that there are substantial similarities between the Slabbed New Media's creative work and Leary's copyrighted work. Leary would also have to show that he has a valid Copyright interest in the Toronto Star's creative work.

Further, with respect to Plaintiff's use of the Slabbed New Media video to his personal YouTube account, Leary would also have to show that Plaintiff directly profited from the infringing activity and had the right and ability to supervise or control the infringing activity.

Here, Slabbed New Media copied a photograph that constituted a portion of a news story belonging to the Toronto Star and used it as a very small part of pictorial montage set to music. Similarly, Slabbed New Media copied a then 6 plus year old photograph that constituted a portion of a news story on the Lodge published by Progress Media and Marilyn Smulders that was given away free to the public and used it in a five second part of the same two-minute forty second pictorial montage set to music. In proper context, at the time the two photographs

8

were used by Slabbed New Media, LLC, they were taken from third party news accounts and used as a very small part of a parody video. As a matter of law Leary cannot bear his threshold burden of proof the creative works were copied as they lack substantial similarity.

Assuming *arguendo*, the two creative works in question were copied and are considered "identical" any infringement is clearly *de minimis*, and thus, cannot lead to a finding of substantial similarity. "The *de minimis* doctrine provides that if unauthorized copying is sufficiently trivial, 'the law will not impose legal consequences.'" *Straus v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620, 639 (S.D.Tex.2007) (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172–73 (2d Cir.2001)). Stated in another way, "[f]or an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." *Newton v. Diamond*, 388 F.3d 1189, 1192–93 (9th Cir.2004). "This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial." *Id.* at 1193 (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A], at 13–30.2). "To establish that an infringement is quantitatively de minimis and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial

9

similarity.'" *Parker v. Dufresne*, 781 F.Supp.2d 379, 383–84 (W.D.La.2011) (quoting *Straus*, 484 F.Supp.2d at 639). "The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law." *Newton*, 388 F.3d at 1193.

In *Newton*, the Ninth Circuit Court of Appeals gives us a detailed analysis of the *de minimis issue*. Newton, the plaintiff in that case, composed the song "Choir" and he subsequently copyrighted both the sound recording and the underlying composition. *Id.* at 1190–91. Later, the "Beastie Boys obtained a license ... to use portions of the sound recording of 'Choir' in various renditions of their song 'Pass the Mic.'" *Id.* at 1191. In "Pass the Mic," the Beastie Boys used a portion of "Choir" consisting "of three notes, C—D flat—C, sung over a background C note played on the flute." *Id.* Specifically, the "Beastie Boys digitally sampled the opening six seconds of Newton's sound recording of 'Choir.'" *Id.* at 1192. The "Beastie Boys repeated or 'looped' this six-second sample as a background element throughout 'Pass the Mic,' so that it appears over forty times in various renditions of the song." *Id.* Nevertheless, despite obtaining a license to use portions of the sound record, the Beastie Boys failed to obtain a license to use the underlying composition. *Id.* at 1191 As a result of their use of the portion of "Choir, Mr. Newton sued the Beastie Boys, alleging that they violated his copyright."

In *Newton*, the Ninth Circuit stated that "[t]he high degree of similarity between the works ... but the limited scope of the copying, place [the plaintiff's] claim for infringement into the class of cases that allege what [Melville B.] Nimmer refers to as 'fragmented literal similarity.'" *Id.* at 1195. As the Ninth Circuit went on to state:[22]

> Fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure. Because the degree of similarity is high in such cases, the dispositive question is whether the copying goes to trivial or substantial elements. Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole. This focus on the sample's relation to the plaintiff's work as a whole embodies the fundamental question in any infringement action, as expressed more than 150 years ago by Justice Story: whether "so much is taken[ ] that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another." Courts also focus on the relationship to the plaintiff's work because a contrary rule that measured the significance of the copied segment in the defendant's work would allow an unscrupulous defendant to copy large or qualitatively significant portions of another's work and escape liability by burying them beneath non-infringing material in the defendant's own work, even where the average audience might recognize the appropriation.

In looking at the specific facts of Newton, the Ninth Circuit found that "no reasonable juror could find the sampled portion of the composition to be a quantitatively or qualitatively significant portion of the composition as a whole."

---

[22] *Newton v. Diamond*, 388 F.3d 1195 (Internal Citations Omitted)

*Id*. Specifically, the three-note sequence appeared only once in the plaintiff's original composition, and it only comprised six seconds, or approximately two percent, of the entire composition. *Id*. at 1195–96. Additionally, the composition was not qualitatively significant because the section used by the Beastie Boys was "no more significant than any other section" in the original composition. *Id*. at 1196. Furthermore, the sampled section did "not represent the heart or the hook of the 'Choir' composition, but rather [was] 'simple, minimal and insignificant.'" *Id*. Based on the court's review, it found that "[t]he copying was not significant enough to constitute infringement," and granted summary judgment to Diamond.

Here we have a very analogous situation. The two photographs in question constitute a portion of the news accounts from which they were taken and comprise a total of ten seconds of the two-minute forty second video montage. (6.25% of the total.) Further, of the total pictorial montage run time, only thirty seconds total involves materials which could arguably be considered subject to third party copyrights which is less than 20% of the total run time of the pictorial montage. The other 80 plus percent of the pictorial montage run time features reader submitted photos and screen captures of various affidavits and court filings. As in *Newton* no reasonable person could find the 10 second portion of the video to which Leary claims violates his copyright to be a quantitatively or qualitatively a significant portion of the composition as a whole.

However, assuming *arguendo* that the Court would find that the photographs in question would constitute a significant portion or the entirety of the creative work for purposes of the "copying" element other circuits such as the 9th Circuit have found that such copying might also be considered *de minimis* when the use of the work is so fleeting or trivial that it is a trifle with which the law should not be concerned thus sometimes even copying the entire work or much of the work can be *de minimis* under this definition. For instance, in *Gottlieb Dev., LLC v. Paramount Pictures*, 590 F. Supp. 2d 625 (S.D. N.Y. 2008) a movie producer's use of distributor's pinball machine was considered to be *de minimis* and did not result in copyright infringement when scene in question lasted only three and a half minutes, machine appeared in scene sporadically, for no more than a few seconds at a time, machine was always in background, machine never appeared by itself or in close-up, machine played no role in plot, and designs on backglass and playfield of machine were never fully visible and were either out of focus or obscured.

In *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007) the Court found "[t]he ancient maxims of *de minimis non curat lex and lex non curat de minimis* teach that the law cares not about trifles". In *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 886-87 (9th Cir. 2016), the Ninth Circuit held that the *de minimis* exception even applies to copyrighted sound recordings, just as it always has been held to apply to compositions.

13

**The Use of the Photographs in Question in the Slabbed New Media Video is
Clearly Sanctioned by the Fair Use Doctrine**

Fair use is generally considered to be an affirmative defense. However, in

Digital Millennium Copyright Act "takedown" cases such as this instant matter,

fair use is "treated differently than traditional affirmative defenses." *Lenz v.*

*Universal Music Corp.*, 815 F.3d 1145, 1152-53 (9th Cir. 2016). In *Lenz*, the 9th

Circuit found that in DMCA cases, a copyright holder must have good faith belief

that the allegedly infringing use was not fair use before sending "takedown" notice.

"The fair use doctrine 'permits and requires courts to avoid rigid application of the

copyright statute when, on occasion, it would stifle the very creativity which that

law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577

(1994). In *Campbell*, the United States Supreme Court set out a five-factor test to

determine if fair use applies:

> 1. **Purpose and Character of the Defendant's Use, including whether
>    such use is of a commercial nature or is for nonprofit educational
>    purposes.** *Campbell*, 510 U.S. at 579-80, 583, 588 explains that the
>    purpose of this element is to investigate the commercial nature of the
>    use, whether the use was transformative, whether the use tended to
>    supplant or supersede the infringed work, and whether the use
>    parodied or "conjure[d] up" the infringed work.

Using the guidance in *Campbell*, in *Seltzer v. Green Day, Inc.*, 725 F.3d

1170, 1175 (9th Cir. 2013) the 9th Circuit found Green Day's use of artist's original

work in its four-minute concert video backdrop as transformative because original

work took on new and different meaning in video. *Id.* at 1176-77. In *Elvis Presley Enters., Inc. v. Passport Video*, (9th Circuit 2003) 349 F.3d at 629 the Court found "new works as 'transformative' when works use copyrighted material for purposes distinct from the purpose of original material."

The use by Plaintiff on his personal YouTube account is clearly noncommercial. Additionally, the creative work which was subject to the Trout Point Takedown Notice dated February 15, 2014 was also clearly a transformative use of the original creative works.

2. **Nature of Copyrighted Work**. This factor considers whether the work is published or not and whether the work is factual or creative in nature. Prior publication by original author tends to support finding of fair use.

Again, this factor overwhelmingly favors the Plaintiff. In *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) the Court found that fair use finding is strongly favored when infringed work is informational, factual and news. *Id.* at 1122.

3. **Amount and Substantiality of Portion of Infringed Work Used by Infringing Work in Relation to the Copyrighted Work as a Whole**. This factor was expressed in expressing that focus of this factor is question of "substantial similarity" and whether use was "reasonable in relation to the purpose of the copying" rather than whether use was fair.

This factor overwhelmingly favors the Plaintiff. The video in question transforms two news stories by using the pictures used in them as a small part of the overall Slabbed New Media video. As is previously discussed the use of the original photographs and the copies by Slabbed New Media were not substantially similar nor would the Slabbed New Media video interfere with any potential market of the photographs.

4. **Effect of Use of Infringing Work on the Potential Market for or Value of the Copyrighted Work**. Per *Campbell*, 510 U.S. at 590-91, n.21, this factor involves: 1. Assessing harm use can cause to copyright owner's market and market effect if others also infringe through such use. 2. Considering if use displaces or substitutes for original work. 3. Examining effect of use on derivative market for protected work. The Court also noted that "the importance of this [fourth] factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors". In *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560-69 (1985) the Court found that the effect of defendant's infringing work on market for or value of plaintiff's work is the most important of fair use factors. *Id* at 566.

This factor again overwhelmingly favors the Plaintiff. A controlling case on this question in another Circuit is *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013) where the Court explained that this factor favors finding of fair use when use "advances [the alleged infringers'] own original creation without any reasonable threat to [the original author's] business model" *Id.* at 1280. Here, Defendant Leary has presented no evidence whatsoever the

pictures at controversy were ever offered for sale to the public, nor has he ever alleged a market where they were sold. In fact, the only market the pictures ever found were public interest news stories planted in the Canadian media by Mr. Leary and Mr. Perret that were available free of charge to the public. Slabbed New Media's transformational use in no way threatened those existing markets. Further, since Plaintiff published the video to his personal YouTube account pursuant to the Slabbed New Media, LLC creative commons license which forbids commercial re-use, there is no market to which the Plaintiff can ever tap under the terms of that license to monetize the Slabbed New Media video.

> 5. **Additional Factors**. These factors would include: 1) the state of mind of the parties, 2) Parody often presents difficulties because the success of its imitative character depends on its ability to "conjure up" the original work that it parodies. This may create an issue of fair use. (*Campbell*, 510 U.S. at 588-89, explaining importance of context when evaluating parodies and how parodies usually serve different market functions than original).

This factor favors Plaintiff. The video itself is a parody which promotes the Slabbed New Media website and its coverage of the Jefferson Parish Political Corruption Scandal. Unlike the precedent setting cases involving parodies referred to above the Slabbed video only took a small amount of its pictorial content subject to copyright from third party sources. In that respect the video is not conjuring up the photographs which include Leary, Perret and Abel but rather conjured up their involvement in Aaron Broussard's bribery and money laundering scheme Slabbed

17

New Media unraveled in what was a major public interest news story. The

important context here the Court should consider is that Leary and Perret are at the

minimum vortex public figures, who self-promoted their legal battles with instant

plaintiff to the Canadian media, voluntarily furnishing images of themselves to that

end. This is nothing more than thin skinned criminals trying to preserve a façade

by misusing the processes contained in the Copyright Act to silence their critics[23].

### Leary, By His Own Deemed Admission, Did Not Consider the Fair Use Factors Before Sending the DMCA Takedown Notice

At ECF No. 175-1, Mr. Leary declared in paragraph 11 the following

understanding of the United States Fair Use Doctrine[24]:

> I took into consideration my layman's understanding of fair use and fair
> dealing when I filled out the YouTube form on February 15. In particular I
> remember being aware that if the use is commercial, fair use is highly
> unlikely. I thought the use was commercial, and so did the Supreme Court of
> Nova Scotia. I also remember reading cases where the use of the entirety of
> a creative work made it not fair use or fair dealing. For those reasons, I did
> not think and still do not think the YouTube video encompassed fair use of
> the photograph.

As this memorandum has shown, Mr. Leary "layman's understanding" bears

little resemblance to the self-evident noncommercial use of the video on YouTube.

He would later confirm via his deemed admissions that he did not consider any of

---

[23] See Plaintiff's Requests for Admissions of Facts dated January 4, 2018 at Exhibit 19 to Declaration Accompanying the Motion filed with this memorandum.
[24] See ECF 175-1, Leary Declaration dated October 9, 2017 at Exhibit 20 to Declaration Accompanying the Motion filed with this memorandum.

the four main fair use factors applicable in the United States. Leary also is deemed

to have admitted that[25]:

1. From 2004 to 2010 he assisted former Jefferson Parish President
   Aaron Broussard with a corrupt bribery scheme involving Louisiana
   businessmen as detailed in the United States criminal prosecution
   styled United States of America versus Aaron Broussard.
2. From 2004 to 2010 he engaged in a money laundering scheme with
   Aaron Broussard which used Broussard's rental real estate at the
   Trout Point Lodge subdivision to convert bribes to rental income.
3. That he sued the New Orleans Times Picayune for defamation in
   Canada in 2010 via a practice known as "libel tourism" in order to
   silence journalistic inquiry into the Aaron Broussard corruption
   scandal.
4. That he sued Plaintiff for defamation in Canada in 2011 and 2012 via
   a practice known as "libel tourism" in order to silence journalistic
   inquiry into the Aaron Broussard corruption scandal.

*Lenz v. Universal Music Corp.*, 801 F.3d 1126 (2015) makes it abundantly

clear that Fair Use should be considered prior to the submission of Takedown

Notices under United States Law in order for such notices to not be

misrepresented. It requires that all rightsholders issuing Takedown notices under

Section 512 must consider whether a use is a lawful fair use before issuing a

takedown notice holding that fair use is not just a carve-out of the copyright system

but a right on the same level of those described in the rest of the statute. Lenz also

---

[25] Id.

held that a victim of takedown abuse can vindicate their rights even if the victim cannot show actual monetary loss.

Leary in his previous arguments to the Court disregarded *Lenz* in favor of *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004) quoting that "In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation." However, the decision in *Lenz* is entirely consistent with *Rossi* by determining that failure of a copyright holder to consider fair use constitutes a "knowing misrepresentation":

The Court held that 17 U.S.C. § 512(c)(3)(A)(v) requires copyright holders to consider whether the potentially infringing material is a fair use of a copyright under 17 U.S.C. § 107 before issuing a takedown notification. Section 512(c)(3)(A)(v) requires a takedown notification to include a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." In *Lenz*, the parties disputed whether fair use is an authorization under the law as contemplated by the statute which was an issue of first impression in any circuit across the nation. The Lenz Court unequovacally held that "We agree with the district court and hold that the statute unambiguously contemplates fair use as a use authorized by the law. Fair use is not just excused by the law, it is wholly

20

authorized by the law." *Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1132 (2015), As Amended 2016.

Additionally, the Court in *Lenz* specifically reconciled their findings to *Rossi* by finding that, "Universal faces liability if it knowingly misrepresented in the takedown notification that it had formed a good faith belief the video was not authorized by the law, i.e., did not constitute fair use." *Id* at 1134.

Applying the guidance found in Lenz to the facts presented in instant matter can only result in a finding that as a matter of law, the Trout Point DMCA Takedown Notice of February 15, 2014 to YouTube was misrepresented under Section 512.

### Conclusion

Plaintiff respectfully moves this Court to enter Judgment in favor of the Plaintiff with respect to Court Five of the Third Amended Complaint and to award Plaintiff actual, nominal and punitive damages in an amount to be determined.

Respectfully submitted this 26th day of March, 2018,

_____

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

21

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on March 26, 2018 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

I, Douglas Handshoe, hereby certify that on March 26, 2018, I mailed the foregoing to Charles Leary at 308 5th Ave E, Vancouver, BC V5T 1H4 Canada.

Respectfully submitted this 26th day of March, 2018,

_____

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com