IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS HANDSHOE

v.                                CIVIL ACTION NO. 1:15cv382-HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A/ TROUT POINT
LODGE LTD OF NOVA SCOTIA & IN
THEIR INDIVIIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA

**MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO MR>
LEARY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This Memorandum in Support of Response in Opposition to Mr. Leary's Motion for Partial Summary Judgment is respectfully submitted by Plaintiff Douglas Handshoe.

### THE UNDISPUTED FACTS

On May 6, 2013 Plaintiff, pursuant to the Creative Commons Attribution-NonCommercial-NoDerivatives 4.0 International License, posted a parody video owned by Slabbed New Media, LLC to his personal YouTube account. After the video was uploaded to the YouTube service, it was hosted by YouTube at the following URI, where it remains to this date[1]:

https://www.youtube.com/watch?v=M_pc4bjaLno

---

[1] It was no secret Slabbed New Media, LLC created and owned the video as the website was prominently mentioned at the beginning of and throughout the video and " A Slabbed New Media, LLC Production" appears in the credits beginning at 2:40, immediately after the Toronto Star Photo Mr. Leary claims to own.

1

The subject video consists of a two minute forty second pictorial montage followed by 33 seconds of credits all of which was set to music. Slabbed New Media, LLC created the video on or about May 5, 2013. It bears United States Copyright registration number PA0002019025 dated January 31, 2017[2].

Of the two-minute forty second video run time of the pictorial montage, a photo of Leary and Perret with ugly dog was displayed for five seconds[3]. This photograph is the Copyrighted material of the Toronto Star and was obtained by Plaintiff for Slabbed New Media, LLC from the Toronto Star website[4]. This photograph was first published in a Star news story about Leary and Perret which ran on or about February 2, 2012[5]. Leary, voluntarily submitted this photo to the Toronto Star on February 2, 2012 for the Star's copyrighted use in their news story, without reservation of any rights[6], which were owned at the time of the photo's submission to the Toronto Star by Kara Krowell, who was credited by the Toronto Star for the Photo[7]. The Toronto Star never sent nor authorized any third party to send a DMCA Takedown Notice concerning this photograph[8].

---

[2] See **ECF 203-12** US Copyright Office's Copyright Catalogue
[3] See **ECF 219-3**, Screen Capture of Photo used in YouTube video.
[4] See **About: Terms & Conditions of the Toronto Star** website captured on May 3, 2013 by Archive.org (https://web.archive.org/web/20130503144802/https://www.thestar.com/about/terms.html) at See **ECF 219-4, bottom of Page 2 of 9**.
[5] See **ECF 34-1** submitted by Torstar at Exhibit 4 to Declaration Accompanying the Motion filed with this memorandum.
[6] See **ECF 219-6** originally submitted by Mr. Leary.
[7] See **ECF 34-1** submitted by Torstar.
[8] See **ECF 64-4** Declaration of Kathy English submitted by Torstar

After the publication of the YouTube Video in question Trout Point Lodge would obtain Canadian Copyright Registrations of the above mentioned creative works on July 8, 2013.[9]

On February 15, 2014 Leary, using YouTube Fill in webform complaint, submitted a DMCA Takedown notice claiming the Slabbed New Media video violated his copyright interest in the above-mentioned photographs that each appears for 5 seconds in the two-minute forty second pictorial montage video.[10] [11] [12]

At all times specified in this chain of events, YouTube's terms of service expressly defined the controlling authority for Copyright Infringement Complaints[13]:

> 8. Digital Millennium Copyright Act
> If you are a copyright owner or an agent thereof and believe that any Content infringes upon your copyrights, you may submit a notification pursuant to the Digital Millennium Copyright Act ("DMCA") by providing our Copyright Agent with the following information in writing (see 17 U.S.C 512(c)(3) for further detail):

---

[9] See **ECF 175-2**, Canadian Copyright Registration Number 1106087.
[10] See **Email to Douglas Handshoe by YouTube** dated February 15, 2014 at **ECF 219-12** for the Notification sent him concerning the Trout Point Lodge DMCA Takedown Notice sent by Charles Leary.
[11] See **ECF 219-13** previously submitted by Mr. Leary for the fill in YouTube form used by Mr. Leary to submit the takedown notice.
[12] See **ECF 219-14** pages 10 and 11 submitted by Mr. Leary for follow-up correspondence between Trout Point and YouTube, which specifically mentions DMCA Section 512(f).
[13] See **ECF 219.15** YouTube's terms of Service.

On July 14, 2014 Plaintiff, using YouTube's webform submitted a DMCA Counter notification to the Trout Point Lodge DMCA Takedown Notice dated February 15, 2014. Plaintiff received an Email from YouTube confirming the Counter Notification.[14] YouTube also forwarded the Counter Notification to Trout Point Lodge, Limited on the same date.

On July 15, 2014 "Vaughn Perret, JD" acting for Trout Point Lodge sent an email to YouTube which termed the July 14, 2014 Counter Notification, "an actionable instance of misrepresentation under the **Digital Millennium Copyright Act** by Douglas Handshoe." (Emphasis added) Perret attached the 2012 Canadian Injunction[15] he obtained against Plaintiff to the email along with the Court Opinion from Trout Point Lodge et al v Handshoe (2014 NSSC 62).

On August 6, 2014 YouTube notified Trout Point Lodge[16] that the content would be blocked in Canada as a result of the July 15, 2014 Perret email to YouTube. On August 6, 2014 Leary replied to the YouTube email and asked that "you **disable** the sections of the video where the copyrighted works appear". On August 6, 2014 Perret also replied to the YouTube email referencing the DMCA

---

[14] See Email from YouTube to Handshoe dated July 14, 2014 at **ECF 219-16.**.
[15] The Canadian Defamation Judgment supporting the 2012 injunction has been previously found to be unenforceable in the United States of America under the United States SPEECH Act.
[16] See **ECF 219-17**, Email from YouTube to Trout Point submitted by Mr. Leary at Exhibit 16 to Declaration Accompanying the Motion filed with this memorandum. Notably Mr. Leary exhibited on a small portion of the total email exchange with YouTube.

by stating in part, "The 512(c) safe harbor will apply only if the service provider…"[17]

On August 6, 2014 YouTube notified Plaintiff via email about the 2012 Canadian Injunction submitted by Perret and that the video would not be viewable in Canada.[18] The video was restored for public viewing elsewhere.

Finally, Mr. Leary was served with Requests for Admissions on January 4, 2018 and as of this date has failed to respond. Leary is deemed to have admitted that he did not consider the five fair use factors before sending the DMCA Takedown Notice to YouTube.[19]

## APPLICATION OF THE LAW TO THE UNDISPUTED FACTS

### Mr. Leary's Motion is filed out of time and should be disregarded

Mr. Leary's Motion appears to be an out of time sur-reply to Plaintiff's Motion for Partial Summary Judgment (ECF #218) as Mr. Leary has filed his Motion well past the March 26, 2018 dispositive Motion deadline specified in the Case Management order (ECF #184). The Court should disregard Mr. Leary's Motion for this reason alone.

This Court previously struck Mr. Leary's prior Summary Judgment Motions since they were signed and submitted by Mr. Leary's business partner in New

---

[17] See the **Entire email chain between YouTube and Trout Point** at **ECF 219-18**.
[18] See **Email to Handshoe from YouTube dated August 6, 2014** at **ECF 219-19**.
[19] See Plaintiff's Requests for Admissions of Facts dated January 4, 2018 at **ECF 219-20**.

Orleans Louisiana, after Mr. Leary failed to sign the documents and adopt them as his own after being put on notice of the deficiency. Mr. Leary's own dilatory conduct in this matter precipitates this out of time dispositive motion thus the Court would be well within its discretion to disregard it for being filed out of time.

### The Use of the Photographs in Question in the Slabbed New Media Video is Clearly Sanctioned by the Fair Use Doctrine

Fair use is generally considered to be an affirmative defense. However, in Digital Millennium Copyright Act "takedown" cases such as this instant matter, fair use is "treated differently than traditional affirmative defenses." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152-53 (9th Cir. 2016). In *Lenz*, the 9th Circuit found that in DMCA cases, a copyright holder must have good faith belief that the allegedly infringing use was not fair use before sending "takedown" notice. "The fair use doctrine 'permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). In *Campbell*, the United States Supreme Court set out a five-factor test to determine if fair use applies:

1. **Purpose and Character of the Defendant's Use, including whether such use is of a commercial nature or is for nonprofit educational purposes.** *Campbell*, 510 U.S. at 579-80, 583, 588 explains that the purpose of this element is to investigate the commercial nature of the use, whether the use was transformative, whether the use tended to

6

supplant or supersede the infringed work, and whether the use parodied or "conjure[d] up" the infringed work.

Using the guidance in *Campbell*, in *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175 (9th Cir. 2013) the 9th Circuit found Green Day's use of artist's original work in its four-minute concert video backdrop as transformative because original work took on new and different meaning in video. *Id*. at 1176-77. In *Elvis Presley Enters., Inc. v. Passport Video*, (9th Circuit 2003) 349 F.3d at 629 the Court found "new works as 'transformative' when works use copyrighted material for purposes distinct from the purpose of original material."

The use by Plaintiff on his personal YouTube account is clearly noncommercial. Additionally, the creative work which was subject to the Trout Point Takedown Notice dated February 15, 2014 was also clearly a transformative use of the original creative works.

   2. **Nature of Copyrighted Work**. This factor considers whether the work is published or not and whether the work is factual or creative in nature. Prior publication by original author tends to support finding of fair use.

Again, this factor overwhelmingly favors the Plaintiff. In *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) the Court found that fair use finding is strongly favored when infringed work is informational, factual and news. *Id*. at 1122.

7

3. **Amount and Substantiality of Portion of Infringed Work Used by Infringing Work in Relation to the Copyrighted Work as a Whole**. This factor was expressed in expressing that focus of this factor is question of "substantial similarity" and whether use was "reasonable in relation to the purpose of the copying" rather than whether use was fair.

This factor overwhelmingly favors the Plaintiff. The video in question transforms two news stories by using the pictures used in them as a small part of the overall Slabbed New Media video. As is previously discussed the use of the original photographs and the copies by Slabbed New Media were not substantially similar nor would the Slabbed New Media video interfere with any potential market of the photographs.

4. **Effect of Use of Infringing Work on the Potential Market for or Value of the Copyrighted Work**. Per *Campbell*, 510 U.S. at 590-91, n.21, this factor involves: 1. Assessing harm use can cause to copyright owner's market and market effect if others also infringe through such use. 2. Considering if use displaces or substitutes for original work. 3. Examining effect of use on derivative market for protected work. The Court also noted that "the importance of this [fourth] factor will vary, not only with the amount of harm, but also with the relative strength of the showing on the other factors". In *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560-69 (1985) the Court found that the effect of defendant's infringing work on market for or value of plaintiff's work is the most important of fair use factors. *Id* at 566.

This factor again overwhelmingly favors the Plaintiff. A controlling case on this question in another Circuit is *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013) where the Court explained that this factor favors

8

finding of fair use when use "advances [the alleged infringers'] own original creation without any reasonable threat to [the original author's] business model" *Id.* at 1280. Here, Defendant Leary has presented no evidence whatsoever the pictures at controversy were ever offered for sale to the public, nor has he ever alleged a market where they were sold. In fact, the only market the pictures ever found were public interest news stories planted in the Canadian media by Mr. Leary and Mr. Perret that were available free of charge to the public. Slabbed New Media's transformational use in no way threatened those existing markets. Further, since Plaintiff published the video to his personal YouTube account pursuant to the Slabbed New Media, LLC creative commons license which forbids commercial re-use, there is no market to which the Plaintiff can ever tap under the terms of that license to monetize the Slabbed New Media video.

5. **Additional Factors**. These factors would include: 1) the state of mind of the parties, 2) Parody often presents difficulties because the success of its imitative character depends on its ability to "conjure up" the original work that it parodies. This may create an issue of fair use. (*Campbell*, 510 U.S. at 588-89, explaining importance of context when evaluating parodies and how parodies usually serve different market functions than original).

This factor favors Plaintiff. The video itself is a parody which promotes the Slabbed New Media website and its coverage of the Jefferson Parish Political Corruption Scandal. Unlike the precedent setting cases involving parodies referred to above the Slabbed video only took a small amount of its pictorial content subject

9

to copyright from third party sources and displayed it for five seconds. In that respect the video is not conjuring up the photographs which include Leary, Perret and Abel but rather conjured up their involvement in Aaron Broussard's bribery and money laundering scheme Slabbed New Media unraveled in what was a major public interest news story. The important context here the Court should consider is that Leary and Perret are at the minimum vortex public figures, who self-promoted their legal battles with instant plaintiff to the Canadian media, voluntarily furnishing images of themselves to that end. This is nothing more than thin skinned criminals trying to preserve a façade by misusing the processes contained in the Copyright Act to silence their critics[20].

### Mr. Leary, By His Own Deemed Admissions, Did Not Consider the Fair Use Factors Before Sending the DMCA Takedown Notice

Mr. Leary never responded to Plaintiff's Requests for Admissions and is deemed to have admitted the following:

> Admit that you did not consider the following fair use factors on or about February 14 and 15, 2014 before sending the takedown notice under 17 U.S.C. Section 512 regarding the YouTube video uploaded by the Plaintiff at http://youtube.com/watch?v=M_pc4bjaLno which contained a five second frame of the Toronto Star photograph of Leary, Perret and Ugly Dog and a five second frame of a photograph of you, Vaughn Perret and Daniel Abel taken by Marilyn Smulders in the last 6 months of 2006:
> 1. The purpose and character of the use of the Toronto Star photograph of Leary, Perret and Ugly Dog and the photograph of you, Vaughn Perret

---

[20] See Plaintiff's Requests for Admissions of Facts dated January 4, 2018 at **ECF 219-20**

and Daniel Abel taken by Marilyn Smulders, including whether the use was of a commercial nature or is for nonprofit educational purposes;
2. The nature of the Toronto Star photograph of Leary, Perret and Ugly Dog and photograph of you, Vaughn Perret and Daniel Abel taken by Marilyn Smulders;
3. The amount and substantiality of the portion used in relation to the of the Toronto Star photograph of Leary, Perret and Ugly Dog and photograph of you, Vaughn Perret and Daniel Abel taken by Marilyn Smulders used in promotional news stories about you as a whole;
4. The effect of the use upon your potential market for or value of the Toronto Star photograph of Leary, Perret and Ugly Dog and the photograph of you, Vaughn Perret and Daniel Abel taken by Marilyn Smulders; and
5. The Toronto Star photograph of Leary, Perret and Ugly Dog and the photograph of you, Vaughn Perret and Daniel Abel taken by Marilyn Smulders creative work was never marketed for sale by you or any affiliated entity nor was any revenue ever derived by Leary or his affiliated entities from the sale of these creative works.

Mr. Leary is also deemed to have admitted that[21]:

1. From 2004 to 2010 he assisted former Jefferson Parish President Aaron Broussard with a corrupt bribery scheme involving Louisiana businessmen as detailed in the United States criminal prosecution styled United States of America versus Aaron Broussard.
2. From 2004 to 2010 he engaged in a money laundering scheme with Aaron Broussard which used Broussard's rental real estate at the Trout Point Lodge subdivision to convert bribes to rental income.
3. That he sued the New Orleans Times Picayune for defamation in Canada in 2010 via a practice known as "libel tourism" in order to silence journalistic inquiry into the Aaron Broussard corruption scandal.

---

[21] Id.

    4. That he sued Plaintiff for defamation in Canada in 2011 and 2012 via a practice known as "libel tourism" in order to silence journalistic inquiry into the Aaron Broussard corruption scandal.

*Lenz v. Universal Music Corp.*, 801 F.3d 1126 (2015) makes it abundantly clear that Fair Use should be considered prior to the submission of Takedown Notices under United States Law in order for such notices to not be misrepresented. It requires that all rightsholders issuing Takedown notices under Section 512 must consider whether a use is a lawful fair use before issuing a takedown notice holding that fair use is not just a carve-out of the copyright system but a right on the same level of those described in the rest of the statute. Lenz also held that a victim of takedown abuse can vindicate their rights even if the victim cannot show actual monetary loss.

    Leary in his previous arguments to the Court disregarded *Lenz* in favor of *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004) quoting that "In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation." However, the decision in *Lenz* is entirely consistent with *Rossi* by determining that failure of a copyright holder to consider fair use constitutes a "knowing misrepresentation":

    The Court held that 17 U.S.C. § 512(c)(3)(A)(v) requires copyright holders to consider whether the potentially infringing material is a fair use of a copyright

under 17 U.S.C. § 107 before issuing a takedown notification. Section 512(c)(3)(A)(v) requires a takedown notification to include a "statement that the complaining party has a good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law." In *Lenz*, the parties disputed whether fair use is an authorization under the law as contemplated by the statute which was an issue of first impression in any circuit across the nation. The Lenz Court unequivocally held that "We agree with the district court and hold that the statute unambiguously contemplates fair use as a use authorized by the law. Fair use is not just excused by the law, it is wholly authorized by the law." *Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1132 (2015), As Amended 2016.

Additionally, the Court in *Lenz* specifically reconciled their findings to *Rossi* by finding that, "Universal faces liability if it knowingly misrepresented in the takedown notification that it had formed a good faith belief the video was not authorized by the law, i.e., did not constitute fair use." *Id* at 1134.

Applying the guidance found in Lenz to the facts presented in instant matter can only result in a finding that as a matter of law, the Leary/Trout Point DMCA Takedown Notice of February 15, 2014 to YouTube was misrepresented under Section 512, rather than the opposite, as Mr. Leary contends in his Motion for Partial Summary Judgment.

## Conclusion

Plaintiff respectfully requests this Court denies Mr. Leary's out of time Motion for Partial Summary Judgment.

Respectfully submitted this 11th day of May, 2018,

_____

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on May 11, 2018 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

I, Douglas Handshoe, hereby certify that on May 11, 2018, I mailed the foregoing to Charles Leary at 308 5th Ave E, Vancouver, BC V5T 1H4 Canada.

Respectfully submitted this 11th day of May, 2018,

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com