## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION



DOUGLAS HANDSHOE

v.                                CIVIL ACTION NO. 1:15cv382-HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A/ TROUT POINT
LODGE LTD OF NOVA SCOTIA & IN
THEIR INDIVIIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF NO. 233)

This Memorandum in Support of Motion to Dismiss is respectfully

submitted by Plaintiff / Counter defendant Douglas Handshoe seeking that the

counterclaims contained in Defendant Charles Leary's Counterclaim (*ECF #233*)

be dismissed pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6).

## INTRODUCTION

Defendant / Counterclaimant Charles Leary levies a myriad of bizarre,

barely comprehensible allegations in his Counterclaim that does manage to reveal

the reason he and his business partners have filed a multiplicity of lawsuits in two

foreign countries against Plaintiff, Plaintiff's attorneys and other third parties in an

ongoing campaign of libel and copyright terrorism. Leary is an absconding

judgment debtor frantically attempting to evade having to pay a $48,000 attorney

1

fee judgement related to his first Canadian SLAPP suit against instant Plaintiff, an obligation he incurred as a result of losing the precedent setting case *Trout Point Lodge, Limited v Handshoe*, 729 F.3d 481 (5th Circuit 2013). Not only does Leary factually plead that the collection efforts including Show Cause Orders to appear for a judgment debtor examination issued by Chief Judge Guirola were somehow fraudulent and abused process, he astonishingly seeks relief from Judge Guriola's show cause orders via his Counterclaims against the Plaintiff in this litigation[1] rather than simply complying with Judge Guirola's Court Orders and/or taking his arguments, which Plaintiff maintains are frivolous, to the proper Courtroom. Leary by his own willful actions is now an active Contemnor that purposely chose to not attend the various hearings or show up for his judgment debtor exam despite the fact he was represented by Counsel in favor of seeking this Court's ratification of his contemptuous actions.[2] For these reasons and many others, Leary's Counterclaims are due to be dismissed.

---

[1] See paragraphs 61 and 82 of the Counterclaim.

[2] See Case Number 1:2012-cv-00090 ECF Nos. 82 through 106 before this Honorable Court. Leary falsely claims in paragraph 28 of his Countercomplaint that he and his common law husband Vaughn Perret "were on the docket as pro se" when it is clear their Attorney Judith Barnett was enrolled to represent their interests until October 18, 2017. (See ECF No. 105) Barnett replaced Henry Laird representing Leary, Perret and Trout Point after they sued Laird and his firm in the New Orleans Civil District Court for malpractice after losing their appeal before the 5th Circuit Court of Appeals in the case *Trout Point Lodge, Limited v Handshoe*, 729 F.3d 481 (5th Circuit 2013).

## STANDARD OF REVIEW

For a Rule 12(b)(1) motion this Court elucidated at *ECF No*. 157 that the "trial court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." This Court quoting *Crane v. Johnson*, 783 F.3d 244, 250 (5th Cir. 2015) "[T]he jurisdictional issue of standing is a legal question," and "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Id*."

For a Rule 12(b)(6) motion, the "Plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "Pleadings are demanded which are more than unadorned, "the-defendant-unlawfully-harmed-me accusation[s]"" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a plaintiff's right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007). "To be "facially plausible" the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 679. If the plaintiff's facts pled only permit an inference of the mere possibility of misconduct, no right to relief is shown.

## LAW AND ARGUMENT

The three Federal Civil Procedure rules cited above as grounds for dismissal are supported by no less than nine different reasons supporting the dismissal of Leary's Counterclaims as outlined in the Motion to Dismiss. Those reasons and the related federal rule are summarized as follows:

Rule 9(b):

- Leary's claims of fraud do not meet the heightened pleading requirements of Rule 9(b).

Rule 12(b)(1):

- Leary lacks Standing to assert the claims of Trout Point Lodge, Limited of Nova Scotia, a party that has defaulted in this litigation.

- As a Stateless United States Citizen[3], Leary can neither bring his Mississippi Common Law Claims to Federal Court under Federal Question Jurisdiction nor can he invoke the Court's diversity Jurisdiction to hear these matters, which in any event the Counterclaimant has valued at under $75,000 in his Rule 26(a) pre-discovery disclosures.

---

[3] See Case number 1:16-cv-00007-LG-RHW, ECF No. 4, Page 5 attached as an Exhibit to the Motion accompanying this memorandum, "it is undisputed that Plaintiffs Leary & Perret are stateless United States citizens. Both Perret and Leary are American citizens, but have resided in Canada since 1998. See Brief of Appellants at 5–6, *Trout Point Lodge*, 729 F.3d 481 (No. 13-60002), 2013 WL 7089060. Moreover, the pair has been without a United States residence since 2005."

Rule 12(b)(6):

- The counterclaims asserted by Leary are contained in the form of "shotgun pleading" that fails to give fair notice to the Plaintiff as to exact nature of the allegations being made against him individually.

- The state common law counterclaims claims are preempted by the Federal Copyright Act.

- The counterclaims made by Leary against Handshoe are procedurally time barred.

- Leary's Counterclaims fail to adequately plead essential elements of a claim under 17 U. S. C. § 512(f) and fail to adequately plead multiple elements of the relevant state common law causes of actions.

- Defendant / Counterclaimant Leary is both claim and issue precluded from re-asserting Copyright Infringement for the intellectual property that he listed in his Counterclaim against instant Plaintiff (or Slabbed New Media, LLC) as he brought these claims already in Canada.

- The acts that Leary alleges were perpetrated by the Plaintiff were in his capacity as member, manager and /or officer of Slabbed New Media, LLC, the owner of the website at www.slabbed.org along with the content contained therein. These claims against the Plaintiff / Counter Defendant in

5

his individual capacity are barred by Mississippi Code Annotated § 79-29-311.

### Rule 9(b): Defendant / Counterclaimant's Fraud Allegations are Manifestly Deficient.

Mr. Leary levies a bewildering array of Fraud allegations against Plaintiff in the counts styled, "Fraud Including Fraud Upon the Court" and "Abuse of Process". These counts fail for the independent reason that the Counterclaims do not adequately plead all elements of a civil fraud claim. Fraud in Mississippi has nine elements, all of which must be adequately pled: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 2015 WL 6533344, at *2 (Miss. Oct. 29, 2015) (citation and internal quotation marks omitted). Moreover, to state a claim, a plaintiff must satisfy the heightened pleading standard for fraud claims under Fed. R. Civ. P. 9(b), which require, among other things, a statement "with particularity [of] the circumstances constituting fraud or mistake" and "what that person obtained thereby." *United States ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.*, 2014 WL 3385189, at *22 (S.D. Miss. July 9, 2014) (citations and quotation marks omitted); *United*

*States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (citation omitted).

The allegations in the Counterclaims fall far short of these standards with respect to each of the required nine elements. With respect to counts styled, "Fraud Including Fraud Upon the Court" and "Abuse of Process" (*See Counterclaims ¶¶ 75-85*) instant Plaintiff made no representations to Leary whatsoever regarding what Leary's conclusory alleged is a "Fraudulent Transfer" of the $48,000 attorney fee judgment that Plaintiff openly assigned to Slabbed New Media, LLC. In fact, the assignment was clearly disclosed in every monthly operating report that Slabbed New Media, LLC submitted to the United States Bankruptcy Court via its Counsel Craig Geno, Esq. beginning with the very first such financial report filed in July, 2015[4]. Both Plaintiff and Slabbed New Media have consistently, correctly reported the assignment, which Leary labels as a "false representation of material fact". The fact that instant Plaintiff assisted Counsel and the LLC by taking steps to collect this judgment from deadbeat Judgment Debtor Leary is immaterial. Simply put, beyond Leary's conclusory allegations that the assignment was fraudulent, he did not adequately plead a single element of Fraud as required by Rule 9(b).

---

[4] See MSSD Bankruptcy Case Number 6:15-50963-KMS Docket No. 29, Page 5, filed 07/09/15 attached as an Exhibit to the Motion accompanying this memorandum which clearly shows the Judgement receivable as an asset of Slabbed New Media, LLC exhibited in the Motion accompanying this memorandum..

Further there is nothing in the Counterclaims to indicate that any of the representation to which Leary complains were actually false and his allegations regarding Plaintiff's supposed intent are entirely lacking. In *Turner v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 5315004, at *10 (S.D. Miss. July 12, 2004) a complaint was dismissed when the Court found there was "no evidence that [defendant] made a false representation to [plaintiff] with knowledge of its falsity"). As to the sixth and seventh elements, even if Leary could be considered a "hearer" of the monthly operating reports filed by Slabbed New Media, LLC along with Plaintiff's efforts to assist in collecting the judgment, his own allegations demonstrate that he could not be "ignorant" of the supposed misrepresentations[5] and that he certainly did not "rely" on it. To the contrary, as Leary was listed as a creditor of Slabbed New Media LLC, he received notice of the case filings and he participated in several objections to the proposed reorganization plan and via counsel attended the initial creditors meeting. Similarly, he could not have been ignorant of the plainly disclosed assignment nor did he ever bring this matter to Judge Guirola's attention in case 1:12cv0090 despite being noticed on each and every Show Cause Order issued in that case via his enrolled Counsel Judith Barnett.  In *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475,

---

[5] Leary was included on the Slabbed New Media, LLC creditor's matrix and received notice of every filing in the 2015 Bankruptcy matter, similarly Leary was represented by Counsel in case 1:12cv0090.

483 (5th Circuit 2008) the Court found that, "Mississippi cases make clear that a party cannot reasonably rely on a misstatement when the error is obvious to the party or the party knows the truth of the matter."

Finally, as discussed above, Leary has not alleged any "consequent and proximate injury" that he personally suffered as a consequence of the valid assignment of the judgment to Slabbed New Media, LLC which he so bitterly complains.[6]

### Rule 12(b)(1):
- **Leary lacks Standing to assert the claims of Trout Point Lodge, Limited of Nova Scotia, a party that has defaulted in this litigation.**
- **As a Stateless United States Citizen Leary Cannot invoke this Court's Power to Hear Diversity Jurisdiction Actions**

Defendant / Counterclaimant Leary appears to assert two Counts of Misrepresentation under 17 U.S.C. § 512(f) regarding Plaintiff's Counternotifications to YouTube and Amazon Web Services (AWS). As this Court has previously noted, these Takedown Notices were included by Leary as an Exhibit to his Rule 12 Motion at *ECF No.* 96-11. Leaving aside the fact any cause of action Leary may have had regarding the YouTube Takedown Notice and Counternotification are clearly procedurally time barred, it is clear Leary was

---

[6] Instant Plaintiff suggests that Leary's bitterness over the assignment stems from the fact he was not able to attempt execution on the Chose-In-Action rather than any fraud he conclusory alleges against Plaintiff.

acting in his official capacity as Officer of Trout Point Lodge, Limited, which has defaulted in these proceedings.[7] Similarly, the "Notice of claimed infringement under the Copyright Act of Canada" Leary sent to AWS was signed in his capacity as , "Charles Leary, Secretary, Trout Point Lodge, Limited"[8] In continuing correspondence with AWS, Leary electronically signs one email as the "Legal Department Trout Point Lodge, Limited".[9]  It is clear Leary submitted these Takedown Notices in capacity as officer / agent for Trout Point Lodge, Limited.[10]

Again, leaving aside the fact any cause of action Leary may have had regarding Copyright Infringement are facially procedurally deficient for a number of reasons including being time barred as well as claim and issue precluded, certain of the Copyrights he seeks to enforce belonged to Trout Point Lodge, Limited per the "Notice of claimed infringement under the Copyright Act of Canada" he sent to AWS on January 11, 2016 that he signed, "Charles Leary, Secretary, Trout Point Lodge, Limited" and it is here the basic contradiction in Leary's various Counterclaims come into much sharper focus.

---

[7] See ECF No. 96-11, Page 10, "Hi foodvacation@gmailcom. Thank you for your notification. **It appears you have made a claim on behalf of a corporation but have not written from a corporate email address.** In order to prevent fraud, we need to ask you for more information." Further down the same page, The Takedown Notice Form submitted by Leary was clearly done in his capacity of "Director" of "Trout Point Lodge, Limited".

[8] See ECF No. 96-11, Page 13

[9] See ECF No. 96-11, Page 16

[10] Mr. Leary is not a lawyer so it is unclear on what basis he would electronically sign any email as the "Legal Department" of Trout Point Lodge, Limited.

In Leary's *Counterclaims* ¶91, he pleads, "Leary is the owner of the United States rights, including the right to action, of the foreign copyrighted photographic works at the heart of this case. That is: (a) a photograph of Charles Leary and Vaughn Perret at the Geotourism Summit of the National Geographic Society once used in an article published by Ashoka about Leary and Perret as social entrepreneurs." This image was first published to the Slabbed New Media, LLC website on September 8, 2011 via the post titled, "Slabbed solves the mystery on the shores of the Tusket River in Nova Scotia as we reveal the Trout Point connection to the Jefferson Parish political Corruption Scandal"[11], such post being the center of no less than three lawsuits in two different countries including the SPEECH Act case *Trout Point Lodge, Limited et al v Handshoe*.

It is clear for purposes of asserting his 512(f) counterclaims regarding the AWS "Notice of claimed infringement under the Copyright Act of Canada" that Leary signed as "Charles Leary, Secretary, Trout Point Lodge, Limited" that he was acting on behalf of the foreign corporation yet now for purposes of asserting Copyright Infringement Leary claims to own the rights to the creative property that was the subject of the AWS "Notice of claimed infringement under the Copyright Act of Canada" personally.  It is a fundamental contradiction that cannot withstand

---

[11] This damning internet news posting about Aaron Broussard, Daniel Abel, Charles Leary and Vaughn Perret attached as an Exhibit to the Motion accompanying this memorandum is still online at http://slabbed.org/2011/09/08/slabbed-solves-the-mystery-on-the-shores-of-the-tusket-river-in-nova-scotia-as-we-reveal-the-trout-point-connection-to-the-jefferson-parish-political-corruption-scandal/.

cursory scrutiny which is just a part of a larger pattern of Leary conflating the ownership of the Slabbed New Media, LLC website along the capacity under which he claims to have acted.

Finally, it should not be lost on the Honorable Court that Leary is seeking relief under United States law under section 512(f) for a notice he purports to have sent on behalf of Trout Point Lodge, Limited pursuant to the "Canadian Copyright Act". Leary's Counterclaims are riddled with such fundamental contradictions.

The bottom line is the Defendant is a Pro Se litigant that by law cannot represent a foreign corporation's interests in any court room in Mississippi and he lacks standing to bring these claims personally. Alternately the Plaintiff respectfully submits that if Leary claimed to be acting for Trout Point Lodge, Limited in sending DMCA Takedown Notices regarding content that he now claims to own personally, such would constitute a prima facie misrepresentation under 17 U.S.C. § 512(f) for the Takedown Notice that was sent to YouTube that forms Count 5 Plaintiff's Third Amended Complaint.

Finally, the state common law torts which Leary has asserted are insufficient to invoke the diversity jurisdiction of this Court to hear those claims as he is a self-

admitted Stateless United States Citizen. [12] These state common law claims do not confer subject matter under federal question jurisdiction.

> **Rule 12(b)(6):**
> - **The counterclaims asserted by Leary are contained in the form of "shotgun pleading" that fails to give fair notice to the Plaintiff as to exact nature of the allegations are being made against him individually.**
> - **The state common law counterclaims claims are preempted by the Federal Copyright Act.**
> - **The counterclaims made by Leary against Handshoe are procedurally time barred.**
> - **Leary's Counterclaims fail to adequately plead essential elements of a claim under 17 U. S. C. § 512(f) and fail to adequately plead multiple elements of the relevant state common law causes of actions.**
> - **Defendant / Counterclaimant Leary is both claim and issue precluded from re-asserting Copyright Infringement Claims for the intellectual property that he listed in his Counterclaim against instant Plaintiff.**
> - **Leary's claims against the Plaintiff / Counter Defendant in his individual capacity are barred by Mississippi Code Annotated § 79-29-311.**

Leary's Counterclaims is a "shotgun pleading" that violates Fed. R. Civ. P. 8 because it utterly fails "to provide fair notice of the nature of Plaintiff['s] claims"

---

[12] See MSSD Case No. 1:16-cv-00007-LG-RHW, ECF No. 4, Page 5 attached as an exhibit to the Motion accompanying this memorandum, which states, "In any event, it is undisputed that Plaintiffs Leary & Perret are stateless United States citizens. Both Perret and Leary are American citizens, but have resided in Canada since 1998. *See* Brief of Appellants at 5–6, *Trout Point Lodge*, 729 F.3d 481 (No. 13-60002), 2013 WL 7089060. Moreover, the pair has been without a United States residence since 2005. Federal diversity jurisdiction is thus destroyed. Jurisdiction cannot exist under Defendant's basis of 28 U.S.C. 1441. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989)."

against the Plaintiff / Counter Defendant.[13] In particular, Plaintiff's "fail[ure] to distinguish between the actions" of the Plaintiff in his personal capacity versus his official actions as managing member of Slabbed New Media, LLC opting almost exclusively to make broad allegations against the "Handshoe" generally, rather than distinguishing between the actions of the two separate entities, deprives the Plaintiff / Counter Defendant of fair notice of the claims against him.[14]

"The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title.'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(a)); see also *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004) ("Under the implied preemption doctrines of field preemption . . . a state claim is preempted where 'Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme . . . .'") (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 n.1 (5th Cir. 1995)). Thus, state law claims are preempted by the Copyright Act where the claim falls within the subject matter of copyright and protects a right

---

[13] *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014).

[14] *Id.* at *3 (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).

that is equivalent to any of the exclusive rights or interests protected under the Copyright Act. See, e.g., *Daboub v. Gibbons*, 42 F.3d 285, 288-89 (5th Cir. 1995).

That is plainly the case here. For instance, in the Counterclaim styled "Abuse of Process" (*See* Counterclaims ¶81) Leary claims that, "Douglas K. Handshoe used process issued in the State of Mississippi to coerce Defendant, Plaintiff by Counterclaim Leary to cease his legitimate efforts to sue Handshoe for defamation and copyright infringement" that is equivalent to the exclusive rights and interests Congress carefully balanced in enacting the DCMA. Other courts to have considered preemption with respect to the Copyright Act have concluded that state law claims based on purported instances of copyright infringement or illegal takedown notices are preempted. For example, in *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, the Northern District of California considered the question of whether a cause of action for tortious interference with business relations and other state law claims premised on allegedly improper DCMA Takedown Notifications were preempted by the Copyright Act. No. C 10-05696 CRB, 2011 WL 2690437, at *3 (N.D. Cal. July 8, 2011). The court held that they were, joining other courts in concluding "that (1) a DMCA Takedown Notification is a creature of a federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification." Id.; see also, e.g., *Lenz v. Universal Music Corp.*, No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D. Cal.

Apr. 8, 2008) [hereinafter "Lenz I"].  Because the underlying subject matter of the various state common law tort claims are premised on an underlying finding of a Canadian Court of Copyright Infringement with Leary now invoking the United States Copyright Act, these State Tort claims are preempted.

In addition to the above, it appears every State common law counterclaim asserted by Leary with maybe one exception are time barred.  Additionally, the copyright infringement counts and any cause of action related to the YouTube DMCA notice are also time barred.

With regard to the State common law torts with a statute of limitations of one year, Leary pleads events, including issuance of process in matters he complains that stretch back to 2013, including matters to which process was never issued to him as he was never party in certain of the civil actions which he complains. In any event the one-year statute of limitations time bars these claims.[15]

With regard to the Copyright related counterclaims, 17 U.S.C. § 507(b) provides in part, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." Leary's Counterclaims were filed on October 10, 2017. Turning to the allegations of the

---

[15] Leary does not factually plead a date when, "a person whose name was purportedly "Bob Watson"" checked into Trout Point Lodge but to the extent he may be referring to Provincial Civil Constable Ron Seney in paragraph 96 of their Counterclaims, who served the Complaint in *Handshoe v Broussard* on Leary and Perret in 2013 (after they ran away from him giving rise to a high-speed chase through Yarmouth County Nova Scotia) such events occurred in 2013 and are clearly time barred.

Counterclaims, all claims arising from any DMCA notices served prior to October 10, 2014 such as the YouTube Takedown Notice and Counter Notifications, the statute of limitations has run on such claims because Leary did not bring any claims before the expiration of the three-year statute of limitation. Similarly, the Copyright Infringement counts fail for the same reasons beyond the fact that the owner of the copyrighted material contained on the slabbed.org website is not a party to this action.[16] Each publication to which Leary complains infringed on his after the fact copyrights were published, as cited in Leary's Counterclaims ¶91 beginning with item "(a)", as follows: (a) September 8, 2011[17] (b) January 29, 2012[18] (c) December 4, 2012[19] and (d) October 5, 2012[20]. Worth noting is Leary did not plead with any manner of specificity which publications belonging to Slabbed New Media, LLC infringed on his Canadian Copyrights but it is clear from the above that any cause of action he may have against Slabbed New Media, LLC for Copyright Infringement are time barred.

---

[16] Slabbed New Media sought to intervene in this matter (ECF No. 101). Its participation in this civil action was opposed by Leary and the other defendants. The Court denied the Motion to Intervene.

[17] *See* http://slabbed.org/2011/09/08/slabbed-solves-the-mystery-on-the-shores-of-the-tusket-river-in-nova-scotia-as-we-reveal-the-trout-point-connection-to-the-jefferson-parish-political-corruption-scandal/

[18] *See* http://slabbed.org/2012/01/29/hell-likely-be-remembered-here-for-being-a-part-of-the-gang-that-made-the-times-picayune-eat-its-own-big-toe/

[19] *See* http://slabbed.org/2012/12/04/wash-rinse-repeat-aaron-broussards-former-property-managers-in-canada-again-sue-slabbed-for-defamation-in-nova-scotia/

[20] *See* http://slabbed.org/2012/10/05/civil-district-court-lawsuit-filed-by-concrete-busters-against-river-birch-terms-trout-point-lodge-ltd-of-nova-scotia-a-shell-company/

The most fundamental element of any Section 512(f) claim is that a takedown notice include a "knowing[ ]material[ ]misrepresent[ation] . . . that material or activity is infringing."17 U.S.C. § 512(f); see also, e.g., *Tuteur*, 961 F. Supp. 2d at 342 (liability under Section 512(f) can only be imposed upon "demonstration of some actual knowledge of misrepresentation on the part of the copyright owner") (internal quotation marks omitted). With regards to Leary's Amended Counterclaims, the "knowing misrepresentation" would ostensibly involve the Counternotification that Slabbed New Media, LLC submitted in response to the Trout Point Lodge Limited's "Notice of claimed infringement under the Copyright Act of Canada" sent in January 2016.[21] Leaving aside the fact Leary clearly again attempts to conflate the actions of Slabbed New Media, LLC with Plaintiff in his personal capacity, it would be easy to infer that Slabbed New Media, LLC had a good faith belief the Counternotifications at question were materially correct rather than misrepresented.  For instance, the Ashoka photo at the heart of the January 2016 Takedown notice was published on September 8, 2011 and was previously subject to a Takedown Notice by Ashoka in 2011, who declined to take any further action after the disputed material was restored. The statute of limitations for any action related to this photo which was copied from an American nonprofit company's website by Slabbed New Media, LLC in

---

[21] *See* ECF No. 96-11 page 13

September 2011 tolled on September 8, 2014, well over a year before Leary, acting

ostensibly on behalf of Trout Point Lodge, Limited, sent the "Notice of claimed

infringement under the Copyright Act of Canada" on January 9, 2016. A further

inference of Slabbed New Media, LLC's good faith with respect to the

Counternotification is the fact that by definition it could have never "knowingly

materially misrepresent" that the material was mistakenly identified because it is

clear from Leary's Counterclaims ¶¶ 86–90 that the notices were directed to

Plaintiff in his personal capacity, rather than the owner of the publications alleged

as infringing.[22] Simply put Leary does not elucidate the basic elements of a 512(f)

claim such as how "Handshoe knew when he took and published the works not

belonging to him that he was infringing copyright in foreign works" when it is

clear the creative works in question were (1) published by Slabbed New Media,

LLC to its copyrighted website well before any of the original copyright owners

assigned Trout Point or Leary their interests in the photographs and (2) how a

photograph taken from the servers of United States organizations such as

Expedia[23], Ashoka[24] and other organizations like Progress Media[25] and Torstar

---

[22] Such is clear from the Counterclaim at ¶86 "Handshoe filed DMCA counter notifications in which he swore under the penalty of perjury that he had a good faith belief that his use of Leary's copyrighted images did not constitute copyright infringement."

[23] See Counterclaims, ¶ 91, item (b)

[24] *Id.* At item (a)

[25] *Id.* At item (d)

Corporation[26] constitutes "infringing copyright in foreign works" when those organizations, Trout Point or Leary ever asserted such claims against Slabbed New Media, LLC.

Along those lines Leary cannot meet any of the basic elements for a civil action based on 11 U.S.C. §362 because such a stay works only to the benefit of a bankruptcy debtor, in this instance Slabbed New Media, LLC, which not a party to this action, therefore it is impossible for him to have incurred damages for the nonexistent violation of an injunction as Leary alleges.

Similarly, the basic elements of the Mississippi common law torts asserted by Leary are deficient. For instance, the elements of abuse of process are:

"(1) the party made an illegal use of the process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *McLain v. West Side Bone & Joint Ctr.*, 656 So.2d 119, 123 (Miss.1995) (citing *Foster v. Turner*, 319 So.2d 233, 236 (Miss.1975)).

The Mississippi Supreme Court has acknowledged that the abuse of process tort does not address the case, as here, where the only alleged abuse of process was the service of a summons without any corruption or impropriety.

---

[26] *Id.* At item (c)

"What defendant complains of in his counterclaim is not based on any

perversion of any process, but simply the filing of the suit. Nothing unlawful was

done under any process.   It cannot be argued that the process of the court was

abused by accomplishing a result not commanded by it or not lawfully obtainable

under it when the only process involved was the simple summon to defend the

suit." *Edmonds v. Delta Democrat Publishing Co.*, 230 Miss. 583, 93 So.2d 171,

175 (1957); *see also Foster*, 319 So.2d at 235 ("[Abuse of process requires a]n

ulterior purpose, and the perversion of the process after its issuance so as to

accomplish a result not commanded by it or not lawfully obtainable under it.")

(citing Edmonds, 93 So.2d at 174).

In Mississippi, malicious prosecution requires:

"(1)  the institution or continuation of original judicial proceedings, either

criminal or civil; (2) by, or at the instance of the defendants; (3) the termination of

such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5)

want of probable cause in the proceedings; and (6) the suffering of damages as a

result of the action or prosecution complained of." *Mississippi Road Supply Co. v.

Zurich-American Ins. Co.*, 501 So.2d 412, 414 (Miss.1987) (citing *Harvill v.

Tabor*, 240 Miss. 750, 128 So.2d 863, 864 (1961)).

Even the most charitable reading of Leary's complaint indicates he did not

adequately plead elements number 3, 4, 5 or 6.  Further, as Leary's own

counterclaims suggests he seeks to hold Plaintiff responsible in his personal capacity for the actions of another entity (Slabbed New Media, LLC) completely undermines his assertion that Plaintiff "had no foundation for bringing this action in his personal name".

Under Mississippi law, a claim for tortious interference with business relations requires proof of the following four elements: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." *MBF Corp. v. Century Business Communications, Inc.*, 663 So.2d 595, 598 (Miss.1995).

The Counterclaims, ¶ 94 clearly indicates the acts stem from serving process, "In apparent efforts to locate Leary and Vaughn Perret not only to serve them with process but also intimidate them".  Plaintiff respectfully submits that the act of serving a lawsuit or Judge Guirola's Show Cause Orders could not have been done with "the unlawful purpose of causing damage and loss without right or justifiable cause" as such are the essence of actions authorized by law.

Further Leary does not actually plead with any specificity how the act of serving process actually disrupted any business relationships let alone caused

damage to him personally beyond his apparent embarrassment at being a party to litigation and Show Cause Orders.

The failure by Leary to plead the basic elements of Fraud are addressed on pages six through ten of this memorandum.

Even if this Court were to find that all of the forgoing did not merit dismissal of Leary's Counterclaims, he is claims and issue precluded from asserting any copyright infringement counts related to the four photos as he has already asserted them in Canada against instant Plaintiff. The official opinion of the Nova Scotia Supreme Court in the case styled *Trout Point Lodge Ltd v Handshoe* 2014 NSSC 62 clearly shows this to be the case[27]:

> [21] The first photo depicts Mr. Leary and Mr. Perret. It initially appeared in the website of an organization called "Ashoka."......
> [22] The second photo depicts Trout Point Lodge and was taken by Mr. Perret. It was used extensively to promote Trout Point Lodge......
> [23] The third photo depicts Mr. Leary, Mr. Perret and their associate Mr. Abel. It was taken by one Marilyn Smulders......
> [24] The fourth photo depicts Mr. Leary and Mr. Perret standing in front of Trout Point Lodge with their dog. The Toronto Star took this photograph for a story they were writing on Trout Point Lodge......

Leary's Counterclaims, ¶ 91 presents these creative works with the order slightly reversed:

> (a) a photograph of Charles Leary and Vaughn Perret at the Geotourism Summit of the National Geographic Society once used in an article published by Ashoka about Leary and Perret as social entrepreneurs; (b) a

---

[27] Exhibit 5 attached to the Motion accompanying this memorandum, pages 13-14.

photograph of Trout Point Lodge taken by Vaughn Perret...... (c) a photograph of Leary and Perret with their dog used with permission by the Toronto Star in an article about their legal victory against Handshoe in 2012; and (d) a photograph of Leary, Perret, and Daniel Abel taken by Marilyn Smulders and used in a positive business article by Progress Magazine...

Leary is clearly precluded from re-asserting these claims under the legal doctrine of Res Judicata and to the extent he demonstrably knew in May, 2011 of the existence of the proper owner of the website he alleged as infringing and failed to bring claims against it, he is issue precluded under the legal doctrines of estoppel and laches from asserting them now against Slabbed New Media, LLC.

Finally, Leary has no set of facts which would support an assertion of individual liability against members of Slabbed New Media, LLC, which is not a party to this action. Pursuant to Miss. Code. Ann. § 79-29-311(1) and (2), as amended in 1972 (1), "[n]o member, manager, or officer of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member, or acting as an officer of the limited liability company" and "(2) A member, manager or officer of a limited liability company is not a proper party to a proceeding by or against a limited liability company, by reason of being a member, manager or officer, as applicable, of the limited liability company"

In this case, Douglas Handshoe is the managing member of Slabbed New Media, LLC, and, consequently, is not personally liable for the acts or debts of the

24

LLC. The proper party to this proceeding, if at all, is Slabbed New Media, LLC. Therefore, Leary's counterclaims against Handshoe, individually, should be dismissed with prejudice.

Essentially, Leary seeks to pierce the corporate veil, yet offers no factual assertions which controvert the clear language of Section 79-29-311(2) Miss. Code. Ann. (1972), as amended, which provides that a member, manager, or officer of a limited liability company is not a proper party to a proceeding by or against a limited liability company simply by reason of being a member, manager or officer except where the object of the proceeding is to enforce that person's right against or liability to the limited liability company, or in a derivative action. Miss. Code. Ann. § 79-29-311(2) (1972), as amended.

Mississippi has a "[s]trong public policy favoring maintaining corporate entities and avoiding attempts to pierce the corporate veil, and ... this policy extends to maintain [limited liability companies] as well." *Restaurant of Hattiesburg, LLC v. Hotel and Restaurant Supply, Inc.*, 84 So.3d 32, 39 (Miss. App. 2012). Mississippi follows the general rule of law that the distinct corporate identity will be maintained unless to do so would subvert the ends of justice. *Johnson & Higgins of Mississippi, Inc., v. Commissioner of Insurance*, 321 So.2d 281, 284 (Miss. 1975). Federal courts throughout this State have consistently recognized this public policy and have likewise made clear that piercing the

corporate veil is "[r]eserved for factual circumstances which are exceptional, or where to do otherwise would subvert the ends of justice." See, e.g., *Cirillo v. Central Mississippi Radiology, LLC*, 2013 WL 3147678, n* 2 (N.D. Miss. 2013); see also *N. Am. Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984).

To pierce a corporate veil, there must be some abuse of the corporate form itself. *Restaurant of Hattiesburg, L.L.C.*, 84 So.3d at 43. Nothing in Leary's Countercomplaint implies that Slabbed New Media, LLC is somehow not a valid entity, separate and apart from Handshoe. In fact, Leary fails to plead a single instance in which Handshoe acted or interacted personally with the him outside of his role as managing member of the LLC. Rather than setting forth particularized facts, Leary instead groups Handshoe in each and every complaint that is properly brought against the limited liability company in an attempt to pierce the corporate veil.

To allow Leary to recover against Handshoe under these circumstances would completely undermine the laws that create and govern limited liability companies. At all times, Handshoe was acting within the course and scope of his duties to the Limited Liability Company and in his individual capacity is not a proper party to this suit. Accordingly, Leary's claims against Douglas Handshoe, individually, should be dismissed with prejudice.

## **CONCLUSION**

Defendant / Counterclaimant Leary's Counterclaims should be dismissed under Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).

Respectfully submitted this 6th day of June, 2018,

_____

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on June 6, 2018 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

I, Douglas Handshoe, hereby certify that on June 6, 2018, I mailed the foregoing to Charles Leary at 308 5th Ave E, Vancouver, BC V5T 1H4 Canada.

Respectfully submitted this 6th day of June, 2018,


_____
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com