IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



DOUGLAS HANDSHOE

VS.                                          CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, ASHOKA, XYZ
FOUNDATION & JOHN DOES 1-50                             DEFENDANTS

### DEFENDANT/PLAINTIFF-BY-COUNTERCLAIM LEARY'S BRIEF IN OPPOSITION TO DEFENDANT BY COUNTERCLAIM HANDSHOE'S MOTION TO DISMISS (ECF 244)

First, Dr. Leary wishes the Court to be aware that he only received Mr. Handshoe's Motion to Dismiss on June 25, 2018 and the documents were mailed on June 11, 2018, not June 6, 2018, as indicated in Mr. Handshoe's Certificate of Service.

Second, Mr. Handshoe filed his dispositive motion after the deadline established in the Case Management Order, which has not been altered. Mr. Handshoe has not requested leave to file this motion after the case. The motion is due to be dismissed for this reason.

Third, Mr. Handshoe is incorrect that Dr. Leary's countercomplaint is due to be dismissed on substantive grounds. This court has jurisdiction under (a) original federal jurisdiction relating to Copyright Act claims, fraud on the court in federal courts, and violation of a bankruptcy stay; (b) jurisdiction over all compulsory counterclaims; and (c) proper pendant jurisdiction under Fifth Circuit jurisprudence. In addition, all causes of action have a sufficient factual basis stated in the countercomplaint. A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely

1

granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982).

Due to the compulsory nature of Leary's counterclaims and/or due to their continuous nature, no

limitations periods have expired. Should this Court dismiss any causes of action, Leary respectfully

requests permission to amend under Rule 15.

**Standard of Review**

Handshoe's Motion to Dismiss raises both Rules 12(b)(1) and 12(b)(6).

> The district court must dismiss the action if it finds that it lacks subject matter jurisdiction. FED.R.CIV.P. 12(h)(3). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming*, 281 F.3d at 161.

> A trial court may find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)).

*RANDALL D. WOLCOTT, MD, PA v. Sebelius*, 635 F.3d 757 (5th Cir. 2011).

A substantial record already exists in this case, including documents referred to in both Handshoe's

Third Amended Complaint and Leary's counteromplaints.

> Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b) (1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b) (6). *See Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir.2008). Although FNC does not argue that the plaintiffs lack Article III standing, our independent obligation to assure ourselves of our jurisdiction requires us to examine the constitutional dimension of standing before turning to its prudential aspects. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 & n. 1 (5th Cir.2002). The three requirements of Article III standing are familiar: the plaintiffs must allege an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable ruling. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

*Harold H. Huggins Realty, Inc. v. FNC, INC.*, 634 F.3d 787 (5th Cir. 2011).

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This strict standard of review under rule 12(b)

2

(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969).

*Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997) (some citation information omitted). "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994) (internal citations, quotation marks and ellipses omitted).

In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. FED.R.CIV.P. 12(b)(6). Here, the court included, in its review, documents attached not to the pleadings, but to the motion to dismiss. Plaintiffs did not object in the district court to this inclusion and do not question it on appeal.

We note approvingly, however, that various other circuits have specifically allowed that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993).In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496 (5th Cir. 2000) (footnote removed).

### *Judicial Admissions*

Handshoe has made a number of judicial admissions in his complaint and his various briefs for this

Court. These are part of the record and may be considered on a motion to dismiss.

A court can appropriately treat statements in briefs as binding judicial admissions of fact. Leslie v. Knight Soda Fountain, 55 F.2d 224, 225 (2d Cir. 1932), See also City Nat. Bank v. U.S., 907 F.2d 536, 544 (5th Cir.1990); see also Young & Vann Supply Co. v. Gulf F. & a.R. Co., 5 F.2d 421, 423 (5th Cir.1925).

Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994).

On judicial admissions in pleadings and briefs see also: Hill v. Federal Trade Commission, 124 F.2d 104 (5th Cir. 1941) ("judicial admissions are proof possessing the highest possible probative value");

Postscript Enter. v. City of Bridgeton, 905 F.2d 223, 227-28 (8th Cir. 1990); Holman v. Kemna, 212 F.3d 413 (8th Cir. 2000); Ross v. Philip Morris & Company, 328 F.2d 3 (8th Cir. 1964); Hunt v. Liberty Lobby, 720 F.2d 631 (11th Cir. 1983) at fn 29.

### **Defendent by Counterclaim Handshoe's Argument**

3

Starting at page 6 of his brief, Plaintiff Handshoe first argues that Leary's countercomplaint does not fulfill the higher pleading standard of Rule 9.[1] Handshoe appears to complain that Leary's countercomplaint has not perfectly matched each pleaded fact with each element of a claim's legal description.

> Under Federal Rule of Civil Procedure 8(a)(2), a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." "Rule 8(a)(2) . . . does not treat legal descriptions of a claim the same as factual averments." *Johnson v. Honda,* No. 3:15cv223-DPJ-FKB, 2015 WL 5794449, at \*3 (S.D. Miss. Oct. 1, 2015). "A complaint need not . . . articulate a perfect `statement of the legal theory supporting the claim asserted.'" *Smith v. Bank of Am., N.A.,* 615 F. App'x 830, 833 (5th Cir. 2015) (citing *Johnson v. City of Shelby,* 135 S. Ct. 346, 347 (2014)) (emphasis in original). All that is required of a plaintiff is to inform the defendant "of the factual basis for their complaint . . . ." *See Johnson v. City of Shelby,* 135 S. Ct. at 347.

*RDS REAL ESTATE, LLC v. ABRAMS GROUP CONSTRUCTION, LLC,* Cause No. 1: 15CV361-LG-RHW (S.D. Miss. Jan. 23, 2017), treating fraudulent transfer pleading

Having not changed or edited his Motion to Dismiss from his previously-filed (now dismissed) Motion to Dismiss Leary's First Amended Complaint, filed in November, 2017 (ECF 187)--his brief inadequately addresses the current operative counrtercomplaint. The countercomplaint pleads fraud, fraud upon the court, and fraudulent transfer. Handshoe ignores paragraph 76-78 of the countercomplaint, which allege all the elements of fraud and are supported by facts stated therein and elsewhere in the document.

> Pleading fraud with particularity in this circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994); *see also Melder v. Morris,* 27 F.3d 1097, 1100 n. 5 (5th Cir.1994); *Shushany v. Allwaste,* 992 F.2d 517, 520 (5th Cir.1993).

> As the Second Circuit has noted, articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993). We agree with the Second Circuit's approach.

*Williams v. WMX Technologies, Inc.,* 112 F.3d 175 (5th Cir. 1997).

---

1   Leary attempts to address Handshoe's arguments in the order he presents them.

Handshoe's brief in opposition only addresses common law fraud under state common law, and the counterclaimant states sufficient facts for common law fraud. Yet, Leary also pleads fraudulent transfer and fraud on the court. "[T]he amended complaint states a legally cognizable claim for "fraud on the court."" *In re Clinton Street Food Corp.*, 254 B.R. 523 (Bankr. S.D.N.Y. 2000).

A cause of action for fraud on the court exists; *In re Yazoo Pipeline Co., LP*, 459 B.R. 636 (Bankr. S.D. Tex. 2011); *IN RE HOLMAN*, BK 07-70202-CMS-13 (Bankr. N.D. Ala. May 6, 2010). To make a valid claim for fraud on the court, a plaintiff must show evidence of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Boulmay v. Rampart 920, Inc.*, 24 Fed. Appx. 889, 2005 WL 648290, at *1 (5th Cir. 2005). "The type of fraud necessary to obtain relief from a fraudulently obtained judgment, filed either as a post-judgment motion in the original action to set aside the judgment or as an independent action for damages incurred because of the fraud that led to the judgment, is considerably narrower than common law fraud." *Robinson v. VOLKSWAGENWERK AG*, 56 F.3d 1268 (10th Cir. 1995) at fn 6. Damages may be awarded, including "attorney's fees, costs and expenses incurred." *In re Tri-Cran, Inc.*, 98 B.R. 609 (Bankr. D. Mass. 1989). A federal court has original jurisdiction over a fraud on the court claim involving a federal dispute.

Handshoe also ignores the badges of fraud relating to fraudulent transfer alleged in paragraph 80 of the counterclaimant. He says that Leary has alleged "nothing in the Counterclaims to indicate that any of the representation [sic] to which Leary complains were actually false." In yet the counterclaimant states that there were intentional "misrepresentations regarding ownership of a judgment debt ordered by this Court." The counterclaimant goes on to state:

> Handshoe made false representations of material facts with knowledge of their falsity for the purpose of inducing the plaintiff and the court to act thereon. Handshoe intended that the falsehood that he owned the judgment debt should be acted on by the hearers—including Leary & the Court--and in the manner reasonably contemplated. Leary and the Court were ignorant of this falsity. (emphasis added)

5

Handshoe also argues Leary knew the truth about the ownership of the judgment debt, but the countercomplaint says otherwise. In fact, there were so many private and concealed transfers of the judgment debt across state lines, and there were so many contradictory representations about ownership in different courts, there is no way Leary or anyone else could know who truly owned the judgment debt. That legal & factual determination is part of what is at stake in this case, and thus this aspect of the countercomplants is not right for dismissal.

Handshoe admits at page 7 of his brief on his motion to dismiss that he "openly assigned ['the $48,000 attorney feed judgment'] to *Slabbed New Media, LLC*" and that he disclosed the assignment "in every monthly operating report that Slabbed New Media, LLC submitted to the United States Bankruptcy Court [...] beginning with the very first report in July, 2015" (emphasis added).[2] Handshoe also admits that he *personally* took "steps to collect this judgment" in district court during the pendency of the Slabbed New Media bankruptcy, with an automatic stay in place. However, as stated in the countercomplaint, in July, 2016—during the pendency of the bankruptcy--he represented to Judge Guirola that he *personally* was still the judgment creditor and he started a Fed.R.Civ.P. 69(a) proceeding based on that misrepresentation, resulting in compulsory process being issued, with no notice to Leary or the other plaintiffs. He says this is "immaterial" to a violation of 28 U.S.C. 362(a) under 362(k), and he fails to explain how a material misrepresentation to the court, on which the court

---

2   Notably, those disclosure reports and declarations require the "original signature of the party" under penalty of perjury 17 U.S.C. section 1747. The July, 2015 Declaration Concerning Debtor's Schedules (DKT 40) bore a "cut-and-paste" signature inconsistent with Handshoe's signatures on other notarized documents. The pasted-in signature actually blanks out part of the signature line on the Declaration, making its pasted-in nature obvious. Likewise the Small Business Monthly Operating Report dated July 9, 2015, (DKT 29) contains the same cut-and-paste signature that can actually still be highlighted when clicking on the signature in the PDF file filed with the bankruptcy court. DKT 31 and DKT 32 contain the exact same pasted-in signature. Comparison of the pasted-in signatures with the notarized signature on the Assignment of Rights & Claims filed in case 12-CV-90 (ECF 65-1) shows apparent differences. And again, the signature on Mr. Handshoe's sole affidavit filed in case 12-CV-90 (ECF 8-1) bears remarkable differences from both the other two of Handshoe's signatures. This document was notarized by Mr. Truitt's office manager, a Ms. Manton. The DMCA counter-notification Handshoe submitted to AWS, in the record of this case, bears the same pasted-in signature as the bankruptcy declarations. In sum, most notable is the signature on Handshoe's affidavit, 12-cv-90 ECF 8-1, which was relied on by the district court in its decision on cross motions for summary judgment.

relied, and to which Leary could not respond due to lack of notice, which was injurious and fraudulent, is not actionable.

According to his own judicial admission, Handshoe could not have been the judgement creditor when he (mis)represented this fact to this Court. A judgment creditor is "[a] person having a legal right to enforce execution of a judgment for a specific sum of money." BLACK'S LAW DICTIONARY 921 (9th ed. 2009). Cf. Skyler M. Sanders, "Uncle Sam and the Partitioning Punitive Problem: A Federal Split-Recovery Statute or a Federal Tax?", 40 Pepp. L. Rev. 3 (2013); also *Patton v. Target Corp.*, 580 F.3d 942 (9th Cir. 2009) (noting that the above Black's Law Dictionary definition is "generally accepted."). Mr. Handshoe had no such legal right in July, 2016, as he has admitted, since he had transferred the judgment debt to third parties more than once. Sufficient facts are stated in the countercomplaint to establish fraud, fraudulent transfer, and fraud on the court.

Handshoe mostly ignores the detailed statement of chronological facts at paragraphs 2 through 64 of the countercomplaint. He ignores that the countercomplaint properly pleads that Leary was a judgment creditor of Handshoe, while at the same time Handshoe was—at times--a judgment creditor or purported judgment creditor of Leary, but for a lesser amount of money.[3] Leary proceeds to plead facts that show Handshoe fraudulently shielded his judgment debt against set off against Leary's (as well as Vaughn Perret and Trout Point Lodge's) judgment debt, which was a substantial injury.

The countercomplaint also chronicles intentional misrepresentations and omissions resulting in not only Leary's inability to seek offset, but also the misuse of judicial machinery to injure Leary through a combination of lack of notice and Handshoe's improper invocation of the Court's compulsory powers.

Regarding the back-and-forth of the $48,000 judgment debt that originally belonged to Handshoe, including fraudulent transfers and misrepresentations to the court, the countercomplaint

---

3   This Court can take judicial notice of the fact that $180,000 or $120,000 CAD is greater than $48,000 USD. Leary was awarded $20,000 in statutory damages and jointly awarded $100,000 in punitive damages.

7

establishes at paragraph 40 that the judgment debt was transferred by written instrument on March 5, 2014, and that the transfer was for valuable consideration, payment to Mr. Truitt and the Truitt Law Firm, LLC for fees related to appearing in case 12-CV-90. Nothing in this transaction, as pleaded, would be facially fraudulent. Truitt and Truitt Law Firm became the judgment creditors.

Next, at paragraph 42, Leary pleads a false written representation to this Court by Handshoe, that is on October 8, 2014, Handshoe said he and not Truitt and Truitt Law Firm owned the debt. Based on paragraph 40, Handshoe knew the representation was false when he made it to the Court, as he had signed and caused to be notarized a legal transfer instrument a short time earlier that same year.

At paragraph 43, Leary pleads a *post-facto* fraudulent transfer of the debt, i.e. no valuable consideration as well as an improper "rescission" done by email *after* the false representation to the Court.[4] Next, Leary pleads that Handshoe then transferred the same fraudulently-obtained judgment debt to his sole proprietor LLC. That fraudulent transfer helped establish the basis for the frivolous Slabbed New Media Chapter 11 bankruptcy, which only ended in 2016.

*Prima facie*, Leary is materially affected by the ownership and status of that debt because he is one of three judgment debtors. At paragraph 50, Leary pleads that Handshoe caused Slabbed New Media to be placed into bankruptcy, claiming the fraudulently transferred debt as its primary asset in bankruptcy. At paragraph 55, Leary details how Handshoe then represented to this Court, while he was causing Slabbed New Media to represent to the bankruptcy court, two different and mutually irreconcilable facts: to this Court he stated he was the sole judgment creditor while at the same time he and he alone caused Slabbed New Media to state to Judge Samson it was the sole judgment creditor.

Handshoe argues that Leary had proper notice of orders and motions in case 12-CV-90, but the countercomplaint pleads precisely the opposite: he had no notice. "At this stage of the litigation, [the court] must accept petitioner's allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 104 S. Ct.

---

4   The court in case 12-CV-90 denied a motion for original discipline regarding Truitt's conduct (ECF 66); the court was only addressing the issue of original discipline.

2229, 81 L. Ed. 2d 59 (1984).

On a 12(b)(6) motion, Handshoe cannot argue evidence or refer to facts outside the pleadings. The countercomplaint also pleads the filing of a false certificate of service by Handshoe and his attorney Truitt. Handshoe's argument that Leary pleads no injury is belied by facts pleaded in the countercomplaint at paragraphs 70 and 82.

### *Subject-matter Jurisdiction*

Regarding Rule 12(b)(1), Leary agrees that he is a stateless United States citizen for purposes of diversity jurisdiction. At page 4 of his brief, Handshoe argues that Leary cannot invoke "federal question" jurisdiction as a stateless citizen, but this is not the law; federal courts have jurisdiction over federal question cases. Stateless U.S. citizen status relates to diversity jurisdiction. Leary does not claim this court has jurisdiction based on diversity of citizenship. Leary has made counterclaims arising under federal law, with this court possessing original jurisdiction under 17 U.S.C. section 512, 11 U.S.C. section 362(k), and federal common law. The same nucleus of facts relating to the bankruptcy stay violation also relate to other claims, including abuse of process and the fraud counts.

Handshoe ignores that Rule 13(a) compulsory counterclaims are properly subject to this court's jurisdiction, as are the other counterclaims under pendant jurisdiction; *Lampton v. Diaz*, Civil Action No. 3: 09cv324-DPJ-MTP (S.D. Miss. May 7, 2010) (exercising "supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367" in a case with a "litany of state and federal causes of action against Ballard and the Lamptons, including: procurement of tax records in violation of 26 U.S.C. §§ 6103 and 7431, 42 U.S.C. §§ 1983 and 1985, and Mississippi statute and common law; invasion of privacy; abuse of process; civil conspiracy; misprision; and the tort of outrage."). Handshoe fails to consider jurisprudence of the U.S. Court of Appeals for the Fifth Circuit regarding pendant jurisdiction 28 U.S.C. § 1367 . "Our case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and

remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case, that court has abused its discretion under 28 U.S.C. § 1367." *Brookshire Bros. Holding, Inc. v. Dayco Products*, 554 F.3d 595 (5th Cir. 2009). In this case, there has been significant investment of judicial resources *and* federal claims remain.

If a counterclaim is compulsory, a federal court will have jurisdiction over it even though ordinarily it would be a matter for a state court.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). By statute, Congress has delineated two primary bases for original subject-matter jurisdiction in federal courts: federal question jurisdiction and diversity jurisdiction. 28 U.S.C. §§ 1331-1332. Additionally, in 1990, Congress enacted the supplemental jurisdiction statute, which provides in part: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Accordingly, certain claims may remain in federal court even if they do not meet the requirements for original jurisdiction so long as they form the same "case or controversy" as the claims with original jurisdiction.

The application of § 1367 is clear with respect to compulsory counterclaims. Compulsory counterclaims are those that "arise out of the transaction or occurrence that is the subject matter of the opposing party's claim" and must be plead or waived—outside of certain exceptions not relevant here. Fed R. Civ. P. 13(a). A compulsory counterclaim by definition meets the "same transaction or occurrence" standard, meaning it also falls under the broader "case or controversy" standard of § 1367. Wright & Miller, et al, Federal Practice and Procedure § 3567.1 ("It is absolutely clear that the common nucleus concept encompasses claims that arise from the same `transaction or occurrence' as the jurisdiction-invoking claim."). Accordingly, all compulsory counterclaims fall within the federal courts' supplemental jurisdiction. *CheckPoint Fluidic Systems Int'l, Ltd., v. Guccione*, 2012 WL 195533, No. 10-4505, at *4 (E.D. La. Jan. 23, 2012) ("When a counterclaim is compulsory it is within the supplemental jurisdiction of the court because by definition it must arise out of the same transaction or occurrence as the original claim.").

A permissive counterclaim, defined as any counterclaim that is not compulsory, is one that a party may, but is not required to, include in a pleading. Fed. R. Civ. P. 13(b). Prior to the passage of § 1367 in 1990, courts, including the United States Court of Appeals for the Fifth Circuit, required permissive counterclaims to have an independent jurisdictional basis. *See, e.g., Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1360 (5th Cir. 1979). However, the plain language of § 1367 evidences an intent to do away with this distinction between compulsory and permissive counterclaims. The statute specifically states that it applies to "*all other claims* that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (emphasis added).

10

Though the Fifth Circuit has yet to speak on the issue, the consensus among courts and commentators is that "Article III's case-or-controversy standard is the jurisdictional limit for counterclaims," not Rule 13's transaction-or-occurrence standard. *Global NAPs, Inc. v. Verizon New England, Inc.,* 603 F.3d 71, 87 (1st Cir. 2010). *See also Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 212, (2d Cir. 2004); *Channel v. Citicorp Nat. Servs., Inc.,* 89 F.3d 379, 385 (7th Cir. 1996); Wright & Miller, et al, Federal Practice and Procedure § 3567.1. Thus, the applicability of § 1367 turns on whether the counterclaim forms part of the same case or controversy, not whether it is compulsory or permissive. A compulsory counterclaim will always fall under § 1367 for the reasons delineated above, but a permissive counterclaim may or may not, depending on whether it is part of the same case or controversy as the claims invoking the court's original jurisdiction. If a permissive counterclaim does not fall within the parameters of § 1367, then it must have an independent jurisdictional basis. If it does not have an independent jurisdictional basis, then the Court must dismiss the claim for lack of subject-matter jurisdiction.

*Hankins v. YELLOW FIN MARINE SERVICES, LLC,* Civil Action No. 15-2494 (E.D. La. Dec. 16, 2015).

The copyright infringement claims made here by Leary are compulsory counterclaims given that Handshoe has claimed misrepresentation under the *Copyright Act* regarding infringement notices 17 U.S.C. section 512 and sought a declaration of non-infringement. "[E]very court that has discussed the issue has recognized that an infringement counterclaim is compulsory in an action for declaration of non-infringement." *Vivid Technologies, Inc. v. American Science,* 200 F.3d 795 (Fed. Cir. 2000), discussing trademark infringement.

Handshoe has made multiple judicial admissions of *prima facie* copyright infringement in his pleadings and briefs in this case. Never and nowhere in the record does Handshoe assert he had permission or any authorization to use, copy, and distribute the photographs in question.

As to standing, Leary has standing under section 512(f) which refers to the right to action for "any copyright owner or copyright owner's authorized licensee." The countercomplaint pleads that "Leary is the owner of the United States rights, including the right to action, of the foreign copyrighted photographic works at the heart of this case." It is established that Leary, Perret, and Trout Point Lodge owned the Canadian rights to the works in question. Handshoe points to nothing contradicting that

11

Leary owns the U.S. rights.

Handshoe's argument regarding Leary sending infringement notices from Canada on behalf of Trout Point Lodge, Limited, does not conflict with Leary's ownership of the United States rights in these works. Copyright is fundamentally territorial in nature. Territorial rights are commonly transferred. *Parfums Givenchy v. C & C BEAUTY SALES*, 832 F. Supp. 1378 (C.D. Cal. 1993); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189 (2d Cir. 1985). Handshoe posits that because some of the takedown notices to which Handshoe's illegal counternotifications were issued came from Trout Point Lodge, that Leary is somehow representing Trout Point Lodge in the instant action. That is not the case. Leary can own the United States rights to action while Trout Point Lodge retains the Canadian rights. While Leary's notice to YouTube was not made under the DMCA, Mr. Handshoe's counternotification clearly was done under this federal law.

512(f) applies to injury to a copyright owner resulting from "any person who knowingly materially misrepresents under this section . . . that material or activity was removed or disabled by mistake or misidentification." Handshoe freely admits his actions occurred under 17 U.S.C. section 512. The countercomplaint pleads he knowingly misrepresented that removal occurred by mistake or misidentification under federal law, and that Leary was injured as a result. Plaintiff by counterclaim can discern no requirement in 512(f) that the misrepresentation cannot be in reaction to a foreign infringement notice or an infringement notice about a foreign work; the requirement being that it, the counter-notification, was made under 17 U.S.C. section 512—which Handshoe admits—and that it contain a knowing misrepresentation resulting in injury. After having made claims under the DMCA, for Handshoe to now admit that any infringement notices sent by Leary were not made under U.S. law, particularly Section 512, is the height of hypocrisy and is sanctionable. Likewise, in his brief Handshoe stands behind purported corporate protections for his actions as managing member of Slabbed New Media, in yet denies Leary the same protections for his acts as an officer of Trout Point Lodge. He

should be estopped from doing so.

*Preemption*

Next, Handshoe argues preemption. Leary's claims for abuse of process and malicious prosecution, tortious interference, fraud, fraudulent transfer, and fraud upon the court are not preempted by the Copyright Act. The countercomplaint pleads that Handshoe used Mississippi process to blackmail Leary into halting a civil suit against him, and later on, to halt enforcement and execution proceedings arising from the resulting money judgment. That is, Handshoe caused process to issue for an untoward and collateral purpose, and continued to use such process in a way abusive of the judicial machinery. These facts had nothing to do with the *Copyright Act*. Because Handshoe was being sued in that case for copyright infringement in Canada does not mean the U.S. Copyright Act preempts Handshoe's illegal use of process issued from Mississippi.

Leary is not suing Handshoe both for misrepresentation and abuse of process, malicious prosecution, and fraud, for acts of sending misrepresented counternotifications. For example, acts of causing abusive process to issue from Mississippi federal and state courts are based on completely distinct facts. Leary's injuries stem from two distinct heads of damages arising out of a common nucleus of facts.

*Limitations Argument*

As Handshoe has not changed his brief from the one submitted in November, 2017, he continues to argue against a different countercomplaint that the operative one here. For instance, at fn. 15, he argues that Leary does not state a date with regards to "Bob Watson." In fact, the countercomplaint states a specific date:  September 16, 2017.

Generally, the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss. Mr. Handshoe's brief lacks any specifics or facts as to how state law complaints are beyond the limitations period. An adequately

13

stated claim "`may be supported by showing *any set of facts* consistent with the allegations in the complaint.'" Therefore, dismissal for failure to state a claim based on the statute of limitations defense should be granted only when "the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 466 (4th Cir. 2007) (en banc) (quoting *Twombly,* 550 U.S. at 563).

Handshoe acknowledges any statute of limitations began to run on October 10, 2017 (page 16 of brief).

Regarding the range of statute of limitations arguments propounded by Handshoe, he fails to appreciate (a) that the filing of the original complaint in this action tolled the statute regarding compulsory counterclaims; (b) limitations periods for abuse of process, tortious interference, and malicious prosecution have not expired, especially of one considers equitable tolling and continuing torts; (c) there is no statute of limitation under 18 U.S.C. Section 362(k); and (d) the copyright claims relate to continuous infringement.  The latter issue also nullifies Handshoe's *res judicata* argument regarding the Nova Scotia Supreme Court judgment against him, as does the territoriality principle applicable to copyright.

A complaint under 18 U.S.C. Section 362(k) may be brought in a district court and Congress imposed no limitations period on such a claim. *Price v. Rochford*, 947 F.2d 829 (7th Cir. 1991) (district courts have jurisdiction, "Congress did not enact a statute of limitations"); In re Newcomer, 416 B.R. 166 (Bankr. D. Md. 2009) (finding no statue of limitations on362(k) claims); *In re Javens*, 107 F.3d 359 (6th Cir. 1997) at fn. 2.

For those claims that do have a statute of limitations, Handshoe's Complaint was filed on November, 16, 2015 (ECF 1). "[A] majority of courts have held that where a plaintiff *institutes* an action in a timely manner, the running of the statute of limitation governing the compulsory counterclaim is tolled, provided the counterclaim was not time-barred at the *commencement* of the

14

plaintiff's action." *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567 (10th Cir. 1980) (emphasis added).

"Rule 13(a) contains no mention of relation back. Nonetheless, the better view holds that "the

*institution* of plaintiff's suit tolls or suspends the running of the statute of limitations governing a

compulsory counterclaim." 6 C. Wright & A. Miller, *supra*, § 1419, at 109 (footnote omitted)."

*Burlington Indus., Inc. v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir.1982) (emphasis added), *cert.*

*denied* 461 U.S. 914, 103 S.Ct. 1893; *Employers Ins. of Wausau v. United States*, 764 F.2d 1572 (Fed.

Cir. 1985).

In addition, there is judicially-admitted continuous or ongoing infringement as to each work at

issue here.

> The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of
> this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).
> Generally, courts have permitted a civil *action* as long as one instance of infringement occurs
> within the three year statutory period. *See Bridgeport Music, Inc. v. Chrysalis Songs*, No. 3:01-
> 0701 (M.D.Tenn. Dec. 2, 2002) (Higgins J.) ("A claim for copyright infringement . . . accrues at
> the time that the infringement upon which the suit is based occurred. If such infringement
> occurred within three years prior to the filing, the action will not be barred even if prior
> infringements by the same party as to the same work are barred because they occurred more
> than three years previously.")

*King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812 (M.D. Tenn. 2006).

See also: *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005). "There is no dispute that [defendant]

distributed [plaintiff's] products after February 27, 1992, the date when [plaintiff] acquired the

copyright in the [work]. In so doing, [defendant] infringed [plaintiff]'s "exclusive right to distribute

copies or phonorecords of works manufactured abroad." *BMG Music v. Perez,* 952 F.2d 318, 319 (9th

Cir.1991), *cert. denied, ___* U.S. *___,* 112 S.Ct. 2997, 120 L.Ed.2d 873 (1992). [Plaintiff] has standing

to sue for this infringement." *Parfums Givenchy*, *supra*. Relatedly, Handshoe judicially admitted at

page 19 of his prior brief on dismissal (ECF 188) that Handshoe published the images to Slabbed "well

before any of the original copyright owners assigned Trout Point or Leary their interests in the

photographs." So, Handshoe admits to infringing the copyright of "the original copyright owners" but

somehow not with regards to Leary, the current owner of the U.S. rights, including the right to action, in these copyrighted works according to the countercomplaint. An infringement plaintiff "has standing to bring this action — for both the initial [infringing activity] and the subsequent distribution [...] — because it received, by assignment from its parent company, not only the [...] copyright but also the right to sue for previously accrued infringement claims." *Parfums, id.* Leary has stated he was assigned the "right to action." Leary is also only suing over U.S.--not Canadian-- infringement.

The 17 U.S.C. section 512(f) standard is "good faith belief." Handshoe cannot claim a good faith belief when he outright admits in a judicial admission to knowing infringement; he has made clear there was no mistake or misidentification involving the works. Remarkably, on pages 17-19 of his brief on this motion, Handshoe goes on to list (admitting) the web sites that he (illegally) took the images from: Expedia, Torstar, Progress Media, and Ashoka—three of whom were or are (improper) defendants in this action. Upon any amount of reasonable due diligence Handshoe should have known he was infringing copyright when he filed the counter-notifications with his service providers. There was certainly no "misidentification" involved; section 512(f). In yet, instead, Handshoe sued the entities who had delivered legitimate section 512(f) notices to his service providers.

As egregiously, at page 17 of his brief  Mr. Handshoe admits to ongoing publication and distribution of the four works at question here on the Slabbed web site; see footnotes 17-20, using the present command "see" and referring to Slabbed.org URLs. Additionally, at fn. 12 of the Third Amended Complaint ("TAC"), Handshoe again admits as of the filing of the TAC to be publishing two of the copyrighted photographs at issue here; "the images in question *are* located at" two slabbed.org URLs (emphasis added). At paragraphs 41 through 44 of the TAC, Handshoe admits that the Slabbed web site was on December 13 and 14 of 2012 publishing a photograph of Leary and Vaughan Perret originally belonging to Ashoka (now assigned to Leary as admitted by Handshoe; see TAC at

16

paragraph 58). Handshoe further admits his service provider Automattic disabled access to the photograph at that time, thus admitting its publication on Slabbed.  Infringing publication occurred at that time, within three years of the filing of Handshoe's complaint.

At paragraphs 45-46 of the TAC, Handshoe admits Slabbed was publishing another copyrighted photograph, originally belonging to Marilyn Smulders, without permission on December 14, 2012, that is within three years of November 16, 2015. It remains unrefuted ownership of copyright in that photograph was assigned to Trout Point Lodge, Limited; Leary claims the U.S. rights in the countercomplaint. Handshoe admits to re-publishing the photograph anew "on or about January 5, 2013." Thus, there was another instance of infringement at that time.

At paragraphs 52-54 of the TAC, Handshoe admits to publishing a third photograph—that of Leary and Perret with their dog—on Slabbed as of December 31, 2012 and to republishing it anew on Slabbed sometime in January, 2013, admitting "the images were restored" to the web site at that time.

At paragraphs 66-68 of the TAC, Handshoe admits that a YouTube video contained "the media identified" in a copyright infringement notice sent to YouTube by Leary on February 15, 2014; that is the photograph of Leary & Perret with their dog. In his reply brief on summary judgment as to Count 5 and in the TAC, Handshoe admits to taking the photograph from The Toronto Star's Canadian web site, and using that photograph in personally creating the May 6, 2013 Slabbed video in Mississippi. The TAC admits the video was "created by and published [...] by Publisher Handshoe" (Count 5, paragraph 139). In Handshoe's opposition to Leary's motion to dismiss the TAC (ECF 112), Handshoe makes the judicial admission on page 8 that he "published to the Publisher's [Handshoe] personal YouTube account in order to facilitate the video's publication to the Slabbed New Media website."

February 15, 2014 is within the three year limitations period tolled when Handshoe initiated his complaint. In fact, that video also infringed other works, including the photograph of Leary, Perret, and

Daniel Abel authored by journalist Marilyn Smulders. Remarkably, on January 31, 2017, Handshoe, on behalf of Slabbed New Media, registered copyright with the U.S. Copyright Office in the YouTube video, including claiming copyright in "all other cinematographic material, audiovisual material, text" contained therein, with the exception of "preexisting music." (This court may take judicial notice of that registration as a public record). That is, Handshoe illegally claimed the U.S. copyright in the photographs at issue here and that registration filing misrepresented facts to the Copyright Office.

At paragraphs 89-90 of the TAC, Handshoe admits to publishing multiple photographic works he was not authorized to publish, on or around January 18, 2016, including a fourth image authored by Vaughan Perret: a promotional photograph of Trout Point Lodge. In sum, Handshoe has admitted to continuous and new unauthorized copying, public display, and the creation of a derivative work involving the four photographs at issue here. These claims must not be dismissed.

Handshoe also admits to new infringing publications on Slabbed by copying files to new web hosts—Automattic, Dream Host, Host Gator, AWS-- throughout the TAC; each new reproduction, transfer, uploading, downloading, and publication of the protected works caused new instances of infringement. The latest was onto and from Amazon Web Services servers apparently in 2016.

Handshoe's arguments about his good faith belief belong in his defence, not in a 12(b)(6) motion.

Handshoe again confuses the fact that because third parties either assigned copyright, or because copyright was assigned to third parties, that he therefore had a right to copy, distribute, and publicly display such works on the commercial Slabbed web site. That is, just because images appeared publicly on the Internet did not allow Handshoe to violate copyright or to make intentional misrepresentations in DMCA counter-notifications. *Agence France Presse v. Morel*, 934 F. Supp. 2d 547 (S.D.N.Y. 2013). There is no *res judicata* effect for continuous or ongoing infringement.

18

Handshoe does not appear to claim the statute of limitations affects the fraud, fraud on the court, and fraudulent transfer claims. There is a three-year statute of limitations for fraud in Mississippi (*Whitaker v. Limeco Corp.*, 32 So. 3d 429 (Miss. 2010)), though Handshoe incorrectly states it as one year. Regarding the limitations periods for the abuse of process, malicious prosecution, and tortious interference claims, the abuse of process was (and is) ongoing. "Process" includes not only a summons, but also compulsory process and show cause orders. Leary clearly claims that on more than one occasion Handshoe used process for an ulterior purpose, that is to thwart prosecution of a copyright infringement and defamation lawsuit and then execution on that resulting judgment. That was not the intended purpose of process issued in this case, case 12-CV-90, in state court, and in the Slabbed New Media bankruptcy. Leary pleads an ongoing pattern of such conduct existed.

> It seems to us that a lawsuit is a continuous, not an isolated event, because its effects persist from the initial filing to the final disposition of the case. It is repetitive in that it represents the assertion, every day, of the plaintiff's claim. *Cf. Neumann v. Vidal,* 1982-2 Trade Cas. (CCH) ¶ 64,933, at 72,770, 1981 WL 2218 (D.D.C. 1981) (holding that the statute of limitations on an abuse of process charge begins to run not when the defendant institutes the allegedly abusive claim, but when he ceases to assert it). A defendant subject to a lawsuit is likely to suffer damage not so much from the initial complaint but from the cumulative costs of defense and the reputational harm caused by an unresolved claim.

*Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992), *cert. denied,* 506 U.S. 906, 113 S.Ct. 300, 121 L.Ed.2d 223 (1992).

Mississippi recognizes continuing torts. "A continuing tort involves a repeated injury and the cause of action begins to run from the date of the last injury, tolling the statute of limitations. *Smith v. Franklin Custodian Funds, Inc.,* 726 So.2d 144(¶ 17) (Miss. 1998)." *McCorkle v. McCorkle*, 811 So. 2d 258 (Miss. Ct. App. 2001). The countercomplaint complains of multiple instances of the issuance of process within the limitations period as well as a continuing conduct by Handshoe to abuse process. In addition, as already argued, the filing of Handshoe's complaint tolled the statue of limitations for all compulsory counterclaims.

Abuse of process is not by force a compulsory counterclaim in the same case in which process

is abused, but it often can be. *Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246 (9th Cir. 1987), collecting cases. In cases with facts similar to those described here, abuse of process is compulsory; *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 633-34 (3d Cir.1961) (finding that a party's counterclaim was a compulsory counterclaim within the meaning of rule 13(a), because allegations that claims were unjustified, and brought in bad faith without color of right and with the sole object of harassing, entailed determination of many of the same facts and law relating to the underlying claim). Handshoe does not explain how publishing the original stamped complaint in this case, full of baseless criminal allegations, along with a press release, did not abuse process and is not a compulsory counterclaim. Notably such types of publications may lose their litigation privilege and be defamatory.

> [I]n *Netterville v. Lear Siegler, Inc.,* the Mississippi Supreme Court addressed the litigation privilege in the context of attorney disciplinary proceedings. 397 So. 2d 1109 (Miss. 1981). Although the context was different and subject to a state statute, the court expressly stated that its ruling was based in part on the common law, and it provided the following synopsis:
>
>> Any person or legal entity filing such complaint shall be immune from any civil suit predicated thereon, so long as the statements are made within the course and framework of the disciplinary process and are reasonably relevant to the complaint.
>
> *Id.* at 1113 (citing *Ramstead v. Morgan,* 219 Or. 383, 347 P.2d 594, 77 A.L.R.2d 481 (1959)). The Court then concluded that the same statements lost their privilege if "circulated to persons who were not entitled to receive it." *Id.*
>
> As stated, the context in *Netterville* is different, but the case is consistent with cases from many other jurisdictions holding that a statement made in the course of a judicial proceeding may lose absolute privilege when republished.

*VIRGINIA COLLEGE, LLC v. Martin*, Civil Action No. 3: 11CV682 DPJ-FKB (S.D. Miss. July 12, 2012).

The malicious prosecution claims could not have been brought until Leary prevailed in this case and multiple counts were dismissed by this court in September 2017, including a *sua sponte* decision to not allow Handshoe to again amend his complaint; so given this particular factual situation in the

instant case, *prima facie* the limitations period has still not expired and the claims are ripe.

> Although this Court requires a termination, a final termination is not required. Our holdings in other cases teach that the termination element of a malicious prosecution claim does not require an appealable judgment or a dismissal "with prejudice." [...]
>
> Further, it is not necessary that all proceedings that may be required to enforce the rights of the parties shall occur before the cause of action accrues for malicious prosecution.

*Joiner Ins. Agency v. Principal Cas. Ins.*, 684 So. 2d 1242 (Miss. 1996).

Also: *Young v. OVELLA*, Cause No. 1: 12CV390 LG-JMR (S.D. Miss. Apr. 29, 2013).

### *Bankruptcy Stay Violation*

Regarding liability under 11 U.S.C. 362(k), Handshoe claims only debtors have standing but

overlooks the findings of the U.S. Court of Appeals for the Fifth Circuit that bankruptcy creditors as

well have standing to bring a claims under that section. *St. Paul Fire & Marine Ins. Co. v. Labuzan*,

579 F.3d 533 (5th Cir. 2009). His claim that only the debtor can pursue relief under 362(k) is incorrect.

> The Bankruptcy Code permits any person injured by a willful violation of the automatic stay to recover actual damages, including costs and attorney's fees, and sanctions in appropriate circumstances. See 11 U.S.C. § 362(k); *St. Paul Fire & Marine Ins. Co. v. Labuzan,* 579 F.3d 533, 543 (5th Cir. 2009) (holding that "based on § 362(k)'s plain language, the above-discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and the weight of authority finding creditor-standing, we hold debtors and creditors are entities whose grievances fall `within the zone of interests' protected by § 362(k)"); *Pettitt v. Baker,* 876 F.2d 456, 457 (5th Cir. 1989) (concluding that § 362(h), now § 362(k), "creates a private remedy for one injured by a willful violation of an automatic stay").

*IN RE BEACH*, No. 8: 13-bk-350-KRM (Bankr. M.D. Fla. Mar. 18, 2015) at fn 29

"[T]he purpose of subsection 362(a)(3) [...] is to protect the estate from direct action taken by *creditors*

against a debtor's real or personal property, and to prevent an uncontrolled scramble to liquidate the

estate." *In re Continental Air Lines, Inc.*, 61 B.R. 758 (S.D. Tex. 1986) (emphasis added). The

automatic stay provision is intended "to allow the bankruptcy court to centralize all disputes concerning

property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by

*uncoordinated proceedings in other arenas.*" *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. &*

*Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir.1999) (internal quotation marks

omitted; emphasis added). The stay does not solely apply to actions against the debtor, but also any actions affecting the debtor's property. The House Report on the Bankruptcy Reform Act states as follows:

> Paragraph (3) stays any act to obtain possession of property of the estate (that is, property of the debtor as of the date of the filing of the petition) or property from the estate (property over which the estate has control or possession). The purpose of the provision is to prevent dismemberment of the estate. Liquidation must proceed in an orderly fashion.

Cf. *Continental Air Lines*, supra.

Thus, 362(a)(3) "bars the actual taking of property of the estate, or "exercise[ing] dominion over property that belonged to [the debtor's estate]." *Citizens Bank v. Strumpf,* 516 U.S. 16, 21 (1995)." *IN RE MANCHANDA*, No. 16-10222 (JLG) (Bankr. S.D.N.Y. May 19, 2016). See also: *In re Zartun*, 30 B.R. 543 (B.A.P. 9th Cir. 1983). "A careful reading of [362(a)(3)] reveals that the actions prohibited need not be done directly against the debtor himself. [...] "Any action to collect" means any act to collect from any source whatsoever." *Matter of Jandel*, 8 B.R. 855 (Bankr. S.D. Ohio 1981).

> Attempts by any creditor to execute on a judgment debt belonging to the estate violates the stay. The stay also "protects the estate and gives a trustee the opportunity to marshal and distribute the assets." *In re Panek,* 402 B.R. 71, 75 (Bankr.D.Mass.2009) (citing *Nelson v. Taglienti (In re Nelson),* 994 F.2d 42, 44 (1st Cir.1993)); *In re Rosa,* 313 B.R. 1, 6 (Bankr.D.Mass.2004).
>
> "In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay." *Soares,* 107 F.3d at 975-76. And in light of this guidance from the First Circuit and its deep set belief in the importance of the automatic stay, this Court has held many times that "the protections afforded by the automatic stay are meaningless if they are not enforced." *In re Panek,* 402 B.R. at 76; *In re Rosa,* 313 B.R. at 6.

*In re Beckett*, 455 B.R. 9 (Bankr. D. Mass. 2011).

Using post-judgment or supplementary proceedings are efforts to obtain possession of the property of the bankruptcy estate and violates section the 362(a) stay and is punishable under 362(k). The stay encompasses Fed.R.Civ.P. 69(a) proceedings in a U.S. district court and any resulting orders. See: *SEC v. Brennan,* 230 F.3d 65, 71 (2d Cir. 2000); *Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320 (7th Cir. 1992) (reporting "supplemental "enforcement" proceedings" "barred by

11 U.S.C. § 362, the automatic stay in bankruptcy, because [...] a creditor was trying to reach assets of the estate. 131 B.R. 410 (1991)").

Attempts to collect a scheduled debt in another forum are impermissible; *In re Ellis,* 66 B.R. 821, 823 (N.D.Ill. 1986); creditors who act without court approval do so at their peril and expense. *In re AM International, Inc.,* 53 B.R. 744 (Bankr.M.D.Tenn.1985). Case law makes clear that any non-bankruptcy court filings or proceedings commenced in violation of a stay are void (absent retroactive validation by the bankruptcy court) and that any court decisions or that relied on those filings or motions are also void (absent retroactive validation by the bankruptcy court) even if the stay was lifted by the time of the decision. "[W]hether a case is subject to the automatic stay must be determined at its inception." *Association of St. Croix Condo. Owners v. St. Croix Hotel,* 682 F.2d 446, 449 (3rd Cir.1982). "All of [creditor's] post-judgment motions made during the pendency of [debtor]'s bankruptcy [...] are void. [...] So too is the district court's November 30, 1990 order granting that particular motion, and therefore that order must be vacated." *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir. 1991). (Notably the Third Circuit joins the Fifth Circuit in holding judicial proceedings conducted in violation of the automatic stay voidable. *Excelsior Ins. Co. v. Pennsbury Pain Center,* 975 F. Supp. 342 (D.N.Y. 1996)). See also: *In re Advent Corp.,* 24 B.R. 612 (B.A.P. 1st Cir. 1982) (A "proceeding" to cancel a bond was void *ab initio* when commenced after a 362(a) stay. "[T]he action taken by F & D and Customs to render ineffective the $100,000 general term bond was of no effect, and that the bond continued to cover shipments until it expired by its own terms . . ."); *In re Dominguez, 312 B.R. 499 (Bankr. S.D.N.Y. 2004)* (Despite "a debtor's failure to redeem property before the expiration date permanently extinguished her interest in" property, "filing" to affirm a "default judgment post-petition" and serving a notice "were both substantive acts" that violated the stay. Therefore the creditor "has expended time and resources for a judgment that is void"); *In re Hoffinger Industries, Inc.,* 329 F.3d 948 (8th Cir. 2003); *Anglin v. Village of Washington*

*Park*, No. 03-cv-0846-MJR (S.D. Ill. Apr. 21, 2005); *Middle Tennessee News v. Charnel of Cincinnati*, 250 F.3d 1077 (7th Cir. 2001); *CONSOLIDATED PIPE & SUPPLY COMPANY, INC. v. DEER PATH VACATIONS*, No. E2003-02787-COA-R3-CV (Tenn. Ct. App. June 8, 2004); *Burrhus v. M & S Mach. & Supply Co.*, 897 S.W.2d 871 (Tex. App. 1995).

"Judicial actions taken against a debtor are void *ab initio*, absent relief from the automatic stay." *In re Dominguez*, 312 B.R. 499 (Bankr. S.D.N.Y. 2004). "Such actions are void *ab initio* whether the creditor acts with knowledge of the stay or not. When a creditor violates the automatic stay knowing that a bankruptcy petition has been filed, the creditor acts in contempt. Formal notice of the bankruptcy is not required if the creditor has actual knowledge of it." *In re Wariner,* 16 B.R. 216, 218, 5 C.B.C.2d 865, 866 (Bkrtcy.N.D.Tex.1981) (internal citation removed). "All actions taken in violation of its terms are void, even where there was no actual notice of the existence of the stay." *Homer Nat. Bank v. Namie*, 96 B.R. 652 (W.D. La. 1989); also *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982).

In his motion to dismiss, Handshoe notably fails to address his misrepresentation to this Court, in the person of Judge Guirola, that Handshoe was the judgment creditor when that was simply not the case and he knew a stay was in place, but failed to inform the court of that circumstance. In fact, in his brief, Handshoe again strenuously argues the judicial admission that the debt belonged to Slabbed New Media at the time he personally filed before Judge Guirola a motion initiating a post-judgment proceeding in aid of execution under Rule 69(a), seeking to collect for himself on the judgment debt belonging to the bankruptcy estate. "A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act. *See Johnston Evtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir.1993); *Lansdale Family Restaurants, Inc. v. Weis Food Service (In re Lansdale Family Restaurants, Inc.),* 977 F.2d 826, 829 (3d Cir.1992); *Crysen/Montenay Energy Co.,* 902 F.2d at 1105; *A & J Auto Sales, Inc. v. United States (In re A & J Auto Sales, Inc.),* 223 B.R.

24

839 (D.N.H.1998)." *In re Sharon*, 234 B.R. 676 (B.A.P. 6th Cir. 1999). Also: *Budget Serv. Co. v. Better Homes,* 804 F.2d 289, 292-93 (4th Cir. 1986); *Skillforce, Inc. v. Hafer*, 509 B.R. 523 (E.D. Va. 2014). Knowledge of the bankruptcy is considered knowledge that there is an automatic stay in effect. *In re Lile,* 103 B.R. 830, 837 (Bankr.S.D.Tex. 1989), *aff'd,* 161 B.R. 788 (S.D.Tex.1993), *aff'd in part sub nom. Matter of Lile,* 43 F.3d 668 (5th Cir. 1994) ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay."). It is (almost) unprecedented for an individual who initiated a bankruptcy to then violate the stay. "Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded." *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 302 (5th Cir. 2005) (quoting *In re Taylor*, 884 F.2d 478, 482 (9th Cir. 1989)). "As held in the cases of *Citizens Bank v. Strumpf,* 37 F.3d 155 (4th Cir. 1994), *overruled on other grounds* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) and *In re Jones,* Case No. 06-00380-8-RDD (Bankr. E.D.N.C. June 27, 2007), willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *In re Lofton*, 385 B.R. 133 (Bankr. E.D.N.C. 2008).

"In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. *See Homer Nat'l Bank v. Namie,* 96 B.R. 652, 654 (W.D.La. 1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to *prevent* violations of the automatic stay." *Fleet Mortg. Group, Inc. v. Kaneb,* 196 F.3d 265 (1st Cir. 1999) (emphasis added). A section 362(a) violator "and its attorney willfully violate[] the automatic stay by *failing to act to nullify [a] Contempt Order*" entered in violation of a stay, "and they are, therefore, subject to sanctions for such willful violation. *Atkins,* 176 B.R. 998." *In re Smith*, 180 B.R. 311 (Bankr. N.D. Ga. 1995) (emphasis added). "[W]here there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.

25

Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages." *In re Daniels,* 206 B.R. 444, 445 (Bankr. E.D.Mich.1997) applied by *In re Webb,* 470 B.R. 439 (B.A.P. 6th Cir. 2012).

### Joint Liability

Finally, Handshoe overlooks the well established principle of joint liability for intentional acts done in contravention of the *Copyright Act*, including by corporate officers. Handshoe claims it was his company that was actually the infringer or the 512(f) misrepresenter and he should be held harmless. This is wrong as a matter of law. Under the law of copyright, Handshoe was directly, jointly liable for any infringement or misrepresentation allegedly undertaken by his sole-proprietorship limited liability company. He was also liable as the personal creator of the YouTube video, and as its admitted first publisher as a means of allowing commercial republication on Slabbed. The Supreme Court has held that "the imposition of vicarious liability is manifestly just" when "the "contributory" infringer was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984).

> All participants in copyright infringement are jointly liable as tortfeasors. *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552, 554 (2d Cir. 1972); *Charles Deitcher Productions, Inc. v. Milano Restaurant, Inc.,* 21 U.S.P.Q.2d 1877, 1879 (E.D.Tex.1991), *aff'd* 966 F.2d 1448, 24 U.S.P.Q.2d 1794 (5th Cir.1992). Liability for copyright infringement falls not only on the person who actually performed the copyrighted music, but also on persons who (1) had the right and ability to control the infringing activity and (2) had a direct financial interest in that activity. *Nelson-Salabes, Inc. v. Morningside Dev.,* 284 F.3d 505, 513 (4th Cir.2002) (noting business owner's liability for infringement under theory of vicarious liability); *Crabshaw Music v. K-Bob's of El Paso, Inc.,* 744 F.Supp. 763, 767-68 (W.D.Tex. 1990) (same).

*Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572 (E.D. Tex. 2007).

Also: *Selchow & Righter Co. v. Goldex Corp.*, 612 F. Supp. 19 (S.D. Fla. 1985).

Regarding state law claims of fraud, abuse of process, and malicious prosecution, Leary is not

making any claims for actions filed or statements made by Slabbed New Media, only Handshoe personally or his *ultra vires* acts. The same is true for fraud upon the court. That Handshoe seeks the protection of Slabbed's LLC status, while simultaneously claiming against Leary under 17 USC 512(f) for acts Handshoe admits Leary did as an officer of Trout Point Lodge is the height of hypocrisy.

**Amendment**

Should this Honorable Court decide to dismiss any of Leary's claims, he prays that he be given leave to present to the Court a draft second amended counterclaim and to amend. "[A] court should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). No deadline for amendments exists in the Case Management Order, so Rule 15(a)(2) remains applicable.

**Conclusion**

For the above stated reasons, Leary's countercomplaint do not warrant dismissal under Fed.R.Civ.P. 12(b)(1), 12(b)(6) or 9(b). This court has proper jurisdiction over all claims, and the countercomplaint states facts on which relief can be granted. Mr. Handshoe's Motion to Dismiss is due to be denied.

This the ___4TH___ day of July, 2018.

Respectfully submitted,
DEFENDANT (PLAINTIFF BY COUNTERCLAIM)
DR. CHARLES L. LEARY

appearing pro se

Charles L. Leary

Telephone 902-482-8360
Fax 800-980-0713
foodvacation@gmail.com

27

## CERTIFICATE OF SERVICE

I, Charles Leary, defendant and plaintiff by counterclaim, hereby certify that I have this date filed the foregoing with the Clerk of the Court via postal channels, and that the ECF system will send notification of such filing to the following:


Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
*Pro Se* **Plaintiff**

So certified, this ___ day of November, 2017.

Charles L. Leary

28