IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



DOUGLAS HANDSHOE          PLAINTIFF/DEFENDANT BY COUNTERCLAIM

VS.          CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, ASHOKA, XYZ
FOUNDATION & JOHN DOES 1-50

DEFENDANT/PLAINTIFF BY COUNTERCLAIM

## CHARLES LEARY'S BRIEF SUPPORTING HIS MOTION
## FOR A TEMPORARY RESTRAINING ORDER

Defendant Charles Leary respectfully seeks a temporary restraining order directed to Plaintiff Douglas Handshoe enjoining him from further seeking to illegally execute on a money judgment issued by this district court illegally using the judicial and enforcement machinery of Stone County, Mississippi, his home county, through ministerial procedures that require no actual judicial supervision. The money judgment in question, and its ownership, is already under the jurisdiction of this court in this case as part of Dr. Leary's counterclaims. In addition, Mr. Handshoe is seeking to execute upon the intellectual property of Dr. Leary the determination of the ownership of which is also already immediately before this court in this case.

1

## FACTS

In 2013, this Court awarded a $48,000 attorney's fee judgment to Douglas Handshoe against Charles Leary, Vaughn Perret, and Trout Point Lodge, Limited (TPL), who were the plaintiffs. That case fell under the SPEECH Act of 2010. Case No. 12-cv-90. Mr. Handshoe never sought to execute on that judgment in Nova Scotia, the residence of the judgment debtors.

In February, 2014, Leary, Perret, and TPL were granted $180,000 CAD in damages against Douglas Handshoe for copyright infringement by Nova Scotia Supreme Court. That judgment was enrolled in Hancock County Circuit Court, Handshoe opposed the enrollment and removed the case to this Court, from where it was quickly remanded. In January, 2017, Leary, Perret, and TPL prevailed over Handshoe's objections in state court and began to attempt to execute on the judgment. Handshoe did not appeal.

Having learned of Leary et. al.'s intent to enroll the copyright infringement judgment in Mississippi in late February, 2014, in March, 2014, Handshoe assigned the entirety of his interest in the money judgment to Jack E. Truitt and the Truitt Law Firm, LLC, in a notarized written instrument. Valuable consideration was given in that Truitt and the Law Firm were owed attorney's fees and legal costs by Douglas Handshoe for representation in the SPEECH Act case. Truitt subsequently filed claims in Louisiana state courts based on the ownership of that money judgment, and on information and belief those claims have not been withdrawn by Truitt and the Truitt Law Firm.

Nonetheless, Handshoe would in January, 2015, also transfer the entirety of the same judgment debt to Slabbed New Media, LLC, where the judgment debt was the company's major asset in a Chapter 11 bankruptcy proceeding in a division of this court. Handshoe has sworn he was indemnified by Slabbed New Media for the $48,000 in legal costs under the indemnification clause of the Slabbed New Media company formation documents. At the same time, Truitt and the Truitt Law Firm were listed as creditors of Slabbed New Media for $48,000 in attorney's fees, thus indicating those fees were

2

never paid to them despite the indemnification of Handshoe by Slabbed New Media. Indeed, Truitt participated in the bankruptcy proceeding as a creditor and voted to approve a proposed plan.

In the summer of 2017, Handshoe, on information and belief with the aid of G. Gerald Cruthird, acquired an abstract of the $48,000 judgment from this Court, although Handshoe was no longer the judgment creditor—something they omitted to tell the Clerk of this Court. Handshoe then presented himself and the abstract to Stone County Circuit Court, where Leary through counsel had enrolled the copyright infringement judgment, now properly a judgment in Mississippi originally enrolled in Hancock County Circuit Court. Handshoe sought to enroll this district court's judgment in Stone County and then sought to execute on that judgment against the judgment owned by Leary et. al. as a chose in action. The Clerk's Office in Stone County filed and stamped the Writ of Execution presented to them by Handshoe and Cruthird.

Handshoe never attempted service on Leary's Mississippi counsel although Handshoe and Cruthird knew very well Leary was represented by counsel. In documents authored by Handshoe and/or Cruthird, Stone County issued a Writ authorizing a licensed civil constable in Nova Scotia to effect service; that person was named Donnie Acker. However, Donnie Acker was not in fact a licensed civil constable in Nova Scotia. No judge authorized Acker to effect service.

Handshoe apparently attempted service in Nova Scotia, however not at Leary's place of residence. In his Affidavit of Service, Donnie Acker swears that he could not locate Leary (or Perret) and so he left papers at their place of business, Trout Point Lodge. However, the temporary foreign worker Acker met at the reception desk refused service of any documents on behalf of anyone. Acker never attempted service again. Leary never saw the documents.

Despite the Affidavit of Service stating that Leary was not served, the Stone County Clerk's Office proceed to authorize a Sheriff's sale of the chose-in-action. Leary was never served with notice of the Sheriff's Sale; neither was Leary's Mississippi counsel. On October 30, 2017, the Sheriff's sale

3

occurred and Douglas Handshoe purchased the $180,000 copyright infringement money judgment against him for $100.00.

Thereafter, Leary's Mississippi counsel abandoned the case as it appeared to him that collection against Handshoe was extremely difficult if not futile. He withdrew from the case over Leary's objections. Leary did not learn of the sheriff's sale until on or around January, 2018.

In May, 2018, believing that Leary would appear in Mississippi for a court-ordered settlement conference in this case, Handshoe again obtained a Writ of Execution from the Stone County Circuit Court Clerk. This time Handshoe reportedly sought to execute against intellectual property rights of Leary, Perret, and TPL, including the United States rights to photographs at issue in this proceeding, the copyright to the *Trout Point Lodge Cookbook* published in 2004 by Random House (whose copyright is not owned by Leary, Perret, or TPL), and other property clearly *not* in Stone County, Mississippi. This also included execution on *Leary's counterclaims in this case*. Handshoe again represented that he was the lawful judgment creditor, not Truitt or Slabbed New Media, LLC. The Stone County Clerk's Office again stamped a Writ of Execution based *prima facie* on personal property not located in Stone County.

On information and belief, Handshoe planned to use Leary's physical appearance at the settlement conference as an opportunity to serve him with the Writ of Execution.

The settlement conference was cancelled by court order following a motion by Leary. On June 22, 2018, the Magistrate Judge in this case ordered that Leary submit to a deposition, either in person or by telephone, and set a deadline in August, 2018.

On June 22, Handshoe wrote to Leary by email, demanded his exact whereabouts and that he be deposed within the next three weeks. Leary did not immediately respond.

On information and belief, on June 27, 2018, someone appeared at Trout Point Lodge, 189 Trout Point Road, and attempted to serve papers including by inference the newly-minted Writ of

4

Execution. However, Handshoe has known since late 2017, that Leary's address was no longer at the Trout Point Road address. That action disrupted normal business operations at Trout Point Lodge.

## ARGUMENT
### Handshoe Had No Standing

Despite the fact that Mr. Handshoe was no longer the judgment creditor for the $48,000 judgment debt, in the fall of 2017, he obtained an abstract of the judgment from this U.S. district court and enrolled that judgment in his personal name in Stone County Circuit Court pursuant to Miss. Code section 11-7-195.

Mr. Handshoe was not the judgment creditor; when he enrolled that judgment in Stone County in his personal name, that was tantamount to fraud upon Stone County Circuit Court and the Sheriff of Stone County. Fraud and fraudulent transfer of the same judgment debt is an issue in this case, over which this court has jurisdiction. Handshoe also obtained an abstract from this Court under false pretences, as he was no longer the judgment creditor when he did so.

There are two statutory methods by which Mr. Handshoe could have enrolled and enforced the judgment of a U.S. District Court, including such a court inside Mississippi. The judgment of a federal court is considered a foreign judgment. See Buckley v. Personnel Support Systems, Inc., 852 So. 2d 648 (Miss. Ct. App. 2003) and Smith v. Hayes, Civil Action No. 2: 11cv221-KS-MTP (S.D. Miss. Sept. 27, 2013).

### Lack of Authority

While Handshoe apparently complied with section 11-7-195 regarding filing an abstract in Stone County (though not in the correct name), *he did not make the enrollment returnable to this U.S. district court, as required by the law*. MS Code § 13-3-155 (2013). See Buckley, supra.:

> ¶ 10. The first procedure—the one that Buckley argues is applicable in this case—permits the holder of a judgment obtained "in any court of the United States held within this state" to cause an abstract of the judgment to be filed in the office of the circuit clerk

5

of any county in the state. Miss.Code Ann. § 11-7-197 (1972). The circuit clerk upon the filing of the abstract, is obligated to enroll the judgment on the judgment roll of the county, after which the judgment will "be a lien upon and bind the property of the defendant within the county where it shall be so enrolled." Miss.Code Ann. § 11-7-195 (1972) (emphasis supplied).[1]

¶ 11. The issue then becomes what authority over the collection of such a judgment is vested in the circuit court of the county once the clerk has so enrolled the judgment. *It does not seem that any such authority exists.* By virtue of the recording of an abstract of a judgment, the clerk is given certain authority but the circuit court of the county itself does not play an active role in the process. Other than creating a lien on any property of the defendant in the county where the judgment is enrolled, the only other enforcement advantage given a judgment creditor is found in Section 13-3-155 of the Mississippi Code, which states that [t]he clerk of the circuit court in whose office any judgment or decree shall be enrolled, may issue execution and writs of garnishment thereon directed to the sheriff of his county, returnable before the court which rendered the judgment ordecree.

Miss.Code Ann. § 13-3-155 (Rev.2002) (emphasis supplied).

It is clear that this statute contemplates an action involving property or an indebtedness believed to be within the limits of the county in which the judgment is enrolled. In the case before us, there is no contention that the alleged indebtedness of the garnishee, Personnel, to Nuckols, the judgment debtor, arose in Jones County or that there existed any nexus whatsoever between the circumstances of the indebtedness and Jones County. More fundamentally, however, even could such a nexus be shown, it is plain that the statute, while imposing certain duties upon the Circuit Clerk of Jones County once a judgment is enrolled, *does not grant to the Circuit Court of Jones County any authority in the handling of an execution or garnishment issued by the clerk under the authority of Section 13-3-155. To the contrary, the plain language of the statute requires the circuit clerk to make any writs so issued returnable to the court that rendered the judgment.* (emphasis added)

Stone County had no "authority in the handling of an execution or garnishment issued by the clerk."

That is, there was an absence of jurisdiction. In addition, under that section, the Stone County clerk could only issue a Writ directed to the Stone County Sheriff for service, not to Don Acker of Nova Scotia, i.e. service of process abroad.

Stone County never had jurisdiction according to the *Buckley* decision and Mississippi statute.

---

[1]Notably, a judgment lien only attaches to real property and tangible personal property of the judgment debtor, and it does not attach to intangible property upon enrollment. Simmons-Belk, Inc. v. May, 283 So.2d 592 (Miss.1973); Bryan v. Henderson Hardware Co., 107 Miss. 255, 65 So. 242 (1914).

Miss. Code Ann. Sections 13-3-127 and 13-3-133 (1972) provide that intangible personal property includes rights, credits, money, bank notes, bill, evidences of debt, judgments, and decrees. See: Simmons v. Thomas, 827 F. Supp. 397 (S.D. Miss. 1993).

6

Instead, subsequent proceedings were under the jurisdiction of the U.S. district court, as was the case in USAVE AUTO RENTAL OF AMERICA, INC. v. Barton, Civil Action No. 3: 15cv348-DPJ-FKB (S.D. Miss. May 13, 2016) and Smith v. Anderson, Civil Action No. 2: 11cv221-KS-MTP (S.D. Miss. Mar. 21, 2013).

In the documents seen by Leary, there appears no proof fees were paid, and the time was not properly recorded by the clerk, as required by statute. See: U-SAVE AUTO RENTAL OF AMERICA, INC. v. Barton. (Handshoe did not use or comply with the procedure in sections 11-7-301 et. seq. regarding enforcement of foreign judgments, which was the other avenue he could have pursued.)

**Service & Notice**

The Stone County Circuit Court clerk had no capacity to authorize the service of the Writ in a foreign county, or by someone other than a Sheriff of a county in Mississippi. MS Code § 13-3-113 (2013) . Service did not comply with Mississippi law or the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Convention), [1969] 20 U.S.T. 361, which is the supreme law of the land. The U.S. Court of Appeals for the Fifth Circuit has found that "insisting on service of process in accordance with the Hague Convention" is "well founded in fact and warranted by existing law" Sheets v. Yamaha Motors Corp., USA, 891 F.2d 533 (5th Cir. 1990). "Judicial" documents include those "issued in the course of a civil or commercial litigation...[such as]... a summons and complaint, writ, warrant, mandate, citation, show cause order, subpoena, or judgment... requiring formal service...." See Bruno A. Ristau, International Judicial Assistance: Civil and Commercial § 4-2-2 (3d ed. 2000), § 4-1-4(7). "By virtue of the Supremacy Clause, U. S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." If "the forum's internal law required transmittal of documents for service abroad" then "the Convention therefore provided the exclusive means of valid service."

7

Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2D 722 (1988). The treaty clearly applies in this case, since the Writ was to be served in Canada, like the United States, a signatory to the Convention. See also: Chanel, Inc. v. Zhibing, 2010 U.S. Dist. LEXIS 25709, at *3 (W.D. Tenn. Mar. 17, 2010) (granting constructive service on foreign defendant only "[b]ecause the [Hague] Convention does not apply. . . "). The Hague Convention was formulated to provide a simpler way to serve process abroad. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). The primary means of service under the Hague Convention is through a receiving country's "Central Authority," which receives requests for service, arranges for service, and returns proofs of service. Id. at 698-99, 108 S.Ct. 2104. "[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies...." Id. at 699, 108 S.Ct. 2104; see also George, 223 F.3d at 449 n. 2. In re Potash Antitrust Litigation, 667 F. Supp. 2d 907 (N.D. Ill. 2009). Service by Don Acker notably also did not comply with Mississippi Rules of Civil Procedure 4(c)(1) and 4(d) as there was no personal service on Leary; it also did not comply with 4(c)(2), 4(c)(3), 4(c)(4), 4(c)(5) or 4(d).

The misrepresentations of Handshoe also do not diminish the culpability of the Clerk of Stone County Circuit Court for the actions or inactions of his office, but in fact increase the likelihood that history will repeat itself. "[Clerk] Alexander provides no authority for the proposition that conduct must be "unlawful" for a resulting constitutional deprivation to be "fairly traceable" to that conduct, and he similarly identifies no support for the notion that an injury cannot be deemed "fairly traceable" to ministerial conduct. We decline to reach such a conclusion." *Strickland v. Alexander*, 772 F.3d 876 (11th Cir. 2014).

The 2017 Writ of Execution authored by Handshoe and Cruthird, stamped and issued by Stone County, also states that "Don Acker" is a "Provincial Civil Constable for the Province of Nova Scotia" and therefore somehow authorized to effect service. This is false. Mr. Acker is and was not a civil

8

constable (see exhibit: email from Nova Scotia Department of Justice).

In Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983), the United States Supreme Court affirmed that due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" before they are deprived of property. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U. S. 306, 314 (1950) (citations omitted); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S. Ct. 1554, 56 L. Ed. 2D 30 (1978). The U.S. Court of Appeals for the Fifth Circuit has found "a seizing creditor who avails itself of state foreclosure procedures is constitutionally obligated to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)." Davis Oil Co. v. Mills, 873 F.2d 774 (5th Cir. 1989).

This is not a case where state postjudgment procedure functioned as expected; rather this is a case where there was a complete breakdown of any due process built into state procedure, which is the fault of Handshoe, Mr. Cruthird, the Clerk's office of Stone County Circuit court, and the Stone County Sheriff.

Remarkably, Don Acker's affidavits of service provided to the Clerk by Mr. Handshoe actually state that neither Mr. Perret nor Dr. Leary were served with the Writ. The affidavits state that Vaughn Perret and Leary were "not around" at the time of the single attempted service, which occurred not at their home address, but rather at their business.

The Don Acker affidavits further stated that Leary and Perret "could only be contacted by phone to arrange a meeting. I had not phone service in the area so left paper" with an employee at

9

Trout Point Lodge. Stone County had prima facie evidence of a failure to properly effect service, in yet authorized a Sheriff's sale.

Handshoe and his attorney knew Leary was represented by Mississippi counsel—Gary Thrash--but did not inform him of the filing of the execution documents. In addition, Stone County Circuit clerk's office knew Leary was represented by counsel as the Writ of Execution concerned a judgment against Handshoe recently enrolled in Stone County by Leary's attorney Mr. Thrash. "Ordinarily, due process of law requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S. Ct. 1554, 56 L. Ed. 2D 30 (1978), quoting *Boddie* v. *Connecticut*, 401 U. S. 371, 379 (1971).

**Deprivation of Basic Civil Rights**

Leary was deprived of a right secured by the Constitution and the laws of the United States, and Leary was deprived of this right by Handshoe and Stone County acting under color of a statute of the State of Mississippi. There is redress under 42 U.S.C. section 1983, but there is urgency to stopping Handshoe and Stone County's current actions to execute illegally on property not in Stone County.

In 2017, there was a fundamental violation of Leary's rights to due process before he was deprived of his money judgment against Mr. Handshoe. Leary along with his fellow judgment creditors have been injured in an amount exceeding U.S. $190,000 due the the acts and omissions of Handshoe and Stone County, including the failure to follow Mississippi law, including the failure to consult with the Attorney General's Office or the Office of Court Administration regarding proper procedure in this case involving foreign judgment debtors.

Posting the Notice of Sheriff's Sale at the Stone County Courthouse and the United States Post Office in Wiggins was not notice to Leary. *Boddie v Connecticut* (401 US 371) at 380.

Now, however, Handshoe and Stone County are again proceeding down the same path to

10

illegally deprive Leary of personal property. "[T]he requirement that [the Clerk] execute these ministerial duties in the future when presented with the appropriate documents means that [the Clerk] will again be a cause of any garnishment that befalls Strickland." *Stickland, supra.*

Leary therefore requests that his Court temporarily enjoin Handshoe from proceeding any further with his execution efforts until a hearing on the merits can be had. Irreparable injury will occur if not.

> The prerequisites for granting injunctive relief were set out by this court in *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567 (5th Cir.1974), which held that such extraordinary relief would issue only where (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest. *Id.* at 572-73. The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir.1985).

First, there is a high likelihood Leary will prevail on the merits. The relevant sections of Mississippi Code cited above are clear: Stone County had no jurisdiction to order the Sheriff's sale in October, 2017, and has no jurisdiction or "authority in the handling of an execution or garnishment issued by the clerk under the authority of Section 13-3-155." In addition, Handshoe is no longer the judgment creditor as evidenced by his own documents, filings in bankruptcy court, and sworn testimony. Thus he had no standing to apply for a Writ of Execution, whether in 2018 or 2017.

In addition, Leary was never served with either the Writ of Execution or the notice of the sheriff's sale. Leary will prevail on the merits.

Second, if this temporary restraining order is not granted, Handshoe will proceed as he did before to have the Sheriff auction off Leary's property to himself. Leary will have to expend further precious resources finding local counsel, responding to an improperly issued Writ, and suing Stone County when Handshoe, the money judgment in question, the fraudulent transfers, the counterclaims,

11

the copyrights, and "the handling of an execution" are already within this court's jurisdiction. The Clerk of Stone County has said that his office is not responsible for errors in the Writs issued, and that Leary should seek redress in the courts. Leary would also prefer to avoid having to sue additional parties. As the Court of Appeals for the Eleventh Circuit found in Strickland, supra, there is a tangible likelihood that the Clerk of Stone County Circuit Court will follow "the requirement that he execute these ministerial duties" even though on notice of their problematic nature.

Leary should also not have to launch a separate legal action over the copyright to the *Trout Point Lodge Cookbook*, which does not belong to Leary. This will not, however, stop Mr. Handshoe from proclaiming his ownership of the copyright after a sheriff's sale. Leary was, in addition, the co-author of that book and having Mr. Handshoe proclaim ownership of the rights to the work will be injurious. The fact that Stone County has once already allowed an illegal sheriff's sale to proceed is evidence that it will happen again if Mr. Handshoe is not stopped. By Mississippi statute this Honorable Court had immediate jurisdiction over this matter once the judgment is enrolled in state court because this Court issued the judgment and has sole authority over "handling the execution" (*Buckley, supra*).

Third, there is no harm to Mr. Handshoe in having his illegal collection efforts intentionally and purposefully initiated in the wrong jurisdiction halted. There will be a highly probable diminution of value in Leary's property should Handshoe proceed, however there is no threat the value of the property will be diminished should Leary remain in his legal possession of them.

Finally, there will be no disservice to the public interest, which if anything lies in the protection of due process rights and intellectual property rights.

Leary should also, for example, have right to seek offset of the judgment debt against the greater debt owed to him by Handshoe—that is, if Handshoe is truly the judgment creditor, which is impossible. In fact, there are a myriad of issues directly under the jurisdiction of this court in this case

12

that Mr. Handshoe is surreptitiously seeking to have determined in an illegal fashion via the ministerial functions of Stone County Circuit Court, which has no jurisdiction.

Finally, then, Handshoe is—without notice—seeking to predetermine issues properly before this court, including the true ownership of the judgment debt and the ownership and infringement of copyrights in photographs. He must be estopped from doing so. Those issues should be determined in this case, where they are already present before the Court.

This the 4th day of July, 2018.

                                            Respectfully submitted,
                                            DEFENDANT (PLAINTIFF BY COUNTERCLAIM)
                                            DR. CHARLES L. LEARY

                                            appearing pro se

Charles L. Leary
308 5th Ave E
Vancouver, BC V5T 1H4
Canada
Telephone 902-482-8360
Fax 800-980-0713
foodvacation@gmail.com

## CERTIFICATE OF SERVICE

I, Charles Leary, defendant and plaintiff by counterclaim, hereby certify that I have this date filed the foregoing with the Clerk of the Court via postal channels, and that the ECF system will send notification of such filing to the following:

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
*Pro Se* **Plaintiff**

So certified, this 4 day of July, 2018.

Charles L. Leary