# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAY 21 2015
ARTHUR JOHNSTON
BY_____ DEPUTY

**TROUT POINT LODGE, LIMITED, A Nova Scotia**
**Limited Company; VAUGHN PERRET and**
**CHARLES LEARY**                                        **PLAINTIFFS**

**VERSUS**                        **CIVIL ACTION NO: 1:12CV00090 LG-JMR**

**DOUG K. HANDSHOE**                                    **DEFENDANT**

---

**BRIEF OF PLAINTIFF CHARLES LEARY ON *PRO SE* MOTION**
**FOR ORIGINAL DISCIPLINE**

---

On October 8, 2014, *pro hac vice* attorney Jack E. Truitt on behalf of instant Defendant Douglas Handshoe filed a motion for a writ of garnishment (ECF 61) with this Court, despite the fact this case had closed on December 19, 2012. Plaintiffs' prior attorney had withdrawn from the case in May, 2014 (ECF 57). Attorney Truitt is supervised by Mississippi attorney G. Gerald Cruthird. This motion is made by Charles Leary *pro se*.

The garnishment motion was based on a $48,000 attorney's fee award ordered by this Court on December 11, 2013 (ECF 56), after the conclusion of litigation in a case of first impression for the SPEECH Act of 2010, where personal plaintiff American citizens and their business had sought relief from Handshoe's defamatory publication in their home forum of Nova Scotia, Canada.[1] Notable for the instant motion, though deciding in favor of Handshoe on the

---

[1] A recent law journal article has noted: " *Trout Point Lodge* is a prime example of legitimate forum selection. In *Trout Point Lodge*, the plaintiffs resided in Canada; the lodge was located in Canada; the statements were accessible by Canadian residents; and the statements mainly defamed the plaintiffs' reputations in Canada, in the eyes of Canadian residents and foreigners visiting Nova Scotia.. . . In fact, it is questionable whether there was even another appropriate forum for the litigation. The plaintiffs lived and operated a business in Nova Scotia since 1998 and relinquished residency in the United States in 2005. Therefore, it is uncertain if the plaintiffs' reputations in the United States were even defamed at all. Put differently, it is debatable whether the plaintiffs even maintained reputations in the United States that were capable of being defamed. If the plaintiffs were not defamed in the United States, the United States would clearly not be an appropriate forum for the

1

attorney's fee issue, this Court "admonished" Handshoe and his counsel to "adhere to the Federal Rules of Civil Procedure in the future" due to a "failure to file a timely motion pursuant to Rule 54."

The garnishment Order sought by Defendant and his attorneys was to be directed to purported third-party creditors of Trout Point Lodge, including VISA, Inc., American Express Company, and TripAdvisor, LLC. Handshoe filed the motion while this Court was considering a motion to remand in another case involving the instant Plaintiffs and the Defendant (**1:14-cv-00241-LG-JCG**).[2]

The problem with the Defendant's garnishment motion is at least two-fold

First, Handshoe and his attorneys knowingly represented to this Court in a signed submission that Handshoe owned the judgment debt at a time when that was demonstrably not true ("undersigned Jack E. Truitt, attorney for defendant"; "on December 11, 2013, a final judgment granting attorney's fees was rendered in said case in favor of said defendant"; "JACK E. TRUITT . . . Counsel for defendant, Douglas K. Handshoe"). Handshoe had transferred that debt nearly seven months earlier to attorney Truitt and the Truitt Law Firm, LLC., in a document notarized by the Clerk of Hancock County Circuit Court (Exhibit "A")..[3] Thus, the representation

---

defamation suit. The United States would only be connected to the case because the statement was published by a Mississippi resident, from a Mississippi computer.180 Aside from the fact that the United States is an entirely inappropriate forum, it is uncertain whether any particular United States jurisdiction, aside from the defendant's domicile, would have had personal jurisdiction over the defendant. Given the strict nature of the "effects" test for defamation jurisdiction, it would likely be difficult to argue that the defendant aimed his defamatory statements to cause effects in any jurisdiction aside from Nova Scotia, Canada. Thus, Nova Scotia not only appears to be the most appropriate forum for the litigation, but may also be the only available forum." Nicole Manzo, "If You Don't Have Anything Nice to Say, Say It Anyway: Libel Tourism and the SPEECH Act" Roger Williams Law Review, Winter, 2015.

[2] It is a reasonable conclusion that Handshoe & Truitt's intent in filing the garnishment motion was, at least in part, to prejudice this Court while deliberating remand in 1:14-cv-00241, by indirectly letting the Court know that the judgment debt was unpaid; in fact to Plaintiff's knowledge Handshoe never made the judgment executory before transferring it to Truitt.

[3] Louisiana attorney Alan Jacobus represented Plaintiff in a case in which Truitt intervened claiming ownership of the judgment debt; when learning of Truitt's garnishment motion to this Court, Jacobus immediately

to this Court that Handshoe, represented by Truitt & Cruthird, was seeking garnishment based on this Court's December 11, 2013 Order (ECF 56) was knowingly false. At that time, attorney Truitt owned the debt, not Handshoe. Truitt would therefore have needed to initiate a new action to collect on the debt; instead he chose an illegal and unethical path trying to get this Court to re-open the case and use its powers within the instant proceeding where Handshoe was the sole defendant.

In fact, egregiously, Truitt used his ownership of the judgment debt in filings he made seeking to collect on that debt with at least three different Louisiana courts during 2014, two of which are still pending (Exhibits "B", "C", & "D"). Truitt was unequivocal in claiming total ownership of the debt in Louisiana state courts.

Secondly, Truitt gave no notice of the motion to the Plaintiffs, though knowingly representing otherwise to this Court ("I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on October 8, 2014.").

Plaintiffs only learned of the motion when this Court denied it on November 24, 2014 (ECF 62), and had no reason to scrutinize a closed case in PACER. Because the Order sought by Handshoe, Truitt, and Cruthird was to be directed at third parties and not the Plaintiffs, they had in essence surreptitiously filed an *ex parte* motion denying the plaintiffs of their right to be heard while at the same time intentionally misleading this Court. The deception of this Court extended not only to the false assertion that Handshoe still owned the debt (as well as concealing attorney Truitt's unethical interest in his client's cause of action), but also the false assertion that he had actually served notice on the Plaintiffs.

---

remarked "-isn't the assertion he is entitled to $48,000 in fees an outright fraud on the Court? Remember in the JW action, in the intervention, there was a signed assignment of the claim to his lawyer. One or the other has a right to try to enforce it, but not both. ".

3

Moreover, the timing of the transfer of the judgment debt from Handshoe to Truitt directly relates to the previously-mentioned proceeding once before this Court, **1:14-cv-00241-LG-JCG Perret et al v. Handshoe**. This Court remanded that case for improper removal to Hancock County Circuit Court on November 24, 2014, the same day it denied the garnishment motion.

First, **1:14-cv-00241-LG-JCG** involved enforcement in Mississippi of a copyright infringement money judgment from Nova Scotia Supreme Court. In that Canadian litigation, Handshoe had filed a motion known as a Demand for Notice, which meant that the Court informed him of every step in the proceeding. In late February, 2014, Justice Coady sent Handshoe a copy of his Order for $180,000 CAN in damages for copyright infringement under the Canadian *Copyright Act (Cf.* generally **1:14-cv-00241**, ECF 21 "Order granting motion to remand"). In early March, 2014, Handshoe published on his blog Slabbed that he had learned the Plaintiffs were seeking Mississippi counsel to enroll the $180,000 judgment in Hancock County Circuit Court, which was true (Exhibit "E"). Within several days, Handshoe transferred the $48,000 judgment debt ordered by this Court to Truitt, an act done in anticipation of litigation to shield the $48,000 debt from any offset against the $180,000 CAN money judgment. In the law of fraudulent conveyance, this is a badge of fraud, as is the lack of any precise description of the valuable consideration purportedly exchanged for the debt.

Truitt was not the only one knowingly making false representations to this Court. Handshoe himself, appearing *pro se*, represented in a signed submission made to this Court in June, 2014, in 1:14-cv-00241-LG-JCG that he still owned the judgment debt (1:14-cv-00241, ECF 4), when at that time Handshoe knew this factual assertion to the Court was untrue, and that

4

he no longer owned the debt. Handshoe is a sophisticated litigant, and knew the consequences of his actions.[4]

There cannot be one truth for courts on one side of the Louisiana-Mississippi border, and another truth for courts on the other side. Either Truitt owned the debt or Handshoe did; both cannot be true at the same time. Truitt cannot own the debt in Louisiana while Handshoe owns it in Mississippi.

**Pattern of Knowing Misrepresentations**

Plaintiff submits that Handshoe, with Truitt and Cruthird's knowledge or assistance, engages in a demonstrable pattern of knowingly misrepresenting facts to courts of law. Two examples follow.

**Example One:** In another Handshoe litigation once before this Court, **1:13-cv-00251-LG-JMR Handshoe v. Broussard et al,** *pro se* Plaintiff Handshoe made representations to this Court in support of an effort to remand the case to Hancock County Circuit Court. Based on Handshoe's sworn representations regarding the value of his damages, his lack of punitive damages, and the value of relief sought, this Court decided to remand (**1:13-cv-00251, ECF 46**). This Court wrote:

> The Court is not persuaded the defendants' arguments that Handshoe may later seek damages exceeding $75,000. Handshoe's Complaint makes no reference to punitive damages, and in affidavits filed one month after removal of the case to this Court, Handshoe stated that his damages totaled $25,000. (*Handshoe* II, ECF Nos. 19-1, 20-1, 24-1). In his brief concerning subject matter jurisdiction, Handshoe itemized those damages and specifically stated that the damages he sought at the time of removal totaled $25,000. He also submitted an affidavit in which he specifically disavowed his right to recover any damages in excess of $74,999.99 in this lawsuit.

---

[4]Although Handshoe appeared *pro se* in certain proceedings including this one, he still at all times had Truitt and Cruthird as his attorneys in other matters; Truitt also continued to advertise his legal services on Slabbed until March, 2015 when Handshoe sued Loyola University Law School in this federal district court (1:2014-cv-00159), at which time Truitt discontinued his advertisement. Loyola is Truitt's *alma mater*.

5

In October, 2014, Handshoe amended his complaint in that proceeding and changed the prayer for damages to "$817,000, to be trebled according to the law and for all other damages including punitive, exemplary and other damages . . ." (Exhibit "F").[5]

**Example Two:** In its final decision on cross motions for summary judgment in the instant proceeding (ECF 36), the Court took judicial notice of allegations contained in a Louisiana lawsuit that was amended on October 4, 2012 to include criminal conspiracy and racketeering accusations about the Plaintiffs, another of the personal plaintiffs' businesses, Cerro Coyote, S.A., and Aaron Broussard (*Concrete Busters of Louisiana and Waste Remediation of Plaquemines versus Frederick Heebe, et al.* (2:12-cv-02596-SRD-KWR; hereafter, the "Concrete Busters" lawsuit or complaint). Remarkably, the (false) allegations about the Plaintiffs and Cerro Coyote mirrored defamatory publications on Handshoe's Slabbed blog at the heart of the SPEECH Act litigation and were filed at exactly the time this Court was examining Slabbed during its deliberations.[6] Also remarkably, that amended complaint also adopted wholesale allegations made by another contemporaneous client of attorney Truitt, Anne-Marie Vandenweghe, made in another Louisiana federal district court case **(2:11-cv-02128-CJB-ALC Vandenweghe v. Jefferson Parish et al)**.

---

[5] As noted in *Lewis v. CHARLEY CARRIERS, INC.*, Civil Action No. 5: 09-CV-170-DCB (S.D. Miss. Mar. 31, 2010). at footnote 2:
> If the plaintiff later attempts to amend the complaint to seek damages in excess of $75,000, exclusive of interest and costs, this Court may entertain removal under Tedford v. Warner-Lambert Co., 327 F.3d 423, 428-29 (5th Cir. 2003). See also Lee v. State Farm Mutual Automobile Ins. Co., 360 F. Supp. 2d 825, 832-33 (S.D. Miss. 2005)(stating that under Mississippi rules a plaintiff may amend as late as the close of evidence at trial, however "the Court presumes that the state trial judge would prohibit such an amendment as it would be allowing the Plaintiff to perpetrate a fraud on this Court").

[6] At issue before the Court in the instant SPEECH Act case was the substantial truth or falsity of Handshoe's defamatory allegations under Mississippi law as adjudicated by Nova Scotia Supreme Court. As part of her fact finding, Justice Hood found Handshoe had published the instant Plaintiffs were "part of a money laundering scheme involving Mr. Broussard and part of a political corruption scandal involving Mr. Broussard, which is now the subject of FBI investigation" (cf. Trout Point Lodge v. Handshoe 2012 NS SC 245). The "Concrete Busters" allegations included that Trout Point and another of Plaintiffs' businesses were "shell corporations" used in a criminal racketeering conspiracy involving Aaron Broussard that was under FBI investigation; and that Plaintiffs were intentionally trying to silence legitimate investigation of theirs and others' criminal conduct, including by Handshoe and the media.

Plaintiffs were extremely suspicious about the origins of these (false) allegations, as well as how that lawsuit ended up instantaneously published on Slabbed at precisely the time this Court was deliberating and examining Slabbed.

Plaintiffs' then-Louisiana counsel (Daniel G. Abel) engaged in confidential, mediated negotiations with the law firm that filed the lawsuit, Smith & Fawer, LLC. During those negotiations, attorney Randall Smith denied having any contact with Douglas Handshoe; however attorney Truitt's name arose in the negotiations with no prompting from Mr. Abel. After concluding those discussions, attorney Abel was concerned enough about what appeared to be an endeavor to extra-judicially influence this Court using the lawsuit's false allegations, that he wrote a letter to Judge Guriola about fraud upon the court under Federal Rule of Civil Procedure 60(d)(3), including as an Exhibit a retraction letter from Smith & Fawer Partner Stephen Gele (ECF 48).[7]

During the copyright infringement proceeding in Nova Scotia Supreme Court, Handshoe used the false criminal allegations in a letter to Supreme Court Justice Pierre Muise, impugning the Plaintiffs (Exhibit "G"). Handshoe also publicly denied, on Slabbed, having any contact with Randall Smith or having any prior knowledge of the amended lawsuit (Exhibit "H"), which he published in its entirety on Slabbed simultaneous with it being filed in New Orleans on October 4, 2012.

Later, in a signed brief filed with Nova Scotia Supreme Court in June, 2013, Handshoe in no uncertain terms flatly denied any contact with the Smith & Fawer attorneys to that court (Exhibit "I").

---

[7] All allegations mentioning or referring to the instant Plaintiffs were dismissed before the entire case was dismissed with prejudice.

Then, in the 1:14-cv-00241 proceeding in this Court, Handshoe filed a motion for an anti-suit injunction against the Chief Judge of New Orleans Civil District Court (ECF 18), where Handshoe, Truitt, and Vanenweghe are being sued for defamation by Daniel Abel relating to publications on Slabbed.[8] In support of that motion, Handshoe filed a sworn affidavit (ECF 21; Exhibit "J"). In that affidavit, Handshoe completely reversed his prior assertions about having no contact with Smith & Fawer; he admitted to direct contact with Smith & Fawer partner Stephen Gele, whom he referred to as "Steve." He also evidenced knowledge of the confidential settlement negotiations between the instant Plaintiffs and Smith & Fawer, and made factual statements about the drafting of the amended complaint that only an insider would know. For example, on the face of the amended complaint it was signed and filed by Randall Smith. Handshoe swears it was drafted and filed by Steve Gele.[9]

Law

> L.U.Civ.R. 83.1(c)(1) Original Discipline. The court may, after notice and an opportunity to show cause to the contrary, if requested, censure or reprimand any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules, the MISSISSIPPI RULES OF PROFESSIONAL CONDUCT, or any other rule of the court. If the conduct or failure to comply is found to be flagrant, the court may, after notice and opportunity to show cause, revoke or suspend the attorney's admission to practice before the court. Such action by the court will be reported by the clerk of the court to the executive director of the Mississippi Bar, or the appropriate official of the bar of any non-resident attorney admitted to practice before this court. If the court finds that the conduct complained of affords reasonable grounds for more stringent disciplinary action, including suspension or disbarment, the matter will, in the case of a member of the Mississippi Bar, be referred to the Mississippi Bar for appropriate action under MISS. CODE ANN. § 73-3-301, et seq. (1972) or subsequent

---

[8] In that case, Judge Griffin denied two anti-SLAPP (La. CCP Art 971) motions filed by Handshoe, as well as Art. 971 motions filed by Truitt & Vandenweghe. Truitt appealed, and the appeal was denied by the Fourth Circuit Court of Appeal with reasons, including that there existed no public interest in the allegedly defamatory statements published on Slabbed. Truitt appealed to the Louisiana Supreme Court, where a seven judge panel unanimously denied the writ. (Exhibits "K" and "L").

[9] If Truitt and/or Cruthird were aware, as Daniel Abel alleges, that Handshoe had contact with Smith & Fawer, LLC as part of a scheme to commit fraud upon the court, but failed to disclose that fact to the Court, this is an intentional act. "Mississippi recognizes that failure to disclose a material fact may constitute a knowing misrepresentation" *Blackwell v. Metropolitan Life Ins. Co.*, 190 F. Supp. 2d 911 (S.D. Miss. 2001) citing *Mississippi Bar v. Mathis*, 620 So. 2d 1213 (Miss. 1993).

amendments. If the attorney is not a member of the Mississippi Bar, the matter will be referred to the appropriate disciplinary authority of the bar of which he or she is a member.

Attorneys Truitt and Cruthird engaged in conduct violating the Mississippi Rules of Professional Conduct and the L.U.Civ.R. Plaintiff requests censure or reprimand in accordance with the local Rule, and referral to the Mississippi Bar and the Louisiana Office of Disciplinary Counsel. Conduct has included knowing misrepresentations to this Court, taking an interest in the $48,000 judgment debt while representing Defendant, and an intentional failure to notice the Plaintiffs, denying them of a right to respond.[10]

While Plaintiff does not make the instant motion under Federal Rule of Civil Procedure 11, the Plaintiff submits that under L.U.Civ.R. 83.1(c)(1), Rule 11(b) counts as "any other rule of the court" that has been violated, and under Rule 11(c)(3),

> On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

Plaintiff respectfully reminds the Court that Handshoe himself engaged in sanctionable conduct, and has a demonstrable pattern of showing a high-handed disregard for the administration of justice in both Canada and the United States of America.

Respectfully submitted, this the 12th day of May, 2015.

Charles Leary

By: s/ Charles L. Leary
Charles L. Leary, PhD
*Pro se*

---

[10] Plaintiff submits that the following section of the Rules of Professional Conduct may be implicated by Truitt & Cruthird's conduct: **Rule 1.2(d), 1.8(c), (e), (j) & 3.3(a).**

9

## CERTIFICATE OF SERVICE

I, Charles Leary, do hereby certify that I have sent a true and correct copy of the foregoing Memorandum by using facsimile and email to the following:

G. Gerald Cruthird, Esquire
Post Office Box 1050
Picayune, Mississippi 39466
Email: ggeraldc@bellsouth.net

Jack E. Truitt, Esquire
The Truitt Law Firm, LLC
149 North New Hampshire Street
Covington, LA 70433
Email: mail@truittlaw.com

This the 22th day of May, 2015.

s/ *Charles L. Leary*
Charles L. Leary

Charles L. Leary
140 Trout Point Road
E. Kemptville, NS B5A 5X9
(902) 761-2142
(800) 980-0713 fax
foodvacation@gmail.com