IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL 16 2018
ARTHUR JOHNSTON
BY_____ DEPUTY

DOUGLAS HANDSHOE

v.                                    CIVIL ACTION NO. 1:15cv382-HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A/ TROUT POINT
LODGE LTD OF NOVA SCOTIA & IN
THEIR INDIVIIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA

## MEMORANDUM IN SUPPORT OF REBUTTAL OF CHARLES LEARY'S OPPOSITION TO MOTION TO DISMISS (ECF NOS. 258 & 259)

This Memorandum in Support of the Rebuttal to Mr. Leary's Opposition to the Motion to Dismiss his Counterclaims is respectfully submitted by Plaintiff / Counter defendant Douglas Handshoe seeking that the counterclaims contained in Defendant Charles Leary's Counterclaim (*ECF #233*) be dismissed pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6).

### INTRODUCTION

Defendant / Counterclaimant Charles Leary recycles a myriad of bizarre, barely comprehensible allegations in his Counterclaim that does manage to reveal the reason he and his business partners have filed a multiplicity of lawsuits in two foreign countries against Plaintiff, Plaintiff's attorneys and other third parties in an

1

ongoing campaign of libel and copyright terrorism. Mr. Leary is an absconding judgment debtor frantically attempting to evade having to pay a $48,000 attorney fee judgement related to his first Canadian SLAPP suit against instant Plaintiff, an obligation he incurred as a result of losing the precedent setting case *Trout Point Lodge, Limited v Handshoe*, 729 F.3d 481 (5th Circuit 2013). Not only does Leary factually plead that the collection efforts including Show Cause Orders to appear for a judgment debtor examination issued by Judge Guirola were somehow fraudulent and abused process, he astonishingly seeks relief from Judge Guriola's show cause orders via his Counterclaims against the Plaintiff in this litigation[1] rather than simply complying with Judge Guirola's Court Orders and/or taking his arguments, which Plaintiff maintains are frivolous and sanctionable, to the proper Courtroom. Leary by his own actions is now an active Contemnor that purposely chose to not attend the various hearings or show up for his judgment debtor exam despite the fact he was represented by Counsel in favor of seeking this Court's ratification of his contemptuous actions.[2] For these reasons and many others, Leary's Counterclaims are due to be dismissed.

---

[1] See paragraphs 61 and 82 of the Counterclaim.

[2] See Case Number 1:2012-cv-00090 ECF Nos. 82 through 106 before this Honorable Court. Leary falsely claims in paragraph 28 of his Countercomplaint that he and his common law husband Vaughn Perret "were on the docket as pro se" when it is clear their Attorney Judith Barnett was enrolled to represent their interests until October 18, 2017. (See ECF No. 105) Barnett replaced Henry Laird representing Leary, Perret and Trout Point after they sued Laird and his firm in the New Orleans Civil District Court for malpractice after losing their appeal before the 5th Circuit Court of Appeals in the case *Trout Point Lodge, Limited v Handshoe*, 729 F.3d 481 (5th Circuit 2013).

Mr. Leary has also now raised, in other filings before this Court, the specter of his Counterclaims being auctioned off on the steps of the Stone County Mississippi in execution upon the Judgment referred to on the previous page of this memorandum.[3] This is the reality that Mr. Leary, previously firmly in denial, now operates here in the United States of America along with his business partner Vaughn Perret. Any further attempts by either to litigate civil actions in the United States (meritless or otherwise, against instant Plaintiff or otherwise) will end on the local Courthouse steps in a Sheriff's Sale.

## LAW AND ARGUMENT

### Rule 9(b): Defendant / Counterclaimant's Fraud Allegations are Manifestly Deficient.

Leary's opposition does nothing to counter the argument that his Counterclaims fall far short of these standards with respect to each of the required nine elements of fraud.[4] Beyond Leary's conclusory allegations that the assignment of judgment for collection was fraudulent, he did not adequately plead a single element of Fraud as required by Rule 9(b).[5]

---

[3] Mr. Leary received his courtesy copy of Notice of Sheriff's Sale under Writ of Execution on July 11, 2018.

[4] For instance, on page 4 of Leary's memorandum at ECF 259 which cites a local case dealing with Rule 8 rather than Rule 9.

[5] Many of Leary's arguments also previously failed to sway Judge Guirola in Trout Point v Handshoe case number 12cv90 in his ruling on Leary's Motion for Original Discipline. See Exhibits 1, 2 and 3 attached to the Rebuttal accompanying this memorandum.

Defendant / Counterclaimant Leary appears to assert two Counts of Misrepresentation under 17 U.S.C. § 512(f) regarding Plaintiff's Counternotifications to YouTube and Amazon Web Services (AWS). As this Court has previously noted, these Takedown Notices were included by Leary as an Exhibit to his Rule 12 Motion at *ECF No.* 96-11. Leaving aside the fact any cause of action Leary may have had regarding the YouTube Takedown Notice and Counternotification are clearly procedurally time barred, it is clear Leary was acting in his official capacity as Officer of Trout Point Lodge, Limited, which has defaulted in these proceedings.[6] Similarly, the "Notice of claimed infringement under the Copyright Act of Canada" Leary sent to AWS was signed in his capacity as , "Charles Leary, Secretary, Trout Point Lodge, Limited"[7] In continuing correspondence with AWS, Leary electronically signs one email as the "Legal Department Trout Point Lodge, Limited".[8] It is clear Leary submitted these Takedown Notices in capacity as officer / agent for Trout Point Lodge, Limited.[9]

---

[6] See ECF No. 96-11, Page 10, "Hi foodvacation@gmailcom. Thank you for your notification. **It appears you have made a claim on behalf of a corporation but have not written from a corporate email address.** In order to prevent fraud, we need to ask you for more information." Further down the same page, The Takedown Notice Form submitted by Leary was clearly done in his capacity of "Director" of "Trout Point Lodge, Limited".

[7] See ECF No. 96-11, Page 13

[8] See ECF No. 96-11, Page 16

[9] Mr. Leary is not a lawyer so it is unclear on what basis he would electronically sign any email as the "Legal Department" of Trout Point Lodge, Limited.

Finally it should not be lost on the Honorable Court that Leary is seeking relief under United States law under section 512(f) for a notice he previously represented to the Court to have sent on behalf of Trout Point Lodge, Limited pursuant to the "Canadian Copyright Act". Leary's Counterclaims are riddled with such fundamental contradictions.

It is clear there is no subject matter jurisdiction available for the Court to hear the various state common law tort claims including those related to fraud as these are not compulsory counterclaims.

The four-part analysis used by Courts in the Fifth Circuit to determine whether or not a counterclaim is compulsory includes"(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim." *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992). If any of the four questions in the affirmative, then the claim is compulsory. *Underwriters at Interest on Cover Note JHB92M10482079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 n.2 (5th Cir. 1996). The focus of this approach centers on whether

5

the claim and the counterclaim share an "aggregate of operative facts", drawing on a similarity of facts and legal issues.

In arguing that the state common law causes of action are not preempted under the United States Copyright Act Leary posited for the Court, "Leary is not suing Handshoe both for misrepresentation and abuse of process, malicious prosecution, and fraud, for acts of sending misrepresented counternotifications. For example, acts of causing abusive process to issue from Mississippi federal and state courts are **based on completely distinct facts**." (Emphasis added) He then self contradicts his previous statement, "Leary's injuries stem from two distinct heads of damages arising out of a common nucleus of facts."[10]

Worth noting is Mr. Leary did not rebut Plaintiff's argument that his counterclaims are in the form of a "shotgun pleading" that violates Fed. R. Civ. P. 8 because it utterly fails "to provide fair notice of the nature of Plaintiff['s] claims" against the Plaintiff / Counter Defendant.[11] In particular, Plaintiff's "fail[ure] to distinguish between the actions" of the Plaintiff in his personal capacity versus his official actions as managing member of Slabbed New Media, LLC opting almost exclusively to make broad allegations against the "Handshoe" generally, rather

---

[10] *See* ECF 259, page 13

[11] *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014).

than distinguishing between the actions of the two separate entities, deprives the Plaintiff / Counter Defendant of fair notice of the claims against him.[12]

"The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title.'" *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) (quoting 17 U.S.C. § 301(a)); see also *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004) ("Under the implied preemption doctrines of field preemption . . . a state claim is preempted where 'Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme . . . .'") (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 n.1 (5th Cir. 1995)). Thus, state law claims are preempted by the Copyright Act where the claim falls within the subject matter of copyright and protects a right that is equivalent to any of the exclusive rights or interests protected under the Copyright Act. See, e.g., *Daboub v. Gibbons*, 42 F.3d 285, 288-89 (5th Cir. 1995).

That is plainly the case here. For instance, in the Counterclaim styled "Abuse of Process" (*See* Counterclaims ¶81) Leary claims that, "Douglas K. Handshoe used process issued in the State of Mississippi to coerce Defendant, Plaintiff by Counterclaim Leary to cease his legitimate efforts to sue Handshoe for

---

[12] *Id.* at *3 (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)).

defamation and copyright infringement" that is equivalent to the exclusive rights and interests Congress carefully balanced in enacting the DCMA. Other courts to have considered preemption with respect to the Copyright Act have concluded that state law claims based on purported instances of copyright infringement or illegal takedown notices are preempted. For example, in *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, the Northern District of California considered the question of whether a cause of action for tortious interference with business relations and other state law claims premised on allegedly improper DCMA Takedown Notifications were preempted by the Copyright Act. No. C 10-05696 CRB, 2011 WL 2690437, at *3 (N.D. Cal. July 8, 2011). The court held that they were, joining other courts in concluding "that (1) a DMCA Takedown Notification is a creature of a federal statutory regime, and (2) that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification." Id.; see also, e.g., *Lenz v. Universal Music Corp.*, No. C 07-03783 JF, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) [hereinafter "Lenz I"]. Because the underlying subject matter of the various state common law tort claims are premised on an underlying finding of a Canadian Court of Copyright Infringement with Leary now invoking the United States Copyright Act, these State Tort claims are preempted.

It appears every State common law counterclaim asserted by Leary with maybe one exception are time barred. Additionally, the copyright infringement

counts and any cause of action related to the YouTube DMCA notice are also time barred.

With regard to the State common law torts with a statute of limitations of one year, Leary pleads events, including issuance of process in matters he complains that stretch back to 2013, including matters to which process was never issued to him as he was never party in certain of the civil actions which he complains. In any event the one-year statute of limitations time bars these claims.[13]

With regard to the Copyright related counterclaims, 17 U.S.C. § 507(b) provides in part, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." Leary's Counterclaims were originally filed on October 10, 2017. Turning to the allegations of the Counterclaims, all claims arising from any DMCA notices served prior to October 10, 2014 such as the YouTube Takedown Notice and Counter Notifications, the statute of limitations has run on such claims because Leary did not bring any claims before the expiration of the three-year statute of limitation. Similarly, the Copyright Infringement counts fail for the same reasons beyond the fact that the owner of the copyrighted material of which Leary complains is

---

[13] Leary now claims, a person whose name was purportedly "Bob Watson" checked into Trout Point Lodge in October 2017. Leary and Perret were travelling in the United States at the time the process server checked into the Lodge and he was unable to re-serve them Judge Guirola's Show Cause order. In any event, in order for there to be an abuse of process, process must be issued. In this instance "Bob Watson" was unsuccessful due to Leary and Perret being in the United States. In any event service of a Federal Judge's Show Cause Orders is not an abuse of process.

Slabbed New Media, LLC which is not a party to this action.[14] Each publication to which Leary complains infringed on his after the fact copyrights were published by Slabbed New Media, LLC, as cited in Leary's Counterclaims ¶91 beginning with item "(a)", as follows: (a) September 8, 2011[15] (b) January 29, 2012[16] (c) December 4, 2012[17] and (d) October 5, 2012[18]. Worth noting is Leary did not plead with any manner of specificity which publications belonging to Slabbed New Media, LLC infringed on his Canadian Copyrights but it is clear from the above that any cause of action he may have against Slabbed New Media, LLC for Copyright Infringement are time barred.

The most fundamental element of any Section 512(f) claim is that a takedown notice include a "knowing[ ]material[ ]misrepresent[ation] . . . that material or activity is infringing."17 U.S.C. § 512(f); see also, e.g., *Tuteur*, 961 F. Supp. 2d at 342 (liability under Section 512(f) can only be imposed upon "demonstration of some actual knowledge of misrepresentation on the part of the

---

[14] Slabbed New Media sought to intervene in this matter (ECF No. 101). Its participation in this civil action was opposed by Leary and the other defendants. The Court denied the Motion to Intervene.

[15] *See* http://slabbed.org/2011/09/08/slabbed-solves-the-mystery-on-the-shores-of-the-tusket-river-in-nova-scotia-as-we-reveal-the-trout-point-connection-to-the-jefferson-parish-political-corruption-scandal/

[16] *See* http://slabbed.org/2012/01/29/hell-likely-be-remembered-here-for-being-a-part-of-the-gang-that-made-the-times-picayune-eat-its-own-big-toe/

[17] *See* http://slabbed.org/2012/12/04/wash-rinse-repeat-aaron-broussards-former-property-managers-in-canada-again-sue-slabbed-for-defamation-in-nova-scotia/

[18] *See* http://slabbed.org/2012/10/05/civil-district-court-lawsuit-filed-by-concrete-busters-against-river-birch-terms-trout-point-lodge-ltd-of-nova-scotia-a-shell-company/

copyright owner") (internal quotation marks omitted). With regards to Leary's Amended Counterclaims, the "knowing misrepresentation" would ostensibly involve the Counternotification that Slabbed New Media, LLC submitted in response to the Trout Point Lodge Limited's "Notice of claimed infringement under the Copyright Act of Canada" sent in January 2016.[19] Leaving aside the fact Leary clearly again attempts to conflate the actions of Slabbed New Media, LLC with Plaintiff in his personal capacity, it would be easy to infer that Slabbed New Media, LLC had a good faith belief the Counternotifications at question were materially correct rather than misrepresented. For instance, the Ashoka photo at the heart of the January 2016 Takedown notice was published on September 8, 2011 and was previously subject to a Takedown Notice by Ashoka in 2011, who declined to take any further action after the disputed material was restored. The statute of limitations for any action related to this photo which was copied from an American nonprofit company's website by Slabbed New Media, LLC in September 2011 tolled on September 8, 2014, well over a year before Leary, acting ostensibly on behalf of Trout Point Lodge, Limited, sent the "Notice of claimed infringement under the Copyright Act of Canada" on January 9, 2016. A further inference of Slabbed New Media, LLC's good faith with respect to the Counternotification is the fact that by definition it could have never "knowingly

---

[19] *See* ECF No. 96-11 page 13

11

materially misrepresent" that the material was mistakenly identified because it is clear from Leary's Counterclaims ¶¶ 86–90 that the notices were directed to Plaintiff in his personal capacity, rather than the owner of the publications alleged as infringing.[20] Simply put Leary does not elucidate the basic elements of a 512(f) claim such as how "Handshoe knew when he took and published the works not belonging to him that he was infringing copyright in foreign works" when it is clear the creative works in question were (1) published by Slabbed New Media, LLC to its copyrighted website well before any of the original copyright owners assigned Trout Point or Leary their interests in the photographs and (2) how a photograph taken from the servers of United States organizations such as Expedia[21], Ashoka[22] and other organizations like Progress Media[23] and Torstar Corporation[24] constitutes "infringing copyright in foreign works" when those organizations, Trout Point or Leary never asserted copyright claims against Slabbed New Media, LLC.

---

[20] Such is clear from the Counterclaim at ¶86 "Handshoe filed DMCA counter notifications in which he swore under the penalty of perjury that he had a good faith belief that his use of Leary's copyrighted images did not constitute copyright infringement."

[21] See Counterclaims, ¶ 91, item (b)

[22] *Id.* At item (a)

[23] *Id.* At item (d)

[24] *Id.* At item (c)

Further Leary cannot meet any of the basic elements for a civil action based on 11 U.S.C. §362 because such a stay works only to the benefit of a bankruptcy debtor, in this instance Slabbed New Media, LLC, which not a party to this action, therefore it is impossible for him to have incurred damages for the nonexistent violation of an injunction that Leary alleges.

Similarly, the basic elements of the Mississippi common law torts asserted by Leary are deficient. For instance, the elements of abuse of process are:

"(1) the party made an illegal use of the process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process." *McLain v. West Side Bone & Joint Ctr.*, 656 So.2d 119, 123 (Miss.1995) (citing *Foster v. Turner*, 319 So.2d 233, 236 (Miss.1975)).

The Mississippi Supreme Court has acknowledged that the abuse of process tort does not address the case, as here, where the only alleged abuse of process was the service of a summons or court order without any corruption or impropriety.

In Mississippi, malicious prosecution requires:

"(1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the instance of the defendants; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause in the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of." *Mississippi Road Supply Co. v.*

13

*Zurich-American Ins. Co.*, 501 So.2d 412, 414 (Miss.1987) (citing *Harvill v. Tabor*, 240 Miss. 750, 128 So.2d 863, 864 (1961)).

Even the most charitable reading of Leary's complaint indicates he did not adequately plead elements number 3, 4, 5 or 6. Further, as Leary's own counterclaims suggests he seeks to hold Plaintiff responsible in his personal capacity for the actions of another entity (Slabbed New Media, LLC) completely undermines his assertion that Plaintiff "had no foundation for bringing this action in his personal name".

Under Mississippi law, a claim for tortious interference with business relations requires proof of the following four elements: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." *MBF Corp. v. Century Business Communications, Inc.*, 663 So.2d 595, 598 (Miss.1995).

The Counterclaims, ¶ 94 clearly indicates the acts stem from serving process, "In apparent efforts to locate Leary and Vaughn Perret not only to serve them with process but also intimidate them". Plaintiff respectfully submits that the act of serving a lawsuit or Judge Guirola's Show Cause Orders could not have

been done with "the unlawful purpose of causing damage and loss without right or justifiable cause" as such are the essence of actions authorized by law.

Further Leary does not actually plead with any specificity how the act of serving process actually disrupted any business relationships let alone caused damage to him personally beyond his apparent embarrassment at being a party to litigation and Show Cause Orders.

Leary is clearly precluded from re-asserting his copyright claims under the legal doctrine of Res Judicata and to the extent he demonstrably knew in May, 2011 of the existence of the proper owner of the website he alleged as infringing and failed to bring claims against it, he is issue precluded under the legal doctrines of estoppel and laches from asserting them now against Slabbed New Media, LLC.

Finally, Leary has no set of facts which would support an assertion of individual liability against members of Slabbed New Media, LLC, which is not a party to this action. Pursuant to Miss. Code. Ann. § 79-29-311(1) and (2), as amended in 1972 (1), "[n]o member, manager, or officer of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member, or acting as an officer of the limited liability company" and "(2) A member, manager or officer of a limited liability company is not a proper party to a proceeding by or against a

limited liability company, by reason of being a member, manager or officer, as applicable, of the limited liability company"

In this case, Douglas Handshoe is the managing member of Slabbed New Media, LLC, and, consequently, is not personally liable for the acts or debts of the LLC. The proper party to this proceeding, if at all, is Slabbed New Media, LLC. Therefore, Leary's counterclaims against Handshoe, individually, should be dismissed with prejudice.

Essentially, Leary seeks to pierce the corporate veil, yet offers no factual assertions which controvert the clear language of Section 79-29-311(2) Miss. Code. Ann. (1972), as amended, which provides that a member, manager, or officer of a limited liability company is not a proper party to a proceeding by or against a limited liability company simply by reason of being a member, manager or officer except where the object of the proceeding is to enforce that person's right against or liability to the limited liability company, or in a derivative action. Miss. Code. Ann. § 79-29-311(2) (1972), as amended.

Mississippi has a "[s]trong public policy favoring maintaining corporate entities and avoiding attempts to pierce the corporate veil, and ... this policy extends to maintain [limited liability companies] as well." *Restaurant of Hattiesburg, LLC v. Hotel and Restaurant Supply, Inc.*, 84 So.3d 32, 39 (Miss. App. 2012). Mississippi follows the general rule of law that the distinct corporate

identity will be maintained unless to do so would subvert the ends of justice. *Johnson & Higgins of Mississippi, Inc., v. Commissioner of Insurance*, 321 So.2d 281, 284 (Miss. 1975). Federal courts throughout this State have consistently recognized this public policy and have likewise made clear that piercing the corporate veil is "[r]eserved for factual circumstances which are exceptional, or where to do otherwise would subvert the ends of justice." See, e.g., *Cirillo v. Central Mississippi Radiology, LLC*, 2013 WL 3147678, n* 2 (N.D. Miss. 2013); see also *N. Am. Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 879 (N.D. Miss. 1984).

To pierce a corporate veil, there must be some abuse of the corporate form itself. *Restaurant of Hattiesburg, L.L.C.*, 84 So.3d at 43. Nothing in Leary's Countercomplaint implies that Slabbed New Media, LLC is somehow not a valid entity, separate and apart from Handshoe. In fact, Leary fails to plead a single instance in which Handshoe acted or interacted personally with the him outside of his role as managing member of the LLC. Rather than setting forth particularized facts, Leary instead groups Handshoe in each and every complaint that is properly brought against the limited liability company in an attempt to pierce the corporate veil.

To allow Leary to recover against Handshoe under these circumstances would completely undermine the laws that create and govern limited liability

17

companies. At all times, Handshoe was acting within the course and scope of his duties to the Limited Liability Company and in his individual capacity is not a proper party to this suit. Accordingly, Leary's claims against Douglas Handshoe, individually, should be dismissed with prejudice.

## CONCLUSION

Defendant / Counterclaimant Leary's Counterclaims should be dismissed under Federal Rules of Civil Procedure 9(b), 12(b)(1) and 12(b)(6).

Respectfully submitted this 16th day of July, 2018,

_____

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on July 16, 2018 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

I, Douglas Handshoe, hereby certify that on July 16, 2018, I mailed the foregoing to Charles Leary at 308 5th Ave E, Vancouver, BC V5T 1H4 Canada with a courtesy copy to foodvacation@gmail.com.

Respectfully submitted this 16th day of July, 2018,

_____

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com