# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS HANDSHOE** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:15CV382-HSO-JCG** |
| | § | |
| | § | |
| **VAUGHN PERRET**, *et al.* | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CHARLES LEARY'S [236] MOTION TO QUASH, [247] MOTION SEEKING TO EXTEND DEADLINES OF THE CASE MANAGEMENT ORDER, AND [249] MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANT LEARY'S [225] MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF DOUGLAS HANDSHOE'S [218] MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DISMISSING HANDSHOE'S CLAIM AGAINST LEARY IN COUNT 5 WITH PREJUDICE

BEFORE THE COURT are the following Motions: (1) a Motion [218] for Partial Summary Judgment filed by pro se Plaintiff Douglas Handshoe ("Handshoe" or "Plaintiff"); (2) a Motion [225] for Partial Summary Judgment filed by pro se Defendant Charles Leary ("Leary" or "Defendant"); (3) a Motion [236] to Quash filed by Leary; (4) a Motion [247] Seeking to Extend Deadlines of the Case Management Order filed by Leary; and (5) a Motion [249] for Leave to File Motion for Partial Summary Judgment filed by Leary. These Motions are fully briefed.

After due consideration of the Motions, the related pleadings, the record, and relevant legal authority, the Court finds that Leary's Motion [236] to Quash and Motion [247] Seeking to Extend Deadlines should both be granted in part and

denied in part, that Leary's Motion [249] for Leave to File Motion for Partial

Summary Judgment should be denied, that Handshoe's Motion [218] for Partial

Summary Judgment should be denied, and that Leary's Motion [225] for Partial

Summary Judgment should be granted. Handshoe's remaining claim against Leary

in this case, contained in Count 5 of the Third Amended Complaint, will be

dismissed with prejudice. Leary's Counterclaims will proceed.[1]

## I. BACKGROUND

A.    Factual Background

For years, Plaintiff Douglas Handshoe ( "Handshoe" or "Plaintiff") has been

embroiled in litigation in various courts throughout the United States and Canada

with Leary and certain of the other former Defendants in this case. In the present

dispute between these pro se litigants, Handshoe's Third Amended Complaint [90]

is the operative pleading. The Court has previously resolved a number of motions,

leaving for resolution only Leary's Counterclaims against Handshoe and a single

claim by Handshoe against Trout Point Lodge Ltd. ("Trout Point Lodge") and

Charles Leary ("Leary") in Count 5 of the Third Amended Complaint. This

particular claim arises out of an alleged misrepresentation under the Digital

Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f). *See* 3d Am. Compl. [90] at

---

[1] There are pending Motions related to the Counterclaims that are not addressed in this Order.

40-41.  All of Handshoe's other claims have been dismissed.[2]

The gravamen of Plaintiff's claim in Count 5 is that he challenges a copyright "takedown notice" sent by Defendants to YouTube on February 15, 2014, allegedly under the auspices of the DMCA.  *Id.* at 40.  This notice related to a photograph depicting Leary and former Defendant Vaughn Perret ("Perret") standing with their dog in front of Trout Point Lodge (the "Photograph").  Decl. of Charles L. Leary [228] at 1; *see also* Photograph [219-3] at 2.  The Photograph was used by Handshoe in a YouTube video he produced on behalf of Slabbed New Media, but apparently without Trout Point Lodge's permission.  *See* Decl. of Charles L. Leary [228] at 1-2.

1.    The Photograph

In 2013 and 2014, Leary was a director and secretary of Trout Point Lodge, which is a lodge or resort located in Nova Scotia, Canada.  *Id.* at 1.  According to Leary's Declaration [228], the Photograph at issue was taken by Trout Point Lodge employee Kara Crowell in the normal course of her employment with the Lodge and, in Leary's opinion, it has always been the intellectual property of Trout Point Lodge.  *Id.* at 2.  The Photograph was registered with the Canadian Copyright Register on July 8, 2013, with Trout Point Lodge identified as the owner.  *See* Canadian Copyright Register [219-11] at 2-3.

The Photograph had been published with permission by the *Toronto Star* on the newspaper's website as part of an article about the parties' legal case in the

---

[2]  Trout Point Lodge remains a Defendant, although it has not entered an appearance, and the Clerk entered default [174] against it on October 13, 2017.

Nova Scotia Supreme Court. *See* Decl. of Charles L. Leary [228] at 2. Leary

believes that Handshoe downloaded the Photograph from the *Toronto Star* website

to use without authorization in a YouTube video. *Id.* at 1-2. Handshoe admits in

his Memorandum [219] in support of his request for partial summary judgment that

the Photograph was "obtained by [him] for Slabbed New Media, LLC from the

Toronto Star website," but asserts that the *Toronto Star* owns the copyright. Mem.

[219] at 3. Slabbed apparently registered the video with the United States

Copyright Office on January 31, 2017. *See* Public Catalog [219-2] at 2.

       2.    <u>The Nova Scotia Supreme Court Case</u>

       In 2013, Leary, Perret, and Trout Point Lodge initiated a lawsuit against

Handshoe for copyright infringement in the Nova Scotia Supreme Court in Canada

arising out Handshoe's use of the Photograph. Decl. of Charles L. Leary [228] at 1.

The plaintiffs in that case later added a defamation claim. *Id.* According to Leary,

the Nova Scotia Supreme Court rendered a decision on February 14, 2014, finding

that Trout Point Lodge owned the copyright to the Photograph and that Handshoe

had infringed the copyright. *Id.* On February 26, 2014, the Nova Scotia Supreme

Court entered two separate, what have been referred to as "component," judgments

against Handshoe. *See* Order [9-1] at 2; Order [9-2] at 2-3. One judgment involved

the defamation claim, *see* Order [9-2] at 2-3 (the "Defamation Judgment"), while the

other dealt with the copyright infringement claim, *see* Order [9-1] at 2 (the

"Copyright Judgment").

3.    Leary's Completion of the YouTube Form

After he learned of the ruling in the Nova Scotia Supreme Court case, Leary

avers that on February 15, 2014, he conducted an internet search for a YouTube

web page related to making copyright infringement claims.  Decl. of Charles L.

Leary [228] at 2.  At the time, Leary was located in East Kemptville, Nova Scotia,

Canada.  *Id.*  Leary located a page of instructions and a fillable form for submitting

a copyright claim.  *Id.*  According to Leary,

> [t]he form did not identify that it was a form specified by the law of any
> specific country, and in fact required that I choose what country the
> copyright was in.  I located and played the Slabbed New Media YouTube
> video from Nova Scotia.  I saw the Trout Point Lodge photo being used in
> the video.  The form said: "If you believe your copyright-protected work
> was posted on YouTube without authorization, you may submit a
> copyright infringement notification."  I clicked on the button for "submit
> a copyright complaint."  I chose Canada as the country of the copyright
> issue.  I was acting solely as an officer of Trout Point Lodge in submitting
> the form.

*Id.*

Leary maintains that he did not intend to invoke the DMCA when he filled

out the YouTube form.  *Id.* at 3.  According to Leary, he

> was in Canada complaining to YouTube about Canadian copyright after
> having received a judgment from a Canadian court of competent
> jurisdiction over copyright matters.  It was not obvious to me, and in fact
> it was unapparent, that YouTube was having me fill out a DMCA notice.
> I believed YouTube would act under their own policies and Canadian law
> because I indicated Canada was the territory of jurisdiction.  I believe
> that is what YouTube did by blocking the video in Canada.

*Id.*

Handshoe has supplied what he asserts are YouTube's relevant terms of

service related to making copyright infringement claims. *See* Mem. [219] at 5;

Terms of Service [219-15] at 3-7. It is unclear from the current record, however,

whether these terms of service were the same as those in effect in Canada on the

date Leary submitted the online form to YouTube in 2014. For this reason they are

of little, if any, probative value in resolving the present Motions. *Compare*

https://www.youtube.com/static ?template=terms (containing section related to the

DMCA) (last viewed June 22, 2018), *with* https://www.youtube.com/static?gl=CA

&template=terms (not containing section related to the DMCA for Canadian terms

of service) (last visited June 22, 2018); *see also* Terms of Service [219-15] at 7

(stating on the Terms of Service exhibit supplied by Handshoe that the "content

location" was the United States).

    4.   <u>Subsequent activity involving YouTube</u>

On February 15, 2014, YouTube e-mailed Handshoe informing him that it

"had received a privacy complaint from an individual regarding [his] content"

contained in the video located at http://youtube.com/watch?v=M_pc4bjaLno. *See* E-

Mail [219-12] at 2. YouTube's e-mail did not mention or reference the DMCA. *See*

*id.*

On February 19, 2014, YouTube e-mailed "foodvacation" relating to the notice

Leary had submitted on behalf of Trout Point Lodge.[3] *See* E-Mail [219-14] at 2.

YouTube requested additional information to verify that Leary was affiliated with a

_____

    [3] "Foodvacation" is the e-mail address Leary had provided for Trout Point Lodge in
the online YouTube form.

corporate entity. *See id.* YouTube's e-mail provided that

> the content will remain live on the site until we have received this verification and [ ] abuse of the copyright notification process will result in the termination of your YouTube account. *Under DMCA Section 512(f),* any person who knowingly materially misrepresents that material or activity is infringing may be liable for damages.

*Id.* (emphasis added).

On July 14, 2014, Handshoe submitted a counter-notification to YouTube, swearing under penalty of perjury that he held a good faith belief that the video was removed due to a mistake or misidentification of the material. *See* E-Mail [219-16] at 2. On that same date, YouTube forwarded the counter-notification to "foodvacation" via e-mail. *See* E-Mail [219-18] at 2. On July 15, 2014, former Defendant Perret, not Leary, responded from the "foodvacation" e-mail to YouTube arguing that "[t]his is an actionable instance of misrepresentation under the Digital Millennium Copyright Act by Douglas Handshoe" and referenced the decision of the Nova Scotia Supreme Court. *Id.* at 3.

YouTube e-mailed Handshoe on August 6, 2014, to inform him that it had received a court order with regard to the video's content, E-Mail [219-19] at 2, and that it would not be "able to restore global access to your video under these circumstances. Your video will not be viewable in Canada, but it will be available in all other countries," *id.* YouTube also e-mailed "foodvacation" to state that the video had been blocked and was no longer viewable in Canada. *See* E-Mail [219-18] at 3. According to YouTube, the video remained live in all other locations, unless

restricted by the uploader. *See id*.

Also on August 6, 2014, both Leary and Perret responded to YouTube from

the "foodvacation" e-mail account. *See id*. at 4.

Leary's response did not reference the DMCA, but stated:

The United States by treaty must recognize Canadian copyright. The
works identified as being published in the video without authorization
are copyrighted works registered with the Intellectual Property Office.

We are asking that you disable the sections of the video where the
copyrighted works appear, which have been previously identified for you.

*Id*. Perret then responded to YouTube, referring to the DMCA and arguing that the

the "§ 512(c) safe harbor" did not apply to a company under the circumstances,

because "YouTube has actual knowledge of infringement via a court order

identifying the creative works in question as belonging to us." *Id*.

     5.    <u>Leary's subjective intent in completing YouTube form</u>

Leary declares under penalty of perjury in his Declaration [228] that, when

he filled out the online YouTube form on February 15, 2014, he took into

consideration his "laymen's understanding of fair use and fair dealing," and "did not

think . . . the YouTube video encompassed fair use of the photograph." Decl. of

Charles L. Leary [228] at 2. According to Leary, he felt that because Handshoe had

not defended, or raised fair use as a defense in, the Nova Scotia Supreme Court

case, Handshoe knew he was infringing Trout Point Lodge's copyright. *Id*. Finally,

Leary avers that his knowledge that there was a final judgment in the Nova Scotia

Supreme Court case on copyright infringement "gave [him] a very strong good faith

belief that the use of the photograph was infringing Trout Point Lodge's copyright when [Leary] filled out and sent the YouTube form." *Id.*

The YouTube video remains disabled in Canada, but can still be viewed in other countries. *See* Decl. of Charles L. Leary [228] at 3.

B.    Procedural History

Handshoe's only remaining claim in this case is contained in Count 5 of the Third Amended Complaint [90], and he has filed a Motion [218] for Partial Summary Judgment seeking judgment in his favor on that remaining claim. On April 27, 2018, after the March 26, 2018 motions deadline, Leary filed a cross Motion [225] for Partial Summary Judgment seeking dismissal of Count 5. Leary has also filed a Motion [236] to Quash Handshoe's Motion [218] for Partial Summary Judgment, a Motion [247] Seeking to Extend Deadlines of the Case Management Order, and a Motion [249] for Leave to File Motion for Partial Summary Judgment.

II.    DISCUSSION

A.    Leary's Motion [236] to Quash

Leary seeks to quash Handshoe's Motion [218] for Partial Summary Judgment on grounds that Leary was never served with the Motion [218]. Alternatively, Leary asks that he be granted an extension of time to serve his opposition to the Motion. Handshoe has filed a Response [240] in opposition to Leary's Motion [236] to Quash arguing that he properly served Leary with his Motion [218] for Partial Summary Judgment. Leary has filed a Reply [246]

insisting that he never received a copy of Handshoe's Motion [218].

According to the docket in this case, the Clerk of Court updated Leary's address on December 14, 2017, as being 308 5th Avenue E, Vancouver, BC V5T 1H4 Canada. Handshoe filed his Motion [218] for Partial Summary Judgment on March 26, 2018, and attached a Certificate of Service certifying that he mailed the Motion [218] to Leary at that address. *See* Certificate [218] at 3. Leary maintains that the Motion [218] was never received at that address.

Even if Handshoe's Motion [218] was not properly served as Leary alleges, Leary has now obtained a copy of the Motion [218] and has filed a Response [224] in opposition to it. Leary's Motion [236] will be denied as moot to the extent it seeks to quash Handshoe's Motion [218]. To the extent Leary seeks additional time to respond, this request will be granted, and Leary's Response [224] filed on April 27, 2018, will be deemed timely and will be considered by the Court.

B.  Leary's Motion [247] Seeking to Extend Deadlines of the Case Management Order and Leary's Motion [249] for Leave to File Motion for Partial Summary Judgment

These two Motions [247], [249], ask the Court to continue the trial date and the dispositive motions deadline set forth in the Case Management Order and to grant leave to file a Motion [225] for Partial Summary Judgment that Leary filed earlier in the case, which the Court construes as a request by Leary to deem his belated Motion [225] for Partial Summary Judgment timely. Leary also wishes to supplement his briefing with "fresh judicial admissions from Mr. Handshoe that determine the outcome of Count 5 of the Third Amended Complaint." Mot. [249] at

1. Handshoe opposes both Motions [247], [249]. For the reasons that follow, the Court will grant Leary's Motions [247], [249], in part and deny them in part.

According to Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In order to show good cause, a party seeking modification of the scheduling order has the burden of demonstrating that the deadlines cannot reasonably be met despite that party's diligence. *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015). The United States Court of Appeals for the Fifth Circuit has outlined four factors for a court to consider when assessing whether good cause exists under Rule 16(b)(4): (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice. *Id.*

Leary previously filed a Motion [175] for Judgment on the Pleadings, or in the Alternative, Summary Judgment on October 16, 2017, which addressed Handshoe's remaining claim in Count 5. The dispositive motion deadline passed on March 26, 2018. On April 17, 2018, the Court struck several of Leary's filings, including the Motion [175] for Judgment on the Pleadings, or in the Alternative, Summary Judgment, due to Leary's failure to comply with Federal Rule of Civil Procedure 11.

Leary mailed his present Motion [225] for Partial Summary Judgment on April 24, 2018, and it was filed by the Clerk of Court on April 27, 2018. Handshoe

has filed a substantive response [231], [232], to the Motion [225], even though he also objects to its timeliness. In a separate ruling [254] in this case, the Court continued the trial in this matter from its August 2018 trial calendar to October 2018. *See* June 22, 2018, Text Only Am. Case Management Order. In light of the procedural history and current posture of this case, the Court will grant Leary's Motions [247], [249], to the extent they ask the Court to deem Leary's Motion [225] for Partial Summary Judgment timely filed.

To the extent that Leary seeks to file additional dispositive motions, Leary's request will be denied. Leary has not adequately explained the importance of a modification of this deadline. Nor has Leary addressed the potential prejudice in allowing the modification or the availability of a continuance to cure such prejudice. Leary also asks the Court to continue the trial in this matter, but the trial was continued while Leary's Motions [247], [249], were pending, mooting this request. Based upon the foregoing, Leary's Motion [247] Seeking to Extend Deadlines of the Case Management Order and Motion [249] for Leave to File Motion for Partial Summary Judgment will be granted in part and denied in part. The Court will treat Leary's Motion [225] for Partial Summary Judgment as being timely filed and will consider it, but will not permit Leary to file additional dispositive motions or continue the trial date.

C.  Handshoe's and Leary's Cross Motions [218], [225] for Partial Summary Judgment

Handshoe and Leary have filed cross Motions [218], [225] for Partial

Summary Judgment as to Handshoe's remaining claim in Count 5. Handshoe maintains that based upon the facts presented, the "takedown notice" submitted by Leary to YouTube constituted an actionable misrepresentation under § 512(f). *See* Handshoe's Mem. [219] at 21. In contrast, Leary contends that Count 5 should be dismissed. According to Leary, the online copyright infringement form he submitted to YouTube was completed in Canada, pursuant to Canadian law, and did not constitute a DMCA takedown notice. Further, Leary maintains that he exhibited subjective good faith and considered principles of fair use in submitting the form. *See* Leary's Br. [226] at 8-13.

1.  Summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310-11 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1037 (2018) (quotation omitted). Once the movant carries its initial burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id*. (quotation omitted).

In resolving a motion for summary judgment, a court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in

its favor. *Vann v. City of Southaven, Mississippi*, 884 F.3d 307, 309 (5th Cir. 2018).

However, summary judgment remains appropriate if the nonmovant's evidence is

"merely colorable" or "not significantly probative." *Certain Underwriters at Lloyd's*

*of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)). A genuine dispute

of material fact exists precluding entry of summary judgment if the evidence is such

that a reasonable jury could return a verdict for the nonmovant. *Bennett v.*

*Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018).

　　2.　　Handshoe's 17 U.S.C. § 512(f) misrepresentation claim in Count 5

The DMCA permits service providers such as YouTube to avoid copyright

infringement for storing users' content if, among other requirements, it

expeditiously removes or disables access to such content after receiving notification

from a copyright holder that the content is infringing. *See* 17 U.S.C. § 512(c).

According to § 512(c)(3)(A), an effective notification or "takedown notice" to a service

provider of copyright infringement is described as a

> written communication provided to the designated agent of a service
> provider that includes substantially the following:
> (i)　　A physical or electronic signature of a person authorized to
> 　　　　act on behalf of the owner of an exclusive right that is
> 　　　　allegedly infringed.
> (ii)　　Identification of the copyrighted work claimed to have been
> 　　　　infringed, or, if multiple copyrighted works at a single
> 　　　　online site are covered by a single notification, a
> 　　　　representative list of such works at that site.
> (iii)　　Identification of the material that is claimed to be infringing
> 　　　　or to be the subject of infringing activity and that is to be
> 　　　　removed or access to which is to be disabled, and
> 　　　　information reasonably sufficient to permit the service

provider to locate the material.

(iv)    Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v)    A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi)    A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A).

A person who abuses the DMCA may be subject to liability under § 512(f), which provides, in relevant part, that

[a]ny person who knowingly materially misrepresents under this section--
(1)    that material or activity is infringing,
. . . .
shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . .

17 U.S.C. § 512(f).

The Fifth Circuit has yet to consider a claim under this statute. This Court interprets the statute's "words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute.'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Section 512(f) was enacted in 1998, *see* Digital Millennium Copyright Act, PL 105–304, 112 Stat 2860 (1998), and creates a cause of action when one "knowingly

materially misrepresents under [that] section . . . that material or activity is infringing," 17 U.S.C. § 512(f). To act "knowingly" is to act "[i]n such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately." Black's Law Dictionary (10th ed. 2014) ("knowingly"). Based upon this definition of knowingly, § 512(f) appears to create a subjective standard by which the person sending the takedown notice must have knowledge of a material misrepresentation in order for the sender's conduct to be actionable under the statute. *See* 17 U.S.C. § 512(f).

3.  The principle of "fair use"

Handshoe relies upon non-binding caselaw to argue that 17 U.S.C. § 512(c)(3)(A)(v) requires copyright holders to contemplate fair use, or a use authorized by law, before sending a takedown notice. *See* Handshoe's Mem. [219] at 14 (citing *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152-53 (9th Cir. 2016)). Under 17 U.S.C. § 107, the "fair use" of a copyrighted work,

> including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
>
> (1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2)  the nature of the copyrighted work;
> (3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4)  the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "Section 107 requires a case-by-case determination whether a particular use is fair, and the statute notes four nonexclusive factors to be considered." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 549 (1985).

The Fifth Circuit has not yet considered whether an individual must consider fair use before sending a takedown notice under § 512(f). However, the result here is the same regardless of whether a person must consider fair use before sending a takedown notice.

4. <u>Handshoe's Requests for Admissions to Leary</u>

In support of Handshoe's Motion [218] for Partial Summary Judgment, and in opposition to Leary's Motion [225], Handshoe also relies upon Requests for Admission he purportedly served upon Leary on January 4, 2018. *See, e.g.,* Handshoe's Mem. [219] at 7. Handshoe argues that these Requests have been deemed admitted by Leary because he did not respond to them. Of relevance here, Handshoe contends that Leary has admitted that he did not consider the fair use factors before sending the takedown notice to YouTube. *See id.* at 7, 18-19.

However, on June 22, 2018, the Magistrate Judge quashed Handshoe's Requests for Admission [207], [208] on grounds that the Requests were not mailed to Leary's address of record. *See* Order [254] at 6-8. Thus, Leary is not deemed to have admitted any of Handshoe's Requests that have been quashed, and his arguments in this regard are moot.

5.     The parties' competing requests for summary judgment

The undisputed evidence in this case reflects that Leary held a subjective good-fath belief that the form he submitted to YouTube was factually accurate, such that Handshoe's claim cannot succeed. Handshoe has not carried his initial burden of showing that he is entitled to summary judgment on his claim. Rather, for the reasons that follow, Leary has met his initial summary judgment burden of showing his entitlement to summary judgment, and Handshoe has not shown that a genuine dispute of material fact remains for trial.

Leary has submitted competent summary judgment evidence demonstrating that he believed that Trout Point Lodge owned the Canadian copyright to the Photograph at issue. *See, e.g.,* Decl. of Charles L. Leary [228] at 1-2; Canadian Copyright Register [219-11] at 2-3. As Trout Point Lodge's director, Leary has sufficiently shown that he held a good-faith belief that Handshoe had no permission from Trout Point Lodge to use, reproduce, or publish the Photograph. *See* Decl. of Charles L. Leary [228] at 2. Leary completed the online YouTube form only after receiving notification that the Nova Scotia Supreme Court had resolved a copyright infringement claim involving the Photograph in Trout Point's favor. *See id.* To the extent the Fifth Circuit would hold that a person must consider fair use under § 512(f), according to Leary's sworn Declaration [228] he took into consideration principles of fair use when completing the YouTube form. The evidence here uniformly supports Leary's defense of good faith, and he has carried his initial

summary judgment burden of demonstrating that he is entitled to judgment as a matter of law on Handshoe's claim in Count 5.

In response, Handshoe has not come forth with competent summary judgment evidence that calls into question Leary's good faith belief. Even if Leary acted unreasonably and made an unknowing mistake in his submission of the online form to YouTube, Handshoe has not presented evidence that tends to demonstrate some knowing misrepresentation on Leary's part. *See* 17 U.S.C. § 512(f). Handshoe has not created a question of fact sufficient to defeat summary judgment in Leary's favor on Handshoe's remaining § 512(f) claim, and Leary is entitled to summary judgment on the claim in Count 5 of the Third Amended Complaint [90].[4]

---

[4] While the Court need not address the issue, it is also unclear from the present record whether the DMCA would apply to Leary's conduct. Leary argues that the online copyright form that he submitted was not a notice pursuant to the DMCA, *see, e.g.,* Leary's Br. [226] at 8, but the pro se parties have not adequately briefed this issue. Regardless of whether Leary's conduct falls within the purview of the DMCA, the result would not change, because the Court finds that summary judgment in Leary's favor is appropriate on the remaining DMCA claim against him.

The United States Copyright Act is generally inapplicable to extraterritorial conduct. *See, e.g., Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 797 (5th Cir. 2017). Courts considering copyright claims draw a distinction between purely extraterritorial conduct, which is itself nonactionable, and conduct that crosses borders such that at least a part of the offense takes place within the United States. *See, e.g., Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) (quoting 5 Nimmer on Copyright § 17.02 (2018)). Section 512(f) of the DMCA specifically provides a cause of action for a knowing, material misrepresentation "under this section." 17 U.S.C. § 512(f).

In this case, the conduct at issue is Leary's, all of which occurred in Canada. The parties have not directed the Court to any evidence in the summary judgment record demonstrating that any part of Leary's conduct took place in the United States or that Leary's completion, while in Canada, of an online form that did not reference the DMCA constituted a knowing material misrepresentation "under [§ 512]" that Handshoe's YouTube video was infringing Trout Point's Canadian copyright. *See id.* The form required Leary to select the country in which the copyright was located, and he chose

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

Defendant Charles Leary's Motion [236] to Quash, Motion [247] Seeking to Extend Deadlines of the Case Management Order, and Motion [249] for Leave to File Motion for Partial Summary Judgment will be granted in part and denied in part. The Court will grant Leary's Motion [236] to Quash to the extent it seeks additional time to respond to Handshoe's Motion [218] for Partial Summary Judgment and will deem Leary's Response [224] timely filed, but the Court will deny Leary's Motion [236] to Quash to the extent he seeks to quash Handshoe's Motion [218] for Partial Summary Judgment. Leary's Motions [247] Seeking to Extend Deadlines of the Case Management Order and Motion [249] for Leave to File Motion for Partial Summary Judgment will be granted to the extent Leary asks the Court to deem his Motion [225] for Partial Summary Judgment timely filed, and denied to the extent

---

Canada. *See* Decl. of Charles L. Leary [228] at 2. The video was apparently disabled by YouTube in Canada, but not in other countries. *See id.* at 3; *see also, e.g.*, E-Mail [228-5] (August 6, 2014, e-mail from YouTube Copyright Team to "foodvacation" e-mail informing that "[t]his content has been blocked and is no longer viewable in Canada. It remains live in all other locations unless restricted by the uploader."). Handshoe has not presented any competent summary judgment evidence tending to show that Leary invoked the laws of the United States in submitting the takedown notice on Trout Point Lodge's behalf, or that the video was ever disabled in the United States. Leary avers under penalty of perjury that he did not intend to invoke the DMCA when he completed the YouTube form, but instead believed that YouTube was acting under its own policies and Canadian law due to his selection of Canada as the applicable jurisdiction. *See* Decl. of Charles L. Leary [228] at 3. According to Leary, "[i]t was not obvious to me, and in fact it was unapparent, that YouTube was having me fill out a DMCA notice." *Id.* Handshoe has not submitted any probative summary judgment evidence to contradict this evidence. However, as the Court has stated, it need not resolve this issue because it would not change the result.

he seeks to file additional dispositive motions or to continue the October 2018 trial. Leary's Motion [225] for Partial Summary Judgment will be granted, and Handshoe's remaining claim against Leary will be dismissed with prejudice. Handshoe's Motion [218] for Partial Summary Judgment will be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Charles Leary's Motion [236] to Quash is **GRANTED IN PART**, to the extent Leary seeks additional time to respond to Plaintiff Douglas Handshoe's Motion [218] for Partial Summary Judgment and asks the Court to deem Leary's Response [224] timely filed, **and DENIED IN PART**, to the extent Leary seeks to quash Handshoe's Motion [218] for Partial Summary Judgment.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Charles Leary's Motion [247] Seeking to Extend Deadlines of the Case Management Order and Motion [249] for Leave to File Motion for Partial Summary Judgment are **GRANTED IN PART**, to the extent they ask the Court to deem Leary's Motion [225] for Partial Summary Judgment timely filed, **and DENIED IN PART**, to the extent Leary seeks to file additional dispositive motions or to continue the October 2018 trial.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Charles Leary's Motion [225] for Partial Summary Judgment is **GRANTED**, and Plaintiff Douglas Handshoe's remaining claim against Leary contained in Count 5 of the Third Amended Complaint is **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Douglas

Handshoe's Motion [218] for Partial Summary Judgment is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 13th day of September, 2018.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE