# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOUGLAS HANDSHOE** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:15CV382-HSO-JCG** |
| | § | |
| | § | |
| **VAUGHN PERRET,** *et al.* | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER-DEFENDANT DOUGLAS HANDSHOE'S [244] MOTION TO DISMISS

BEFORE THE COURT is pro se Plaintiff/Counter-Defendant Douglas

Handshoe's Motion to Dismiss [244] the Counterclaims [233] of pro se

Defendant/Counterclaimant Charles Leary. This Motion is fully briefed. After due

consideration of the Motion, the record, and relevant legal authority, the Court

finds that Handshoe's Motion to Dismiss [244] should be granted in part and denied

in part. Charles Leary's Counterclaims [233] against Douglas Handshoe for (1)

violation of Slabbed New Media, LLC's bankruptcy stay under 11 U.S.C. § 362; (2)

fraud; (3) abuse of process; (4) misrepresentation under 17 U.S.C. § 512(f), related to

the July 14, 2014, counter-notification sent to YouTube; and (5) tortious

interference with contractual relations and business relations, will be dismissed.

Leary's Counterclaims [233] for (1) malicious prosecution; (2) misrepresentation

under 17 U.S.C. § 512(f), related to the "late January, 2016," counter-notification

sent to Amazon Web Services; and (3) copyright infringement, will proceed.

# I. <u>BACKGROUND</u>

Plaintiff/Counter-Defendant Douglas Handshoe ("Handshoe") initiated this lawsuit by filing a Complaint [1] against Defendant/Counterclaimant Charles Leary ("Leary") and other Defendants, including Defendant Trout Point Lodge, Ltd. ("Trout Point Lodge"), on November 16, 2015. *See* Compl. [1] at 1. According to the Third Amended Complaint, which is now the operative pleading, Handshoe, who is the publisher of a website/blog owned by Slabbed New Media, LLC ("Slabbed New Media"), *see* 3d Am. Compl. [90] at 3, has been embroiled in litigation for years with certain of the Defendants in this case, including Leary and Trout Point Lodge, in various courts throughout the United States and Canada. Leary is, or at least was, one of the directors or officers of Trout Point Lodge, which is a luxury lodge in Nova Scotia, Canada. *See* Countercl. [233] at 4, 11.

The Third Amended Complaint [90] advanced eight counts of misrepresentation pursuant to 17 U.S.C. § 512(f) related to purported "takedown notices" under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f), dated from December 2012 to January 2016. 3d Am. Compl. [90] at 33-47. As to each count, Handshoe alleged that Defendants materially misrepresented that he and Slabbed New Media infringed various copyrights purportedly owned by Defendants. *Id.*

The Third Amended Complaint also sought certain declarations, including that: (1) "to the extent Defendants own any valid copyright interest in the creative works in questions [sic] or have claimed to own any valid copyrights, Defendants have misused such copyrights rendering those Copyrights as unenforceable," *id.* at

49; (2) Plaintiff's "use of the photographs in question as agent for Slabbed New Media, LLC is lawful under the fair use doctrine and does not infringe on any of the Defendants' copyrights," *id.* at 50; (3) "as a matter of law [Plaintiff] has no liability in his personal capacity over content belonging to a third party in which he acts as agent pursuant to the Mississippi Limited Liability Act," *id.*; and (4) "as a matter of law each and every component judgment rendered in the case styled, *Trout Point Lodge et al. v. Douglas Handshoe*, Nova Scotia Supreme Court No. 41135 is REPUGNANT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA and unenforceable in the United States of America," under the Securing the Protection of our Enduring and Established Constitutional Heritage Act, 28 U.S.C. § 4101, *et seq.* ("SPEECH Act"), *id.* at 52. At this stage of the proceedings, all of Handshoe's claims against Leary and Trout Point Lodge have been dismissed.[1]

On October 10, 2017, Leary filed an Answer, Defenses, and Counterclaims [171] against Handshoe in response to the Third Amended Complaint [90]. Leary advanced Counterclaims against Handshoe for (1) malicious prosecution; (2) fraud; (3) abuse of process; (4) misrepresentations under 17 U.S.C. § 512(f); (5) copyright infringement; and (6) tortious interference with contractual relations and business relations. *See* Countercl. [171] at 15-20.

Handshoe later filed a Motion [191] for Sanctions pursuant to Federal Rule of

---

[1] Handshoe's only remaining claim in this case is one contained in Count 3 of the Third Amended Complaint against Defendants Progress Media Group Limited of Nova Scotia and Marilyn Smulders, for alleged misrepresentation under 17 U.S.C. § 512(f). *See* 3d Am. Compl. [90] at 36-38. Both Progress Media and Smulders are in default. *See* Clerk's Entry of Default [150] at 1.

Civil Procedure 11, and on April 17, 2018, the Court struck, among other filings, Leary's Answer, Defenses, and Counterclaims [171]. *See* Order [222] at 9-10. The Court permitted Leary to refile his Answer with Counterclaims, but directed that "no new counterclaims will be permitted." Order [222] at 9-10. Leary re-filed his Counterclaims [233] on May 16, 2018, advancing claims against Handshoe for the following: (1) violation of Slabbed New Media, LLC's bankruptcy stay under 11 U.S.C. § 362; (2) malicious prosecution; (3) fraud; (4) abuse of process; (5) misrepresentations under 17 U.S.C. § 512(f); (6) copyright infringement; and (7) tortious interference with contractual relations and business relations. *See* Countercl. [233] at 23-31.

With respect to the claim for violation of the automatic stay, Leary asserts that Handshoe commenced a supplementary proceeding in a different civil action to execute on a judgment debt belonging to Slabbed New Media that was part of that entity's bankruptcy estate, which Leary maintains violated the bankruptcy stay. *Id.* at 23-24. Leary also asserts that Handshoe has maliciously prosecuted the present case and has committed fraud and abuse of process with respect to other legal proceedings in different courts. *Id.* at 24-28. Leary further alleges that Handshoe made actionable misrepresentations under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), by sending two "counter-notifications" to Amazon Web Services and Yahoo, and that he infringed Leary's copyrights in four copyrighted photographic works. *Id* at 28-30. Finally, Leary claims that Handshoe tortiously interfered with contractual relations and business relations by

engaging a person to falsely claim an interest in purchasing Trout Point Lodge and by causing a person to check into the Lodge to disrupt normal business operations, threaten violence, and impugn Leary and his goodwill in the eyes of Lodge employees. *Id.* at 30-31.

Handshoe now seeks dismissal of Leary's Counterclaims [233] pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over them and that Leary lacks standing to assert them. *See* Mot. to Dismiss [244] at 1-2. Handshoe alternatively seeks dismissal pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim. *See id.*

## II. DISCUSSION

### A.   Leary's new claim under 11 U.S.C. § 362

As a threshold matter, Leary's present Counterclaims [233] contain an assertion that Handshoe violated Slabbed New Media, LLC's bankruptcy stay under 11 U.S.C. § 362, a claim which Leary had not raised in his original Counterclaims [171] stricken by the Court. While Leary mentioned the existence of an automatic stay in his original Counterclaims [171], *see* Countercl. [171] at 12-13, he did not assert a claim for violation of the automatic stay under 11 U.S.C. § 362 in that pleading, *see id.* Because Leary improperly added this claim in his re-filed Counterclaims [233], in direct contravention of the Court's previous sanction Order [222] prohibiting the addition of new claims, the Court will grant Handshoe's Motion [244] to the extent it seeks to dismiss this claim. Leary's § 362 claim will be dismissed without prejudice.

B.    Leary's remaining Counterclaims

    1.    Federal Rule of Civil Procedure 12(b)(1) and federal subject-matter jurisdiction

Handshoe seeks dismissal of Leary's Counterclaims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and lack of standing. When faced with a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction,

> a trial court has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Crane v. Johnson*, 783 F.3d 244, 250 (5th Cir. 2015) (quotation omitted).  In this case, in resolving whether it has subject-matter jurisdiction over Leary's Counterclaims, the Court has relied upon the Counterclaims [233] supplemented by undisputed facts evidenced in the record.  *See id.*

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332."  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).  The Court must first consider whether it possesses either original federal question jurisdiction under § 1331 or diversity jurisdiction under § 1332.

With respect to diversity of citizenship, the parties do not appear to dispute that Leary is a "stateless" United States citizen who has resided outside of this country since 1998.  *See, e.g.*, Ex. "1" [244-1] to Mot. [244] at 6 (copy of filing made on Leary's behalf in a separate proceeding in this Court); Br. [259] at 9 ("Leary

agrees that he is a stateless United States citizen for purposes of diversity jurisdiction."). The Court cannot possess original subject-matter jurisdiction over Leary's Counterclaims pursuant to 28 U.S.C. § 1332. *See Coury v. Prot*, 85 F.3d 244, 249-50 (5th Cir. 1996) ("it has been held consistently that a diversity suit may not be maintained under 28 U.S.C. § 1332(a)(1) by or against a United States citizen who is domiciled in a foreign country").

Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded-complaint rule governs whether a case "arises under" federal law for purposes of § 1331. *Renegade Swish, L.L.C. v. Wright*, 857 F.3d 692, 697 (5th Cir. 2017). "Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 535 (5th Cir. 2017) (quotation omitted).

When a district court has original jurisdiction over a civil action, 28 U.S.C. § 1367(a) provides that the court may also have

> supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The question § 1367(a) poses is "whether the supplemental claims are so related to the original claims that they . . . derive from a common nucleus of operative fact." *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197,

206 (5th Cir. 2018).

2.    The doctrine of standing

"[T]he jurisdictional issue of standing is a legal question," and "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Crane*, 783 F.3d at 250 (quotation omitted). Here, Handshoe asserts that Leary lacks standing to bring his Counterclaims in his personal capacity because Leary's claims actually belong to Trout Point Lodge. *See* Mem. [245] at 3, 4, 12. While Handshoe is not specific, in light of the authority cited in his Memorandum it appears that he is relying upon the doctrine of Article III standing. *See id.* at 3 (citing *Crane*, 783 F.3d at 250).

"Article III of the United States Constitution limits the jurisdiction of federal courts to actual 'Cases' and 'Controversies.'" *Crane*, 783 F.3d at 251 (citing U.S. Const., art. III, § 2). Article III standing requires "plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation omitted).

According to the United States Supreme Court,

> [t]o establish Article III standing, the plaintiff seeking compensatory relief must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Id.* (quotation omitted). A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the three elements of Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). "Where, as here, a

case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (quotation omitted).

"Implicit in the first requirement of Article III standing is the notion that the injury in fact is particularized to the Plaintiffs." *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (citing *Spokeo, Inc.*, 136 S. Ct. at 1548). "At the pleading stage, allegations of injury are liberally construed." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). General factual allegations of injury resulting from a defendant's conduct may suffice when resolving a motion to dismiss because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation omitted); *see also Little*, 575 F.3d at 540. However, the Supreme Court has emphasized that "standing is not dispensed in gross." *Town of Chester, N.Y.*, 137 S. Ct. at 1650 (quotation omitted). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.*

3.   <u>Analysis</u>[2]

In his original Complaint, Handshoe advanced claims arising under federal law against Leary and others for alleged misrepresentations under 17 U.S.C. §

---

[2]  A court generally considers Article III standing first, because it relates to subject-matter jurisdiction. *See Watson v. City of Allen, Tx.*, 821 F.3d 634, 638 (5th Cir. 2016). However, when there is a fundamental antecedent question, such as whether a case even belongs in federal court, a challenge to a court's original and supplemental jurisdiction may be considered before standing. *See id.* In its analysis of subject-matter jurisdiction, the Court will consider its original and supplemental jurisdiction over each of Leary's claims in federal court before addressing the question of Article III standing as to the remaining claims.

512(f) related to "takedown notices" sent by Leary and others to various internet service providers. *See* 3d Am. Compl. [90] at 33-47. In turn, Leary asserted Counterclaims under federal law against Handshoe, including claims for misrepresentation under 17 U.S.C. § 512(f) and for copyright infringement. *See* Countercl. [233] at 28-30. The Court therefore has original subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

Leary also advances several Counterclaims arising under state law, specifically for malicious prosecution, fraud, abuse of process, and tortious interference with contractual relations and business relations. After consideration of the parties' arguments and relevant authority, the Court is of the opinion that Leary has not shown that the Court has original or supplemental jurisdiction over his fraud claims, his abuse of process claims unrelated to this case, and his tortious interference claims, because those claims are not so related to the claims within this Court's original jurisdiction that they derive from a common nucleus of operative fact. *See* 28 U.S.C. § 1367(a); *D'Onofrio*, 888 F.3d at 206.

a.    Leary's fraud claim

The fraud allegations appear unrelated to the matters raised in the Counterclaims or in Handshoe's claims in this case, and they do not derive from a common nucleus of operative facts. Specifically, Leary alleges instances of fraud arising out of Handshoe's purported conduct in separate civil actions before a different judge of this Court, in civil case numbers 1:12cv90-LG-JMR and 1:13cv251-LG-JMR, and in a case before a different court, the United States

-10-

Bankruptcy Court for the Southern District of Mississippi. *See* Countercl. [233] at 25-27. Leary has not shown how these fraud allegations form part of the same case or controversy of any claim presently before this Court; thus, they do not fall within any supplemental jurisdiction the Court may possess in this case. Nor has Leary demonstrated how the fraud otherwise falls within the Court's original subject-matter jurisdiction. To the extent Leary may be seeking relief under Federal Rule of Civil Procedure 60(b)(3), a claim for relief from a final judgment, order, or proceeding entered in other, separate proceedings is not properly brought in this case. *See* Fed. R. Civ. P. 60(b)(3). Leary's fraud Counterclaim will be dismissed without prejudice.

b. <u>Leary's abuse of process claim</u>

Leary essentially asserts four separate state law claims for abuse of process relating to actions purportedly taken by Handshoe pertaining to both this and other cases in federal and state court. *See* Countercl. [233] at 27-28. Leary claims that Handshoe caused process to issue in a way that was an abuse of process in four cases: (1) a case in the Circuit Court of Hancock County, Mississippi; (2) a separate case in this Court; (3) Slabbed New Media, LLC's bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Mississippi; and (4) in this case. *See id.* While Leary grouped these claims together in one count of his Counterclaims [233], some of the claims are in fact based upon separate processes allegedly issued by different courts which share no common nucleus of operative fact with this case, depriving the Court of supplemental jurisdiction over them. As

such, these abuse of process claims will be dismissed.

The Court arguably does have supplemental jurisdiction over Leary's abuse of process claim related to Handshoe's actions taken in this case. *See id.* Specifically, Leary alleges that Handshoe published the original Complaint in this case, which was drafted by him, along with a press release on the same day he filed that pleading, and sent the Complaint and press release to hundreds of persons via e-mail. *Id.* at 28. Other than this particular abuse of process Counterclaim related to this case, Leary's Counterclaims for abuse of process will be dismissed without prejudice for lack of subject-matter jurisdiction.

      c.      <u>Leary's tortious interference with contract and business relations claim</u>

Leary's tortious interference claims also do not appear to relate to the present action. *See* Countercl. [233] at 30-31. For example, Leary refers to Handshoe's efforts to locate Leary and former Defendant Vaughn Perret to serve them with process and to intimidate them, starting on February 2, 2017. However, by that time, Leary and Perret had already been served with process in this case and had appeared through counsel. Thus, this claim seems to relate to some other incident or proceeding. Indeed, counsel filed a Motion [75] to Dismiss on Leary's behalf in this case on September 30, 2016, well before the February 2, 2017, date referenced in the Counterclaims.

Leary's other allegations relate to a person named "Bob Watson" who checked into Trout Point Lodge on September 16, 2017, again after this litigation was well underway, in order to disrupt normal business operations. Countercl. [233] at 31.

There is no indication that these claims relate to the ones in this case. Therefore, Leary has not carried his burden of showing that the tortious interference claims are part of the same case or controversy in this case, or that they otherwise fall within the Court's supplemental jurisdiction. The Court therefore lacks subject-matter jurisdiction over Leary's tortious interference claims, and they will be dismissed without prejudice.

d. Leary's malicious prosecution claim

It does appear that Leary's claim for malicious prosecution relates to Handshoe's conduct in this case. *See* Countercl. [233] at 24-25. According to the Counterclaims [233], Handshoe is a member or manager of, and operates, Slabbed New Media, which has previously attempted to intervene in this action. *Id.* at 24. Leary asserts that Handshoe has maliciously filed four complaints in this case and has insisted that Slabbed New Media file a Motion to Intervene. *Id.* at 24-25. Leary contends that Handshoe did this despite knowing of his lack of true interest in this case at least by the date the original Complaint was filed, and that Handshoe had no foundation or standing for bringing the action personally. Despite lacking probable cause, Handshoe instituted this proceeding and caused Slabbed New Media to file a Motion to Intervene "to coerce and inflict injury and embarrassment, and to vex Leary and his fellow defendants." *Id.* at 25.

As a result of Handshoe's allegedly malicious prosecution, Leary claims that he has "incurred tens of thousands of dollars in attorney's fees and legal costs" in defending this case. *Id.* The Court finds that this particular Counterclaim, at least

at the pleading stage, is sufficiently related to those claims within its original jurisdiction that it possesses supplemental jurisdiction over it. *See* 28 U.S.C. § 1367(a).

e. Standing to assert claims

With respect to standing, the remaining Counterclaims [233] over which the Court has original or supplemental jurisdiction, namely those for malicious prosecution; abuse of process; misrepresentation under 17 U.S.C. § 512(f); and copyright infringement, state enough factual content to demonstrate that Leary has suffered an injury in fact that is fairly traceable to Handshoe's challenged conduct, and that is likely to be redressed by a favorable judicial decision. *See Town of Chester, N.Y.*, 137 S. Ct. at 1650. Leary has established standing as to these claims. *See id.* The Court turns next to Handshoe's request to dismiss these remaining claims on their merits under Rule 12(b)(6).

C. Handshoe's request for dismissal for failure to state a claim

1. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), a complaint or counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Yumilicious Franchise, L.L.C. v. Barrie,* 819 F.3d 170, 174 (5th Cir. 2016). In order to be facially plausible, a counterclaimant must plead factual content that allows the court to draw the reasonable inference that the counter-defendant is liable for

the misconduct alleged.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Among other things, Handshoe argues that Leary's claims are barred by the applicable statute of limitations.  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

In considering a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the counterclaimant.  *Yumilicious Franchise, L.L.C.,* 819 F.3d at 174.  Mere labels and conclusions, or a "formulaic recitation of the elements of a cause of action will not do."  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (quoting *Iqbal*, 556 U.S. at 678) (alteration in original).

In resolving a Rule 12(b)(6) motion to dismiss, a court may consider the counterclaim, its proper attachments, documents incorporated into the counterclaim by reference, and matters of which a court may take judicial notice.  *See Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (Apr. 12, 2017).  In this case, Handshoe has attempted to present evidence outside the pleadings to support his Motion to Dismiss.  *See* Mem. [245] at 16-17.  This is not permissible at the

motion to dismiss stage, and the Court will not consider such evidence at this time. *See* Fed. R. Civ. P. 12(d). The Court has not considered any evidence outside the pleadings that it is not permitted to consider under Rule 12(b)(6). Therefore, the Court need not treat Handshoe's Motion to Dismiss as one for summary judgment. *See id.*

2.    <u>Substantive law applicable to Leary's state law Counterclaims</u>

Leary's remaining common law claims against Handshoe are for malicious prosecution and abuse of process related to process issued in this case. *See* Countercl. [233] at 24-25, 27-28. Both Leary and Handshoe have relied at least in part upon Mississippi law in briefing these claims, and neither cites Canadian law or any other foreign legal authority in support of their respective positions. *See, e.g.,* Mem. [245] at 20-21; Br. [259] at 19-21; Mem. [272] at 13-14. Nor has either party provided proper notice that they intend to raise an issue about a foreign country's law, as required by Federal Rule of Civil Procedure 44.1. *See* Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.").

The parties have not raised a conflict of laws issue, and they have not addressed whether Canadian law actually conflicts with Mississippi law with respect to these claims. *See, e.g., id.*; *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (holding that a party has an obligation to call the applicability of another state's law to the court's attention in time to be properly considered); *see also Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) ("If

the laws of the states do not conflict, then no choice-of-law analysis is necessary."). For these reasons, the Court will apply Mississippi substantive law in resolving Handshoe's Motion to Dismiss Leary's Counterclaims for malicious prosecution and abuse of process.

> 3.  Leary's Counterclaim for malicious prosecution

Leary claims that Handshoe maliciously instituted the present lawsuit and caused Slabbed New Media to file a Motion to Intervene, all in order to coerce, vex, and inflict injury and embarrassment upon Leary. Countercl. [233] at 25. The elements of a malicious prosecution claim in Mississippi are as follows:

(1)  the institution or continuation of original judicial proceedings, either criminal or civil;
(2)  by, or at the insistence of the defendants;
(3)  the termination of such proceeding in plaintiff's favor;
(4)  malice in instituting the proceedings;
(5)  want of probable cause for the proceedings; and
(6)  the suffering of damages as a result of the action or prosecution complained of.

*Bearden v. BellSouth Telecommunications, Inc.*, 29 So. 3d 761, 764 (Miss. 2010).

"The cause of action for a malicious-prosecution claim accrues . . . when there is a termination of the proceedings in the plaintiff's favor." *Johnson v. Rhett*, 250 So. 3d 486, 492 (Miss. Ct. App. 2018), *reh'g denied* (May 8, 2018), *cert. denied*, 250 So. 3d 1268 (Miss. 2018). "Although [the Mississippi Supreme] Court requires a termination, a final termination is not required." *Joiner Ins. Agency, Inc. v. Principal Cas. Ins. Co.*, 684 So. 2d 1242, 1244 (Miss. 1996). The termination element of a malicious prosecution claim does not require an appealable judgment or a dismissal with prejudice, and the issuance of an interlocutory, non-appealable

order can satisfy the termination requirement. *Id.*

"In order to show malice as it pertains to a claim of malicious prosecution the plaintiff must show that the primary purpose of prosecuting is one other than bringing an offender to justice." *Hudson v. Palmer*, 977 So. 2d 369, 381 (Miss. Ct. App. 2007) (quotation omitted). "Probable cause" in the malicious prosecution context refers to "a reasonable and honest belief in the guilt of the accused." *Id.*

Accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Leary, the Court concludes that his Counterclaim for malicious prosecution sets forth sufficient factual matter to state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Leary alleges that at least by the date the original Complaint was filed, Handshoe lacked a true interest in this case individually because the claims purportedly belonged to Slabbed New Media, yet he filed this civil action and has continued to prosecute it with purportedly futile amendments. Countercl. [233] at 24-25. Leary asserts that Handshoe maliciously brought and prosecuted this case in order to coerce, to inflict injury and embarrassment, and to vex Leary, even though Handshoe lacked probable cause to do so. *Id.* at 25. According to Leary, as a result he has suffered substantial damages, including attorneys' fees and legal costs. *Id.* The foregoing constitutes sufficient factual content to state a plausible claim for malicious prosecution.

Handshoe maintains that Leary's claims are time-barred. *See* Mem. [272] at 8-9; Mem. [245] at 16. "It is well settled that [Mississippi's] one-year statute of

limitations governing intentional torts applies to malicious-prosecution claims."

*Johnson*, 250 So. 3d at 492.  Such a claim accrues, and the statute of limitations begins to run, when there is a termination of the proceedings in the counterclaimant's favor.  *See id.*  Handshoe's claims against Leary in this case were dismissed by Orders [157], [289], entered on September 19, 2017, and September 13, 2018.  Leary's Counterclaims were filed on October 23, 2017, and again on May 16, 2018.  The statute of limitations does not bar Leary's malicious prosecution claim.

Handshoe also contends that Leary's common law claims are preempted by the Copyright Act, 17 U.S.C. § 101, *et seq.*  *See* Mem. [245] at 5.  While some of the claims advanced by Leary sound in copyright, the Court is not persuaded by Handshoe's argument with respect to this particular claim for malicious prosecution.  Leary's malicious prosecution claim does not fall within the subject matter of copyright and does not aim to protect rights that are equivalent to any of the exclusive rights within the general scope of copyright.  Moreover, Leary's malicious prosecution claim affords protection qualitatively different from that afforded by federal copyright law.  *See, e.g., Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 773-75 (5th Cir. 2017) (discussing copyright preemption).  Handshoe's Motion to Dismiss will be denied with respect to Leary's malicious prosecution claim.

4.    Leary's Counterclaim for abuse of process related to this case

Leary alleges that Handshoe "caused process to issue in a way that was an

abuse of process in . . . the instant case, including its various amendments."

Countercl. [233] at 27. Leary also claims that "Handshoe published the original

complaint in this case along with a purported press release on the same day he filed

the original complaint" and sent both documents "to hundreds of persons on

Handshoe's email list, including in Mississippi and in Nova Scotia, with the intent

of impugning Leary's reputation and character." *Id.* at 28. For the reasons that

follow, these allegations do not plead sufficient factual detail to state a claim for

abuse of process.

Mississippi courts define abuse of process as misuse or misapplication of a

"legal process to accomplish some purpose not warranted or commanded by the

writ." *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 393–94 (Miss. 2001).

"It is the malicious perversion of a regularly issued civil or criminal process, for a

purpose and to obtain a result not lawfully warranted or properly attainable

thereby, and for which perversion an action will lie to recover the pecuniary loss

sustained . . . ." *Id.* at 394 (quotation omitted).

In order to maintain an abuse of process claim, a counterclaimant must

prove: (1) that the counter-defendant made an illegal and improper perverted use of

the process, a use neither warranted nor authorized by the process; (2) that the

counter-defendant had an ulterior motive or purpose in exercising such illegal,

perverted or improper use of process; and (3) that damage resulted to the

counterclaimant from the irregularity. *Id.* (quotation omitted). "An action for

abuse of process differs from an action for malicious prosecution in that the latter is

concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued." *Miles v. Paul Moak of Ridgeland, Inc.*, 113 So. 3d 580, 587 (Miss. Ct. App. 2012) (quoting *State ex rel. Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975)).

Some of Leary's allegations supporting his abuse of process claim are that "Handshoe caused process to issue in a way that was an abuse of process" in the present case, including by filing the initial Complaint and various amendments. Countercl. [233] at 27. These claims that Handshoe improperly caused process to issue sound in the tort of malicious prosecution, not abuse of process, *see Miles*, 113 So. 3d at 587, because they amount to complaints about Handshoe instituting and prosecuting the proceedings, as opposed to misusing Court-issued process once that process was actually issued.

Leary also asserts that Handshoe published the original Complaint in this case with a press release on the day it was filed, and that Handshoe sent the documents to hundreds of persons on his e-mail list, with the intent to impugn Leary's reputation and character. Countercl. [233] at 28. That Handshoe published his own Complaint [1] and e-mailed it with an accompanying press release is insufficient to show that Handshoe made an illegal, perverted, or improper use of "process" issued by this Court, as using e-mail to disseminate these items on his own and not by any judicial authority does not equate to improper use of process within the context of the actual litigation itself. There is no allegation that Handshoe misused any regularly-issued legal process. *See Williamson ex rel.*

*Williamson*, 786 So. 2d at 393-94; Restatement (Second) of Torts § 682 (1977).[3]

Leary's Counterclaims for abuse of process will be dismissed.

     5.    <u>Leary's Counterclaims for misrepresentation under 17 U.S.C. § 512(f)</u>

Leary advances essentially two Counterclaims against Handshoe under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f). These claims relate to Handshoe's submission of two separate DMCA "counter-notifications," one to YouTube on July 14, 2014, and another to Amazon Web Services ("AWS") in late July 2016, related to Handshoe's purported use of Leary's copyrighted images on the Slabbed New Media commercial website. Countercl. [233] at 28-29. Specifically, Leary asserts that, although Handshoe swore under penalty of perjury that he held a good faith belief that his use of Leary's copyrighted images did not constitute copyright infringement, "Handshoe knew when he took and published the works belonging to [Leary] that [Handshoe] was infringing copyright in foreign works" that are registered with the Intellectual Property Office in Canada. *Id.* at 29.

The DMCA permits service providers to avoid copyright infringement for storing users' content if, among other things, it expeditiously removes or disables access to such content after receiving notification from a copyright holder that the content is infringing. *See* 17 U.S.C. § 512(c) (the DMCA's "takedown" procedure).

---

[3] *See also* Restatement (Third) of Torts: Liab. for Econ. Harm § 26 TD (2018) (tentative draft by The American Law Institute, though it appears from The American Law Institute's website that, on May 21, 2018, its members voted to approve this draft); https://www.ali.org/news/articles/american-law-institute-membership-approves-restatement-law-third-torts-liability-economic-harm (last visited Oct. 23, 2018).

After it executes a takedown, a service provider is not "liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing," as long as the service provider

> (A)    takes reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material;
> (B)    upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and
> (C)    replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

17 U.S.C.A. § 512(g)(1), (2)(A)-(C) (the DMCA's "put-back" procedure).

A person who abuses the DMCA may be subject to liability under § 512(f), which provides that

> [a]ny person who knowingly materially misrepresents under this section--
>     (1) that material or activity is infringing, or
>     (2) that material or activity was removed or disabled by mistake or misidentification,
> shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f).

Leary's § 512(f) claims against Handshoe involve two instances in which Handshoe allegedly submitted counter-notifications, one to YouTube on July 14,

2014, and another to AWS in late January 2016. *See* Countercl. [233] at 28-29.

Leary alleges that Handshoe swore under penalty of perjury that he held a good

faith belief that his use of Leary's copyrighted images did not constitute copyright

infringement, even though Handshoe purportedly knew that he was infringing

Leary's copyright in the foreign works. *See id.* Leary claims that he was damaged

in having to research and respond to the counter-notifications and in having his

copyrighted works continue to be used in an infringing manner. *See id.* at 29.

Liberally construing Leary's pro se pleadings and assuming all well-pleaded facts

are true, his two misrepresentation claims under § 512(f) contain sufficient factual

matter to state plausible claims for relief.

Handshoe argues that Leary's claims under 17 U.S.C. § 512(f) are also barred

by the applicable statute of limitations. *See* Mem. [272] at 9-10; Mem. [245] at 16.

Leary responds that "the filing of the original complaint in this action tolled the

statute [of limitations] regarding compulsory counterclaims." Br. [259] at 14.

Citing authority from other circuits, he maintains that the institution of a timely

suit by a plaintiff tolls the running of the statute of limitations with respect to any

compulsory counterclaims, as long as those counterclaims were not barred when the

original action was commenced by the plaintiff. *Id.* at 14-15 (citing *Employers Ins.*

*of Wausau v. United States*, 764 F.2d 1572 (Fed. Cir. 1985); *Burlington Indus., Inc.*

*v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982); *Hartford v. Gibbons & Reed*

*Co.*, 617 F.2d 567 (10th Cir. 1980); 6 Fed. Prac. & Proc. Civ. § 1419).

17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." At issue are counter-notifications Handshoe purportedly sent to YouTube on July 14, 2014, and to AWS "in late January, 2016." *See* Countercl. [233] at 28-29. Leary's original Counterclaims [179] in this case were filed on October 23, 2017. After they were stricken by the Court, the Counterclaims [233] were re-filed on May 16, 2018.

The misrepresentation claim related to the "late January, 2016" counter-notification appears to be timely. Based upon the factual allegations contained in the Counterclaims [233], this claim was raised within three years of the date it accrued. The Court will deny the Motion to Dismiss as to Leary's § 512(f) misrepresentation claim arising out of the "late January 2016" counter-notification.

As for the claim related to the July 14, 2014, counter-notification, it is evident that this claim is time-barred, absent tolling. The original Counterclaims [179] were not filed until October 23, 2017, over three years after Handshoe allegedly sent the counter-notification on July 14, 2014. Leary posits that Handshoe's filing of the original Complaint [1] on November 16, 2015, tolled the statute of limitations, rendering the misrepresentation claim related to the 2014 counter-notification timely. *See* Br. [259] at 14-15, 17, 19. Leary relies upon non-binding authority in his Brief [259]. *See* Br. [259] at 14-15.

The Fifth Circuit has considered this question and has rejected Leary's argument. According to the Fifth Circuit, statutes of limitations on counterclaims

seeking affirmative relief are not tolled by the filing of a plaintiff's complaint.  *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 206-07 (5th Cir. 2015).  By contrast, "a purely defensive procedure, [such as recoupment] is available to defendant so long as plaintiff's claim survives—even though an affirmative action by defendant is barred by limitations."  *Id.* at 206 (quotation omitted).

In this case, Leary makes a claim under § 512(f) and is seeking affirmative relief.  Therefore, to the extent Leary's § 512(f) claim related to the July 14, 2014, counter-notification is considered a compulsory counterclaim, Handshoe's filing of the original Complaint did not toll the statute of limitations.  Leary's original Counterclaims were filed beyond the three-year statute of limitations, and the pleadings fail to raise any other basis for tolling or the like.  *See Alexander*, 867 F.3d at 597.  The Court will grant Handshoe's Motion to Dismiss as to Leary's § 512(f) Counterclaim related to the July 14, 2014, counter-notification, as it is barred by the statute of limitations.

6.  <u>Leary's Counterclaims for copyright infringement</u>

"A claim of copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are copyrightable."  *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017).  In order to establish the copying element, a plaintiff must show factual copying and substantial similarity of the works.  *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015).

Leary asserts that he is the owner of the United States rights to four foreign copyrighted photographic works that are registered with the Intellectual Property Office in Canada. *See* Countercl. [233] at 29-30. According to Leary, Handshoe created illegal copies of these photographs and caused them to be published on the Slabbed commercial website, *id.* at 30, and "there has been continuous infringing publication of all four works," *id.* In support of his Motion [244] to Dismiss, Handshoe argues that these photographs were published by Slabbed in 2011 and 2012, rendering any copyright infringement claim time-barred.

Assuming all well-pleaded facts are true, Leary's copyright infringement claims set forth sufficient factual matter to state plausible claims against Handshoe. As for each copyright claim, Leary asserts ownership of a valid copyright and illegal copying. *See* Countercl. [233] at 29-30. With respect to the statute of limitations, Handshoe bears the burden of pleading and establishing this defense as the Counter-Defendant. *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 351 (5th Cir. 2011) (citing Fed. R. Civ. P. 8(c)(1)). The Court finds that Handshoe has not shown at this stage of the proceedings that the statute of limitations bars Leary's copyright infringement claims.

The United States Supreme Court has explained that the "separate-accrual rule" applies to copyright claims, such that when a defendant commits successive copyright infringement violations, the statute of limitations runs separately from the date of each violation. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). In other words, "[e]ach time an infringing work is reproduced or

distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Id.*

When a defendant's actions falling outside the three-year limitations period continue to harm a plaintiff within the three-year period, the defendant is only liable for his own acts of infringement committed within the three years preceding the filing of the plaintiff's complaint. *Makedwde Pub. Co. v. Johnson*, 37 F.3d 180, 182 (5th Cir. 1994). Each act of copyright infringement by a defendant gives rise to an independent claim, and the defendant is liable for his acts of infringement committed within three years prior to the filing of a plaintiff's lawsuit. *Id.*

According to Leary's pleadings, Handshoe created illegal copies of the four photographs and caused them to be published on the Slabbed commercial website, although he does not plead a specific date or dates of the alleged infringement. Countercl. [233] at 30. Leary does claim that "[a]ll four photographs are still in illegal publication on today's date–that is there has been continuous infringing publication of all four works." *Id.*

Based upon these factual allegations, which at this stage the Court must accept as true, the Court cannot say that it is evident from Leary's pleadings that any of his copyright infringement claims are time-barred and thus subject to dismissal under Rule 12(b)(6). Whether Leary can ultimately demonstrate at the summary judgment stage that Handshoe committed any acts of infringement within three years of the Counterclaims being filed is not the issue currently before the Court at the motion to dismiss stage. Based upon the factual allegations

contained in the Counterclaims [233], Handshoe's Motion to Dismiss will be denied

with respect to Leary's copyright infringement claims, and these claims will

proceed.[4]

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it

has considered them and determined that they would not alter the result.

Handshoe's Motion to Dismiss [244] will be granted in part and denied in part, and

Leary's Counterclaims for (1) violation of Slabbed New Media, LLC's bankruptcy

stay under 11 U.S.C. § 362; (2) fraud; (3) abuse of process; (4) misrepresentation

under 17 U.S.C. § 512(f), related to the July 14, 2014, counter-notification sent to

YouTube; and (5) tortious interference with contractual relations and business

relations, will all be dismissed.[5]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to

Dismiss [244] filed by Plaintiff/Counter-Defendant Douglas Handshoe is

**GRANTED IN PART**, and Defendant/Counterclaimant Charles Leary's

Counterclaims [233] for (1) violation of Slabbed New Media, LLC's bankruptcy stay

---

[4] Handshoe also argues that issue preclusion (collateral estoppel) and claim preclusion (res judicata) bar Leary from pursuing his copyright claims because Leary previously brought such claims in Canada. *See* Mem. [245] at 5. The Court will not address these defenses at this time, as such arguments generally cannot be brought in a motion to dismiss and must be pleaded as affirmative defenses. *See, e.g., Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 n.8 (5th Cir. 2016); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).

[5] On July 9, 2018, Leary filed a Motion [265] to Amend Counterclaims and Add Parties. This Court denied this request. *See* Sept. 14, 2018, Text Order. For the reasons stated in that September 14, 2018, Text Order, the Court will not grant Leary further leave to amend his Counterclaims.

under 11 U.S.C. § 362; (2) fraud; (3) abuse of process; (4) misrepresentation under 17 U.S.C. § 512(f), related to the July 14, 2014, counter-notification sent to YouTube; and (5) tortious interference with contractual relations and business relations are **DISMISSED**, as stated herein.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion to Dismiss [244] filed by Plaintiff/Counter-Defendant Douglas Handshoe is **DENIED IN PART** as to Charles Leary's Counterclaims [233] for (1) malicious prosecution; (2) misrepresentation under 17 U.S.C. § 512(f), related to the "late January, 2016," counter-notification sent to Amazon Web Services; and (3) copyright infringement, and these claims will proceed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, in accordance with Federal Rule of Civil Procedure 12(a)(4)(A), to the extent the Court has denied in part Plaintiff/Counter-Defendant Douglas Handshoe's Motion to Dismiss [244], Handshoe's Answer to Charles Leary's remaining Counterclaims [233] must be served within 14 days after entry of this Order.

**SO ORDERED AND ADJUDGED**, this the 26th day of October, 2018.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE