IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



DOUGLAS HANDSHOE                    PLAINTIFF

VS.                          CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, XYZ
    FOUNDATION & JOHN DOES 1-50                 DEFENDANTS

---

**COUNTERCLAIMANT CHARLES LEARY'S PRO SE BRIEF ON HIS
MOTION FOR PARTIAL RECONSIDERATION OF ORDER (ECF 293) DISMISSING
WITHOUT PREJUDICE PLAINTIFF BY COUNTERCLAIM LEARY'S COUNTERCLAIM
RELATING TO DEFENDANT BY COUNTERCLAIM HANDSHOE'S
VIOLATION OF A MANDATORY BANKRUPTCY STAY & ABUSE OF PROCESS**
---

Plaintiff by Counterclaim Dr. Charles Leary respectfully moves this Court to reconsider It's decision dismissing (a) Leary's claim for violation of a bankruptcy stay and (b) for abuse of process in this case.

**<u>11 U.S.C. § 362(k) Claim Was Not New</u>**

On October 26, 2018, this Honorable Court issued It's MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER-DEFENDANT DOUGLAS HANDSHOE'S [244] MOTION TO DISMISS. That Order included the dismissal without prejudice of Leary's cause of action under 11 U.S.C. § 362(k), violation of a bankruptcy stay. "[A] stay violation is not just a private injury. It strikes at the entire bankruptcy system and all parties for whom it was designed." *Rushing v. Green Tree Servicing, LLC (In re Rushing)*, 443 B.R. 85, 97-98 (Bankr.

1

E.D.Tex.2010). 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages"). This is a strict liability private cause of action created by 11 U.S.C. § 362(k) (previously 362(h)); Pettitt v. Baker, 876 F.2d 456 (5th Cir. 1989); In re Collier, 410 B.R. 464 (Bankr. E.D. Tex. 2009).

Previously, on October 10, 2017, Leary had filed his first reply to Handshoe's Third Amended Complaint (ECF 171). Within the time allowed for amending his counterclaims as of right, on October 23, 2017, Leary filed his first amended counterclaims. On November 13, 2017, Handshoe filed a Motion to Dismiss the *amended* counterclaims (ECF 187), including making arguments for dismissal of the extant claim under 11 USC § 362(k).

On December 14, 2017, Leary filed a Motion for Partial Summary Judgment on the 362(k) claim (ECF 202 & 203).

On April 17, 2018, the Court struck the Motion for Partial Summary Judgment, Leary's Answer, Defenses, and Counterclaims [171], *as well as* Leary's amended counterclaims. See Order [222] at 9-10. The Court permitted Leary to refile his Answer with Counterclaims, but directed that "no *new* counterclaims will be permitted." Order [222] at 9-10 (emphasis added).

At the time of this Order, the operative counterclaims were the amended counterclaims (ECF 179), however in its recent Order (ECF 293) the Court in error treated the original counterclaims as the operative complaint, and not the amended counterclaims. The amended counterclaims *included* a claim under 17 USC § 362(k) and it was *not new* when Leary re-filed; see paragraphs 36-42 of amended counterclaims (ECF 179). Therefore, Leary did not violate the Court's Order (ECF 222) by adding a new counterclaim in its counterclaims filed May 16, 2018 (ECF 233). The claim under 11 USC § 362(k) already existed as a counterclaim when the Court entered Its Order. On April 17, 2018, in the text only Order dismissing Handshoe's Motion to Dismiss, the Court stated: "These Motions are now

2

moot, as they relate to *Leary's [179] First Amended Counterclaim*, which the Court has stricken" (emphasis added). Thus the Court acknowledged at that time this, ECF 179, was the operative counterclaim.

However, on October 26, 2018, in dismissing Leary's claim for violation of the bankruptcy stay, this Court found:

> Because Leary improperly added this claim in his re-filed Counterclaims [233], in direct contravention of the Court's previous sanction Order [222] prohibiting the addition of new claims, the Court will grant Handshoe's Motion [244] to the extent it seeks to dismiss this claim. Leary's § 362 claim will be dismissed without prejudice.

Respectfully, that is not the case and this claim should not have been dismissed for the reasons given in the Court's Order (ECF 293).

*No Basis for Dismissing Claim*

In addition, the claim should not be dismissed for the reasons argued by Mr. Handshoe in his motion to dismiss (ECF 244), that is: "Leary cannot meet any of the basic elements for a civil action based on 11 U.S.C. § 362 because such a stay works only to the benefit of a bankruptcy debtor . . ." Handshoe's misapprehends the bankruptcy stay as protecting only the bankruptcy debtor or the estate, and fails to understand that it also protects all bankruptcy creditors. In fact, in his brief to Motion to Dismiss (ECF 245), at page 20, he admits to personal knowledge of the stay, "an injunction," one of the elements of the cause of action. In making his scant argument regarding dismissal of the § 362 claim, Handshoe ignores the ruling of the U.S. Court of Appeals for the Fifth Circuit in *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009) despite the fact Leary has already made Handshoe aware of this ruling in more than one previous brief[1]:

---

[1] In fact well before Labuzan, *supra*, the Fifth Circuit had found: "the purpose of the automatic stay provisions are clear. As the legislative history of § 362 notes, the automatic stay is designed to protect debtors from creditors and creditors from each other. S.Rep. No. 989, 95th Cong., 2d Sess. 49-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835-41 ("The automatic stay ... provides creditor protection.... The automatic stay is one of the fundamental protections provided by the bankruptcy laws."); *see also Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (discussing the goal of the automatic stay to prevent a "chaotic and uncontrolled scramble for the debtor's assets" (internal quotation omitted)." *Matter of Walker*, 51 F.3d 562 (5th Cir. 1995).

3

> When 11 U.S.C. § 1109(b) is read in conjunction with § 362(k), it becomes clear that Congress did not enact § 362(k) solely for the benefit of debtors. Accordingly, based on § 362(k)'s plain language, the above-discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and the weight of authority finding creditor-standing, we hold debtors and creditors are entities whose grievances fall "within the zone of interests" protected by § 362(k).

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533 (5th Cir. 2009).

By personally[2] commencing a Fed.R.Civ.P. 69 proceeding trying to enforce a money judgment that belonged to the bankruptcy estate in the Slabbed New Media, LLC bankruptcy, while a bankruptcy stay was in place, Handshoe committed "an act to obtain possession of property of the estate."[3]

> The filing of a petition operates as an automatic stay of "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement" of the bankruptcy case and of *"any act to obtain possession of property of the estate."* 11 U.S.C. § 362(a)(2) & (3). There are three elements to a claim for violation of the stay: "(1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay." *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005). Section 362(k) "does not require a specific intent to violate the automatic stay," only "that the defendant's actions which violated the stay were intentional." *Id.* (citation omitted). (emphasis added).

*IN THE MATTER OF SMALL*, No. 11-40888 (5th Cir. Aug. 16, 2012).

Leary has pleaded that (1) Handshoe knew of the stay (in fact he initiated the bankruptcy as the LLC's member) and the judgment debt in question was in the possession of the bankruptcy estate; (2) the act was intentional, ie. the filing of a motion under Rule 69 in his personal name; and (3) the stay was violated by Handshoe's actions taken to take possession of the property of the estate. He has also pleaded that Leary was a creditor in the bankruptcy, granting him standing under Labuzan, *supra*. In fact, Leary has pleaded the fact that Handshoe never informed the district court of the bankruptcy, the stay, or the fact that the money judgment was Slabbed New Media's major asset in bankruptcy.

Therefore, Dr. Leary respectfully requests that the Court reconsider its decision on Leary's

---

2 "Handshoe and Slabbed are separate entities with separate assets and liabilities." *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016). Handshoe was also a creditor in the bankruptcy.

3 *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016) ("Slabbed basically has no income and no liabilities other than (a) the $48,000 attorney fee liability of Handshoe that was assigned to Slabbed along with a right to recover a judgment for attorney fees" and at fn 3: "The judgment is shown as a receivable in connection with a lawsuit in the United States District Court for the Southern District of Mississippi, *Trout Point Lodge, et al. v. Handshoe*, No. 1:12cv90. Dkt. No. 31 at 5."

4

claim of violation of the bankruptcy stay by Douglas Handshoe, and that this claim not be dismissed. This Court has original jurisdiction over Leary's claim under 28 U.S.C. § 1334(a) and 11 USC § 362 *Matter of Walker*, 51 F.3d 562 (5th Cir. 1995) and it should proceed; on original jurisdiction, see also: *Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir.2005) (per curiam); *Price v. Rochford*, 947 F.2d 829, 832 n. 1 (7th Cir.1991); *Roberts v. American Bank & Trust Co., Inc.*, 835 F. Supp. 2d 183 (E.D. La. 2011); *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473 (4th Cir. 2015) ("A claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11, and as such, a district court has jurisdiction over it.); *Barry v. EXPERIAN INFORMATION SOLUTIONS, INC.*, Civil Action No. 2: 16-CV-09515 (S.D.W. Va. July 5, 2018).

### Abuse of Process Pleading is Sufficient

Dr. Leary also respectfully requests reconsideration of dismissal of Leary's abuse of process claim involving this case. This Court found that "Leary has established standing as to" the abuse of process claim, and that Leary "state[d] enough factual content to demonstrate that Leary has suffered an injury in fact that is fairly traceable to Handshoe's challenged conduct" with regards to abuse of process. However, the Court subsequently dismissed under the Rule 12(b)(6) standard (ECF 293).

The standard under 12(b)(6) is the existence of sufficient stated *facts* to form the elements of a stated cause of action. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2D 868 (2009). "A district court should refrain from granting a motion to dismiss pursuant to Rule 12(b)(6) unless it appears, from a reading of the plaintiff's complaint, that the plaintiff has failed to *set forth facts* which, if proven, would establish" a cause of action. *Sisk v. Levings*, 868 F.2d 159 (5th Cir. 1989) (emphasis added).

> On motion under Rule 12(b)(6), the court must decide *whether the facts alleged*, if true, would entitle the plaintiff to some legal remedy. See *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

5

[. . .]

> "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46, 78 S.Ct. 99; *Kaiser Aluminum,* 677 F.2d at 1050. "'The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'" *Kaiser Aluminum,* 677 F.2d at 1050.

*Hutchison v. Brookshire Bros., Ltd.,* 205 F. Supp. 2d 629 (E.D. Tex. 2002).

This *pro se* claim should not have been dismissed.

Leary pleaded the following *facts* about Handshoe's abuse of process. First, Leary pleaded that the context of this entire litigation, commenced in 2015, was a reaction to an effort by Leary and his fellow judgment creditors (former defendants Trout Point Lodge and Vaughn Perret) to collect on a February, 2014 $180,000 Canadian copyright infringement judgment against Handshoe in Mississippi. Against this factual backdrop, Leary pleaded:

> Handshoe subsequently used such process for the improper and collateral purpose of blackmailing or coercing Leary into stopping his enrollment and execution upon a copyright infringement judgment of Nova Scotia Supreme Court rendered on February 14, 2014. Finally, Handshoe used the process that issued to delay Leary's enforcement efforts regarding the Canadian copyright infringement judgment so that he could illegally transfer assets out of Leary's reach, which was not an intended purpose of the process that issued.

Leary also pleaded: "Leary suffered damage not only from the initial complaint but from the cumulative costs of defense and the reputational harm caused by the unresolved claims . . ."

While Leary may have confused the overlapping elements of Malicious Prosecution and Abuse of Process, he has pleaded sufficient facts to establish a cause of action for abuse of process. Notably, "[a]lthough conceptually distinct, the two causes of action share much in common and often overlap." *Hyde Construction Co., Inc. v. Koehring Company,* 387 F. Supp. 702 (S.D. Miss. 1974).

"Abuse of process, or malicious abuse of process as it is often termed, is the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, and with resulting damages." Id. "[T]he malicious abuse of process is

6

the employment of a process in a manner not contemplated by law, or to obtain an object which such a process is not intended by law to effect." *State, Use and Benefit of Foster v. Turner*, 319 So. 2d 233 (Miss. 1975). Leary's *pro se* complaint—which should be construed liberally by the Court[4]—does allege that Handshoe used process issued in this case (among others) to "obtain an object which such a process is not intended by law to effect" and for an "improper purpose" with an "ulterior motive" *after* the process issued.

"[A]buse of process is essentially based on the use, and not the issuance, of the process . . ." Hyde Construction, *supra*. It is incontrovertible that Leary pleaded "Handshoe caused process to issue in a way that was an abuse of process." This Court found:

> Some of Leary's allegations supporting his abuse of process claim are that "Handshoe caused process to issue in a way that was an abuse of process" in the present case, including by filing the initial Complaint and various amendments. Countercl. [233] at 27. These claims that Handshoe improperly caused process to issue sound in the tort of malicious prosecution, not abuse of process, see Miles, 113 So. 3d at 587, because they amount to complaints about Handshoe instituting and prosecuting the proceedings, as opposed to misusing Court-issued process once that process was actually issued. (ECF 293).

While Leary's specific allegation above may be an element of Malicious Prosecution, that does not mean it cannot exist in a claim for abuse of process: they are not mutually exclusive. Leary also pleaded the "subsequent" "improper and collateral purpose of blackmailing or coercing Leary."[5] This is a claim for abuse of process.

> [I]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The *subsequent misuse* of the process ... constitutes the misconduct for which the liability is imposed...."
> *Brown*, 721 F.2d at 1454-55 (quoting *Restatement (Second) of Torts* § 682 cmt. a (emphasis in *Brown*)).

*Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997) quoting *Brown v. Edwards*, 721 F.2d 1442, 1454 (5th Cir.1984).

---

4  *Pro se* pleadings must be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).
5  Contrast, for example, *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 884 F. Supp. 181 (E.D. Pa. 1995).

7

"The gravamen of the misconduct is the misuse of process, no matter how properly obtained, for *any purpose* other than that which it was designed to accomplish." *Restatement (Second) of Torts* at 682, 627 A.2d 190 cmt. b (emphasis added). Given the overlapping nature of the two torts, a *pro se* counterclaimant stating a superfluous element of a cause of action should not preclude the Court from considering if other facts stated in the complaint are sufficient to state the elements of the claimant's intended cause of action.

> The gravamen of the "tort" abuse of process is the initiation of a legal proceeding against an individual to secure an objective other than the judgment purportedly sought in that proceeding. See Restatement § 682; Comment, *Limiting the Antitrust Immunity for Concerted Attempts to Influence Courts and Adjudicatory Agencies: Analogies to Malicious Prosecution and Abuse of Process*, 86 Harv.L. Rev. 715, 732 (1974) (hereinafter referred to as Analogies). While "abuse of legal process" as used generically in *California Transport* may be broad enough to include the tort of malicious prosecution, there can be no doubt that it also includes the narrower and conventional tort, abuse of process. Therefore, Plaintiff need only show that the Defendant instituted litigation with the *purpose* of achieving a collateral and unlawful objective to that appearing on the face of the suit and that he committed specific acts—other than those acts incidental to the normal use of the Courts—directed at attaining that objective.

*Associated Radio Service Co. v. Page Airways, Inc.*, 414 F. Supp. 1088 (N.D. Tex. 1976).

It is common ground that the elements of abuse of process are [1] the defendant made an illegal, improper, perverted use of the process, [2] he had an ulterior motive or purpose in doing so, and [3] damages resulted to plaintiffs from the irregularities. Allred, *supra*. It is not a bar to an abuse of process claim to state, as Leary did, that when the process issued the plaintiff had an improper motive for filing suit, only that subsequently that process was abused.

> In proving abuse of process, it is not necessary to show the tortfeasor's motive for securing issuance of the process. It is required only that the process, once obtained, is willfully misapplied. The unlawful use creates a rebuttable presumption of an ulterior motive, which it is incumbent on the defendant to overcome by proof of good faith or mistake. Wilkerson v. Randall, supra, 180 So.2d at 306-307. The improper use which is the essence of the tort is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself, and is, in Prosser's words, "a form of extortion" in which a lawfully used process is perverted to an unlawful use. W. Prosser, The Law of Torts, § 121 at 857 (4 ed. 1971).

Hyde Construction, *supra*.

Here Leary pleaded [1] a perverted use of the process issued in this case, namely "blackmailing

8

or coercing Leary" "*subsequent*" to the issuance of the process; [2] an ulterior motive: "stopping his enrollment and execution upon a copyright infringement judgment" and "to delay Leary's enforcement efforts regarding the Canadian copyright infringement judgment so that he could illegally transfer assets out of Leary's reach, which was not an intended purpose of the process that issued"; finally [3] damages, "the cumulative costs of defense and the reputational harm caused by the unresolved claims" in this case. These elements were aggravated and evidenced by Handshoe's use of a press release and publication of the original complaint containing irrelevant and unfounded criminal allegations about Leary, as pleaded in the counterclaim. A civil lawsuit--regularly issued legal process--is not intended to be and is not properly a publicity vehicle for a plaintiff, or a hammer to publicly punish and injure a defendant for enforcing his rights to collect on a previous valid judgment.

Regarding Handshoe's press release and publication of the complaint, this Court found:

> That Handshoe published his own Complaint [1] and e-mailed it with an accompanying press release is insufficient to show that Handshoe made an illegal, perverted, or improper use of "process" issued by this Court, as using e-mail to disseminate these items on his own and not by any judicial authority does not equate to improper use of process within the context of the actual litigation itself. There is no allegation that Handshoe misused any regularly-issued legal process.

(ECF 293)

The Court cited Williamson ex rel. Williamson, 786 So. 2D, however that was a summary judgment case.

In fact it is established in other jurisdictions that precisely the kind of conduct Leary alleges here *is* an abuse of process, and that the kind of publication of a complaint and press release containing scandalous and irrelevant allegations, with ensuing injury, as alleged in Leary's counterclaims is the malicious perversion of a regularly issued civil process for a purpose and to obtain a result not lawfully warranted or properly attainable thereby. This Court has found that "a statement made in the course of a judicial proceeding may lose absolute privilege when republished" and be defamatory *VIRGINIA COLLEGE, LLC v. Martin*, Civil Action No. 3: 11CV682 DPJ-FKB (S.D. Miss. July 12, 2012), citing

9

cases. If "Mississippi would not extend protection once the statements are republished to the general public," and they could do real injury to reputation as falsehoods, it can reasonably be inferred that such kinds of publications could constitute abuse of process in this state, i.e. a perversion of properly issued process. Id. Here are some cases from other jurisdictions: *BRIGHT VIEW TRADING CO., INC. v. Park*, No. 03 Civ. 2330 (HB) (S.D.N.Y. Sept. 16, 2004) citing Williams v. Williams, 275 N.Y.S.2d 425, 426 (2d Dep't 1966) (allegations that the defendant filed suit for the sole purpose of ruining plaintiff's business reputation and accomplished that purpose by mailing copies of the complaint to trade members properly pleaded abuse of process); *Phillips v. Murchison* 383 F.2d 370 (2d Cir.1967), *cert. denied*, 390 U.S. 958, 88 S.Ct. 1050, 19 L.Ed.2d 1154 (1968) (stating that a complaint was filed "in furtherance of a conspiracy maliciously to use the process of this Court * * *" to injure the defendant" specifically when "the contents of the complaint were published to various news media by [the defendant]. [ . . .] As in *Williams*, these allegations sufficiently plead abuse of process or some other tort because they charge the "misuse of legal process to accomplish an improper, collateral purpose"); *National Football League Players Assoc. v. Office and Prof. Employees Intern. Union, Local 2*, 947 F.Supp. 540, 545 (D.D.C.1996) *aff'd*, 1997 WL 362761 (D.C. Cir. May 6, 1997) (distinguishing the case from Williams, *supra*, the court found that for there to be abuse of process it had to be a case where "defendants took affirmative actions to disseminate the story of their litigation" to third parties before there could be an abuse of process; accord: *MacPherson v. Town of Southampton*, No. 07-CV-3497 (DRH)(AKT) (E.D.N.Y. Nov. 14, 2013): "Plaintiffs fail to assert any factual allegations to indicate that the Town Defendants abused process for the purpose of harming MacPherson's reputation"); *Davidson v. Cao*, 211 F. Supp. 2d 264 (D. Mass. 2002) (stating "the First Circuit "recognize[s] that the desire to injure a business or business reputation is an improper ulterior motive sufficient to state a claim for abuse of process" and finding, "the desire to damage the reputations is collateral to the allegations in plaintiffs' complaint. [ . . .] Solely for purposes of resolving

10

the motion to dismiss, plaintiffs' threats to publicly embarrass Folkman and his colleagues and Abbott's motive of filing the lawsuit to damage the reputations and publicly humiliate the individual scientists and Children's Hospital constitute an ulterior purpose that is sufficiently collateral to maintain, at this stage, an abuse of process claim"); *General Electric Company v. Lyon,* 894 F.Supp. 544, 552 (D.Mass.1995) (denying Rule 12(b)(6) motion to dismiss abuse of process claim, stating "when BBMC's allegations are viewed as a whole, they assert that GE is using this suit improperly to injure BBMC and the business reputation of Lyons and Anthony"); *Poduska v. Ward,* 895 F.2d 854 (1st Cir. 1990) ("In both *Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 775, 489 N.E.2d 185 (1986), and *Neuman v. Vidal,* 710 F.2d 856, 860 (D.C.Cir.1983), the courts recognized an injury to business and business reputation as an improper ulterior motive and abuse of process.").

All three elements of abuse of process exist, stated as facts, in the counterclaim in this case. Leary has stated a proper claim for abuse of process by Douglas Handshoe, and under Mississippi law this claim should not have been dismissed. Dr. Leary respectfully requests that the Court reconsider It's decision to dismiss these two causes of action.

RESPECTFULLY SUBMITTED, this the 30 day of October, 2018.

CHARLES LEARY, DEFENDANT
appearing *pro se*

308 5th Ave E
Vancouver, BC V5T 1H4
Canada

802-440-0213
foodvacation@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on  Oct 30 , 2018, I caused a true and correct copy of the above and foregoing to be filed utilizing the Court's CM/ECF electronic document filing system, which caused notice of such filing to be delivered to all counsel of record and parties requesting notice, and by United States First Class Mail, postage prepaid, to the following non-ECF participants having appeared in this action:

[none]

_____
Charles L. Leary