

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DOUGLAS HANDSHOE                                        PLAINTIFF

VS.                                        CIVIL ACTION NO. 1:15cv382HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A TROUT
POINT LODGE LTD OF NOVA SCOTIA
& IN THEIR INDIVIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, TORSTAR
CORPORATION, NATIONAL
GEOGRAPHIC SOCIETY, XYZ
FOUNDATION & JOHN DOES 1-50                             DEFENDANTS

---

**DEFENDANT CHARLES LEARY'S**
***PRO SE* BRIEF ON HIS MOTION TO STRIKE PLEADINGS UNDER**
**FEDERAL RULE OF CIVIL PROCEDURES 12(F) AND 8**

---

Counterclaimant Leary respectfully moves under Fed.R.Civ.P. 12(f) that this Court strike portions of Defendant Handshoe's defense, including certain affirmative defenses.

Original plaintiff, now defendant-by-counterclaim, Handshoe has been on "an internet campaign to damage [former defendant] Perret and Leary" since at least 2011. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481 (5th Cir. 2013). He publishes material about them that is "derogatory, mean spirited, sexist, and homophobic." He also confects and publishes conspiracy theory. *Id*, based on findings of the district court. The U.S. Court of Appeals for the Fifth Circuit described as "grotesque" Handshoe's publications that "referred to Perret and Leary as "'girls,' 'blow buddies,' 'queer f-g scum,' and 'b-tches,' his publi[cation of] more than one reference to a gay-themed movie, and [his] post[s] of]video clips of movies and music videos commonly associated with gay stereotypes." Id. Handshoe has published about the process server used by Leary, Chris Yount, having obtained Yount's family

1

court documents. *Yount v. Handshoe*, 171 So. 3d 381 (La. Ct. App. 2015). There is a general public policy against attacking or attempting to interfere with process servers; 18 U.S. Code § 1501.

> Handshoe published on *www.slabbed.org* a pornographic drawing authored by Mr. Yount's 13-year-old son that had previously been filed with the court as part of Mr. Yount's divorce proceedings in the 24th Judicial District Court. Captions and comments authored by Mr. Handshoe and Mr. Truitt underneath the drawing described its graphic nature and clearly identified the author as a minor child and the divorce proceedings in which he was involved.

Id.

See also: *Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Jan. 8, 2016). Mr. Handshoe violated the child's copyright by publishing on Slabbed. "[T]here is no dispute that the minor child drew the image, and therefore held a copyright in it under 17 U.S.C. § 102(a)(5), nor is there a dispute that Plaintiff posted the image without permission of the copyright owner or his agent." Id. Nonetheless, Handshoe sued Yount under 17 U.S.C. 512(f), as in this case. Id. He also re-published the pornographic drawing after it was subject to a Digital Millenium copyright infringement notice.

> On February 18, 2014, the blog post containing the drawing as well as the *www.slabbed.org* website was taken down by the webhost in response to the copyright infringement notice and violations of the webhost's terms of service. Mr. Handshoe subsequently found a new webhost, brought the website back online, and republished the posts containing the pornographic drawing. On at least two separate occasions in February and March of 2014 after the evidence had been placed under seal by the court, Mr. Handshoe authored additional posts where he published the drawing together with comments that clearly identified the minor child author and his father.

Yount, *supra*.

In the proceeding before Judge Starrett, Handshoe made "an admission that he previously made false representations concerning his damages to the Court." Handshoe, *supra*. In this case, Handshoe attempted to use deemed admissions on summary judgment when "the Requests were not mailed to Leary's address of record" and then utterly failed to "come forth with competent summary judgment evidence" (ECF 289). One court has found to "it is not an overstatement to say that Mr. Handshoe "snubs his nose" at all judicial officers and institutions" of the court whose jurisdiction he submitted to. Trout Point Lodge Ltd. v. Handshoe, 2014 NSSC 62; Trout Point Lodge v. Handshoe, Hancock County

2

Circuit Court, MS (Jan 5. 2017) (https://digitalcommons.law.scu.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&httpsredir=1&article=2380&context=historical). Mr. Handshoe believes that everything and everyone he publishes about is converted to a matter of public interest. "[W]hile Mr. Handshoe may have previously written about public issues, that does not mean that every post on the website is "news" or about a "public issue."" Yount, *supra*.

> While information may be made available to the public for purposes of ensuring fairness in our judicial proceedings, there may be legal consequences should that same information be published and distributed as clickbait to millions of people on the internet in a manner that defames or invades the privacy of another.

Id.

In sum, Mr. Handshoe has been found to be a conspiracy theorist, online bully, homophobe, and extremist advocate of his own purported "free speech rights" who routinely ignores and violates the intellectual property rights of others without reason. He is a commercial blogger who has been publishing about Leary—a person he does not know—since 2010. Such judicial findings are relevant to striking some of his defenses.

   This case initiated by Handshoe has not followed the normal course of civil litigation in federal district court. Handshoe filed in November, 2015, against multiple defendants, foreign and domestic, including the National Geographic Society, Ashoka, journalists, a major daily newspaper in Toronto, and Leary. In 2016, Handshoe told the bankruptcy court in this district that this lawsuit was included amongst four lawsuits where Slabbed New Media had claims, "asserting claims under 17 U.S.C. § 512 for purpose of gathering "the claims for a civil conspiracy")." *In re Slabbed New Media, LLC*, 557 B.R. 911 (Bankr. S.D. Miss. 2016). Indeed, Handshoe alleged a conspiracy between Leary and the National Geographic Society, among others, to deprive him of his First Amendment rights. Pleadings did not close in this case, however, until November, 2018. The Court allowed Handshoe to amend his complaint three times, against the objections of all defendants. Years after filing, he attempted to have his sole-member limited liability company intervene, which intervention the Court properly denied

3

after opposition by multiple defendants, wasting additional court and party resources. Handshoe tried to have a dismissal certified for appeal (which was denied), filed a futile motion to strike, and published his complaint, filled with immaterial, scandalous, and impertinent words along with a press release on the Internet. In his various pleadings, including his defense, he accuses Leary (among others) of felonies.

The first case management order set deadlines for the completion of discovery that occurred well before any first defense was filed. Handshoe has never been deposed (the Court allowed Leary to be deposed after the case management deadline despite Handshoe's failure to properly serve notice by the deadline). Handshoe intentionally sent requests for admission to an incorrect address and then attempted to use the deemed admissions on a motion for partial summary judgment. The Court quashed those discovery attempts on Leary's motion. Each time Handshoe sought amendment, it was opposed by all defendants *after* they had already filed motions to dismiss, costing all involved tremendously in terms of resources, including time, fees, and costs. Ultimately, *all* of Handshoe's causes of action were dismissed *before* he filed a defense, most based on the 12(b)6 standard and one on cross motions for summary judgment. Only certain of Leary's counterclaims survive. Handshoe served Leary with a copy of his defense in a manner that resulted in a 24 day delay in Leary receiving the pleading.

Now, Handshoe has defended against Leary's counterclaims.

## Admissions

Handshoe either admits or does not deny a number of claims in his defense pleading and in other documents previously filed with the Court. In order to prove copyright infringement, one has to demonstrate (1) ownership of the work in question and (2) unauthorized copying of the work by the defendant. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224 (11th Cir. 2010). All those who contribute to infringement are legally liable; Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) ("a person who has promoted or induced the infringing acts of the performer has

4

been held jointly and severally liable as a "vicarious" infringer").

The defense and previous filings make clear that Handshoe is not particularly concerned about infringing the copyrights of others. He admits to "acting in his capacity as publisher of Slabbed New Media" and the Slabbed web site (paragraphs 4, 71). He admits to publishing in its entirety without permission a newspaper article belonging to the New Orleans *Times-Picayune*, and that Advance Publications served a copyright infringement notice on his web host in 2011 (paragraph 14 of the defense), causing him to loose his hosting services.

In particular, related to copyright infringement, paragraphs 20, 21, 23, 59, and 74 of Handshoe's defense deserve close scrutiny. Handshoe makes a general denial in paragraph 20, but then at paragraphs 59 and 74 admits to publication of the photographs in question. He also qualifies that denial with statements, some of which may belong to Fair Use affirmative defenses.

"Fair use is an affirmative defense" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2D 500 (1994) at 590. In fact, "binding Supreme Court authority requires us to treat fair use as an affirmative defense." *Latimer v. Roaring Toyz, Inc., supra*. As such, "doubts about whether a given use is fair should *not* be resolved in favor of the *self-proclaimed*" infringer (Acuff-Rose, *supra*, at 599, concurring opinion, emphasis added). The *Copyright Act* creates "statutory protection to all works from the time of their creation." *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2D 588 (1985). It protects foreign works without registration; *Cosmetic Ideas, Inc. v. IAC/INTERACTIVECORP.*, 606 F.3d 612 (9th Cir. 2010) at fn 12. Photographs have long been recognized as copyrightable expression; cf. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U. S. 53, 58 (1884) (originator of a photograph may claim copyright in his work). Someone who admits to the elements of infringement can then only resort to the affirmative defense of Fair Use, which it is the defendant's burden to properly plead and prove. *Campbell v. Acuff-Rose supra,* (defendant's "carrying the burden of demonstrating fair use"). "The drafters [of the Copyright Act]

5

resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as an affirmative defense requiring a case-by-case analysis." Nation Enterprises, *supra*.

Handshoe admits to downloading and publishing five photographs that belonged to others (paragraph 20: "those images belonged to third parties" and "all were subject of DMCA takedown notices"; paragraph 23: "neither the news stories or [sic] the photographs accompanying them in question were ever monetized by Handshoe"); paragraph 59: "The last Slabbed New Media publication of the third-party photos for which Leary obtained after the fact assignment was on December 2, 2013";[1] paragraph 74: the photographs were "published by Slabbed New Media, LLC" and the "copyrights to several of the images resided in the United States with United States organizations upon their initial publication to slabbed.org." At paragraph 21, Handshoe only denies "the allegations regarding the ownership of the Slabbed New Media website." He thus admits "these photographs were illegally published at www.slabbed.org"; that is, all the photographs identified in paragraph 20 of Leary's counterclaims.

This makes this case similar to Nation Enterprises, *supra*, where the defendant "has admitted to" copying the work of another, but then resorts to the affirmative defense of Fair Use; Nation Enterprises at 548. It is also similar to Roaring Toyz, *supra*: "In the instant case, actual copying of [plantiff's] photographs is undisputed. Defendant-appellees distributed and published digital copies, which were indistinguishable from [plaintiff]'s original photographs. As such, substantial similarity is not at issue."

In fact, at paragraph 23 of his defense Handshoe is explicit in resorting to "fair use in journalism in the public interest," an affirmative defense to admitted infringement.

Thus Handshoe intentionally infringed copyright in the photographs by downloading them

---

[1] As paragraph 74 of his defense makes clear, Handshoe admits to the last *initial* publication of one of the impugned photographs in December, 2013; however all photographs in question remain in publication as of the date of this filing.

6

without permission or license from third party web sites.

His apparent defenses are (a) that upon publication on slabbed.org "none [of the photographs] belonged to Trout Point Lodge, Vaughn Perret, or Charles Leary," that rather they "belonged to Ashoka, Progress Media, and the National Geographic Society"; (b) "none of these copyrights were registered at the time of publication"; (c) that he "successfully counter-notified" DMCA infringement notices sent by copyright owners; (d) "neither the news stories or [sic] the photographs accompanying them were ever offered for sale or otherwise monetized" and "the public interest news stories available free of charge to the public is self evident" fair use; (e) "Leary received assignments from third parties in late spring and early summer of 2013, in certain instances over 2 years after the original publications" on slabbed.org.

He also admits he did so without authorization, but insists it was as "publisher" of Slabbed New Media, his Mississippi LLC.

Handshoe's admissions are relevant to striking his affirmative defenses.

### Striking Defenses: The Law

"The district court [has] ample discretion, under Rule 12(f) ... to order stricken from the complaint any redundant or immaterial matter." *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1168 (5th Cir. 1979) (internal citation omitted). The decision to strike a pleading [...] without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure is also within the district court's sound discretion. See Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993); Atkins v. Northwest Airlines, Inc., 967 F.2d 1197, 1203 (8th Cir. 1992); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). A defendant should not be permitted to "lie behind a log" and ambush a plaintiff with an unexpected defense. *Bettes v. Stonewall Insurance Co.,* 480 F.2d 92 (5th Cir.1973); *see also Bull's Corner Restaurant, Inc. v. Director, Federal Emergency Management Agency,* 759 F.2d 500 (5th Cir.1985).

7

"[W]here, as here, motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (7th Cir. 1989).

A Rule 12(f) motion can be granted when a defense is insufficient as a matter of law. *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). Affirmative defenses may be struck if they represent "nothing but bare bones conclusory allegations." *Heller Financial, Inc. supra*. A defendant cannot permissibly omit a "short and plain statement of facts" or fail "totally to allege the necessary elements of the alleged claims." *Id.*

"The Court may strike from any pleading matters which are immaterial and impertinent." *Stipe v. TREGRE*, Civil Action No. 15-2515 (E.D. La. Aug. 19, 2015). The Court may strike from any pleading matters which are scandalous. Fed. R. Civ. P. 12(f). "[S]candalous matter is that which improperly casts a derogatory light on someone, most typically on a party to the action." *Marceaux v. Lafayette Consol. Gov't*, No. 12-CV-01532, 2012 WL 5197667, at *1 (W.D. La. Oct. 18, 2012); *Stipe supra*; *IN RE PIONEER HEALTH SERVICES, INC.*, No. 16-01119-NPO (Bankr. S.D. Miss. Oct. 2, 2018). The purpose of striking such matter "is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." *Stipe, supra* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2015)); *FOUNDERS INSURANCE COMPANY v. Hamilton*, Civil Action No. 5: 15-cv-00408-JMC (D.S.C. June 1, 2015); *JH v. Neustrom*, Civil Action No. 6: 15-CV-02525 (W.D. La. Dec. 14, 2016); *Lynch v. THE SOUTHAMPTON ANIMAL SHELTER FOUNDATION INC.*, No. 10-CV-2917 (ADS)(ETB) (E.D.N.Y. July 29, 2011).

"[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another" *Linda RS v. Richard D.*, 410 U.S. 614, 93 S. Ct. 1146, 35

8

L. Ed. 2D 536 (1973); *Ketyer v. 535 Members of the 110th Congress*, 277 F. App'x 825, 827 (10th Cir. 2008); *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Unsubstantiated allegations of criminal conduct, such as fraud, in a defense may be struck pursuant to Federal Rule of Civil Procedure 12(f) as "redundant, immaterial, impertinent, or scandalous matter." *Crosby v. Mittelstaedt*, Civil No. 1: 15-cv-155-HSO-JCG (S.D. Miss. Aug. 15, 2016); also *McNeil v. Post*, No. 15-CV-478-JHP-PJC (N.D. Okla. May 26, 2016); *Westfall v. Plummer*, No. 2: 10-cv-813 (S.D. Ohio Oct. 25, 2010). Criminal allegations in a civil complaint are immaterial and must be struck, McNeil, *supra* (finding "there is no legal basis for Plaintiff's criminal allegations to remain on the record" in ruling on a motion to strike). Likewise, "repugnant words" if "they are superfluous descriptions and not substantive elements of the cause of action [...] have no place in pleadings before the court." *Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613 (1st Cir. 1988). Superfluous historical allegations are a proper subject of a motion to strike.; *Healing v. Jones*, 174 F.Supp. 211, 220 (D.Ariz.1959) relied on by *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) *rev'd on other grounds*, 510 U.S. 517 (1994)).

The Fifth Circuit reviews a district court's ruling on a motion to strike for abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). "[I]t is well established that the action of striking a pleading should be sparingly used by the courts." *Augustus v. Bd. Of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962). Yet "a plaintiff desiring early resolution of an affirmative defense may seek to strike it under [Rule] 12(f)." *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660-61 (5th Cir. 2016) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1381 (3d. ed. 2004) (explaining that the "insufficient defense" language in Rule 12(f) had been read to allow a challenge to the legal sufficiency of an affirmative defense)). "Striking an affirmative defense is warranted if it cannot, as a matter of law, succeed under any circumstance." *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013).

When addressing affirmative defenses. the Fifth Circuit has found "[a] defendant must plead

9

with `enough specificity or factual particularity to give the plaintiff "fair notice" of the defense that is being advanced.'" (quoting *Rogers v. McDorman,* 521 F.3d 381, 385-86 (5th Cir. 2008))" *LSREF2 Baron, L.L.C. v. Tauch,* 751 F.3d 394, 398 (5th Cir. 2014). In addition, although undecided at the appellate level, many district courts have found that the Twombly-Iqbal pleading standard applies to affirmative defenses; *Barnes v. NCC BUSINESS SERVICES, INC.*, Civil No. PJM18-1473 (D. Md. Oct. 31, 2018), including courts in the Fifth & Eleventh Circuits: *U.S. v. Brink,* 2011 WL 835828, *2-3 (S.D.Tex. 2011); *Vargas v. HWC GENERAL MAINTENANCE, LLC.*, Civil Action No. H-11-875 (S.D. Tex. Mar. 20, 2012); *Elec. Commc'n Techs., LLC v. Clever Athletics Co., LLC,* No. 9:16-CV-81466-WPD, 2016 WL 7409710, at *1 (S.D. Fla. Dec. 19, 2016).

> [A] a defendant must avoid pleading shotgun affirmative defenses, viz., "affirmative defenses [that] address[] the complaint as a whole, as if each count was like every other count." Byrne v. Nezhat, 261 F.3d 1075, 1129 (11th Cir. 2001), abrogated on other grounds as recognized by, Nurse v. Sheraton Atlanta Hotel, 618 F. App'x 987, 990 (11th Cir. 2015); see also Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1127 (11th Cir. 2014). Rather, each defense must address a specific count or counts in the complaint or clearly indicate that (and aver how) the defense applies to all claims. See Byrne, 261 F.3d at 1129; see also Lee v. Habashy, No. 6:09-cv-671-Orl-28GJK, 2009 WL 3490858, at *4 (M.D. Fla. Oct. 27, 2009). District courts have a sua sponte obligation to identify shotgun affirmative defenses and strike them, with leave to replead. See Paylor, 748 F.3d at 1127; Morrison v. Executive Aircraft Refinishing, Inc., 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005).

*Harris v. RAMBOSK*, No. 2: 18-cv-17-FtM-29MRM (M.D. Fla. July 23, 2018); also *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117 (11th Cir. 2014) (condemning shotgun pleading, including shotgun affirmative defenses)

So-called "shotgun" affirmative defenses must be struck. A plaintiff "need[s] to have fair notice of the defenses [defendant] is asserting, and to which particular causes of action [defendant] is claiming each particular defense is meant to apply." *David v. SIGNAL INTERNATIONAL, LLC*, Civil Action No. 08-1220 (E.D. La. May 20, 2013).

"The 'unclean' hands doctrine is an affirmative defense to equitable relief," which "requires that the party seeking equitable relief come into court with clean hands." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, No. 3:10-CV-1629-L, 2016 WL 1170829, at *24 (N.D. Tex. Mar. 25, 2016) (citation

10

omitted). A party must expressly present and conclusively prove each essential element of an affirmative defense. "To invoke the doctrine, a defendant must show that [it] was injured by the plaintiff's improper acts." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, No. 3:10-CV-1629-L, 2016 WL 1170829, at *24 (N.D. Tex. Mar. 25, 2016) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999)). A mere "assert[ion] that Plaintiff participated in illegal activity, and is therefore barred from relief," is insufficient. *YOSEMITE AUTO (SHANGHAI) CO., LTD. v. JRS METALS, INC.*, Civil Action No. 4: 15-CV-1641 (S.D. Tex. Aug. 23, 2016). Also: *RBS Citizens, N.A. v. Sanyou Imp., Inc.*, No. 11 C 1820, 2011 WL 2712744, at *4 (N.D. Ill. July 13, 2011) ("The doctrine of unclean hands applies if a party seeking equitable relief is guilty of misconduct, fraud, or bad faith *toward the party* against whom relief is sought and *the misconduct is connected to the transaction at issue in the litigation*. Significantly, the doctrine *only* applies where the plaintiff seeks equitable relief." (internal citation omitted; emphasis added)); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 189 P.3d 656, 662 (2008); also: *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979).

Finally, in the Fifth Circuit, an unclean hands defense does not apply in copyright cases; Michell Bros. *supra* ("Because the private suit of the plaintiff in a copyright infringement action furthers the congressional goal of promoting creativity, the courts should not concern themselves with the moral worth of the plaintiff." "[A]n equitable doctrine should not be applied in a way that will frustrate the purpose of a federal statute.").

> A laches defense cannot be asserted by a party with unclean hands because it is equitable. *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir.2008). "A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Id.*

Abraham v. Alpha Chi Omega, 708 F.3d 614 (5th Cir. 2013).

Also: Hermès Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir.2000):
> It is well established that "laches is not a defense against injunctive relief when the defendant

11

intended the infringement." *Harlequin Enters. Ltd. v. Gulf & W. Corp.,* 644 F.2d 946, 950 (2d Cir.1981); *see also Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 75 (2d Cir.1999)(quoting *Harlequin*). This good-faith component of the laches doctrine is part of the fundamental principle that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Thus, the appellees' intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities . . .

Courts may apply "the like doctrine in the case of copyright." Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942). These is no mention of "fair use" in these cases—solely "intentional" infringement.

*De minimis* use is questionable as an affirmative defense. It is not truly one. "Chapterhouse concedes that affirmative defenses 5—that any copying was only *de minimis*—and 6—that Chapterhouse independently created its products—are not actually affirmative defenses at all, but rather involve the flip side of elements that GW must establish to prevail on its copyright claims." *GAMES WORKSHOP LIMITED v. CHAPTERHOUSE STUDIOS, LLC,* No. 10 C 8103 (N.D. Ill. Apr. 1, 2013). "[D]e minimis copying is best viewed not as a separate defense to copyright infringement but rather as a statement regarding the strength of the plaintiff's proof of substantial similarity." *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC,* 560 F.3d 53, 59 (1st Cir.2009) (citation omitted) (internal quotation marks omitted)." *Greene v. Ablon,* 794 F.3d 133 (1st Cir. 2015).

Leary will rely on the above law in discussing Handshoe's defenses below.

### Handshoe's Defense

The current claims by Leary against Handshoe include one instance of misrepresentation under 17 USC Section 512(f) in a counter notification submitted to Amazon Web Services under penalty of perjury, malicious prosecution in this case, and multiple instances of copyright infringement involving four photographs to which Leary owns the United States rights.

In paragraph 5 of his defense, Handshoe makes an immaterial allegation about an allegedly

12

criminal bribery scheme involving Aaron Broussard from 2010. This allegation is totally immaterial to any defense regarding any of Leary's counterclaims. Handshoe cannot succeed in legal terms based on making criminal allegations regarding third parties, and the implication Leary was involved in criminal activity is prejudicial, derogatory, scandalous, and repugnant; these are also superfluous historical allegations that have no legal materiality to Handshoe's defense. McNeil v. Post, *supra;* Stipe, *supra;* Crosby v. Mittelstaedt, *supra;* Healing v. Jones, *supra.*

    Paragraph 10 should be struck for the same reasons as paragraph 5; they serve no legal purpose in Handshoe's defense.

    Paragraph 16 contains immaterial statements that do not refer to Leary's allegations and provide no legal basis for a defense.

    Paragraph 20 relates directly to counts of copyright infringement. Handshoe's blanket denial is then contradicted in the remainder of the paragraph; it does not meet the requirements of Rule 8.

    Paragraph 23 properly belongs in an affirmative defense statement and also contains immaterial statements. The timing of an assignment to Leary "over 2 years after the original publications" has no legal substance as a defesne. It is confusing and will waste time and resources to refute at trial. It should be struck. Assignment of United States rights to copyrights is commonplace and legal; *Parfums Givenchy v. C & C BEAUTY SALES*, 832 F. Supp. 1378 (C.D. Cal. 1993); *Midway Mfg. Co. v. Dirkschneider*, 543 F. Supp. 466 (D. Neb. 1981); *Robert Stigwood Group Limited v. Sperber*, 332 F. Supp. 1206, 171 U.S.P.Q. 684 (S.D.N.Y. 1971).

    Paragraph 24 should be struck for the same reasons as paragraphs 5 and 10. Handshoe accuses Leary of perjury, a crime, which is immaterial and scandalous, and will prejudice Leary.

    Paragraph 29 refers to "common law partners" in the context of third parties being (or not being) law partners, i.e. in a law firm. It has no legal basis and is immaterial to Leary's remaining causes of action. The phrase "common law partners" confuses issues and has no legal basis.

13

Paragraph 35 & 36 contain immaterial statements regarding the purported basis for removal of other cases to federal court. These sentences should be struck.

Paragraph 43 & 44 are prolix and contain immaterial statements.

Paragraphs 55 & 56 are prolix and contain statements immaterial to a defense against any of Leary's extant causes of action.

Paragraph 72 makes immaterial allegations that have no legal relation to Handshoe's defenses against Leary's causes of action. In addition, Hancock County Circuit Court in ruling on Handshoe objections has already decided that Handshoe submitted to the jurisdiction of Nova Scotia Supreme Court, Handshoe did not appeal that decision, and this issue is *res judicata*. It should not have to be re-litigated here.

Paragraph 74 is vague to the extreme, not indicating what specific works Handshoe is referring to. In addition, Handshoe's allegations have no legal basis and must be struck. A creative work does not require registration for copyright to exist; it exists as soon as the work is created. *Handshoe v. Abel*, Civil Action No. 1: 14-CV-159-KS-MTP (S.D. Miss. Dec. 16, 2015). Under the law, Fair Use is not "ratified" by any alleged failure of third parties to sue Handshoe. "It is hardly incumbent on copyright owners, however, to challenge each and every actionable infringement." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 188 L. Ed. 2d 979, 572 U.S. (2014). There is no legal basis for this claim and it is immaterial and potentially prejudicial.

### *The Affiramtive Defenses*

The First Affirmative Defense should be struck as Handshoe has already filed a Rule 12(b)(6) motion in this case, which has been decided by this Court, and the time for now filing another 12(b)(6) motion is passed. It names a legal theory without indicating how it is connected to the case at hand.

The Second Affirmative defense fails as a matter of law. This Court has already determined that continuing infringement is actionable, and these alleged infringements in four photographs occurred

14

after the decision of Nova Scotia Supreme Court in 2014. See also *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 188 L. Ed. 2d 979, 572 U.S. (2014). In addition, laches is apparently unavailable as an affirmative defense to copyright infringement; "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id*, addressing a copyright infringement action. Even if it were, Handshoe admits to *intentionally* infringing copyright, and laches is thus unavailable to him as an equitable defense; *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 110 (2d Cir. 2000); *Abraham v. Alpha Chi Omega*, 708 F.3d 614 (5th Cir. 2013).

The Third Defense does not specify which works are involved or which acts of alleged infringement at what time. In addition, the defense refers to statutes of limitations, however the *Copyright Act* controls all claims and defenses related to copyright infringement, including the statute of limitations of three years. This defense is thus confusing and has no legal basis to the extent that it claims other statues govern here, which assertion has no legal basis.

The Fourth Defense lack necessary specificity; it is a shotgun affirmative defense that Handshoe seeks to apply to all of Leary's causes of action without any required specificity. This will waste tremendous time and resources to litigate. It does not state to which causes of action it applies. Unclean hands is also not available as the *Copyright Act* preempts any equitable defenses such as unclean hands. It thus appears unclean hands is unavailable in copyright cases in this Circuit; *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852 (5th Cir. 1979). Even if it were available, Handshoe's bare bones affirmative defense fails to state that he was injured by any of Leary's allegedly improper acts or to state facts showing how these alleged acts relate to the copyright infringement claims made here. Superfluous unsubstantiated historical allegations of involvement in a bribery scheme, "libel tourism," or perjury do not relate to copyright infringement.

The Fifth Defense lack specificity and does not provide notice; it is a shotgun pleading. Fair Use is a statutory affirmative defense to a claim of copyright infringement. *Campbell v. Acuff-Rose*

15

*Music, Inc.,* 510 U.S. 569, 590, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). The statute lists several fair uses, including "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research," although this list is not exclusive. In determining whether a challenged use constitutes fair use, the Court considers several factors, including:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107; *Campbell,* 510 U.S. at 576-77, 114 S.Ct. 1164.

Handshoe does not state which fair use defenses he will apply to which instances of infringement (i.e. copying, distribution, *etc.*) and involving which photographs; he also does not specify why any specific use was fair. It must be struck.

The Sixth Defense must be struck as well. Assuming that copyright misuse is a cognizable defense to infringement and that it occurs when a copyright owner extends the scope of his limited copyright monopoly either in violation of the antitrust laws or in violation of the public policy embodied in the copyright grant, Handshoe's pleading lacks any facts that would support such a defense. Even the most generous reading of the pleadings does not suggest any conduct by Leary, let alone anticompetitive conduct, that would indicate an attempt to extend the scope of his copyright beyond the limited monopoly granted to him by copyright. Thus, there is no question of fact or law that might allow a copyright misuse defense to succeed, and the defense is therefore insufficient as a matter of law.

The seventh defense is vague and lacks required specificity. For example, "copyright estoppel" with regards to which infringement claims? In addition, estoppel is a defense to copyright infringement

where:

> the party to be estopped had knowledge of defendant's infringing conduct and either intended that his own conduct be relied upon or acted so that the party asserting the estoppel has a right to believe it was so intended. Additionally, the defendant must be ignorant of the true facts and must rely on plaintiff's conduct to his detriment.

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531, 535 (S.D.N.Y.1977); also *Carson v. Dynegy, Inc.*, 344 F.3d 446 (5th Cir. 2003).

Thus, it is an essential element of estoppel "that the party who invokes it shall have acted to his detriment in reliance upon what the other party had done." *Helvering v. Schine Chain Theaters*, 121 F.2d 948, 950 (2d Cir.1941).

Here, Defendants assert that "Leary's claims are barred by [...] collateral estoppel and copyright estoppel." The pleadings, however, are void of any facts supporting a defense of estoppel. There is no indication that Handshoe relied to his detriment on any conduct by Leary. Thus, there is no question of fact or law that might allow an estoppel defense to succeed and the defense is therefore insufficient as a matter of law. In addition, this case started with Handshoe's complaint under 17 U.S.C. Section 512(f) regarding multiple copyright infringement notices sent to his web hosts, and Handshoe's complaint references the decision of Nova Scotia Supreme Court finding him liable for copyright infringement. He argues this decision is *res judicata*. *Prima facie*, Leary did not intend for Handshoe to infringe copyright in these works and never sought to allow Handshoe to rely on the false presumption that he could violate copyright. This defense must be struck.

The eighth affirmative defense is a shotgun pleading. In addition "[a]bandonment can only be shown by proving the copyright proprietor *intended* to surrender the rights in a work he so deliberately perfected." *Imperial Homes Corporation v. Lamont*, 458 F.2d 895 (5th Cir. 1972) (emphasis added). "[A]bandonment of a right must be manifested by some *overt act* indicating an intention to abandon that right. *See Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir.1960)." *Micro Star*

17

v. *Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (emphasis added). The pleadings, however, lack any facts supporting an abandonment defense. Nothing in the pleadings indicates that anyone made any overt acts or made any representations (written, oral, or through conduct) about intellectual property rights to Defendant or others; that Leary or his predecessors manifested any desire to not protect their rights; or that Defendant suffered any prejudice as a result of any conduct by Leary or his predecessors. This case started based on notices of copyright infringement sent by multiple parties including the National Geographic Society, Leary, and Ashoka to Handshoe's web hosts concerning alleged infringement on Slabbed. Thus, there is no question of fact or law that might allow an abandonment defense to succeed, and the defense is therefore insufficient as a matter of law.

The Ninth Affirmative Defense is insufficient on its face because it makes bare-bones conclusory allegations, simply naming legal theories without indicating how they are connected to the case at hand. Defendant's ninth affirmative defenses is no more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6). It is also duplicative of the first affirmative defense, and thus redundant.

The Tenth Affirmative Defense is overly vague and is a shotgun pleading. In addition, while good faith is an affirmative defense which must be pleaded by the defendants in a 42 U.S.C. § 1983 action, this is not a § 1983 case. *See e.g., Gomez v. Toledo,* 446 U.S. 635, 639-40, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (holding that defendants must plead good faith as an affirmative defense in a § 1983 action); *accord Chavis v. Rowe,* 643 F.2d 1281, 1288 (7th Cir.1981); *accord Pape v. Lerman,* No. 73 C 380, 1982 WL 228, at *9 (W.D.Wis. Feb.17, 1982). Leary can find no authority supporting defendant's assertion that good faith is an appropriate defense in this case.

The Eleventh Affirmative Defense is a shotgun pleading. In addition lack of actual damages is not a complete defense to liability for all of Leary's causes of action.

The Fifteenth Affirmative Defense is overly vague and violates Rule 8.

18

v. *Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (emphasis added). The pleadings, however, lack any facts supporting an abandonment defense. Nothing in the pleadings indicates that anyone made any overt acts or made any representations (written, oral, or through conduct) about intellectual property rights to Defendant or others; that Leary or his predecessors manifested any desire to not protect their rights; or that Defendant suffered any prejudice as a result of any conduct by Leary or his predecessors. This case started based on notices of copyright infringement sent by multiple parties including the National Geographic Society, Leary, and Ashoka to Handshoe's web hosts concerning alleged infringement on Slabbed. Thus, there is no question of fact or law that might allow an abandonment defense to succeed, and the defense is therefore insufficient as a matter of law.

The Ninth Affirmative Defense is insufficient on its face because it makes bare-bones conclusory allegations, simply naming legal theories without indicating how they are connected to the case at hand. Defendant's ninth affirmative defenses is no more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6). It is also duplicative of the first affirmative defense, and thus redundant.

The Tenth Affirmative Defense is overly vague and is a shotgun pleading. In addition, while good faith is an affirmative defense which must be pleaded by the defendants in a 42 U.S.C. § 1983 action, this is not a § 1983 case. *See e.g., Gomez v. Toledo,* 446 U.S. 635, 639-40, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (holding that defendants must plead good faith as an affirmative defense in a § 1983 action); *accord Chavis v. Rowe,* 643 F.2d 1281, 1288 (7th Cir.1981); *accord Pape v. Lerman,* No. 73 C 380, 1982 WL 228, at *9 (W.D.Wis. Feb.17, 1982). Leary can find no authority supporting defendant's assertion that good faith is an appropriate defense in this case.

The Eleventh Affirmative Defense is a shotgun pleading. In addition lack of actual damages is not a complete defense to liability for all of Leary's causes of action.

The Fifteenth Affirmative Defense is overly vague and violates Rule 8.

v. *Formgen Inc.*, 154 F.3d 1107 (9th Cir. 1998) (emphasis added). The pleadings, however, lack any facts supporting an abandonment defense. Nothing in the pleadings indicates that anyone made any overt acts or made any representations (written, oral, or through conduct) about intellectual property rights to Defendant or others; that Leary or his predecessors manifested any desire to not protect their rights; or that Defendant suffered any prejudice as a result of any conduct by Leary or his predecessors. This case started based on notices of copyright infringement sent by multiple parties including the National Geographic Society, Leary, and Ashoka to Handshoe's web hosts concerning alleged infringement on Slabbed. Thus, there is no question of fact or law that might allow an abandonment defense to succeed, and the defense is therefore insufficient as a matter of law.

The Ninth Affirmative Defense is insufficient on its face because it makes bare-bones conclusory allegations, simply naming legal theories without indicating how they are connected to the case at hand. Defendant's ninth affirmative defenses is no more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6). It is also duplicative of the first affirmative defense, and thus redundant.

The Tenth Affirmative Defense is overly vague and is a shotgun pleading. In addition, while good faith is an affirmative defense which must be pleaded by the defendants in a 42 U.S.C. § 1983 action, this is not a § 1983 case. *See e.g., Gomez v. Toledo,* 446 U.S. 635, 639-40, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (holding that defendants must plead good faith as an affirmative defense in a § 1983 action); *accord Chavis v. Rowe,* 643 F.2d 1281, 1288 (7th Cir.1981); *accord Pape v. Lerman,* No. 73 C 380, 1982 WL 228, at *9 (W.D.Wis. Feb.17, 1982). Leary can find no authority supporting defendant's assertion that good faith is an appropriate defense in this case.

The Eleventh Affirmative Defense is a shotgun pleading. In addition lack of actual damages is not a complete defense to liability for all of Leary's causes of action.

The Fifteenth Affirmative Defense is overly vague and violates Rule 8.

The Sixteenth Affirmative Defense is overly vague and non-specific. It does not specify to which cases of infringement or which works it applies. In addition, apparently *de minimis* use is not clearly an affirmative defense or is subsumed under Fair Use, which makes this defense redundant; *Faulkner Literary Rights, LLC v. Sony Pictures Classics*, 953 F. Supp. 2d 701 (N.D. Miss. 2013); *GAMES WORKSHOP LIMITED v. CHAPTERHOUSE STUDIOS, LLC*, No. 10 C 8103 (N.D. Ill. Apr. 1, 2013); *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 59 (1st Cir.2009); *Greene v. Ablon*, 794 F.3d 133 (1st Cir. 2015).

For the above reasons, Dr. Leary respectfully requests the Court strike the above-indicated paragraphs of Mr. Handshoe's defense pleadings.

RESPECTFULLY SUBMITTED, this the 17th day of DECEMBER, 2018.

CHARLES LEARY, DEFENDANT
appearing *pro se*

308 5th Ave E
Vancouver, BC V5T 1H4
Canada

802-440-0213
foodvacation@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that, on Dec 17, 2018, I caused a true and correct copy of the above and foregoing to be filed utilizing the Court's CM/ECF electronic document filing system, which caused notice of such filing to be delivered to all counsel of record and parties requesting notice, and by United States First Class Mail, postage prepaid, to the following non-ECF participants having appeared in this action:

[none]

_____
Charles L. Leary

20