**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

DEC 28 2018

ARTHUR JOHNSTON
BY_____ DEPUTY

DOUGLAS HANDSHOE

v.                                          CIVIL ACTION NO. 1:15cv382-HSO-JCG

VAUGHN PERRET, CHARLES LEARY &
DANIEL ABEL, D/B/A/ TROUT POINT
LODGE LTD OF NOVA SCOTIA & IN
THEIR INDIVIIDUAL CAPACITIES
PROGRESS MEDIA GROUP LIMITED,
MARILYN SMULDERS, & ASHOKA

**MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO
COUNTER-CLAIMANT LEARY'S MOTION TO STIKE PLEADINGS
(ECF# 311)**

This Memorandum in Support of Response in Opposition to Leary's Motion
to Strike Pleadings is respectfully submitted by Plaintiff / Counter-defendant
Douglas Handshoe.

Leary's Motion to Strike has not been timely made and for that reason alone
it should be denied. Additionally and Alternatively, the Handshoe Answer and
Defenses give Leary fair notice of the defenses being advanced and thus should not
be struck.

**Law and Argument**

**The Leary Motion to Strike is not timely**

Fed. Rule of Civ. Proc. 12(f)(2) requires that a Motion to Strike under that
rule be made, "on motion made by a party either before responding to the pleading

1

or, if a response is not allowed, within 21 days after being served with the pleading." Fed. Rule of Civ. Proc. 5(b)(2)(C) holds that a pleading is properly served by, "mailing it to the person's last known address—in which event service is complete upon mailing". Mr. Leary has opted for service by mail in this civil action.

Handshoe's Answer and Defenses was timely filed with the Court on November 9, 2018. On December 3, 2018 Leary's Motion for Sanctions (for not receiving the Answer) arrived at the Courthouse by mail and was entered into the record by the Clerk's office. (*See* ECF #302 and 303, since denied by the Court via text only order dated December 6, 2018).  Postal tracking submitted by Leary to the Court via email on December 4, 2018 clearly shows Handshoe mailed Leary his copy of the Answer and Defenses on the same date it was filed, November 9, 2018. Leary evidently did not receive the mailing until December 3, 2018 by which time he had already mailed his Motion for Sanctions to the Court. In his Brief in Support of his Motion for Sanctions Leary admitted that, "Dr. Leary knows a defense was filed with the Court because Dr. Leary received notice from the Court of the filing at his address of record on November 20, 2018 (see attached Exhibit "A")." (*See* ECF 303, Page 1).

While Leary by his own admission knew a defense was filed, he took no steps to obtain a copy, either from Handshoe or via PACER, which he has admitted

to using in the past to obtain case filings, in favor of waiting until December 3 to file a Motion for Sanctions. In deciding whether to allow this out of time Motion to Strike, Handshoe respectfully asks the Court to consider that he has proactively and routinely emailed Leary copies of pleadings, despite such not being required, in order to help mitigate the problems with sheer distance involved and time. Most recently for example, on December 13, 2018, Handshoe emailed ECF Numbers 306 and 307 to Mr. Leary. On December 20, 2018, after waiting a few hours to ascertain whether the Court would be emailing the orders it issued that day to Leary, Handshoe again proactively emailed both orders to Mr. Leary later on December 20, 2018 so that he would promptly be aware of their contents.

Once Mr. Leary became aware that Defenses were filed on November 20, 2018, all he needed do was contact Handshoe who would have happily shared the electronic version of the filings with him. Alternatively Leary could have obtained the pleadings from PACER as he has previously admitted to doing. Instead Leary sat on his hands for close to two more weeks so he could ambush Handshoe and the Court with another frivolous Motion for Sanctions that served only to waste the Court's and Handshoe's valuable time. This Court should not reward Mr. Leary's dilatory tactics by allowing him to file the Motion to Strike out of time.[1]

---

[1] Handshoe opines, based upon the content of Leary's Motion to Strike that to the extent it contains conclusions of law, these arguments would be better advanced in a Motion for Summary Judgment.

**The Handshoe Answer and Defenses Meets the Fair Notice Standard**

The Fifth Circuit interpreted Rule 8(c) in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th. Cir. 1999) as establishing a "fair notice" pleading standard, a standard that at the time meant "[a]n affirmative defense is subject to the same pleading requirements as is the complaint." However, in 2007 and 2009, the Supreme Court altered the landscape of complaint pleading standards in *Twombly* and *Iqbal*, respectively.[2] Leary now invites this Court to apply those heightened pleading standards to Handshoe's affirmative defenses.

The Fifth Circuit has revisited the fair notice standard several times since *Iqbal/Twombly*, on each occasion using the standard to stand for the policy that "a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time."[3] This narrow use of the "fair notice" standard does not directly clarify pleading standards for affirmative defenses, and as a result has engendered inconsistent district court decisions in the Fifth Circuit. While most courts in the Fifth Circuit continue to apply the fair notice standard to affirmative defenses, a few apply the heightened *Iqbal/Twombly* standards.

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
[3] *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009). *See also, e.g., Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 398 (5th Cir. 2010); *Cook v. Admiral Ins. Co.*, 438 F. App'x 313, 319 (5th Cir. 2011); *ARV Offshore Co., Ltd. v. Con-Dive, L.L.C.*, 514 F. App'x 524, 527 (5th Cir. 2013); *Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C.*, 2013 WL 5701065 (5th Cir. 2013).

The reason the majority of the Court in the Fifth Circuit use the fair notice

standard is the multiple differences between Rules 8(a) and 8(c) justify different

pleading standards for complaints and affirmative defenses, as another Court in the

Fifth Circuit has summarized:

> "(1) textual differences between Rule 8(a), which requires that a plaintiff
> asserting a claim show entitlement to relief and Rule 8(c), which requires
> only that a defendant state any defenses; (2) a diminished concern that
> plaintiffs receive  notice in light of their ability to obtain more information
> during discovery; (3) the absence of a concern that the defense is unlocking
> the doors of discovery; (4) the limited discovery costs, in relation to costs
> imposed on a defendant, since it is unlikely that either side will pursue
> discovery on frivolous defenses; (5) the unfairness of holding the defendant
> to the same pleading standard as the plaintiff, when the defendant has only a
> limited time to respond after service of the complaint, while plaintiff has
> until the expiration of the statute of limitations; (6) the low likelihood that
> motions to strike affirmative defenses would expedite the litigation, given
> that leave to amend is routinely granted; the risk that a defendant will waive
> a defense at trial by failing to plead it at the early stage of the litigation; (8)
> the lack of detail in Form 30, which demonstrates the appropriate pleading
> of an affirmative defense; and (9) the fact that a heightened pleading
> requirement would produce more motions to strike, which are disfavored."[4]

Moreover, the Fifth Circuit has said that Rule 8(c) primarily ensures the

defendant cannot "lie behind a log" to ambush the plaintiff with an unexpected

defense,[5] a policy which does not support heightened pleading standards. For these

---

[4] *Bayer CropScience AG v. Dow AgroSciences LLC*, CIV. 10-1045 RMB/JS, 2011 WL 6934557 (D. Del. Dec. 30, 2011). See also *Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 775 (S.D. Tex. 2013)
[5] *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)

reasons, this Court should apply the fair notice standard to a Rule 12(f) Motion to Strike. Under the fair notice standard, "[a] defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."[6] Handshoe respectfully submits his Answer and Affirmative Defenses exceed that standard, especially when the Court considers the lack of detail in Leary's Counter Claims and his mischaracterizations of this Court's previous orders.

For example Leary posits that Handshoe's second affirmative defense is due to be struck because it, "fails as a matter of law. This Court has already determined that continuing infringement is actionable, and these alleged infringements in four photographs occurred after the decision of Nova Scotia Supreme Court in 2014."[7] Based upon Handshoe's read of this Court order dated October 26, 2018 such could not be further from the truth. Handshoe's Second Defense, *Res Judicata/Laches* was addressed by the Court in a footnote in the October 26, 2018 order which stated[8], "Handshoe also argues that issue preclusion (collateral estoppel) and claim preclusion (res judicata) bar Leary from pursuing his copyright claims because Leary previously brought such claims in Canada. See Mem. [245] at 5. The Court will not address these defenses at this time, as such arguments

---

[6] *Id.*
[7] *See* Leary brief at ECF #312, Page 14
[8] *See* ECF #293, Page 29

generally cannot be brought in a motion to dismiss and must be pleaded as affirmative defenses. See, e.g., *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 n.8 (5th Cir. 2016); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005)." Leary, ignoring this language would have the Court now strike the Second Affirmative Defense (*Res Judicata/Laches*) along with the Seventh Affirmative Defense (*Estoppel*) based upon this mischaracterization of the Court's previous order.

Similarly, Leary asserts that the "Third Defense [should be struck because it] does not specify which works are involved or which acts of alleged infringement at what time", details Leary's own Counterclaims lack as this Court noted in its's Opinion and Order dated October 26, 2018 (ECF #293) when it wrote, "According to Leary's pleadings, Handshoe created illegal copies of the four photographs and caused them to be published on the Slabbed commercial website, **although he does not plead a specific date or dates of the alleged infringement**. Countercl. [233]" (Emphasis added)

Leary complains the Fourth Defense (Leary lacking Clean Hands) also lacks specificity. According to Leary's rendition of the facts that he claimed are relevant to, "fraud, violation of a bankruptcy stay, **malicious prosecution, copyright infringement**, harassment, and abuse of process:"[9] in this case, dating back to

---

[9] *See* Leary's Amended Counterclaims at ECF #233, Page 8

2010 including that, "Handshoe acted in concert with third parties including Louisiana lawyers he had recently met, including a former Jefferson Parish councilwoman who was at that time an assistant Jefferson Parish attorney. They worked to create a public social media campaign with targeted attacks on Aaron Broussard and his administration."[10] Leary further alleges that, "Techniques employed by Handshoe and others included "sock puppetry" or the use of multiple online aliases by one person to achieve a certain goal or outcome, including molding or changing public opinion and attempting to put purported public pressure on investigatory & prosecutorial agencies. This sock puppetry coincided in time and location with similar use of online aliases on public web sites, including nola.com, by persons related to the Broussard investigation."[11]

Leary has made Handshoe's credibility as a journalist central to his Counterclaims while he'd have this Court ignore his own actions. For instance in his Counterclaims Leary pleads at paragraph 25, "In May, 2011, after considering affidavit evidence and live testimony, Nova Scotia Supreme Court found evidence of an insider connection between anonymous persons publishing on the Slabbed blog and the Fox News affiliate in New Orleans. The Court ordered that the Slabbed web host, Automattic, Inc., provide identifying information regarding the

---

[10] *Id.* at Page 10
[11] *Id.*

8

anonymous publishers, who were some of the same sock puppets engaged in commentary on the Broussard scandal and the Trout Point Lodge conspiracy theory."[12]

Handshoe, however, has evidence in the form of Leary's own sworn affidavits that he absolutely knew the identity of the publisher of the Slabbed website at the time he swore to the Canadian Court that he did not know the identity of publisher of Slabbed, depriving Handshoe of his procedural due process to oppose Leary's Canadian Motion in the Louisiana Media defamation action, the fruits of which he used to invade the privacy of certain commenters to the Slabbed website. Leary's facts as recited to this Court are littered with the results of Leary's Fraud upon the Canadian Court and Handshoe yet Leary claims Handshoe's fourth defense as "a shotgun affirmative defense." All Leary need do is read his own counterclaims to understand why this defense is relevant to this matter, including the Copyright Infringement counts as Leary plead in his own counterclaims.

Related to the Fourth Defense, Leary seeks to strike Paragraph 16 of Handshoe's answer, dealing with the anonymous, threatening letter sent to Handshoe.[13] This letter stated in part, "The day soon comes that you will get your

---

[12] Id. at page 15
[13] See Handshoe Answer and Defenses at ECF #296, Page 5

rear end kicked in a court of law. Not from the outside, but from within your own rank and file. We have names and other data supplied to us, that was supplied to you. You poor person. 'Come Kitty-Kitty"? We are coming, Douglas K. Handshoe, CPA of Wiggins, MS. **Better yet we will drag you here to pay for your sins! How is NS**? Tell us about it creep."[14] (Emphasis added) With the benefit of hindsight it is clear that Leary, Perret and Abel had roles in the mailing of the threatening letter which literally brags about their tactic of depriving Handshoe and Slabbed New Media, LLC of procedural due process. Leary now attempts to pollute these proceedings with such fruits from the Canadian poisonous tree all while preventing Handshoe from defending himself.

Like Leary's arguments for striking the Third Defense, Leary claims Handshoe's Fifth Defense (Fair Use) lacks "specificity and does not provide notice". Like the Third Defense and as this Court previous found Leary himself did not plead the dates of the alleged infringement nor did he name the publications he alleged contained the alleged infringing material. Handshoe's Fifth Affirmative defense provides as much detail as the allegations to which he responds. It also clearly sets forth that it applies to every photo which Leary complains.

Like the Fourth Defense Leary seeks to strike the Sixth Defense (Copyright Misuse). Like the Fourth Defense Leary fails to see the significance of his

---

[14] NS is the postal code for Nova Scotia ,Canada

combining the torts of Defamation and Copyright Infringement in Canada while declining to seek enforcement of the second Canadian Defamation judgment in the United States.  However Leary's own deposition illustrates how the tort of defamation is integral to his complaints of Copyright infringement:[15]

> A. We were one of the top ten finalists in 23 the world selected from, I think, almost 700 24 applications from around the world by a panel of judges including a Nobel Prize winner. And you have taken that photograph and sullied it by placing it next to false criminal allegations in your conspiracy theory.

Leary should accept that his terrible reputation is largely the result of his own actions through time and not the result of a grand homophobic conspiracy against him and his gay associates. Handshoe, has steadfastly maintained his reporting as it related to Leary was absolutely factual, a finding of law Judge Guirola made in his opinion in *Trout Point v Handshoe* that was affirmed by the Fifth Circuit Court of Appeals that he best explained in a footnote in his opinion[16]:

> The record indicates that Vaughn and Perret lived in Louisiana prior to establishing their business in Nova Scotia. A New Orleans attorney, Daniel Abel, was (or is) a long-time business partner of Vaughn's and Perret's, and he is also a former law partner of Aaron Broussard's. The plaintiffs have admitted that they, or their company, helped manage Broussard's property in Nova Scotia, which is located very close to Trout Point Lodge. The record contains a letter to Leary and Perret from Roy D'Aquila, a New Orleans attorney connected to Broussard, that discusses the possibility of placing Mr. Broussard's property on an insurance policy held by Trout Point Lodge. (Pls.' Mot. Ex. 10 at 24, ECF No. 6-10). Moreover, the Court is aware that

---

[15] See Leary deposition at pages 73 and 74. (ECF #306-2, Bates Page Numbers 75 and 76)
[16] *See* Guirola Opinion and Order in *Trout Point et al v Handshoe*, Case 1:12-cv-00090, ECF# 35, Pages 15 and 16.

there is a civil action pending in the United States District Court for the Eastern District of Louisiana against Broussard and others in which it is alleged that Trout Point Lodge, Ltd. was one of many "co-conspirators" in a criminal scheme involving various public officials. See Concrete Busters of Louisiana, Inc. and Waste Remediation of Plaquemines, LLC v. Frederick R. Heebe, et al., No. 2:12cv2596-NJB-KWR (E.D. La.). It has also been alleged that another business of Vaughn's and Perret's, Cerro Coyote, SA, is another "co-conspirator." According to the record, Daniel Abel was also an owner of Cerro Coyote. None of this proves that the plaintiffs were involved in Broussard's criminal activities. **However, the plaintiffs have not proved that Handshoe's publications regarding their connection to Broussard are false, and under the defamation law of this country, they are required to do so**. (Emphasis Added)

Leary subsequently sued Handshoe again in Canada for Defamation and Copyright Infringement over both the earlier and later postings to Slabbed which illustrated in greater detail the links between Leary and Broussard's criminal activity as illustrated in Leary's own sworn affidavits, along with others that he submitted to the Canadian Court in his Canadian Defamation action against Louisiana Media Company. Combining the torts of Defamation and Infringement and alleging the publications were false as the support for the infringement action by necessity implicates the First Amendment, which is a very important public policy. As Judge Guirola found in Trout Point et al v Handshoe:

The SPEECH Act was passed in an attempt to counteract "libel tourism," or the practice of "circumventing First Amendment protections" by filing lawsuits in foreign jurisdictions that lack similar protections. See H.R. Rep. No. 111-154, at 2 (2009). Congress was concerned that such forum-shopping could have a chilling effect on free speech here in the United

States, and undermine the First Amendment protections provided by our Constitution.

Leary's theory in this case rests upon the Slabbed New Media publications being false and defamatory, a burden of proof he could not previously carry in the SPEECH Act case and which he cannot prove in this instant matter.[17]

It's settled that "copyright misuse" is an affirmative defense, which must be pled and proven by an accused infringer. Like patent misuse, the defense arises out of a copyright holder's attempts, whether successful or not, to unfairly claim rights broader than those granted by the copyright itself.

There is no element-by-element description of exactly what conduct constitutes copyright misuse; in this respect, it's like unjust enrichment, unclean hands, or other equitable doctrines that maintain vagueness as a virtue. Instead, just like patent misuse, it's broadly defined as using a copyright to secure an exclusive right or limited monopoly not granted by the copyright office, contrary to public policy.[18] The defense applies when a rights holder attempts to mislead or defraud an infringer by unfairly threatening infringement penalties that exaggerate or misstate the law[19], or by claiming copyright in a work that is at least partly in the

---

[17] Leary refused to litigate his second Defamation Judgment in the United States and the time period of which for enrolling in Mississippi has past thus he has conceded this issue as this Court has noted.

[18] *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990) See e.g., *DSC Communications Corp. v DGI Technologies, Inc.*, 81 F.3d 597 (5TH Cir. 1996); *Alcatel USA, Inc. v DGI technologies, Inc.*, 166 F.3d 772 (5th Cir. 1999)

[19] *Vogue Ring Creations, Inc. v. Hardman*, 410 F. Supp. 609, 616 (D.R.I. 1976)

public domain.[20] Handshoe posits that Leary using his copyright interests to further a foreign defamation action is contrary to the stated public policy of the United States  and constitutes Copyright Misuse thus rendering those copyrights as unenforceable in the United States.

Leary also wants this Court to strike Handshoe's Seventh Defense (Issue preclusion). If this Court were to take Leary's Counterclaims at paragraph 20 as factual, "At this same time in 2011 and 2012, Handshoe and Slabbed New Media, LLC began illegally downloading, copying, storing, and distributing copyrighted commercial photographs belonging to Trout Point Lodge, Vaughn Perret, and Charles Leary" then Leary had a duty to assert his Copyright Infringement torts in his First Canadian Defamation suit against Handshoe which he last amended in September, 2011.  Perhaps realizing his mistake Leary attempted to submit to the Canadian Court evidence of infringement at the damages hearing (the evidentiary book was an exhibit in the SPEECH Act case heard by Judge Guirola) the Canadian Court refused to hear those allegations as they were being levied without notice at a late stage in the litigation.  Photos covered in the time of the first Canadian defamation action and specifically complained of in that suit included a post with the Smulders photograph. Handshoe contends for that reason alone Leary is Estopped from asserting claims related to it.

---

[20] *F.E.L. Publ'ns, Ltd. v. Catholic Bishop of Chicago*, 214 U.S.P.Q. 409, 413 n.9 (7th Cir. 1982)

Additionally Copyright Estoppel is a form of equitable estoppel the defense of which applies when " (1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the infringer, (3) affirmative conduct by the right holder inducing the belief that it abandoned its claims against the alleged infringer, [later defined to include silence] and (4) detrimental reliance by the infringer."[21]  The facts of this case clearly show the plausibility of Handshoe's Seventh Defense. Such remains problematic to Leary however, because Handshoe will show that the factual assertions in Leary's paragraph 20 are false but even if this Court were to find otherwise he is still estopped from asserting the infringement claims.

Leary also asks this Court to strike his Eighth Defense (Abandonment). Again the facts of this case will show that the Smulder's photograph Leary now claims to own was abandoned by Smulders prior to the 2013 assignment to Leary. The photograph was published in September 2006 in a promotional story about the Trout Point Lodge, Leary, Perret and Abel contained in the publication Nova Scotia Open to the World, a promotional magazine which was offered both individually or by subscription, free of charge, to the public. Nova Scotia Open to the World was owned by Progress Media of Nova Scotia Canada, which is in default in this matter and is now out of business. Likewise Handshoe contends that the Crowell photo was abandoned by Trout Point when it was furnished without

---

[21] *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041-42 (Fed. Cir. 1992).

restriction for use in a copyrighted Toronto Star story about their legal fight with Handshoe.

Leary also seeks to strike the Ninth, Tenth, Eleventh, Fifteenth and Sixteenth affirmative defenses on the grounds they are either "vague" or are shotgun pleadings. Without specifically addressing the minutiae of Leary's arguments Handshoe disagrees and asserts these defenses also afford Leary fair notice and are firmly grounded in the law.

**Specific Paragraphs Leary asks this Court to Strike**

Leary asks the Court to strike Paragraph 5 from Handshoe's Answer and Defenses which presents two facts: 1. That Broussard resigned and 2. The subject matter of an interview he gave to Fox 8 literally less than 24 hours before he would resign. Leary would later unsuccessfully attempt to make Louisiana Media Company retract this interview between Broussard and Val Bracy, which did indeed touch upon Broussard's Nova Scotia business activities, in his Canadian defamation action against them. This paragraph is both factual and has basis in filings in the Broussard criminal prosecution, the posting about which form the heart of the civil action.

Leary seeks to strike paragraph 10, which is Handshoe's factual response to Leary's assertion of the reporting on Broussard being "fake news", creating a strawman that has no basis in the postings to the Slabbed New Media website.

Handshoe's paragraph 10 in his answer and Defenses accurately summarizes the postings about Leary, Perret and Abel's connection to Broussard and what the US Attorney would label a bribery scheme to the Slabbed New Media website and it forms the basis for the Fifth Defense, among others.

Similarly Leary mentions C&D notices being sent to Handshoe in his Counterclaims at paragraph 16 yet he wishes to preclude Handshoe from pleading the anonymous, threatening C&D he received from a party with a demonstrated knowledge of the Louisiana Media Defamation case, at a time very close to Leary's Motions in the Louisiana Media Canadian Defamation case seeking the identity of commenters to the Slabbed New Media website. Paragraph 16 is closely related to and supports both the Fourth and Sixth Affirmative Defenses.

Likewise Paragraph 20 in Leary's amended Counterclaims makes assertions against Handshoe which Handshoe counters as not true in his response in paragraph 20 of his Answer and Defenses, directly refuting them. Handshoe submits that his paragraph 20 is in no way contradictory. The same applies to Leary seeking to strike paragraph 23.  He alleges Slabbed and Handshoe, "These photographs appeared on the Slabbed blog as part of commercial publishing activities, in return for which the Slabbed enterprise received monies from outside of Mississippi." Handshoe's paragraph 23 in his answer and defenses denies the allegation flatly saying the news stories containing the photographs were never

"offered for sale or otherwise monetized". What Leary is really seeking here is to cover up the fact he has no damages. He has admitted in his deposition these photographs were never offered for sale and Handshoe has flatly denied ever making a penny off their display in public interest news stories.  Additionally paragraph 23 reinforces the fact that the factual assertions in Leary's paragraph 20 of his amended counterclaims is sheer fantasy.

Leary seeks to strike paragraph 24 maintaining that his practice of libel tourism is a somehow a crime tantamount to perjury when it in fact is a civil law concept which Leary should be well acquainted by now.

Leary seeks to strike paragraph 29 of Handshoe's Answer and Defenses, which contradict Leary's paragraph 29 of his Amended Counterclaims, which state, "In October, 2012, Handshoe and Slabbed sock puppets also began publishing the falsehood that Leary's former business partner, and Trout Point co-founder, Daniel Abel and Aaron Broussard were law partners. This false statement of facts was intended to falsely closely link the financial and business interests of Broussard with that of Trout Point Lodge and its founders."

As Judge Guirola noted in Trout Point et al v Handshoe as quoted above on page 11 of this Memorandum, " A New Orleans attorney, Daniel Abel, was (or is) a long-time business partner of Vaughn's and Perret's, and he is also a former law

partner of Aaron Broussard's". Leary simply has no basis in the law to seek to strike that which is self-evident.

Leary seeks to strike paragraphs 35, 36, 43,44, 55 and 56 as they contain what he couches as immaterial statements. With regard to paragraphs 35 and 36, while Leary has vented his spleen on the Handshoe v Broussard's remand to state court on numerous occasions in numerous forums. The fact remains Leary never had a basis to remove the matter from Circuit Court to begin with thus, even if the Court were to accept Leary's allegations as true, they are still devoid of probative value regarding Handshoe's conduct of that particular litigation. With regard to paragraphs 43 and 44 such is a part of the public court docket in Trout Point et al v Handshoe. That is also true of Paragraphs 55 and 56. With regard to paragraphs 43 & 44 Leary has already raised these matters to Judge Guirola, who rejected them. Leary should not be allowed to recycle them in this instant matter.

With regard to paragraph 74, Leary alleges these images were registered with the Canadian Copyright office at the time of initial publication to Slabbed which is false. Further, at the time of his "late January, 2016 takedown notice" the images in question had been on display on the Slabbed website since 2011. Further these photographs save were the subject of numerous third party takedown notices from US sources that were submitted well before Leary ever registered the photographs with the Canadian Copyright office, such takedown notices literally

19

dating to 2011. Handshoe contends this paragraph, like the others should not be struck.

Finally, Handshoe would note for the Court the amount of time it has taken to compile this opposition to what Handshoe contends is a frivolous motion by Leary, especially considering the high likelihood that Leary will not appear in Court as ordered to argue in support of his Motion to Strike.[22]

## Conclusion

Plaintiff respectfully requests this Court denies Mr. Leary's Motion to Strike for the reasons stated above or in the alternative should the Court choose to strike Handshoe's Answer and Affirmative Defenses he be allowed, as is customary, to amend them in the interest of justice.

Respectfully submitted this 28th day of December, 2018,

Plaintiff
Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com

---

[22] After writing that statement Plaintiff was notified via ECF that Leary has indeed asked the Court for permission to not appear in person as ordered.

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, hereby certify that on December 28, 2018 the foregoing was sent for electronically filing by me via the Clerk of the Court using the ECF system which sent notification to all counsel of record upon filing by the Clerk.

I, Douglas Handshoe, hereby certify that on December 28, 2018, I mailed the foregoing to Charles Leary at 308 5th Ave E, Vancouver, BC V5T 1H4 Canada with a courtesy copy to foodvacation@gmail.com.

Respectfully submitted this 28th day of December, 2018,

_____

Douglas Handshoe
Post Office Box 788
110 Hall Street
Wiggins, MS 39577
(601) 928-5380
earning04@gmail.com