*Exhibit "J"*

1

YAR 1 SC 110520
YAR 328248

## IN THE SUPREME COURT OF NOVA SCOTIA

BETWEEN:

TROUT POINT LODGE LIMITED

APPLICANT

– and –

LOUISIANA MEDIA COMPANY, LLC

RESPONDENT

_____

DECISION

_____

| | |
|---|---|
| HEARD BEFORE: | The Honourable Justice Pierre Léon Muise |
| COUNSEL: | Dr. Charles Leary Self-Represented as Agent and Officer of Trout Point Lodge Limited |
| PLACE: | Yarmouth JC1, Yarmouth, N.S. |
| DATE HEARD: | May 30, 2011 |

2

### INDEX
### TROUT POINT LODGE LIMITED V. LOUISIANA MEDIA LLC
### MAY 30, 2011

Decision by the Court .................................. 3

## DECISION BY THE COURT

1
2

3          **THE COURT:**    And Sheriff, you can open the

4     door to the courtroom as well, okay.  This is the

5     matter of **Trout Point Lodge Limited and Louisiana**

6     **Media Company, LLC.**  It is File Number YAR

7     328248.   There is a motion before the court by

8     Trout Point for an order requiring Automattic

9     Inc., "Automattic" spelled with two t's at the

10    end, to reveal the information regarding the

11    identity of some registered Wordpress.com users.

12    Automattic Inc. is a California corporation which

13    hosts a blogging website called Wordpress.com

14    Wordpress.com in turn hosts a blog named Slabbed

15    with the URL Slabbed.wordpress.com   Telemachus

16    and unslabbed are two registered users on

17    Slabbed.   Soft81_1 is the purported owner and

18    publisher of the blog.  As the entity in charge

19    of the blog, Soft81_1 controls what appears on

20    it.  All three maintain an anonymous identity.

21    Trout Point alleges that their blogs or postings

22    are *prima facie* defamatory and refers to the

4                  <u>DECISION BY THE COURT</u>

1    publications of Louisiana Media.  And they appear

2    to be closely connected with Louisiana Media.

3    Trout Point asks that I order Automattic Inc. to

4    produce information revealing the identity of

5    these anonymous entities on the basis that they

6    will either be added as defendants in the within

7    action or added as defendants in a separate

8    action and are material witnesses in the within

9    action.  Automattic has no part in what appears

10   in the blogs.  It only provides the service.

11        This motion is made pursuant to *Civil*

12   *Procedure Rule 14.12* which permits a judge to

13   order a third party to produce a relevant

14   document.  It is made within this action by Trout

15   Point against Louisiana Media.  It is not a pure

16   motion for production at a pre-commencement of

17   action stage as was the case in **AB** and **Bragg**

18   **Communications Inc.,** [2010] N.S.S.C. 215 and in

19   **Mosher and Coast Publishing Limited,** [2010]

20   N.S.S.C. 153.  However the test is — the same

21   test is applicable to determining whether

1    production of anonymous bloggers' identifying

2    information should be ordered so that it can be

3    added as parties to the within action. That is

4    the same test as in **Bragg** and **Mosher**.

5        In the case at hand there is also a question

6    of whether the requested information is relevant

7    to an issue to be determined in the existing

8    action against Louisiana Media. I will deal with

9    that first. 2009 *Civil Procedure Rule 14.01*

10    defines relevant and relevancy for the purposes

11    of production and disclosure as "having the same

12    meaning as a trial of an action or on the hearing

13    of an application." This trial relevance test

14    replaced the old semblance of relevance test.

15    The Chambers Judge must now assume, as best as he

16    or she can, the vantage point of a trial or an

17    application judge and apply general evidence law.

18    The determination is based on the pleadings and

19    the evidence known to the judge. However, there

20    should still be liberal disclosure of relevant

21    information and I refer to — in support of this I

6                           DECISION BY THE COURT

1       refer    to    **Brown**    and    **Cape    Breton    Regional**

2       **Municipality**, [2011] N.S.C.A. 32, at Paragraphs 8

3       to    13.    The    onus    is    on    the    plaintiffs    to

4       establish    that    the    information    they    seek    is

5       relevant.    Justice LeBlanc in **Murphy** and **Lawtons**

6       **Drug    Stores    Limited**,    [2010]    N.S.S.C.    289    at

7       Paragraph 16 cited with approval at Paragraph 3.3

8       from the *Law of Evidence, 5th Edition 2008*, David

9       Paciocco    and    Lee    Stuesser    which    included    the

10      following comments:

11

12                   "Evidence is relevant where it
13                   has some tendency as a matter
14                   of logic and human experience
15                   to make the proposition for
16                   which it is advanced more
17                   likely than that proposition
18                   would be in the absence of
19                   that evidence."
20

21          As the Supreme Court of Canada has said in

22      **R. v. Arp**, [1998] 3 S.C.R. 339:

23

24                   "To be logically relevant, an
25                   item of evidence does not have
26                   to firmly establish, on any
27                   standard, the truth or falsity

<u>DECISION BY THE COURT</u>                                    7

1    of the fact in issue.   The
2    evidence must simply tend to
3    increase or diminish the
4    possibility of the existence
5    of a fact in issue.   As a
6    consequence there is no
7    minimal probative value
8    required for evidence to be
9    relevant."
10

11   Trout Point's pleadings allege, among other

12   things, that Louisiana Media's reports and

13   broadcasts relating to the Aaron Broussard

14   investigation improperly included references to

15   Trout Point and photos of its lodge creating the

16   impression that Mr. Broussard was an owner of the

17   Trout Point Lodge and that Trout Point was

18   implicated in his alleged wrongdoings.   Louisiana

19   Media's amended Statement of Defence states, at

20   Paragraph 16:

21

22   "The Defendant states that as
23   to the totality of the
24   broadcast or broadcasts,
25   whether by way of television,
26   internet or otherwise,
27   containing the January 6, 2010
28   interview of Aaron Broussard,
29   it was clearly communicated to
30   and understood by its audience

8                    <u>DECISION BY THE COURT</u>

1          that the Broussard properties
2          were not the Plaintiff, Trout
3          Point Lodge Limited's but
4          rather were properties
5          connected to the Plaintiff
6          Trout Point Lodge Limited.
7
8     And at Paragraph 21:

9

10         "The Defendant denies that any
11         broadcast or broadcasts either
12         by way of television or
13         internet or otherwise made by
14         it with regard to Aaron
15         Broussard were understood by
16         their plain and ordinary
17         meaning or by way of innuendo
18         or otherwise to mean any of
19         the following with regards to
20         the Plaintiff Trout Point
21         Lodge Limited, the Plaintiff
22         Charles L. Leary and the
23         Plaintiff Vaughn J. Perret, or
24         any of them"
25

26    And I won't list all of them

27

28         d)   That the Plaintiffs or any
29         of them were involved in or
30         connected with or the *situs* of
31         any conspiracy involving
32         politicians and contractors;
33         g) That the Plaintiffs or any
34         of them were somehow involved
35         in illegal, criminal and/or
36         unethical activities including
37         money laundering, political

DECISION BY THE COURT                                          9

```
 1                    (inaudible  due  loud  noise..)
 2                    and kickbacks;
 3                    h)   That the Plaintiffs or any
 4                    of  them  were  involved  in  or
 5                    connected  with  any  kickback
 6                    schemes,   money   laundering,
 7                    misuse   of   public   monies,
 8                    fraud,     general    political
 9                    corruptions,         unsavoury
10                    characters and shady dealings;
11                    i)   That the Plaintiff, Trout
12                    Point Lodge Limited was owned
13                    by  Aaron  Broussard  and  was
14                    illicitly rented to government
15                    contractors    and    was    the
16                    subject   of   allegations   and
17                    investigations   including   by
18                    the    Louisiana    Metropolitan
19                    Crime    Commission    and    the
20                    United States Attorney.
21
22
23                    Louisiana Media owns and operates WWUE which
24          is  a  Fox  television  affiliate.   Charles  Leary's
25          affidavit  filed  May  12,  2011  in  support  of  this
26          motion    attaches    as    Exhibit    A    comments    and
27          publications  from  the  blog  Slabbedwordpress.com
28          In that exhibit unslabbed refers to Val Bracy who
29          was   the   reporter   in   an   investigative   report
30          broadcast  by  WWUE  Louisiana  Media  on  Fox  8  News
31          in  January  2010,  the  contents  of  which  Trout
32          Point  alleges  are  defamatory.   Unslabbed's  March
```

10                    DECISION BY THE COURT

1        8, 2010 posting states:

2

3                "(inaudible due to mumbling..)
4                Confirmed there was a new
5                interview by Bracy with
6                Theriault. (inaudible due to
7                mumbling..) refused to go on
8                camera, also FYI reliable
9                sources say Fox 8 was sued
10               recently by Trout Point Lodge.
11               Apparently they see having any
12               connection to Aaron Broussard
13               as a negative. Odd that since
14               Danny Abel et al, that would
15               be the Spain connection across
16               from the (inaudible due to
17               mumbling..), the Costa Rican
18               location, seemed to keen on
19               having the crème de la crème
20               of the political elite as
21               investors in and around the
22               prestigious
23               property/properties. Odd also
24               that a resort would object to
25               any publicity for their
26               business. Must be nice to be
27               so special and elite that only
28               certain people are okay to be
29               associated with their
30               endeavours."
31

32       I'll just skip the next paragraph.

33

34               "So we're back to why would
35               Trout Point suddenly lash out
36               at Val Bracy and Fox 8. After
37               suing the Times Picayune News

```
 1                    and    effectively    silencing
 2                    them, is this an attempt to do
 3                    the same to Fox 8?  Is Bracy
 4                    hitting too many nerves?  It
 5                    seems strange to have waited
 6                    so long to sue in Canada over
 7                    a story that is old news.  So
 8                    maybe they want some more
 9                    publicity for their joints.
10                    Hope they are ready for the
11                    depositions and requests for
12                    omissions coming their way.
13                    FYI Trout Point, if I were
14                    you, I would review Aaron's
15                    interviews and the Fox 8 new
16                    account before I racked more
17                    in legal fees suing the wrong
18                    parties.       Frivolous    is
19                    frivolous and this is a silly
20                    lawsuit.  IMHO."
21
```

22          On March 8th of 2010 the notice of action had

23   not been filed against Louisiana Media.  Only a

24   notice of intended action had been filed on

25   Louisiana Media.  The comments about suing Fox 8,

26   the Defendant's station and waiting so long to

27   sue in Canada and the lawsuit being frivolous are

28   indicative of an insider connection or

29   association with Louisiana Media.  Also in

30   Exhibit A in a blog posted February 16, 2011,

31   Telemachus connects Broussard with Trout Point

1    Lodge, stating well this might be one thing the

2    ethics Board is looking at.

3

4                "You can take a fishing pole
5                and catch a trout in your
6                front yard."
7

8                "Ed Muniz recalled Aaron
9                Broussard telling me in 1998
10               about a real estate investment
11               opportunity in Nova Scotia
12               Canada. The subject, Muniz
13               said, was Trout Point Lodge, a
14               four hour drive from Halifax
15               and deep in the pristine
16               forests of a provincially-
17               protected wilderness area.
18               Both men were serving on the
19               Jefferson Parish Council at
20               the time and Muniz said
21               Broussard asked him to buy
22               into the development 25,000
23               for a two percent stake. The
24               Metropolitan Crime Commission
25               on Wednesday asked for a State
26               Ethics Investigation into
27               whether Broussard had been
28               renting the Nova Scotia
29               vacation property to Jefferson
30               Parish contractors. Two days
31               later Broussard resigned as
32               Parish President citing
33               distractions of the widening
34               federal criminal investigation
35               into his administration. The
36               investigation began with
37               subpoenas relating to the
38               private insurance businesses

DECISION BY THE COURT                    13

1    of Broussard's former chief
2    administrator, Tim Whitmer,
3    who resigned Monday. Federal
4    authorities also have
5    subpoenaed records regarding
6    River Birch Inc. which owns a
7    Waggaman landfill consigned a
8    deal in June to be the sole
9    garbage dump for Jefferson
10   Parish for the next 25 years.
11   Charles Leary, Managing
12   Director of the Lodge, emailed
13   the Times Picayune on Friday
14   saying Broussard does not, and
15   has never had any ownership or
16   management involvement with
17   Trout Point Lodge Limited.
18   The message went on to say
19   Broussard owns a vacation home
20   on the same road. But the
21   familiar names of some of the
22   investors shed some light on
23   the political lattice of
24   Jefferson Parish. They
25   include Bennett Powell who
26   said last week he bought a
27   small share in the lodge
28   similar to the one described
29   by Muniz and Larry Stoulig who
30   is listed as a partner in
31   Broussard's management company
32   who had said other investors
33   bought him out five years ago.
34   The late Marie Krantz, former
35   owner of fairgrounds,
36   Jefferson Downs race tracks
37   and Nick Baroni, Kenner City
38   Council member while Broussard
39   was the Mayor there, also
40   invested in developing
41   property near the lodge,
42   Baroni said. Baroni and

14                  <u>DECISION BY THE COURT</u>

1      Stoulig have served in federal
2      prison on fraud charges in
3      separate incidents unrelated
4      to the Nova Scotia
5      investments. The link between
6      Nova Scotia and Southern
7      Louisiana outside of the
8      historical link of Acadian
9      culture seems to have begun
10     with Daniel Abel, a lawyer who
11     made a name for himself in
12     1999 working with the late
13     attorney Wendell Gauthier to
14     sue gun manufacturers for
15     violence in New Orleans.
16     Muniz and Abel served as
17     Broussard's legislative aid
18     when he was on the Jefferson
19     Parish Council. But Louisiana
20     Secretary of State records and
21     documents provided by Muniz
22     show that in 1997 Abel,
23     Charles Leary and Vaughn
24     Perret formed a Louisiana
25     corporation called La Ferme
26     Limited and its Canadian
27     counterpart, La Ferme
28     L'Acadie. The three soon
29     opened the Trout Point Lodge,
30     according to a 2001 travel
31     story in the Times Picayune.
32     After investing in the lodge
33     Muniz said he turned down a
34     second offer from Broussard in
35     1999 to buy nearby property.
36     Having yet to see a financial
37     report about the lodge, Muniz
38     said he demurred on the new
39     opportunity."
40
41          Telemachus in a blog posted February 25,

1     2011, appears to view the Val Bracy interview

2     erred by WWUE Louisiana Media as revealing

3     Broussard's wrongdoings in relation to his Nova

4     Scotia property or properties, stating:

5

6         "On January 7, 2010 the
7         campaign of former Parish
8         President Aaron Broussard paid
9         a Bobby Curvan $1,800 a plate
10        his next fundraiser. Well
11        that sounds like the makings
12        of a great party. The
13        following day actually saw
14        Broussard abruptly resign from
15        office in disgrace."
16

17    And there's a reference to a website.

18

19        "That's pretty sudden, isn't
20        it? Aaron Broussard
21        interviewed by Val Bracy and
22        video January 6, 2010, WWUE
23        Fox 8. Pretty sure it was the
24        day before when the Rocky
25        Marciano of New Orleans TV
26        real journalism pounded,
27        punched and (inaudible due to
28        mumbling..) away at a
29        bewildered and whimpering
30        Aaron Broussard about his Nova
31        Scotia property (properties).
32        As of, and up to that day and
33        the day after it appeared that
34        resignation was not something

16                    DECISION BY THE COURT

1                         he had at least communicated
2                         in any way to anyone in his
3                         campaign."
4

5        Telemachus in a blog posted February 21,

6    2011 connects Broussard with investment in

7    properties at Trout Point Lodge, stating:

8

9                        "According to the 7/22/01 TP,
10                       Peter Butler was an investor
11                       in at least one of the
12                       unidentified properties at
13                       Trout Point Lodge, Nova Scotia
14                       as were Wendell Gauthier and
15                       Aaron Broussard. Were you
16                       and/or was anyone named,
17                       (inaudible due to mumbling..)
18                       Sneed, Ward, Butler and/or any
19                       JP public official, aid or
20                       employee or relatives invested
21                       or themselves in any way
22                       investors in any of the below
23                       entities and if so, in what in
24                       what amounts, which
25                       percentages and which entities
26                       and for what periods?"
27

28       And there's a list and that list includes

29   Trout Point Lodge Limited and Trout Point Lodge.

30   I pause to note that Soft81_1 controls what is

31   posted on those blogs.

32       At Paragraph 9 of his affidavit of May 12,

1     2011, Charles Leary states, in relation to

2     Soft81_1 – in researching the story – sorry:

3

4            "Soft81_1    published    the
5            following              on
6            Slab.wordpress.com  on  April
7            26, 2011 in a post entitled,
8            'Slab  takes  a  look  at  the
9            Trout  Point  business  venture.
10           Let's  start  at  the  end  and
11           work back.'"
12

13           And then there's a further reference to the

14    quote that's found in that blog and it states:

15

16           "In    researching    the    story,
17           what I have found is a pattern
18           of  Leary,  Abel  and  the  girls
19           being  first-class  bitches  and
20           I  think  it  is  safe  to  assume,
21           based  upon  the  retractions
22           they made, the Times Picayune
23           and its corporate parent their
24           bitch  in  this  fiasco  because
25           Rainnie   was   onto   something
26           big, albeit a bit dated in the
27           fleecing   of   several   local
28           individuals that were marketed
29           and  sold  ownership  in  the
30           Trout Point by Aaron Broussard
31           who  had  close  personal  ties
32           and  business  ties  to  Abel,
33           Leary and the girls."
34

18          <u>DECISION BY THE COURT</u>

1            At Paragraph 15, and Charles Leary states —

2       sorry this quotation that I just quoted, sorry —

3       implicates Trout Point and its principals in Mr.

4       Broussard's alleged wrongdoings.   At Paragraph 15

5       Charles Leary states:

6

7                    "The publisher of the Slabbed
8                    blog also posted material
9                    stating that there is a
10                   mystery and grandiose cover-up
11                   underway involving me, my
12                   business associates, Aaron
13                   Broussard and the Louisiana
14                   News Media."
15

16           Charles Leary provided oral evidence that on

17      April 26, 2011 Soft81 posted the following:

18

19                   "I think by now even our most
20                   casual readers know our
21                   successor website, Slabbed.org
22                   was knocked offline courtesy
23                   of the Times Picayune's
24                   corporate parent, Advanced
25                   Publications and this started
26                   a chain of events that
27                   resulted in Slab temporarily
28                   being moved back to Wordpress.
29                   I'd submit this was a
30                   miscalculation of gargantuan
31                   proportions for several
32                   reasons which will become

1    clear   as   I   roll   out   this
2    series   of   posts   on   Aaron
3    Broussard's   connections   to
4    Trout   Point   Lodge   and   its
5    purported   owners,   Charles
6    Leary,   Danny   Abel   and   Vaughn
7    Perret.   I   say   purported
8    because   others   were   sold   two
9    percent   ownership   interest   in
10    the   Trout   Point   development   as
11    touted   by   Broussard   and   those
12    folks   are   the   bag   holders   in
13    this   deal."
14

15    That's the end of that quote.  These are

16    further   clear   comments   that   Broussard   is

17    connected   to   Trout   Point   Lodge   and   that   its

18    principals are involved in the corruption as "bag

19    holders."   In   these   and   other   postings   the

20    anonymous   users   bloggers   appear   generally   to   be

21    denouncing   the   retraction   actions   of   Times

22    Picayune while applauding Val Bracy, the reporter

23    in   the   investigative   report   broadcast   by

24    Louisiana Media and writing comments that clearly

25    connect   Trout   Point   and   its   principals   with   Mr.

26    Broussard   and   his   alleged   wrongdoings.   That

27    tends to show that they interpret the Louisiana

28    Media   broadcast   as   supporting   their   comments.

20                    <u>DECISION BY THE COURT</u>

1        They are anonymous.  It is not known for sure

2        whether they are biased against Trout Point for

3        any reason and have set themselves to deducing

4        some  unusual  meaning  from  Louisiana  Media's

5        broadcast  or  they  are  part  of  a  reasonable

6        audience of ordinary intelligence, even though

7        the content of their blogs does suggest some

8        bias.  If they are part of a reasonable audience

9        of average intelligence, that tends to show that

10       Louisiana  Media's  audience  did  not  understand

11       this broadcast as alleged in Louisiana Media's

12       amended statement of defence at Paragraphs 16 and

13       21.  If they are biased for any reason it will

14       tend  to  show  that  they  have  set  themselves  to

15       deducing an unusual meaning from the broadcast

16       and reached a slanted interpretation of Louisiana

17       Media's  broadcast  that  is  different  from  what

18       WWUE  Louisiana  Media's  unbiased  and  reasonable

19       audience  of  ordinary  intelligence  would

20       understand.  The  existence  or  non-existence  of

21       bias  in  the  anonymous  bloggers'  users  may  be

1    determined if their identity is revealed.

2    Therefore, in my view, considering the principles

3    of liberal disclosure, their identity is relevant

4    to interpreting whether the content that

5    Louisiana Media's broadcast was defamatory.

6        Paragraph 7 of Charles Leary's affidavit of

7    May 18, 2011 refers to a Slabbed posting entitled

8    "Whitmergate" which includes a transcription of

9    Val Bracy's interview with Aaron Broussard on

10    January 6, 2011.  According to Dr. Leary, it is

11    an accurate transcription and is in accord with

12    the video provided by WVUE but contains sections

13    not appearing in the video.  The identity of the

14    publisher of the blog will help determine whether

15    the posted transcript is authentic or not.  The

16    more credible the publisher, the more likely it

17    is to be authentic.  In assessing whether a

18    broadcast publication was defamatory it is

19    important to determine what the full and complete

20    content was.  The identity of the publisher, as

21    it relates to authenticity, is relevant to that

22                 <u>DECISION BY THE COURT</u>

1    determination.

2         Trout Point has pleaded injurious falsehood

3    and  intentional  interference  with  economic

4    relations.   Consequently  the  intention  and

5    knowledge  of  falsehood  are  issues  to  be

6    determined.  As noted above, the contents of some

7    of  the  blogging  is  indicative  of  a  close  or

8    insider  connection  between the anonymous  blogger

9    and Louisiana Media.   The  bloggers  are  clearly

10   implicating Trout  Point  and  its  principals  in

11   Broussard's wrongdoings in stating Broussard was

12   involved  in  Trout  Point  Lodge.   That  is

13   continuing more than one year after the January

14   2010 broadcasts.   That  those  bloggers  are  from

15   within or closely connected to Louisiana Media,

16   it  would  tend  to  make  it  more  likely  that

17   Louisiana  Media  intentionally  created  the

18   impression of  a  direct  connection between Trout

19   Point and Aaron Broussard as well as his alleged

20   wrongdoings.   Thus the identity of the bloggers

21   is relevant to intentionality.

<u>DECISION BY THE COURT</u>                              23

1           Trout    Point   advised   the   court   that   it
2      intends to add the anonymous bloggers as parties
3      if they have a sufficiently close connection to
4      Louisiana Media or to sue them separately if they
5      do  not.    They are making the motion within the
6      current  action,  therefore,  the  motion  must   be
7      considered   on   the   basis   that   there   is   an
8      intention to add them as parties.    Trout  Point
9      has no way of knowing how close the connection is
10     even   though   there   are   indicia   of   a   close
11     connection.    Trout  Point  recognizes that if it
12     were  to  turn  out  that  the  connection was   not
13     sufficiently   close   to   warrant   joining   the
14     bloggers as parties, the implied undertaking rule
15     outlined  in  *Civil  Procedure  Rule  14.03* would
16     require it to seek the court's permission to use
17     the  information  in  question  in  connection  with
18     the matter outside of this proceeding.
19          The anonymity of the bloggers has left Trout
20     Point  in  the  position  where  it  is  making  the
21     motion based on what appears to it to be the most

24                    DECISION BY THE COURT

1       likely result, i.e. that the bloggers will be
2       added as parties.  Either way it is intended that
3       they will become Defendants in an action against
4       them by Trout Point.  Consequently in my view the
5       test to determine whether the bloggers' identity
6       is to be disclosed for that purpose is the same
7       whether it is within an existing proceeding or in
8       relation to a separate proposed proceeding.  The
9       relevant test in a defamation action was outlined
10      in **Warman and Wilkins-Fournier**, [2010] O.N.S.C.
11      2126 and approved by the Supreme Court of Nova
12      Scotia in **AB and Bragg Communications Inc.**,
13      [2010] N.S.S.C. 215.  Under that test the
14      application must establish the following:

15

16          1.   A *prima facie* case;
17          2.   Involvement of the third party from
18               whom production is sought;
19          3.   That the third party is the only
20               practical source of the information;
21          4.   That the third party will be reasonably

<u>DECISION BY THE COURT</u>                              25

1              compensated   for   expenses   and   legal

2              costs of compliance;   and

3         5.   The    public   interest   in   disclosure

4              outweighs   the   legitimate   privacy

5              interests and interests and freedom of

6              expression.

7

8         I  will  deal  with each  of  those  in  turn.

9    First  whether  a  *prima facie*  case  has  been

10   established.   In my view the words in the blogs

11   would tend to lower  Trout  Point's  reputation in

12   the eyes of  a reasonable person and do refer  to

13   Trout  Point.   The blogs are posted on a publicly-

14   accessible website.   They were accessed freely by

15   Charles Leary.   The most  likely inference is that

16   they  were  communicated  to  persons  other  than

17   Trout   Point.    As    such,    Trout    Point   has

18   established a  *prima facie*  case that  they  were

19   published and were defamatory.

20

21         2.   Regarding involvement of the third party

26                      DECISION BY THE COURT

1      from whom production is sought, Automattic Inc.
2      is involved in the sense that it hosts and
3      publishes the blogging website on which the blogs
4      were posted even though it is not implicated in
5      the alleged wrongful acts.
6
7               3.    The third party is the only practical
8      source of information.    Automattic has a policy
9      of generally producing information identifying
10     anonymous bloggers on its website if directed to
11     do so by court order including a court order
12     originating from outside the US.    It appears that
13     in the circumstances to be the only avenue to
14     obtain the information sought.
15
16              4.    The third party will be reasonably
17     compensated for expenses and legal costs of
18     compliance.    The information requested ought to
19     be easily accessible. For the most part it ought
20     to have been obtained when the bloggers signed
21     onto the website.    Automattic's policy indicates

1     it    contemplates    readily    providing    such

2     information when directed to do so by any court.

3     Given that we are talking about a website, more

4     likely than not all the information is in

5     electronic form and can simply be emailed to

6     Trout Point at essentially no cost to Automattic.

7     Further, its standard procedure is to forward

8     court orders to the bloggers themselves in case

9     they want to quash the legal process. Therefore

10    Automattic itself would not incur any legal

11    costs.

12

13        5.   The public interest in disclosure

14    outweighs the legitimate privacy interest and

15    interests in freedom of expression. Automattic's

16    policy is to generally provide information it is

17    directed to provide by court order including

18    international orders. Examples include requests

19    for information about anonymous bloggers sued for

20    defamation. In addition the privacy policy

21    states:

<u>DECISION BY THE COURT</u>

1

2    "If you are a blogger looking
3    for a completely anonymous
4    blogging service or if the
5    fact that the above data could
6    be revealed in court
7    proceedings, *et cetera* bothers
8    you, please do not use
9    wordprocess.com (sic) for your
10   blogging."
11

12   When a blogger signs up he or she agrees to

13   the host's privacy policy. Therefore there is a

14   diminished expectation of privacy where, as in

15   the case at hand, the anonymous blogger is

16   posting information that is *prima facie*

17   defamatory. And in support of that I refer to

18   **York University and Bell Canada Enterprises,**

19   [2009] O.J. 3689 and that is a decision of the

20   Ontario Superior Court of Justice. Generally the

21   public interest in not allowing individuals to

22   distribute defamatory materials under the cloak

23   of anonymity will outweigh the public interest in

24   protecting such a person's right to privacy and

25   freedom of expression. That in principle was the

26   conclusion that was reached in **Bragg, Mosher** and

1    **York University v. Bell Canada Enterprises**.

2              In the case at hand the content and tone of

3    the blogs is aggressive.  There is no indication

4    that the bloggers are fearful of the Plaintiff or

5    of other targets of their comments.  There is no

6    indication   that   their   identity   should   be

7    protected for safety reasons.  In addition in the

8    case at hand, the blogs contain comments based on

9    the actual or perceived sexual orientation of the

10   intended targets.   Those comments are clearly

11   meant to be derogatory and insulting.  I will not

12   reproduce them here.   It   is   the   type   of

13   expression that engenders harmful results such as

14   discrimination and hatred.  It is not the type of

15   free   expression   that   deserves   protection   and

16   fostering.

17              Considering these factors, I am of the view

18   that the public interest and disclosure outweighs

19   the legitimate privacy interest and interests and

20   freedom of expression of the anonymous bloggers.

21   And given this conclusion and that I have found

30                          <u>DECISION BY THE COURT</u>

1    the requested information to be relevant, it is
2    appropriate that I exercise my discretion under
3    *Civil Procedure Rule 14.12(1)* to order the third
4    party production requested.   I therefore grant
5    the Plaintiff's motion.  I will initial the order
6    and have it issued and it should be available for
7    pick up fairly shortly.   Clerk, do you know if
8    the Prothonotary is in today?
9         <u>COURT CLERK:</u>    Yes, she is.
10        <u>THE COURT:</u>   She's in today so that should be
11   available for pick up later today, okay?  Now I'm
12   assuming that you're not making any motion for
13   costs where the Defendants did not oppose the
14   motion.    They  simply  raised  the  issue  of
15   relevance.   Am I correct in that assumption Dr.
16   Leary?
17        <u>DR. LEARY:</u>     That's right, My Lord.
18        <u>THE COURT:</u>  All right, thank you.
19        <u>UNIDENTIFIED MALE VOICE:</u>  My   Lord,   Robert
20   (inaudible due to mumbling..)   Just  one  point
21   arising out of this.   When the order is served

<u>DECISION BY THE COURT</u>                                       31

1    and the materials are produced to the Plaintiff

2    it's understood that they will provide the

3    materials for the Defendant (inaudible due to

4    mumbling..)

5         **THE COURT:**   Yeah, so from my perception it

6    should be automatic because it's obviously

7    something that's relevant to the proceeding and

8    that they have in their possession.

9         **UNIDENTIFIED MALE VOICE:**   Thank you My Lord.

10        **THE COURT:**   Okay, thank you everyone.   We

11   can close the court, clerk.

12        **DR. LEARY:**       Thank you My Lord.

13        **THE COURT:**   Thank you.

14

15        **[ADJOURNED AT 11:40 A.M.]**

16

## CERTIFICATE OF COURT TRANSCRIBER

I, Rita Newton, Court Transcriber, hereby certify that I have transcribed the foregoing and that it is a true and accurate transcript of a decision given in the matter of **Trout Point Lodge Limited v. Louisiana Media Company, LLC,** YAR 328248 taken by way of electronic recording in Halifax, Nova Scotia on May 30, 2011.

_____

**Rita Newton, Certificate No. 2006-56**

**CERTIFIED COURT TRANSCRIBER,**

**PROVINCE OF NOVA SCOTIA**

Halifax, Nova Scotia

July 7, 2011